UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: _____

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,

      Plaintiff,

v.

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; and
HI-LITE MANUFACTURING COMPLANY, INC.,
a California corporation,
JEFFREY L. OHAI, an individual California resident,

      Defendants.

_____/

## **COMPLAINT**

Plaintiff, Barn Light Electric Co., LLC, ("Barn Light Electric"), sues Defendants Barnlight Originals, Inc. ("BLO"), Hi-Lite Manufacturing Co., Inc. ("Hi-Lite") and Jeffrey L. Ohai (collectively, the "Defendants") and alleges:

## **INTRODUCTION**

1.      This is an action for trademark infringement and unfair competition in violation of the laws of the United States and the State of Florida.  Barn Light Electric seeks a permanent injunction, damages, including Defendants' profits, trebled under the law, punitive damages, and other relief more fully described herein.

2.      In 2008, Bryan Scott founded Barn Light Electric in his backyard barn.  The initial focus of the business was identifying and meticulously restoring vintage light fixtures to their former beauty.  Mr. Scott spent countless hours refining his techniques until ultimately he was able to design and manufacture original, vintage-inspired goods that have not been available since the early to mid 1900s.

3.      Mr. Scott and his wife, Donna Scott, promoted Barn Light Electric's vintage-inspired products through an original website, www.barnlightelectric.com.  This site was coupled with a creative and winsome social media campaign, which gave Barn Light Electric a substantial Internet presence.   Over time, Barn Light Electric grew into a tremendously successful lighting company dedicated to providing high-quality fixtures and home goods with a strong emphasis on American craftsmanship.

4.      During its entire existence, Barn Light Electric has designed, manufactured and sold light fixtures and other products under its BARN LIGHT ELECTRIC CO. family of trademarks.  Also, Barn Light Electric has long promoted itself as HOME OF "THE ORIGINAL BARN LIGHT," and has sold a highly popular family of light shades under the mark THE ORIGINAL.  By virtue of years of extensively using and promoting its trademarks, Barn Light Electric established enormous goodwill in its marks.

5.      For years, Barn Light Electric purchased certain light fixture components and light fixtures from Hi-Lite.  Barn Light Electric's annual purchases from Hi-Lite eventually reached well over one million dollars, making Barn Light Electric one of Hi-Lite's largest purchasers.

6.      Unfortunately, Barn Light Electric's constantly growing purchases from Hi-Lite were not enough for Hi-Lite.  Hi-Lite's president and co-owner, Jeffrey L. Ohai, coveted exclusivity and control over Barn Light Electric's innovative products and lucrative customer base.  Notwithstanding the fact that Barn Light Electric was solely responsible for the inception of these products, time and again, Defendant Ohai demanded that Barn Light Electric sell almost *exclusively* Hi-Lite products.  Essentially, Defendant Ohai tried to force Mr. Scott to abandon all sales of Barn Light Electric's non-porcelain products… *or else*.

7.      Mr. Scott rejected Defendant Ohai's demands and refused to be bullied by his threats.

2

8.      Although Barn Light Electric was one of Hi-Lite's largest purchasers, on September 4, 2012, Defendant Ohai terminated the relationship and Hi-Lite abruptly stopped selling light fixtures and components to Barn Light Electric.

9.      Next, Defendant Ohai, through Hi-Lite, engaged in several bad faith acts with one obvious purpose: misappropriate Barn Light Electric's business.  These acts included knocking off Barn Light Electric's products, copying its marketing strategy, illegally arrogating its intellectual property.  Within a matter of days, Defendant Ohai registered the domain name www.barnlightoriginals.com (the "BLO domain name").  In a matter of weeks, Defendant Ohai rushed to form BLO and complete a website operating under the BLO domain name, but derived from Barn Light Electric's website, www.barnlightelectric.com (the "BLO website").

10.      Since then, Defendants Hi-Lite, BLO and Defendant Ohai, either alone or collectively, have willfully engaged in various forms of unfair competition, including infringing Barn Light Electric's trademarks and otherwise capitalizing on its goodwill in the marketplace.

11.      Defendants' unlawful activities are causing actual consumer confusion.

12.      Defendants' willful infringement and unfair competition has harmed consumers and irreparably damaged the goodwill associated with Barn Light Electric's common law and federally registered trademarks.

13.      Barn Light Electric respectfully requests that this Court enter a judgment of infringement and unfair competition against Defendants, enter permanent injunctive relief, and issue an award of damages, including Defendants' profits, trebled under the law, punitive damages, attorneys' fees and costs associated with this action, and other just and proper relief.

