UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

      Plaintiff,

v.

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation; and JEFFREY L.
OHAI, an individual California Resident,

      Defendants.

_____/      CASE NO. 8:14-cv-01955-MSS-AEP

BARNLIGHT   ORIGINALS,   INC.,   a
Nevada   corporation;   and   HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation,

      Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

      Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

      Third-Party Defendants.

_____/

**<u>DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT</u>**

Defendants, Barnlight Originals, Inc., Hi-Lite Manufacturing Company, Inc., and Jeffrey L. Ohai ("Defendants"), by and through their undersigned counsel hereby respectfully submits this Answer to Plaintiff's Second Amended Complaint.

## INTRODUCTION

1.      Defendants admit that the Plaintiffs have filed an action for trademark infringement, unfair competition, and declaratory judgment, otherwise denied.

2.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 2 of the Second Amended Complaint and therefore deny the same.

3.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 3 of the Second Amended Complaint and therefore deny the same.

4.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 4 of the Second Amended Complaint and therefore deny the same.

5.      Defendants admit they sold light fixtures and, from time to time, certain replacement components for Hi-Lite fixtures.  Defendants also admit their total sales to Barn Light Electric exceeded over one million dollars, making Barn Light Electric one of Hi-Lite's largest purchasers.

6.      Defendants deny the allegations contained in paragraph 6 of the Second Amended Complaint.

7.      Defendants deny the allegations contained in paragraph 7 of the Second Amended Complaint.

8.     Defendants admit they terminated their relationship with Barn Light Electric on September 4, 2012, otherwise denied.

9.     Defendants admit that Jeffrey Ohai registered the domain name www.barnlightoriginals.com, but Defendants deny the remaining allegations of paragraph 9 of the Second Amended Complaint.

10.     Defendants deny the allegations of paragraph 10 of the Second Amended Complaint.

11.     Defendants deny the allegations of paragraph 11 of the Second Amended Complaint.

12.     Defendants deny the allegations of paragraph 12 of the Second Amended Complaint.

13.     Defendants admit that Plaintiff seeks a judgment of infringement and unfair competition against Defendants, entry of permanent injunctive relief, and an award of damages or other relief, otherwise denied.

14.     Defendants admit the allegations of paragraph 14 of the Second Amended Complaint.

15.     Defendants reserve the right to answer the allegations of paragraph 15 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

16.     Defendants reserve the right to answer the allegations of paragraph 16 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed

herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

17.     Defendants reserve the right to answer the allegations of paragraph 17 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

## PARTIES, JURISDICTION AND VENUE

18.     Defendants admit that this Court has subject matter jurisdiction over Plaintiff's trademark infringement and unfair competition claims.

19.     Defendants admit Plaintiffs have brought a declaratory judgment action, however Defendants deny that this Court has subject matter jurisdiction over Plaintiff's declaratory judgment claims.

20.     Defendants admit that this Court has subject matter jurisdiction over Plaintiff's claims that arise under Florida law.

21.     Defendants admit that venue is proper, but deny infringing products are advertised or sold in this district.

22.     Defendants admit the allegations of paragraph 22 of the Second Amended Complaint.

23.     Defendants admit BLO is a corporation organized and existing under the laws of Nevada with a principle place of business in Nevada.  Defendants admit BLO is subject to this Court's jurisdiction and receives revenue from Florida residents.  Defendants deny the remaining allegations of paragraph 23 of the Second Amended Complaint.

24.     Defendants admit Hi-Lite has a principle place of business in California and is subject to this Court's jurisdiction by maintaining sales representatives in Florida, engaging in extensive business transactions with Barn Light Electric and others throughout Florida, shipping products to Florida residents, and receiving revenue from Florida residents.  Defendants also admit sending a cease and desist letter in this district.  Defendants deny the remaining allegations of paragraph 24 of the Second Amended Complaint.

25.     Defendants admit Mr. Ohai  is a resident of California, operates the website www.barnlightoriginals.com, and is the owner and inventor of the '477 Patent.  Defendants deny the remaining allegations of paragraph 25 of the Second Amended Complaint.

## BARN LIGHT ELECTRIC COMPANY

26.     Defendants deny the allegations contained in paragraph 26 of the Second Amended Complaint.

27.     Defendants deny that Mr. Scott coined the term BARN LIGHT and deny Barn Light Electric had its origins in a barn.  Defendants are without knowledge or information sufficient to enable them to admit or deny the remaining allegations contained in paragraph 27 of the Second Amended Complaint and therefore deny the same.

28.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 27 of the Second Amended Complaint and therefore deny the same.

29.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 29 of the Second Amended Complaint and therefore deny the same.

30.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 30 of the Second Amended Complaint and therefore deny the same.

31.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 31 of the Second Amended Complaint and therefore deny the same.

32.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 32 of the Second Amended Complaint and therefore deny the same.

33.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 33 of the Second Amended Complaint and therefore deny the same.

34.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 34 of the Second Amended Complaint and therefore deny the same.

35.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 35 of the Second Amended Complaint and therefore deny the same.

**BARN LIGHT ELECTRIC'S MARKETING EFFORTS**

36.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 36 of the Second Amended Complaint and therefore deny the same.

37.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 37 of the Second Amended Complaint and therefore deny the same.

38.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 38 of the Second Amended Complaint and therefore deny the same.

39.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 39 of the Second Amended Complaint and therefore deny the same.

40.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 40 of the Second Amended Complaint and therefore deny the same.

41.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 41 of the Second Amended Complaint and therefore deny the same.

42.      Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 42 of the Second Amended Complaint and therefore deny the same.

43.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 43 of the Second Amended Complaint and therefore deny the same.

44.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 44 of the Second Amended Complaint and therefore deny the same.

## THE BARN LIGHT ELECTRIC MARKS

45.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 45 of the Second Amended Complaint and therefore deny the same.

46.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 46 of the Second Amended Complaint and therefore deny the same.

47.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 47 of the Second Amended Complaint and therefore deny the same.

48.     Defendants admit that U.S. Trademark Registration No. 3,748,277 is attached as Exhibit 2, otherwise denied.

49.     Defendants admit that U.S. Trademark Registration No. 3,723,964 is attached as Exhibit 3, otherwise denied.

50.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 50 of the Second Amended Complaint and therefore deny the same.

51.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 51 of the Second Amended Complaint and therefore deny the same.

