UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

     Plaintiff,

v.

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation; and JEFFREY L.
OHAI, an individual California Resident,

     Defendants.

_____/     CASE NO. 8:14-cv-01955-MSS-AEP

BARNLIGHT    ORIGINALS,    INC.,    a
Nevada    corporation;    and    HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation,

     Counterclaim Plaintiffs,

v.

BARN  LIGHT  ELECTRIC  COMPANY,
LLC, a Florida limited liability company,

     Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

     Third-Party Defendants.

_____/

**<u>DEFENDANTS' SECOND AMENDED COUNTERCLAIMS, THIRD-PARTY
COMPLAINT, AND DEMAND FOR JURY TRIAL</u>**

Counterclaim-Plaintiffs Barnlight Originals, Inc. ("Barnlight Originals") and Hi-Lite Manufacturing Company, Inc. ("Hi-Lite") (collectively "Counterclaim-Plaintiffs") assert the following Counterclaims against Plaintiff and Counterclaim-Defendant Barn Light Electric Company, LLC ("Barn Light Electric"), and hereby join Third-Party Defendants Bryan Scott and Donna Scott (collectively "the Scotts"). In support of this Counterclaim and Third-party Complaint, Counterclaim-Plaintiffs allege as follows:

## THE PARTIES

1.      Counterclaim-Plaintiff Barnlight Originals is a corporation organized and existing under the laws of the State of Nevada with its principle place of business in Nevada.

2.      Counterclaim-Plaintiff Hi-Lite is a corporation organized and existing under the laws of the State of California with its principal place of business in California.

3.      Counterclaim-Defendant Barn Light Electric is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business in the Middle District of Florida.

4.      Third-party Defendant Bryan Scott is a managing member and registered agent of Barn Light Electric and, upon information and belief, is domiciled in this district.

5.      Third-party Defendant Donna Scott is a managing member of Barn Light Electric and, upon information and belief, is domiciled in this district.

## NATURE OF ACTION

6.      This is an action against Counterclaim-Defendant Barn Light Electric for (I) Infringement of a Federally Registered Trademark pursuant to 15 U.S.C. § 1114 et al.; (II) Common Law Trademark Infringement; (III)  Unfair Competition (Trademark Infringement) pursuant to § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and Florida common

law; (IV) Unfair Competition ("Reverse Passing Off") pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and Florida common law; (V) False Advertising pursuant to § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (VI) Infringement of U.S. Copyright Registration No. VA0001931982 pursuant to 17 U.S.C. § 501; (VII) Infringement of U.S. Copyright Registration No. VA0001931193 pursuant to 17 U.S.C. § 501; (VIII) Infringement of U.S. Copyright Registration No. VA0001931001 pursuant to 17 U.S.C. § 501; and (IX) Trade Dress Infringement pursuant to the Lanham Act.

7.     This is also an action against Third-party Defendants Bryan Scott and Donna Scott for (X) Contributory Infringement of a Federally Registered Trademark; (XI) Vicarious Infringement of a Federally Registered Trademark; (XII) Contributory Infringement of U.S. Copyright Registration No. VA0001931982; (XIII) Contributory Infringement of U.S. Copyright Registration No. VA0001931193; (XIV) Contributory Infringement of U.S. Copyright Registration No. VA0001931001; (XV) Vicarious Infringement of U.S. Copyright Registration No. VA0001931982; (XVI) Vicarious Infringement of U.S. Copyright Registration No. VA0001931193; (XVII) Vicarious Infringement of U.S. Copyright Registration No. VA0001931001; (XVIII) Contributory Trade Dress Infringement; and (XIX) Vicarious Trade Dress Infringement.

## VENUE AND JURISDICTION

8.     This Court has jurisdiction under 28 U.S.C. § 1331 for a federal question arising under the laws of the United States, which include violation of the Lanham Act, violation of the Copyright Act, and 28 U.S.C. § 1338(a) for a claim arising under an Act of Congress relating to copyrights and trademarks.

9.     Counterclaim-Defendant Barn Light Electric has its principal place of business in this district and the complained infringing acts have been, and continue to be, performed in this district.  Third-party Defendants Bryan Scott and Donna Scott are domiciled in this district.  Accordingly, personal jurisdiction and venue are proper in the Middle District of Florida.

10.     Barn Light Electric and the Scotts are operating interactive websites and are soliciting customers in this Judicial District.  Furthermore, Barn Light Electric is infringing upon, and the Scotts are contributorily and vicariously infringing upon, Barnlight Original's federally registered and common law trademarks and federally registered copyrights in this Judicial District.  Accordingly, personal jurisdiction and venue are proper in the Middle District of Florida.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400.

12.     The doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is also invoked for claims arising under the law of the State of Florida in regard to common law trademark infringement and unfair competition.

13.     Joinder of Third-party Defendants Bryan and Donna Scott is proper pursuant to Fed. R. Civ. P. 20.

14.     Upon information and belief, the conduct of the Counterclaim-Defendant and Third-party Defendants that is the subject of this action has at all times material to this Complaint occurred in this district.

## BACKGROUND

15.     Jeffrey Ohai is the Vice-President of Hi-Lite Manufacturing, Inc., a premier family-owned manufacturer of lighting fixtures since 1958.  Hi-Lite specializes in barn lighting

and provides a wide range of American-made quality lighting to its customers. Mr. Ohai manages the family business and designs most of Hi-Lite's products.

16. Over the past 56 years, Hi-Lite has achieved success through attention to detail and an unwavering commitment to quality and customer service, using only the finest materials in the construction of high-quality barn lights and decorative lighting.

17. Hi-Lite has invested millions of dollars in equipment, labor, and intellectual property, which consistently place Hi-Lite at the top of the decorative lighting industry.

18. Hi-Lite's products have been used in numerous national restaurant chains, hotels, national retail chains, national grocery stores, and big box retailers, making the Hi-Lite name synonymous with high-quality barn lights and decorative lighting.

19. In early 2008, based on Hi-Lite's reputation for quality and customer service, Bryan and Donna Scott, the co-owners of what is now known as Barn Light Electric, sought the assistance of Mr. Ohai and Hi-Lite for the manufacture and supply of high-quality barn lights.

20. Also in 2008, the Scotts requested to open an account with Hi-Lite to resell Hi-Lite products as a distributor.

21. Mr. Ohai and the Scotts reached a handshake agreement in which Barn Light Electric would purchase barn lights exclusively from Hi-Lite. In exchange, Hi-Lite gave a 5% discount to Barn Light Electric on all fully-assembled barn lights and also reduced drop shipment charges for Barn Light Electric from the standard fifteen dollars to a mere five dollars (hereinafter "the Agreement").

