UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

    Plaintiff,

v.

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation; and JEFFREY L.
OHAI, an individual California Resident,

    Defendants.
_____/

CASE NO. 8:14-cv-01955-MSS-AEP

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; and HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation,

    Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

    Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

    Third-Party Defendants.
_____/

### **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EXPEDITED THIRD MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FOR DISCOVERY SANCTIONS [DKT. 109]**

Pursuant to Local Rule 3.01, Defendants Hi-Lite Manufacturing Company, Inc. ("Hi-Lite"), Barnlight Originals, Inc. ("Barnlight Originals"), and Jeffrey Ohai (collectively "Defendants"), by and through their undersigned counsel, hereby submit this Opposition to Plaintiff Barn Light Electric's Expedited Third Motion to Compel Production of Documents and for Discovery Sanctions [Dkt. 109] (hereinafter "Motion"). In support of this Opposition, Defendants state as follows.

I.  SUMMARY OF ARGUMENT

Plaintiff's Motion addresses 38 different discovery requests from among the 634 individual requests it has propounded in the course of this litigation (338 Requests for Production, 254 Requests for Admission, and 42+ Interrogatories). The 38 requests at issue can be broken down into three broad categories: requests related to U.S. Patent No. 8,556,477 (the "'477 Patent"); requests related to the financials of Defendant Barnlight Originals; and requests related to Defendant Hi-Lite.

With regard to the first two categories, Defendants have provided all responsive documents related to the '477 Patent and the financials of Barnlight Originals. Defendants have also answered the subject interrogatories, either via written answers or by relying upon its document production. Thus, Defendants have fully complied with the first two categories outlined above. This compliance is supported by the attached Declaration of Hi-Lite employee David McAdam. *See* Exhibit A. Although all responsive documents are believed to have been produced, Plaintiff's counsel has been repeatedly invited to describe the specific types of documents it believes are missing. Plaintiff's counsel has thus far refused to accept this offer. Instead it has come forward with the present Motion, which neither acknowledges Defendants'

position as to the completion of production nor otherwise describes any specific documents it believes are missing.

The third category represents the only discovery requests that are, in fact, subject to a dispute. Almost two months ago, Defendants objected to providing discovery regarding the *complete* financials of Defendant Hi-Lite. Hi-Lite is a manufacturing company. Barn Light Electric is a former distributor. Barnlight Originals is a current distributor. As detailed in the McAdam Declaration, 88% of Hi-Lite's sales have absolutely nothing to do with its sales to either Barn Light Electric or Barnlight Originals. Thus, Plaintiff's insistence upon receiving *all* of Hi-Lite's financials is unjustified.

Finally, Plaintiff's allegations regarding the supposed production of irrelevant documents unfortunately warrants close attention. Plaintiff's counsel unilaterally scheduled a hearing on this issue on August 14, 2015. During the hearing, Plaintiff's counsel suggested to the Court and the undersigned that the Defendants had provided approximately 40,000 pages of irrelevant documents, which were mostly "wing-dings." Plaintiff's counsel was asked on numerous occasions both before and during the hearing to provide an example of this irrelevant production. Counsel was unwilling to do so. Nor have any examples been proffered in the present Motion. Despite this, and in view of the seriousness of the allegations, the Defendants incurred the expense of re-reviewing its document production. The mysterious stash of wing-dings was not found. Instead, Defendants found a single email from its website development company with an attached log file related to the Barnlight Originals website. The log file is approximately 37,664 pages in length. The email is undoubtedly responsive to Plaintiff's request for "all documents" between Barnlight Originals and its website developer. Plaintiff's counsel has been asked to

confirm that this email is the source of the supposedly "irrelevant" production. Thus far Plaintiff's counsel has been unwilling to do so.

In light of the foregoing, Plaintiff's Motion should be DENIED. Further, in light of the frivolous nature of Plaintiff's Motion, Defendants seek the recovery of the costs, fees, and expenses associated with having to prepare and file this Opposition, along with any other sanctions this Court deems appropriate.

