UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

      Plaintiff,

v.

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation; and JEFFREY L.
OHAI, an individual California Resident,

      Defendants.

_____/

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; and HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation,

      Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

      Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

      Third-Party Defendants.

_____/

CASE NO. 8:14-cv-01955-MSS-AEP

**DISPOSITIVE MOTION**

**HI-LITE MANUFACTURING CO., INC.'S MOTION FOR SUMMARY JUDGMENT ON
COUNTS V, VI, VII AND VIII OF ITS SECOND AMENDED COUNTERCLAIMS AND
JEFFREY L. OHAI'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IX, X, XI,
AND XII OF BARN LIGHT ELECTRIC'S THIRD AMENDED COMPLAINT
<u>AND MEMORANDUM OF LAW IN SUPPORT</u>**

Defendant Hi-Lite Manufacturing Company, Inc. ("Hi-Lite") respectfully moves for partial summary judgment on Defendants' Second Amended Counterclaims [Dkt. 60]. Specifically, Hi-Lite moves for summary judgment on its claims of False Advertising (Count V) and Copyright Infringement (Counts VI, VII, and VIII).

Defendant Jeffrey L. Ohai respectfully moves for partial summary judgment on Defendants' Third Amended Complaint [Dkt. 107]. Specifically, Mr. Ohai moves for summary judgment on Barn Light Electric's patent related declaratory judgment claims, Counts IX (non-infringement), X (invalidity), XI (unenforceability), and XII (non-interference with patent rights).

In support of this Motion, Hi-Lite and Jeffrey Ohai state as follows:

I.     FACTUAL BACKGROUND

Hi-Lite has manufactured, advertised, and sold a wide variety of decorative lighting fixtures since 1958. (*See* Ohai Dec. at ¶3.)[1] Its catalogs include extensive collections of photographs and line drawings of its lighting fixtures. (*See* Ohai Dec. at ¶4.) For many years, Hi-Lite has used distinctive part numbers to identify its products. (*See* Ohai Dec. at ¶6.) For example, during the 1990s, Hi-Lite began advertising certain products under the unique designation H-15116. (*See* Ohai Dec. at ¶6.). Consumers have come to associate the H-15116 part number with Hi-Lite. (*Id.*)

Barn Light Electric Company, LLC ("Barn Light Electric") is owned and operated by Bryan and Donna Scott. The Scotts are the owners of Barn Light Electric. In 2008, Barn Light Electric contacted Hi-Lite to inquire about becoming a retailer of Hi-Lite products, and the parties agreed that Barn Light Electric would be permitted to advertise and sell Hi-Lite products via its website. In order for Barn Light Electric to advertise Hi-Lite's products, Hi-Lite licensed

---

[1] The declarations of Jeffrey Ohai and David McAdam are being filed concurrently with this Motion.

to Barn Light Electric the right to use its copyrighted photographs, line drawings, and other depictions of its products on its website, which are protected by Hi-Lite's U.S. Copyright Registration Nos. VA 1-931-982; VA 1-931-193; and VA 1-931-001. (*See* Donna Scott Depo. 82:14 – 83:1).

During the course of the business relationship between the two companies, Hi-Lite began to notice sales of its most popular products via Barn Light Electric, including the H-15116, were decreasing. (*See* McAdam Dec. at ¶ 5.) Hi-Lite then asked a colleague, William Sanders, to order certain Hi-Lite products from Barn Light Electric's website. (*See* Sanders Depo. at 10:21-22) ("Q: Who asked you to make this purchase? A: David McAdam."). Mr. Sanders went to the Barn Light Electric website and ordered Hi-Lite lighting fixtures advertised under Hi-Lite's distinct product codes – the H-15116 and H-15116G. (*See* Sanders Depo. at 15:1-6) ("Q: And looking at Exhibit Number 5, do you see a part number there H-15116? A: Yes. Mr. Sozzani: Objection to form. A: That's the part number that I purchased."); (*id*. at 17:5-7) ("Q: Do you see a part number there that corresponds with your purchase? A: Yeah. The H-15116G."). The advertisement also depicted a photograph of Hi-Lite's lighting fixture. (*See* Donna Scott Depo. at 121:14-20.)

After Mr. Sanders placed his order with Barn Light Electric, he received an order confirmation verifying his purchase of Hi-Lite's H-15116 and H-15116G products. (*See* Sanders Depo. at 11:7-12:8; McAdam Dec. at Ex. A.) When Mr. Sanders subsequently received the shipment from Barn Light Electric, he forwarded the boxes to Hi-Lite. (*See* Sanders Depo. 36:3-5) ("Q: What did you do with the boxes after you received them? A: I shipped them to Hi-Lite.") David McAdam, an employee at Hi-Lite, opened the boxes and photographed their contents. (*See* McAdam Dec. at ¶ 13-14.) The photograph of the product received from Barn Light

Electric is depicted in McAdam Dec. at Ex. E.  The product bore Barn Light Electric's logo and was, in fact, manufactured by Barn Light Electric, not Hi-Lite.  (*See* Donna Scott Depo. at 113:22 – 114:4.)

Based on its understanding that Barn Light Electric was advertising Hi-Lite products and shipping Barn Light Electric products in their place, Hi-Lite terminated its business relationship with Barn Light Electric and expressly revoked any license permitting Barn Light Electric to use Hi-Lite's copyrighted photographs and line drawings.  (*See* Donna Scott Depo. at Ex. 2.) However, as of the filing of this Motion, Barn Light Electric has ignored Hi-Lite's revocation of the license and willfully continues to use Hi-Lite's copyrighted photographs and line drawings to sell Barn Light Electric products.  (*See* Ohai Dec. at ¶ 18.)

## II.     STATEMENT OF UNDISPUTED FACTS

1.  H-15116 is a designation under which Hi-Lite sells a light fixture.  (*See* Ohai Dec. at ¶6.)

2.  H-15116G is a designation under which Hi-Lite sells a light fixture.  (*See* Bryan Scott Depo. at 194:17-25.)

3.  Barn Light Electric sells products to consumers over the Internet.  (*See* Donna Scott Depo. at 30:22-31:13.)

4.  Barn Light Electric's order confirmation depicted in Exhibit A of David McAdam's declaration reflects Hi-Lite's H-15116 designation.  (*See* McAdam Dec. at ¶ 7.)

