IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,

Plaintiff,

v.

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; and
HI-LITE MANUFACTURING COMPANY, INC.,
a California corporation; and
JEFFREY L. OHAI, an individual California Resident

Defendant.
___________________________________/

Case No. 8:14-CV-1955-T-35AEP

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; and HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation,

Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

Third-Party Defendants.
___________________________________/

**NOTICE OF FILING DEPOSITION TRANSCRIPT OF WILLIAM SANDERS**

Defendants, Hi-Lite Manufacturing Company, Inc. and Jeffrey L. Ohai hereby give notice of filing the deposition transcript of William Shawn Sanders dated October 1, 2015 in support of their Motion for Summary Judgment and Memorandum of Law in Support.

Date: November 23, 2015

Respectfully submitted,

/s/Michael J. Colitz
Michael J. Colitz, III
Florida Bar No. 164348
Stephen G. Anderson
Florida Bar No. 0105697
GRAYROBINSON, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL 33602
(813) 273-5000
(813) 273-5145 (fax)
michael.colitz@gray-robinson.com
stephen.anderson@gray-robinson.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a copy to all counsel of record.

/s/ Michael J. Colitz
Michael J. Colitz

#6234746

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

BARN LIGHT ELECTRIC COMPANY, LLC,

Plaintiff,

vs.

BARNLIGHT ORIGINALS, INC., HI-LITE MANUFACTURING COMPANY, INC., and JEFFREY L. OHAI,

Defendants.

) Civil Action No.:
) 8:14-cv-01955-MSS-AEP

- - - - -

THE VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
WILLIAM SHAWN SANDERS
THURSDAY, OCTOBER 1, 2015

- - - - -

The videotaped videoconference deposition of WILLIAM SHAWN SANDERS, called by the Defendants for examination pursuant to the Federal Rules of Civil Procedure, taken before me, the undersigned, Elaine S. Newlin, Notary Public within and for the State of Ohio, taken at the offices of Cady Reporting Services, Inc., Western Reserve Building, Suite 440, 1468 West 9th Street, Cleveland, Ohio, commencing at 9:58 a.m., the day and date above set forth.



APPEARANCES:

On behalf of the Plaintiff:
Joseph Sozzani, Esq. (via videoconference)
Feldman Gale, PA
400 North Tampa Street, Suite 2830
Tampa, Florida 33602
813-374-8890
jsozzani@feldmangale.com

On behalf of the Defendants:
Michael J. Colitz, Esq. (via videoconference)
Gray Robinson, PA
401 East Jackson Street, Suite 2700
Tampa, Florida 33602
813-273-5000
michael.colitz@gray-robinson.com

ALSO PRESENT:
Ivan Bercian, Videographer



WILLIAM SHAWN SANDERS DEPOSITION INDEX


| Examinations | Page |
|---|---|
| BY MR. COLITZ: | 6 |
| BY MR. SOZZANI: | 20 |
| BY MR. COLITZ: | 67 |
| BY MR. SOZZANI: | 70 |


EXHIBITS
(All exhibits were premarked.)


| No. | Description | Page |
|---|---|---|
| Exhibit No. 1 | Barn Light Electric Company Sales Receipt dated 1/16/12; Bates No. BLO0030427 | 10 |
| Exhibit No. 2 | 1-page document entitled Order: Order info - The Original Barn Light: Gooseneck Lights, Rustic Lighting, Sign...Page 1 of 2 | 11 |
| Exhibit No. 3 | Photo of three stacked cardboard boxes; top box says Barnlight Electric | 12; 47 |
| Exhibit No. 4 | Two photos of a black light fixture with a Barnlight Electric label | 47 |
| Exhibit No. 5 | Internet Archive Wayback Machine printout of a January 9, 2012 blog re Barnlight Electric Barn Pendants with attached photo of a light fixture (4 pages) | 13 |
| Exhibit No. 6 | Internet Archive Wayback Machine printout of a December 27, 2012 Barn Light Electric Barn Lighting list with attached photo of a light fixture (4 pages) | 16 |




EXHIBITS (Continued)
(All exhibits were premarked.)


| No. | Description | Page |
|---|---|---|
| Exhibit No. 1A | 24 pages of various e-mails to and from David McAdam and Shawn Sanders dating from 10/21/11 to 1/25/12 (Premarked but not identified on the record.) | -- |
| Exhibit No. 2A | Part Numbers list of 10 items | 59 |
| Exhibit No. 2B | 21 pages of printouts of various light fixtures and lighting accessories with pricing and specifications information (Premarked but not identified on the record.) | -- |




WWW.USLEGALSUPPORT.COM

THE VIDEOGRAPHER: Good morning. We're on the record, video record. Today is Thursday, the 1st day of October, 2015. The time is now 9:58 a.m.

We're here at 1468 West 9th Street, Cleveland, Ohio for the purpose of taking the video deposition of William Sanders taken by Mike Colitz in the case numbered 8:14-cv-01955-MSS-AEP. The case is Barn Light Electric Company, LLC verse Barnlight Originals, Inc. which is filed in United States District Court, Middle District of Florida.

The court reporter is Elaine Newlin of U.S. Legal Support. The videographer is Ivan Bercian of U.S. Legal Support.

Would counsel please state their names for the appearance for the record?

MR. COLITZ: Yes. This is Michael Colitz with the law firm of Gray Robinson on behalf of the defendants Barnlight Originals and Hi-Lite Manufacturing Company.

MR. SOZZANI: Joseph Sozzani, Feldman Gale, on behalf of plaintiffs Barn Light Electric Company, LLC.

THE VIDEOGRAPHER: Will the



court reporter please swear in the witness?

THE REPORTER: Would you raise your right hand, please?

WILLIAM SHAWN SANDERS

of lawful age, called by the Defendants for examination pursuant to the Federal Rules of Civil Procedure, having been first duly sworn, as hereinafter certified, was examined and testified as follows:

EXAMINATION OF WILLIAM SHAWN SANDERS

BY MR. COLITZ:

**Q Good morning, Mr. Sanders. How are you?**

A Great. How are you?

**Q Good. Let me just begin by saying I appreciate your time here today. I know everybody's got busy schedules, so I appreciate you taking the time to testify here today, and I understand you've got some scheduling issues and you've got to be out of here in about an hour, so I'm going to do my level best to get you out of here at that time. I've had a conversation with opposing counsel. I think he's in agreement with that.**

A I appreciate it.

**Q Can you spell your name, state your name, spell**



**it for the benefit of the court reporter?**

A Williams Sanders, W-i-l-l-i-a-m S-a-n-d-e-r-s.

**Q And middle initial?**

A S. S like Sam.

**Q I've just got a couple ground rules for today. This is a deposition, but it's got all the formality of testimony in court, so treat this as if we were in a court of law.**

**It's important that we not talk at the same time because we have somebody transcribing everything that's said. So just let me finish my questions, I'll let you finish your answers, and if we can just make sure that we don't speak over one another.**

**I'm going to do my best to ask questions that are clear and understandable, but sometimes I don't achieve that goal. Sometimes I ask very confusing questions that nobody understands, so if that's the case, I would just ask if you ask me to clarify my question and I will.**

A Okay.

**Q Hopefully we won't need to take any breaks because hopefully we're going to have a short deposition.**



**Where are you currently employed?**

A I'm employed by Real Lighting in Mentor, Ohio.

**Q And what does Real Lighting do?**

A We sell light bulbs, ballasts, lighting fixtures, et cetera. We're a distributor.

**Q Are you familiar with a company called Hi-Lite Manufacturing?**

A Yes. We -- yes.