## PARTIES, JURISDICTION, AND VENUE

14.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 (a) and (b), and 15 U.S.C. § 1121 involving allegations involving the Lanham Act, and jurisdiction over the Florida law claims under 28 U.S.C. §§ 1367 and 1338(b).

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because Defendants advertise and sell their infringing products within this district.

16.     Plaintiff Barn Light Electric is a limited liability company organized and existing under the laws of Florida with its principal place of business in the Middle District of Florida.

17.     Upon information and belief, BLO is a corporation organized and existing under the laws of Nevada, with its principal place of business in Nevada.  The exercise of personal jurisdiction over BLO is proper pursuant to, *inter alia*, Florida's long-arm statute, section 48.193 (1) and (2), Florida Statutes (2000).  BLO is subject to this Court's jurisdiction at least by: maintaining a fully-interactive, commercial web store (www.barnlightoriginals.com) that promotes, sells and offers for sale products under the infringing mark BARNLIGHT ORIGINALS to consumers in this judicial district; engaging in unlawful business transactions with consumers in this judicial district; shipping products under the infringing trademarks to consumers in this judicial district; engaging in other acts of unfair competition described herein that harm local consumers and Barn Light Electric in this judicial district; and receiving revenue from Florida residents.

18.     Upon information and belief, Hi-Lite is a corporation organized and existing under the laws of California, with its principal place of business in California.  The exercise of personal jurisdiction over Hi-Lite is proper pursuant to, *inter alia*, Florida's long-arm statute, section 48.193 (1) and (2), Florida Statutes (2000).  Hi-Lite is subject to this Court's jurisdiction at least by: maintaining numerous Florida sales representatives that promote and sell Hi-Lite products throughout Florida, including in this judicial district; engaging in extensive business transactions with Barn Light Electric and others throughout Florida, including in this judicial district; shipping products, including products sold under the infringing trademark BARNLIGHT ORIGINALS, directly to Florida residents; engaging in other acts of unfair competition

4

described herein that harm consumers and Barn Light Electric in this judicial district; and receiving revenue from Florida residents.

19.    Upon information and belief, Defendant Jeffrey L. Ohai is a resident of California.  The exercise of personal jurisdiction over Jeffrey L. Ohai is proper pursuant to, *inter alia*, Florida's long-arm statute, section 48.193 (1) and (2), Florida Statutes (2000).  Jeffrey L. Ohai is subject to this Court's jurisdiction at least by: directing and controlling the activities of trademark infringement and unfair competition committed by BLO; directing and controlling the activities of trademark infringement and unfair competition committed by Hi-Lite; and registering, operating, directing and controlling the domain name and fully interactive commercial website at www.barnlightoriginals.com, which targets Florida residents.

## BARN LIGHT ELECTRIC COMPANY

20.    Since its inception, Barn Light Electric has been a pioneer in the manufacture, distribution and sale in interstate commerce of high-quality, vintage-inspired lighting and other home products.

21.    Like many successful businesses, Barn Light Electric had somewhat meager beginnings.  Barn Light Electric has its origins in a barn behind founder Mr. Scott's home.  In that barn, Mr. Scott dedicated years to avidly hand-restoring and rebuilding beautiful, American-crafted light fixtures.  Eventually, that experience inspired Mr. Scott to coin the term BARN LIGHT and adopt the trademark: BARN LIGHT ELECTRIC.

22.    Many of the lights Mr. Scott restored—commonly known in the lighting industry as "RLM Lights"—were used in warehouses, factories and other structures dating from the 1930s to the 1950s.  He especially enjoyed restoring such light fixtures because of the high-quality craftsmanship that went into their manufacture.

23.     Together, Mr. and Mrs. Scott would search antique stores, attend estate sales, and even search abandoned buildings looking for vintage light fixtures to restore.  After restoring them, Mr. Scott sold many of the light fixtures and kept others for his personal use.

24.     Eventually, Mr. Scott's experience and passion for restoring antique light fixtures led him to start designing and hand-crafting new light fixtures.  In doing so, he researched and implemented techniques and materials from a bygone era, when light fixtures were made to last for generations.

25.     Mr. Scott used highest-quality, commercial grade materials in Barn Light Electric's light fixtures.

26.     Eventually, the demand for Barn Light Electric's light fixtures swelled to the point where it constituted a sustainable business that required full time attention.