52.     Defendants deny the allegations of paragraph 52 of the Second Amended Complaint.

53.     Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 53 of the Second Amended Complaint and therefore deny the same.

## **HI-LITE, OHAI AND BLO**

54.     Defendants admit that Barn Light Electric purchased various replacement components for its Hi-Lite light fixtures from Hi-Lite.  Defendants are without knowledge or information sufficient to enable them to admit or deny the remaining allegations contained in paragraph 54 of the Second Amended Complaint and therefore deny the same.

55.     Defendants admit that Barn Light Electric purchased light fixtures from Hi-Lite. Defendants are without knowledge or information sufficient to enable them to admit or deny the remaining allegations contained in paragraph 55 of the Second Amended Complaint and therefore deny the same.

56.     Defendants admit Barn Light Electric was purchasing over one million dollars in light fixtures and replacement components from Hi-Lite, making Barn Light Electric one of Hi-Lite's top buyers, otherwise denied.

57.     Defendants deny the allegations of paragraph 57 of the Second Amended Complaint.

58.     Defendants deny the allegations of paragraph 58 of the Second Amended Complaint.

59.     Defendants deny the allegations of paragraph 59 of the Second Amended Complaint.

## OHAI, HI-LITE AND BLO ENGAGE IN TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

60.     Defendants deny the allegations of paragraph 60 of the Second Amended Complaint.

61.     Defendants admit the allegations of paragraph 61 of the Second Amended Complaint.

62.     Defendants admit that the domain name was registered via a proxy, otherwise denied.

63.     Defendants admit that BLO was formed to sell Hi-Lite light fixtures, otherwise denied.

64.     Defendants admit that BLO sells products manufactured by Hi-Lite, otherwise denied.

65.     Defendants admit that Hi-Lite sells lighting fixtures via BLO, otherwise denied.

66.     Defendants deny the allegations of paragraph 66 of the Second Amended Complaint.

67.     Defendants deny the allegations of paragraph 67 of the Second Amended Complaint.

68.     Defendants deny the allegations of paragraph 68 of the Second Amended Complaint.

69.     Defendants deny the allegations of paragraph 69 of the Second Amended Complaint.

70.     Defendants deny the allegations of paragraph 70 of the Second Amended Complaint.

71.     Defendants deny the allegations of paragraph 71 of the Second Amended Complaint.

72.     Defendants deny the allegations of paragraph 72 of the Second Amended Complaint.

73.     Defendants deny the allegations of paragraph 73 of the Second Amended Complaint.

## OHAI, HI-LITE AND BLO'S OTHER UNFAIR COMPETITION TACTICS

74.     Defendants deny the allegations of paragraph 74 of the Second Amended Complaint.

75.     Defendants deny the allegations of paragraph 75 of the Second Amended Complaint.

76.     Defendants deny the allegations of paragraph 76 of the Second Amended Complaint.

77.     Defendants deny the allegations of paragraph 77 of the Second Amended Complaint.

78.     Defendants deny the allegations of paragraph 78 of the Second Amended Complaint.

79.     Defendants deny the allegations of paragraph 79 of the Second Amended Complaint.

80.    Defendants deny the allegations of paragraph 80 of the Second Amended Complaint.

81.    Defendants deny the allegations of paragraph 81 of the Second Amended Complaint.

82.    Defendants deny the allegations of paragraph 82 of the Second Amended Complaint.

## BLO'S SHAM TRADEMARK REGISTRATIONS

83.    Defendants admit they have secured two trademark registrations, otherwise denied.

84.    Defendants deny the allegations of paragraph 84 of the Second Amended Complaint.

85.    Defendants admit that BLO owns U.S. Trademark Registration No. 4,464,241, the face of which speaks for itself.

86.    Defendants admit the allegations of paragraph 86 of the Second Amended Complaint.

87.    Defendants deny the allegations of paragraph 87 of the Second Amended Complaint.

## OHAI, HI-LITE AND BLO'S UNLAWFUL ACTS ARE CAUSING ACTUAL CONSUMER CONFUSION

88.    Defendants deny the allegations of paragraph 88 of the Second Amended Complaint.

89.    Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 89 of the Second Amended Complaint and therefore deny the same.

90.    Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 90 of the Second Amended Complaint and therefore deny the same.

91.    Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 91 of the Second Amended Complaint and therefore deny the same.

## HI-LITE AND OHAI'S FALSE PATENT INFRINGEMENT ALLEGATIONS

92.    Defendants reserve the right to answer the allegations of paragraph 92 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, admitted.

93.    Defendants reserve the right to answer the allegations of paragraph 93 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, admitted.

94.    Defendants reserve the right to answer the allegations of paragraph 94 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, admitted.

95.    Defendants reserve the right to answer the allegations of paragraph 95 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, admitted.

96.     Defendants reserve the right to answer the allegations of paragraph 96 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, admitted.

97.     Defendants reserve the right to answer the allegations of paragraph 97 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

98.     Defendants reserve the right to answer the allegations of paragraph 98 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

## THE CLAIMS OF THE '477 PATENT ARE INVALID

99.     Defendants reserve the right to answer the allegations of paragraph 99 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

100.     Defendants reserve the right to answer the allegations of paragraph 100 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, the claims speak for themselves.

101.     Defendants reserve the right to answer the allegations of paragraph 101 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed

herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, the '477 patent speaks for itself.

102.    Defendants reserve the right to answer the allegations of paragraph 102 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

103.    Defendants reserve the right to answer the allegations of paragraph 103 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

104.    Defendants reserve the right to answer the allegations of paragraph 104 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

105.    Defendants reserve the right to answer the allegations of paragraph 105 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

106.    Defendants reserve the right to answer the allegations of paragraph 106 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.  To the extent the rules require Defendants to answer, denied.

107.    Defendants reserve the right to answer the allegations of paragraph 107 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.   To the extent the rules require Defendants to answer, denied.

<u>**COUNT I**</u>
<u>**(Trademark Infringement in Violation of 15 U.S.C. § 1114)**</u>

108.    Defendants admit that paragraphs 1 through 107 of the Second Amended Complaint are incorporated by reference.

109.    Defendants deny the allegations of paragraph 109 of the Second Amended Complaint.

110.    Defendants deny the allegations of paragraph 110 of the Second Amended Complaint.

111.    Defendant Barnlight Originals, Inc. admits using its own marks in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods. Defendants otherwise deny the remaining allegations of paragraph 111 of the Second Amended Complaint.