22. Combined, the discounts provided under the Agreement saved Barn Light Electric several hundred thousand dollars over the course of about 4 years.

23.     Pursuant to the Agreement, Barn Light Electric was to purchase exclusively from Hi-Lite in exchange for Hi-Lite providing Barn Light Electric with substantially discounted prices.

24.     Notably, the Agreement was not a "private label" arrangement. Rather, Barn Light Electric was selling lighting fixtures under the well-known and highly-regarded Hi-Lite name.

25.     The Scotts and Barn Light Electric even went so far as to proudly tout their relationship with Hi-Lite as their sole source of barn lights in their Winter 2008-2009 catalog, 100% of which featured products manufactured by Hi-Lite, describing the relationship as follows:

> Soon the demand for Bryan's lighting exceeded the resources within his small barn. Unable to keep up with the demand, he began looking for help. Through his extensive research of the lighting industry, he found a true American Manufacturer who could manufacture barn lighting with the same high standards he had set for himself. The manufacturer was able to produce quality commercial grade barn lighting and manufacture it faster than Bryan.

See Exhibit A at p.2.

26.     Throughout the course of their business relationship, Mr. Ohai would often host the Scotts at the Hi-Lite manufacturing facility, giving them tours and showing them the Hi-Lite manufacturing process.

27.     Upon information and belief, however, the motivation for the Scotts' visits to the facility was less than honorable, for it was only a matter of time before the Scotts and Barn Light Electric were secretly manufacturing products confusingly similar to those of Hi-Lite by using the processes devised by Hi-Lite over the course of about 50 years of business.

28.     Between 2008-2009, the Scotts told Mr. Ohai and Hi-Lite of their intention to procure a porcelain baking oven.

29.     Upon learning of Barn Light Electric's intent to purchase a porcelain baking oven, Hi-Lite reminded Barn Light Electric and the Scotts of the terms of the Agreement, and reiterated its position that it did not want to do business with a company that manufactures lighting fixtures similar to those manufactured by Hi-Lite.

30.     In response, the Scotts assured Mr. Ohai and Hi-Lite that it was not their intent to manufacture lighting fixtures similar to those manufactured by Hi-Lite.

31.     However, upon information and belief, Barn Light Electric began manufacturing and selling their own lighting fixtures that were confusingly similar to those made by Hi-Lite.

32.     For example, the images in paragraphs 33 through 44 below depict examples of Barn Light Electric products that are confusingly similar to Hi-Lite's products.  Images on the left below are Hi-Lite products and, upon information and belief, the images on the right below are confusingly similar products manufactured by Barn Light Electric with an intent to mimic Hi-Lite's unique and distinctive trade dress.

33.     As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a lamp having a dome-shaped portion and a generally cylindrical portion upstanding from the dome-shaped portion, the cylindrical portion having two distinct diameters with an intermediate step portion therebetween; a horizontal bar engaging both a base portion and the cylindrical portion; and a curved arm extending upwards from the base portion and downwards to the top of the cylindrical portion.




Hi-Lite                             Barn Light Electric

34.   As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a lamp having a ripple-shaped portion and a generally cylindrical portion upstanding from the ripple-shaped portion, the cylindrical portion narrowing as it extends upwards; a horizontal bar engaging both a base portion and the cylindrical portion; and a curved arm extending upwards from the base portion and downwards to the top of the cylindrical portion.





Hi-Lite                             Barn Light Electric

35.     As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a lamp having an outwardly-angled portion and a generally cylindrical portion upstanding from the outwardly-angled portion, the cylindrical portion having two distinct diameters with an intermediate step portion therebetween; a horizontal bar engaging both a base portion and the cylindrical portion; and a curved arm extending upwards from the base portion and downwards to the top of the cylindrical portion.



Hi-Lite                              Barn Light Electric

36.     As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, an outwardly-angled portion and a generally cylindrical portion upstanding from the outwardly-angled portion, the cylindrical portion including a red cage portion; and a domed cap above the cylindrical portion.

 

Hi-Lite                                Barn Light Electric

37.     As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a downwardly-curved cage portion; an elongate bowl portion surrounding a light bulb; a second cage portion encasing the elongate bowl portion; and a domed cap above the bowl portion, the downwardly-curved cage portion extending from an intermediate region of the domed cap.

 

Hi-Lite                                Barn Light Electric

38.     As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a platform or beam having three individual lamps hanging therefrom, each lamp including a

downwardly-curved saucer portion, the saucer portion having a downward step on its upper surface; an elongate bowl portion surrounding a light bulb; a cage portion encasing the elongate bowl portion; and a domed cap above the saucer portion, the domed cap including a groove near its apex.



Hi-Lite                                    Barn Light Electric

39.     As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a central rod extending downward to a central housing; four gooseneck arms extending outwardly from the central housing; a lamp positioned at the end of each gooseneck arm; each lamp including an outwardly-angled portion and a generally cylindrical portion upstanding from the outwardly-angled portion, the cylindrical portion having two distinct diameters with an intermediate step portion therebetween.



40.      As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a central tubular structure reminiscent of traditional pipe fittings and three lamps arranged in a substantially co-planar fashion, each lamp including a downwardly-curved saucer portion having a downward step on its upper surface; an elongate bowl portion surrounding a light bulb; a cage portion encasing the elongate bowl portion; and a domed cap above the saucer portion, the domed cap including a pair of parallel grooves.



Hi-Lite                                    Barn Light Electric

41.      As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a central tubular structure reminiscent of traditional pipe fittings and two lamps arranged in a substantially co-planar fashion, each lamp including a downwardly-curved saucer portion having a downward step on its upper surface; an elongate bowl portion surrounding a light bulb; a cage portion encasing the elongate bowl portion; and a domed cap above the saucer portion, the domed cap including a pair of parallel grooves.



Hi-Lite                                              Barn Light Electric

42.    As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a central tubular structure reminiscent of traditional pipe fittings and four lamps arranged in a substantially co-planar fashion, each lamp including a downwardly-curved saucer portion having a downward step on its upper surface; an elongate bowl portion surrounding a light bulb; a cage portion encasing the elongate bowl portion; and a domed cap above the saucer portion, the domed cap including a pair of parallel grooves.