## II. ARGUMENT AND MEMORANDUM OF LAW

"Motions to compel . . . discovery are committed to the sound discretion of the trial court." *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003) (*citing Commercial Union Insurance Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984)). "Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion requiring judicial intervention." *Joyner v. Rex Corp.*, 2007 WL 1099106, at *2 (M.D. Fla. Apr. 10, 2007). "Furthermore, discovery in this district should be practiced with a spirit of cooperation and civility." *Id*. (internal citation omitted).

Regarding Plaintiff's claim for sanctions, Federal Rule of Civil Procedure 37(a)(5)(A) provides that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37. Here, as described below, Plaintiff filed its Motion directly in the face of Defendants' proof that its contentions are both unjustified and unsubstantiated. Plaintiff's claim that Defendants have produced large swaths of unresponsive and improperly designated documents lacks any factual basis.

Further, Defendants' objection to the production of Hi-Lite's financial information is substantially justified. "The Supreme Court has clarified that [a party's] discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' " *JCW Software, LLC v. Embroidme.com, Inc.*, No. 10-80472-CIV, 2011 WL 2149062, at *6 (S.D. Fla. May 31, 2011) (*citing Devaney v. Continental Amer. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993). *See also Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997). As is readily apparent below, there is no legal theory under which Plaintiff is entitled to the disclosure of *all* of Hi-Lite's confidential financial and business information, and its request for such information amounts to nothing more than an attempt by Plaintiff to use the power of this Court of obtain its direct competitors' confidential financial information. Under these circumstances, an award of sanctions to Plaintiff is unjust.

Further, if Plaintiff's Motion is denied, Rule 37 provides that "the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." *Id.* "Hence, courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Id.* (*citing Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002). Further, a "district court shall impose sanctions when a party files a pleading that has no reasonable factual or legal basis or when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994) (internal citation omitted). "The district court's standard for evaluating an alleged

violation is reasonableness under the circumstances." *Id*. (*citing Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993).

A. **PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS SHOULD BE DENIED.**

   1. **Defendants Have Complied with this Court's Discovery Order [Dkt. 95].**

In its Motion, Plaintiff contends that Defendants are in violation of this Court's Order compelling the production of documents by failing to "complete production of all responsive documents relating to the '477 Patent and Plaintiff's First Requests for Production of Documents." *See* Motion at p. 21. However, Plaintiff's contention is wholly unsupported by any facts whatsoever. Instead, as noted in the attached Declaration of David McAdam, all documents that were the subject of the prior Motion to Compel have been produced. Plaintiff also provides a laundry list of other requests from its Second, Third, and Fourth requests for production and simply states that documents have either been "partially produced" or "not produced." Yet again, Plaintiff provides no explanation or support for its conclusions. *See* Motion at Ex. A. Plaintiff has not pointed to the existence of a single document that it contends has not been produced. The only plausible explanation for Plaintiff's failure to provide any examples is that it has no evidence of any production deficiencies.

Plaintiff cannot simply presume that certain documents exist and then ask this Court to compel Defendants to produce the imaginary documents and impose sanctions for its failure to conjure out of thin air what Plaintiff seeks. Defendants fully complied with this Court's Order and produced all documents in its possession responsive to Plaintiff's First Requests for Production. Similarly, Defendants have produced all documents in its possession responsive to Plaintiff's Second, Third, and Fourth Requests for Production with the lone exception of Hi-Lite's irrelevant financial information. The basis for withholding Hi-Lite's financial information

is described in detail below. Anything else that Plaintiff seeks simply does not exist. In fact, Defendants' counsel stated as much with regard to the requests subject to this Court's Order during the hearing of August 14, 2015, the transcript for which is attached hereto as Exhibit B, in which Mr. Colitz stated "[t]he production is complete." *See* Exhibit B, pg. 24 ln. 9.