5.  Barn Light Electric's order confirmation depicted in Exhibit A of David McAdam's declaration reflects Hi-Lite's H-15116G designation.  (*See* McAdam Dec. at ¶ 7.)

6.  Barn Light Electric used depictions of Hi-Lite products to sell products that did not

originate with Hi-Lite.  (*See* Sanders Depo. at 12:6-8; 14:1-19:5.)

7. Barn Light Electric used Hi-Lite part numbers (or product designations) to sell products that did not originate with Hi-Lite.  (*See* Sanders Depo. at 12:6-8; 14:1-19:5.)

8. In January of 2012, William Sanders ordered a Hi-Lite product from Barn Light Electric. (*See* Sanders Depo. at 16:4-16.)

9. The product received by Mr. Sanders was manufactured by Barn Light Electric.  (*See* Donna Scott Depo. 113:22 - 114:4); (Sanders Depo. at 16:4-16.)

10. Hi-Lite licensed to Barn Light Electric the right to use its copyrighted photographs and line drawings to sell Hi-Lite products.  (*See* Donna Scott Depo 82:14 – 83:1.)

11. Hi-Lite revoked Barn Light Electric's license to use Hi-Lite's copyrighted photographs and line drawings in September of 2012.  (*See* Donna Scott Depo. at Ex. 2).

12. Exhibits J, K, L, M, N, and O of Jeffrey Ohai's declaration each include a photograph of a Hi-Lite product.  (*See* Ohai Dec. at ¶¶ 19-24.)

13. Barn Light Electric had access to the Hi-Lite photographs depicted Exhibits J, K, L, M, N, and O.  (*See* Ohai Dec. at ¶ 14.)

14. Barn Light Electric used photographs provided by Hi-Lite to sell products that did not originate with Hi-Lite.  (*See* Ohai Dec. at ¶ 18.)

15. Exhibit P of Jeffrey Ohai's declaration includes drawings identical to those present in Hi-Lite's copyrighted 208 Catalog.  (*See* Ohai Dec. at ¶ 27-28.)

16. Barn Light Electric had access to Hi-Lite's Catalog 203, Catalog 205, and Catalog 208. (*See* Ohai Dec. at ¶ 14.)

## III.    <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. *Id*. (citing *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997)). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id*. "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

The moving party bears the initial burden of establishing the absence of a genuine issue. *See Celotex Corp. v. Catrett*, 477 U.S. 242, 317 (1986). Once this burden is met, the party opposing summary judgment must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id*. at 324.

## IV. HI-LITE IS ENTITLED TO SUMMARY JUDGMENT ON COUNT V OF THE SECOND AMENDED COUNTERCLAIMS

### a. Barn Light Electric has Engaged in False Advertising.

"A Lanham Act false advertising claim arises when '[a]ny person who, on or in connection with any goods ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods[.]'" *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1348 (11th Cir. 2012) (*citing Natural Answers, Inc. v. SmithKline Beecham Corp*., 529 F.3d 1325, 1330 (11th Cir. 2008) (*quoting* 15 U.S.C. § 1125(a))).

"The intent of [the Lanham Act's false advertising provision] is to protect commercial interests that have been harmed by a competitor's false advertising, and to secure to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." *Id*. (*citing Natural Answers,* 529 F.3d at 1330-31). "It is well-settled that no proof of intent or willfulness is required to establish a violation of Lanham Act § 43(a) for false advertising." *Vector Products, Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319 (11th Cir. 2005) (*citing Hyman v. Nationwide Mut. Fire Ins. Co*., 304 F.3d 1179, 1196 n. 13 (11th Cir. 2002)); *Johnson & Johnson v. Carter–Wallace, Inc.*, 631 F.2d 186 (2nd Cir. 1980); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641 (3rd Cir. 1958). "Rather, Section 43(a) provides a *strict liability tort cause of action*." *Id*. (internal citation omitted) (emphasis added).

"In order to establish that a third party engaged in false advertising, the plaintiff must . . . prove an injury to a commercial interest in sales or business reputation proximately caused by the ... misrepresentations." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d

1248, 1277 (11th Cir. 2015) (*citing Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014)). "To prove that [a] third party's statements caused the requisite injury, . . . the plaintiff must show: (1) the ... statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement. *Id.* (*citing Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012)). "In order to establish materiality, the plaintiff must demonstrate that the defendant's deception is likely to influence the purchasing decision." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010) (internal citation omitted). "A plaintiff may demonstrate this by showing that the defendants misrepresented an inherent quality or characteristic of the product." *Id.*

Accordingly, "[t]o establish a prima facie case of false advertising pursuant to 15 U.S.C. § 1125(a), a plaintiff must establish that the defendant:

1. Uses a false or misleading
    A. Description of fact or
    B. Representation of fact;
2. In interstate commerce;
3. And in connection with goods or services;
4. In commercial advertising or promotion;
5. When the description or representation misrepresents the nature, qualities geographic origin of
    A. The defendant's [g]oods, services or commercial activities or
    B. The goods, services or commercial activities of another person;
6. And plaintiff has been or is likely to be damaged by these acts."

*Suntree Techs*. 693 F.3d at 1348-49 (internal citation omitted). Because it is undisputed that Mr. Sanders ordered what he believed was a Hi-Lite product based on the false representation of fact on Barn Light Electric's website and received something other than a Hi-Lite product, Hi-Lite's

Motion for Summary Judgment as to Count V of Defendants' Second Amended Counterclaims must be granted.

### b. Barn Light Electric Used a False or Misleading Representation of Fact in Interstate Commerce that Misrepresented the Nature of its Goods.

"The Lanham Act's false advertising provision allows a plaintiff to base its claim not only on statements that are literally false, but also on statements that are misleading when considered in their full context." *Duty Free Americas*, 797 F.3d at 1277 (*citing Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010)). *See also Stiefel Labs., Inc. v. Brookstone Pharm., L.L.C.*, 535 F. App'x 774, 777 (11th Cir. 2013) (stating that "[i]n considering false advertising claims under the Lanham Act, we must analyze the message conveyed in full context, because it is only possible to determine the falsity of an advertisement when it is considered contextually") (internal citation omitted).