**Q And how do you know them?**

A We are their manufacturer's rep under another company called Opalescence.

**Q So do you sell products of Hi-Lite Manufacturing?**

A Yes, we do.

**Q And what types of their products do you sell?**

A Well, basically their whole product line. We cover Ohio, Michigan, West Virginia, western Pennsylvania, Kentucky and Indiana for the company. We have a couple representatives that are on the road in addition to myself. And we cover their whole product line, from RLMs to decorative lighting to custom jobs. Basically their -- everything that they carry.

**Q Okay. And how long have you been doing that?**

A We've been with them for approximately 16 years.



WWW.USLEGALSUPPORT.COM

It might be longer. I can't remember.

**Q Have you likewise heard of a company called Barn Light Electric?**

A I have, only in looking on the Internet here and there.

**Q How did you come to learn about Barn Light Electric?**

A Basically I had heard from some distributors that their -- Hi-Lite was selling lighting fixtures online. I looked at it at that point and then I -- Hi-Lite asked me to purchase some products from the company.

**Q Now, did he ask you to purchase products from a company called Barn Light Electric?**

A Yes.

**Q And so you visited -- did you visit the Barn Light Electric website?**

A I did.

**Q And what did you purchase from Barn Light Electric?**

A They asked me to purchase, I think it was -- I guess from this, it was seven different fixtures and --

**Q What are you referring to right now?**

A Exhibit 1.



-----

(Exhibit No. 1 was premarked.)

-----

**Q What do you identify Exhibit 1 to be?**

A My sales receipt from Barn Light Electric in which I purchased seven different fixtures, including one set that has arm -- an arm with it.

**Q And does this appear to be the sales receipt that you received?**

A This is the sales receipt that I received.

**Q And what types of lighting fixtures does it show that you purchased?**

A It looks like three different models of a 16-inch shade in -- a couple in black, a couple in galvanized, cord hung, and then one that is attached with three arms that go with it in black.

**Q Did somebody ask you to make this purchase?**

A Yes.

**Q Who asked you to make this purchase?**

A David McAdam.

**Q And do you know why he asked you to make the purchase?**

MR. SOZZANI: Object to form.



A He had -- he wanted to verify that they were actually selling true Hi-Lite product.

-----

(Exhibit No. 2 was premarked.)

-----

**Q And I believe you also have what's been marked as Exhibit Number 2. Do you recognize that document?**

A I do.

**Q And what do you recognize it to be?**

A It was their e-mail confirmation to me on the order that I placed with them.

**Q And when you say they, are you referring to --**

A Barn Light -- yes, Barn Light Electric's confirmation to me on my sales receipt.

**Q Okay. And was that generated from their website?**

A This was generated from their website. As you can see from the bottom, it came from www.barnlightelectric.com.

**Q And do you -- there's a couple different part numbers on there. Do you recognize some part numbers on this document?**

A Yes. The H-15116 refers to a Hi-Lite -- it's their -- that's the Hi-Lite model number for a 16-inch warehouse shade. And then in the first line of both -- of the Exhibit 2, they have the HL-A which is Hi-Lite's model number for their arm which is their HL-A.



**Q So you recognize those numbers as corresponding to Hi-Lite products?**

A Those are Hi-Lite product part numbers, yes.

**Q And after you placed this order, did you actually receive the products?**

A I did. I received products at my house in Solon.

**Q Did they come in boxes?**

A They did.

MR. SOZZANI: Objection. Form.

-----

(Exhibit No. 3 was premarked.)

-----

**Q Turning now to Exhibit Number 3, do those boxes appear to be or do they look like the boxes that you received as a result of this order?**

A Those are --

MR. SOZZANI: Objection. Form.



WWW.USLEGALSUPPORT.COM

A Those are the boxes I received, yes.
**Q Do you recall if anywhere on the box there was a reference to Hi-Lite Manufacturing?**
A As far as I know, there was not any reference to Hi-Lite Manufacturing on the box.
**Q Did you look at the products inside of the boxes?**
A Honestly, I don't remember if I actually opened up the boxes or not to look at them.
**Q Are you familiar with something called the Internet Archive --**
A No.
**Q -- or the Way Back Machine?**
A No.
**Q Let me turn your attention to Exhibit Number 5 which you should have before you.**

-----

**(Exhibit No. 5 was premarked.)**

-----

**Q I can tell you that the Internet Archive or the Way Back Machine is a way to tell what a website looked like on a particular date back in history.**
MR. SOZZANI: Objection. Form.



**Q And Exhibit 5 is a printout from the Internet Archive in January of 2012.**
**Does the document that -- let me back up.**
**In order to make the -- to place the order that you placed, did you actually visit the Barn Light Electric website --**
A Yes.
**Q -- in order to make that order?**
A That's the only way I could do so, yes.
**Q Does Exhibit 5 appear to you to look like what the website looked like when you placed your order?**
MR. SOZZANI: Objection to form.
A Yes.
**Q When you visited the Barn Light Electric website, were there pictures of the products you could order?**
A Yes.
**Q Were there pictures of barn pendants?**
A Yes.
**Q Do you recall when you visited the website to place your order, do you recall seeing any H part numbers?**
A Yes.



**Q And looking at Exhibit Number 5, do you see a part number there H-15116?**
A Yes.
MR. SOZZANI: Objection to form.
A That's the part number that I purchased.
**Q And do you see there in Exhibit 5 next to that part number a depiction of a light fixture?**
A Yes.
**Q And does that appear to correspond to that H-15116 part number?**
A Yes.
**Q And the last page of that exhibit, do you recognize that light fixture?**
MR. SOZZANI: Objection. Form.
A Which fixture?
**Q It should be the last page of Exhibit 5.**
A Oh, I'm sorry. The last page. Okay. Yeah. Yes, I do. Sorry.
**Q On the basis of the part number in that image, would it be your understanding that you were -- strike that.**
**On the basis of the part number in that image, when you placed your order, was it your**



**understanding that you were purchasing a Hi-Lite product?**
A Yes.
**Q Was it your understanding that you were purchasing a product manufactured by Hi-Lite Manufacturing?**
A Yes.
**Q And at the time you placed your order, did you in fact believe you were purchasing a Hi-Lite product?**
A Yes.
**Q Did you subsequently come to learn that what you received was not a Hi-Lite product?**
MR. SOZZANI: Objection. Form.
A Yes.
**Q Let me turn your attention now to Exhibit Number 6.**

-----

**(Exhibit No. 6 was premarked.)**

-----

**Q Exhibit 6 is likewise a printout from the Internet Archive. Does Exhibit 6 appear to be a page of the website that you visited at Barn Light Electric?**



WWW.USLEGALSUPPORT.COM

A Yes.
**Q And do you see on this page any Hi-Lite part numbers?**
A Yes.
**Q Do you see a part number there that corresponds with your purchase?**
A Yeah. The H-15116G.
**Q And, again, do you see the photo that corresponds to that part number?**
A Yes.
**Q Looking at the last page of that exhibit, do you recognize that light fixture?**
A Yes, I do.
MR. SOZZANI: Objection. Form.
**Q And what do you recognize it to be?**
MR. SOZZANI: Objection. Form.
A It looks like a Hi-Lite lighting fixture.
**Q On the basis of the part number and the image, would it be your understanding that you would have been purchasing a Hi-Lite product?**
MR. SOZZANI: Objection. Form.
A Yes.