27.     Accordingly, in 2008, the Scotts left their professional careers to manage Barn Light Electric full time.

28.     The aesthetic beauty and craftsmanship associated with Barn Light Electric's current products is self-evident, as illustrated below in Figure 1 (Barn Light Electric's Ivanhoe® Sky Chief Warehouse porcelain pendant light); Figure 2 (Ivanhoe® Seaside Radial Wave Reflector porcelain pendant light); and Figure 3 (Dean Clear Schoolhouse stem mount light).



**FIGURE 1**



**FIGURE 2**



**FIGURE 3**

29.     In addition, Barn Light Electric has also manufactured, distributed and sold various vintage-inspired home goods, as well as restored antiques.  For example, Figure 3 above illustrates porcelain enamel nesting bowls made by Barn Light Electric.

7

## BARN LIGHT ELECTRIC'S MARKETING EFFORTS

30.     Barn Light Electric has experienced stunning growth and success from its earliest days.  Such growth and success were especially remarkable considering it was during one of the darkest recessionary periods in United States history and in a competitive, hard-hit industry.

31.     Barn Light Electric's success is not simply a matter of the craftsmanship, creativity and hard work, much of its success is a direct result of Barn Light Electric's brilliant marketing to its consumers.

32.     Barn Light Electric has invested millions of dollars and countless hours engaging, inspiring, educating and charming its customers.

33.     Barn Light Electric created and is always improving on its website, www.barnlightelectric.com.  A few minutes spent there reveals a great deal about Barn Light Electric and the exceptional quality of its products.  It also beckons users to stroll through countless design ideas that incorporate Barn Light Electric's products.

34.     Barn Light Electric also invests time in marketing its products through a plethora of social networking websites.   These include, for example, Instagram, Pinterest, www.houzz.com and Facebook.  At such sites, Barn Light Electric inspires consumers with new ways to incorporate Barn Light Electric's products into their homes.  Barn Light Electric also uses such websites to educate consumers who may have questions about specific projects.

35.     These efforts have led to a substantial following on Barn Light Electric's social media sites.

36.     Barn Light Electric enjoys a following in the thousands and innumerable "likes." Such followers and "likes" are authentic.  Barn Light Electric has never paid for fake followers or surreptitiously inflated its "likes."

37.     Over the years, Barn Light Electric's all-American success story has garnered significant amounts of national media attention in virtually every form of modern media,

including television, radio, print and Internet.  *See* Exhibit 1 (a listing of national media sources that have used BARN LIGHT ELECTRIC as a source identifier for Barn Light Electric's goods and services).

38.     Barn Light Electric's unique products, marketing investments, and nationwide media have led to a wellspring of goodwill in the BARNLIGHT ELECTRIC trademarks.

## THE BARN LIGHT ELECTRIC MARKS

39.     Since at least 2008, Barn Light Electric has continuously used in commerce the marks BARN LIGHT ELECTRIC, BARN LIGHT ELECTRIC COMPANY, BARN LIGHT ELECTRIC CO., HOME OF "THE ORIGINAL BARN LIGHT."  Barn Light Electric has also long used the mark THE ORIGINAL in connection with certain light fixtures.  Together, the marks identified herein are referred to as "the BARN LIGHT ELECTRIC marks" to identify the source and quality of its goods and services.

40.     By virtue of years of extensively using and promoting the BARN LIGHT ELECTRIC marks, Barn Light Electric has established enormous goodwill in these marks.  The BARN LIGHT ELECTRIC marks are well-known and uniquely associated with Barn Light Electric in the minds of consumers throughout the United States.

41.     Accordingly, the BARN LIGHT ELECTRIC marks are entitled to common law trademark protection.

42.     In addition to its exclusive common law rights in the BARN LIGHT ELECTRIC marks developed through many years of use and promotion, Barn Light Electric owns U.S. Trademark Reg. No. 3,748,277 on the principal register for the mark depicted in Figure 4 and covering the online marketing and sale of "a variety of goods, namely, lights, lighting fixtures and ceiling fans."  A true and correct copy of the '277 registration is provided as Exhibit 2.



**FIGURE 4**

43.     Barn Light Electric also owns U.S. Trademark Reg. No. 3,723,964 on the supplemental register for the mark BARN LIGHT ELECTRIC COMPANY, covering the online marketing and sale of "a variety of goods, namely, lights, lighting fixtures and ceiling fans." A true and correct copy of the '964 registration is provided as Exhibit 3.

44.     In a matter of months, the BARN LIGHT ELECTRIC COMPANY mark will be eligible for transfer to the principal register based on being listed on the supplemental register for five (5) years.