112.    Defendants deny the allegations of paragraph 112 of the Second Amended Complaint.

113.    Defendants deny the existence of any plan, otherwise Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 113 of the Second Amended Complaint and therefore deny the same.

114.    Defendants deny the allegations of paragraph 114 of the Second Amended Complaint.

115.    Defendants deny the allegations of paragraph 115 of the Second Amended Complaint.

116.    Defendants deny the allegations of paragraph 116 of the Second Amended Complaint.

117.    Defendants deny the allegations of paragraph 117 of the Second Amended Complaint.

## COUNT II
### (Contributory Trademark Infringement)

118.    Defendants admit that paragraphs 1 through 107 of the Second Amended Complaint are incorporated by reference.

119.    Defendant Barnlight Originals, Inc. admits using its own marks in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods. Defendants otherwise deny the remaining allegations of paragraph 119 of the Second Amended Complaint.

120.    Defendant Hi-Lite admits it is a previous supplier to Barn Light Electric. Defendants otherwise deny the remaining allegations of paragraph 120 of the Second Amended Complaint.

121.    Defendant Hi-Lite admits to supplying its products to Barnlight Originals, Inc. Defendants otherwise deny the remaining allegations of paragraph 121 of the Second Amended Complaint.

122.    Defendants deny the allegations of paragraph 122 of the Second Amended Complaint.

123.    Defendants deny the allegations of paragraph 123 of the Second Amended Complaint.

124.    Defendants deny the allegations of paragraph 124 of the Second Amended Complaint.

125.    Defendants deny the allegations of paragraph 125 of the Second Amended Complaint.

## COUNT III
### (Federal Unfair Competition Under 15 U.S.C. § 1125)

126.    Defendants admit that paragraphs 1 through 107 of the Second Amended Complaint are incorporated by reference.

127.    Defendants deny the allegations of paragraph 127 of the Second Amended Complaint.

128.    Defendants deny the allegations of paragraph 128 of the Second Amended Complaint.

129.    Defendants deny the allegations of paragraph 129 of the Second Amended Complaint.

130.    Defendants deny the allegations of paragraph 130 of the Second Amended Complaint.

131.    Defendants deny the allegations of paragraph 131 of the Second Amended Complaint.

## COUNT IV
### (Cancellation of Supplemental Registration
### Under 15 U.S.C. § 1119 Based Upon Confusing Similarity)

132.    Defendants admit that paragraphs 1 through 107 of the Second Amended Complaint are incorporated by reference.

133.    Defendants admit this is a claim for cancellation of Barnlight Original, Inc.'s trademark registration for the mark BARNLIGHT ORIGINALS, INC., U.S. Registration No. 4,464,241, otherwise denied.

134.    Defendants deny the allegations of paragraph 134 of the Second Amended Complaint.

135.    Defendants deny the allegations of paragraph 135 of the Second Amended Complaint.

136.    Defendants admit that Plaintiff seeks cancellation of U.S. Trademark Registration No. 4,464,241.   Defendants deny the remaining allegations of paragraph 136 of the Second Amended Complaint.

## COUNT V
### (Cancellation of Registration
### Under 15 U.S.C. § 1119 Based Upon Confusing Similarity)

137.    Defendants admit that paragraphs 1 through 107 of the Second Amended Complaint are incorporated by reference.

138.    Defendants admit this is a claim for cancellation of Barnlight Original, Inc.'s trademark registration for the design plus word mark BARNLIGHT ORIGINALS, U.S. Registration No. 4,489,514, otherwise denied.

139.    Defendants deny the allegations of paragraph 139 of the Second Amended Complaint.

140.    Defendants deny the allegations of paragraph 140 of the Second Amended Complaint.

141.    Defendants admit that Plaintiff seeks cancellation of U.S. Trademark Registration No. 4,489,514.   Defendants deny the remaining allegations of paragraph 141 of the Second Amended Complaint.

**COUNT VI**
**(Common Law Unfair Competition)**

142.    Defendants admit that paragraphs 1 through 107 of the Second Amended Complaint are incorporated by reference.

143.    Defendants deny the allegations of paragraph 143 of the Second Amended Complaint.

144.    Defendants deny the allegations of paragraph 144 of the Second Amended Complaint.

145.    Defendants deny the allegations of paragraph 145 of the Second Amended Complaint.

146.    Defendants deny the allegations of paragraph 146 of the Second Amended Complaint.

**COUNT VII**
**(Common Law Trademark Infringement)**

147.    Defendants admit that paragraphs 1 through 107 of the Second Amended Complaint are incorporated by reference.

148.    Defendants are without knowledge or information sufficient to enable them to admit or deny the allegations contained in paragraph 148 of the Second Amended Complaint and therefore deny the same.

149.    Defendants deny the allegations of paragraph 149 of the Second Amended Complaint.

150.    Defendants deny the allegations of paragraph 150 of the Second Amended Complaint.

151.    Defendants deny the allegations of paragraph 151 of the Second Amended Complaint.

152.    Defendants deny the allegations of paragraph 152 of the Second Amended Complaint.

## COUNT VIII
## (Cybersquatting in Violation of the ACPA)

153.    Defendants admit that paragraphs 1 through 107 of the Second Amended Complaint are incorporated by reference.

154.    Defendants deny the allegations of paragraph 154 of the Second Amended Complaint.

155.    Defendants deny the allegations of paragraph 155 of the Second Amended Complaint.

156.    Defendants deny the allegations of paragraph 156 of the Second Amended Complaint.

157.    Defendants deny the allegations of paragraph 157 of the Second Amended Complaint.

158.   Defendants deny the allegations of paragraph 158 of the Second Amended Complaint.

159.   Defendants deny the allegations of paragraph 159 of the Second Amended Complaint.

160.   Defendants deny the allegations of paragraph 160 of the Second Amended Complaint.

161.   Defendants deny the allegations of paragraph 161 of the Second Amended Complaint.

**Count IX**
**(Declaratory Judgment of Non-infringement of the '477 Patent)**

162.   Defendants reserve the right to answer the allegations of paragraph 162 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

163.   Defendants reserve the right to answer the allegations of paragraph 163 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

164.   Defendants reserve the right to answer the allegations of paragraph 164 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