Hi-Lite                                              Barn Light Electric

43.     As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a central tubular structure reminiscent of traditional pipe fittings and six outwardly-facing lamps arranged in a substantially co-planer fashion, each lamp including an elongate bowl portion surrounding a light bulb and a cage portion encasing the elongate bowl portion.



Hi-Lite                    Barn Light Electric

44.     As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, *inter alia*, a lamp positioned atop a post via a sleeve displaying pairs of vertically-aligned rivets, the lamp having an outwardly-angled upper portion and a generally cylindrical portion upstanding from the outwardly-angled upper portion, the cylindrical portion having two distinct diameters with an intermediate step portion therebetween; and a cage portion surrounding a light bulb.

 

Hi-Lite                    Barn Light Electric

45. Upon information and belief, Barn Light Electric had also secretly purchased the equipment necessary to manufacture "RLMs" (i.e. Reflector and Lamp Manufacturer) including metal spinning lathes required to spin metal shades.

46. Thus, while Barn Light Electric was using Hi-Lite's product photographs, line drawings, installation sheets, descriptive artwork, product codes, part numbers, color codes, and color charts in its advertising, it was actually shipping its own products to customers.

47. Barn Light Electric purposefully hid these activities from Mr. Ohai and Hi-Lite so that it could continue to reap substantial savings under the Agreement.

48. Upon information and belief, and while still subject to the Agreement, Barn Light Electric and the Scotts were systematically deceiving their customers and Hi-Lite by advertising Hi-Lite products and selling both Barn Light Electric-manufactured products and lower-quality, Chinese-manufactured products to their customers in violation of the Agreement. See Exhibit B (depicting 2010 Barn Light Electric catalog advertising Hi-Lite products).

49. Thus, while still subject to the Agreement, Barn Light Electric was actually supplying non-Hi-Lite products.

50. In fact, on August 25, 2010, Bryan Scott admitted to shipping Chinese-manufactured products in an email to Hi-Lite, in which he described all of Barn Light Electric's sales between January 1, 2010 and August 25, 2010 of products manufactured in China by Millennium Lighting. See Exhibit C (email from Bryan Scott to Hi-Lite).

51. Mr. Scott admitted to the lower quality of the Chinese-manufactured products in a subsequent email to the same Hi-Lite employee dated August 26, 2010, describing the products as "CHINA S---." See Exhibit D (email from Bryan Scott to Hi-Lite).

52.    Thus, Barn Light Electric was willfully and intentionally breaching the Agreement and deceiving its customers into thinking they were purchasing high-quality Hi-Lite products when in fact they were receiving lower quality non-Hi-Lite manufactured products.

53.    Hi-Lite demanded that Barn Light Electric cease passing off foreign-made products as those of Hi-Lite, and Barn Light Electric agreed to do the same.

54.    Upon information and belief, however, Barn Light Electric continues to use Hi-Lite's copyrighted photographs, product drawings, and part numbers in its advertising, yet sells products of another manufacturer... the quintessential "bait-and-switch."

55.    To make matters worse, Hi-Lite often referred its own customers to Barn Light Electric to purchase Hi-Lite products.  Upon information and belief, however, those customers would often receive lower-quality products that were not manufactured by Hi-Lite.

56.    On May 10, 2011, Hi-Lite demanded that Barn Light Electric and the Scotts honor their distribution agreement.  See Exhibit E.

57.    On suspicion that Barn Light Electric was continuing its fraudulent practices, Hi-Lite ordered a Hi-Lite product from Barn Light Electric.  While the invoice reflected Hi-Lite's part numbers, color designations, and line drawing designations, the lamps delivered were not Hi-Lite lamps at all!  See composite Exhibit F (showing Hi-Lite product information on invoice and Barn Light Electric product).

58.    Following this discovery, on September 4, 2012, Hi-Lite terminated its relationship with Barn Light Electric.  See Exhibit G.

59.    On September 7, 2012, Hi-Lite sent an email to Donna Scott at Barn Light Electric demanding that Barn Light Electric remove all of Hi-Lite's copyrighted photographs and product drawings depicting Hi-Lite products from their website.  See Exhibit H.

60.     As of the filing of this action, Barn Light Electric and the Scotts continue to use Hi-Lite's copyrighted photographs in their advertising to trade on Hi-Lite's well-established goodwill and deceive their customers into purchasing inferior products.   Exhibit I includes examples of Hi-Lite photography and Hi-Lite products being used to sell Barn Light Electric products.   Numerous examples of this fraudulent practice can be found on Barn Light Electric's website to this day.

61.     For example, the images on the left are copyrighted Hi-Lite photographs and the images on the right are excerpts from Barnlight Electric's website accessed on January 5, 2015:




<u>Hi-Lite</u>                                                    <u>Barn Light Electric</u>





<u>Hi-Lite</u>                                                    <u>Barn Light Electric</u>



Hi-Lite                    Barn Light Electric



Hi-Lite                    Barn Light Electric



Hi-Lite                    Barn Light Electric




Hi-Lite                                    Barn Light Electric




Hi-Lite                                    Barn Light Electric




Hi-Lite                                    Barn Light Electric



Hi-Lite                                    Barn Light Electric

 

Hi-Lite                    Barn Light Electric


62.    After Hi-Lite's termination of its business relationship with Barn Light Electric following Barn Light Electric's breach of the Agreement, Barn Light Electric and the Scotts continued using Hi-Lite's part numbers in their advertising to trade on the Hi-Lite's well-established goodwill in the lighting industry and deceive their customers into purchasing inferior products.

63.    Barn Light Electric and the Scotts also continued using Hi-Lite's copyrighted product drawings in their advertising to trade on the Hi-Lite's well-established goodwill in the lighting industry and deceive their customers into purchasing inferior products.  See Exhibit J (showing a printout from the Wayback Machine depicting Barn Light Electric's use of Hi-Lite's product drawings on its website on October 8, 2012, which is more than a month after Hi-Lite's termination of the Agreement).

64.     The Scotts' and Barn Light Electric's willful, intentional, and systematic deception of their customers has irreparably harmed, and continues to irreparably harm, the reputation and goodwill associated with Hi-Lite products.

65.     Composite Exhibit K includes print-outs from Barn Light Electric's website depicting pages from magazines, such as "Old House Interiors," "This Old House," and "Country Living."  Barn Light Electric's website offers these as examples of Barn Light Electric's products being featured in national publications.