Despite Defendants' unambiguous statement to this Court that its production of documents responsive to Plaintiff's requests relating to the '477 Patent and First Requests for Production is complete, Plaintiff *still* chose to file its Motion without any evidence of a deficiency in Defendants' production. Such an action amounts to nothing more than a reckless attempt to paint Defendants in a negative light and unnecessarily increase Defendants' litigation burden and expense.

2. **Defendants Have Not Produced Irrelevant and Unresponsive Documents.**

The sheer volume of documents produced by Defendants in this case is the direct result of the volume and breadth of Plaintiff's discovery requests. Plaintiff has propounded 634 discovery requests in this case, 338 of which are requests for production seeking documents relating to all manner of things both relevant and, in large part, irrelevant to this case. Plaintiff's requests for production are attached hereto as Exhibit C. Thus, any documents Plaintiff deems irrelevant are undoubtedly directly responsive to one of its unusually numerous and broad requests.

Plaintiff contends that it "has been forced to unnecessarily waste time and resources reviewing nearly forty thousand pages of clearly irrelevant and unresponsive documents, including nearly forty-thousand pages of computer code, hundreds of pornographic images and pages filled with nonsensical content . . . ." *See* Motion at p. 22. Plaintiff made this same representation to the Court during the hearing of August 14, 2015. Yet, at the request of both

7

Defendants and this Court, Plaintiff has *still* refused to identify the 40,000 pages of allegedly irrelevant and unresponsive documents, when the Bates number associated with said document is undoubtedly sitting on the desk of Plaintiff's counsel.

In light of Plaintiff's *inexplicable* unwillingness to identify the allegedly unresponsive documents, Defendants' counsel was forced to undertake an extensive re-review of all 119,302 pages of documents produced to Plaintiff in this case, the objective being to identify the supposed 40,000 pages of irrelevant and unresponsive documents and other documents to which Plaintiff's counsel may be referring to as "nonsensical content." Upon re-review, Defendants' counsel identified a *single document* comprising approximately 37,664 pages of "computer code" that matched the description provided by Plaintiff's counsel. The document is an attachment to an email that is undeniably responsive to request number 10 of Plaintiff's Third Set of Requests for Production, which seeks

> All documents relating to communications between Hi-Lite, Barnlight Originals, or Ohai and Bold Array relating to the Barnlight Originals website, Barnlight Originals Blog, Original Barnlight Website, Jumper Cable Website or any other website relating to the sale, promotion or marketing of Barnlight Originals or Hi-Lite products in conjunction with the use or display of the Barnlight Originals Logos and Trademarks.

*See* Exhibit C.

Upon identification of the document, Defendants' counsel sent a letter to Plaintiff's counsel on August 26, 2015 explaining its responsiveness to Plaintiff's requests for production. *See* Exhibit D. Yet despite the clear and undeniable responsiveness of the single 37,664 page document, Plaintiff's counsel *still* chose to seek the imposition of sanctions because of its production, filing its Motion the very next day. Such action is entirely contrary to the letter and spirit of the rules and guidelines relating to the discovery process. Accordingly, Defendants should be compensated by Plaintiff in the form of a sanction for the time and expense of

undertaking the review of all previously produced documents and for being forced to respond to its baseless Motion.

With regard to any arguably objectionable materials produced by Defendants, and as represented to the Court during the hearing of August 14, 2015, the production of said materials directly resulted from Plaintiff's proposed keyword "Asa," which refers to Mr. Mark Asa, a former employee of Defendant Hi-Lite and current employee of Plaintiff Barn Light Electric. Upon consideration of the keyword "Asa" in view of Plaintiff's requests for production, it was not immediately apparent to Defendants how the keyword related to a particular request for production. However, given the broad right of discovery defined the Federal Rules of Civil Procedure, Defendants opted to produce documents including the term "Asa," thereby giving Plaintiff access to documents *it* believed to be relevant and responsive to its requests for production. These documents were marked "Highly Confidential" because they in large part constituted email correspondence between Mr. Asa and Hi-Lite's sales representatives, the identity of whom should be protected from disclosure to Plaintiff Barn Light Electric, a direct competitor of Hi-Lite. Further, Defendants' counsel has undertaken extensive efforts to identify any pornographic or arguably offensive materials previously produced and, on August 11, 2015, offered to withdraw said documents from production. *See* Exhibit E. Plaintiff's counsel has not responded to Defendants' offer to withdraw the documents.