"In order to establish that advertisements of the opposing party were false or misleading under the Lanham Act, plaintiff must show that the statements at issue were either (1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Hickson Corp. v. Northern Crossarm Co., Inc*., 357 F.3d 1256, 1261 (11th Cir. 2004). "Statements that have an unambiguous meaning ... may be classified as literally false." *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1287 (M.D. Fla. 2011) aff'd, 693 F.3d 1338 (11th Cir. 2012). "If the court deems an advertisement to be literally false, then the movant is not required to present evidence of consumer deception. *Osmose*, 612 F.3d at 1319 (*citing Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)).

Here, Barn Light Electric advertised a Hi-Lite product for sale on its e-commerce website. The advertisement included a photograph of a Hi-Lite product along with a Hi-Lite product code, or part number. Mr. Sanders testified that the depiction of Barn Light Electric's website in Exhibit C of David McAdam's declaration was as the website appeared on the day he ordered Hi-Lite's products from Barn Light Electric. (*See* Sanders Depo. at 14:10-15) ("Q: Does Exhibit 5 appear to you to look like what the website looked like when you placed your order? Mr. Sozzani: Objection to form. A: Yes.").

The ad on Barn Light Electric's website was unambiguous as to its meaning – order an H-15116 and receive an H-15116. Order an H-15116G and receive an H-15116G. Certain consumers, including Mr. Sanders, identify the H-15116 and H-15116G products as originating from Hi-Lite. (*See* Sanders Depo. at 12:6-8) ("Q: So you recognize those numbers as corresponding to Hi-Lite products? A: Those are Hi-Lite product part numbers, yes."). When Mr. Sanders placed his order, he expected to receive a Hi-Lite product. (*See* Sanders Depo. at 16:4-16.) ("Q: Was it your understanding that you were purchasing a product manufactured by Hi-Lite Manufacturing? A: Yes. Q: And at the time you placed your order did you in fact believe you were purchasing a Hi-Lite product? A: Yes"). Mrs. Scott also identified the ad encountered by Mr. Sanders as depicting a Hi-Lite product. (*See* Donna Scott depo. at 121:14-20.) ("Q: Do you see the part number there on page one of H15116? A: Yes. Q: And you … that photograph that's next to it, does that appear to be a Hi-Lite product? A: In this particular page, it appears to be that way or …").

However, when Mr. Sanders ordered Hi-Lite's H-15116 and H-15116G products from Barn Light Electric's website, he did not receive Hi-Lite's H-15116 and H-15116G products. (*See* Sanders Depo. at 16:12-16.) ("Q: Did you subsequently come to learn that what you

received was not a Hi-Lite product? Mr. Sozzani: Objection. Form.  A: Yes.").  Instead, he received a product manufactured by Barn Light Electric and bearing the Barn Light Electric logo.  (*See* McAdam Dec. at ¶ 14); *see also* Ex. A, Plaintiff's Response to Interrogatory No. 18 ("It has never been the practice or procedure of Barn Light Electric to apply a BLE mark to a Hi-Lite product prior to such product being provided to a customer.").  In fact, when shown a photograph of the product Mr. Sanders received, Barn Light Electric's owner recognized it as a product manufactured by Barn Light Electric.  (*See* Donna Scott Depo. at 113:22 – 114:4.)

Accordingly, considering the context as a whole, Barn Light Electric's advertisement offering the H-15116 and H-15116G products was a literally false representation of fact because it offered one thing (a Hi-Lite product), yet delivered another (a Barn Light Electric product). By advertising Hi-Lite's products and fulfilling orders with Barn Light Electric manufactured products, Barn Light Electric has misrepresented the nature of the goods.  Customers do not receive an H-15116.  They receive something different.  A deceptive trade practice such as this is illegal under the Lanham Act, and Barn Light Electric is subject to strict liability.

Assuming, *arguendo*, that this Court finds that Barn Light Electric's offering for sale of an H-15116 and H-15116G and delivering the product of another manufacturer is not literally false, then its representations may alternatively be found misleading at the very least.  "If . . . the court deems the advertisement to be true but misleading, then the movant is required to present evidence of deception."  *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010). Evidence of deception may be "in the form of consumer surveys, market research, expert testimony, or other evidence."  *Hickson Corp.*, 357 F.3d at 1261.

Here, Mr. Sanders was undoubtedly deceived by Barn Light Electric's misleading statement of fact.  Mr. Sanders ordered what he believed was a Hi-Lite product and received

something else.  (*See* Sanders Depo. at 16:4-16.)    Indeed, Hi-Lite was also deceived by Barn Light Electric's false advertising scheme.  Thus, if the Barn Light Electric's representations of fact are found to be merely misleading, liability still attaches under the Lanham Act.

### c. Barn Light Electric's False Representation of Fact was in Connection with Commercial Advertising or Promotion.

The test for determining whether something is "commercial advertising or promotion" is set forth in *Suntree Techs.*, 693 F.3d at 1349 which states:

> In order for representations to constitute "commercial advertising or promotion" under Section [1125(a)], they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

> *Suntree Techs.*, 693 F.3d at 1349 (internal citation omitted).

"Commercial speech . . . is 'related solely to the economic interests of the speaker and its audience,'"  *Dana's R.R. Supply v. Attorney Gen., Florida*, No. 14-14426, 2015 WL 6725138, at *7 (11th Cir. Nov. 4, 2015) (*citing Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980)), or "does 'no more than propose a commercial transaction.'"  *Id*. (*citing Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976)) (internal citation omitted).  Here, Barn Light Electric's advertising of Hi-Lite's products on its website is undoubtedly related solely to the economic interests of Barn Light Electric and its audience.  Barn Light Electric's website exists for the sole purpose of selling

products to consumers over the Internet. Its false representations on that website relating to the sale of certain products are commercial speech.

Regarding the second element of the test, Hi-Lite and Barn Light Electric are in commercial competition with one another. Hi-Lite manufactures and sells barn lights. Barn Light Electric manufactures and sells barn lights. The two companies compete for the same customers in the lighting industry. In fact, the vast majority of Barn Light Electric's product line intentionally mimics that of Hi-Lite. (*See* Michael Schultz Depo. at 144:1-9.)