MR. COLITZ: What's the basis of the objection?
MR. SOZZANI: There's no foundation laid. What are you referring to?
**Q On the basis of -- in Exhibit Number 6, on the basis of the part number H-15116G and the picture that is next to it, would it be your understanding that you would be purchasing a Hi-Lite light fixture?**
A Yes.
**Q And when you placed the order that's referenced in Exhibit Number 2, was it your belief at the time you placed that order that you were, in fact, purchasing a Hi-Lite product?**
A Yes.
**Q Did you subsequently come to learn that what you had purchased was not a Hi-Lite product?**
A Yes.
**Q One other question. The part numbers that are reflected in -- the part number that's reflected in Exhibit 6, the H-15116G, is that the same part number that's reflected in the order information in Exhibit 2, H-15116G?**
A That is the first line item in the order information that I received, yes.



**Q And likewise, with Exhibit 5, the part number H-15116, does that correspond to the part number that's reflected in the order info in Exhibit 2?**
A Yes, it is.
MR. COLITZ: I have no further questions.
MR. SOZZANI: Thank you, counsel.
Before I begin, Mr. Sanders, the court reporter should have a number of exhibits which we've had scanned over to your location in Ohio. If the court reporter could confirm receipt of those exhibits.
THE REPORTER: We received Exhibits 1 through 6.
MR. SOZZANI: Do you have an exhibit which is marked 1A, 2A or 2B?
THE REPORTER: I do not.
MR. SOZZANI: All right. Let's go off the record and if you could check with your front office --
THE VIDEOGRAPHER: Okay. We're off the record --
MR. SOZZANI: -- see if



they've arrived.
THE VIDEOGRAPHER: We're off the record. The time is now 10:16.
(Short break taken.)
THE VIDEOGRAPHER: We're back on the record. The time is now 10:18.
-----
EXAMINATION OF WILLIAM SHAWN SANDERS
BY MR. SOZZANI:
**Q Good morning, Mr. Sanders.**
A Good morning.
**Q It looks like we've resolved the issue and we have been able to locate the exhibits which were sent over and we'll get to those in a little bit here.**
**Just by way of introduction, my name is Joseph Sozzani. I represent the plaintiffs Barn Light Electric Company, LLC in this matter.**
**And you understand your testimony today is being recorded and it may be utilized in open court should this case go to trial? Do you understand that?**
A Yes.
**Q Okay. And what did you do to prepare for your**



WWW.USLEGALSUPPORT.COM

**deposition today?**
A Nothing really. I brought --
**Q Did you look at any documents? I'm sorry.**
A I looked at the documents that were sent on the subpoena and that was pretty much it.
**Q Did you speak with anybody else about today's deposition?**
A I did speak with your opposing counsel.
**Q With Mr. Colitz?**
A With Mr. Colitz in a brief phone call a few weeks ago.
**Q And what did you discuss in that phone call?**
A He brought up the fact that I did this purchase back in 2012 and briefly reviewed, you know, why I made this purchase. And, honestly, I had forgotten about it 'cause it's so many years later, but we spoke about this purchase and I told him what I knew at the time from what I recollected, and here I am today.
**Q Okay. Did you go over any of your planned testimony today with Mr. Colitz?**
A No.
**Q And did you supply Mr. Colitz with any additional information?**
MR. COLITZ: Objection as



to form.
A Nothing other than this transaction, no.
**Q And to the best of your knowledge, have you been contacted by anybody from Hi-Lite Manufacturing Company or Barnlight Originals in connection with this lawsuit?**
A Not -- not recently.
**Q Have you been contacted by them at all regarding this lawsuit?**
A The only time I was contacted by them might have been for this initial transaction, but not -- I don't think it was referenced to this specific lawsuit.
**Q And to the best of your knowledge, have any current or former employees of your company, Real Lighting, been contacted by Hi-Lite or Barnlight Originals regarding this lawsuit?**
A I'm the only employee. No.
**Q Are you also the only employee of Opalescence?**
A Yes. Well, yes. I mean we have other reps, but they are subcontractors or independent contractors.
**Q Could you explain that to me a little better? You're a distributor of Hi-Lite; is that correct?**



A We -- no. Real Lighting is a distributor and we have a business that sells light bulbs and ballasts. Opalescence, we have a rep -- a manufacturers' representative group where basically we're contracted by the company to go out and distribute their products to lighting show rooms, electrical wholesalers in our area.
**Q And it's quite a large region from what I understand. Is that correct?**
A Yes.
**Q So what states do you represent Hi-Lite in?**
A Like I said, Ohio, Michigan, western Pennsylvania, West Virginia, Kentucky and Indiana. I have three other sub reps that cover those territories.
**Q And you represent Hi-Lite with regard to their entire product line?**
A Yes.
**Q What would you say that your revenue is annually?**
A I want to say we do about 330,000 in gross business and we usually get about 7 to 10% of that.
**Q And that's your Hi-Lite business alone?**
A That's the Hi-Lite business alone, yes.



**Q So that's substantial; would you agree?**
MR. COLITZ: Objection as to form.
**Q You can answer.**
A It's really not that big. I mean we have lines that do multimillions of dollars, so it's -- relatively it's not that great.
**Q Okay. But you would agree that $330,000 of sales is substantial?**
A It is.
MR. COLITZ: Objection as to form.
A It is.
**Q It is. Okay.**
A They probably would --
**Q So if Hi-Lite was --**
A -- they probably -- I'm sorry.
**Q I'm sorry. Go ahead.**
A No. I said they probably would want me to do more 'cause it affects their revenue stream, so.
**Q Of course. So if Hi-Lite was to close its doors tomorrow, you stand to lose a substantial amount of revenue; is that correct?**
A Yes, but, honestly, that business is kind of



WWW.USLEGALSUPPORT.COM

immaterial. I started out as manufacturers' reps and we actually moved into the distribution business and that's why I say I have three reps that cover that whole territory. I don't actually do that as much anymore. I actually spend most of my time selling light bulbs for Real Lighting.

**Q Okay. Would it be fair to say, Mr. Sanders, that if Hi-Lite closed its doors tomorrow, you would likely lose around 300,000 to $330,000 of revenue?**

MR. COLITZ: Objection as to form.

A No. That's their revenue. I'm saying we make 8 to 10% of that. We make maybe $20,000 a year from that.

**Q Okay. So you would lose $20,000 --**

A Yes.

**Q -- if Hi-Lite was to close its doors?**

A Yes.

**Q Okay. Thank you.**

A I'm sorry.

**Q And you've been doing business with Hi-Lite for how long?**

A Like I said, we've been their representatives



for probably at least 16 years.

**Q And when you say "we" --**

A Well, I --

**Q -- are you referring to Real Lighting?**

A Opalescence.

**Q Opalescence.**

A Which is the representative agency, yes.

**Q And you make a profit doing business with Hi-Lite, correct?**

A Correct.

**Q Do you have a written agreement with Hi-Lite?**

A I may. Like I said, I can't remember. There's some companies that we basically have a handshake with and there's others we do have a written agreement with. I want to say yes, we do, but if I had -- if you'd ask me to find the contract, I don't know if I actually could.

**Q Do you think that's some -- do you think that's a contract that Hi-Lite would have if it exists?**

A I'm sure that they would, yes.

**Q Do you have the exclusive right to sell products in the regions which you mentioned, Ohio, Michigan, Kentucky, Indiana, western Pennsylvania and western Virginia I believe?**



A Well, yes and no. We're their residential agents. They have commercial agents who sell to like someone who is building a hospital or a building or whatever. They go and call on the architects and they actually get the other jobs. They're in the same territories that we are. And I don't have an exclusive to distribute their product. I mean -- I mean there's multiple places that distribute their product.