45.     At that time, Barn Light Electric's marks will also be eligible to become incontestable.

46.     The BARN LIGHT ELECTRIC marks, when used in connection with Barn Light Electric's products and services, are distinctive and, through Barn Light Electric's extensive sales, advertising and promotional efforts, have acquired secondary meaning.

47.     As a result of Barn Light Electric's activities, the BARN LIGHT ELECTRIC marks have become valuable assets of Barn Light Electric, represent enormous goodwill of the company, and identify and distinguish Barn Light Electric's goods and services from those of others.

**HI-LITE, OHAI AND BLO**

48.     For years, Barn Light Electric purchased various components for its light fixtures from Hi-Lite.  Barn Light Electric purchased from Hi-Lite, as opposed to some other source, specifically because Hi-Lite manufactured its components in the United States.

49.     Over the course of their relationship, Barn Light Electric also began specifying and purchasing light fixtures from Hi-Lite.

50.     Eventually, Barn Light Electric was purchasing well over one million dollars in components and light fixtures from Hi-Lite.  Upon information and belief, this made Barn Light Electric one of Hi-Lite's top buyers.

51.     Hi-Lite, however, wanted more.  Defendant Ohai repeatedly demanded that Barn Light Electric: (i) sell *only* Hi-Lite products on Barn Light Electric's own website, except for those Barn Light Electric light fixtures that Hi-Lite was not equipped to manufacture, i.e., porcelain enamel products; (ii) stop purchasing parts from other manufacturers; (iii) stop manufacturing parts at Barn Light Electric (the original manufacturing site); and (iv) stop selling a lower cost line of light fixtures that it sold to customers that could not afford the high-end fixtures (comprised primarily of Barn Light Electric's products).

52.     Defendant Ohai coupled his unreasonable demands with intimidation and the threat that Hi-Lite would stop selling products to Barn Light Electric altogether.

53.     Mr. Scott rejected Defendant Ohai's demands for exclusivity.

**OHAI, HI-LITE AND BLO ENGAGE IN TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

54.     On information and belief, as a result of Mr. Scott's refusal to sell exclusively Hi-Lite products, Defendant Ohai devised a scheme to sell Hi-Lite light fixtures by trading off of the goodwill that Barn Light Electric had established in the BARN LIGHT ELECTRIC marks.

11

55.     On September 11, 2012, Defendant Ohai, registered the domain name www.barnlightoriginals.com.  Exhibit 4.

56.     Defendant Ohai subsequently concealed his identity as the registrant of the BLO domain name.  Exhibit 5.

57.     Within about two months, Defendant Ohai had formed BLO.  Under Defendant Ohai's direction and control, BLO created and exploits www.barnlightoriginals.com as a fully operative and interactive commercial storefront to sell Hi-Lite light fixtures.

58.     BLO sells products manufactured by Hi-Lite and ships to consumers nationwide, including consumers residing in this judicial district.

59.     Defendants, under the direction and control of Defendant Ohai, promote and sell Hi-Lite lighting fixtures using the marks BARNLIGHT ORIGINALS and BARNLIGHT ORIGINALS INC., as well as the website at www.barnlightoriginals.com.

60.     At the time Defendants began operating their online retail operation, Defendants knew of Barn Light Electric's exclusive rights to the BARN LIGHT ELECTRIC marks, including, *inter alia*, Barn Light Electric's use of the HOME OF "THE ORIGINAL BARN LIGHT" mark.

61.     Defendants selected the BARNLIGHT ORIGINALS marks with the intent of causing consumer confusion, and thereby enabling Defendants to profit from the goodwill Barn Light Electric had established in the BARN LIGHT ELECTRIC marks.

62.     To make matters worse, Defendants also adopted specific product trademarks that are confusingly similar to those used by Barn Light Electric.

63.     Defendants' infringement of Barn Light Electric's trademark THE ORIGINAL is particularly transparent.

64.     Defendants seized on THE AUTHENTIC, which has exactly the same meaning and connation as THE ORIGINAL.  They did so in connection with a light fixture that is

essentially identical in all material respects to the light fixture sold by Barn Light Electric as THE ORIGINAL.

65.    This is best shown in comparing THE ORIGINAL and THE AUTHENTIC warehouse lights, which are in nearly all material aspects identical.  *Compare* Figure 5 and Figure 6.




**FIGURE  5: THE ORIGINAL**
**by Barn Light**
**Electric**

**FIGURE 6: THE AUTHENTIC**
**by BLO**

66.    Further confirming Defendants' intent to cause consumer confusion, Defendants copied Barn Light Electric's marketing description:

> **Barn Light Electric:** "The Original™ barn light is one of our best selling gooseneck lights!" A true and correct copy of Barn Light Electric's web page for THE ORIGINAL™ warehouse light is attached as Exhibit 6.