165.   Defendants reserve the right to answer the allegations of paragraph 165 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

<u>**Count X**</u>
<u>**(Declaratory Judgment of Invalidity of the '477 Patent)**</u>

166.    Defendants reserve the right to answer the allegations of paragraph 166 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

167.    Defendants reserve the right to answer the allegations of paragraph 167 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

168.    Defendants reserve the right to answer the allegations of paragraph 168 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

169.    Defendants reserve the right to answer the allegations of paragraph 169 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

170.    Defendants reserve the right to answer the allegations of paragraph 170 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

<u>**Count XI**</u>
<u>**(Declaratory Judgment of Unenforceability of the '477 Patent)**</u>

171.    Defendants reserve the right to answer the allegations of paragraph 171 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

172.    Defendants reserve the right to answer the allegations of paragraph 172 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

173.    Defendants reserve the right to answer the allegations of paragraph 173 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

174.    Defendants reserve the right to answer the allegations of paragraph 174 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

175.    Defendants reserve the right to answer the allegations of paragraph 175 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

176.    Defendants reserve the right to answer the allegations of paragraph 176 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

177.    Defendants reserve the right to answer the allegations of paragraph 177 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

178.    Defendants reserve the right to answer the allegations of paragraph 178 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

179.     Defendants reserve the right to answer the allegations of paragraph 179 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

180.     Defendants reserve the right to answer the allegations of paragraph 180 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

181.     Defendants reserve the right to answer the allegations of paragraph 181 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

182.     Defendants reserve the right to answer the allegations of paragraph 182 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

183.     Defendants reserve the right to answer the allegations of paragraph 183 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

184.     Defendants reserve the right to answer the allegations of paragraph 184 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

185.     Defendants reserve the right to answer the allegations of paragraph 185 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

186.    Defendants reserve the right to answer the allegations of paragraph 186 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

### Count XII
### (Declaration of Noninterference with Patent Rights)

187.    Defendants reserve the right to answer the allegations of paragraph 187 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

188.    Defendants reserve the right to answer the allegations of paragraph 188 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

189.    Defendants reserve the right to answer the allegations of paragraph 189 of the Second Amended Complaint following the Court's ruling on the pending motion to dismiss, filed herewith, for lack of subject matter jurisdiction.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

190.    Plaintiffs failed to state a claim for trademark infringement against Defendants under 15 U.S.C. § 1114 or common law because its alleged marks are merely descriptive and have not acquired distinctiveness or secondary meaning in the minds of the consuming public and thus are not entitled to trademark protection.

### SECOND AFFIRMATIVE DEFENSE

191.    Plaintiff's claims for equitable relief fail because of Plaintiff's unclean hands.

## THIRD AFFIRMATIVE DEFENSE

192.    Defendants are entitled to set-off any potential award of damages to Plaintiff based upon Defendants' counterclaims and third-party complaint.

## FOURTH AFFIRMATIVE DEFENSE

194.    Plaintiff's complaint contains insufficient information to permit Defendants to raise all of its potentially appropriate defense and, therefore, Defendants reserve their rights to amend and/or supplement this Answer with additional affirmative defenses.

## COUNTERCLAIMS, THIRD-PARTY COMPLAINT, AND
## DEMAND FOR JURY TRIAL

Counterclaim-Plaintiffs Barnlight Originals, Inc. ("Barnlight Originals") and Hi-Lite Manufacturing Company, Inc. ("Hi-Lite") (collectively "Counterclaim-Plaintiffs") assert the following Counterclaims against Plaintiff and Counterclaim-Defendant Barn Light Electric Company, LLC ("BLE"), and hereby join Third-Party Defendants Bryan Scott and Donna Scott (collectively "the Scotts").   In support of this Counterclaim and Third-party Complaint, Counterclaim-Plaintiffs allege as follows:

### THE PARTIES

1.      Counterclaim-Plaintiff Barnlight Originals is a corporation organized and existing under the laws of the State of Nevada with its principle place of business in Nevada.

2.      Counterclaim-Plaintiff Hi-Lite is a corporation organized and existing under the laws of the State of California with its principal place of business in California.

3.      Counterclaim-Defendant BLE is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business in the Middle District of Florida.

4.      Third-party Defendant Bryan Scott is a managing member and registered agent of BLE and, upon information and belief, is domiciled in this district.

5.      Third-party Defendant Donna Scott is a managing member of BLE and, upon information and belief, is domiciled in this district.

### NATURE OF ACTION

6.      This is an action against Counterclaim-Defendant BLE for (I) Infringement of a Federally Registered Trademark pursuant to 15 U.S.C. § 1114 et al.; (II) Common Law Trademark Infringement; (III)   Unfair Competition (Trademark Infringement) pursuant to §

43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and Florida common law; (IV) Unfair Competition ("Reverse Passing Off") pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and Florida common law; and (V) False Advertising pursuant to § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

7.      This is also an action against Third-party Defendants Bryan Scott and Donna Scott for (VI) Contributory Infringement of a Federally Registered Trademark; and (VII) Vicarious Infringement of a Federally Registered Trademark.

8.      Upon the U.S. Copyright Office's granting of valid copyright registrations for various photographs and line drawings described herein, Counterclaim-Plaintiffs shall amend this Counterclaim and Third-party Complaint to include claims against BLE for willful and intentional Infringement of Federally-Registered Copyrights and against the Scotts for both Contributory and Vicarious Infringement of Federally-Registered Copyrights.

## VENUE AND JURISDICTION

9.      This Court has jurisdiction under 28 U.S.C. § 1331 for a federal question arising under the laws of the United States, which include violation of the Lanham Act and 28 U.S.C. § 1338(a) for a claim arising under an Act of Congress relating to trademarks.

10.      Counterclaim-Defendant BLE has its principal place of business in this district and the complained infringing acts have been, and continue to be, performed in this district. Third-party Defendants Bryan Scott and Donna Scott are domiciled in this district. Accordingly, personal jurisdiction and venue are proper in the Middle District of Florida.

11.      BLE and the Scotts are operating interactive websites and are soliciting customers in this Judicial District. Furthermore, BLE is infringing upon, and the Scotts are contributorily and vicariously infringing upon, Barnlight Original's federally registered and common law

trademarks in this Judicial District.  Accordingly, personal jurisdiction and venue are proper in the Middle District of Florida

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

13.     The doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is also invoked for claims arising under the law of the State of Florida in regard to common law trademark infringement.