66.     Each of the magazines in composite Exhibit K include a link to a corresponding magazine article.  Exhibit L is a composite exhibit showing some of these articles.  In each case, a Hi-Lite fixture is depicted and <u>not</u> a Barn Light Electric fixture.

67.     Making matters worse is that many of the articles depicted in Exhibit L link to a page on the Barn Light Electric website that allows consumers to purchase a Barn Light Electric product.

68.     Exhibit M depicts the page that links from the "Arts and Crafts Fall 2011" cover depicted in Exhibit L, which invites the consumer to purchase Barn Light Electric's "Outback Gooseneck Light," a Barn Light Electric product.

69.     Exhibit N depicts the page that links from the "Cambria Style Summer 2010" cover depicted in Exhibit L, which invites the consumer to purchase Barn Light Electric's "Barn Light Benjamin Industrial Pendant," a Barn Light Electric product.

70.     Exhibit O depicts the page that links from the "Space Coast Living April 2011" cover depicted in Exhibit L, which invites the consumer to select from a variety of Barn Light Electric's Gooseneck Lighting products.

71.     Exhibit P depicts the page that links from the "The Week May 2010" cover depicted in Exhibit L, which invites the consumer to purchase Barn Light Electric's "The Outback Cord Hung Pendant," a Barn Light Electric product.

72.     As of the filing of this Counterclaim and Third-party Complaint, Barn Light Electric also continues to use photographs of Hi-Lite products to advertise on third-party websites such as www.houzz.com.  See Exhibit Q (a composite exhibit of webpages from the www.houzz.com website depicting numerous instances of Barn Light Electric passing off Hi-Lite products as their own, along with evidence of actual consumer confusion in the comment sections).

73.     Most egregious of all is Barn Light Electric's misrepresentation to this Court of its media coverage in Exhibit 1 of its Second Amended Complaint, in which they boldly depict several magazine covers portraying actual Hi-Lite products.  See Exhibit R.

74.     Discouraged by the Scotts' and Barn Light Electric's willfully deceptive business practices, and without an online distributor that Hi-Lite could work closely with to market product effectively on the internet, Mr. Ohai decided to go into business for himself, founding Barnlight Originals, Inc., an American lighting retailer supplying top-quality lighting products.

75.     Barnlight Originals registered the BARNLIGHT ORIGINALS, INC. word mark on the Supplemental Register (U.S. Registration Number 4,464,241) (See Exhibit S) and the BARNLIGHT ORIGINALS logo on the Principle Register (U.S. Registration Number 4,489,514) (See Exhibit T) in connection with "on-line retail store services featuring commercial and residential lighting, lamps and accessories." (collectively "the Barnlight Originals Marks"). The trademarks have been in continuous use since January 2013.

76. Barnlight Originals also has common law rights in the mark "Barnlight Originals" by having used the mark in commerce.

77. Barnlight Originals registered the domain name www.barnlightoriginals.com, where it offers high-quality barn lights to consumers throughout the country and around the world.

78. Determined to continue their quest to trade on the reputation and goodwill associated with Mr. Ohai, Hi-Lite, and now Barnlight Originals, the Scotts and Barn Light Electric systematically, willfully, and intentionally, infringed the Barnlight Originals Marks.

79. The Scotts and Barn Light Electric also intimidated a supplier of light fixtures to no longer supply its products to Barnlight Originals.

80. In the course of monitoring the marketplace for use of the Barnlight Originals Marks, Mr. Ohai discovered the website www.barnlightelectric.com/barn-light-originals.html (the "Infringing Website"). The Infringing Website includes a bold headline advertising "Barn Light Originals." See Exhibit U.

81. As a result of the Infringing Website, consumers are presented with the following search result when attempting to locate Barnlight Originals via the Google search engine.



82. The Infringing Website is operated by Barn Light Electric, is registered to Bryan Scott (See Exhibit V), and is targeted to individuals seeking barn lights with the intent of causing consumer confusion.

83. Upon information and belief, the Scotts and/or Barn Light Electric exercise control over and directly profit from the Infringing Website.

84.     Upon information and belief, the Scotts and/or Barn Light Electric know or have reason to know of the Infringing Website and its use of the term "Barn Light Originals" in its advertising.

85.     As of October 2014, more than two years after Hi-Lite's termination of the Agreement, Barn Light Electric continues its systematic deception of its customers by displaying photos of Hi-Lite products to lure their customers into purchasing products manufactured by Barn Light Electric.  See Exhibit W (depicting a webpage from the Barn Light Electric website displaying photographs of Hi-Lite products).

## COUNT I – INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK
### (Counterclaim-Defendant Barn Light Electric)

86.     Barnlight Originals realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

87.     This is a suit for trademark infringement arising under the trademark laws of the United States, namely, Title 15 of the United States Code and more particularly, 15 U.S.C § 1114 et al.

88.     Barn Light Electric intentionally uses the mark BARN LIGHT ORIGINALS on its website (See Exhibit U) in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, as to the affiliation, connection, or association of Barn Light Electric with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

89.     By virtue of the foregoing, Barn Light Electric has infringed and is infringing Trademark Registration Nos. 4,464,241 and 4,489,514.

90.     Barn Light Electric's conduct has created and will create confusion among the members of the relevant consuming public.

91.     Barnlight Originals has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill.  Barnlight Originals has been damaged by Barn Light Electric's use of the mark BARN LIGHT ORIGINALS due to the confusing similarity with Barnlight Originals' BARNLIGHT ORIGINALS, INC® registered mark.

92.     Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Barnlight Originals is entitled to recover (1) Barn Light Electric's profits, (2) any damages sustained by Barnlight Originals, and (3) the costs and attorneys' fees of the action and

to obtain a permanent injunction enjoining the Barn Light Electric from any further use of the infringing trademarks.

## COUNT II – FLORIDA COMMON LAW TRADEMARK INFRINGEMENT
### (Counterclaim-Defendant Barn Light Electric)

93.     Barnlight Originals realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

94.     Barn Light Electric intentionally uses the mark BARN LIGHT ORIGINALS on its website (See Exhibit U) in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, as to the affiliation, connection, or association of Barn Light Electric with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

95.     By virtue of the foregoing, Barn Light Electric has infringed and is infringing Barnlight Originals' common law rights to BARNLIGHT ORIGINALS.

96.     For many years, Hi-Lite has used distinctive part numbers to sell its products to consumers.  These numbers include, among others, H-15116, HL-A, H-CGU-F, and 91/CGU-CLR.