**3.     Defendants Have Not Unjustifiably Withheld Any Documents Responsive to Plaintiff's Discovery Requests.**

Plaintiff also contends in its Motion that Hi-Lite has improperly failed to produce its financial and business records. The vast majority of Hi-Lite's financial and business records, however, are *completely irrelevant* to this case. Accordingly, Plaintiff's discovery requests

9

relating to Hi-Lite's financial information are undeniably overly broad, and Defendants maintain their objection to the production of responsive documents on that basis.

Defendant Hi-Lite, a manufacturer of barn lights sold by Defendant Barnlight Originals, also manufactures and sells, and has since 1958, a substantial volume of lighting products and accessories unrelated to the causes of action in this case to many companies other than Barnlight Originals and Barn Light Electric. In fact, Hi-Lite's sales to Barn Light Electric during the course of their business relationship never amounted to any more than about 12 percent of Hi-Lite's total sales at its highest point, and its total sales to Barnlight Originals are much less. *See* Exhibit A. Defendant Hi-Lite, therefore, contends that it should not be compelled to produce financial documents relating to its business other than those relating to Defendant Barnlight Originals and Plaintiff Barn Light Electric, which have already been produced to Plaintiff by Hi-Lite.

Further, even though Plaintiff Barn Light Electric has accused Hi-Lite of contributory and vicarious infringement of Barn Light Electric's trademarks, any damages recoverable by Barn Light Electric are measured by profits lost as a result of any infringement by Defendant *Barnlight Originals*. *See* 15 U.S.C. § 1117 ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.") Thus, the financial information relevant to Barn Light Electric's claims of trademark infringement is that of Defendant Barnlight Originals, *not* Hi-Lite. Should Barn Light Electric prevail on its claim against Barnlight Originals, Hi-Lite would only be liable, if found to be a contributory or vicarious infringer, for fulfillment of a judgment measured by Barnlight Originals' profits

resulting from the infringement. *See Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991) (recognizing that a party found to be secondarily liable for infringement under the Lanham Act "may be held responsible as [a] joint tort-feasor[]."). Accordingly, Hi-Lite's confidential financial information is irrelevant to Plaintiff's claim against Barnlight Originals for trademark infringement. Clearly, Plaintiff is not entitled to *all* of Hi-Lite's financial information.

With regard to Hi-Lite's claims of copyright infringement, trademark infringement, trade dress infringement, unfair competition, and false advertising against Barn Light Electric, Hi-Lite's measure of damages is *Barn Light Electric's* lost profits and profits attributable to Barn Light Electric's infringement. *See* 15 U.S.C. § 1117; 17 U.S.C. § 504. Hi-Lite's financials are irrelevant to any calculation of Barn Light Electric's profits.

With regard to Plaintiff's contention that it is entitled to Hi-Lite's broader financial information because Hi-Lite is claiming *actual* damages as a result of Barn Light Electric's infringement, the Court should take into account the potential harm to Hi-Lite that would result from the disclosure of its confidential financial information when determining whether to compel its disclosure. In *Shire Dev. LLC v. Mylan Pharm. Inc.*, this Court stated that

> In order to resist discovery of . . . confidential information . . . , a party must first establish that the information sought is indeed confidential and then demonstrate that its disclosure might be harmful. Once these requirements are met, the burden shifts to the other party to establish that discovery of the . . . confidential information is relevant *and necessary* to the action. The district court must then balance the need for protection of the [confidential information] against the claim of injury resulting from the disclosure. Discovery may be denied if proof of relevancy or need is not established, but if relevancy and need are shown, the [confidential information] should be disclosed.
>
> *Shire Dev. LLC v. Mylan Pharm. Inc.*, No. 8:12-CV-1190-T-30AEP, 2013 WL 6858319, at *4 (M.D. Fla. Dec. 30, 2013) (internal citation omitted) (emphasis in original).