Regarding the third and fourth element of the test, Barn Light Electric's representations on its website are for "the purpose of influencing consumers to buy defendant's goods or services" and "disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry." *Suntree Techs*., 693 F.3d at 1349. Barn Light Electric depicts Hi-Lite products and part numbers on its website, which is accessible worldwide, and offers them for sale to consumers.

### d. Hi-Lite is Damaged by Barn Light Electric's False Representations.

Every time a customer purchases a Hi-Lite product from Barn Light Electric's website and receives something other than a Hi-Lite product, the harm to Hi-Lite is self-evident. Each order improperly filled by Barn Light Electric results in a lost sale by Hi-Lite. Further, consumers often search the internet for the best deal on a particular product. One way consumers comparison shop is by searching a product's part number. (*See* Sanders Depo. at 58:17- 59:7) ("Q: So would the average consumer go into a website, let's say that the website you went to, barnlightelectric.com, viewing that exactly – exactly that description that you're holding in Exhibit Number 2, would a consumer going to a website which had that description associate those alpha numeric codes with any specific manufacturer? A: They may depending on

what they're looking for.  It's just like if you're going online and looking for a specific Sylvania product number, you go to Google, a lot of sites pop up and you click whatever site comes up at the top.  If they're looking for a specific Hi-Lite product number, then your – I assume Barn Light Electric would come up.");  (*id.* at 59:10-14) ("Q: [I]f I was to view that number as a consumer, would I associate that with some specific product?  A: I would think so yes, 'cause that's your code designation."); (*id.* at 60:19-4) ("Q: So why would you think a consumer might know every one of the 500 or so product numbers that Hi-Lite had?  A: Because I find in this business that the consumers are actually very educated and that when they are looking for products, whether it's Kichler, Hi-Lite, Progress, et cetera, they actually are looking for a very specific product at the time.").  The H-15116  is indeed a very specific product.  (*See* Ohai Dec. at ¶ 6.)

Further, Hi-Lite also stands to be harmed through the loss of the reputation and good will associated with its products and services.  As indicated above, "[t]he intent of [the Lanham Act's false advertising provision] is to protect commercial interests that have been harmed by a competitor's false advertising, and to secure to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not."  *Suntree Techs.,* 693 F.3d at 1348.  Hi-Lite has advertised and sold the H-15116 since the 1990s.  (*See* Ohai Dec. at ¶ 6.)  Barn Light Electric cannot stand on the shoulders of Hi-Lite by diverting consumers to its website by the use of Hi-Lite's part numbers and sell its own product in its place.  Such an act is illegal, and Barn Light Electric is strictly liable for its false and misleading representations of fact.  Accordingly, Hi-Lite respectfully asks this Court to grant its Motion for Summary Judgment on Count V of Defendants' Second Amended Counterclaims.

**V.    HI-LITE IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS VI, VII, AND VIII OF THE SECOND AMENDED COUNTERCLAIMS.**

### a.    Barn Light Electric is Infringing on Hi-Lite Registered Copyrights.

There are no genuine issues of material fact regarding Hi-Lite's copyright infringement claims. Hi-Lite has obtained three Copyright Registrations covering its catalogs and the various photographs contained therein.  (*See* Ohai Dec. at ¶¶ 7-12.)  Following Barn Light Electric's termination as a distributor, Hi-Lite demanded that its copyrighted photographs and line drawings be taken off Barn Light Electric's website. (*See* Ohai Dec. at ¶ 17; Donna Scott Depo. at Ex. 2.)  Barn Light Electric initially agreed with this request.  (*See* Bryan Scott Depo. 10/6/15 at Pg. 164.) Nonetheless, to this day, Hi-Lite's photographs remain prominently displayed on Barn Light Electric's website.  (*See* Ohai Dec. at ¶ 18.) Worse yet, Hi-Lite's photographs are being commercially exploited to sell Barn Light Electric's lighting fixtures.  (*Id.*)  Barn Light Electric will be unable to raise a legitimate challenge to these facts. Hi-Lite is, therefore, entitled to summary judgment on Counts VI, VII, and VIII of the Second Amended Counterclaims [Dkt. 60].

### b.    Copyright Infringement in the Eleventh Circuit.

To establish copyright infringement, a party must prove the following two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Garden Meadow, Inc. v. Smart Solar, Inc.*, 24 F. Supp. 3d 1201, 1206 (M.D. Fla. 2014); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). "Proof of copying may be shown either by direct evidence of the copying or, in the absence of such evidence, copying as a factual matter typically may be inferred from proof of access to the copyrighted work and probative similarity."

*Bateman*, 79 F.3d at 1541; *see also Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002) (explaining that proof of copying for a copyright infringement claim requires a plaintiff to show access and substantial similarity).

Hi-Lite's ownership of the copyrights at issue is unchallenged. Hi-Lite applied for and received three copyright registrations covering the works at issue: Certificate of Registration No. VA 1-931-982 was issued to Hi-Lite for "Hi-Lite Manufacturing Company, Inc. Catalog 203" (the 203 Catalog); Certificate of Registration No. VA1-931-193 was issued to Hi-Lite for "Hi-Lite Mfg Co, Inc. Residential Lighting/Commercial Lighting Catalog 205" (the 205 Catalog); Certificate of Registration No. VA 1-931-001 was issued to Hi-Lite for "Hi-Lite Mfg. Co. Commercial and Residential Lighting Catalog 208" (the 208 Catalog). (*See* Ohai Dec. at ¶¶ 7-12.) The existence of these registrations alone is probative evidence of valid ownership. *See R. Miller Architecture, Inc. v. Edgington Entp., Inc.*, 2006 WL 2226297, *5 (MD Fla. 2006) ("copyright certificates not filed within the five (5) year statutory period may still be submitted to the Court as probative evidence of ownership").

### c. The Photographs in Question are Identical.

Substantial similarity "exists where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *See Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000) *(quoting Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 829 (11th Cir. 1982)).*

### i. Plaintiff's Copying of a Photograph from the 203 Catalog.

As noted from the comparison in Figure 1 below, Barn Light Electric is using a copyrighted photograph of Hi-Lite's H-1385-D-74 lighting fixture on its website. The only differences in the photographs relate to slight changes in cropping and background coloring.