**Q Would you say that you have an exclusive agreement with them to sell the residential line --**

A Yes.

**Q -- of Hi-Lite products?**

A Well, I have the exclusive agreement to sell to residential places. Like, for instance, like in Tampa, I'm sure that they have lighting showrooms. It's the same thing for -- yeah. I would walk into the lighting showroom and sell them the Hi-Lite product line.

**Q So you would sell to retailers; is that correct?**

A So they actually -- they actually would be the sellers of the product. We -- they buy it. We basically facilitate getting them catalogs,



making sure they have updated pricing, stuff like that. We don't actually sell it to them. Hi-Lite sells it to them. We're their representative.

**Q So you go in and you facilitate the sale --**

A Correct.

**Q -- between Hi-Lite --**

A And the distributors.

**Q -- and the retailer?**

A Correct.

**Q Okay. And I know it's only natural when we're having a conversation to try to answer each others questions as quickly as possible, but if you could try to pause before answering the question --**

A Oh.

**Q -- I would appreciate it. This way the court reporter who is there next to you can accurately record our conversation.**

A Sorry.

**Q Have you ever received a discount from Hi-Lite before?**

A No.

**Q Have any of the distributors to which you sell products received a discount from Hi-Lite**



WWW.USLEGALSUPPORT.COM

**before --**
A Yes.
**Q -- to your knowledge?**
A Yes.
**Q And what was the basis for the discount that they received?**
A Usually it's for either volume or for -- like let's say if you set up a new showroom, we might give them a discount for the product that they put on display. There's a variety of reasons that they could get discounts.
**Q And what kind of discount would you normally see in a situation where there was a volume purchase for instance?**
A Usually the max -- the most of what Hi-Lite gives, I think the maximum would be about 10%.
**Q About 10%. And when a distributor receives a 10% discount, are there any conditions that have to be fulfilled in order to receive the 10% discount from Hi-Lite?**
A Not usually. Like I said, it's based on those conditions before. So in other words, it's based off volume. So in other words, they placed an order for $20,000 and they got a 10% discount on that specific order at that time.



**Q So they would -- it is fair to say that a distributor receiving a 10% discount in your experience would not be restricted to only selling Hi-Lite products?**
A That's correct, they would not be restricted to only selling Hi-Lite products.
**Q Okay. Do you personally know Jeff Ohai?**
A Yes.
**Q Have you met with him before?**
A Yes. Probably the last time I saw him was probably eight years ago.
**Q And how many times do you think you've met with him over the 16-year period you've done business with Hi-Lite?**
A I'd have to say maybe five to ten times. There's a lighting convention in Dallas, Texas twice a year and they used to have a showroom there and we used to go there for -- to see him, and it would be twice a year, so.
**Q What was the name of that convention?**
A It's at the Dallas Trade Mart and I think it's the International Lighting and Hospitality Show maybe. I haven't been for -- I haven't been there for probably four years, three, four years.



**Q Would you consider Jeff Ohai a personal friend?**
A No.
**Q Would you consider him a business associate?**
A I would consider him my boss.
**Q And you say you consider him your boss. So you would take direction from Mr. Ohai?**
MR. COLITZ: Objection as to form.
A We -- since we represent the line, basically I would -- I mean if he tells me to do certain things in a territory, I would be inclined to do so.
**Q So if Mr. Ohai asked you to do a favor for him or Hi-Lite, would you do so?**
A Depending on what the favor was, yes.
**Q So let's talk about the purchase which you just testified about a few minutes back. So I understand that on or about January 13, 2012, you were asked to make a purchase by David McAdams (sic) from Hi-Lite and that purchase was a purchase from Barn Light Electric Company. Is that correct?**
A That is correct.
**Q And you agreed to make that purchase?**
A Yes, I did.



**Q And you did make that purchase; is that correct?**
A Yes, I did.
**Q Were you promised anything by David McAdams for making the purchase?**
A That he would reimburse me for the cost of the sale.
**Q Did you get anything else from Mr. McAdams for making that purchase?**
A I did not.
**Q Or from Hi-Lite?**
A I did not.
**Q Did you make any other purchases from Barn Light Electric?**
A I did not.
**Q So other than the single purchase you made on January 13, 2012, you made no other purchases from Barn Light Electric whatsoever?**
A That's correct.
**Q If you could take a look at Defendants' Exhibit Number 1, the exhibit that we were looking at just a short time ago.**
A Yes.
**Q And are you looking at Exhibit Number 1 which appears to be a Barn Light Electric Company**



WWW.USLEGALSUPPORT.COM

**sales receipt?**
A Yes.
**Q And if you turn your attention to the upper right-hand corner of the page. Could you read for the record the date and the sales number that's printed on Exhibit 1?**
A The date is 1/16/12, Sale Number 601930.
**Q And did you carefully review this sales receipt when you received it?**
A Yes.
**Q And was the receipt inside one of the boxes that you received from Barn Light Electric after you placed the order?**
A I can't remember where the receipt was, if it was attached to the outside or if it was on the inside of the box. I can't remember.
**Q Let's take a closer look at the sales receipt for Barn Light Electric Company. Can you tell me how many times that the name Hi-Lite appears on the document that you're holding, Exhibit Number 1?**
A Zero.
**Q Zero. And can you tell me if this document specifically contains the name Hi-Lite anywhere on the document whatsoever?**



A It does not.
**Q Were you familiar with the lights that are referenced in Exhibit 1?**
A Oh, yes.
**Q And you received this shipment from Barn Light Electric Company after you placed your order, correct?**
A Correct.
**Q And what address was your order from Barn Light Electric shipped?**
A It was shipped to my home.
**Q What was that address?**
A 6640 Andre, A-n-d-r-e, Lane, Solon, Ohio, 44139.
**Q Thank you.**
**And how many boxes did you receive?**
A I can't -- I can't honestly remember, but --
**Q Okay. Do you remember if the boxes had any writing on the outside?**
A I know -- from what I recall, they did have Barn Light Electric's logo on the outside, but I don't know if there was any other actual writing on the outside.
**Q Let's go ahead and take a look at Exhibit Number 3 which is also in front of you.**



A Okay.
**Q Do you see those photographs there?**
A Yes.
**Q Does that refresh your recollection of what was written on the outside of the box?**
A It does.
**Q And what was written on the outside of the box?**
A Barn Light Electric and then Barn Light Electric Company and their address.
**Q So there was a logo, Barn Light Electric logo on the outside of the boxes?**
A Correct.
**Q And a Barn Light Electric address as well, correct?**
A Correct.
**Q And then when you received that shipment, did you open the boxes to make sure that the lights that you had ordered were inside?**
A I don't remember if I did.
**Q So as you sit here today, you are unable to testify as to what the contents of the boxes were; is that correct?**
A That is --
MR. COLITZ: Objection as to form.