> **BarnLight Originals:** "One of our most popular barn lighting fixtures at Barnlight Originals™ is The Authentic Warehouse Shade." A true and correct copy of Barn Light Original's web page for THE AUTHENTIC warehouse light is attached as Exhibit 7.

67.    Ironically, Defendants' use of THE AUTHENTIC highlights the Defendants' utter *lack* of authenticity.

**OHAI, HI-LITE AND BLO'S OTHER UNFAIR COMPETITION TACTICS**

68.   Defendants have systematically copied numerous aspects of Barn Light Electric's website and its design.  Just like Barn Light Electric's website, Defendants home page contains a logo in the upper left corner with the words "BARN LIGHT" prominently displayed against a rustic background.  Both logos also include a picture of a vintage-inspired light fixture.  Further, just as with Barn Light Electric's home page, Defendants placed a rotating carousel of multiple photographs of vintage-inspired lighting and light fixtures immediately below the logo.  Further still, Defendants have placed a graphical text box with the words "Free Shipping" immediately to the right of the logo.

69.   Defendants went so far as to copy the *copyright notice*, as shown below. *Compare* www.barnlightelectric.com and www.barnlightoriginals.com.

**Barn Light Electric:**   © 2004-2014 Barn Light Electric Co.® - *A division of Barn Light USA™*

**Barn Light Originals:**   © 2014 Barnlight Originals Inc. All rights reserved. *A division of Barnlight International™*

70.   Upon information and belief, there is no actual "Barnlight International."

71.   The copying by Defendants is particularly manifest in connection with the web pages directed to specific products. *Compare* Figure 7 (Barn Light Electric Product Page for The Original™ gooseneck light) and 8 (BLO Product page for The Authentic gooseneck light).



**FIGURE 7**



**FIGURE 8**

72.   As shown in Figures 7 and 8, Defendants copied every material aspect of Barn Light Electric's product page.  From Barn Light Electric's product name to the photographs and carousel placement to Barn Light Electric's unique colored informational buttons found on each

product, and which identify qualities of the lighting fixture (e.g., wet/dry rating; origin of product; certifications, etc.).  See Figure 8.

73.     Defendants are further systematically stalking and supplanting Barn Light Electric's posts on various websites, including www.houzz.com.

74.     Additionally, upon information and belief, Defendants have improperly and falsely inflated their followers and "likes" on one or more social media websites.

75.     Each of these actions is intended to confuse and mislead consumers about the source, quality and origin of BLO's products.

76.     Based on the foregoing, Defendants have traded on and damaged the goodwill associated with the BARN LIGHT ELECTRIC marks.

<b>BLO'S SHAM TRADEMARK REGISTRATIONS</b>

77.     Based on its unlawful use of the mark BARNLIGHT ORIGINALS INC., BLO applied for and received two trademark registrations.

78.     Again, BLO resorted to mimicking Barn Light Electric's business activities by filing two applications that mimic the Barn Light Electric registrations.

79.     BLO's U.S. Reg. No. 4,464,241 is for the standard character mark BARNLIGHT ORIGINALS INC., and includes a disclaimer of the word "BARN LIGHT" and "INC."  The '241 mark was registered on the supplemental register on January 7, 2014.

80.     BLO's U.S. Reg. No. 4,489,514 is for the BLO logo as shown in Figure 9, below.



<b>FIGURE 9</b>

81.   Both the '241 registration and the '514 registration by BLO are directed to trademarks that are confusingly similar to and in the same classes as the BARN LIGHT ELECTRIC marks.

**OHAI, HI-LITE AND BLO'S UNLAWFUL ACTS ARE CAUSING ACTUAL CONSUMER CONFUSION**

82.   The net effect of Defendants' willful trademark infringement and unfair competition is actual harm and potential future harm to consumers and Barn Light Electric.

83.   Barn Light Electric has documented numerous instances of actual confusion.

84.   For example, Barn Light Electric has received multiple communications from customers expressing confusion in connection with BLO products, as well as communications complaining about Defendants' website and products marketed and sold by Defendants.

85.   In at least one instance, an extensive purchase order having all BLO part numbers was submitted to Barn Light Electric.

**COUNT I**

**(Trademark Infringement in Violation of 15 U.S.C. § 1114)**

86.   Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 85 as if fully set forth herein.