14.     Joinder of Third-party Defendants Bryan and Donna Scott is proper pursuant to Fed. R. Civ. P. 20.

15.     Upon information and belief, the conduct of the Counterclaim-Defendant and Third-party Defendants that is the subject of this action has at all times material to this Complaint occurred in this district.

## BACKGROUND

16.     Jeffrey Ohai is the Vice-President of Hi-Lite Manufacturing, Inc., a premier family-owned manufacturer of lighting since 1958.  Hi-Lite specializes in barn lighting and provides a wide range of American-made quality lighting to its customers.  Mr. Ohai manages the family business and designs most of Hi-Lite's products.

17.     Over the past 56 years, Hi-Lite has achieved success through attention to detail and an unwavering commitment to quality and customer service, using only the finest materials in the construction of high-quality barn lights and decorative lighting.

18.     Hi-Lite has invested millions of dollars in equipment, labor, and intellectual property, which consistently place Hi-Lite at the top of the barn light industry.

19.     Hi-Lite's products have been used in numerous national restaurant chains, hotels, national retail chains, national grocery stores, and big box retailers.

20.    In early 2008, based on Hi-Lite's reputation for quality and customer service, Bryan and Donna Scott, the co-owners of what is now known as BLE, sought the assistance of Mr. Ohai and Hi-Lite for the manufacture and supply of high-quality barn lights.

21.    Also in 2008, the Scotts requested to open an account with Hi-Lite to resell Hi-Lite products as a distributor.

22.    Mr. Ohai and the Scotts reached a handshake agreement in which BLE would purchase barn lights exclusively from Hi-Lite.  In exchange, Hi-Lite gave a 5% discount to BLE on all fully-assembled barn lights and also reduced drop shipment charges for BLE from the standard fifteen dollars to a mere five dollars (hereinafter "the Agreement").

23.    Combined, the discounts provided under the Agreement saved BLE several hundred thousand dollars over the course of about 4 years.

24.    Accordingly, pursuant to the Agreement, BLE was to purchase exclusively from Hi-Lite in exchange for Hi-Lite providing BLE with substantially discounted prices.

25.    Notably, the Agreement was not a "private label" arrangement.  Rather, BLE was selling lighting fixtures under the well-known and highly-regarded Hi-Lite name.

26.    The Scotts and BLE even went so far as to proudly tout their relationship with Hi-Lite as their sole source of barn lights in their Winter 2008-2009 catalog, 100% of which featured products manufactured by Hi-Lite, describing the relationship as follows:

> Soon the demand for Bryan's lighting exceeded the resources within his small barn.  Unable to keep up with the demand, he began looking for help.  Through his extensive research of the lighting industry, he found a true American Manufacturer who could manufacture barn lighting  with the same high standards he had set for himself.  The manufacturer was able to produce quality commercial grade barn lighting and manufacture it faster than Bryan.

> See Exhibit A.

27.     Throughout the course of their business relationship, Mr. Ohai would often host the Scotts at the Hi-Lite manufacturing facility, giving them tours and showing them the Hi-Lite manufacturing process.

28.     Unbeknownst to Mr. Ohai and Hi-Lite, however, the motivation for the Scotts' visits to the facility was less than honorable, for it was only a matter of time before the Scotts and BLE were secretly manufacturing products confusingly similar to those of Hi-Lite by using the processes devised by Hi-Lite over the course of about 50 years of business.

29.     Between 2008-2009, the Scotts told Mr. Ohai and Hi-Lite of their intention to procure a porcelain baking oven.

30.     Upon learning of BLE's intent to purchase a baking oven, Hi-Lite reminded BLE and the Scotts of the terms of the Agreement, and reiterated its position that it did not want to do business with a company that has the ability to manufacture the same types of products that Hi-Lite produces.

31.     The Scotts assured Mr. Ohai and Hi-Lite that it was not their intent to manufacture light fixtures similar to those manufactured by Hi-Lite.

32.     However, upon information and belief, BLE began manufacturing and selling their own lighting fixtures that were confusingly similar to those manufactured by Hi-Lite.

33.     Upon information and belief, BLE had secretly purchased the equipment necessary to manufacture "RLMs" (i.e. Reflector and Lamp Manufacturer) including metal spinning lathes required to spin metal shades.

34.     Although BLE was using Hi-Lite's product photographs, line drawings, installation sheets, descriptive artwork, product codes, part numbers, color codes, and color charts in its advertising, BLE was actually shipping its own products to customers.

35.     BLE purposefully hid these activities from Mr. Ohai and Hi-Lite so that it could continue to reap substantial savings under the Agreement.

36.     Further, in 2010, while representing in their catalog that each piece is "still handcrafted and American-made" (See Exhibit B, in particular the back cover), BLE and the Scotts were systematically deceiving their customers and Hi-Lite by breaching the Agreement and selling both BLE-manufactured products and lower-quality, Chinese-manufactured products to their customers, as well as shipping BLE products on orders using Hi-Lite part numbers.

37.     Thus, while still subject to the Agreement, BLE was actually supplying non-Hi-Lite products.

38.     In fact, on August 25, 2010, Bryan Scott admitted to shipping Chinese-manufactured products in an email to Hi-Lite, which described all of BLE's sales from January 1, 2010 to August 25, 2010 of products manufactured in China by Millennium Lighting.  See Exhibit C (email from Bryan Scott to Hi-Lite).

39.     Mr. Scott also admitted to the lower quality of the Chinese-manufactured products in a subsequent email to the same Hi-Lite employee dated August 26, 2010, describing the products as "CHINA S---."  See Exhibit D (email from Bryan Scott to Hi-Lite).

40.     Thus, while still subject to the terms of the Agreement, BLE was willfully and intentionally breaching the Agreement and deceiving its customers into thinking they were purchasing high-quality Hi-Lite products when in fact they were receiving lower quality non-Hi-Lite manufactured products.

41.     Determined to maintain a positive business relationship with BLE and the Scotts, Hi-Lite decided it would continue to honor the terms of the Agreement with BLE, so long as BLE would cease passing off foreign-made products as those of Hi-Lite.

42.     Yet, upon information and belief, BLE continued to use Hi-Lite's copyrighted photographs, product drawings, and part numbers in its advertising, all the while selling products of another manufacturer... the quintessential "bait-and-switch."