97.     Barn Light Electric is unlawfully using confusingly similar part numbers to sell identical or related goods.  This is likely to cause confusion, mistake and/or to deceive the public.

98.     Barnlight Originals has been damaged by Barn Light Electric's misappropriation and use of a confusingly similar trademark and will continue to be damaged by any further such use.

## COUNT III – UNFAIR COMPETITION (TRADEMARK INFRINGEMENT)
### (Counterclaim-Defendant Barn Light Electric)

99.     Counterclaim-Plaintiffs reallege all of the allegations set forth in paragraphs 1-85 hereinabove.

100.    Barn Light Electric intentionally uses the mark BARN LIGHT ORIGINALS in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, as to the affiliation, connection, or association of Barn Light Electric with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

101.    In violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and Florida common law, Barn Light Electric has engaged in acts of unfair competition by using in commerce the mark BARN LIGHT ORIGINALS as well as Hi-Lite part numbers in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Barn Light Electric with Counterclaim-Plaintiffs, or as to the origin, sponsorship, or approval of its goods.

102.    Upon information and belief, Barn Light Electric's acts of unfair competition were done with the intent to damage the reputation and goodwill associated with Counterclaim-Plaintiffs' goods and otherwise harm the business interests of Counterclaim-Plaintiffs.

103.    By reason of the foregoing, Counterclaim-Plaintiffs have suffered, and are continuing to suffer, irreparable harm and damage and a loss of goodwill.

104.    Counterclaim-Plaintiffs have no adequate remedy of law.

105.    Counterclaim-Plaintiffs have suffered damages as a result of the unfair competition and, pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, is entitled to recover (1) Barn Light Electric's profits, (2) any damages

sustained by Counterclaim-Plaintiffs, and (3) the costs of the action and to obtain a preliminary and a permanent injunction enjoining Barn Light Electric from any further use of the infringing trademarks and a destruction order mandating the destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Barn Light Electric, bearing the infringing trademarks. Further, under common law, Counterclaim-Plaintiffs are entitled to recover all damages proximately caused by the unfair competition and, due to the willful nature of the unfair competition, is entitled to an award of punitive damages.

### COUNT IV – UNFAIR COMPETITION ("REVERSE PASSING OFF")
### (Counterclaim-Defendant Barn Light Electric)

106. Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

107. In violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) and Florida common law, Barn Light Electric has engaged in acts of unfair competition by depicting Hi-Lite's products as its own. Barn Light Electric uses Hi-Lite's part numbers and copyrighted photographs, and depictions of Hi-Lite products, to sell another manufacturer's products in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the manufacturer with Hi-Lite, or as to the origin, sponsorship, or approval of its goods.

108. Upon information and belief, Barn Light Electric's acts of unfair competition were done with the intent to damage the reputation and goodwill associated with Hi-Lite's goods and otherwise harm the business interests of Hi-Lite.

109. By reason of the foregoing, Hi-Lite has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill.

110. Hi-Lite has no adequate remedy at law.

111. Hi-Lite has suffered damages as a result of the unfair competition and, pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, is entitled to recover (1) Barn Light Electric's profits, (2) any damages sustained by Hi-Lite, and (3) the costs of the action and to obtain a preliminary and a permanent injunction enjoining Barn Light Electric from any further use of Hi-Lite part numbers, photographs, and other depictions of Hi-Lite products and a destruction order mandating the destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Barn Light Electric, bearing the infringing part numbers and photographs. Further, under common law, Hi-Lite is entitled to recover all damages proximately caused by the unfair competition and, due to the willful nature of the unfair competition, is entitled to an award of punitive damages.

## COUNT V – FALSE ADVERTISING UNDER § 43(a)(1)(B) OF THE LANHAM ACT (Counterclaim-Defendant Barn Light Electric)

112. Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

113. Barn Light Electric uses depictions of Hi-Lite products, uses Hi-Lite part numbers, and uses Hi-Lite photographs, but ships non-Hi-Lite products, thereby deceiving customers into believing they are purchasing genuine Hi-Lite products when they are not.

114. Barn Light Electric's online advertisements are false and misleading, have deceived and continue to deceive consumers, the deception has a material effect on the purchasing decisions of consumers, the misrepresented products affect interstate commerce, and Hi-Lite has been injured as a result of Barn Light Electric's deception.

115. Barnlight Originals has been damaged by these improper actions, as set forth hereinabove, and will continue to be damaged by such actions unless they are so restrained.

**COUNT VI – INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO.
VA0001931982 UNDER 17 U.S.C § 501
(Counterclaim-Defendant Barn Light Electric)**

116.     Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

117.     Hi-Lite owns the copyright to all works comprising "Hi-Lite Manufacturing Company, Inc. Catalog 203" ("Catalog 203"), which is the subject of U.S. Copyright Registration No. VA0001931982 ("the '982 registration").

118.     Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

119.     Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 203.

120.     Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

121.     Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 203 in violation of 17 U.S.C. § 101 *et seq.*

122.     Barn Light Electric's continued reproduction, use, publication, distribution, preparation of derivative works, and display of advertisements including the works comprising Catalog 203 is a direct infringement of Hi-Lite's copyrights in violation of 17 U.S.C § 101 *et seq.*

123.     Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause irreparable injury to Hi-Lite.  Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite.  The damage to Hi-Lite is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement.

124. Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that they are infringing Hi-Lite's copyright in Catalog 203.

125. Barn Light Electric's acts of infringement have been committed willfully.

126. As a result of Barn Light Electric's intentional and willful infringement, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits, and advantages derived by Barn Light Electric, as well as any other damages provided for under the Copyright Act.

## COUNT VII – INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA0001931193 UNDER 17 U.S.C § 501
### (Counterclaim-Defendant Barn Light Electric)

127. Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

128. Hi-Lite owns the copyright to all works comprising "Hi-Lite MFG Co., Inc. Residential Lighting / Commercial Lighting Catalog 205" ("Catalog 205"), which is the subject of U.S. Copyright Registration No. VA0001931193 ("the '193 registration").

129. Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

130. Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 205.

131. Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

132. Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 205 in violation of 17 U.S.C. § 101 *et seq.*

133. Barn Light Electric's continued reproduction, use, publication, distribution, preparation of derivative works, and display of advertisements including the works comprising Catalog 205 is a direct infringement of Hi-Lite's copyrights in violation of 17 U.S.C § 101 *et seq*.

134. Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause irreparable injury to Hi-Lite. Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite. The damage to Hi-Lite is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement.

135. Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that they are infringing Hi-Lite's copyright in Catalog 205.