Thus, when determining whether to compel the production of confidential information, the Court must balance one party's need for this information against the harm the other party would suffer from disclosure. Here, the potential harm to Hi-Lite's business is particularly substantial. Hi-Lite and Barn Light Electric are competitors in the lighting industry. Providing Barn Light Electric with Hi-Lite's confidential financial information will directly impact the competitive landscape in the lighting fixture industry by alerting Barn Light Electric to Hi-Lite's competitive position. *See Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 579 (N.D. Ga. 1989) (recognizing that a party "armed with [financial] information a competitor could determine the strength or vulnerability of a company's financial condition. This type of information is sensitive especially for a company in a vulnerable competitive position.").

On the other hand, Barn Light Electric's need for Hi-Lite's total financial information is comparatively small when balanced against the potential harm to Hi-Lite. Not only is the vast majority of Hi-Lite's financial information irrelevant to Barn Light Electric's claims against Hi-Lite, it actually works to Barn Light Electric's *advantage* if the information sought is not produced. *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial . . . ."). Hi-Lite's failure to produce financial information beyond that already produced relating to its transactions with Barnlight Originals and Barn Light Electric will negatively impact its ability to claim actual damages as a result of Barn Light Electric's infringement. So Hi-Lite's failure to produce additional financial information actually works *in favor of Barn Light Electric*. Plaintiff's Motion to Compel the production of Hi-Lite's irrelevant financial information should be DENIED.

### 4. The Confidentiality Designations of Documents Produced by Defendants are Proper.

Lastly, Plaintiff contends that Defendants have "improperly designated a disproportionate number of their production as Highly Confidential under the protective order in this case." *See* Motion at p. 25. In support of its contention, Plaintiff notably sites a nonexistent declaration by Plaintiff's counsel, Mr. Fernandez. *See Id*. Nonetheless, Defendants do indeed contend that documents reflecting the names of Defendants' customers, distributors, or vendors are Highly Confidential under the Protective Order [Dkts. 40-41], **regardless of the content of the document**. Under the agreed Protective Order in this case,

> "Highly Confidential" information is information within the scope of Rule 26(c)(1)(G) that constitutes business or technical trade secrets or plans more sensitive or strategic than Confidential information, the disclosure of which is likely to significantly harm that persons competitive position, or the disclosure of which would contravene an obligation of confidentiality to a third person or to a Court.

*See* [Dkt. 40] at para. 2(c).

The contention that said documents should *not* be classified Highly Confidential is nothing less than utterly absurd, and further underscores the frivolous nature of Plaintiff's Motion. Further still, the contention that Plaintiff Barn Light Electric should be permitted to view the identities and contact information for its *direct competitors'* customers, distributors, and/or vendors indicates only one thing – Barn Light Electric is attempting to use this Court to obtain proprietary information from its competitors in an effort to bolster its competitive position in the industry. Again, when asked by Defendants' counsel to provide a single example of a misclassified document, Plaintiff's counsel refused. Defendants' production of documents is properly classified. Plaintiff's Motion should again be DENIED.

### III. CONCLUSION

In light of the forgoing, Plaintiff's Motion should be DENIED. Defendants are also entitled to the recovery of its costs, fees, and expenses associated with the preparation of this Opposition, as well as the imposition of sanctions against Plaintiff for the frivolous and baseless allegations in its Motion.

Date: September 14, 2015

*/s/ Stephen G. Anderson*
Michael J. Colitz, III
Florida Bar No. 164348
Stephen G. Anderson
Florida Bar No. 0105697
GRAYROBINSON, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL 33602
(813) 273-5000
(813) 273-5145 (fax)
michael.colitz@gray-robinson.com
stephen.anderson@gray-robinson.com

*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2015, I filed the foregoing with the Court's CM/ECF system which will send a Notice of Electronic Filing to all counsel of Record.

*/s/ Stephen G. Anderson*
Stephen G. Anderson

# 6098964 v2