Otherwise, the photographs are exactly the same. They depict identical lighting fixtures taken at identical angles. Examining the various light reflections on the fixtures, and the corresponding shadows, demonstrates that the photographs have identical lighting. The only reasonable conclusion that can be drawn is that they are, in fact, the same photograph. Thus, Hi-Lite has demonstrated both that Barn Light Electric had access to its copyrighted 203 Catalog and that it is now displaying an identical-- or at the very least a substantially similar-- photograph on its website. (*See* Ohai Dec. at ¶ 19.) This constitutes infringement of Hi-Lite's 203 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VI of its Second Amended Complaint.



| FIGURE 1 | |
|---|---|
| Photograph from Page 24 of Hi-Lite's 203 Catalog | Reproduction by Barn Light Electric http://www.barnlightelectric.com/national-media-placements/cowboys-and-indians-june-2010.html |

### ii. Plaintiff's Copying of a Photograph from the 205 Catalog.

As noted in Figure 2 below, Barn Light Electric is using a copyrighted photograph of Hi-Lite's H-7132-D-11 lighting fixture on its website. The only differences in the photographs relate to how they are cropped and the background coloring. Otherwise, the photographs are identical. They depict identical lighting fixtures taken at identical angles. Again, as noted by how the light

reflects off the fixtures, the photographs have identical lighting. The only reasonable conclusion that can be drawn is that they are the same photograph. Thus, Hi-Lite has demonstrated both that Barn Light Electric had access to its copyrighted 205 Catalog and that it is now displaying an identical photograph from that catalog on its website. (*See* Ohai Dec. at ¶ 20.) This constitutes infringement of Hi-Lite's 205 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VII of its Second Amended Complaint.



| **FIGURE 2** | |
|---|---|
| **Photograph from Page 26 of Hi-Lite's 205 Catalog** | **Reproduction by Barn Light Electric** **www.barnlightelectric.com/national-media-placements/early-homes-spring-2010.html** |

### iii.  Plaintiff's Copying of Photographs from the 208 Catalog.

Figure 3 depicted below demonstrates Barn Light Electric's reproduction of Hi-Lite's copyrighted photograph of its H-CGU-10-1B-96-RIB lighting fixture. The two photographs contain different backgrounds, but are otherwise identical.  They depict the same lighting fixture taken at the same angles.  The light reflections and shadows are identical. Again, the only conclusion to be drawn is that they are the same photograph. Hi-Lite has, therefore,

demonstrated that Barn Light Electric had access to its copyrighted 208 Catalog and that it is now displaying an identical photograph from that catalog on its website. (*See* Ohai Dec. at ¶ 21.) This constitutes infringement of Hi-Lite's 208 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VIII of its Second Amended Complaint.



| FIGURE 3 | |
| --- | --- |
| **Photograph from Page 78 of Hi-Lite's 208 Catalog** | **Reproduction by Barn Light Electric** www.barnlightelectric.com/national-media-placements/coastal-living-april-2010.html |

As noted from the below comparison in Figure 4, Barn Light Electric is using a copyrighted photograph of Hi-Lite's H-15312-B-95 lighting fixture on its website. There are meaningless differences in the backgrounds of the two photographs. Otherwise, they are the same photograph. They show the identical lighting fixture and photographed at identical angles and under identical lighting conditions. The only reasonable conclusion that can be drawn is that they are, in fact the same photograph. Hi-Lite has, therefore, demonstrated that Barn Light Electric had access to its copyrighted 208 Catalog and that it is now displaying an identical photograph from that catalog on its website. (*See* Ohai Dec. at ¶ 22.) This constitutes

infringement of Hi-Lite's 208 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VIII of its Second Amended Complaint.

| FIGURE 4 | |
|---|---|
|  | |
| **Photograph from Page 8 of Hi-Lite's 208 Catalog** | **Reproduction by Barn Light Electric** **www.barnlightelectric.com/national-media-placements/old-house-interiors-march-april-2009.html** |

As noted in Figure 5 below, Barn Light Electric is currently displaying a copyrighted photograph of Hi-Lite's H-19414-B-77/CGU-FR-114 lighting fixture on its website. The only difference in the photograph relates to the background. Otherwise, the photographs are identical. They depict identical lighting fixtures taken at identical angles. Again, the photographs show the same reflections and shadowing. The only reasonable conclusion is that they are, in fact, the same photograph. Hi-Lite has, therefore, demonstrated that Barn Light Electric had access to its copyrighted 208 Catalog and that it is now displaying an identical photograph from that catalog on its website. (*See* Ohai Dec. at ¶ 22.) This constitutes infringement of Hi-Lite's 208 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VIII of its Second Amended Complaint.



| FIGURE 5 | |
|---|---|
| Photograph from Page 40 of Hi-Lite's 208 Catalog | Reproduction by Barn Light Electric www.barnlightelectric.com/national-media-placements/old-house-interiors-march-april-2009.html |

The comparison below in Figure 6 shows Barn Light Electric is displaying a copyrighted photograph of Hi-Lite's H-19120-97/HL-A-97 lighting fixture on its website. The photographs having different cropping and backgrounds but are otherwise the same. The photographs are of identical lighting fixtures taken at identical angles. As with the other photographs, the reflections and lighting are identical. The two photographs are the same. Hi-Lite has, therefore, demonstrated that Barn Light Electric had access to its copyrighted 208 Catalog and that it is now displaying an identical photograph from that catalog on its website. (*See* Ohai Dec. at ¶ 23.) This constitutes infringement of Hi-Lite's 208 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VIII of its Second Amended Complaint.



| FIGURE 6 | |
|---|---|
| **Photograph from Page 38 of Hi-Lite's 208 Catalog** | **Reproduction by Barn Light Electric** **www.barnlightelectric.com/national -media-placements/traditional- home-may-2008.html** |