A That is correct. I can't remember if I opened the boxes or if I didn't open the boxes.
**Q What did you do with the boxes after you received them?**
A I shipped them to Hi-Lite.
**Q So you just placed the boxes into the mail just the way that they were?**
A Probably for boxes this size, we probably sent them UPS.
**Q Did you place those boxes within different boxes or did you just send those boxes just the way they are?**
MR. COLITZ: Objection as to for.
A I sent the boxes just the way that they were.
**Q In Exhibit 3, correct?**
A Correct.
**Q And when was the last time that you saw the boxes you received from Barn Light Electric after placing your order on January 13th, 2012?**
A The last time I would have seen them would be the day that I shipped them out.
**Q Do you know where those boxes are today?**
A I do not.
**Q Let's turn to Defendants' Exhibit 2 and this**



WWW.USLEGALSUPPORT.COM

**document appears to be a page that displays your purchase order information. Is that correct?**
A That is correct.
**Q And did you personally place the purchase order that's referenced in Exhibit 2?**
A Yes, I did.
**Q And how was that purchase order referenced in Exhibit 2 paid for?**
A It was paid for by my Visa or Master Card.
**Q Was that payment made with your personal credit card?**
A Yes.
**Q And were you reimbursed for the payment that you made --**
A Yes, I was.
**Q -- on your credit card?**
A Yes, I was.
**Q And how were you -- I'm sorry. How were you reimbursed, Mr. Sanders?**
A I imagine that Hi-Lite probably would have sent me a check for it.
**Q Do you remember receiving that check?**
A I'm sure I did because otherwise I would have kept calling them until they sent me the money.



**Q Okay. Do you remember who reimbursed you for your payment at Hi-Lite?**
A I do not. I would imagine it probably would have been just a standard Hi-Lite check.
**Q Are you familiar with a company by the name of Sanders & Associates?**
A Yes.
**Q And who is Sanders & Associates?**
A That's my -- my dad also had a rep agency that we worked together on and that was his name for his agency.
**Q And is that separate from Opalescence?**
A It is. They are two separate agencies.
**Q And does Sanders & Associates to your knowledge do business with Hi-Lite?**
A Not -- I mean not in any specific capacity.
**Q Are they a distributor of Hi-Lite?**
A No.
**Q Or a sales rep of Hi-Lite?**
A No.
**Q And who is Shawn Sanders?**
A That's me.
**Q That's you. So you also go by the name Shawn Sanders?**
A I've always gone by the name Shawn Sanders.



William is my official first name.
**Q So in your communications with Hi-Lite --**
A Yes.
**Q -- are you known as Shawn Sanders?**
A Yes.
**Q And who is Leff Electric, L-e-f-f Electric?**
A They're a distributor in Cleveland.
**Q And you do business with Leff Electric?**
A I have in the past, yes.
**Q So when you requested a reimbursement check from Hi-Lite, did you request that the check be sent to Shawn Sanders or William Sanders?**
A I honestly don't remember. They can make it out to either one. My bank doesn't care.
**Q Are you familiar with Lightfair Convention for Lighting?**
A Yes.
**Q And what is that? What is Lightfair?**
A Lightfair is a convention. They usually have it once a year in May. It alternates between the east coast and the west coast, and most lighting manufacturers, light bulb places, people that sell parts and whatnot attend the convention. I went I think a couple years ago and hopefully I can go this year.



**Q And to your knowledge, does Hi-Lite attend that show, Lightfair?**
A I know they went the one year that I did go in Pennsylvania, when it was in Pennsylvania, but I don't know if they do currently 'cause I haven't gone for probably two or three years.
**Q Is there an admission cost to go to Lightfair?**
A There usually is, but you can usually get that waived if you distribute product through any manufacturer. They'll get you free tickets.
**Q Okay. So you'd have to ask a manufacturer for a pass or for some free registration in order to get in without paying; is that correct?**
A That is correct. Like, for example, in Real Lighting, I have probably seven manufacturers and every year they send me an e-mail that says that I can go for free.
**Q Did Hi-Lite ever provide you with free passes to go to Lightfair?**
A To go to Lightfair, I don't think so. I thought I got -- when I went that one year, I thought I got them from -- I thought I actually got them from a company representative called Fan Light, but I could be wrong.
**Q Do you remember Hi-Lite providing free passes**



WWW.USLEGALSUPPORT.COM

**to you sometime around February 11th, 2012 --**
MR. COLITZ: Objection as to form.
**Q -- to Lightfair?**
A It's possible.
**Q Less than a month after you made this purchase for them, do you remember them making -- or I'm sorry. Strike that.**
**Do you remember asking Hi-Lite to provide free passes to Lightfair for you around February 11, 2012?**
MR. COLITZ: Objection as to form.
A It is possible, yes.
**Q And that would have been approximately one month after you made the purchase on their behalf in Barn Light Electric; is that correct?**
A It would be.
**Q Would you say Hi-Lite was maybe paying you back for a favor that you did for them?**
A I doubt that.
MR. COLITZ: Objection as to form.
A They -- many manufacturers give out free passes. There's numerous people I could ask



for free passes for Lightfair other than Hi-Lite, so --
**Q Oh, of course.**
A -- I mean it's possible and --
**Q I understand that, but I am just asking is it possible that they were returning the favor that you had done for them in making the purchase from Barn Light Electric?**
MR. COLITZ: Objection as to form.
A Anything's possible.
**Q So let's turn to Exhibit 2 which is the purchase order, the Internet printout in front of you.**
A Yes.
**Q Can you please identify everywhere on that page that Hi-Lite appears?**
A Hi-Lite does not appear on this page.
**Q So Hi-Lite does not appear anywhere on that page, top to bottom?**
MR. COLITZ: Objection as to form.
**Q Is that correct?**
A That is correct, even though there are Hi-Lite part numbers on here.



**Q Okay. And we'll get to that in just a moment.**
**So would it be accurate to state – strike that.**
**On Exhibit 2 there's a light fixture and it's referenced as Barn Light The Original, 12 inch to 16 inch Warehouse Shade. Do you see that?**
A I do.
**Q Are you familiar with that light?**
A Not off the top of my head as it's stated.
**Q And why is that? Is that because it's not what Hi-Lite calls that fixture?**
MR. COLITZ: Objection as to form.
A That's correct.
**Q So just to clarify for the record, Barn Light The Original is not a name which you are familiar from Hi-Lite?**
A That's correct.
**Q And it is not a product which Hi-Lite carries in any of their catalogs to your knowledge?**
A That's correct.
**Q Are the lights that you purchased in this purchase order very popular lights?**
A For Hi-Lite they are, yes.



**Q Are they popular lights in general? Do you see them -- I'm sorry. Are they popular lights in general?**
A That's a relative term. I mean RLM heads and shades only have a certain percentage of the marketplace in general. I mean maybe 15 to 20% I would say.
**Q Okay.**
A So if you consider that -- I mean -- I'm sorry.
**Q No. Go ahead.**
A No. So I mean I don't know what you consider popular. I don't know if 15 to 20% makes it popular.
**Q I would say that's a fair amount of market share, but you're the expert, so I'll leave the opinion to you.**
A Okay.
**Q What are RLMs?**
A They are retro lighting manufacturers and they usually refer to the shape -- these type of warehouse shades.
**Q Warehouse shades?**
A Yes.
**Q So the shape of the light fixtures that is titled Barn Light The Original --**



WWW.USLEGALSUPPORT.COM

A Right.
**Q -- in Exhibit 2 --**
A Right.
**Q -- you would classify that as a warehouse shade?**
A Yes. It even says warehouse shade.
**Q Okay. And that style of lighting in general in your industry is referred to as a warehouse shade; is that correct?**
A That's correct.
**Q Have you ever heard the term Barn Light?**
A Not before this purchase.
**Q So the first time you've ever heard the term Barn Light was when you made the purchase from Barn Light Electric Company?**
A Yes.
**Q Would you say that's a unique term?**
MR. COLITZ: Objection as to form.
**Q Would you say Barn Light is a unique term?**
MR. COLITZ: Objection as to form.
A I would say it's --
MR. SOZZANI: What's the basis?