87.   Defendants' use of the BARNLIGHT ORIGINALS marks in connection with their on-line retail operation offering commercial and residential lighting, lamps, and accessories to consumers in the United States infringes upon Barn Light Electric's superior rights in its BARN LIGHT ELECTRIC marks.

88.   Defendant Ohai is knowingly and deliberately directing and controlling the infringing activities of Hi-Lite and BLO.

89.   Defendants have knowingly and without the consent of Barn Light Electric used the infringing marks in interstate commerce in connection with the sale, offering for sale,

17

distribution, and/or advertising of goods, and such activities are likely to cause confusion or mistake, or to deceive consumers in the United States.

90.     Based upon information and belief, Defendants selected the BARNLIGHT ORIGINALS marks, copied the organization and styling of Barn Light Electric's website, and opted to offer a substantially similar line of products with the intent of deriving benefit from Barn Light Electric's stellar reputation and goodwill.

91.     Furthermore, Defendants plan has succeeded as Barn Light Electric has received calls from consumers evidencing actual confusion between Barn Light Electric's products and services and Defendants' products and services.

92.     Under the circumstances of this case, the infringing activities constitute intentional, willful infringement in violation of Barn Light Electric's rights under 15 U.S.C. § 1114, and have caused and will continue to cause Barn Light Electric irreparable harm if not enjoined.

93.     Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116(a) and the equitable powers of this Court, Defendants will persist in their activities, thereby causing Barn Light Electric additional irreparable harm.

94.     Barn Light Electric has sustained damages as a result of the infringing activities in an amount to be ascertained at trial, but in no event less than $75,000.

95.     Upon information and belief, this case qualifies for a judgment of three times profits or damages, whichever amount is greater, together with attorney's fees pursuant to 15 U.S.C. § 1117(a).

## COUNT II

### (Contributory Trademark Infringement)

96.     Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 85 as if fully set forth herein.

97.     Defendant BLO is engaging in conduct in violation of the Lanham Act, including but not limited to, using in interstate commerce marks that are confusing similar to Barn Light Electric's BARN LIGHT ELECTRIC marks, in connection with the offering for sale, distribution, and/or advertising of goods, and such activities are likely to cause confusion or mistake, or to deceive consumers in the United States.

98.     To the extent that Hi-Lite is not directly involved with BLO's infringing activities, Hi-Lite, as a previous supplier to Barn Light Electric, knows or has reason to know that Defendant BLO is engaging in trademark infringement.

99.     Hi-Lite has continued to supply its products to BLO even though it knows or has reason to know that BLO is engaging in trademark infringement.

100.    Hi-Lite, therefore bears contributory liability for BO's infringing activities in violation of 15 U.S.C. § 1114 and the common law.

101.    Barn Light Electric has no adequate remedy at law and has suffered irreparable harm and damage as a result of the contributory infringing conduct of Hi-Lite.

102.    Barn Light Electric has sustained damages as a result of the contributory infringing conduct of Hi-Lite in an amount to be ascertained at trial, but in no event less than $75,000.

103.    Upon information and belief, this case qualifies for a judgment of three times profits or damages, whichever amount is greater, together with attorney's fees pursuant to 15 U.S.C. § 1117(a).

## COUNT III

### (Federal Unfair Competition under 15 U.S.C. § 1125)

104.    Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 85 as if fully set forth herein.

105.    Defendants acts tend to represent falsely that the Defendants' products are legitimately connected with Barn Light Electric, tend to describe falsely that Defendants' products emanate from or are sponsored or approved by Barn Light Electric; and tend to designate falsely that Defendants' products originate from Barn Light Electric, all of which constitute violations of 15 U.S.C. § 1125(a).

106.    Upon information and belief, Defendants acts of unfair competition were done willfully, intentionally, and in bad faith.

107.    Defendants acts are greatly and irreparably damaging to Barn Light Electric and will continue to be greatly and irreparably damaging to Barn Light Electric unless enjoined by this Court, as a result of which, Barn Light Electric is without an adequate remedy at law.

108.    Barn Light Electric has sustained damages as a result of the infringing activities in an amount to be ascertained at trial, but in no event less than $75,000.

109.    Upon information and belief, this case qualifies for a judgment of three times profits or damages, whichever amount is greater, together with attorney's fees pursuant to 15 U.S.C. § 1117(a).

## COUNT IV

### (Cancellation of Supplemental Registration under 15 U.S.C. § 1119
### Based Upon Confusing Similarity)

110.    Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 85 as if fully set forth herein.