43.     To make matters worse, almost on a daily basis, Hi-Lite often referred its own customers to BLE to purchase Hi-Lite products.  Those customers, however, would subsequently receive lower-quality products that were not manufactured by Hi-Lite.

44.     Then again, on May 10, 2011, in the face of BLE's continued willful and systematic fraud perpetrated upon Hi-Lite and its customers, Hi-Lite reiterated its desire for BLE and the Scotts to honor their distribution agreement.  See Exhibit E.

45.     For nearly another year and a half, BLE and the Scotts advertised Hi-Lite products and shipped to its customers products manufactured by companies other than Hi-Lite.

46.     Mr. Ohai ultimately investigated the matter by ordering a Hi-Lite product from BLE in January of 2012.  He discovered that while the invoice reflected Hi-Lite's part numbers, the lamps delivered were not Hi-Lite lamps at all!  See composite Exhibit F (showing Hi-Lite part numbers on invoice and BLE product).

47.     Following this discovery, on September 4, 2012, Hi-Lite terminated its relationship with BLE.  See Exhibit G.

48.     On September 7, 2012, Hi-Lite sent an email to Donna Scott at BLE informing them that they should remove all of Hi-Lite's copyrighted photographs and product drawings depicting Hi-Lite products from their website.  See Exhibit H.

49.     After Hi-Lite's termination of its business relationship with BLE, the Scotts and BLE continued using Hi-Lite's copyrighted photographs in their advertising to trade on the Hi-Lite's well-established goodwill in the lighting industry and deceive their customers into

purchasing inferior products.  Exhibit I includes examples of Hi-Lite photography and Hi-Lite products being used to sell BLE products.  Numerous examples of this can be found on BLE's website to this day.

50.     After Hi-Lite's termination of its business relationship with BLE, the Scotts and BLE continued using Hi-Lite's part numbers in their advertising to trade on the Hi-Lite's well-established goodwill in the lighting industry and deceive their customers into purchasing inferior products.

51.     After Hi-Lite's termination of its business relationship with BLE, the Scotts and BLE continued using Hi-Lite's copyrighted product drawings in their advertising to trade on the Hi-Lite's well-established goodwill in the lighting industry and deceive their customers into purchasing inferior products.  See Exhibit J (showing a printout from the Wayback Machine depicting BLE's use of Hi-Lite's product drawings on its website on October 8, 2012, which is more than a month after Hi-Lite's termination of the Agreement).

52.     The Scotts' and BLE's willful, intentional, and systematic deception of their customers has irreparably harmed, and continues to irreparably harm, the reputation and goodwill associated with Hi-Lite products.

53.     Composite Exhibit K includes print-outs from BLE's website.  They are pages from magazines, such as "Old House Interiors," "This Old House," and "Country Living." BLE's website offers these as examples of BLE's products being featured in national publications.

54.     Each of the magazines in composite Exhibit K include a link to a corresponding magazine article.  Exhibit L is a composite exhibit showing some of these articles.  In each case, it is a Hi-Lite fixture that is depicted and <u>not</u> a BLE fixture.

55.     Making matters worse is that many of the articles depicted in Exhibit L link to a page on the BLE website that allows consumers to purchase a BLE product.

56.     Exhibit M depicts the page that links from the "Arts and Crafts Fall 2011" cover depicted in Exhibit L, which invites the consumer to purchase BLE's "Outback Gooseneck Light," a BLE product.

57.     Exhibit N depicts the page that links from the "Cambria Style Summer 2010" cover depicted in Exhibit L, which invites the consumer to purchase BLE's "Barn Light Benjamin Industrial Pendant," a BLE product.

58.     Exhibit O depicts the page that links from the "Space Coast Living April 2011" cover depicted in Exhibit L, which invites the consumer to select from a variety of BLE's Gooseneck Lighting products.

59.     Exhibit P depicts the page that links from the "The Week May 2010" cover depicted in Exhibit L, which invites the consumer to purchase BLE's "The Outback Cord Hung Pendant," a BLE product.

60.     As of the filing of this Counterclaim and Third-party Complaint, BLE also continues to use photographs of Hi-Lite products to advertise on third-party websites such as www.houzz.com.   See Exhibit Q (a composite exhibit of webpages from the www.houzz.com website depicting numerous instances of BLE passing off Hi-Lite products as their own, along with evidence of actual consumer confusion in the comment sections).

61.     Most egregious of all is BLE's misrepresentation to this Court of its media coverage in Exhibit 1 of the Second Amended Complaint, in which they boldly depict several magazine covers portraying actual Hi-Lite products.  See Exhibit R.

62.     Discouraged by the Scotts' and BLE's willfully deceptive business practices, and without an online distributor that Hi-Lite could work closely with to market product effectively on the internet, Mr. Ohai decided to go into business for himself, founding Barnlight Originals, Inc., an American lighting retailer supplying top-quality lighting products.

63.     Barnlight Originals registered the BARNLIGHT ORIGINALS, INC. word mark on the Supplemental Register (U.S. Registration Number 4,464,241) (See Exhibit S) and the BARNLIGHT ORIGINALS logo on the Principle Register (U.S. Registration Number 4,489,514) (See Exhibit T) in connection with "on-line retail store services featuring commercial and residential lighting, lamps and accessories." (collectively "the Barnlight Originals Marks"). The trademarks have been in continuous use since January 2013.

64.     Barnlight Originals also has common law rights in the mark "Barnlight Originals" by having used the mark in commerce.

65.     Barnlight Originals also registered the domain name www.barnlightoriginals.com so that they could share their passion for high-quality barn lights with consumers throughout the country and around the world.

66.     Determined to continue their quest to trade on the reputation and goodwill associated with Mr. Ohai, Hi-Lite, and now Barnlight Originals, the Scotts and BLE systematically, willfully, and intentionally, infringed the Barnlight Originals Marks.

67.     The Scotts and BLE also intimidated and scared a supplier of light fixtures to no longer supply its products to Barnlight Originals.

68.     In the course of monitoring the marketplace for use of the Barnlight Originals Marks, Mr. Ohai discovered the website www.barnlightelectric.com/barn-light-originals.html

(the "Infringing Website").   The Infringing Website includes a bold headline advertising "Barnlight Originals".  See Exhibit U.