136. Barn Light Electric's acts of infringement have been committed willfully.

137. As a result of Barn Light Electric's intentional and willful infringement, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits, and advantages derived by Barn Light Electric, as well as any other damages provided for under the Copyright Act.

### COUNT VIII – INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA0001931001 UNDER 17 U.S.C § 501
### (Counterclaim-Defendant Barn Light Electric)

138. Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

139.    Hi-Lite owns the copyright to all works comprising "Hi-Lite Mfg. Co Commercial and Residential Lighting Catalog 208" ("Catalog 208"), which is the subject of U.S. Copyright Registration No. VA0001931001 ("the '001 registration").

140.    Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

141.    Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 208.

142.    Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

143.    Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 208 in violation of 17 U.S.C. § 101 *et seq.*

144.    Barn Light Electric's continued reproduction, use, publication, distribution, preparation of derivative works, and display of advertisements including the works comprising Catalog 208 is a direct infringement of Hi-Lite's copyrights in violation of 17 U.S.C § 101 *et seq.*

145.    Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause irreparable injury to Hi-Lite. Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite. The damage to Hi-Lite is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement.

146.    Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that they are infringing Hi-Lite's copyright in Catalog 208.

147.     Barn Light Electric's acts of infringement have been committed willfully.

148.     As a result of Barn Light Electric's intentional and willful infringement, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits, and advantages derived by Barn Light Electric, as well as any other damages provided for under the Copyright Act.

## COUNT IX – TRADE DRESS INFRINGEMENT
### (Counterclaim-Defendant Barnlight Electric)

149.     Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

150.     This is a suit for trade dress infringement arising under the trademark laws of the United States, namely, Title 15 of the United States Code and more particularly, 15 U.S.C § 1114 et al.

151.     Hi-Lite's product designs are inherently distinctive or have acquired secondary meaning.

152.     Hi-Lite's product designs are primarily nonfunctional.

153.     Barn Light Electric intentionally manufacturers, sells, offers for sale, distributes, or advertises products that are confusingly similar to those of Hi-Lite in a manner likely to cause confusion or mistake, as to the affiliation, connection, or association of Barn Light Electric with Hi-Lite or as to the origin, sponsorship, or approval of Hi-Lite's products and services.

154.     By virtue of the foregoing, Barn Light Electric has infringed and continues to infringe Hi-Lite's trade dress.

155.     Barn Light Electric's conduct has created and will create confusion among the members of the relevant consuming public.

156. Hi-Lite has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill. Hi-Lite has been damaged by Barn Light Electric's manufacture, sale, offers for sale, distribution, or advertisement of products that are confusingly similar to those of Hi-Lite.

157. Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Hi-Lite is entitled to recover (1) Barn Light Electric's profits, (2) any damages sustained by Hi-Lite, and (3) the costs and attorneys' fees of the action and to obtain a permanent injunction enjoining the Barn Light Electric from any further manufacture, sale, or advertisement of its infringing products.

## COUNT X – CONTRIBUTORY INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK
### (Third-party Defendants Bryan and Donna Scott)

158. Barnlight Originals realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

159. In direct competition with Barnlight Originals, and in the same trade area, Bryan and Donna Scott know of, and/or have reason to know of Barn Light Electric's use the mark BARN LIGHT ORIGINALS in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, as to the affiliation, connection, or association of Barn Light Electric with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

160. Bryan and Donna Scott know or have reason to know of Barn Light Electric's infringing conduct and have failed to take reasonable precautions against the infringement.

161. By reason of the foregoing, Bryan and Donna Scotts' conduct has created and will create confusion among the members of the relevant consuming public. Barnlight Originals has

suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill. Unless this Court restrains Bryan and Donna Scott from contributing to further infringing conduct, Barnlight Originals will continue to suffer irreparable harm, for which it has no adequate remedy at law.

162.     Barnlight Originals has been damaged by Bryan and Donna Scotts' knowledge of, or reason to know of, Barn Light Electric's use of the mark BARN LIGHT ORIGINALS due to the confusing similarity with Barnlight Originals' BARNLIGHT ORIGINALS, INC.® registered mark.

163.     Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Barnlight Originals is entitled to recover (1) Bryan and Donna Scotts' profits, (2) any damages sustained by Barnlight Originals, and (3) the costs and attorneys' fees of the action and to obtain a permanent injunction enjoining Bryan and Donna Scott from contributing to Barn Light Electric's use of the infringing trademarks.

### COUNT XI – VICARIOUS INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK (Third-party Defendants Bryan and Donna Scott)

164.     Barnlight Originals realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

165.     Bryan and Donna Scott have a direct financial interest in and the right and ability to supervise Barn Light Electric's use the mark BARN LIGHT ORIGINALS in connection with the sale, offering for sale, distribution, or advertising of products and services in a manner likely to cause confusion or mistake, or to cause mistake or to deceive, customers as to the affiliation, connection, or association of Barn Light Electric with Barnlight Originals or as to the origin, sponsorship, or approval of Barnlight Originals' products and services.

166.    Bryan and Donna Scott have both an apparent and actual partnership with Barn Light Electric and have the ability to exercise joint control over Barn Light Electric's use of the mark BARN LIGHT ORIGINALS.

167.    By reason of the foregoing, Bryan and Donna Scotts' conduct has vicariously created and will create confusion among the members of the relevant consuming public. Barnlight Originals has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill.  Unless this Court restrains Bryan and Donna Scott from contributing to further infringing conduct, Barnlight Originals will continue to suffer irreparable harm, for which it has no adequate remedy at law.

168.    Barnlight Originals has been damaged by Bryan and Donna Scotts' affiliation with Barn Light Electric and Barn Light Electric's use of the mark BARN LIGHT ORIGINALS due to the confusing similarity with Barnlight Originals' BARNLIGHT ORIGINALS, INC.® registered mark.

169.    Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Barnlight Originals is entitled to recover (1) Bryan and Donna Scotts' profits, (2) any damages sustained by Barnlight Originals, and (3) the costs and attorneys' fees of the action and to obtain a permanent injunction enjoining Bryan and Donna Scott from indirectly infringing the BARNLIGHT ORIGINALS, INC.® mark.

### COUNT XII – CONTRIBUTORY INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA0001931982
### (Third-party Defendants Bryan and Donna Scott)

170.    Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

171.    Hi-Lite owns the copyright to all works comprising Catalog 203, which is the subject of the '982 registration.

172. Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

173. Third-party Defendants Bryan and Donna Scott and Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 203.

174. The Scotts' and Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

175. Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 203 in violation of 17 U.S.C. § 101 *et seq*.