The below comparison of Figure 7 shows Barn Light Electric using a copyrighted photograph of Hi-Lite's H-15117/P-3 lighting fixture on its website. The only differences in the photograph relates to orientation; the Barn Light Electric photograph has been flipped with respect to the Hi-Lite photograph. Otherwise, the photographs are identical. They depict identical lighting fixtures taken at identical angles. The only reasonable conclusion that can be drawn is that they are the same photograph. Hi-Lite has, therefore, demonstrated that Barn Light Electric had access to its copyrighted 208 Catalog and that it is now displaying an identical photograph from that catalog on its website. (*See* Ohai Dec. at ¶ 23.) This constitutes infringement of Hi-Lite's 208 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VIII of its Second Amended Complaint.



| FIGURE 7 | |
|---|---|
| **Photograph from Page 5 of Hi-Lite's 208 Catalog** | **Reproduction by Barn Light Electric** <br> www.barnlightelectric.com/national-media-placements/traditional-home-may-2008.html |

Figure 8 is a comparison of a copyrighted photograph of Hi-Lite's H-BUC-14-96/CW8-93 with an identical photograph from the Barn Light Electric website. The photographs differ slightly because Barn Light Electric has altered the Hi-Lite photograph. The fixture in the Hi-Lite fixture is hung by a cord, whereas Barn Light Electric shows the fixture on a gooseneck arm. Otherwise, the photographs of the lighting fixtures themselves are identical. They are the same lighting fixtures photographed at identical angles. They show identical lighting. Hi-Lite has, therefore, demonstrated both that Barn Light Electric had access to its copyrighted 208 Catalog and that it is now displaying an identical photograph from that catalog on its website. (*See* Ohai Dec. at ¶ 24.) This constitutes infringement of Hi-Lite's 208 Catalog. Hi-Lite is,

therefore, entitled to judgment as a matter of law on Count VIII of its Second Amended Complaint.

**FIGURE 8**



| Photograph from Page 232 of Hi-Lite's 208 Catalog | Reproduction by Barn Light Electric www.barnlightelectric.com/national-media-placements/space-coast-living-april-2011.html |

The next comparison of Figure 9 shows Barn Light Electric's reproduction of a copyrighted photograph of Hi-Lite's H-3051-96/HL-A-96/CGU-FR-96 lighting fixture. Other than a change to the background, the photographs are identical. They depict identical lighting fixtures taken at identical angles. Also, as noted by how the light reflects off the fixtures, the photographs were taken under identical lighting. The only reasonable conclusion is that the photographs below are one and the same. Hi-Lite has, therefore, demonstrated both that Barn Light Electric had access to its copyrighted 208 Catalog and that it is now displaying an identical photograph from that catalog on its website. (*See* Ohai Dec. at ¶ 24.) This constitutes

infringement of Hi-Lite's 208 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VIII of its Second Amended Complaint.



| **FIGURE 9** | |
|---|---|
| **Photograph from Page 234 of Hi-Lite's 208 Catalog** | **Reproduction by Barn Light Electric**<br>**www.barnlightelectric.com/national-media-placements/space-coast-living-april-2011.html** |

### iv. Barn Light Electric's Copying of Line Drawings from the 208 Catalog.

Hi-Lite's 208 Catalog also includes drawings depicting a wide variety of wall brackets and mounting arms. This includes the mounting plates and hardware needed for hanging various lighting fixtures. (*See* Ohai Dec. at ¶ 25-28.) Many of these drawings reflect fanciful designs that contribute to the décor of the lighting fixture. As shown on Pages 321-329 of the 208 Catalog, the drawings include the detailed dimensions needed for a consumer to determine the suitability of the bracket/arm. Each drawing also includes a conspicuous watermark unmistakably designating the drawing as being a proprietary Hi-Lite drawing. (*See* Ohai Dec. at ¶ 26.) The back of the 208 Catalog further includes a copyright notice. (*See id*.) Following

Barn Light Electric's termination as a distributor, it was instructed to remove all Hi-Lite line drawings from its website. (*See* Ohai Dec. at ¶ 17.) Despite its termination, Barn Light Electric continued to display Hi-Lite's line drawings. (*See* Ohai Dec. at ¶ 25.) In fact, Hi-Lite's proprietary drawings remain on Barn Light Electric's website as of the filing of this motion. Figures 10, 11, and 12 below each compare one of Hi-Lite's copyrighted line drawing to an identical drawing from Barn Light Electric. The comparison shows the drawings to be identical. They contain identical dimensions, callouts, descriptions, and part numbers. The only difference is that Hi-Lite's proprietary watermark has been removed and replaced with the Barn Light Electric logo.



| **FIGURE 10** | |
| --- | --- |
| **Photograph from Page 321 of Hi-Lite's 208 Catalog** | **Reproduction on Barn Light Electric website (See Ohai Dec. at ¶ 27)** |



| **FIGURE 11** ||
| Hi-Lite Line Drawing from Pg. 321 of the 208 Catalog | Reproduction on Barn Light Electric website (*See* Ohai Dec. at ¶ 27) |

Figure 12 below also illustrates Hi-Lite's HL-M bracket, which includes a flowered flourish along the bottom of the arm. Again, a comparison reveals that this decorative flower pattern has been reproduced in its entirety. The bracket has been faithfully reproduced down to the position of the very last petal.



| **FIGURE 12** ||
| Hi-Lite Line Drawing from Pg. 328 of the 208 Catalog | Reproduction on Barn Light Electric website (*See* Ohai Dec. at ¶ 27) |

Provided herein are representative examples of Barn Light Electric infringement of Hi-Lite's copyrighted line drawings. A similar conclusion would be reached for all other Hi-Lite line drawings included on Pages 321-329 in Hi-Lite's 208 Catalog: B-1, B-4, B-5, B-6, B-7, HL-A, HL-C, HL-D, HL-H, HL-K, B-2, B-3, B-5, B-8, B-9, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-19, B-20, HL-A, HL-B, HL-C, HL-D, HL-E, HL-F, HL-G, HL-H, HL-I, HL-K, HL-M, HL-N, HL-O, HL-P, HL-R, and HL-U. (*See* Ohai Dec. at ¶ 28.)

Thus, Hi-Lite has amply demonstrated that Barn Light Electric had access to its copyrighted 208 Catalog and the drawings contained therein. Hi-Lite has also demonstrated that, following Barn Light Electric's termination, these line drawings remained on the Barn Light Electric website. (*See* Ohai Dec. at ¶ 25.) This constitutes infringement of Hi-Lite's 208 Catalog. Hi-Lite is, therefore, entitled to judgment as a matter of law on Count VIII of its Second Amended Complaint.