A -- relatively unique, yes.
MR. SOZZANI: What's your basis, counsel?
MR. COLITZ: You've asked it three times in a row.
MR. SOZZANI: Oh, he just answered.
MR. COLITZ: Right.
MR. SOZZANI: Okay. Thank you.
MR. COLITZ: On the third time you asked it.
BY MR. SOZZANI:
**Q And why did you choose the specific lights that you ordered in Exhibit 2?**
A Those were the lights that they told me to purchase.
**Q Now, the last thing on Exhibit 2, let's take a look at Exhibit 2, and under the titles in the center of the page, under the titles of the specific lights --**
A Yes.
**Q -- do you see where it says Barn Light The Original? --**
A Yes.



**Q -- under that, what is the first word that appears there? What does that word say?**
A Code.
**Q Code, correct?**
A Correct.
**Q It says code?**
A It does.
**Q It does not say part number; is that correct?**
A That is correct.
**Q And then next to that code, there seems to be an alpha numeric number there which begins with the letter H and then there's several numbers there; is that correct?**
A That is correct.
**Q Now, let's go to Exhibit 3 and 4. We'll look at both of these together.**
A Okay.

-----

(Exhibits Nos. 3 and 4 were premarked.)

-----

**Q Where were the photos that make up Exhibit Number 3 and 4 taken, if you know, Mr. Sanders?**
A Well, number 3 is my garage because I recognize my little soccer thing behind it.
**Q Okay.**



A So that's my garage at home.
Number 4, honestly, I have no idea.
**Q So would you say that that photo, number 4, was not taken by you?**
A I don't remember if -- like I said, I don't remember if I opened the boxes, so I don't remember if I took the photos or if not -- let me see. It's hard to tell. In the second one, number 4, it's hard to tell if that's my wedding ring or not.
**Q Okay.**
A So I don't know. I mean that's the only way I would be able to tell. I can't -- I can't tell. I'm sorry.
**Q I understand. So you're not sure --**
A I don't recall.
**Q -- who took -- you don't recall who took the photo that's --**
A I'm sure I -- I'm sure I took the one for --
**Q All right. Let me --**
A I'm sorry. Go ahead.
**Q I'm sorry. Let me just so that the court reporter can get a nice clean record.**
**So your testimony today is that you are not sure who took the photo in Exhibit Number**



WWW.USLEGALSUPPORT.COM

**4; is that correct?**
A That is correct. It looks like the blue carpeting I had in the garage, but I'm not 100% sure.
**Q Is there a date stamp on the photos anywhere?**
A Nothing other than what's stamped for the case.
**Q Than the case. But not on the photos themselves?**
A Not on the photos themselves, no.
**Q So how would one know for certain when these photos were taken?**
A Well, if you -- for Exhibit 3, if you saw my garage today, you'd know there's no way I could get those boxes in my garage today.
**Q Oh, okay. That's fair enough. But is there any way looking at these photos to know when these photos were taken?**
A Not specifically.
**Q And your testimony today is that you are not certain that the photo in Exhibit 4 depicts a light which you received after making a purchase from Barn Light Electric; is that correct?**
A Like I said, without identifying my wedding ring, I can't be 100% sure.



**Q So you're not 100% sure whether that's the light that you received from Barn Light Electric or not; is that correct?**
A That is correct, although it does stamp Barn Light Electric.
**Q I understand that, but your testimony is that you are not sure whether or not that's the light you received from Barn Light Electric --**
A That's correct.
**Q -- is that correct?**
A That is correct.
MR. COLITZ: Counsel, one scheduling point. I've told Mr. Sanders he can leave at 11:00. I have a few redirect questions and it's 5 till 11:00.
MR. SOZZANI: Okay.
**Q Mr. Sanders, would it be okay with you to stay for say another 10 or 15 minutes after 11:00?**
A That would be okay.
**Q Thank you very much. We greatly appreciate it, and this way hopefully we won't have to call you back for a deposition in the future.**
**Do you know who manufactured the lights that are pictured in Exhibits Numbered 3 and 4?**
A I do not.



**Q So looking at Exhibit 4, that's the picture of -- well, I'll let you tell me what that's a picture of. What is the product that's pictured on Exhibit 4? Do you know what that product is?**
A The Exhibit -- well, the Exhibit 4 should be the second line item on my order which would be the 15116 'cause that's the warehouse shade in black.
**Q And what is that called?**
A What do you mean?
**Q When you're looking at the purchase order --**
A Yes.
**Q -- is there a specific product name that's provided on the Barn Light Electric purchase order?**
A I believe this one would be the Barn Light Warehouse Pendant 12 to 27 inch shade.
**Q And does that appear to be what it is in that photo?**
A That is what it looks like in that photo.
**Q Is there a logo on that product?**
A It says Barn Light Electric.
**Q And is it the correct color?**
A Well, although the picture's bad, it looks like



it is indeed black.
**Q Okay. Let's turn to Exhibit 5. Do you see a logo in the far upper left-hand corner of the page that defendant has marked as Exhibit 5?**
A Yes. It says Barn Light --
**Q The upper left-hand -- the far upper left-hand corner above the Barn Light logo.**
A Yes.
**Q And what does that logo say?**
A Internet Archive Way Back Machine.
**Q When you visited barnlightelectric.com on January 13, 2012 to make a purchase, did you see a logo that resembles the logo that you're looking at in Exhibit 5 on the top of the page?**
A No.
**Q No --**
A No.
**Q -- right?**
**So that document is not an exact representation of the website as you viewed it on January 13, 2012; is that correct?**
A The way it's -- the way it is here, no, it's not.
**Q It's not.**
**Would you consider the shade that's**



WWW.USLEGALSUPPORT.COM

**pictured in Exhibit Number 4 a private label shade?**

MR. COLITZ: Objection as to form.

A I'm not sure what that means.

**Q Are you familiar with the term private label?**

A Yes.

**Q And what does that mean to you, Mr. Sanders?**

A Usually it's product that's purchased from a company that the company -- or product that's purchased from a manufacturer that the company gets in their own boxes and then redistributes.

**Q So a manufacturer would make a product and then label it with a different company's logo or label; is that accurate?**

A Yes.

**Q And is that a common occurrence in the lighting industry?**

A Yes.

**Q So there are a number of distributors that will place their own label on a product; is that correct?**

A Yes. Usually it's not -- usually it's not custom made products. It's usually, you know, more like standard things like light bulbs or,



you know, everyday types of lighting fixtures that they can just brand in their own box and without a lot of extra work.

**Q Okay. That's fair enough.**

**Looking at the photo in front of you, would you have any question as to whether this was a Barn Light Electric product?**

A No, because it says Barn Light Electric.

**Q Do you see Hi-Lite anywhere on the product that you're viewing in Exhibit Number 4?**

A I do not.

**Q So would you have any reason to believe whatsoever that that was a Hi-Lite product looking at the photo in image number 4 or Exhibit 4?**

A Only if I was in the industry.

**Q As a consumer looking at that product, would you have any reason to believe that that was anything but a Barn Light Electric product?**

A As a consumer, I would think I would have gotten a Barn Light Electric product.

**Q And it was shipped in a Barn Light Electric box, correct?**

A Correct.

**Q So would you agree with the statement that Barn**



**Light Electric was not trying to pass it on as a product from a different company?**

MR. COLITZ: Objection as to form.

A Like I said, since I am in the industry, it's --

**Q Well, that's not my question, Mr. Sanders. Would you agree with the statement that Barn Light Electric was not trying to pass itself off as a different company?**

MR. COLITZ: Objection as to form and let the witness answer the question.