111.    This is a claim for cancellation of Defendant BLO's supplemental trademark registration for the mark BARNLIGHT ORIGINALS, INC., U.S. Registration No. 4,464,241.

112.    Defendants' use of the mark BARNLIGHT ORIGINALS, INC. is likely to cause confusion, mistake, or to deceive purchasers and potential purchasers into believing that Defendants' products and services are the same as Barn Light Electric's products and services or

that Barn Light Electric's products and services are in some way affiliated with, sponsored, authorized, approved, sanctioned, or licensed by Barn Light Electric, in violation of Section 1114 of the Lanham Act.

113.    The continued registration of Defendant BLO's mark BARNLIGHT ORIGINALS, INC. is inconsistent with Barn Light Electric's rights in and to the BARN LIGHT ELECTRIC marks, and is damaging to Barn Light Electric.

114.    Barn Light Electric seeks the cancellation of Supplemental Trademark Registration No. 4,464,241 on the basis that it is confusingly similar to Barn Light Electric's BARN LIGHT ELECTRIC marks.

## COUNT V

## (Cancellation of Registration under 15 U.S.C. § 1119

## Based Upon Confusing Similarity)

115.    Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 85 as if fully set forth herein.

116.    This is a claim for cancellation of Defendant BLO's trademark registration for the design plus word mark BARNLIGHT ORIGINALS, U.S. Registration No. 4,489,514.

117.    Defendants' use of the design plus word mark BARNLIGHT ORIGINALS is likely to cause confusion, mistake, or to deceive purchasers and potential purchasers into believing that Defendants' products and services are the same as Barn Light Electric's products and services or that Barn Light Electric's products and services are in some way affiliated with, sponsored, authorized, approved, sanctioned, or licensed by Barn Light Electric, in violation of Section 1114 of the Lanham Act.

118.    The continued registration of Defendant BLO's mark design plus word mark BARNLIGHT ORIGINALS is inconsistent with Barn Light Electric's rights in and to the BARN LIGHT ELECTRIC marks, and is damaging to Barn Light Electric.

21

119.    Barn Light Electric seeks the cancellation of Trademark Registration No. 4,489,514 on the basis that it is confusingly similar to Barn Light Electric's BARN LIGHT ELECTRIC marks.

## COUNT VI

### (Common Law Unfair Competition)

120.    Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 85 as if fully set forth herein.

121.    Defendants acts constitute unfair competition in that:

(a)    Said acts enable and will continue to enable Defendants to obtain the benefit of and trade on the goodwill of Barn Light Electric;

(b)    Said acts damage and will continue to damage Barn Light Electric's goodwill in that Barn Light Electric does not have control over the business and products of Defendants;

(c)    Said acts have caused and are likely to continue to cause confusion, mistake, or deception of the public; and

(d)    Said acts will result in the unjust enrichment of Defendants.

122.    Upon information and belief, Defendants acts of unfair competition were done willfully, intentionally, and in bad faith.

123.    Defendants acts are greatly and irreparably damaging to Barn Light Electric and will continue to be greatly and irreparably damaging to Barn Light Electric unless enjoined by this Court, as a result of which, Barn Light Electric is without an adequate remedy at law.

124.    Barn Light Electric has sustained damages as a result of the Defendants' activities in an amount to be ascertained at trial, but in no event less than $75,000.

## COUNT VII

### (Common Law Trademark Infringement)

22

125.    Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 85 as if fully set forth herein.

126.    Barn Light Electric is the owner of the valid and protectable marks, BARN LIGHT ELECTRIC, HOME OF "THE ORIGINAL BARN LIGHT", BARN LIGHT ELECTRIC COMPANY, and BARN LIGHT ELECTRIC CO.

127.    There is a likelihood of confusion caused by Defendants' use of the marks, BARNLIGHT ORIGINALS and BARNLIGHT ORIGINALS INC.

128.    Upon information and belief, Defendants acts of infringement were done willfully, intentionally, and in bad faith.

129.    Defendants acts are greatly and irreparably damaging to Barn Light Electric and will continue to be greatly and irreparably damaging to Barn Light Electric unless enjoined by this Court, as a result of which, Barn Light Electric is without an adequate remedy at law.

130.    Barn Light Electric has sustained damages as a result of the infringing activities in an amount to be ascertained at trial, but in no event less than $75,000.

## COUNT VIII

### (CYBERSQUATTING IN VIOLATION OF THE ACPA)

131.    Plaintiff hereby restates the allegations set forth in Paragraphs 1 through 85, as if fully set forth herein.

132.    The BARN LIGHT ELECTRIC marks are distinctive and/or famous and entitled to protection under the Lanham Act.  Moreover, the BARN LIGHT ELECTRIC marks were distinctive and/or famous at the time of Defendant Ohai's registration of the domain name www.barnlightoriginals.com.