69.     As a result of the Infringing Website, consumers are presented with the following search result when attempting to locate Barnlight Originals via the Google search engine.

**Barn Light Originals**™ | Authentic RLM Lighting by ...
www.**barnlight**electric.com/**barn-light-originals**.html ▾
Shop our **original** barn lighting for quality warehouse shade pendants, goosenecks, and wall sconce lighting. Made in America, these custom **barnlights** last a ...

70.     The Infringing Website is operated by BLE, is registered to Bryan Scott (See Exhibit V), and is targeted to individuals seeking barn lights with the intent of causing consumer confusion.

71.     Upon information and belief, the Scotts and/or BLE exercise control over and directly profit from the Infringing Website.

72.     Upon information and belief, the Scotts and/or BLE know or have reason to know of the Infringing Website and its use of the term "Barn Light Originals" in its advertising.

73.     As of October 2014, more than two years after Hi-Lite's termination of the Agreement, BLE continues its systematic deception of its customers by displaying photos of Hi-Lite products to lure their customers into purchasing products manufactured by BLE.  See Exhibit W (depicting a webpage from the BLE website displaying photographs of Hi-Lite products).

## COUNT I – INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK
### (Counterclaim-Defendant BLE)

74.     Barnlight Originals realleges all of the allegations set forth in paragraphs 1-73 hereinabove.

75.     This is a suit for trademark infringement that arises under the trademark laws of the United States, namely, Title 15 of the United States Code and more particularly, 15 U.S.C § 1114 et al.

76.     BLE intentionally uses the mark BARN LIGHT ORIGINALS on its website (See Exhibit U) in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, as to the affiliation, connection, or association of BLE with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

77.     By virtue of the foregoing, BLE has infringed and is infringing Trademark Registration Nos. 4,464,241 and 4,489,514.

78.     BLE's conduct has created and will create confusion among the members of the relevant consuming public.

79.     Barnlight Originals has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill.  Barnlight Originals has been damaged by BLE's use of the mark BARN LIGHT ORIGINALS due to the confusing similarity with Barnlight Originals' BARNLIGHT ORIGINALS, INC® registered mark.

80.     Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Barnlight Originals is entitled to recover (1) BLE's profits, (2) any damages sustained by Barnlight Originals, and (3) the costs and attorneys' fees of the action and to obtain a permanent injunction enjoining the BLE from any further use of the infringing trademarks.

## COUNT II – FLORIDA COMMON LAW TRADEMARK INFRINGEMENT
### (Counterclaim-Defendant BLE)

81.     Barnlight Originals realleges all of the allegations set forth in paragraphs 1-73 hereinabove.

82.     BLE intentionally uses the mark BARN LIGHT ORIGINALS on its website (See Exhibit U) in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, as to the affiliation, connection, or association of BLE with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

83.     By virtue of the foregoing, BLE has infringed and is infringing Barnlight Originals' common law rights to BARNLIGHT ORIGINALS.

84.     For many years, Hi-Lite has used distinctive part numbers to sell its products to consumers.  These numbers include, among others, H-15116, HL-A, H-CGU-F, and 91/CGU-CLR.

85.     BLE is unlawfully using confusingly similar part numbers to sell identical or related goods.  This is likely to cause confusion, mistake and/or to deceive the public.

86.     Barnlight Originals has been damaged by BLE's misappropriation and use of a confusingly similar trademark and will continue to be damaged by any further such use.

## COUNT III – UNFAIR COMPETITION (TRADEMARK INFRINGEMENT)
### (Counterclaim-Defendant BLE)

87.     Counterclaim-Plaintiffs reallege all of the allegations set forth in paragraphs 1-73 hereinabove.

88.     BLE intentionally uses the mark BARN LIGHT ORIGINALS in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely

to cause confusion or mistake, as to the affiliation, connection, or association of BLE with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

89.     In violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and Florida common law, BLE has engaged in acts of unfair competition by using in commerce the mark BARN LIGHT ORIGINALS as well as Hi-Lite part numbers in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the BLE with Counterclaim-Plaintiffs, or as to the origin, sponsorship, or approval of its goods.

90.     Upon information and belief, BLE's acts of unfair competition were done with the intent to damage the reputation and goodwill associated with Counterclaim-Plaintiffs' goods and otherwise harm the business interests of Counterclaim-Plaintiffs.

91.     By reason of the foregoing, Counterclaim-Plaintiffs have suffered, and are continuing to suffer, irreparable harm and damage and a loss of goodwill.

92.     Counterclaim-Plaintiffs have no adequate remedy of law.

93.     Counterclaim-Plaintiffs have suffered damages as a result of the unfair competition and, pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, is entitled to recover (1) BLE's profits, (2) any damages sustained by Counterclaim-Plaintiffs, and (3) the costs of the action and to obtain a preliminary and a permanent injunction enjoining BLE from any further use of the infringing trademarks and a destruction order mandating the destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of BLE, bearing the infringing trademarks. Further, under common law, Counterclaim-Plaintiffs are entitled to recover all damages

proximately caused by the unfair competition and, due to the willful nature of the unfair competition, is entitled to an award of punitive damages.

### COUNT IV – UNFAIR COMPETITION ("REVERSE PASSING OFF")
### (Counterclaim-Defendant BLE)

94.     Hi-Lite realleges all of the allegations set forth in paragraphs 1-73 hereinabove.

95.     In violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) and Florida common law, BLE has engaged in acts of unfair competition by depicting Hi-Lite's products as its own. BLE uses Hi-Lite's part numbers and copyrighted photos, and depictions of Hi-Lite products, to sell another manufacturer's products in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the manufacturer with Hi-Lite, or as to the origin, sponsorship, or approval of its goods.

96.     Upon information and belief, BLE's acts of unfair competition were done with the intent to damage the reputation and goodwill associated with Hi-Lite's goods and otherwise harm the business interests of Hi-Lite.

97.     By reason of the foregoing, Hi-Lite has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill.

98.     Hi-Lite has no adequate remedy of law.

99.     Hi-Lite has suffered damages as a result of the unfair competition and, pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, is entitled to recover (1) BLE's profits, (2) any damages sustained by Hi-Lite, and (3) the costs of the action and to obtain a preliminary and a permanent injunction enjoining BLE from any further use of Hi-Lite part numbers and photographs and a destruction order mandating the destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of BLE, bearing the infringing part numbers and photographs.  Further, under common law, Hi-

42

Lite is entitled to recover all damages proximately caused by the unfair competition and, due to the willful nature of the unfair competition, is entitled to an award of punitive damages.