176. The Scotts know of and/or have reason to know of, have induced, caused, and/or materially contributed to Barn Light Electric's infringement of Hi-Lite's copyrights in the works comprising Catalog 203.

177. The Scotts' contribution to Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause irreparable injury to Hi-Lite. Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite. The damage to Hi-Lite is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement.

178. The Scotts' contribution to Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that Barn Light Electric is infringing Hi-Lite's copyright in Catalog 203.

179. The Scotts' acts contributing to Barn Light Electric's infringement have been committed willfully.

180. As a result of the Scotts' intentional and willful acts, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits, and advantages derived by the Scotts, as well as any other damages provided for under the Copyright Act.

## COUNT XIII – CONTRIBUTORY INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA00001931193
### (Third-party Defendants Bryan and Donna Scott)

181. Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

182. Hi-Lite owns the copyright to all works comprising Catalog 205, which is the subject of the '193 registration.

183. Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

184. Third-party Defendants Bryan and Donna Scott and Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 205.

185. The Scotts' and Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

186. Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 205 in violation of 17 U.S.C. § 101 *et seq*.

187. The Scotts know of and/or have reason to know of, have induced, caused, and/or materially contributed to Barn Light Electric's infringement of Hi-Lite's copyrights in the works comprising Catalog 205.

188. The Scotts' contribution to Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause

irreparable injury to Hi-Lite. Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite. The damage to Hi-Lite is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement.

189.     The Scotts' contribution to Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that Barn Light Electric is infringing Hi-Lite's copyright in Catalog 205.

190.     The Scotts' acts contributing to Barn Light Electric's infringement have been committed willfully.

191.     As a result of the Scotts' intentional and willful acts, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits, and advantages derived by the Scotts, as well as any other damages provided for under the Copyright Act.

## COUNT XIV – CONTRIBUTORY INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA0001931001
### (Third-party Defendants Bryan and Donna Scott)

192.     Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

193.     Hi-Lite owns the copyright to all works comprising Catalog 208, which is the subject of the '001 registration.

194.     Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

195.    Third-party Defendants Bryan and Donna Scott and Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 208.

196.    The Scotts' and Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

197.    Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 208 in violation of 17 U.S.C. § 101 *et seq*.

198.    The Scotts know of and/or have reason to know of, have induced, caused, and/or materially contributed to Barn Light Electric's infringement of Hi-Lite's copyrights in the works comprising Catalog 208.

199.    The Scotts' contribution to Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause irreparable injury to Hi-Lite.  Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite.  The damage to Hi-Lite is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement.

200.    The Scotts' contribution to Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that Barn Light Electric is infringing Hi-Lite's copyright in Catalog 208.

201.    The Scotts' acts contributing to Barn Light Electric's infringement have been committed willfully.

202.    As a result of the Scotts' intentional and willful acts, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits,

and advantages derived by the Scotts, as well as any other damages provided for under the Copyright Act.


## COUNT XV – VICARIOUS INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA0001931982
### (Third-party Defendants Bryan and Donna Scott)

203.    Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

204.    Hi-Lite owns the copyright to all works comprising Catalog 203, which is the subject of the '982 registration.

205.    Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

206.    Third-party Defendants Bryan and Donna Scott and Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 203.

207.    The Scotts' and Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

208.    Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 203 in violation of 17 U.S.C. § 101 *et seq.*

209.    The Scotts participate in, exercise control over, and receive a direct financial benefit from Barn Light Electric's infringement of Hi-Lite's copyrights in the works comprising Catalog 203, and thus are vicariously liable for such infringement.

210.    The Scotts' contribution to Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause irreparable injury to Hi-Lite.  Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite.  The damage to Hi-Lite is, and will

continue to be, irreparable at least because of the continuing nature of the copyright infringement.

211. The Scotts' contribution to Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that Barn Light Electric is infringing Hi-Lite's copyright in Catalog 203.

212. The Scotts' acts contributing to Barn Light Electric's infringement have been committed willfully.

213. As a result of the Scotts' intentional and willful acts, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits, and advantages derived by the Scotts, as well as any other damages provided for under the Copyright Act.

## COUNT XVI – VICARIOUS INFRINGEMENT OF U.S. COPYRIGHT REGISTRATION NO. VA00001931193
### (Third-party Defendants Bryan and Donna Scott)

214. Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

215. Hi-Lite owns the copyright to all works comprising Catalog 205, which is the subject of the '193 registration.

216. Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

217. Third-party Defendants Bryan and Donna Scott and Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 205.

218. The Scotts' and Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

219. Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 205 in violation of 17 U.S.C. § 101 *et seq*.

220. The Scotts participate in, exercise control over, and receive a direct financial benefit from Barn Light Electric's infringement of Hi-Lite's copyrights in the works comprising Catalog 205, and thus are vicariously liable for such infringement.

221. The Scotts' contribution to Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause irreparable injury to Hi-Lite. Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite. The damage to Hi-Lite is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement.

222. The Scotts' contribution to Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that Barn Light Electric is infringing Hi-Lite's copyright in Catalog 205.

223. The Scotts' acts contributing to Barn Light Electric's infringement have been committed willfully.

224. As a result of the Scotts' intentional and willful acts, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits, and advantages derived by the Scotts, as well as any other damages provided for under the Copyright Act.

**COUNT XVII – VICARIOUS INFRINGEMENT OF U.S. COPYRIGHT**
**REGISTRATION NO. VA0001931001**
**(Third-party Defendants Bryan and Donna Scott)**

225.    Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 herein above.

226.    Hi-Lite owns the copyright to all works comprising Catalog 208, which is the subject of the '001 registration.

227.    Hi-Lite has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

228.    Third-party Defendants Bryan and Donna Scott and Counterclaim-Defendant Barn Light Electric had access to the works comprising Catalog 208.

229.    The Scotts' and Barn Light Electric's conduct as set forth herein has been without the permission, consent, or license of Hi-Lite.

230.    Barn Light Electric has, by virtue of its above-described acts, directly infringed upon Hi-Lite's copyrights in Catalog 208 in violation of 17 U.S.C. § 101 *et seq.*

231.    The Scotts participate in, exercise control over, and receive a direct financial benefit from Barn Light Electric's infringement of Hi-Lite's copyrights in the works comprising Catalog 208, and thus are vicariously liable for such infringement.