Hi-Lite respectfully asks this Court to grant it motion for summary judgment on counts VI, VII, and VIII of the Second Amended Counterclaims [Dkt. 60].

## VI. MR. OHAI IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS IX, X, XI, AND XII OF THE THIRD AMENDED COMPLAINT

Mr. Ohai moves for summary judgment on Barn Light Electric's patent related claims. There is simply no controversy between the parties regarding the Patent-in-Suit, U.S. Pat. 8,556,477 (the '477 Patent). As such, Counts IX (non-infringement), X (invalidity), XI (unenforceability), and XII (non-interference with patent rights) of Barn Light Electric's Third Amended Complaint must be dismissed. [Dkt. 107.] There is no controversy because Mr. Ohai has unconditionally agreed not to bring suit for any past, present, or future infringement of the '477 Patent based upon Barn Light Electric's two piece extended coupler. (*See* Ohai Dec. at ¶¶

30-31.) Discovery in this matter also amply demonstrates that the two piece extended coupler is the _only_ product at issue in the litigation.

### a. Procedural Background.

Jeffrey Ohai is the sole inventor of the subject matter claimed in U.S. Patent No. 8,556,477 (the "'477 Patent"), which covers a lighting fixture mounting post. (_See_ Ohai Dec. at ¶¶ 30-31.) On August 21, 2014, following the initial complaint in this matter, Mr. Ohai's patent attorney sent a cease and desist letter to Barn Light Electric regarding the '477 Patent. This letter did not identify any specific products of Barn Light Electric that were accused of infringement. In response, Barn Light Electric filed an Amended Complaint seeking, _inter alia_, declarations of non-infringement and invalidity regarding the '477 Patent. [Dkt. 9.] Mr. Ohai thereafter sought to dismiss the patent related claims by providing a covenant not to assert the '477 Patent based upon products he "was aware of before the filing" of the lawsuit. [Dkt. 22-1.] The Court denied the motion because Mr. Ohai's covenant did not specify the products of which he was aware. [Dkt. 49.] The Court, however, invited Mr. Ohai to provide a broader unconditional covenant in the future.

Following the dismissal, Mr. Ohai provided a second covenant to Barn Light Electric. This second covenant included a photograph that specifically identified the Barn Light Electric product that was the impetus for the August 21 cease and desist letter. (_See_ Ohai Dec. at ¶ 30.) Mr. Ohai then renewed his motion to dismiss based upon the second covenant. [Dkt. 64.] The Court, however, again denied the motion, noting that the second covenant "expresses no intent to unconditionally extinguish all past, present, and future patent infringement claims." [Dkt. 105 at Pg. 5.] The Court's decision was based, in part, on its understanding that the second covenant "includes a picture of the product covered by the '477 patent." [_See id._] However, the product

depicted in the second covenant is not a picture of a product covered by the '477 patent, but rather a Barn Light Electric product Mr. Ohai believes is *not* covered by the '477 patent. In any event, Mr. Ohai's current declaration now includes an unconditional covenant with respect to past, present and future infringement regarding the two piece extended coupler depicted in his covenant. (*See* Ohai at ¶¶ 30-31.) Also, throughout the course of discovery in this case, Barn Light Electric has been given several opportunities to identify any other products that are potentially implicated by Mr. Ohai's August 21 cease and desist letter. It has been unable to do so.

### b. The Declaratory Judgment Act.

A claim for declaratory judgment may only be brought to resolve an "actual controversy." 28 U.S.C. § 2201. Thus, a party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, "under all the circumstances," demonstrate a "substantial" controversy of "sufficient immediacy" to warrant a declaratory judgment. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007). An actual controversy must exist through all stages of the litigation, not just the time the declaratory action is filed. *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997). Whether or not a justiciable controversy exists can be resolved by way of summary judgment. *See National Transformer Corp. v. Ranney*, 86 F.Supp. 57 (N.D. OH)(examining pleadings, affidavits, and exhibits in determining whether actual controversy exists); *see also, Sticker Indus. Supply Corp. v. Blaw-Knox Co.*, 367 F.2d 744, n.1 (7th Cir. 1966)(noting that motion to dismiss is converted to summary judgment motion upon consideration of supporting affidavits).

Under Federal Circuit precedent, a properly executed covenant not to sue for infringement not only moots the controversy with respect to infringement, *see Highway Equip.*

*Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006), but it also eliminates subject matter jurisdiction with respect to remaining declaratory claims for patent invalidity and unenforceability, provided that no trial or resolution on the infringement issue has taken place. *Benitec*, 495 F.3d at 1347; *see also Harris Corp. v. Federal Express Corp.*, 670 F. Supp. 2d 1306, 1311 (M.D. Fla. 2009). Such a covenant need not cover potentially infringing activities in the future as long as it covers the past and present activities that constitute the "actual controversy" between the parties due to the speculative nature of future infringement for some as-of-yet undeveloped product. *Benitec* at 1345-48; *see also Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (holding that promise not to sue on patent "as it presently reads" on any current product divested district court of jurisdiction, notwithstanding that at some indefinite point in the future, challenger might develop new products or patent claims might change).

"A covenant not to sue is intended precisely to moot the issue of infringement and limit the scope of an invalidity counterclaim." *MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1000, 1008 (C.D. Cal. 2008). Other future or unchallenged products not covered by the covenant not to sue are irrelevant until it is demonstrated that the product is in fact part of the actual controversy of the case. *See id.* (finding related product not part of controversy because challenger always directed pleadings to one product and pleadings were never amended to reference related product). A covenant not to sue on "activities and/or products made, used or sold on or before" or after the dismissal is sufficient to warrant dismissal of the declaratory judgment claims. Cf. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1298 (Fed. Cir. 2009) ("In *Benitec*, as in *Super Sack*, the continuing activities were not subject to an infringement suit . . . because of a covenant that extended to future production and sale of the

same products that were the subject of the infringement suit"). It is the moving party's burden to show that it "could not reasonably be expected" to resume its enforcement efforts against the non-moving party. *Already, LLC v. Nike, Inc*., -- U.S. ---, 133 S.Ct. 721, 727 (2013). However, once the moving party has shown that the covenant "encompasses all of [the] allegedly unlawful conduct, it [becomes] incumbent on [the non-moving party] to indicate that it engages in or has sufficiently concrete plans to engage in activities that would arguably infringe . . . yet not be covered by the covenant." Id. at 724.