MR. SOZZANI: Sure.

A Like I said, since I am in the industry, I -- it's hard to tell.

**Q Looking at the photo in front of you, do you see a Barn Light Electric label --**

A I do.

**Q -- on that product?**

A I do.

**Q And you do not see anything that identifies the company Hi-Lite on that product; is that correct?**

A That is correct.

**Q So given those two facts, would you agree with the statement that that product in your hand**



**was not trying to be passed off as a product from Hi-Lite?**

MR. COLITZ: Objection as to form.

A Yes.

**Q Thank you.**

**Do you see any part numbers on that product in front of you?**

A No.

**Q Do you believe you received in the boxes that are pictured in Exhibit Number 2 the products that you ordered from Barn Light Electric?**

A Yes.

**Q So the only thing that would lead you to believe anything else is the part number that you had referenced earlier; is that correct?**

A That is correct.

MR. COLITZ: Objection as to form.

**Q So let's look at that part number in Exhibit Number 1. What's that part number? The first item, what's the part number that you see there?**

A Wait. Which exhibit are we looking at?

**Q Exhibit 1.**

A Okay.
**Q That's the sales receipt?**
A Yeah. The first item number says 16 inch Warehouse Shade 91 - Black HL-A Gooseneck Arm 91-black.
**Q Okay. So what is it about that part number that --**
A The HL-A stands for it's a Hi-Lite-A arm.
**Q That's your understanding?**
A That's --
MR. COLITZ: Objection as to form.
A -- their specific product code.
**Q And why is that? Is that your understanding because it has the letters HL?**
A No. It's HL-A. That designation specifies a specific Hi-Lite arm.
**Q That's your interpretation of that; is that correct?**
MR. COLITZ: Objection as to form.
A That is -- would be my interpretation based on what I had purchased, just like if it said HL-B, that specifies a specific Hi-Lite arm, a specific length, width and height.



**Q Let's take a look at Exhibit Number 2. Now, you see where it says Code underneath each of those product names?**
A Yes.
**Q Is that the number that you're referring to which led you to believe that there might be products other than Barn Light Electric products that you were ordering?**
MR. COLITZ: Objection as to form.
A Yes.
**Q And is that because they start with the letter H?**
A No. That's because the H-15116 would designate a specific Hi-Lite 16-inch warehouse shade, just like the color 91 for them is black.
**Q So would the average consumer go into a website, let's say the website that you went to, barnlightelectric.com, viewing that exactly -- exactly that description that you're holding in Exhibit Number 2, would a consumer going to a website which had that description associate those alpha numeric codes with any specific manufacturer?**
A They may depending on what they're looking for.



It's just like if you're going online and looking for a specific Sylvania product number, you go to Google, a lot of sites pop up and you click whatever site comes up at the top. If they're looking for a specific Hi-Lite product number, then your -- I assume Barn Light Electric would come up.
**Q In isolation, just that number --**
A Yes.
**Q -- if I was to view that number as a consumer, would I associate that with some specific product?**
A I would think so, yes, 'cause that's your code designation.
**Q Okay. Well, let's take a look at -- take a look at Exhibit 2A.**
MR. SOZZANI: Can you please hand the witness Exhibit Number 2A?
-----
(Exhibit No. 2A was premarked.)
-----
A 2A. Okay.
**Q What I've handed you is a number of part numbers. Do you see those part numbers?**
A I do.



**Q So let's look at these part numbers. Can you tell me, the first number that's listed there, is that a Hi-Lite product number?**
A No.
**Q What about Exhibit -- or number 2 in 2A?**
A No.
**Q The part number that begins with HC84, is that a Hi-Lite product number?**
A No.
**Q What about Number 3?**
A Number 3 might be depending on if you had the color code after it.
**Q Are you familiar with that particular number?**
A Not specifically.
**Q Why not?**
A I don't -- I can't say that I know every one of the 500 and some Hi-Lite product codes off the top of my head.
**Q So why would you think a consumer might know every one of the 500 or so product numbers that Hi-Lite had?**
MR. COLITZ: Objection as to form.
A Because I find in this business the consumers are actually very educated and that when they



WWW.USLEGALSUPPORT.COM

are looking for products, whether it's Kichler, Hi-Lite, Progress, et cetera, they actually are looking for a very specific product at the time.

**Q Let me ask you how you define consumer.**

A Somebody that walks into a lighting showroom, looks at a fixture that's $500 and goes out and finds it for less.

**Q Let's go down this list here. So number 4, is that a Hi-Lite product?**

A The only one on this list that I would specifically identify as a Hi-Lite product is number 10.

**Q What about the number 4 that starts with HLV13250BK?**

A That is not.

**Q And number 5?**

A Like I said, without the color code at any one of these, the only one that I would identify as Hi-Lite is number 10 because it says dash 91 which is black.

**Q So you're not sure if any of the other product numbers that I've just handed you are Hi-Lite numbers?**

MR. COLITZ: Objection as



to form.

**Q Is that correct?**

A They may be partial Hi-Lite numbers for certain ones.

**Q Which ones would you say might be --**

A Like I said --

**Q -- Hi-Lite products?**

A -- number 3 and possibly number 8.

**Q What about 5 and 6?**

A I would have to say no.

**Q Would it surprise you if I told you that number 3 was not a Hi-Lite product at all?**

A Like I said, I don't know all of their product codes, so it's highly possible it's not. Without a color code at the end, it's hard to tell.

**Q So somebody viewing just an alpha numeric set of letters and numbers as appear from products numbered -- part numbers 1 through 9 in Exhibit 2A in isolation might have a hard time figuring out what those products are; is that correct?**

MR. COLITZ: Objection as to form.

A That's correct, unless they were actually



searching for a specific product based on their research.

**Q Is it possible that the numbers that appear after the word Code in Exhibit Number 2 were simply the wrong number that were listed on the site?**

A Anything's possible.

**Q Is it possible that it was an outdated code?**

A For you, for Hi-Lite or for Barn Light? I don't -- I'm confused.

**Q For Barn Light. For Barn Light Electric Company.**

A It's possible.

**Q Do you agree that it's possible for two companies to use identical part numbers?**

A Only if they're describing the same thing usually.

**Q Let me ask you the question differently. Is it possible that a plumbing company could have a part which begins with the letter H-EM16-91 and Hi-Lite could also have the same number to describe a lighting fixture? Is that possible?**

A That's possible for two different industries. In the same industry, it's unlikely.

**Q Unlikely, but is it possible?**



MR. COLITZ: Objection as to form.

A Anything's possible.

**Q Anything is possible.**

**What about a more common number like H-700? Do you think it would be likely that two companies in the same industry might have the same product number that was H-700?**

A Two fixture companies may have the same product number, but a reseller usually would not, unless they were describing separate items. Like, for example, let's say Halo Tract, which starts with usually HT, they would have an HT-300, so if there's two websites selling Halo Tract, they would both have the same HT part number that specifically identified that product.

**Q So isn't it true as you sit there today that you cannot be 100% certain in your testimony as to what the true source of origin is for the products that you received from Barn Light Electric after placing your order on January 13, 2012?**

A That is true.

MR. COLITZ: Mr. Sozzani,



WWW.USLEGALSUPPORT.COM

it's ten after. I have some additional questions.

MR. SOZZANI: I just have a couple of additional questions and I'll be done here in a second, counsel. I apologize.

BY MR. SOZZANI:

**Q Did you return the items that you received from Barn Light Electric to Barn Light Electric?**

A I did not.

**Q Why not?**

A 'Cause I sent them to Hi-Lite.