133.    Defendants' domain name www.barnlightoriginals.com is confusingly similar to Barn Light Electric's BARN LIGHT ELECTRIC marks.

134.    Defendants registered the www.barnlightoriginals.com domain name with a bad faith intent to profit from it.

135.    Defendants' activities described above violate 15 U.S.C. § 1125(d).

136.    Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Barn Light Electric's business, reputation, and goodwill.  Barn Light Electric has no adequate remedy at law because monetary damages are inadequate to compensate it for the injuries caused by Defendants.

137.    On information and belief, Defendants' unlawful registration and use of the www.barnlightoriginals.com domain name has been intentional and willful.

138.    Barn Light Electric is entitled to injunctive relief, and also entitled to recover defendant's profits, actual damages suffered by Plaintiff and the costs of this action pursuant to 15 U.S.C. § 1117(a).  Barn Light Electric is also entitled to injunctive relief, including a Court order of forfeiture or cancellation of the accused domain name www.barnlightoriginals.com or the transfer of the accused domain name to Barn Light Electric pursuant to 15 U.S.C. § 1125(d)(1)(C).

139.    Barn Light Electric asserts that this case qualifies for a judgment of three times damages together with attorney's fees pursuant to 15 U.S.C. § 1117(a).

## PRAYER FOR RELIEF

WHEREFORE, Barn Light Electric prays for a Judgment for Damages, Cancellation of Defendants' marks, and Permanent Injunctive Relief as follows:

A.    Permanent Injunctive relief ordering that Defendants', their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, who receive actual notice of the Order by personal service or otherwise, be preliminarily and permanently enjoined and restrained from:

1.      Using BARNLIGHT ORIGINALS and THE AUTHENTIC or any confusingly similar variation of the BARN LIGHT ELECTRIC marks or THE ORIGINAL;

2.      Publishing, producing, marketing, selling, transporting, distributing, moving and/or otherwise circulating any and all services or products, including, but not limited to commercial and residential light fixtures, lamps and accessories, home goods, and products or services related thereto, which bear the mark BARNLIGHT ORIGINALS or THE AUTHENTIC or any confusingly similar variation of the BARN LIGHT ELECTRIC marks, including THE ORIGINAL; and

3.      Acting in any manner which causes Defendants' products or services, including, but not limited to commercial and residential light fixtures, lamps and accessories, and Defendants' online advertising and selling of same, to be in any way confused with Barn Light Electric, Barn Light Electric's products or services, and the goodwill associated with the BARN LIGHT ELECTRIC marks, including THE ORIGINAL.

B.    Ordering that, in accordance with 15 U.S.C. § 1117, Defendants be required to account for and pay over to Barn Light Electric an amount equal to Defendants' actual damages, and all of the gains, profits, savings, and advantages realized by Defendants as a result of Defendants' unfair competition, and if Defendants' actions are deemed willful and intentional, then such amount should be increased to an amount not exceeding three times of such amount.

C.    An order reimbursing Barn Light Electric for the costs of this action.

D.    An order reimbursing Barn Light Electric for any and all reasonable attorney's fees incurred as a result of Defendants' unfair competition and infringement.

25

E.      An order cancelling U.S. Trademark Registration No. 4,489,514 for the mark BARNLIGHT ORIGINALS, pursuant to 15 U.S. C. § 1119.

F.      An order cancelling U.S. Trademark Registration No. 4,464,241 for the mark BARNLIGHT ORIGINALS INC., pursuant to 15 U.S. C. § 1119.

G.      An order transferring to Barn Light Electric or otherwise cancelling the domain name www.barnlightoriginals.com.

H.      Any and all other relief as deemed proper or just by this Court.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable as a matter of right.

Dated:  August 14, 2014

Respectfully submitted,

**FELDMAN GALE, P.A.**
*Counsel for Plaintiff*
400 N. Tampa Street, Suite 2830
Tampa, FL 33602
Telephone No.  (813) 374-8890
Telefacsimile No.  (305) 358-3309

By: *s/Alejandro J. Fernandez*
    Alejandro J. Fernandez, Esq.
    Fla. Bar No. 33221
    E-mail:  AFernandez@FeldmanGale.com
    David M. Stahl / Fla. Bar No. 84713
    E-mail:  DStahl@FeldmanGale.com

26