### COUNT V – FALSE ADVERTISING UNDER § 43(a)(1)(B) OF THE LANHAM ACT (Counterclaim-Defendant BLE)

100.     Hi-Lite realleges all of the allegations set forth in paragraphs 1-73 hereinabove.

101.     BLE uses depictions of Hi-Lite products, uses Hi-Lite part numbers, and uses Hi-Lite photographs, but ships non-Hi-Lite products, thereby deceiving customers into believing they are purchasing genuine Hi-Lite products when they are not.

102.     BLE's online advertisements are false and misleading, have deceived and continue to deceive consumers, the deception has a material effect on the purchasing decisions of consumers, the misrepresented products affect interstate commerce, and Hi-Lite has been injured as a result of BLE's deception.

103.     Barnlight Originals has been damaged by these improper actions, as set forth above, and will continue to be damaged by such actions unless they are so restrained.

### COUNT VI – CONTRIBUTORY INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK (Third-party Defendants Bryan and Donna Scott)

104.     Barnlight Originals realleges all of the allegations set forth in paragraphs 1-73 hereinabove.

105.     In direct competition with Barnlight Originals, and in the same trade area, Bryan and Donna Scott know of, and/or have reason to know of BLE's use the mark BARN LIGHT ORIGINALS in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, as to the affiliation,

connection, or association of BLE with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

106.    Bryan and Donna Scott know or have reason to know of BLE's infringing conduct and have failed to take reasonable precautions against the infringement.

107.    By reason of the foregoing, Bryan and Donna Scotts' conduct has created and will create confusion among the members of the relevant consuming public. Barnlight Originals has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill. Unless this Court restrains Bryan and Donna Scott from contributing to further infringing conduct, Barnlight Originals will continue to suffer irreparable harm, for which it has to adequate remedy at law.

108.    Barnlight Originals has been damaged by Bryan and Donna Scotts' knowledge of, or reason to know of, BLE's use of the mark BARN LIGHT ORIGINALS due to the confusing similarity with Barnlight Originals' BARNLIGHT ORIGINALS, INC.® registered mark.

109.    Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Barnlight Originals is entitled to recover (1) Bryan and Donna Scotts' profits, (2) any damages sustained by Barnlight Originals, and (3) the costs and attorneys' fees of the action and to obtain a permanent injunction enjoining Bryan and Donna Scott from contributing to BLE's use of the infringing trademarks.

**COUNT VII – VICARIOUS INFRINGEMENT OF A
FEDERALLY REGISTERED TRADEMARK
(Third-party Defendants Bryan and Donna Scott)**

110.    Barnlight Originals realleges all of the allegations set forth in paragraphs 1-73 hereinabove.

111.    Bryan and Donna Scott have a direct financial interest in and the right and ability to supervise BLE's use the mark BARN LIGHT ORIGINALS in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, or to cause mistake or to deceive, customers as to the affiliation, connection, or association of BLE with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

112.    Bryan and Donna Scott have both an apparent and actual partnership with BLE and have the ability to exercise joint control over BLE's use of the mark BARN LIGHT ORIGINALS.

113.    By reason of the foregoing, Bryan and Donna Scotts' conduct has vicariously created and will create confusion among the members of the relevant consuming public. Barnlight Originals has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill.  Unless this Court restrains Bryan and Donna Scott from contributing to further infringing conduct, Barnlight Originals will continue to suffer irreparable harm, for which it has no adequate remedy at law.

114.    Barnlight Originals has been damaged by Bryan and Donna Scotts' affiliation with BLE and BLE's use of the mark BARN LIGHT ORIGINALS due to the confusing similarity with Barnlight Originals' BARNLIGHT ORIGINALS, INC.® registered mark.

115.    Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Barnlight Originals is entitled to recover (1) Bryan and Donna Scotts' profits, (2) any damages sustained by Barnlight Originals, and (3) the costs and attorneys' fees of the action and to obtain a permanent injunction enjoining Bryan and Donna Scott from indirectly infringing the BARNLIGHT ORIGINALS, INC.® mark.

## **PRAYER FOR RELIEF**

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants respectfully prays that:

A.       Counterclaim-Defendant and Third-party Defendants, their agents, employees, servants, privies, successors and assigns, and all persons acting in concert, participation or combination with the Counterclaim-Defendant and Third-party Defendants, be permanently enjoined from all acts of direct, contributory, and vicarious trademark infringement;

B.       Counterclaim-Defendant, its agents, employees, servants, privies, successors and assigns, and all persons acting in concert, participation or combination with the Counterclaim-Defendant, be permanently enjoined from all acts of direct, contributory, and vicarious unfair competition;

C.       Counterclaim-Defendant, its agents, employees, servants, privies, successors and assigns, and all persons acting in concert, participation or combination with the Counterclaim-Defendant, be permanently enjoined from all acts of direct, contributory, and vicarious false advertising;

D.       That Counterclaim-Defendant and Third-party Defendants be required to pay to Counterclaim-Plaintiffs damages in a sum to be determined at trial and to account for all gains, profits and advantages derived by the Counterclaim-Defendant and Third-party Defendants;

E.       That Counterclaim-Plaintiffs be awarded treble damages, reasonable attorneys' fees, and the costs and disbursements of this action;

F.       That Counterclaim-Plaintiffs be awarded punitive damages; and

G.       That Counterclaim-Plaintiffs be awarded such other, further, and different relief as the Court deems just and proper.

46

## JURY DEMAND

Defendants hereby demand a trial by jury on all issues so triable as a matter of right.

Date: October 10, 2014               */s/ Michael J. Colitz, III*
                                     Michael J. Colitz, III
                                     Trial Counsel
                                     Florida Bar No. 164348
                                     GRAYROBINSON, P.A.
                                     401 E. Jackson Street, Suite 2700
                                     Tampa, FL 33602
                                     (813) 273-5000
                                     (813) 273-5145 (fax)
                                     michael.colitz@gray-robinson.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2014, I filed the foregoing with the Court's CM/ECF system which will send a Notice of Electronic Filing to all counsel of Record.

                                     */s/ Michael J. Colitz, III*
                                     Michael J. Colitz, III

# 5395153 v1