232.    The Scotts' contribution to Barn Light Electric's infringement of Hi-Lite's copyrights is causing irreparable injury to Hi-Lite and, unless enjoined, will continue to cause irreparable injury to Hi-Lite.  Hi-Lite has suffered and will continue to suffer damage, the exact amount of damage being currently unknown to Hi-Lite.  The damage to Hi-Lite is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement.

233. The Scotts' contribution to Barn Light Electric's acts of infringement have been committed, and are continuing to be committed, with the knowledge that Barn Light Electric is infringing Hi-Lite's copyright in Catalog 208.

234. The Scotts' acts contributing to Barn Light Electric's infringement have been committed willfully.

235. As a result of the Scotts' intentional and willful acts, Hi-Lite is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits, and advantages derived by the Scotts, as well as any other damages provided for under the Copyright Act.

## COUNT XVIII – CONTRIBUTORY TRADE DRESS INFRINGEMENT
### (Third-party Defendants Bryan and Donna Scott)

236. Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

237. In direct competition with Hi-Lite, and in the same trade area, Bryan and Donna Scott know of, and/or have reason to know of Barn Light Electric's manufacture, sale, offering for sale, distribution, or advertising of products confusingly similar to those of Hi-Lite in a manner likely to cause confusion or mistake, as to the affiliation, connection, or association of Barn Light Electric with Hi-Lite or as to the origin, sponsorship, or approval of Hi-Lite's products and services.

238. Bryan and Donna Scott know or have reason to know of Barn Light Electric's infringing conduct and have failed to take reasonable precautions against the infringement.

239. By reason of the foregoing, Bryan and Donna Scotts' conduct has created and will create confusion among the members of the relevant consuming public. Hi-Lite has suffered,

and is continuing to suffer, irreparable harm and damage and a loss of goodwill. Unless this Court restrains Bryan and Donna Scott from contributing to further infringing conduct, Hi-Lite will continue to suffer irreparable harm, for which it has no adequate remedy at law.

240.     Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Hi-Lite is entitled to recover (1) Bryan and Donna Scotts' profits, (2) any damages sustained by Hi-Lite, and (3) the costs and attorneys' fees of the action and to obtain a permanent injunction enjoining Bryan and Donna Scott from contributing to Barn Light Electric's manufacture, sale, or advertisement of its infringing products.


### COUNT XIX – VICARIOUS TRADE DRESS INFRINGEMENT
### (Third-party Defendants Bryan and Donna Scott)

241.     Hi-Lite realleges all of the allegations set forth in paragraphs 1-85 hereinabove.

242.     Bryan and Donna Scott have a direct financial interest in and the right and ability to supervise Barn Light Electric's manufacture, sale, offering for sale, distribution, or advertising of products confusingly similar to those of Hi-Lite in a manner likely to cause confusion or mistake, or to cause mistake or to deceive, customers as to the affiliation, connection, or association of Barn Light Electric with Hi-Lite or as to the origin, sponsorship, or approval of Hi-Lite's products and services.

243.     Bryan and Donna Scott have both an apparent and actual partnership with Barn Light Electric and have the ability to exercise joint control over Barn Light Electric's manufacture, sale, offering for sale, distribution, or advertising of products confusingly similar to those of Hi-Lite

244.     By reason of the foregoing, Bryan and Donna Scotts' conduct has vicariously created and will create confusion among the members of the relevant consuming public. Hi-Lite

has suffered, and is continuing to suffer, irreparable harm and damage and a loss of goodwill. Unless this Court restrains Bryan and Donna Scott from contributing to further infringing conduct, Hi-Lite will continue to suffer irreparable harm, for which it has no adequate remedy at law.

245. Hi-Lite has been damaged by Bryan and Donna Scotts' affiliation with Barn Light Electric and Barn Light Electric's manufacture, sale, offering for sale, distribution, or advertising of products confusingly similar to those of Hi-Lite.

246. Pursuant to the remedies set forth in Sections 34-36 of the Lanham Act, 15 U.S.C. §§1116-1118, Hi-Lite is entitled to recover (1) Bryan and Donna Scotts' profits, (2) any damages sustained by Hi-Lite, and (3) the costs and attorneys' fees of the action and to obtain a permanent injunction enjoining Bryan and Donna Scott from indirectly infringing the trade dress of Hi-Lite products.

## **PRAYER FOR RELIEF**

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants respectfully prays that:

A. Counterclaim-Defendant and Third-party Defendants, their agents, employees, servants, privies, successors and assigns, and all persons acting in concert, participation or combination with the Counterclaim-Defendant and Third-party Defendants, be permanently enjoined from all acts of direct, contributory, and vicarious trademark infringement;

B. Counterclaim-Defendant, its agents, employees, servants, privies, successors and assigns, and all persons acting in concert, participation or combination with the Counterclaim-Defendant, be permanently enjoined from all acts of direct, contributory, and vicarious unfair competition;

C.      Counterclaim-Defendant, its agents, employees, servants, privies, successors and assigns, and all persons acting in concert, participation or combination with the Counterclaim-Defendant, be permanently enjoined from all acts of direct, contributory, and vicarious false advertising;

D.      That Counterclaim-Defendant and Third-party Defendants be required to pay to Counterclaim-Plaintiffs damages in a sum to be determined at trial and to account for all gains, profits and advantages derived by the Counterclaim-Defendant and Third-party Defendants;

E.      That Counterclaim-Plaintiffs be awarded treble damages, reasonable attorneys' fees, and the costs and disbursements of this action;

F.      That Counterclaim-Plaintiffs be awarded punitive damages; and

G.      That Counterclaim-Plaintiffs be awarded such other, further, and different relief as the Court deems just and proper.

## JURY DEMAND

Defendants hereby demand a trial by jury on all issues so triable as a matter of right.

Date: April 2, 2015                    */s/ Michael J. Colitz, III*
                                        Michael J. Colitz, III
                                        Trial Counsel
                                        Florida Bar No. 164348
                                        Stephen G. Anderson
                                        Florida Bar No. 0105697
                                        GRAYROBINSON, P.A.
                                        401 E. Jackson Street, Suite 2700
                                        Tampa, FL 33602
                                        (813) 273-5000
                                        (813) 273-5145 (fax)
                                        michael.colitz@gray-robinson.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on <u>April 2, 2015</u>, I filed the foregoing with the Court's CM/ECF system which will send a Notice of Electronic Filing to all counsel of Record.

<u>*/s/ Michael J. Colitz, III*</u>
Michael J. Colitz, III