### c. Mr. Ohai's Covenant Covers the Only Product at Issue.

Mr. Ohai has provided Barn Light Electric with an unconditional covenant by stating that he will not be asserting any past, present, or future infringement of the '477 Patent based upon Barn Light Electric's two piece extended coupler.   (*See* Ohai at ¶¶ 30-31.)  This is the product that was depicted in Mr. Ohai's covenant of March 24, 2015. It is the same product to which Mr. Ohai's original cease and desist letter was addressed. (*See id*.) Barn Light Electric's deposition testimony and its verified Interrogatory Responses both unequivocally establish that the two piece extended coupler was, and is, the only product at issue.  Mr. Ohai's unconditional covenant not to sue with respect to that product moots any controversy between the parties and extinguishes the Court's subject matter jurisdiction.

In an effort to address concerns over the scope of his covenant, Mr. Ohai sought discovery from Barn Light Electric regarding what products, if any, it believed were potentially infringing the '477 Patent.  He did this so that such products could be analyzed and potentially included in a subsequent covenant.  In this regard, Mr. Ohai issued a very straight forward interrogatory to Barn Light Electric seeking an "identification of all products manufactured, sold, or offered for sale by Barn Light Electric that Barn Light Electric believes are accused of

infringing U.S. Pat. 8,556,477." *See* Ex. A Plaintiff's Response to Interrogatory No. 15. It is important to note that this interrogatory did not seek an identification of products that were believed to be *infringing*. Rather, the request sought Barn Light Electric's belief as to the products it believed were *accused of infringing*. Despite this straightforward request, Mr. Ohai got a less than straightforward response. Although Barn Light Electric provided a laundry list of objections, it was unable to reference a *single* product it believed stood accused of infringing the '477 Patent. Stronger evidence for a lack of controversy is difficult to imagine.

During Bryan Scott's deposition on October 6, 2015, he was also asked to identify any products he believed were accused of infringing the '477 Patent. The only product he described was the two piece extended coupler. (*See* Bryan Scott Depo. of 10/6/15 at 52-62.) Mr. Scott readily admitted that Barn Light Electric sells no other products that are "quite like" the two piece extended coupler, and that the only variation in the product related to its size.

> Q.      Of these three to four variations, are there any differences other than size?
> A.      No.
> Q.      Do you sell – does Barn Light Electric sell any other products other than these three to four variations that are similar to that?
> A.      We sell multiple other products. You know, I don't think there's anything quite like this.
> (Bryan Scott Depo. of 10/6/15 at 53:7-17.)

Variations in product size, however, are immaterial to the '477 Patent and cannot be used by Barn Light Electric to gin up a controversy. This was amply demonstrated during the May 28, 2015 hearing on Barn Light Electric's Motion to Compel. [*See* Hearing Transcript at Dkt. 96.] Plaintiff's counsel attempted to demonstrate the existence of an on-going controversy by bringing to the Court a "different" two piece extended coupler supposedly "outside the scope of [Mr. Ohai's] covenant." [*See id.* at Pg. 18.] However, as was made clear during the hearing, this

"different" product was simply an uncut-- and hence longer-- version of the product depicted in the covenant not to sue.

> Mr. Colitz: This is the first time we've seen this, but I can tell you what it is. The point of this product is that if you have a fixture and you don't know how long the threads need to be, you have these narrowed portions so that you can saw it off. So if you need one this tall, you saw it off here, if you need one this tall, you have to saw it off here. This is the same thing as this, it just hasn't been sawed off. It's the same product. You can cut this to whatever size you want. (*See id*. at Pg. 19.)

The only product Mr. Ohai accused of infringing the '477 Patent was Barn Light Electric's two piece extended coupler. (*See* Ohai Dec. at ¶ 30.) Barn Light Electric concedes that the two piece extended coupler (with variations in length) is the only product at issue and that it offers nothing else like it. (Bryan Scott Depo. of 10/6/15 at 53:7-17.)   Mr. Ohai has unconditionally agreed not to sue under the '477 Patent based on the two piece extended coupler regardless of its length.  Barn Light Electric has provided no other products that could possibly be covered by the '477 Patent. Given this, Barn Light Electric has not met its burden of proving that it has sufficiently concrete plans to engage in activities that are not covered by the covenant but that would arguably infringe the Patent-in-Suit.  *See Already, LLC*, 133 S.Ct. at 727. As a result, there are no genuine issues of fact regarding Barn Light Electric's declaratory judgment claims. Therefore, it is respectfully requested that this Court grant Mr. Ohai's motion and dismiss Counts IX, X, XI, and XII of Barn Light Electric's Third Amended Complaint.

## VII.    CONCLUSION

Therefore, Defendant Hi-Lite respectfully requests this Court grant its motion for summary judgment on its claims of False Advertising (Count V) and Copyright Infringement (Counts VI, VII, and VIII).  Defendant Jeffrey L. Ohai respectfully requests this Court grant his motion for summary judgment on Barn Light Electric's patent related declaratory judgment

claims, Counts IX (non-infringement), X (invalidity), XI (unenforceability), and XII (non-interference with patent rights).

Date: November 23, 2015          Respectfully submitted,

                                */s/Michael J. Colitz, III*
                                Michael J. Colitz, III
                                Florida Bar No. 164348
                                Stephen G. Anderson
                                Florida Bar No. 0105697
                                GRAYROBINSON, P.A.
                                401 E. Jackson Street, Suite 2700
                                Tampa, FL 33602
                                (813) 273-5000
                                (813) 273-5145 (fax)
                                michael.colitz@gray-robinson.com
                                stephen.anderson@gray-robinson.com

                                *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a copy to all counsel of record.

                                */s/Michael J. Colitz, III*
                                Michael J. Colitz, III

# 6230837 v2