**Q Do you know if they returned them?**

A I doubt that they would since they didn't have the receipt. Wouldn't I have to return them?

**Q I would think. So you kept the receipt?**

A I did.

**Q So Hi-Lite never received the receipt from you?**

A Well, Hi-Lite, I believe I sent the sales receipt with, but I think I kept another e-mail that showed another receipt, with my credit card receipt.

**Q So you're not sure whether the sales receipt which is Exhibit Number 1 was ever sent to Hi-Lite; is that correct?**

A I am 100% sure that this would have been sent



to Hi-Lite.

**Q Do you know when you sent it to Hi-Lite?**

A I don't know if I sent it in along with the fixtures or if I sent it separately in the mail.

**Q Do you have an e-mail --**

A I do.

**Q -- that shows that particular receipt?**

A You mean did I send this via e-mail? It's possible.

**Q You're just not sure --**

A Since it's from 2000 --

**Q -- whether you sent it via e-mail or by letter, by U.S. mail; is that correct?**

A Since it's from 2012, I have absolutely no recollection what I did at that time.

**Q Okay. Fair enough.**

**And this was the only time you ever purchased anything from Barn Light Electric; is that correct?**

A Yes.

MR. SOZZANI: I have no further questions. I will reserve the rest of my time for redirect.

-----



RE-EXAMINATION OF WILLIAM SHAWN SANDERS

BY MR. COLITZ:

**Q Thank you, Mr. Sanders.**

**Mr. Sanders, are you testifying truthfully today?**

A Yes.

**Q Has anybody paid you so that you would alter your testimony here today?**

A No.

**Q Is there anything someone could have paid you to lie here today or not answer truthfully?**

A No.

**Q So if you got a free pass to Lightfair, that's not going to change your testimony today?**

MR. SOZZANI: Objection. Form.

A The $100 or so from Lightfair wouldn't make or break me one way or another.

**Q Thank you.**

**I think you previously testified that your company Opalescence is a Hi-Lite distributor. Is that correct?**

A It's a manufacturers' repping agency.

**Q So they're a representative of Hi-Lite?**

A We're a representative of Hi-Lite, yes.



**Q Does Hi-Lite -- in your capacity as a representative, does Hi-Lite ever provide you photos of its products?**

A Yes.

**Q Would you ever use those photos to sell something other than a Hi-Lite product?**

A No.

MR. SOZZANI: Objection. Form.

MR. COLITZ: What's the basis?

MR. SOZZANI: Speculation.

**Q Have you ever used one of the photos that Hi-Lite provided you to sell a product that was something other than a Hi-Lite product?**

A Absolutely not.

**Q And would you ever do that?**

A No. They would fire us.

**Q Do you think it's common sense that you shouldn't do that?**

MR. SOZZANI: Objection to form.

A Yes.

**Q Would you ever use a part number such as H-15116 to sell something other than a Hi-Lite**



WWW.USLEGALSUPPORT.COM

**part?**
A No.
MR. SOZZANI: Objection. Form.
**Q Does Hi-Lite allow you to have a private label agreement with them?**
A Not us. They might do it for a distributor.
**Q But you don't have any kind of private label agreement with them?**
A No.
**Q I'm going to ask you to take a look at one of the exhibits that we have gone over. It's Exhibit Number 6. If you could turn your attention to Exhibit Number 6.**
A Okay.
**Q I'm going to ask you to look to the third page of that exhibit. Do you see where it says Information?**
A Yes.
**Q Can you read the first sentence under that, under Information?**
A "Our collection of Barn Lighting combines numerous shade styles originally seen almost 80 years ago."
**Q When you read that, is it your understanding**



**that Barn Light as it's used there is describing a type of lighting fixture?**
MR. SOZZANI: Objection. Form.
A Correct. Yes.
**Q To the best of your knowledge, does anybody own Barn Light? Does anybody own that term?**
MR. SOZZANI: Objection to form.
A As far as I know, no.
MR. COLITZ: No further questions.
MR. SOZZANI: I just have a couple of last questions for you and I promise we'll get you out of here right away here.

-----

RE-EXAMINATION OF WILLIAM SHAWN SANDERS
BY MR. SOZZANI:
**Q Mr. Sanders, are you aware of any private label agreements that Hi-Lite had with any distributor in your 16 years?**
A Like I -- the only one that was ever brought to my attention was Barn Light Electric.
**Q And was it your understanding that they had a private label agreement with Hi-Lite?**



A It was my understanding that Hi-Lite provided fixtures to Barn Light Electric for resale.
**Q And is it your understanding that Hi-Lite provided fixtures to Barn Light Electric with a Barn Light Electric logo on the fixture for resale?**
A That I do not know.
**Q Is it possible?**
A It is possible.
MR. SOZZANI: I have no further questions. Thank you very much for your testimony today, Mr. Sanders.
THE WITNESS: Thank you, guys.
MR. COLITZ: Thank you, Mr. Sanders. I appreciate your time.
THE WITNESS: No problem.
MR. COLITZ: Hopefully we got you out of here on time.
THE WITNESS: I appreciate it. Have a great day.
MR. COLITZ: Thank you. You, too.
THE VIDEOGRAPHER: All right. We're off the record. The time is now 11:21.



-----

(The videotaped videoconference deposition concluded at 11:21 a.m.)

-----

THE STATE OF OHIO, ) SS:
COUNTY OF CUYAHOGA. )

I, Elaine S. Newlin, a Notary Public within and for the State of Ohio, duly commissioned and qualified, do hereby certify that WILLIAM SHAWN SANDERS was first duly sworn to testify the truth, the whole truth and nothing but the truth in the cause aforesaid; that the testimony then given by him was by me reduced to stenotypy in the presence of said witness, afterwards transcribed on a computer/ printer, and that the foregoing is a true and correct transcript of the testimony so given by him as aforesaid.

I do further certify that this videotaped videoconference deposition was taken at the time and place in the foregoing caption specified. I do further certify that I am not a relative, counsel or attorney of either party, or otherwise interested in the event of this action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office at Cleveland, Ohio, on this 8th day of October, 2015.

Elaine S. Newlin, Notary Public
Within and for the State of Ohio.
My Commission expires August 22, 2020



THE STATE OF _)
) SS:
COUNTY OF ___________)

Before me, a Notary Public in and for said state and county, personally appeared the above-named WILLIAM SHAWN SANDERS, who acknowledged that he did sign the foregoing transcript and that the same is a true and correct transcript of the testimony so given.

IN TESTIMONY WHEREOF, I have hereunto affixed my name and official seal at
this day of , 2015.

William Shawn Sanders

Notary Public

My Commission Expires: _

en



DEPOSITION ERRATA SHEET

Page No. Line No. Change to:

Reason for change:
Page No. Line No. Change to:
Reason for change:
Page No. Line No. Change to:

Reason for change:
Page No. Line No. Change to:
Reason for change:
Page No. Line No. Change to:

Reason for change:
Page No. Line No. Change to:
Reason for change:
Page No. Line No. Change to:

Reason for change:
Page No. Line No. Change to:
Reason for change:
Page No. Line No. Change to:

Reason for change:
Page No. Line No. Change to:
Reason for change:
Page No. Line No. Change to:

Reason for change:
Page No. Line No. Change to:
Reason for change:
Page No. Line No. Change to:

Reason for change:
Page No. Line No. Change to:
Reason for change:
Page No. Line No. Change to:

Reason for change:

SIGNATURE: DATE:
William Shawn Sanders



WWW.USLEGALSUPPORT.COM