1      **UNITED STATES DISTRICT COURT**
       **MIDDLE DISTRICT OF FLORIDA**
2              **TAMPA DIVISION**

3    BARN LIGHT ELECTRIC COMPANY, LLC,
     a Florida limited liability company,
4
                    Plaintiff,
5
         vs.                    CASE NO. 8:14-cv-1955-T-35AEP
6                               October 30, 2015
                                Tampa, Florida
7                               2:00 - 3:30 p.m.

8    BARNLIGHT ORIGINALS, INC., a
     Nevada corporation; and HI-LITE
9    MANUFACTURING COMPANY, INC., a
     Nevada corporation, JEFFREY L. OHAI,
10   an individual California resident,

11                  Defendants.
     _____/
12

13

14

15           **TRANSCRIPT OF MOTION HEARING**
                  (Document No. 141)
16      BEFORE THE HONORABLE ANTHONY E. PORCELLI
              UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24   Proceedings transcribed via courtroom digital audio
     recording by transcriptionist using computer-aided
25   transcription.

**APPEARANCES:**

For the Plaintiff:        ALEJANDRO J. FERNANDEZ, ESQ.
                          JOSEPH R. SOZZANI, ESQ.
                          STEPHEN J. LEAHU, ESQ.
                          Feldman Gale, PA
                          400 Tampa Street, Suite 2830
                          Tampa, Florida 33602
                          813/374-8890


For the Defendants,       MICHAEL JOHN COLITZ III, ESQ.
Barnlight Originals       STEPHEN GREGORY ANDERSON, ESQ.
and                       GrayRobinson, PA
Hi-Lite Remanufacturing:  401 East Jackson Street, Suite 2700
                          Tampa, Florida 33602
                          813/273-5298


Court Reporter:           Howard W. Jones, RPR, FCRR
                          801 N. Florida Avenue, Suite 15A
                          Tampa, Florida 33602
                          813/301-5024

* * * * * * * * * *

**I N D E X**

|  | PAGE |
|---|---|
| ARGUMENT BY MR. FERNANDEZ: | 8 |
| ARGUMENT BY MR. COLITZ: | 9 |
| ARGUMENT BY MR. FERNANDEZ: | 12 |
| RULING OF THE COURT: | 13 |
| ARGUMENT BY MR. FERNANDEZ: | 14 |
| ARGUMENT BY MR. COLITZ: | 16 |
| ARGUMENT BY MR. FERNANDEZ: | 20 |
| ARGUMENT BY MR. COLITZ: | 23 |
| ARGUMENT BY MR. FERNANDEZ: | 24 |
| ARGUMENT BY MR. COLITZ: | 27 |
| ARGUMENT BY MR. FERNANDEZ: | 28 |
| ARGUMENT BY MR. COLITZ: | 31 |
| ARGUMENT BY MR. FERNANDEZ: | 32 |
| ARGUMENT BY MR. COLITZ: | 33 |
| ARGUMENT BY MR. SOZANNI: | 34 |
| ARGUMENT BY MR. COLITZ: | 37 |
| ARGUMENT BY MR. SOZANNI: | 41 |
| ARGUMENT BY MR. COLITZ: | 42 |
| RULING OF THE COURT: | 43 |
| ARGUMENT BY MR. FERNANDEZ: | 43 |
| ARGUMENT BY MR. COLITZ: | 46 |
| ARGUMENT BY MR. FERNANDEZ: | 51 |

**INDEX (Cont'd)**                                                    <u>**PAGE**</u>

ARGUMENT BY MR. COLITZ:                                   59

ARGUMENT BY MR. FERNANDEZ:                                60

ARGUMENT BY MR. COLITZ:                                   61

ARGUMENT BY MR. FERNANDEZ:                                62

RULING OF THE COURT:                                      63

ARGUMENT BY MR. FERNANDEZ:                                63

CERTIFICATE OF COURT REPORTER:                            65

* * * * * * * * * *


**E X H I B I T S**

(*NONE ADMITTED INTO EVIDENCE*)


* * * * * * * * * *

**P R O C E E D I N G S**

1
2          (Court called to order.)

3          THE DEPUTY CLERK:  In the matter of Barn Light

4  Electric Company, LLC, vs. Barnlight Originals, Inc., et

5  al., in the -- I'm sorry, Case No. 8:14-cv-1955-35AEP.

6          THE COURT:  All right.  Let me have counsel state

7  their appearance for the record, please.

8          MR. FERNANDEZ:  Alejandro Fernandez with Feldman

9  Gale on behalf of Barn Light Electric.

10          THE COURT:  Thank you, Mr. Fernandez.

11          MR. SOZZANI:  Joseph Sozzani on behalf of Barn

12  Light Electric.

13          THE COURT:  Thank you.

14          MR. COLITZ:  Michael Colitz with the law firm of

15  GrayRobinson on behalf of the defendants, Barnlight

16  Originals, Hi-Lite Manufacturing, and Mr. Jeffrey Ohai.

17          THE COURT:  Thank you, Mr. Colitz.

18          MR. ANDERSON:  Stephen Anderson on behalf of

19  defendants, Barnlight Originals, Hi-Lite Manufacturing, and

20  Jeffrey Ohai.

21          THE COURT:  Thank you, Mr. Anderson.

22          All right.  Before we begin I want to bring up an

23  initial matter.  Mr. Leahu is here as well.

24          Good to see you.

25          Mr. Leahu is the husband of a law clerk who worked

1    for me now about five years ago.  I noticed he filed a

2    notice of appearance, I think it was last week perhaps, on

3    behalf of the plaintiff.

4            So, Mr. Colitz, I wanted to bring that to your

5    attention, and Mr. Anderson.  I've reviewed -- and first,

6    let me note for the record I'm confident upon my review of

7    the recusal statute there's no reason for me to enter a

8    recusal, but I wanted to bring to your attention that if you

9    wanted to be heard on the matter or even at a later date you

10   want to be heard on the matter.

11           MR. COLITZ:  We have no objection.  And just for

12   the record, we I believe have also one of your former

13   clerks, Ms. Valeen Arena, who's helping us with some

14   research, so I doubt that's a basis either.

15           THE COURT:  All right.  Thank you.

16           All right.  Let's start with the motions then.  I

17   know since I've scheduled the hearing there's been other

18   subsequent motions that have been filed, but as I have

19   reviewed them, those relate to Rule 45 subpoenas, so let me

20   just start with that.

21           Is there any reason why -- anything we need to

22   bring up with those that we could resolve today, but it

23   doesn't seem to be --

24           Mr. Fernandez, the Rule 45 subpoenas, is there any

25   issues that should be addressed today?

1          MR. FERNANDEZ:  I don't think so.

2          THE COURT:  All right.  Let's start off, then,

3  with Document No. 109.  The response was filed at Document

4  No. 113 and then the Court granted leave to reply at

5  Document No. 24 is -- 124 is the reply.

6          There are a number of issues addressed in the

7  pleadings and I want to break them up.  The first issue is

8  the failure to provide responsive documents and then there

9  are two classifications:

10         The first is the financial, although I'll use the

11 terminology as in the motion, the financial and business

12 records of Hi-Lite.

13         The second classification is records and documents

14 relating to the '477 patent.

15         And I was entirely unclear based upon the motion

16 what documents were being asserted that were absent in the

17 response to the discovery requests relating to the patent

18 until the reply was filed.  And what appears, based upon the

19 reply, were no production of BLO's invoices in a readable

20 form; that is, regarding field testing, design, manufacturer

21 of the MU3-4 product embodying the invention claimed in the

22 '477 patent.

23         So, Mr. Fernandez, I'll start with that.  Is that

24 what you're asserting that was lacking -- at least for that

25 classification of discovery requests, lacking for the patent

1  itself?

2          MR. FERNANDEZ:  Yes, Your Honor.  In additional to

3  that, there was -- in the depositions it became clear that

4  there were experimental uses that they were relying on and

5  there was no documents produced in connection with those.

6          And also, this touches on the financial issues, in

7  that there were purchases made from a Chinese manufacturer

8  and so forth early on in the life of the patent or before

9  the filing of the patent and those documents were not

10  produced either.

11          THE COURT:  All right.  So as I understand the

12  response, at least it indicates there was never an

13  identification of, putting aside the financial records, a

14  classification of documents that were not provided.  Was

15  that ever communicated to the defendants, that those

16  documents you believed to be in existence were not provided

17  in the response?

18          MR. FERNANDEZ:  Absolutely, Your Honor.  And in

19  fact, I believe as an Exhibit 1 to the first -- to the

20  Docket 109, which is our motion to compel, we provided an

21  extensive categorization of the requests for production and

22  the status that we felt was governing for each particular

23  category.  We provided this to opposing counsel in response

24  to their repeated requests to somehow identify what they

25  hadn't produced.

1          THE COURT:  I'm looking at page five of that

2   document, Exhibit 1, and it seems to be at least first

3   relating to Patent '477.  Is there somewhere in there

4   from -- identifying specifically the documents at issue?

5          MR. FERNANDEZ:  It mentions documents regarding

6   reduction to practice and the conception.  There's also

7   documents relating to validity and -- on page six.

8   Documents mentioning or discussing the research,

9   development, or manufacture of any commercial embodiments.

10  That would also be -- that would also include those

11  documents.  For sale or offer for sale also on page seven.

12         THE COURT:  All right.  I see.

13         MR. FERNANDEZ:  So there's a number of them.

14         THE COURT:  All right.  Mr. Colitz, so first is

15  what would be your response as to whether those documents

16  were provided or if they were not provided, why not?

17         MR. COLITZ:  Yes, Your Honor.  We believe all the

18  documents have been provided.  He mentioned -- well, first

19  of all, one side issue Your Honor noted, the purchase orders

20  of Barnlight Originals in readable format, that was an issue

21  I think that developed after their motion was filed.

22         And I think we've satisfied that to your

23  satisfaction by providing the native copies of those

24  invoices?

25         MR. FERNANDEZ:  Yes, that was -- that was an issue

1   that was present before the motion was filed, but counsel

2   has provided duplicate copies of those invoices.

3            THE COURT:  All right.

4            MR. COLITZ:  It's just an issue of the formatting

5   of the invoices and we've resolved that.

6            With respect to the '477 patent, we have produced

7   purchase orders from our manufacturer in China, Washeng

8   (ph).  I think you have those purchase orders.  It's news to

9   me that he's saying that there are purchase orders that have

10  not been produced.  We have produced those purchase orders,

11  we have produced everything related to the '477 patent.  We

12  have the declaration from David McAdam (ph) from Hi-Lite who

13  says that he's reviewed all the records at the company and

14  we've produced everything we have.

15           Regarding field testing and, you know, early

16  experimental use, Mr. Fernandez deposed the inventor,

17  Mr. Ohai, quite extensively and my recollection of that

18  testimony is Mr. Ohai said those documents don't exist.

19  They did testing, but there are no formal documents.  This

20  is stuff that took place I think in 2009 or 2008.

21           Regarding the sale, the documents related to what

22  they purport is the first sale, which we contend is the

23  first experimental use, is actually in the complaint.

24  They've got documents in their very -- the complaint that

25  reflect that -- reflect that supposed sale.

1    From our standpoint, we have searched high and low

2 for all documents related to the '477 patent.  We took Your

3 Honor's order to heart, we knew we were under an order to

4 produce those documents.  We've given the testimony of

5 Mr. McAdam that says to the best of his knowledge everything

6 has been produced.  I think this is speculation on the part

7 of the plaintiffs.

8    THE COURT:  All right, Mr. Colitz.

9    So, Mr. Fernandez, I mean, it's simply, one, I'm

10 assuming that the 26(g) certification has been provided for

11 the production; two, I'm satisfied by Mr. Colitz's response

12 that they produced everything.

13    My concern is -- and this goes back to the other

14 issues and we're going to get into the other issues.  But

15 there's been a breakdown here as to the process.  Simply

16 stated, what troubles me is when the requests were made, for

17 example, and then there were search terms that were provided

18 with the requests, at least based upon my review of what's

19 in the record and our prior hearings, there appears to have

20 been no agreement as to the search terms.  So all those

21 search terms were provided and suggested.  That in and of

22 itself does not alleviate the obligation on the producing

23 party to conduct the reasonable inquiry to respond with all

24 relevant -- and now, as is going to be soon articulated --

25 proportional discovery.

1    Having said that, it is entirely upon the

2 producing party to determine what is the best method to

3 conduct its collection of responsive documents and then to

4 provide them.  If it was solely based upon the search terms

5 and they are confident -- although, I'll note for the

6 record, which has been represented in pleadings and before

7 me, not only have they done it once, but it appears to be

8 multiple times to do a search to provide responsive

9 documents.  The defendants appear to be confident that they

10 have produced all responsive documents.

11    Without a sufficient evidentiary basis to

12 demonstrate that there are actual documents that have not

13 been provided to the discovery requests, there's simply

14 nothing I can do other than there is just pure speculation.

15    So my question, Mr. Fernandez, is:  Do you have

16 something to demonstrate that you feel that there were

17 documents that should have been provided as to Patent '477

18 that were not provided?

19    MR. FERNANDEZ:  Your Honor, there was testimony

20 during the deposition of Mr. McAdam wherein he testified

21 that there had been -- it was either he or Mr. Ohai

22 testified that there had been correspondences and

23 communications with a company named Washeng.  This company

24 was the company that had initially created the -- what they

25 called prototypes and, you know, later we found out that it

1    was some 5,000 or more units that had been created at that

2    time as prototypes.  And we received one -- or a handful of

3    documents from Washeng or in connection with Washeng that

4    kind of implied that there was more than that communication.

5    And I guess there's no way for us without looking into their

6    databases now to confirm that those really don't exist, but

7    they're contemporary with the purchase order that they

8    provided or the order that they provided and invoices and

9    they're conspicuously missing.

10           THE COURT:  What documents, then, are you

11   referring to that you've received that they should have

12   provided to you?  The Washeng documents, you're indicating

13   that there was some correspondence that you've received

14   independently of --

15           MR. FERNANDEZ:  No, sir, we received those from

16   them during the course of discovery and it implicates that

17   there's other documents out there.

18           THE COURT:  All right.  Well, Mr. Fernandez, I'm

19   not satisfied just based upon that that's sufficient, one,

20   to -- as I understood at least one of your requests, to have

21   either a third party examine the defendant's electronically

22   stored information or even have whoever you direct to do so.

23   That's just insufficient for me to go to that next step, so

24   I'm going to deny that request and we'll leave it for

25   purposes of the record.  Again, as represented -- and I take

1     the representation again as affirmation of the 26(g)

2     certification and we'll leave it at that.

3         So I'm satisfied Patent '477, at least the

4     responsive documents have been provided, so I'm going to

5     deny the motion in that regard.

6         MR. FERNANDEZ:  Your Honor, a question.

7         THE COURT:  Yes.

8         MR. FERNANDEZ:  To the extent that documents, you

9     know, magically appear --

10         THE COURT:  That's a different issue.

11         MR. FERNANDEZ:  -- between now and trial --

12         THE COURT:  That's a different issue.

13         MR. FERNANDEZ:  Thank you.

14         THE COURT:  All right.  So let's go, then, to the

15     financial records and I want to make sure I'm clear on this,

16     because it seemed to be, at least as to the motion, we were

17     focusing solely on Hi-Lite's financial records, but then --

18     maybe I read something wrong in the reply, but then it

19     seemed to also bleed over back again to BLO.  This is just

20     about Hi-Lite, correct?

21         MR. FERNANDEZ:  Yes, and it bleeds into BLO to the

22     extent that they're very close companies and, you know, one

23     exists within the other.

24         THE COURT:  But not their -- not their records,

25     but this request is specifically directed at Hi-Lite?

1    MR. FERNANDEZ:  Yes.  Your Honor, we have not

2  received -- it's just been a categorical and absolute

3  refusal.

4    THE COURT:  All right.  Well, let's -- first let

5  me walk each of you through this to get an understanding.

6  As a practical matter, looking at the case law, is there a

7  disagreement that solely on a theory of contributory

8  infringement that any damages for purposes of profits

9  calculation, those damages would flow from BLO's profits?

10  Is that a fair assessment, Mr. Fernandez?

11    MR. FERNANDEZ:  I would disagree with that, Your

12  Honor, but, you know, frankly, that's -- that's kind of

13  beside the point as far as --

14    THE COURT:  I recognize there are other reasons,

15  but I want to take it one step at a time.  So explain, why

16  would you disagree with that?

17    MR. FERNANDEZ:  Well, to the extent that Hi-Lite

18  was acting in a vicarious capacity or Hi-Lite was actually

19  conducting the infringing activity.  And we're looking for

20  an alternative theory of collection from them on secondary

21  liability.  There's no reason why Hi-Lite should be able to

22  hide its profits within Hi-Lite and saddle BLO with expenses

23  and so forth.

24    THE COURT:  But that's a different point, though.

25  I guess the better way to I guess ask the question is, if

1 the sole claim was simply a vicarious liability, would the

2 profits only be then determined from BLO? You're stating,

3 if I understand your responses, that there's also a claim

4 directly that Hi-Lite is a direct infringer; is that

5 accurate?

6       MR. FERNANDEZ: That's correct, Your Honor.

7       THE COURT: All right. But putting that aside,

8 that's my question to you is, under vicarious liability,

9 would the profit damage just focus on BLO's profits?

10       MR. FERNANDEZ: I don't think so, Your Honor, but

11 I don't have the unfortunately case law at my fingertips on

12 that issue.

13       THE COURT: Well, Mr. Colitz, you're the one

14 that's making that argument, so I'll ask you that question,

15 because I've read the case that you cited and -- you can sit

16 down, you don't have to come to the podium every time.

17       I'm not entirely clear, based on my reading of

18 that case, if that is the accurate state of the law. So

19 explain to me how you get there.

20       MR. COLITZ: Frankly, Your Honor, there's only

21 really two acts here that are applicable, it's the Lanham

22 Act and -- just the Lanham Act really, and you just have to

23 look to the Lanham Act itself that says it's the -- the

24 profits of the infringer, that's the damage award. And the

25 infringer supposedly here, if their allegations are taken to

1    be true, is Barnlight Originals.  They are the company that

2    are selling the products under Barnlight Originals.  I think

3    Barn Light Electric is their trademark and that's the

4    trademark infringement claim.

5          There's no way to get beyond the party that is

6    selling the infringed products, to go beyond that and go

7    back and to get to a manufacturer.  There's nothing to

8    support that.  It's just the plain language of the Lanham

9    Act.  It's the defendant's profits that are attributing

10   to --

11         THE COURT:  I would agree that's what the plain

12   language states, but the case that you cited certainly

13   doesn't state that.  It talks about the vicarious liability

14   claim, but nothing about how to calculate damages.

15         MR. COLITZ:  Correct.  And the best reading of

16   their complaint is that if they're -- if somehow Hi-Lite is

17   in cahoots with Barnlight Originals and they're one and the

18   same entity and they're closely held, if you believe that to

19   be true, then it's vicarious or contributory infringement on

20   behalf of Hi-Lite.  And if that's the case, the damages

21   would still be measured with respect to the sales of

22   Barnlight Originals, but they could then take their pick as

23   to who they got recovery from.

24         There's no -- there's no legal theory that I've

25   ever heard of that the -- that if you're the other party you

1   get to look beyond the sales of the infringer.  And they

2   have in their expert report said that they're entitled to

3   all the revenues of Barnlight Originals.  And that's fine,

4   that's their damage award and we've given them that.

5              But what we don't think is appropriate is to give

6   them the financials of Hi-Lite, because, frankly, Hi-Lite

7   goes -- their sales go back all the way to 1958 and they

8   sell things like pot racks and pool cue holders and things

9   that are just totally irrelevant to the present case.

10             THE COURT:  What about the argument about that it

11  is relevant to Hi-Lite's claim?

12             MR. COLITZ:  I still don't think that's relevant.

13  If -- the best argument they could make out is that maybe

14  Hi-Lite is claiming that it has damages or that it's got

15  lost sales as a result of the activities.  But frankly --

16             THE COURT:  Well, what theory is Hi-Lite going to

17  proceed under?

18             MR. COLITZ:  Hi-Lite has a claim against Barn

19  Light Electric for infringing various Hi-Lite intellectual

20  property or copyrighted images or line drawings, certain

21  product designs.  And so their best case would be to say

22  that we're going to make some case of lost sales and,

23  therefore, they're entitled to see Hi-Lite's sales to

24  examine those losses.

25             But frankly, we haven't made a claim -- we haven't

1   made a claim for lost sales and we have made the decision

2   not to turn over our financial records.  So discovery is now

3   closed and Mr. Fernandez is right when he says we cannot use

4   anything at this point forward that we have not provided and

5   if we have not provided Hi-Lite's financial information, we

6   cannot use that to establish a claim for actual lost sales.

7           THE COURT:  All right.  So to be clear on the

8   record, Hi-Lite is not proceeding on its claims for

9   infringement against Barn Light as for an actual damage

10  theory; that is, for lost sales?

11          MR. COLITZ:  I would state that just a little bit

12  differently, Your Honor; and that is, we have not provided

13  those records to them and we would not be able to use those

14  records to establish --

15          THE COURT:  No, no, no.  That's a distinction.

16  Because if you were going to proceed, they are entitled to

17  those records because they would want to defend.  And so if

18  you're going to go forward on actual damages, then they are

19  relevant.

20          MR. COLITZ:  I would say it this way, Your Honor:

21  If you compel me to turn over those records, I then think I

22  should have the option.  But if you -- if our position

23  stands and we don't turn over those records, I would then

24  agree with you, we were not pursuing a sale --

25          THE COURT:  Well, what I'm asking, Mr. Colitz, is

1    so it's clear so I can make that determination.  My

2    obligation under Rule 26 is to determine the relevancy of

3    the records and if you're telling me, to be clear for the

4    record, because this will not be before me absent consent,

5    that, you know, before the trial judge, if you then later

6    decide to proceed under a theory of actual damages, I'm sure

7    Mr. Fernandez would like to remind the Court that, no,

8    Judge, you know, before a hearing before Judge Porcelli it

9    was specifically asked are they going to proceed under

10   actual damages for purposes of discovery and they said no.

11            MR. COLITZ:  We are not proceeding on a claim of

12   actual damages.

13            MR. FERNANDEZ:  Your Honor?

14            THE COURT:  Yes.

15            MR. FERNANDEZ:  May I?  There's two glaring issues

16   here.  The document that is used to determine whether

17   something is relevant is the counterclaims, the operative

18   document.  And those counterclaims, 14 out of 19 of them

19   allege expressly that there was actual damage.  So we've

20   been trying to get to documents to explore that.

21            THE COURT:  Mr. Fernandez, he just stated on the

22   record now -- because here's the thing:  What I'm balancing

23   is clearly there is sensitive information in these

24   documents.  You recognize that, because you would have the

25   same concern for your client.  And so they are only going to

1   be provided if they're relevant.

2           So you're right, the counterclaims do address

3   that.  But if it's on the record now that they're going to

4   withdraw actual damages and are only going to go on a theory

5   of profits, then how is it relevant?

6           MR. FERNANDEZ:  There's -- I've got a handful of

7   reasons.  The second major reason is that we are seeking

8   their profits in connection with our own claims in our

9   direct liability claims.  We've got four claims in which

10  we've actually stated that we are seeking loss -- or their

11  profits, so to direct the Court to those specific claims

12  that would be completely relevant to the documents that

13  we're seeking.

14          I also wanted to kind of put a nail on this issue

15  that these are the only two points that the Hi-Lite

16  financials would be relevant to.

17          We've got Barnlight Originals, who for all intents

18  and purposes is a ghost shop, 300 square feet upstairs in

19  Hi-Lite, and it's run by the VP --

20          THE COURT:  All right.

21          MR. FERNANDEZ:  -- and there's all sorts of

22  (inaudible) --

23          THE COURT:  (Inaudible) your argument's going to

24  go.

25          MR. FERNANDEZ:  -- commingling --

1    THE COURT:  So I want to ask you this question and
2 you can respond:  I mean, as I understood, your other
3 theories of relevancy is simply what is -- if there's an
4 ancestral relationship between Hi-Lite and Barnlight,
5 whether there are improper activities or transfers of
6 profits or costs between the two entities.  But isn't there,
7 again, a need to be a good-faith basis to make that
8 determination and inquiry rather than just simply go on a
9 fishing expedition just given the nature of the
10 relationship?
11    MR. FERNANDEZ:  Agreed, Your Honor, there has to
12 be a good-faith basis there and we certainly have that.  We
13 have documents directly from -- that were signed by Jeffrey
14 Ohai as a VP of Hi-Lite and that indicate that it was
15 actually Hi-Lite that had engaged Bold Array, the company
16 who created the website, which is now being used by
17 Barnlight.  There's also testimony from numerous witnesses
18 that indicate that it's actually employees of Hi-Lite that
19 do the work over at Barnlight Originals and on and on.
20    I also want to indicate that it seems manifestly
21 unfair for us to have been requested the same exact nature
22 of documents from them in terms of their own affirmative
23 Trademark and Unfair Competition claims.  We had the same
24 sensitivities as far as our client's confidential
25 information.  We played by the rules and we turned them all

1   over.  And now they stand here and say, well, we're not

2   going to -- we're going to pare it down, we're going to

3   ignore the actual language of the counterclaims and we're

4   going to act as if we had never asked it.  Now that we've

5   run down the clock on discovery and we're standing here and

6   you don't have any of the documents, you've been able to

7   prepare a half-a-loaf expert report and -- I don't know what

8   else to say as far as prejudice.  It's not fair for them to

9   have everything and for us to have nothing and for them to

10  now say that somehow when it comes to them it's okay.

11          THE COURT:  All right.  Mr. Colitz?

12          MR. COLITZ:  The idea that this is somehow late in

13  the game, we -- I think we told them two to three months ago

14  in our discovery requests that we objected to disclosure of

15  Hi-Lite's financials.  So this is nothing new.  This should

16  not be news to them.

17          The idea that we have turned over no financials of

18  Hi-Lite is not correct.  We have given them summary

19  transaction data, a spreadsheet showing all the sales from

20  Hi-Lite to Barnlight Electric when that -- when that

21  relationship was existing and we've given them summary data

22  of all the transactions between Hi-Lite and Barnlight

23  Originals.  So we've given them what we believe to be the

24  relevant records and that is the transactions between the

25  companies.

1     The notion that somehow we're cooking the books,

2  we have given them a full detailed rundown of all the

3  expenses of Barnlight Originals.  It's true Barnlight

4  Originals operates from within Hi-Lite and we've given them

5  all of the records that Barnlight Originals is spending in

6  terms of overhead.

7     If they want to hire an expert to take issue with

8  one of those expenses as being too high or improper, they're

9  free to do that and they've got everything that they need to

10 make that argument.  There's no additional information that

11 is hidden in Hi-Lite that would substantiate their claim

12 that we're cooking the books, because we've given them the

13 books of Barnlight Originals and if they're cooking the

14 books, then they should be able to support that.

15     MR. FERNANDEZ:  Your Honor?

16     THE COURT:  If you want to respond, go ahead.

17     MR. FERNANDEZ:  Absolutely.  The sum total of

18 documents that they've provided to us about Hi-Lite's

19 financials has been one piece of paper with three lines on

20 it and those three lines indicated three years' of sales to

21 Barnlight Originals and that does not give us an opportunity

22 to fully explore and take discovery on the issues of how

23 they're related, how those two companies are acting.  It's

24 not two separate companies that have, you know, co-existed

25 for -- since the dawn of time, this was only a couple of

1    years ago.  And they're controlled by the same people.

2          Also, on the issue of whether this is news to us

3    or isn't, that's correct, they told us a month and a half

4    ago or so and, you know, it was in August that we filed our

5    motion to compel.  So we've been trying to resolve this

6    issue.  And we filed it on an expedited basis because of

7    this reason:  We were extremely concerned that discovery was

8    going to close and that our expert reports would come due.

9    And here we were without any of the financial information

10   that we need that our expert was begging for in order to

11   make our lost profits case and in order to defend against

12   their own.  The double standard is really difficult to take,

13   Your Honor.

14         THE COURT:  Well, and, Mr. Fernandez, what I'm

15   trying to walk through, again, is I'm trying to just

16   initially make the determination of relevancy.  And so the

17   first is I would agree with Mr. Colitz, if I glean that this

18   is simply as to Hi-Lite, a vicarious liability claim, it

19   seems that the only profits that are at issue are BLO's

20   profits.  Then looking at the counterclaims by Hi-Lite,

21   relevancy is now no longer an issue because it's clear on

22   the record actual damages will not be sought.

23         MR. FERNANDEZ:  Your Honor?

24         THE COURT:  Yes.

25         MR. FERNANDEZ:  I'm sorry to interrupt.

1            THE COURT:  No, go ahead.

2            MR. FERNANDEZ:  I do take issue with the notion

3     that it's only Barnlight Original's profits that could be

4     taken into consideration.  Hi-Lite --

5            THE COURT:  Do you have something you could give

6     me --

7            MR. FERNANDEZ:  Yes.

8            THE COURT:  -- to support that?

9            MR. FERNANDEZ:  Yes.  Hi-Lite created Barnlight

10    and there's evidence to show that that was -- they're the

11    ones that started selling.  It's Hi-Lite's products.  And on

12    top of that, there may be sales that reverted back to

13    Hi-Lite from Barnlight Originals, just like they used to do

14    with Barn Light Electric.  When Barn Light Electric would --

15    ultimately was sending some sales back to Hi-Lite and vice

16    versa.

17            So --

18            THE COURT:  In practical terms, give me an

19    example.  What would the transaction be?

20            MR. FERNANDEZ:  The transaction might be there's a

21    commercial order, there's a commercial company that

22    approaches Barnlight Originals and Barnlight Originals

23    considers itself to be more of a residential-type

24    distributor.  So Barnlight Original says -- they walk down

25    the hallway and they say, hey, Hi-Lite, we've got a

1   commercial order here and, here, here's the invoice, they've

2   asked for such and such products, and then it's fulfilled by

3   Hi-Lite's commercial division.  That happens.  And, you

4   know, ultimately, it would be an instance of infringement.

5           Also, there are direct counts -- I want to

6   highlight, no pun intended, the fact that there are direct

7   infringement allegations against Hi-Lite.  This is not just

8   a secondary liability case against Hi-Lite, we are

9   specifically calling them out in Trademark and Unfair

10  Competition, Lanham Act counts, and we are asking for their

11  profits associated with the infringement.

12          Now, they can take issue with what quantity of

13  infringement it was and the nature of the infringement, but

14  we should certainly be able to look into their profits for

15  those direct infringement counts.

16          THE COURT:  All right.  Mr. Colitz, I want you to

17  respond directly to that.

18          MR. COLITZ:  We've had some difficulty with that,

19  Your Honor.  This is not the first time.  I would note that

20  in his motion he doesn't reference Hi-Lite being a direct

21  infringer, he raises it for the first time in the reply,

22  he's raised it here.  There is nothing in the complaint that

23  would identify Hi-Lite as being a direct infringer.  I think

24  it's a phantom claim on his part.

25          But I did -- during the 30(b)(6) deposition of

1  Barn Light Electric, I did say to their corporate

2  representative:  Are you aware of anything that Hi-Lite

3  Manufacturing sells or any advertisement of Hi-Lite

4  Manufacturing that you believe is an infringement on a Barn

5  Light Electric trademark?

6         And the answer was:  I'm aware that they own a

7  website called Barnlight Originals.  I believe that

8  infringes upon the Barn Light Electric Company.

9         My question then was:  Leaving aside Barnlight

10 Originals' trademark, Barnlight Originals' website, I'm

11 talking about Hi-Lite Manufacturing.

12        The answer was:  I don't know whether there's

13 anything that's infringing or not infringing.  I can suspect

14 all day long, but until I've conferred with my professional

15 legal counsel on this I'm not prepared to give a conclusion.

16        We're at the end of discovery, Your Honor.  We've

17 had many -- 20 depositions, we've had -- the other side has

18 propounded 686 discovery requests, and they say there's a

19 direct claim against Hi-Lite, but I have yet to unearth it.

20        MR. FERNANDEZ:  Your Honor, if I may unearth it

21 for counsel?  In Count One, it says:  Defendant's use of the

22 Barnlight Originals' marks --

23        THE COURT:  Hold on.

24        MR. FERNANDEZ:  It's paragraph 109, Your Honor.

25        THE COURT:  What's the document number?

1      MR. FERNANDEZ:  It's Document No. -- I'm afraid

2  I'm looking at the second amended complaint, it should be in

3  the third amended complaint as well.  I'm looking at

4  Document 21, but I understand that that's not the operative

5  complaint.

6      THE COURT:  All right.  So you're looking at the

7  second -- okay.

8      MR. FERNANDEZ:  I would also point to Count Three,

9  Your Honor, and Count Six, Count Seven, Count Eight.

10      And in the preamble, the term defendants is

11  defined as including Barnlight -- or Hi-Lite, Barnlight

12  Originals, and Jeffrey Ohai, all three of them.

13      THE COURT:  All right.  I'm looking at 103 then.

14  What is it you want me to recognize, paragraph 103?

15      MR. FERNANDEZ:  I'm sorry, Your Honor.  It's under

16  Count One.

17      THE COURT:  Okay.  Which paragraph?

18      MR. FERNANDEZ:  It's the second paragraph,

19  defendants' use of the Barnlight Originals' marks.

20      THE COURT:  All right.

21      MR. FERNANDEZ:  So we indicate defendants',

22  plural --

23      THE COURT:  Is there a factual assertion to

24  support that allegation in the complaint?  Is there an

25  allegation in the complaint of Hi-Lite's infringement

1    activity?

2            MR. FERNANDEZ:  We've alleged that Jeffrey Ohai,

3    as vice president of -- and I'll have to find that

4    allegation, but the story that we told is that when there

5    was a rupture of the relationship, Jeffrey Ohai, as VP and

6    in his individual capacity, that's why we sued him

7    individually, went and created Barnlight Originals and

8    started selling.  So that's a direct allegation that ties

9    him into this infringement.  We don't know whether they've

10   even observed corporate formalities in terms of Barnlight

11   Originals and Hi-Lite.

12           THE COURT:  My question, though, is in the

13   complaint is there a factual allegation that Hi-Lite

14   directly infringed?  I recognize in the preamble there's a

15   collective of defendants and -- as you explained a moment

16   ago, but what is the allegation that there is direct

17   activity by Hi-Lite as an infringer?

18           MR. FERNANDEZ:  Well, to the extent that we're

19   actually applying the definition that we implied and

20   expressly set forth in the document, paragraph -- this

21   paragraph says:  "Defendants' use," and that include

22   Hi-Lite.  I can't read Hi-Lite out of the definition in

23   hindsight.  So Hi-Lite's use of the Barnlight Originals mark

24   in connection with their online retail operation offering

25   commercial and residential lighting lamps and accessories to

1  consumers in the U.S. infringes upon Barn Light Electric's

2  superior rights in its Barn Light Electric marks.

3       That's -- I couldn't be more clear.

4       THE COURT:  All right.  Mr. Colitz, one more time.

5  You want to respond?

6       MR. COLITZ:  Yes, Your Honor.  I agree that the

7  complaint says defendants.  That's, to me, a scrivener's

8  issue.  There has been absolutely no allegation, there has

9  been no proof, there has been no substantiation after 686

10 discovery requests that Hi-Lite ever used any Barnlight

11 Originals' trademark or any trademark that they believe is

12 an infringement.  And as I pointed out in the 30(b)(6)

13 testimony, I specifically asked their corporate

14 representative, what has Hi-Lite done that has infringed the

15 Barn Light Electric trademarks?  And the answer was:  I

16 don't know, let me talk to my lawyer.  Which I'm not

17 criticizing the answer, but if there was something, we would

18 have heard about it by now.

19      And certainly, Your Honor, in their motion they

20 would have put that front and center and we saw nothing of

21 that in their motion.  It's only until we get to the reply

22 that they sort of hint about there being this direct act of

23 infringement by Hi-Lite.  But again, it's empty, there's

24 no -- there's nothing there.  There's no fact behind it.

25      THE COURT:  All right.

1            MR. FERNANDEZ: Your Honor?

2            THE COURT: All right. Last time, go ahead.

3            MR. FERNANDEZ: There is the document that I

4 expressly referenced earlier where Jeffrey Ohai, as VP of

5 Hi-Lite, signed and proceeded in the creation of the website

6 that is infringing here. We don't know if there were sales

7 made where Hi-Lite was getting paid. We don't know that,

8 because we haven't been able to look. So they can't ask us

9 for a document that they haven't produced based on their

10 objection to producing the document.

11            There's also other counts here --

12            THE COURT: Mr. Fernandez, wait. I want to make

13 sure I understood that argument. We have no factual basis

14 of knowledge -- no knowledge of fact whether there was

15 infringing activity. We know Mr. Ohai's website. Based on

16 that enough alone, would that be enough to even allege --

17 make that allegation of direct infringement?

18            MR. FERNANDEZ: Well, I'm not just suggesting that

19 just the registration of the website. I'm saying that he

20 signed as VP for Hi-Lite and the document was created for

21 Hi-Lite by Bold Array. And it was also David McAdam, an

22 employee of Hi-Lite, who commissioned this entire work. So

23 there's -- clearly there is a connection there.

24            Not only that, but we have a ciber squatting count

25 and that count is about the unlawful registration and

1   back -- of a domain name.  That goes directly to Hi-Lite as

2   well.

3            THE COURT:  All right.  I'll come back to it.

4            Let's go, Mr. Colitz, to your motion.  As I

5   understand the response, I'm predicting we still have an

6   issue here, but why don't you tell me exactly if you have

7   been satisfied with the supplemental discovery.  And let me

8   note for the record before we get to that your motion's at

9   Document No. 110 and the response has been filed at Document

10  No. 114.

11           MR. COLITZ:  Yes, Your Honor.  Just a little bit

12  about the background.  All this relates to -- it's all one

13  subject.  It's a number of interrogatories and a number

14  document production requests, all of which aim to get the

15  manufacturing overhead with the specific products we

16  identified in our discovery requests.

17           THE COURT:  And I don't want to simplify it,

18  Mr. Colitz, but let me jump to something and then if you

19  think there's further explanation needed, please feel free.

20           But as I simply understand it, what has been

21  provided is direction to documents which plaintiffs contend

22  that is sufficient to make the determination and response to

23  the interrogatory.

24           So my question is:  Is this a matter of just

25  simply doing math or is it more than that?

1    MR. COLITZ:  We've been unable to do it.  It

2  appears that their expert was able to do it.  Their expert

3  did find an overhead allocation, although he said he did it

4  on a percentage of the overall revenue.  He did come up with

5  an overhead allocation on a product-by-product basis, which

6  is what we sought in our interrogatory responses.

7    So our frustration is that their answer seemed to

8  be early on that it could not be done and then, lo and

9  behold, it could be done by their expert, but unfortunately

10  only for the specific products that they were -- they did it

11  for.  They didn't do it for all the products identified in

12  our interrogatory requests.

13    THE COURT:  All right.  Mr. Fernandez?

14    MR. FERNANDEZ:  Your Honor, if I may, Mr. Sozzani

15  can address --

16    THE COURT:  All right.  Mr. Sozanni.

17    MR. SOZZANI:  Your Honor, in the first instance,

18  before even discussing the merits of the motion to compel,

19  it's plaintiff's position that the defendants' motion to

20  compel is not even properly before this Court because it has

21  not complied with its 3.01(g) requirement.

22    The Court, in our last hearing of August 14th,

23  made a very clear directive to the parties and it admonished

24  the parties that in any subsequent discovery issue that

25  arose -- and I'll quote from the transcript.  The Court

1   stated that:  If there is a dispute, the Court will not

2   attend to it unless there has been a conversation

3   telephonically or in person between the parties to see if

4   under 3.01(g) there can be a resolution of those matters and

5   a discussion in detail regarding those matters before

6   bringing the matter before the Court.

7        Defendants have failed to meet its 3.01(g)

8   requirement under the plain language of the rule and also

9   under the specific and expressed directive of Your Honor in

10  the last hearing.  There wasn't as much as a telephone call

11  prior to filing this motion and it completely took us by

12  surprise, because prior to defendants' filing of their

13  motion to compel, we had had a conversation in which we

14  specifically expressed our intent to produce additional

15  financial documents and supplement our production.  They

16  were fully aware that those documents were coming and only

17  filed this the day after we filed our Motion 109.  So we can

18  only make the assumption that they were not interested in

19  resolving this issue.

20       And it was certainly one that could have been

21  resolved through a meet-and-confer.  We would have gladly

22  have told them a date certain that the documents were

23  coming.  They were in the process of being reviewed and we

24  had collected them from third parties, from former

25  accountants throughout the growth of the company from a very

1    small proprietorship to the midsize company it is now.

2           Our client has used multiple programs, accounting

3    programs, and has completely changed the way that they do

4    accounting for the company as it's become more

5    sophisticated.  So we had to go back to, you know, the

6    archives, we had to make requests from outside accountants

7    for the proprietorship when it was a small company.  There

8    were a number of steps in collecting that information in

9    order to provide a comprehensive set of financials going

10   back to 2008.

11          If you've reviewed the requests, which I'm sure

12   you have, Your Honor, they are very, very detailed and they

13   go all the way back to the foundation of the company.  So a

14   two-week delay following the motion to compel was certainly

15   not willful, nor intentional, and it was harmless.  We

16   provided our financials to defendants prior to their filing

17   of their expert report.  We, unfortunately, did not have the

18   benefit of all the financials prior to an expert report.

19          And going back to the issue that Mr. Colitz had

20   mentioned earlier with the invoices, the sole record of

21   sales produced by Barnlight Originals consisted of scanned

22   PDFs of paper invoices.  Those PDFs which we received were

23   deficient prior to our expert report.  We didn't even have a

24   full set at that point.  Mr. Colitz correctly stated that he

25   did supplement his production after that, after the expert

1  report was served, with additional copies which didn't have

2  the missing data.

3          But defendants have never confirmed that they've

4  provided all of their sales invoices for Barnlight

5  Originals.  And we've, of course, never received a single

6  financial other than the gross sales in a three-line

7  spreadsheet illustrating the sales from Hi-Lite to Barnlight

8  Originals.  So if anybody was prejudiced here, it was

9  certainly the plaintiff, not the defendants.

10          The case law also makes it clear, just for the

11 record, that the 3.01(g) requirements apply equally to a

12 renewed motion and cannot rely upon a previous meet-and-

13 confer that happened weeks prior to your renewal of your

14 motion.  The case law establishes that you have to have a

15 new meet-and-confer on that specific issue.  And I suspect

16 that Mr. Colitz will point back to something weeks earlier

17 where we had a meeting discussing some issues, but never a

18 motion to compel.

19          THE COURT:  All right.  Mr. Colitz?

20          MR. COLITZ:  Yes, Your Honor.  I think this,

21 frankly, gets to why I filed the motion and sort of my

22 frustration.  If they want to rely upon the documents, you

23 know, maybe that's fine, but my frustration with the motion

24 is their initial answer pointed to -- pointed to documents

25 and this was their initial answer back in the summer.  And

1  they said, here are the documents.  I looked at the

2  documents, determined that the answer could not be derived

3  from the documents they provided.

4          We then had a meet-and-confer -- I filed that

5  motion at that time because I did not think the documents

6  were sufficient.  We had a meet-and-confer and at that

7  meet-and-confer, the representation to me was --

8          THE COURT:  Well, we discussed it at a hearing.

9          MR. COLITZ:  No documents exist, was their

10 position, Your Honor.  Their position was no documents exist

11 sufficient to answer the interrogatories that we were

12 seeking.  And I confirmed that in a letter to Mr. Fernandez.

13 He said no documents exist.  He then followed up in his

14 email, it's in my -- it's attached to my motion.  In his

15 email of July 22nd, he says:  We further maintain our

16 objections.  He says that there are no documents

17 identified -- I'm sorry.  To our knowledge, there are no

18 documents identified that are responsive to subsections D

19 through F of Request for Production 4 through 9.  But

20 nonetheless, we will supplement our interrogatories to 3

21 through 10 by July 31st.

22          So the point was, I filed my motion, they then

23 said no documents exist, but we'll give you interrogatory

24 answers.  That suggests to me no documents exist, but we'll

25 go run the numbers on our computers and we'll give you

1  written meaningful interrogatory answers.  And so on that

2  basis, I withdrew my first motion thinking that I'm going to

3  get interrogatory answers that are going to spell out this

4  overhead for me.  And instead, I get further interrogatories

5  such as, refer back to documents.

6          And that was the frustration, is that I

7  specifically withdrew my first motion on the -- on the

8  assertion that no responsive documents exist, the

9  implication being we're going to give you a written

10  interrogatory response that gives you that answer, I

11  withdraw the motion, and then I get further document --

12  further citations to documents.

13          And I would just also point out that in their -- I

14  think it's Document 141-1, docket entry, their expert,

15  particularly in paragraph seven of his declaration,

16  specifically says that they don't keep records on the

17  individual product level, the implication being that they

18  don't have documents by which they can get an overhead

19  allocation on a product-by-product basis.  But I would

20  submit to you, Your Honor, we have not submitted, that we

21  would have to do so under seal, that they've done just that

22  in their expert report.  In their expert report, for certain

23  identified products, they do point out an overhead

24  allocation.  I can read the transcript, if you would like,

25  of their expert where that point is made.

1    THE COURT:  But is this something the expert

2 extrapolated or you're suggesting there is actually such a

3 document?

4    MR. COLITZ:  I think it's something that the

5 expert extrapolated and I think it's something that he

6 extrapolated for the products that they thought were

7 relevant.  But the problem is they didn't do it for the

8 products that were identified in our interrogatory.

9    THE COURT:  But if the expert can extrapolate it,

10 why can that not be done?  In other words, what special

11 skill does the expert have to allow that to be conducted

12 based upon the records?

13    MR. COLITZ:  I don't know exactly what the expert

14 was looking at to compile his expert report or what math he

15 did to get to the numbers.  We've been unable to do it, but

16 he -- I'm just pointing out that --

17    THE COURT:  If I recall correctly, I thought this

18 is exactly the discussion we had, which was simply that, if

19 it can be done off of the documents that were provided and

20 that was at -- that was dispute and that's what I directed

21 that there be a meaningful meet-and-confer, that if this

22 calculation could be done just to present from the

23 plaintiff's side how that calculation could be done so that

24 you could do it.

25    MR. COLITZ:  Right.  And maybe they can share with

```
 1    us how they did it and then we can do it, but we've so far
 2    been unable to get that.
 3              THE COURT:  All right.  So if the records are
 4    there --
 5              MR. SOZZANI:  Your Honor?
 6              THE COURT:  -- and you say it's in the records,
 7    what are they to do with them to figure it out?
 8              MR. SOZZANI:  Okay.  Well, if I can kind of take a
 9    couple of steps back.  I don't think that Mr. Colitz has
10    responded to my comments regarding the lack of a 3.01(g)
11    conference.
12              THE COURT:  I'm beyond that.  We're going to get
13    this --
14              MR. SOZZANI:  Okay.
15              THE COURT:  -- resolved on the merits.  So let's
16    just get to whether he can extrapolate, based upon the
17    records, the information.
18              MR. SOZZANI:  Sure, Your Honor.  So moving to
19    Mr. Colitz's comments regarding the data that was provided
20    and the expert report, first of all, there are documents
21    that were provided.  There is a single document, in fact,
22    that was provided in reference to any expert report, which
23    includes the formula used by Barn Light Electric to arrive
24    at its overhead allocation.  It provides in detail the
25    formula which is used for that.  The expert report also
```

1    provides a percentage basis for the overhead allocation,

2    which is backed into the products.

3            Our client doesn't take -- doesn't keep records on

4    a product-by-product basis for products that it

5    manufactures.  We have turned over all of the costs

6    associated with products purchased from vendors.  We have

7    included comprehensive reports with thousands of line items

8    showing our raw material purchases.  We provided our SGNA

9    documents, which show our overhead and our, you know, wages,

10   everything that you would normally find in a financial

11   statement.  We've provided our financial statements from

12   2008 through --

13           THE COURT:  I understand.

14           MR. SOZZANI:  We've given them everything that

15   they need, including the expert report, which includes

16   percentages from 2008 to present.  So all they had to do --

17           THE COURT:  All right.  Mr. Colitz, I'm satisfied

18   with that.  So explain to me, then, why you can't do it

19   based upon that.

20           MR. COLITZ:  We will -- we will attempt to do it,

21   Your Honor.

22           THE COURT:  All right.  Well, I'm satisfied, let

23   me note for the record, that, one, I agree with what the

24   response indicates, that the interrogatories can be

25   responded to by directing to documents that have been

1    produced, that's clearly not an issue or in dispute here.

2    It's a matter of whether, based upon the records that were

3    provided, the answers can be determined and I'm satisfied

4    now that based upon what has been provided in the expert

5    report, and specifically the formula that was utilized at

6    least by the plaintiffs, that should be sufficient enough

7    for that calculation.

8          So I am going to deny, then, Document No. 110,

9    that is the motion to compel to seek further responses to

10   the interrogatories.

11         All right.  That takes us back, then, to what is

12   another outstanding issue that is still not entirely clear

13   on what is of record, but it is I think of vital importance

14   to get to the heart of this, because I have a concern about

15   what is at least alleged.

16         MR. FERNANDEZ:  Your Honor?

17         THE COURT:  Yes.

18         MR. FERNANDEZ:  There's a couple more points I'd

19   like to add that were different from what I mentioned

20   earlier as far as highlights, the relevancy.

21         THE COURT:  All right.  Well, let me come back to

22   that in a moment.

23         MR. FERNANDEZ:  Sure.

24         THE COURT:  The issue that's outstanding still is

25   the -- in Document No. 109, the request for sanctions, which

1  is independent of the failure to provide discovery, it is

2  the form of the discovery as it was produced.  The

3  allegation in the motion is that there was approximately ten

4  megabytes of pornography, 40,000 pages of incomprehensible

5  code or wingdings, a misclassification of documents for

6  attorney eyes only.  Sanctions are requested, both under

7  Rule 37 and Rule 26(g)(3).

8          Now, based upon my review of the response, what

9  has been articulated is at least addressed that there are no

10  wingdings, rather it was a log file that consisted of

11  approximately 37,664 pages.  The pornography -- and I'm

12  still not sure whether the amount of pornography as asserted

13  is accurate or not, but there's at least in the response an

14  indication that the inappropriate material would have been

15  the result of a keyword search relating to a former Hi-Lite

16  employee, Mr. Asa (ph), which resulted in that production.

17          So let me start off, Mr. -- are you going to be

18  dealing with this, Mr. Fernandez?

19          MR. FERNANDEZ:  Yes, sir.

20          THE COURT:  The 37,664 pages that's supposed to be

21  a log file, is that still at dispute or what is -- exactly

22  what is that information?

23          MR. FERNANDEZ:  Well, my understanding is that it

24  is -- it's computer code of some sort, but there are also

25  some 2100 pages of what we would call wingdings or

1  indecipherable code or --

2          THE COURT:  But that is at least an accurate

3  explanation of those 37,000 pages, that is some log file of

4  some -- one email; is that correct?

5          MR. FERNANDEZ:  It's --

6          THE COURT:  Or HTML?

7          MR. FERNANDEZ:  It's a separate attachment to one,

8  but it's, you know, some 37,000 pages, 37,600 pages.

9          THE COURT:  All right.  And it's -- do you have it

10  there as an example of just --

11          MR. FERNANDEZ:  I have a sample of the code.

12          THE COURT:  Can you bring that forward, please?

13          MR. FERNANDEZ:  Yes, sir.

14          THE COURT:  All right.  The wingdings are now then

15  at -- what's the amount, 2100?

16          MR. FERNANDEZ:  Yes, Your Honor.

17          THE COURT:  And then the pornography, is it still

18  at -- because at least as to what's been represented in the

19  response, they have at least asked for some direction of

20  what was inappropriately provided and that has not been at

21  least identified by Bates numbers.

22          MR. FERNANDEZ:  I believe we have the Bates

23  numbers here.  I looked at the -- at a decent way to put it

24  before the Court and, frankly, I chickened out, because it

25  was awful and -- but I do have the Bates ranges.  They're

1   from -- for the record, it's 30,339, that's BLO, through BLO

2   30,382, BLO 35,475 through 35,498, and I have a number of

3   other examples.  I have them here, I don't find it

4   appropriate even though they're redacted --

5               THE COURT:  That's fine.  So are we still

6   talking -- I guess to put it in easier terms, how many

7   pages?

8               MR. FERNANDEZ:  It was over a hundred pages, ten

9   megs of pornography.

10              THE COURT:  All right.  Mr. Colitz.

11              MR. COLITZ:  Yes, Your Honor.  I want to make sure

12  I say this clearly.  I confess to being a little upset about

13  it, so I'm going to try to work through this with a timeline

14  of how this went.

15              And as you can see by the document that opposing

16  counsel filed under seal where he says there's -- we're

17  having difficulty with the terminology here, because at the

18  last hearing, the hearing that Mr. Fernandez scheduled, he

19  made it quite clear that what he was talking about was

20  40,000 documents.  I've got the transcript here.  He said

21  40,000 documents, a little more than junk mail and

22  wingdings.  And that was the hearing on August 14th, Your

23  Honor.

24              Obviously, we took that seriously.  That would

25  have been half of our documents being totally irrelevant.  I

1  found that hard to believe, I think Your Honor found that

2  hard to believe.  I think Your Honor remarked that we were

3  at this incredible wide gap between them saying it's 40,000

4  irrelevant documents and us saying it's a handful of

5  irrelevant documents.

6       As it turns out, I also repeatedly asked at that

7  hearing, give me an example, give me a Bate number, give me

8  something that would direct me to this stash of 40,000

9  irrelevant documents.  He was -- he was unwilling to do so

10 or unable to do so.  Even in his motion now, after you I

11 believe directed him to substantiate the claim, he didn't

12 file anything, it was only after his motion was filed and

13 we -- he filed something under seal.

14      But what you can see from what he filed under seal

15 is what we're really talking about is not 40,000 documents,

16 it's eight documents, because if you look at the sequence of

17 the Bate numbering, the HTML code, and I'll get to that in a

18 moment, the 37,000 pages of code, which is responsive to a

19 request, it's all sequential.  It's one zip file attached to

20 an email that was responsive.  They asked for all of our

21 emails with our internet company, a company called Bold

22 Array, and this was one of them; admittedly, a large

23 document, but it was a responsive document.

24      The other documents, the other seven documents at

25 issue, one of them is the wingdings.  That's, again, one

1   document, one email.  We have researched it.  It's a

2   photograph of a table.  There was a conversion error with

3   relativity and so instead of a photo of a table, it

4   converted to 2,000 pages of wingdings.

5        But the point there, Your Honor, is that's one

6   document.  That's one sequential -- the way these show up in

7   relativity is one document, you click on it, and then you

8   see it's 2,000 pages.  This is not 2,000 separate documents

9   that they had to weed through.

10       The other -- with regard to the inappropriate

11  material of Mr. Asa, it's six documents.  There's a sequence

12  of Bate ranges there.  There's six emails at issue.  So it's

13  not -- and he -- he led me to believe -- I won't speak for

14  the Court.  He led me to believe at the hearing that he

15  scheduled that it was 40,000 documents, which I found very

16  hard to believe.

17       As it turns out, it wasn't 40,000 documents, it

18  was eight documents, seven of which notably, prior to us

19  coming to that hearing, I had withdrawn from production.  My

20  email of August 11th, which was three days before our

21  hearing, we had a discussion and he said, you've produced a

22  bunch of stuff that we think is not relevant.  And I went

23  through all of the documents and I withdrew all of the

24  inappropriate material and 2,000 pages of wingdings.  It's

25  all in this list that I said to him -- this is before he

1  scheduled the hearing unilaterally to discuss this very

2  issue.  And then he came into Court and he said, Your Honor,

3  there's 40,000 documents that were largely, I'll read from

4  the transcript, "junk mail and wingdings."

5          So when we had that last hearing, Your Honor,

6  there were not 40,000 documents at issue, there was one

7  document at issue and it was a document that was directly

8  relevant to their request.  And I can cite to the request

9  for you.  It's Request No. 10 of plaintiff's third set of

10  requests for production.

11          The reason that I confess to having -- being

12  somewhat upset about this is at the hearing I said to

13  Mr. Fernandez -- I agree with Your Honor, there's a wide

14  difference in perception.  If there's 40,000 documents that

15  we've erroneously produced, I was frankly scared, Your

16  Honor.  I said, give me a Bate number, give me something to

17  go on.  He was unwilling to do that.  Your Honor then

18  suggested -- you didn't make any decisions, you said, you

19  guys go work this out on your own, go have a conference

20  about it.  And we did that.  We sat down on August 24th, we

21  had a meeting, and I said to him again at that meeting, I

22  said, Alex -- Mr. Fernandez, I'm sorry, give me an example

23  of what you're talking about, because if it's 40,000

24  documents, I would like to know about that.  He was

25  unwilling to give any Bate number whatsoever.

1    He did, however, give me a financial number, which

2  he suggested would get rid of this motion for sanctions.  He

3  suggested the number $10,000.  I was -- I said, no, what I'm

4  going to do is I'm going to rereview absolutely every single

5  document we have to find the stash of 40,000 documents that

6  he represented to the Court.  We reviewed that at great

7  expense and found the one email.  It is one email.  And just

8  for completion, Your Honor, he supplied I believe the HTML

9  code.  If I may approach?

10          THE COURT:  You may.

11          MR. COLITZ:  This is the email that has the log

12  file.  And admittedly it's a large document.  And their

13  Request for Production No. 10 sought all emails between

14  Barnlight Originals and Bold Array relating to the Barnlight

15  Originals website.  And what the email is, it's an email to

16  us with a zip file attachment and it's not, as they would

17  have you make out, irrelevant meaningless computer code, it

18  is the IP addresses of everybody who's visited our website.

19  It is highly confidential.  IP addresses are identifying

20  information.

21          So the last hearing, we're not talking about

22  40,000 documents, we're talking about eight documents.

23  Seven of those documents were withdrawn for production back

24  on August 11th, 2015, before we had a hearing on this, and

25  when we walked into this hearing Mr. Fernandez made it out

1    to be 40,000 documents.  It was one document.  You have the

2    document before you.  It's clearly responsive.

3              THE COURT:  All right.  Mr. Fernandez.

4              MR. FERNANDEZ:  Yes, Your Honor.  There's a few

5    points I want to make just to get this out of the way.

6              As far as the unilateral scheduling of a

7    hearing --

8              THE COURT:  You don't need to respond to that.

9              MR. FERNANDEZ:  Okay.  Thank you.

10              Two-thirds of the production that included these

11   37,000 pages was the 37,000 pages.  So it's difficult to

12   understand how it is that counsel couldn't find that.

13              As far as the distinction between pages and

14   documents, I looked back at the -- at the transcript and I

15   surely did say documents.  I don't know what to say about

16   that, other than it's a semantics issue and I did not intend

17   to imply or express that there was some level more than what

18   there was.  There were 37,000 pages and we stand by that.

19              THE COURT:  What Mr. Colitz is arguing is, at

20   least as there was argument presented to the Court, there

21   was only one document at issue at that point, which would

22   have been the log file.

23              MR. FERNANDEZ:  There was multiple documents at

24   issue.  There was --

25              THE COURT:  And that he withdrew all the

1    inappropriate material, as well as the wingdings.

2         MR. FERNANDEZ:  Well, as far as withdrawing the

3    inappropriate material, I guess that I would point to

4    correspondence from Mr. Anderson that was their response to

5    us, which was we don't know what inappropriate material is,

6    so we can't withdraw it.  And I had asked them specifically

7    in their newest production, do you have more -- is there any

8    more pornography that is going to confront the associates

9    that I have looking at this?  And their response was, maybe,

10   I don't know what inappropriate is.

11        So there was a cavalier kind of tongue-and-cheek

12   response that paralyzed us, because I wasn't going to have,

13   you know, our associates looking through and getting bombed

14   with hardcore pornography.  There were -- these were

15   attachments in some cases and in some cases they're the

16   documents themselves.  You can't tell that until you're upon

17   it.

18        And on top of that, there's an obligation -- we

19   have an obligation, as far as I see it, to review the

20   documents and every page that's been produced to us, because

21   we don't know what's in there.  I don't know what's been

22   buried in code, I don't know what's been buried in the porn

23   or whatever else the case may be.  So we performed a full

24   review of the documents.

25        The --

1          THE COURT:  I want to make sure I understand --

2    I'm sorry.  Have you completed your sentence?

3          MR. FERNANDEZ:  Yes, I had a couple more points.

4          THE COURT:  All right.  Go ahead.

5          MR. FERNANDEZ:  The idea that we threatened or

6    somehow tried to suggest that there was going to be a quid

7    pro quo of a removal of a sanctions motion is --

8          THE COURT:  You don't need to comment on that

9    either.

10          MR. FERNANDEZ:  Thank you.

11          And those are the -- those are the principal

12    points, Your Honor.

13          THE COURT:  Mr. Fernandez, and I say this, so

14    don't take this as a criticism, I just want to make sure I

15    understand.  There were 634 requests for discovery

16    propounded by plaintiffs, correct?  At least that's what the

17    defense represents.

18          MR. FERNANDEZ:  I don't think that -- maybe if

19    the -- if we include the subparts.  I'm not sure if counsel

20    has done that, but --

21          THE COURT:  I guess the better way to ask it is,

22    it's fair to say on both sides discovery has been

23    voluminous, time-consuming, and expensive; is that a fair

24    assessment?

25          MR. FERNANDEZ:  Absolutely, Your Honor.

1    THE COURT:  What I'm struggling with is -- and I

2    will say this:  Mr. Colitz's explanation gives me pause and

3    a better understanding of the circumstances, but

4    nonetheless, I still struggle with in excess of a hundred

5    pages of pornography showing up in the discovery.  But that

6    also can go either one of two ways:  There's a reasonable

7    inquiry that must be done to provide responsive documents.

8    Without a doubt these are inappropriate and not responsive

9    to the discovery.  But really what's left for me to

10   determine is -- and where I am at is that this was not a

11   circumstance where this was a data dump, that there was at

12   least an attempt to be a careful review and provide the

13   information over.

14        And what I'm asking you, Mr. Fernandez, is, do you

15   think that's what was occurring, do you think it was for

16   purposes of harassment, and is that your argument to me?  Do

17   you think that there simply wasn't a reasonable inquiry to

18   provide the appropriate responsive documents or you think

19   there was other nefarious conduct that was occurring here?

20   Is that what you're asserting?

21        MR. FERNANDEZ:  What I'm asserting, Your Honor, is

22   that there was a deliberate over-inclusion when they read

23   our email with the document -- with the specific list of

24   search terms and that deliberate over-inclusion dropped a

25   huge amount of data, not just in connection with this

1  particular production, but with the previous ones.

2          So in all, because they've used the search terms

3  instead of guiding themselves, as expressly stated in our

4  letter, by the interrogatories and the requests for

5  production, we've received tons of additional documents.

6          Now, you know, next time I will surely take pause

7  before I try and give guidance to opposing counsel on a

8  search term.

9          THE COURT:  Well, no, I don't -- and I certainly

10  hope that's not the lesson you take from it.  Rather, I

11  think what the rules instruct is not just to provide

12  guidance, but to have a meaningful discussion about, one,

13  whether there can be an agreement about search terms, but

14  even if not, at least a discussion.  And I'll make it clear

15  again, even by providing guidance you do not alleviate the

16  responding party to conduct further inquiry, it's the

17  obligation of the responding -- you could provide all the

18  search terms in the world that you want.  They may not be

19  the ones that will provide the responsive documents.  And so

20  whoever is responding to your discovery requests simply

21  can't rest upon, well, someone gave me search terms and I

22  followed them and that's all I gave.  It has to follow what

23  your request to produce is seeking.  And so I don't think

24  you should take that lesson from this and I don't think

25  that's what's of issue.

1          And to be clear again, that's my point, is -- not

2    saying that there is or isn't, but I've understood your

3    point and at times in litigation that is -- can be

4    frustrating, because you don't know when it's asymmetric at

5    times what the other side has as far as discovery, but

6    Mr. Colitz has certified and I'm confident in his

7    certification that he's done a thorough review to provide

8    the responsive documents.  But as you've stated, if you find

9    something I'm sure you'll bring that to my attention, but

10   that's the best we could do.

11         But as to this issue, you know, when you say

12   over-inclusive -- and that's really what I'll have to make

13   the determination on, is if, you know, the -- but I

14   understand Mr. Colitz's position that even prior to coming

15   to the hearing those documents, once identified, were

16   withdrawn.

17         All right.  Anything else, Mr. Fernandez?

18         MR. FERNANDEZ:  Yes, Your Honor.  The other thing

19   that indicates to me that part of this is gamesmanship is

20   that there's massive over-inclusion using the search terms

21   on the one hand and they represent that they've produced

22   everything and it's not until after we go through that

23   massive trove that we find that they've conspicuously left

24   out all of Hi-Lite's financial information and then it

25   becomes a issue.  And then they say, we're not going to

1  produce it, take it to the Judge.  And then they hold onto

2  that after they've repeatedly said, we don't know what we

3  don't know, we don't know what's missing, you've got to

4  identify it to us, and we go through and create an extensive

5  spreadsheet of what had and hadn't been produced, something

6  which I would suggest is really a burden that is on the

7  other side.  We undertook that burden and it was only then

8  that we identified a number of categories that were still

9  missing.  And only then were they -- did they bring the

10  dispute to light that they weren't actually going to produce

11  any of Hi-Lite's financials.

12          THE COURT:  I want to make sure I understand that.

13  So there was never an objection to the financials?

14          MR. FERNANDEZ:  There were objections on the -- in

15  their responses, you know, overbroad, you know, unduly

16  burdensome and so on, and -- but there was indications

17  that --

18          THE COURT:  But beside the boilerplate objection,

19  which is inappropriate, but beside that, was there a

20  statement that they were not -- that they would be provided

21  nonetheless or they would not be provided as to Hi-Lite's

22  financials?

23          MR. FERNANDEZ:  Well, I'll give Your Honor an

24  example.

25          THE COURT:  Okay.

1          MR. FERNANDEZ:  In an interrogatory where we were

2    asking for specifics on financials and they -- we requested

3    for financials relating to Hi-Lite and Barnlight Originals

4    and the response was, Hi-Lite -- you know, the boilerplate

5    objections followed by Hi-Lite has never owned Barnlight

6    Originals, and then they didn't produce any documents

7    relating to Hi-Lite.

8          THE COURT:  All right.  Anything else?

9          MR. FERNANDEZ:  Your Honor, I did want to

10    interject several points on the financials issue and --

11          THE COURT:  Okay.

12          MR. FERNANDEZ:  -- all the relevancy.

13          Extremely perturbed that I'm -- and I feel in a

14    very precarious situation here where my client has an expert

15    report where our expert came back and said, we can't do an

16    analysis of the profits sought by the other side and we

17    can't do an analysis of our -- of the damages.  So on both

18    sides we're stuck.

19          There's also some of the factual issues where

20    relevancy of financials would be at issue, is to, for

21    example, impeach the defendant's testimony about payments

22    made to Barnlight Originals or back from Barnlight Originals

23    to Hi-Lite.

24          Also, it came up a little bit earlier, but

25    purchases and sales of the parts that were associated with

1   the MU3-4, those would be -- we could look at financials and

2   determine when those purchases were made.  Diverted sales,

3   also determining whether there's a true relationship

4   between -- true corporate division between Hi-Lite and

5   Barnlight Originals.  If there's commingling of funds, then

6   there would certainly be relevancy to this case.

7           Ultimately, I just point specifically to the fact

8   that in the complaint and the counterclaims there are

9   express counts that bring into light direct relevancy on

10  actual damages asserted by Hi-Lite.  And I know that now,

11  once they've refused to turn it all over unilaterally, they

12  want to run from that and suggest that they're not claiming

13  that, but that's what the counterclaims say.  And Hi-Lite's

14  profits are directly at issue, again, from the direct

15  Trademark infringement and Unfair Competition claims.

16          And while counsel wants to call it a scrivener's

17  error, it's not an error.  It's not an error at all, it was

18  very deliberate and calculated.

19          THE COURT:  All right.  Mr. Colitz.

20          MR. COLITZ:  I didn't mean to speak -- sales, I

21  didn't mean to say it was an error.  It's just that there's

22  no factual support for that.  Just because he uses

23  defendants, plural, doesn't automatically convert it into a

24  direct case of infringement against Hi-Lite if he can point

25  to no fact that would substantiate that.

1       Again, he is hinting that there's some cooking of

2  the books and, again, we have turned over all of the

3  financials of Barnlight Originals and that includes all

4  financial transactions between Barnlight Originals and

5  Hi-Lite.  So they're more than free to examine those records

6  and draw whatever conclusions they would like to draw.

7       MR. FERNANDEZ:  Your Honor?

8       THE COURT:  Yes.

9       MR. FERNANDEZ:  I think it's -- it puts us in a

10  very difficult position after the close of discovery to

11  elevate the relevancy standard to something more than what's

12  in the complaint.  What's in the complaint and the

13  counterclaims is what should govern the analysis of what is

14  relevant and what is not.  There's plenty of case law on

15  this point.  And it's very self-serving to go back later and

16  say, we want to pretend that we didn't say that, we want to

17  pretend that he didn't allege that, argue on the merits that

18  there's -- that there's no factual allegations in there.

19       The standard is low, it's a low bar.  We're

20  supposed to be able to take discovery on these issues.

21  Right now we stand here with -- again, in a precarious

22  situation where an expert report is half baked.  I mean, we

23  had no -- I will -- I'd be glad to present it to Your Honor

24  and illustrate the difficulty that that put us in and the

25  prejudice that it caused to us.

THE COURT: There is one thing that still has yet to be argued, Mr. Colitz, is whatever concern there may be as far as the confidential nature, couldn't that be addressed by the classification for attorney eyes only?

MR. COLITZ: It may be able to be addressed by that, Your Honor, but we think, given the sensitivity, and I think we've cited a case from Your Honor on this, that they need to establish need, that need is certainly a part of the equation. And I understand what Mr. Fernandez is saying about the broad right of discovery and what's framed by the pleadings, but the fact that we're here now at the close of discovery, after 20 depositions, after 200,000 documents have been produced, and he cannot point to one instance of direct infringement by Hi-Lite I think is telling. If Hi-Lite had been an infringer, after all the discovery that's been conducted, I'm sure we would have found out about it by now.

So I understand that you've got to look at the pleadings, but the fact that we are here after the close of discovery with absolutely nothing to support any allegation of direct infringement by Hi-Lite suggests that they don't really need that financial information and that this is more to, frankly, either a fishing expedition or they know how closely we guarded these things and they're, you know, frankly, looking at it to shake things up.

1    THE COURT:  All right.  Anything else,

2  Mr. Fernandez?

3    MR. FERNANDEZ:  Yes, I'd like to address this need

4  issue.  It's a gross double standard to say they need ours,

5  but we don't need theirs.  They asked for essentially the

6  same documents from us.  We produced them relying on the

7  protective order.

8    Now, need is established by the relevancy of these

9  documents.  We need them to create an expert report.  The

10  expert report is half cooked right now.  That expert report

11  shows more than anything else what the need is.

12    Now, the idea that at the end of discovery after

13  20 depositions we don't have a single instance, first of

14  all, that's not correct; and, secondly, if we don't have a

15  single instance, it's because, frankly – and I've taken many

16  of these depositions myself – the witnesses were far from

17  credible.  And that's precisely why we should be allowed to

18  take discovery of the financials and see the documents for

19  ourselves, because I don't want to take the word of any of

20  their witnesses.

21    And this comes out very clearly in the 30(b)(6)

22  motion that's pending, and I'd direct Your Honor to –– I

23  would reference that and suggest that we've –– we filed

24  along with that the sealed copies of the transcripts of

25  these –– of these depositions, at least a couple of them,

1    and it is very fast -- it's a fast read before it becomes

2    clear that we were being given the runaround and that people

3    were lying and internal inconsistencies.  There was coaching

4    of witnesses and so on.  So that's what leads us to have an

5    even greater particularity and need for these physical

6    documents.

7              THE COURT:  All right.  I'm going to take it under

8    advisement, I'm going to get an order out early next week on

9    both the matters that are outstanding.

10             But to be clear for the record, I'm denying

11   Document No. 114 for the reasons I stated on the record.

12             As to Document 109, I'm denying what requests

13   there may be as to further documents as to Patent '477 and

14   taking under advisement the request for sanctions, as well

15   as the request for financial records related to Hi-Lite and

16   I'll get a written order out on that.

17             All right.  Anything else at this time?

18             MR. FERNANDEZ:  One last thing.

19             THE COURT:  Okay.

20             MR. FERNANDEZ:  I think it's really important to

21   understand the history of misconduct here.  It's not just

22   one instance.  This is the fourth time we've been before

23   this Court asking for things that we're entitled to, but

24   that have been withheld.  So Your Honor has already granted

25   one motion to compel and, frankly, on the other motion to

1    compel, where the defendants were promising a covenant not

2    to sue, the Court later found that that covenant was

3    insufficient and we have yet to receive a covenant like

4    opposing -- like the defendants had suggested they would

5    provide.

6              So it's constant.  We ask for something that we

7    believe we're entitled to, we're clearly entitled to, and

8    it's refused.  We ask for depositions, we ask for

9    interrogatories, requests for production, it's all refused

10   without any clear legal basis.

11             THE COURT:  All right.

12             MR. FERNANDEZ:  Thank you, Your Honor.

13             THE COURT:  Anything else?

14             MR. COLITZ:  No, Your Honor.

15             THE COURT:  All right.  We'll be in recess.  Thank

16   you.

17             (Proceedings concluded.)

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2          I, Howard W. Jones, certify that the foregoing is
a correct transcript from the record of proceedings
3    in the above-entitled matter.

4

5                              /s **Howard W. Jones**

6                              _____
                             Howard W. Jones, RPR, FCRR
                             Official Court Reporter
7                              United States District Court
                             Middle District of Florida
8                              Tampa Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$10,000 [1]** 50/3

**'**

**'477 [9]** 7/14 7/22 9/3 10/6 10/11 11/2 12/17 14/3 63/13

**/**

**/s [1]** 65/5

**1**

**10 [3]** 38/21 49/9 50/13
**103 [2]** 29/13 29/14
**109 [6]** 7/3 8/20 28/24 35/17 43/25 63/12
**110 [2]** 33/9 43/8
**113 [1]** 7/4
**114 [2]** 33/10 63/11
**11th [2]** 48/20 50/24
**12 [1]** 3/5
**124 [1]** 7/5
**13 [1]** 3/6
**14 [2]** 3/7 20/18
**141 [1]** 1/15
**141-1 [1]** 39/14
**14th [2]** 34/22 46/22
**15A [1]** 2/11
**16 [1]** 3/8
**19 [1]** 20/18
**1958 [1]** 18/7

**2**

**2,000 [4]** 48/4 48/8 48/8 48/24
**20 [4]** 3/9 28/17 61/12 62/13
**200,000 [1]** 61/12
**2008 [4]** 10/20 36/10 42/12 42/16
**2009 [1]** 10/20
**2015 [2]** 1/6 50/24
**21 [1]** 29/4
**2100 [2]** 44/25 45/15
**22nd [1]** 38/15
**23 [1]** 3/10
**24 [2]** 3/11 7/5
**24th [1]** 49/20
**26 [4]** 11/10 14/1 20/2 44/7
**27 [1]** 3/12
**2700 [1]** 2/8
**28 [1]** 3/13
**2830 [1]** 2/4
**2:00 [1]** 1/7

**3**

**3.01 [5]** 34/21 35/4 35/7 37/11 41/10
**30 [4]** 1/6 27/25 31/12 62/21
**30,339 [1]** 46/1
**30,382 [1]** 46/2
**300 [1]** 21/18
**31 [1]** 3/14
**31st [1]** 38/21
**32 [1]** 3/15
**33 [1]** 3/16
**33602 [3]** 2/5 2/9 2/12
**34 [1]** 3/17
**35,475 [1]** 46/2
**35,498 [1]** 46/2
**35AEP [2]** 1/5 5/5
**37 [2]** 3/18 44/7
**37,000 [6]** 45/3 45/8 47/18 51/11 51/11 51/18
**37,600 [1]** 45/8
**37,664 [2]** 44/11 44/20
**3:30 [1]** 1/7

**4**

**40,000 [15]** 44/4 46/20 46/21 47/3 47/8 47/15

**48/15 48/17 49/3 49/6 49/14 49/23 50/5 50/22 51/1**
**400 [1]** 2/4
**401 [1]** 2/8
**41 [1]** 3/19
**42 [1]** 3/20
**43 [2]** 3/21 3/22
**45 [2]** 6/19 6/24
**46 [1]** 3/23

**5**

**5,000 [1]** 13/1
**5024 [1]** 2/12
**51 [1]** 3/24
**5298 [1]** 2/9
**59 [1]** 4/2

**6**

**60 [1]** 4/3
**61 [1]** 4/4
**62 [1]** 4/5
**63 [2]** 4/6 4/7
**634 [1]** 53/15
**65 [1]** 4/8
**686 [2]** 28/18 31/9

**8**

**801 [1]** 2/11
**813/273-5298 [1]** 2/9
**813/301-5024 [1]** 2/12
**813/374-8890 [1]** 2/5
**8890 [1]** 2/5
**8:14-cv-1955-35AEP [1]** 5/5
**8:14-cv-1955-T-35AEP [1]** 1/5

**A**

**able [9]** 15/21 19/13 23/6 24/14 27/14 32/8 34/2 60/20 61/5
**about [28]** 6/1 14/20 17/13 17/14 18/10 18/10 24/18 28/11 31/18 31/22 32/25 33/12 43/14 46/12 46/19 47/15 49/12 49/20 49/23 49/24 50/21 50/22 51/15 55/12 55/13 58/21 61/10 61/17
**above [1]** 65/3
**above-entitled [1]** 65/3
**absent [2]** 7/16 20/4
**absolute [1]** 15/2
**absolutely [6]** 8/18 24/17 31/8 50/4 53/25 61/20
**accessories [1]** 30/25
**accountants [2]** 35/25 36/6
**accounting [2]** 36/2 36/4
**accurate [4]** 16/5 16/18 44/13 45/2
**act [7]** 16/22 16/22 16/23 17/9 23/4 27/10 31/22
**acting [2]** 15/18 24/23
**activities [2]** 18/15 22/5
**activity [4]** 15/19 30/1 30/17 32/15
**acts [1]** 16/21
**actual [12]** 12/12 19/6 19/9 19/18 20/6 20/10 20/12 20/19 21/4 23/3 25/22 59/10
**actually [8]** 10/23 15/18 21/10 22/15 22/18 30/19 40/2 57/10
**add [1]** 43/19
**additional [5]** 8/2 24/10 35/14 37/1 55/5
**address [3]** 21/2 34/15 62/3
**addressed [5]** 6/25 7/6 44/9 61/4 61/5
**addresses [2]** 50/18 50/19
**ADMITTED [1]** 4/13
**admittedly [2]** 47/22 50/12
**admonished [1]** 34/23
**advertisement [1]** 28/3
**advisement [2]** 63/8 63/14
**affirmation [1]** 14/1

**affirmative [1]** 22/22
**afraid [1]** 29/1
**after [15]** 9/21 31/9 35/17 36/25 36/25 47/10 47/12 56/22 57/2 60/10 61/12 61/12 61/15 61/19 62/12
**again [14]** 13/25 14/1 14/19 22/7 25/15 31/23 47/25 49/21 55/15 56/1 59/14 60/1 60/2 60/21
**against [7]** 18/18 19/9 25/11 27/7 27/8 28/19 59/24
**ago [5]** 6/1 23/13 25/1 25/4 30/16
**agree [6]** 17/11 19/24 25/17 31/6 42/23 49/13
**Agreed [1]** 22/11
**agreement [2]** 11/20 55/13
**ahead [4]** 24/16 26/1 32/2 53/4
**aided [1]** 1/24
**aim [1]** 33/14
**al [1]** 5/5
**ALEJANDRO [2]** 2/2 5/8
**Alex [1]** 49/22
**all [93]**
**allegation [10]** 29/24 29/25 30/4 30/8 30/13 30/16 31/8 32/17 44/3 61/20
**allegations [3]** 16/25 27/7 60/18
**allege [3]** 20/19 32/16 60/17
**alleged [2]** 30/2 43/15
**alleviate [1]** 11/22 55/15
**allocation [6]** 34/3 34/5 39/19 39/24 41/24 42/1
**allow [1]** 40/11
**allowed [1]** 62/17
**alone [1]** 32/16
**along [1]** 62/24
**already [1]** 63/24
**also [26]** 6/12 8/6 9/6 9/10 9/10 9/11 14/19 16/3 21/14 22/17 22/20 25/2 27/5 29/8 32/11 32/21 35/8 37/10 39/13 41/25 44/24 47/6 54/6 58/19 58/24 59/3
**alternative [1]** 15/20
**although [3]** 7/10 12/5 34/3
**am [2]** 43/8 54/10
**amended [2]** 29/2 29/3
**amount [3]** 44/12 45/15 54/25
**analysis [3]** 58/16 58/17 60/13
**ancestral [1]** 22/4
**ANDERSON [5]** 2/7 5/18 5/21 6/5 52/4
**another [1]** 43/12
**answer [10]** 28/6 28/12 31/15 31/17 34/7 37/24 37/25 38/2 38/11 39/10
**answers [4]** 38/24 39/1 39/3 43/3
**ANTHONY [1]** 1/16
**any [19]** 6/21 6/24 9/9 15/8 23/6 25/9 28/3 31/10 31/11 34/24 41/22 49/18 49/25 52/7 57/11 58/6 61/20 62/19 64/10
**anybody [1]** 37/8
**anything [11]** 6/21 19/4 28/2 28/13 47/12 56/17 58/8 62/1 62/11 63/17 64/13
**appear [2]** 12/9 14/9
**appearance [2]** 5/7 6/2
**APPEARANCES [1]** 2/1
**appears [4]** 7/18 11/19 12/7 34/2
**applicable [1]** 16/21
**apply [1]** 37/11
**applying [1]** 30/19
**approach [1]** 50/9
**approaches [1]** 26/22
**appropriate [3]** 18/5 46/4 54/18
**approximately [1]** 44/3 44/11
**archives [1]** 36/6
**are [55]** 7/6 7/9 10/9 10/19 12/5 12/12 13/10 15/14 16/21 16/25 17/1 17/2 17/9 18/9 19/16 19/18 20/9 20/11 20/25 21/4 21/7 21/10 21/15 22/5 24/23 25/19 25/19 27/5 27/6 27/8

## A

are... **[25]** 27/10 28/2 36/12 38/1 38/16 38/17 38/18 39/3 41/3 41/7 41/20 44/6 44/9 44/17 44/24 45/14 46/5 50/19 53/11 53/11 54/8 59/8 59/14 61/19 63/9
are attributing **[1]** 17/9
**Arena [1]** 6/13
argue **[1]** 60/17
argued **[1]** 61/2
arguing **[1]** 51/19
argument **[32]** 3/3 3/4 3/5 3/7 3/8 3/9 3/10 3/11 3/12 3/13 3/14 3/15 3/16 3/17 3/18 3/19 3/20 3/22 3/23 3/24 4/2 4/3 4/4 4/5 4/7 16/14 18/10 18/13 24/10 32/13 51/20 54/16
argument's **[1]** 21/23
arose **[1]** 34/25
**Array [4]** 22/15 32/21 47/22 50/14
arrive **[1]** 41/23
articulated **[2]** 11/24 44/9
as **[82]**
**Asa [2]** 44/16 48/11
aside **[3]** 8/13 16/7 28/9
ask **[8]** 15/25 16/14 22/1 42/8 53/21 64/6 64/8 64/8
asked **[9]** 20/9 23/4 27/2 31/13 45/19 47/6 47/20 52/6 62/5
asking **[5]** 19/25 27/10 54/14 58/2 63/23
asserted **[3]** 7/16 44/12 59/10
asserting **[3]** 7/24 54/20 54/21
assertion **[2]** 29/23 39/8
assessment **[2]** 15/10 53/24
associated **[3]** 27/11 42/6 58/25
associates **[2]** 52/8 62/13
assuming **[1]** 11/10
assumption **[1]** 35/18
asymmetric **[1]** 56/4
attached **[2]** 38/14 47/19
attachment **[2]** 45/7 50/16
attachments **[1]** 52/15
attempt **[2]** 42/20 54/12
attend **[1]** 35/2
attention **[3]** 6/5 6/8 56/9
attorney **[2]** 44/6 61/4
attributing **[1]** 17/9
audio **[1]** 1/24
**August [6]** 25/4 34/22 46/22 48/20 49/20 50/24
automatically **[1]** 59/23
**Avenue [1]** 2/11
award **[2]** 16/24 18/4
aware **[3]** 28/2 28/6 35/16
awful **[1]** 45/25

## B

back **[23]** 11/13 14/19 17/7 18/7 26/12 26/15 33/1 33/3 36/5 36/10 36/13 36/19 37/16 37/25 39/5 41/9 43/11 43/21 50/23 51/14 58/15 58/22 60/15
backed **[1]** 42/2
background **[1]** 33/12
baked **[1]** 60/22
balancing **[1]** 20/22
bar **[1]** 60/19
**BARN [16]** 1/3 5/3 5/9 5/11 17/3 18/18 19/9 26/14 26/14 28/1 28/4 28/8 31/1 31/2 31/15 41/23
**BARNLIGHT [51]** 1/8 2/7 5/4 5/5 5/19 9/20 17/1 17/2 17/17 17/22 18/3 21/17 22/4 22/17 22/19 23/20 23/22 24/3 24/3 24/5 24/13 24/21 26/3 26/9 26/13 26/22 26/24 28/7 28/9 28/10 28/22 29/11 29/11 29/19 30/7 30/10 30/23 31/10 36/21 37/4 37/7 50/14 50/14 58/3 58/5 58/22 58/22 59/5 60/3 60/4

based **[14]** 7/15 7/18 11/18 12/4 13/19 16/17 32/9 32/15 40/12 41/16 42/19 43/2 43/4 44/8 54/3 59/2 39/19 42/1 42/4 64/10
basis **[12]** 6/14 12/11 22/7 22/12 25/6 32/13 34/5 39/2 39/19 42/1 42/4 64/10
**Bate [5]** 47/7 47/17 48/12 49/16 49/25
**Bates [3]** 45/21 45/22 45/25
be **[82]**
became **[1]** 8/3
because **[28]** 14/16 16/15 18/6 19/16 19/17 20/4 20/22 20/24 24/12 25/6 25/21 32/8 34/20 35/12 38/5 43/14 45/18 46/17 47/16 49/23 52/12 52/20 55/2 56/4 59/22 62/15 62/19
become **[1]** 36/4
becomes **[2]** 56/25 63/1
been **[51]** 6/17 6/18 9/18 10/10 11/6 11/10 11/15 11/20 12/6 12/13 12/17 12/21 12/22 13/1 14/4 15/2 20/20 22/21 23/6 24/19 25/5 31/8 31/9 31/9 32/8 33/7 33/9 33/20 34/1 35/2 35/20 40/15 41/2 42/25 43/4 44/9 44/14 45/18 45/20 46/25 51/22 52/20 52/21 52/22 53/22 57/5 61/15 61/16 63/22 63/24
before **[22]** 1/16 5/22 8/8 10/1 12/6 20/4 20/5 20/8 20/8 33/8 34/18 34/20 35/5 35/6 45/24 48/20 48/25 50/24 51/2 55/7 63/1 63/21
begging **[1]** 25/10
begin **[1]** 5/22
behalf **[6]** 5/9 5/11 5/15 5/18 6/3 17/20
behind **[1]** 31/24
behold **[1]** 34/9
being **[8]** 7/16 22/16 24/8 27/20 27/23 31/22 35/23 39/9 39/17 46/12 46/25 49/11 63/2
believe **[17]** 6/12 8/19 9/17 17/18 23/23 28/4 28/7 31/11 45/22 47/1 47/2 47/11 48/13 48/14 48/16 50/8 64/7
believed **[1]** 8/16
benefit **[1]** 36/18
beside **[3]** 15/13 57/18 57/19
best **[6]** 11/5 12/2 17/15 18/13 18/21 56/10
better **[3]** 15/25 53/21 54/3
between **[12]** 14/11 22/4 22/6 23/22 23/24 35/3 47/3 50/13 51/13 59/4 59/4 60/4
beyond **[4]** 17/5 17/6 18/1 41/12
bit **[3]** 19/11 33/11 58/24
bleed **[1]** 14/19
bleeds **[1]** 14/21
**BLO [7]** 14/19 14/21 15/22 16/2 46/1 46/1 46/2
**BLO's [4]** 7/19 15/9 16/9 25/19
boilerplate **[2]** 57/18 58/4
**Bold [4]** 22/15 32/21 47/21 50/14
bombed **[1]** 52/13
books **[3]** 24/1 24/12 24/13 24/14 60/2
both **[4]** 44/6 53/22 58/17 63/9
break **[1]** 7/7
breakdown **[1]** 11/15
bring **[8]** 5/22 6/4 6/8 6/22 45/12 56/9 57/9 59/9
bringing **[1]** 35/6
broad **[1]** 61/10
bunch **[1]** 48/22
burden **[2]** 57/6 57/7
burdensome **[1]** 57/16
buried **[2]** 52/22 52/22
business **[1]** 7/11

## C

cahoots **[1]** 17/17
calculate **[1]** 17/14
calculated **[1]** 59/18
calculation **[4]** 15/9 40/22 40/23 43/7

California **[1]** 1/10
call **[3]** 35/10 44/25 59/16
called **[4]** 5/2 12/25 28/7 47/21
calling **[1]** 27/9
came **[3]** 49/2 58/15 58/24
can **[28]** 12/14 16/15 20/1 22/2 27/12 28/13 34/15 35/4 35/17 39/18 39/24 40/9 40/10 40/19 40/25 41/1 41/8 41/16 42/24 43/3 45/12 46/15 47/14 49/8 54/6 55/13 56/3 59/24
can't **[8]** 30/22 32/8 42/18 52/6 52/16 55/21 58/15 58/17
cannot **[4]** 19/3 19/6 37/12 61/13
capacity **[2]** 15/18 30/6
careful **[1]** 54/12
case **[20]** 1/5 5/5 15/6 16/11 16/15 16/18 17/12 17/20 18/9 18/21 18/22 25/11 27/8 37/10 37/14 52/23 59/6 59/24 60/14 61/7
cases **[2]** 52/15 52/15
categorical **[1]** 15/2
categories **[1]** 57/8
categorization **[1]** 8/21
category **[1]** 8/23
caused **[1]** 60/25
cavalier **[1]** 52/11
center **[1]** 31/20
certain **[3]** 18/20 35/22 39/22
certainly **[10]** 17/12 22/12 27/14 31/19 35/20 36/14 37/9 55/9 59/6 61/8
**CERTIFICATE [1]** 4/8
certification **[3]** 11/10 14/2 56/7
certified **[1]** 56/6
certify **[1]** 65/2
changed **[1]** 36/3
cheek **[1]** 52/11
chickened **[1]** 45/24
**China [1]** 10/7
**Chinese [1]** 8/7
ciber **[1]** 32/24
circumstance **[1]** 54/11
circumstances **[1]** 54/3
citations **[1]** 39/12
cite **[1]** 49/8
cited **[3]** 16/15 17/12 61/7
claim **[15]** 16/1 16/3 17/4 17/14 18/11 18/18 18/25 19/1 19/6 20/11 24/11 25/18 27/24 28/19 47/11
claimed **[1]** 7/21
claiming **[2]** 18/14 59/12
claims **[7]** 19/8 21/8 21/9 21/9 21/11 22/23 59/15
classification **[4]** 7/13 7/25 8/14 61/4
classifications **[1]** 7/9
clear **[17]** 8/3 14/15 16/17 19/7 20/1 20/3 25/21 31/3 34/23 37/10 43/12 46/19 55/14 56/1 63/2 63/10 64/10
clearly **[7]** 20/23 32/23 43/1 46/12 51/2 62/21 64/7
clerk **[1]** 5/25
clerks **[1]** 6/13
click **[1]** 48/7
client **[4]** 20/25 36/2 42/3 58/14
client's **[1]** 22/24
clock **[1]** 23/5
close **[5]** 14/22 25/8 60/10 61/11 61/19
closed **[1]** 19/3
closely **[2]** 17/18 61/24
co **[1]** 24/24
co-existed **[1]** 24/24
coaching **[1]** 63/3
code **[9]** 44/5 44/24 45/1 45/11 47/17 47/18 50/9 50/17 52/22
**COLITZ [36]** 2/7 3/4 3/8 3/10 3/12 3/14 3/16

## C

**COLITZ... [29]** 3/18 3/20 3/23 4/2 4/4 5/14 5/17 6/4 9/14 11/8 16/13 19/25 23/11 25/17 27/16 31/4 33/4 33/18 36/19 36/24 37/16 37/19 41/9 42/17 46/10 51/19 56/6 59/19 61/2
**Colitz's [4]** 11/11 41/19 54/2 56/14
**collected [1]** 35/24
**collecting [1]** 36/8
**collection [2]** 12/3 15/20
**collective [1]** 30/15
**come [5]** 16/16 25/8 33/3 34/4 43/21
**comes [2]** 23/10 62/21
**coming [4]** 35/16 35/23 48/19 56/14
**comment [1]** 53/8
**comments [2]** 41/10 41/19
**commercial [6]** 9/9 26/21 26/21 27/1 27/3 30/25
**commingling [2]** 21/25 59/5
**commissioned [1]** 32/22
**communicated [1]** 8/15
**communication [1]** 13/4
**communications [1]** 12/23
**companies [4]** 14/22 23/25 24/23 24/24
**company [19]** 1/3 1/3 1/9 5/4 10/13 12/23 12/23 12/24 17/1 22/15 26/21 28/8 35/25 36/1 36/4 36/7 36/13 47/21 47/21
**compel [11]** 8/20 19/21 25/5 34/18 34/20 35/13 36/14 37/18 43/9 63/25 64/1
**Competition [3]** 22/23 27/10 59/15
**compile [1]** 40/14
**complaint [14]** 10/23 10/24 17/16 27/22 29/2 29/3 29/5 29/24 29/25 30/13 31/7 59/8 60/12 60/12
**completed [1]** 53/2
**completely [3]** 21/12 35/11 36/3
**completion [1]** 50/8
**complied [1]** 34/21
**comprehensive [2]** 36/9 42/7
**computer [3]** 1/24 44/24 50/17
**computer-aided [1]** 1/24
**computers [1]** 38/25
**conception [1]** 9/6
**concern [4]** 11/13 20/25 43/14 61/2
**concerned [1]** 25/7
**concluded [1]** 64/17
**conclusion [1]** 28/15
**conclusions [1]** 60/6
**conduct [4]** 11/23 12/3 54/19 55/16
**conducted [2]** 40/11 61/16
**conducting [1]** 15/19
**confer [7]** 35/21 37/13 37/15 38/4 38/6 38/7 40/21
**conference [2]** 41/11 49/19
**conferred [1]** 28/14
**confess [2]** 46/12 49/11
**confident [4]** 6/6 12/5 12/9 56/6
**confidential [3]** 22/24 50/19 61/3
**confirm [1]** 13/6
**confirmed [2]** 37/3 38/12
**confront [1]** 52/8
**connection [6]** 8/5 13/3 21/8 30/24 32/23 54/25
**consent [1]** 20/4
**consideration [1]** 26/4
**considers [1]** 26/23
**consisted [2]** 36/21 44/10
**conspicuously [2]** 13/9 56/23
**constant [1]** 64/6
**consumers [1]** 31/1
**consuming [1]** 53/23
**Cont'd [1]** 4/1

**contemporary [1]** 13/7
**contend [2]** 10/22 33/21
**contributory [2]** 15/7 17/19
**controlled [1]** 25/1
**conversation [2]** 35/2 35/13
**conversion [1]** 48/2
**convert [1]** 59/23
**converted [1]** 48/2
**cooked [1]** 62/10
**cooking [4]** 24/1 24/12 24/13 60/1
**copies [4]** 9/23 10/2 37/1 62/24
**copyrighted [1]** 18/20
**corporate [4]** 28/1 30/10 31/13 59/4
**corporation [2]** 1/8 1/9
**correct [9]** 14/20 16/6 17/15 23/18 25/3 45/4 53/16 62/14 65/2
**correctly [2]** 36/24 40/17
**correspondence [2]** 13/13 52/4
**correspondences [1]** 12/22
**costs [2]** 22/6 42/5
**could [15]** 6/22 17/22 18/13 26/3 26/5 34/8 34/9 35/20 38/2 40/22 40/23 40/24 55/17 56/10 59/1
**couldn't [3]** 31/3 51/12 61/3
**counsel [10]** 5/6 8/23 10/1 28/15 28/21 46/16 51/12 53/19 55/7 59/16
**count [8]** 28/21 29/8 29/9 29/9 29/9 29/16 32/24 32/25
**counterclaims [8]** 20/17 20/18 21/2 23/3 25/20 59/8 59/13 60/13
**counts [5]** 27/5 27/10 27/15 32/11 59/9
**couple [5]** 24/25 41/9 43/18 53/3 62/25
**course [2]** 13/16 37/5
**COURT [24]** 1/1 1/2 1/3 3/6 3/21 4/6 4/8 5/2 7/4 20/7 21/11 34/20 34/22 34/25 35/1 35/6 45/24 48/14 49/2 50/6 51/20 63/23 64/2 65/6 65/7
**courtroom [1]** 1/24
**covenant [3]** 64/1 64/2 64/3
**create [2]** 57/4 62/9
**created [6]** 12/24 13/1 22/16 26/9 30/7 32/20
**creation [1]** 32/5
**credible [1]** 62/17
**criticism [1]** 53/14
**criticizing [1]** 31/17
**cue [1]** 18/8
**cv [2]** 1/5 5/5

## D

**damage [5]** 16/9 16/24 18/4 19/9 20/19
**damages [13]** 15/8 15/9 17/14 17/20 18/14 19/18 20/6 20/10 20/12 21/4 25/22 58/17 59/10
**data [6]** 23/19 23/21 37/2 41/19 54/11 54/25
**databases [1]** 13/6
**date [2]** 6/9 35/22
**David [2]** 10/12 32/21
**dawn [1]** 24/25
**day [2]** 28/14 35/17
**days [1]** 48/20
**dealing [1]** 44/18
**decent [1]** 45/23
**decide [1]** 20/6
**decision [1]** 19/1
**decisions [1]** 49/18
**declaration [2]** 10/12 39/15
**defend [2]** 19/17 25/11
**defendant's [4]** 13/21 17/9 28/21 58/21
**defendants [16]** 1/11 2/7 5/15 5/19 8/15 12/9 29/10 30/15 31/7 35/7 36/16 37/3 37/9 59/23 64/1 64/4
**defendants' [5]** 29/19 29/21 30/21 34/19 35/12

**defense [1]** 53/17
**deficient [1]** 36/23
**defined [1]** 29/11
**definition [2]** 30/19 30/22
**delay [1]** 36/14
**deliberate [3]** 54/22 54/24 59/18
**demonstrate [2]** 12/12 12/16
**deny [3]** 13/24 14/5 43/8
**denying [2]** 63/10 63/12
**deposed [1]** 10/16
**deposition [2]** 12/20 27/25
**depositions [7]** 8/3 28/17 61/12 62/13 62/16 62/25 64/8
**derived [1]** 38/2
**design [1]** 7/20
**designs [1]** 18/21
**detail [2]** 35/5 41/24
**detailed [2]** 24/2 36/12
**determination [5]** 20/1 22/8 25/16 33/22 56/13
**determine [5]** 12/2 20/2 20/16 54/10 59/2
**determined [3]** 16/2 38/2 43/3
**determining [1]** 59/3
**developed [1]** 9/21
**development [1]** 9/9
**did [18]** 10/19 27/25 28/1 34/3 34/3 34/4 34/10 36/17 36/25 38/5 40/15 41/1 49/20 50/1 51/15 51/16 57/9 58/9
**didn't [11]** 34/11 36/23 37/1 40/7 47/11 49/18 58/6 59/20 59/21 60/16 60/17
**difference [1]** 49/14
**different [4]** 14/10 14/12 15/24 43/19
**differently [1]** 19/12
**difficult [3]** 25/12 51/11 60/10
**difficulty [3]** 27/18 46/17 60/24
**digital [1]** 1/24
**direct [21]** 13/22 16/4 21/9 21/11 27/5 27/6 27/15 27/20 27/23 28/19 30/8 30/16 31/22 32/17 47/8 59/9 59/14 59/24 61/14 61/21 62/22
**directed [3]** 14/25 40/20 47/11
**directing [1]** 42/25
**direction [2]** 33/21 45/19
**directive [2]** 34/23 35/9
**directly [7]** 16/4 22/13 27/17 30/14 33/1 49/7 59/14
**disagree [2]** 15/11 15/16
**disagreement [1]** 15/7
**disclosure [1]** 23/14
**discovery [33]** 7/17 7/25 11/25 12/13 13/16 19/2 20/10 23/5 23/14 24/22 25/7 28/16 28/18 31/10 33/7 33/16 34/24 44/1 44/2 53/15 53/22 54/5 54/9 55/20 56/5 60/10 60/20 61/10 61/12 61/15 61/20 62/12 62/18
**discuss [1]** 49/1
**discussed [1]** 38/8
**discussing [3]** 9/8 34/18 37/17
**discussion [5]** 35/5 40/18 48/21 55/12 55/14
**dispute [5]** 35/1 40/20 43/1 44/21 57/10
**distinction [2]** 19/15 51/13
**distributor [1]** 26/24
**DISTRICT [4]** 1/1 1/1 65/7 65/7
**Diverted [1]** 59/2
**division [2]** 1/2 27/3 59/4 65/8
**do [38]** 12/8 12/14 12/15 13/22 21/2 22/19 24/9 26/2 26/5 26/13 34/1 34/2 34/11 36/3 39/21 39/23 40/7 40/15 40/24 41/1 41/7 42/16 42/18 42/20 45/9 45/25 47/9 47/10 49/17 50/4 52/7 54/1 54/15 54/16 55/15 56/10 58/15 58/17
**docket [2]** 8/20 39/14
**document [40]** 1/15 7/3 7/3 7/5 9/2 20/16 20/18 28/25 29/1 29/4 30/20 32/3 32/9 32/10

## D

**document... [26]** 32/20 33/9 33/9 33/14 39/11 39/14 40/3 41/21 43/8 43/25 46/15 47/23 47/23 48/1 48/6 48/7 49/7 49/7 50/5 50/12 51/1 51/2 51/21 54/23 63/11 63/12
**documents [108]**
**does [3]** 11/22 24/21 40/11
**doesn't [6]** 6/23 17/13 27/20 42/3 42/3 59/23
**doing [1]** 33/25
**domain [1]** 33/1
**don't [45]** 7/1 10/18 13/6 16/10 16/11 16/16 18/5 18/12 19/23 23/6 23/7 28/12 30/9 31/16 32/6 32/7 33/6 33/17 39/16 39/18 40/13 41/9 46/3 51/8 51/15 52/5 52/10 52/21 52/21 52/22 53/8 53/14 53/18 55/9 55/23 55/24 56/4 57/2 57/3 57/3 61/21 62/5 62/13 62/14 62/19
**done [12]** 12/7 31/14 34/8 34/9 39/21 40/10 40/19 40/22 40/23 53/20 54/7 56/7
**double [2]** 35/12 62/4
**doubt [2]** 6/14 54/8
**down [5]** 16/16 23/2 23/5 26/24 49/20
**draw [2]** 60/6 60/6
**drawings [1]** 18/20
**dropped [1]** 54/24
**due [1]** 25/8
**dump [1]** 54/11
**duplicate [1]** 10/2
**during [3]** 12/20 13/16 27/25

## E

**each [2]** 8/22 15/5
**earlier [5]** 32/4 36/20 37/16 43/20 58/24
**early [4]** 8/8 10/15 34/8 63/8
**easier [1]** 46/6
**East [1]** 2/8
**eight [4]** 29/9 47/16 48/18 50/22
**either [7]** 6/14 8/10 12/21 13/21 53/9 54/6 61/23
**ELECTRIC [15]** 1/3 5/4 5/9 5/12 17/3 18/19 23/20 26/14 26/14 28/1 28/5 28/8 31/2 31/15 41/23
**Electric's [1]** 31/1
**electronically [1]** 13/21
**elevate [1]** 60/11
**else [8]** 23/8 52/23 56/17 58/8 62/1 62/1 63/17 64/13
**email [12]** 38/14 38/15 45/4 47/20 48/1 48/20 50/7 50/7 50/11 50/15 50/15 54/23
**emails [3]** 47/21 48/12 50/13
**embodiments [1]** 9/9
**embodying [1]** 7/21
**employee [2]** 32/22 44/16
**employees [1]** 22/18
**empty [1]** 31/23
**end [2]** 28/16 62/12
**engaged [1]** 22/15
**enough [3]** 32/16 32/16 43/6
**enter [1]** 6/7
**entire [1]** 32/22
**entirely [4]** 7/15 12/1 16/17 43/12
**entities [1]** 22/6
**entitled [7]** 18/2 18/23 19/16 63/23 64/7 64/7 65/3
**entity [1]** 31/2
**entry [1]** 39/14
**equally [1]** 37/11
**equation [1]** 61/9
**erroneously [1]** 49/15
**error [3]** 48/2 59/17 59/17 59/17 59/21
**ESQ [5]** 2/2 2/3 2/3 2/7 2/7
**essentially [1]** 62/5

## F

**establish [3]** 19/6 19/14 61/8
**established [1]** 62/8
**establishes [1]** 37/14
**et [1]** 5/4
**even [13]** 6/9 13/22 30/10 32/16 34/18 34/20 36/23 46/4 47/10 55/14 55/15 56/14 63/5
**ever [3]** 8/15 17/25 31/10
**every [3]** 16/16 50/4 52/20
**everybody [1]** 50/18
**everything [9]** 10/11 10/14 11/5 11/12 23/9 24/9 42/10 42/14 56/22
**evidence [2]** 4/13 26/10
**evidentiary [1]** 12/11
**exact [1]** 22/21
**exactly [4]** 33/6 40/13 40/18 44/21
**examine [3]** 13/21 18/24 60/5
**example [7]** 11/17 26/19 45/10 47/7 49/22 57/24 58/21
**examples [1]** 46/3
**excess [1]** 54/4
**Exhibit [2]** 8/19 9/2
**exist [5]** 10/18 13/6 38/9 38/10 38/13 38/23 38/24 39/8
**existed [1]** 24/24
**existence [1]** 8/16
**existing [1]** 23/21
**exists [1]** 14/23
**expedited [1]** 25/6
**expedition [2]** 22/9 61/23
**expense [1]** 50/7
**expenses [3]** 15/22 24/3 24/8
**expensive [1]** 53/23
**experimental [3]** 8/4 10/16 10/23
**expert [33]** 18/2 23/7 24/7 25/8 25/10 34/2 34/2 34/9 36/17 36/18 36/23 36/24 39/14 39/22 39/22 39/25 40/1 40/5 40/9 40/11 40/13 40/14 41/20 41/22 41/25 42/15 43/4 58/14 58/15 60/22 62/9 62/10 62/10
**explain [3]** 15/15 16/19 42/18
**explained [1]** 30/15
**explanation [3]** 33/19 45/3 54/2
**explore [2]** 20/20 24/22
**express [2]** 51/17 59/9
**expressed [2]** 35/9 35/15
**expressly [4]** 20/19 30/20 32/4 55/3
**extensive [2]** 8/21 57/4
**extensively [1]** 10/17
**extent [4]** 14/8 14/22 15/17 30/18
**extrapolate [2]** 40/9 41/16
**extrapolated [3]** 40/2 40/5 40/6
**extremely [2]** 25/7 58/13
**eyes [2]** 44/6 61/4

## F

**fact [9]** 8/19 27/6 31/24 32/14 41/21 59/7 59/25 61/11 61/19
**factual [6]** 29/23 30/13 32/13 58/19 59/22 60/18
**failed [1]** 35/7
**failure [2]** 7/8 44/1
**fair [4]** 15/10 23/8 53/22 53/23
**faith [2]** 22/7 22/12
**far [12]** 15/13 22/24 23/8 41/1 43/20 51/6 51/13 52/2 52/19 56/5 61/3 62/16
**fast [2]** 63/1 63/1
**FCRR [2]** 2/11 65/6
**feel [3]** 12/16 33/19 58/13
**feet [1]** 21/18
**Feldman [2]** 2/4 5/8
**felt [1]** 8/22
**FERNANDEZ [40]** 2/2 3/3 3/5 3/7 3/9 3/11 3/13 3/15 3/22 3/24 4/3 4/5 4/7 5/8 5/10 6/24 7/23 10/16 11/9 12/15 13/18 15/10 19/3 20/7

## G

20/21 25/14 32/12 34/13 38/12 44/18 46/18 49/13 49/22 50/25 51/3 53/13 54/14 56/17 61/9 62/2
**few [1]** 51/4
**field [2]** 7/20 10/15
**figure [1]** 41/7
**file [8]** 44/10 44/21 45/3 47/12 47/19 50/12 50/16 51/22
**filed [19]** 6/1 6/18 7/3 7/18 9/21 10/1 25/4 25/6 33/9 35/17 35/17 37/21 38/4 38/22 46/16 47/12 47/13 47/14 62/23
**filing [4]** 8/9 35/11 35/12 36/16
**financial [18]** 7/10 7/11 8/6 8/13 14/15 14/17 19/2 19/5 25/9 35/15 37/6 42/10 42/11 50/1 56/24 60/4 61/22 63/15
**financials [18]** 18/6 21/16 23/15 23/17 24/19 36/9 36/16 36/18 57/11 57/13 57/22 58/2 58/3 58/10 58/20 59/1 60/3 62/18
**find [8]** 30/3 34/3 42/10 46/3 50/5 51/12 56/8 56/23
**fine [3]** 18/3 37/23 46/5
**fingertips [1]** 16/11
**firm [1]** 5/14
**first [18]** 6/5 7/7 7/10 8/19 9/2 9/14 9/18 10/22 10/23 15/4 25/17 27/19 27/21 34/17 39/2 39/7 41/20 62/13
**fishing [2]** 22/9 61/23
**five [2]** 6/1 9/1
**FLORIDA [8]** 1/1 1/3 1/6 2/5 2/9 2/11 2/12 65/7
**flow [1]** 15/9
**focus [1]** 16/9
**focusing [1]** 14/17
**follow [1]** 55/22
**followed [3]** 38/13 55/22 58/5
**following [1]** 36/14
**foregoing [1]** 65/2
**form [2]** 7/20 44/2
**formal [1]** 10/19
**formalities [1]** 30/10
**format [1]** 9/20
**formatting [1]** 10/4
**former [3]** 6/12 35/24 44/15
**formula [3]** 41/23 41/25 43/5
**forth [3]** 8/8 15/23 30/20
**forward [3]** 19/4 19/18 45/12
**found [7]** 12/25 47/1 47/1 48/15 50/7 61/16 64/2
**foundation [1]** 36/13
**four [1]** 21/9
**fourth [1]** 63/22
**framed [1]** 61/10
**frankly [12]** 15/12 16/20 18/6 18/15 18/25 37/21 45/24 49/15 61/23 61/25 62/15 63/25
**free [3]** 24/9 33/19 60/5
**front [1]** 31/20
**frustrating [1]** 56/4
**frustration [4]** 34/7 37/22 37/23 39/6
**fulfilled [1]** 27/2
**full [3]** 24/2 36/24 52/23
**fully [2]** 24/22 35/16
**funds [1]** 59/5
**further [8]** 33/19 38/15 39/4 39/11 39/12 43/9 55/16 63/13

## G

**Gale [2]** 2/4 5/9
**game [1]** 23/13
**gamesmanship [1]** 56/19
**gap [1]** 47/3
**gave [2]** 55/21 55/22
**get [24]** 11/14 15/5 16/19 17/5 17/7 18/1 20/20 31/21 33/8 33/14 39/3 39/4 39/11

## G

get... **[11]** 39/18 40/15 41/2 41/12 41/16 43/14 47/17 50/2 51/5 63/8 63/16
gets **[1]** 37/21
getting **[2]** 32/7 52/13
ghost **[1]** 21/18
give **[18]** 18/5 24/21 26/5 26/18 28/15 38/23 38/25 39/9 47/7 47/7 47/7 49/16 49/16 49/22 49/25 50/1 55/7 57/23
given **[12]** 11/4 18/4 22/9 23/18 23/21 23/23 24/2 24/4 24/12 42/14 61/6 63/2
gives **[2]** 39/10 54/2
glad **[1]** 60/23
gladly **[1]** 35/21
glaring **[1]** 20/15
glean **[1]** 25/17
go **[24]** 13/23 14/14 17/6 17/6 18/7 19/18 21/4 21/24 22/8 24/16 26/1 32/2 33/4 36/5 36/13 38/25 49/17 49/19 49/19 53/4 54/6 56/22 57/4 60/15
goes **[3]** 11/13 18/7 33/1
going **[36]** 11/14 11/24 13/24 14/4 18/16 18/22 19/16 19/18 20/9 20/25 21/3 21/4 21/23 23/2 23/2 23/2 23/4 25/8 36/9 36/19 39/2 39/3 39/9 41/12 43/8 44/17 46/13 50/4 50/4 52/8 52/12 53/6 56/25 57/10 63/7 63/8
good **[3]** 5/24 22/7 22/12
good-faith **[2]** 22/7 22/12
got **[11]** 10/24 17/23 18/14 21/6 21/9 21/17 24/9 26/25 46/20 57/3 61/18
govern **[1]** 60/13
governing **[1]** 8/22
granted **[2]** 7/4 63/24
GrayRobinson **[2]** 2/8 5/15
great **[1]** 50/6
greater **[1]** 63/5
GREGORY **[1]** 2/7
gross **[2]** 37/6 62/4
growth **[1]** 35/25
guarded **[1]** 61/24
guess **[6]** 13/5 15/25 15/25 46/6 52/3 53/21
guidance **[3]** 55/7 55/12 55/15
guiding **[1]** 55/3
guys **[1]** 49/19

## H

had **[33]** 12/21 12/22 12/24 13/1 22/15 22/23 23/4 27/18 28/17 28/17 35/13 35/13 35/24 36/5 36/6 36/19 37/17 38/4 38/6 40/18 42/16 48/9 48/19 48/21 49/5 49/21 50/24 52/6 53/3 57/5 60/23 61/15 64/4
hadn't **[2]** 8/25 57/5
half **[5]** 23/7 25/3 46/25 60/22 62/10
half-a-loaf **[1]** 23/7
hallway **[1]** 26/25
hand **[1]** 56/21
handful **[3]** 13/2 21/6 47/4
happened **[1]** 37/13
happens **[1]** 27/3
harassment **[1]** 54/16
hard **[3]** 47/1 47/2 48/16
hardcore **[1]** 52/14
harmless **[1]** 36/15
has **[34]** 10/2 11/6 11/10 12/6 18/14 18/18 22/11 24/19 28/17 31/8 31/8 31/9 31/14 31/14 33/9 33/20 34/20 35/2 36/2 36/3 41/9 43/4 44/9 45/20 50/11 53/20 53/22 55/22 56/5 56/6 58/5 58/14 61/1 63/24
have **[103]**
haven't **[4]** 18/25 18/25 32/8 32/9
having **[3]** 12/1 46/17 49/11
he **[51]** 6/1 9/18 12/20 12/21 19/3 20/21

27/20 27/21 32/19 34/3 34/3 34/4 36/24 38/13 38/13 38/15 38/16 40/5 40/14 40/16 41/16 46/16 46/18 46/19 46/20 47/9 47/9 47/11 47/13 47/14 48/13 48/13 48/14 48/14 48/21 48/25 49/2 49/2 49/17 49/24 50/1 50/2 50/2 50/6 50/8 51/25 59/22 59/24 60/1 60/17 61/13
he's **[1]** 10/9 10/13 27/22 56/7
heard **[4]** 6/9 6/10 17/25 31/18
hearing **[21]** 11/5 6/17 20/8 34/22 35/10 38/8 46/18 46/18 46/22 47/7 48/14 48/19 48/21 49/1 49/5 49/12 50/21 50/24 50/25 51/7 56/15
hearings **[1]** 11/19
heart **[2]** 11/3 43/14
held **[1]** 17/18
helping **[1]** 6/13
here **[27]** 5/23 11/15 16/21 16/25 20/16 23/1 23/5 25/9 27/11 27/12 27/22 32/6 32/11 33/6 37/8 38/1 43/1 45/23 46/3 46/17 46/20 54/19 58/14 60/21 61/1 61/19 63/21
here's **[2]** 20/22 27/1
hey **[1]** 26/25
HI **[92]**
HI-LITE **[78]**
Hi-Lite's **[14]** 14/17 18/11 18/23 19/5 23/15 24/18 26/11 27/3 29/25 30/23 56/24 57/11 57/21 59/13
hidden **[1]** 24/11
hide **[1]** 15/22
high **[2]** 11/1 24/8
highlight **[1]** 27/6
highlights **[1]** 43/20
highly **[1]** 50/19
him **[5]** 30/6 30/9 47/11 48/25 49/21
hindsight **[1]** 30/23
hint **[1]** 31/22
hinting **[1]** 60/1
hire **[1]** 23/1
his **[12]** 11/5 27/20 27/24 30/6 36/25 38/13 38/14 39/15 40/14 47/10 47/12 56/6
history **[1]** 47/1
hold **[2]** 28/23 57/1
holders **[1]** 18/8
Honor **[66]**
Honor's **[1]** 11/3
HONORABLE **[1]** 1/16
hope **[1]** 55/10
how **[16]** 16/19 17/14 21/5 24/22 24/23 40/23 41/1 46/6 46/14 51/12 61/23
Howard **[4]** 2/11 65/2 65/5 65/6
however **[1]** 50/1
HTML **[3]** 45/6 47/17 50/8
huge **[1]** 54/25
hundred **[2]** 46/8 54/4
husband **[1]** 5/25

## I

I'd **[4]** 43/18 60/23 62/3 62/22
I'll **[13]** 7/10 7/23 12/5 16/14 30/3 33/3 34/25 47/17 49/3 55/14 56/12 57/23 63/16
I'm **[55]** 5/5 6/6 9/1 11/9 11/11 13/18 13/24 14/3 14/4 14/15 16/17 19/25 20/6 20/22 25/14 25/15 25/25 28/6 28/10 28/15 29/1 29/2 29/3 29/13 29/15 31/16 32/18 32/19 33/5 36/11 38/17 39/2 40/16 41/12 42/17 42/22 42/3 44/11 46/13 49/22 50/3 50/4 53/2 53/19 54/1 54/14 54/21 56/6 56/9 58/13 61/16 63/7 63/8 63/10 63/12
I've **[9]** 6/5 6/17 16/15 17/24 21/6 28/14 46/20 56/2 62/15
idea **[4]** 23/12 23/17 53/5 62/12
identification **[1]** 8/13

identified **[9]** 33/16 34/11 38/17 38/18 39/23 40/8 45/21 56/15 57/8
identify **[3]** 8/24 27/23 57/4
identifying **[2]** 9/4 50/19
ignore **[1]** 23/3
III **[1]** 2/7
illustrate **[1]** 60/24
illustrating **[1]** 37/7
images **[1]** 18/20
impeach **[1]** 58/21
implicates **[1]** 13/16
implication **[2]** 39/9 39/17
implied **[2]** 13/4 30/19
imply **[1]** 51/17
importance **[1]** 43/13
important **[1]** 63/20
improper **[2]** 22/5 24/8
inappropriate **[9]** 44/14 48/10 48/24 52/1 52/3 52/5 52/10 54/8 57/19
inappropriately **[1]** 45/20
inaudible **[2]** 21/22 21/23
INC **[3]** 1/8 1/9 5/4
include **[3]** 9/10 30/21 53/19
included **[2]** 42/7 51/10
includes **[3]** 41/23 42/15 60/3
including **[2]** 29/11 42/15
inclusion **[3]** 54/22 54/24 56/20
inclusive **[1]** 56/12
incomprehensible **[1]** 44/4
inconsistencies **[1]** 63/3
incredible **[1]** 47/3
indecipherable **[1]** 45/1
independent **[1]** 44/1
independently **[1]** 13/14
INDEX **[1]** 4/1
indicate **[4]** 22/14 22/18 22/20 29/21
indicated **[1]** 24/20
indicates **[3]** 8/12 42/24 56/19
indicating **[1]** 13/12
indication **[1]** 44/14
indications **[1]** 57/16
individual **[3]** 1/10 30/6 39/17
individually **[1]** 30/7
information **[13]** 13/22 19/5 20/23 22/25 24/10 25/9 36/8 41/17 44/22 50/20 54/13 56/24 61/22
infringed **[3]** 17/6 30/14 31/14
infringement **[20]** 15/8 17/4 17/19 19/9 27/4 27/7 27/11 27/13 27/13 27/15 28/4 29/25 30/9 31/12 31/23 32/17 59/15 59/24 61/14 61/21
infringer **[8]** 16/4 16/24 16/25 18/1 27/21 27/23 30/17 61/15
infringes **[2]** 28/8 31/1
infringing **[6]** 15/19 18/19 28/13 28/13 32/6 32/15
initial **[3]** 5/23 37/24 37/25
initially **[2]** 12/24 25/16
inquiry **[5]** 11/23 22/8 54/7 54/17 55/16
instance **[6]** 27/4 34/17 61/13 62/13 62/15 63/22
instead **[3]** 39/4 48/3 55/3
instruct **[1]** 55/11
insufficient **[2]** 13/23 64/3
intellectual **[1]** 18/19
intend **[1]** 51/16
intended **[1]** 27/6
intent **[1]** 35/14
intentional **[1]** 36/15
intents **[1]** 21/17
interested **[1]** 35/18
interject **[1]** 58/10
internal **[1]** 63/3

## I

**internet [1]** 47/21
**interrogatories [8]** 33/13 38/11 38/20 39/4 42/24 43/10 55/4 64/9
**interrogatory [9]** 33/23 34/6 34/12 38/23 39/1 39/3 39/10 40/8 58/1
**interrupt [1]** 25/25
**invention [1]** 7/21
**inventor [1]** 10/16
**invoice [1]** 27/1
**invoices [8]** 7/19 9/24 10/2 10/5 13/8 36/20 36/22 37/4
**IP [2]** 50/18 50/19
**irrelevant [6]** 18/9 46/25 47/4 47/5 47/9 50/17
**is [200]**
**isn't [3]** 22/6 25/3 56/2
**issue [41]** 7/7 9/4 9/19 9/20 9/25 10/4 14/10 14/12 16/12 21/14 24/7 25/2 25/6 25/19 25/21 26/2 27/12 31/8 33/6 34/24 35/19 36/19 37/15 43/1 43/12 43/24 47/25 48/12 49/2 49/6 49/7 51/16 51/21 51/24 55/25 56/11 56/25 58/10 58/20 59/14 62/4
**issues [10]** 6/25 7/6 8/6 11/14 11/14 20/15 24/22 37/17 58/19 60/20
**it [141]**
**it's [82]**
**items [1]** 42/7
**its [7]** 12/3 15/22 19/8 31/2 34/21 35/7 41/24
**itself [4]** 8/1 11/22 16/23 26/23

## J

**Jackson [1]** 2/8
**JEFFREY [8]** 1/9 5/16 5/20 22/13 29/12 30/2 30/5 32/4
**JOHN [1]** 2/7
**Jones [4]** 2/11 65/2 65/5 65/6
**JOSEPH [2]** 2/3 5/11
**judge [5]** 1/16 20/5 20/8 20/8 57/1
**July [2]** 38/15 38/21
**jump [1]** 33/18
**junk [2]** 46/21 49/4
**just [40]** 6/11 6/20 10/4 12/14 13/19 13/23 14/19 15/2 16/9 16/22 16/22 17/8 18/9 19/11 20/21 22/8 22/9 25/15 26/13 27/7 32/18 32/19 33/11 33/24 37/10 39/13 39/21 40/16 40/22 41/16 45/10 50/7 51/5 53/14 54/25 55/11 59/7 59/21 59/22 63/21

## K

**keep [2]** 39/16 42/3
**keyword [1]** 44/15
**kind [5]** 13/4 15/12 21/14 41/8 52/11
**knew [1]** 11/3
**know [44]** 6/17 10/15 12/25 14/9 14/22 15/12 20/5 20/8 23/7 24/24 25/4 27/4 28/12 30/9 31/16 32/6 32/7 32/15 36/5 37/23 40/13 42/9 45/8 49/24 51/15 52/5 52/10 52/13 52/21 52/21 52/22 55/6 56/4 56/11 56/13 57/2 57/3 57/3 57/15 57/15 58/4 59/10 61/23 61/24
**knowledge [4]** 11/5 32/14 32/14 38/17

## L

**lack [1]** 41/10
**lacking [2]** 7/24 7/25
**lamps [1]** 30/25
**language [4]** 17/8 17/12 23/3 35/8
**Lanham [5]** 16/21 16/22 16/23 17/8 27/10
**large [2]** 47/22 50/12
**largely [1]** 49/3
**last [8]** 6/2 32/2 34/22 35/10 46/18 49/5 50/21 63/18
**late [1]** 23/12
**later [5]** 6/9 12/25 20/5 60/15 64/2
**law [8]** 5/14 5/25 15/6 16/11 16/18 37/10 37/14 60/14
**lawyer [1]** 31/16
**leads [1]** 63/4
**LEAHU [3]** 2/3 5/23 5/25
**least [20]** 7/24 8/12 9/2 11/18 13/20 14/3 14/16 43/6 43/15 44/9 44/13 45/2 45/18 45/19 45/21 51/20 53/16 54/12 55/14 62/25
**leave [3]** 7/4 13/24 14/2
**Leaving [1]** 28/9
**led [2]** 48/13 48/14
**left [2]** 54/9 56/23
**legal [3]** 17/24 28/15 64/10
**lesson [2]** 55/10 55/24
**let [10]** 5/6 6/6 6/19 15/4 31/16 33/7 33/18 42/22 43/21 44/17
**let's [6]** 6/16 7/2 14/14 15/4 33/4 41/15
**letter [2]** 38/12 55/4
**level [2]** 39/17 51/17
**liability [8]** 1/3 15/21 16/1 16/8 17/13 21/9 25/18 27/8
**life [1]** 8/8
**light [18]** 1/3 5/3 5/9 5/12 17/3 18/19 19/9 26/14 26/14 28/1 28/5 28/8 31/1 31/2 31/15 41/23 57/10 59/9
**lighting [1]** 30/25
**like [10]** 18/8 20/7 26/13 39/24 43/19 49/24 60/6 62/3 64/3 64/4
**limited [1]** 1/3
**line [3]** 18/20 37/6 42/7
**lines [2]** 24/19 24/20
**list [2]** 48/25 54/23
**LITE [78]**
**Lite's [14]** 14/17 18/11 18/23 19/5 23/15 24/18 26/11 27/3 29/25 30/23 56/24 57/11 57/21 59/13
**litigation [1]** 56/3
**little [5]** 19/11 33/11 46/12 46/21 58/24
**LLC [2]** 1/3 5/4
**lo [1]** 34/8
**loaf [1]** 23/7
**log [5]** 44/10 44/21 45/3 50/11 51/22
**long [1]** 28/14
**longer [1]** 25/21
**look [7]** 16/23 18/1 27/14 32/8 47/16 59/1 61/18
**looked [3]** 38/1 45/23 51/14
**looking [13]** 9/1 13/5 15/6 15/19 25/20 29/2 29/3 29/6 29/13 40/14 52/9 52/13 61/25
**loss [1]** 21/10
**losses [1]** 18/24
**lost [6]** 18/15 18/22 19/1 19/6 19/10 25/11
**low [3]** 11/1 60/19 60/19
**lying [1]** 63/3

## M

**made [12]** 8/7 11/16 18/25 19/1 19/1 32/7 34/23 39/25 46/19 50/25 58/22 59/2
**magically [1]** 14/9
**MAGISTRATE [1]** 1/16
**mail [2]** 46/21 49/4
**maintain [1]** 38/15
**major [1]** 21/7
**make [22]** 14/15 18/13 18/22 20/1 22/7 24/10 25/11 25/16 32/12 32/17 33/22 35/18 36/6 46/11 49/18 50/17 51/5 53/1 53/14 55/14 56/12 57/12
**makes [1]** 37/10
**making [1]** 16/14
**manifestly [1]** 22/20
**manufacture [1]** 9/9
**manufacturer [4]** 7/20 8/7 10/7 17/7
**manufactures [1]** 42/5
**manufacturing [7]** 1/9 5/16 5/19 28/3 28/4 28/11 33/15
**many [3]** 28/17 46/6 62/15
**mark [1]** 30/23
**marks [3]** 28/22 29/19 31/2
**massive [2]** 56/20 56/23
**material [7]** 42/8 44/14 48/11 48/24 52/1 52/3 52/5
**math [2]** 33/25 40/14
**matter [9]** 5/3 5/23 6/9 6/10 15/6 33/24 35/6 43/2 65/3
**matters [3]** 35/4 35/5 63/9
**may [11]** 20/15 26/12 28/20 34/14 50/9 50/10 52/23 55/18 61/2 61/5 63/13
**maybe [6]** 14/18 18/13 37/23 40/25 52/9 53/18
**McAdam [4]** 10/12 11/5 12/20 32/21
**me [44]** 5/6 6/1 6/6 6/7 6/19 10/9 11/16 12/7 13/23 15/5 16/19 19/21 20/3 20/4 26/6 26/18 29/14 31/7 31/16 33/6 33/7 33/18 38/7 38/24 39/4 42/18 42/23 43/21 44/17 47/7 47/7 47/7 47/8 48/13 48/14 49/16 49/16 49/22 50/1 54/2 54/9 54/16 55/21 56/19
**mean [5]** 11/9 22/2 59/20 59/21 60/22
**meaningful [3]** 39/1 40/21 55/12
**meaningless [1]** 50/17
**measured [1]** 17/21
**meet [8]** 35/7 35/21 37/12 37/15 38/4 38/6 38/7 40/21
**meet-and [1]** 37/12
**meet-and-confer [6]** 35/21 37/15 38/4 38/6 38/7 40/21
**meeting [3]** 37/17 49/21 49/21
**megabytes [1]** 44/4
**megs [1]** 46/9
**mentioned [3]** 9/18 36/20 43/19
**mentioning [1]** 9/8
**mentions [1]** 9/5
**merits [3]** 34/18 41/15 60/17
**method [1]** 12/2
**MICHAEL [2]** 2/7 5/14
**MIDDLE [2]** 1/1 65/7
**midsize [1]** 36/1
**might [1]** 26/20
**misclassification [1]** 44/5
**misconduct [1]** 63/21
**missing [4]** 13/9 37/2 57/3 57/9
**moment [3]** 30/15 43/22 47/18
**month [1]** 25/3
**months [1]** 23/13
**more [17]** 13/1 13/4 26/23 31/3 31/4 33/25 36/4 43/18 46/21 51/17 52/7 52/8 53/3 60/5 60/11 61/22 62/11
**motion [39]** 1/15 7/11 7/15 8/20 9/21 10/1 14/5 14/16 25/5 27/20 31/19 31/21 33/4 34/18 34/19 35/11 35/13 35/17 36/14 37/12 37/14 37/18 37/21 37/23 38/5 38/14 38/22 39/2 39/7 39/11 43/9 44/3 47/10 47/12 50/2 53/7 62/22 63/25 63/25
**motion's [1]** 33/8
**motions [2]** 6/16 6/18
**moving [1]** 41/18
**MR [87]**
**Mr. [8]** 10/17 11/5 33/18 34/14 41/19 49/13 56/6 62/2
**Mr. Colitz [2]** 33/18 56/6
**Mr. Colitz's [1]** 41/19
**Mr. Fernandez [2]** 49/13 62/2
**Mr. McAdam [1]** 11/5
**Mr. Ohai [1]** 10/17
**Mr. Sozzani [1]** 34/14
**Ms [1]** 6/13

## M

**MU3 [2]** 7/21 59/1
**MU3-4 [2]** 7/21 59/1
**much [1]** 35/10
**multiple [1]** 12/8 36/2 51/23
**must [1]** 54/7
**my [28]** 6/6 10/17 11/13 11/18 12/15 16/8 16/11 16/17 20/1 28/9 28/14 30/12 31/16 33/24 37/21 37/23 38/14 38/14 38/22 39/2 39/7 41/10 44/8 44/23 48/19 56/1 56/9 58/14
**myself [1]** 62/16

## N

**nail [1]** 21/14
**name [1]** 33/1
**named [1]** 12/23
**native [1]** 9/23
**nature [4]** 22/9 22/21 27/13 61/3
**need [18]** 6/21 22/7 24/9 25/10 42/15 51/8 53/8 61/8 61/8 61/8 61/21 62/2 62/3 62/4 62/5 62/8 62/9 62/11 63/5
**needed [1]** 33/19
**nefarious [1]** 54/19
**Nevada [2]** 1/8 1/9
**never [7]** 8/12 23/4 37/3 37/5 37/17 57/13 58/5
**new [2]** 23/15 37/15
**newest [1]** 52/7
**news [3]** 10/8 23/16 25/2
**next [3]** 13/23 55/6 63/8
**no [59]** 1/5 1/15 5/5 6/7 6/11 7/3 7/4 7/5 7/19 8/5 10/19 11/20 13/5 13/15 15/21 17/5 17/24 17/24 19/15 19/15 19/15 20/7 20/10 23/17 24/10 25/21 26/1 27/6 29/1 31/8 31/9 31/9 31/24 32/13 32/14 33/9 33/10 38/9 38/10 38/13 38/16 38/17 38/23 38/24 39/8 43/8 43/25 44/9 49/9 50/3 50/13 55/9 59/22 59/25 60/18 60/23 63/11 64/14
**NONE [1]** 4/13
**nonetheless [3]** 38/20 54/4 57/21
**normally [1]** 42/10
**not [85]**
**notably [1]** 48/18
**note [5]** 6/6 12/5 27/19 33/8 42/23
**noted [1]** 9/19
**nothing [9]** 12/14 17/7 17/14 23/9 23/15 27/22 31/20 31/24 61/20
**notice [1]** 6/2
**noticed [1]** 6/1
**notion [2]** 24/1 26/2
**now [27]** 6/1 11/24 13/6 14/11 19/2 20/22 21/3 22/16 23/1 23/4 23/10 25/21 27/12 31/18 36/1 43/4 44/8 45/14 47/10 55/6 59/10 60/21 61/11 61/17 62/8 62/10 62/12
**number [13]** 7/6 9/13 28/25 33/13 33/13 36/8 46/2 47/7 49/16 49/25 50/1 50/3 57/8
**numbering [1]** 47/17
**numbers [4]** 38/25 40/15 45/21 45/23
**numerous [1]** 22/17

## O

**objected [1]** 23/14
**objection [4]** 6/11 32/10 57/13 57/18
**objections [3]** 38/16 57/14 58/5
**obligation [5]** 11/22 20/2 52/18 52/19 55/17
**observed [1]** 30/10
**Obviously [1]** 46/24
**occurring [2]** 54/15 54/19
**October [1]** 1/6
**off [3]** 3/2 40/19 44/17
**offer [1]** 9/11
**offering [1]** 30/24
**Official [1]** 65/6

## OHAI [11]
**OHAI [11]** 1/9 5/16 5/20 10/17 10/18 12/21 22/14 29/12 30/2 30/5 32/4
**Ohai's [1]** 32/15
**okay [9]** 23/10 29/7 29/17 41/8 41/14 51/9 57/25 58/11 63/19
**once [2]** 12/7 56/15 59/11
**one [41]** 6/12 9/19 11/9 13/2 13/19 13/20 14/22 15/15 16/16 22/7 24/8 24/19 28/21 29/16 31/4 33/12 35/20 42/23 45/4 45/7 47/19 47/22 47/25 48/7 48/5 48/6 48/7 49/6 50/7 50/7 51/1 51/21 54/6 55/12 56/21 61/1 61/13 63/18 63/22 63/25
**ones [3]** 26/11 55/1 55/19
**online [1]** 30/24
**only [20]** 12/7 16/2 16/20 20/25 21/4 21/15 24/25 25/19 26/3 31/21 32/24 34/10 35/16 35/18 44/6 47/12 51/21 57/7 57/9 61/4
**operates [1]** 24/4
**operation [1]** 30/24
**operative [2]** 20/17 29/4
**opportunity [1]** 24/21
**opposing [4]** 8/23 46/15 55/7 64/4
**option [1]** 19/22
**order [13]** 5/2 11/3 11/3 13/7 13/8 25/10 25/11 26/21 27/1 36/9 62/7 63/8 63/16
**orders [5]** 9/19 10/7 10/8 10/9 10/10
**Original [1]** 26/24
**Original's [1]** 26/3
**ORIGINALS [39]** 1/8 2/7 5/4 5/16 5/19 9/20 17/1 17/2 17/17 17/22 18/3 21/17 22/19 23/23 24/3 24/4 24/5 24/13 24/21 26/13 26/22 26/22 28/7 29/12 30/7 30/11 30/23 36/21 37/5 37/8 50/14 50/15 58/3 58/6 58/22 58/22 59/5 60/3 60/4
**Originals' [5]** 28/10 28/10 28/22 29/19 31/11
**Originals' marks [1]** 28/22
**other [24]** 6/17 11/13 11/14 12/14 13/17 14/23 15/14 17/25 22/2 28/17 32/11 37/6 40/10 46/3 47/24 47/24 48/10 51/16 54/19 56/5 56/18 57/7 58/16 63/25
**ours [1]** 62/4
**ourselves [1]** 62/19
**out [24]** 12/25 13/17 18/13 20/18 27/9 30/22 31/12 39/3 39/13 39/23 40/16 41/7 45/24 47/6 48/17 49/19 50/17 50/25 51/5 56/24 61/16 62/21 63/8 63/16
**outside [1]** 36/6
**outstanding [3]** 43/12 43/24 63/9
**over [16]** 14/19 19/2 19/21 19/23 22/19 23/1 23/17 42/25 46/8 54/13 54/22 54/24 56/12 56/20 59/11 60/2
**over-inclusion [3]** 54/22 54/24 56/20
**over-inclusive [1]** 56/12
**overall [1]** 34/4
**overbroad [1]** 57/15
**overhead [10]** 24/6 33/15 34/3 34/5 39/4 39/18 39/23 41/24 42/1 42/9
**own [5]** 21/8 22/22 25/12 28/6 49/19
**owned [1]** 58/5

## P

**p.m [1]** 1/7
**PA [2]** 2/4 2/8
**page [6]** 3/2 4/1 9/1 9/7 9/11 52/20
**pages [18]** 44/4 44/11 44/20 44/25 45/3 45/8 45/8 46/7 46/8 47/18 48/4 48/8 48/24 51/11

## OHAI [11]
**51/11 51/13 51/18 54/5**
**paid [1]** 32/7
**paper [2]** 24/19 36/22
**paragraph [7]** 28/24 29/14 29/17 29/18 30/20 30/21 39/15
**paralyzed [1]** 52/12
**pare [1]** 23/2
**part [4]** 11/6 27/24 56/19 61/8
**particular [2]** 8/22 55/1
**particularity [1]** 63/5
**particularly [1]** 39/15
**parties [4]** 34/23 34/24 35/3 35/24
**party [6]** 11/23 12/2 13/21 17/5 17/25 55/16
**part's [1]** 58/25
**patent [13]** 7/14 7/17 7/22 7/25 8/8 8/9 9/3 10/6 10/11 11/2 12/17 14/3 63/13
**pause [2]** 54/2 55/6
**payments [1]** 58/21
**percentage [2]** 34/4 42/1
**percentages [1]** 42/16
**perception [1]** 49/14
**performed [1]** 52/23
**perhaps [1]** 6/2
**person [1]** 35/3
**perturbed [1]** 58/13
**ph [3]** 10/8 10/12 44/16
**phantom [1]** 27/24
**photo [1]** 48/3
**photograph [1]** 48/2
**physical [1]** 63/5
**pick [1]** 17/22
**piece [1]** 24/19
**place [1]** 10/20
**plain [3]** 17/8 17/11 35/8
**plaintiff [4]** 1/4 2/2 6/3 37/9
**plaintiff's [3]** 34/19 40/23 49/9
**plaintiffs [4]** 11/7 33/21 43/6 53/16
**played [1]** 22/25
**pleadings [4]** 7/7 12/6 61/11 61/19
**please [3]** 5/7 33/19 45/12
**plenty [1]** 60/14
**plural [2]** 29/22 59/23
**podium [1]** 16/16
**point [19]** 15/13 15/24 19/4 29/8 36/24 37/16 38/22 39/13 39/23 39/25 48/5 51/21 52/3 56/1 56/3 59/7 59/24 60/15 61/13
**pointed [3]** 31/12 37/24 37/24
**pointing [1]** 40/16
**points [6]** 21/15 43/18 51/5 53/3 53/12 58/10
**pool [1]** 18/8
**PORCELLI [2]** 1/16 20/8
**porn [1]** 52/22
**pornography [8]** 44/4 44/11 44/12 45/17 46/9 52/8 52/14 54/5
**position [3]** 19/22 34/19 38/10 38/10 56/14 60/10
**pot [1]** 18/8
**practical [2]** 15/6 26/18
**practice [1]** 9/6
**preamble [2]** 29/10 30/14
**precarious [2]** 58/14 60/21
**precisely [1]** 62/17
**predicting [1]** 33/5
**prejudice [2]** 23/8 60/25
**prejudiced [1]** 37/8
**prepare [1]** 23/7
**prepared [1]** 28/15
**present [5]** 10/1 18/9 40/22 42/16 60/23
**presented [1]** 51/20
**president [1]** 30/3

## P

**pretend [2]** 60/16 60/17
**previous [2]** 37/12 55/1
**principal [1]** 53/11
**prior [9]** 11/19 35/11 35/12 36/16 36/18 36/23 37/13 48/18 56/14
**pro [1]** 53/7
**problem [1]** 40/7
**proceed [4]** 18/17 19/16 20/6 20/9
**proceeded [1]** 32/5
**proceeding [2]** 19/8 20/11
**proceedings [3]** 1/24 64/17 65/2
**process [2]** 11/15 35/23
**produce [6]** 11/4 35/14 55/23 57/1 57/10 58/6
**produced [22]** 8/5 8/10 8/25 10/6 10/10 10/10 10/11 10/14 11/6 11/12 12/10 32/9 36/21 43/1 44/2 48/21 49/15 52/20 56/21 57/5 61/13 62/6
**producing [3]** 11/22 12/2 32/10
**product [9]** 7/21 18/21 34/5 34/5 39/17 39/19 39/19 42/4 42/4
**product-by-product [3]** 34/5 39/19 42/4
**production [17]** 7/19 8/21 11/11 33/14 35/15 36/25 38/19 44/16 48/19 49/10 50/13 50/23 51/10 52/7 55/1 55/5 64/9
**products [13]** 17/2 17/6 26/11 27/2 33/15 34/10 34/11 39/23 40/6 40/8 42/2 42/4 42/6
**professional [2]** 28/14
**profit [1]** 16/9
**profits [19]** 15/8 15/9 15/22 16/2 16/9 16/24 17/9 21/5 21/8 21/11 22/6 25/11 25/19 25/20 26/3 27/11 27/14 58/16 59/14
**programs [2]** 36/2 36/3
**promising [1]** 64/1
**proof [1]** 31/9
**properly [1]** 34/20
**property [1]** 18/20
**proportional [1]** 11/25
**propounded [2]** 28/18 53/16
**proprietorship [2]** 36/1 36/7
**protective [1]** 62/7
**prototypes [2]** 12/25 13/2
**provide [13]** 7/8 12/4 12/8 36/9 44/1 54/7 54/12 54/18 55/11 55/17 55/19 56/7 64/5
**provided [38]** 8/14 8/16 8/20 8/23 9/16 9/16 9/18 10/2 11/10 11/17 11/21 12/13 12/17 12/18 13/8 13/8 13/12 14/4 19/4 19/5 19/12 21/1 24/18 33/21 36/16 37/4 38/3 40/19 41/19 41/21 41/22 42/8 42/11 43/3 43/4 45/20 57/20 57/21
**provides [2]** 41/24 42/1
**providing [2]** 9/23 55/15
**pun [1]** 27/6
**purchase [6]** 9/19 10/7 10/8 10/9 10/10 13/7
**purchased [1]** 42/6
**purchases [4]** 8/7 42/8 58/25 59/2
**pure [1]** 12/14
**purport [1]** 10/22
**purposes [5]** 13/25 15/8 20/10 21/18 54/16
**pursuing [1]** 19/24
**put [5]** 21/14 31/20 45/23 46/6 60/24
**puts [1]** 60/9
**putting [2]** 8/13 16/7

## Q

**quantity [1]** 27/12
**question [9]** 12/15 14/6 15/25 16/8 16/14 22/1 28/9 30/12 33/24
**quid [1]** 53/6
**quite [2]** 10/17 46/19
**quo [1]** 53/7

**quote [1]** 34/25

## R

**racks [1]** 18/8
**raised [1]** 27/22
**raises [1]** 27/21
**ranges [2]** 45/25 48/12
**rather [3]** 22/8 44/10 55/10
**raw [1]** 42/8
**read [9]** 14/18 16/15 30/22 39/24 49/3 54/22 63/1
**readable [2]** 19/9 20
**reading [2]** 16/17 17/15
**really [10]** 13/6 16/21 16/22 25/12 47/15 54/9 56/12 57/6 61/22 63/20
**reason [6]** 6/7 6/21 15/21 21/7 25/7 49/11
**reasonable [3]** 11/23 54/6 54/17
**reasons [3]** 15/14 21/7 63/11
**recall [1]** 40/17
**receive [1]** 64/3
**received [8]** 13/2 13/11 13/13 13/15 15/2 36/22 37/5 55/5
**recess [1]** 64/15
**recognize [5]** 15/14 20/24 29/14 30/14
**recollection [1]** 10/17
**record [20]** 5/7 6/6 6/12 11/19 12/6 13/25 19/8 20/4 20/22 21/3 25/22 33/8 36/20 37/11 42/23 43/13 46/1 63/10 63/11 65/2
**recording [1]** 1/24
**records [25]** 7/12 7/13 8/13 10/13 14/15 14/17 14/24 19/2 19/13 19/14 19/17 19/21 19/23 20/3 23/24 24/5 39/16 40/12 41/3 41/6 41/17 42/3 43/2 60/5 63/15
**recovery [1]** 17/23
**recusal [2]** 6/7 6/8
**redacted [1]** 46/4
**reduction [1]** 9/6
**refer [1]** 39/5
**reference [3]** 27/20 41/22 62/23
**referenced [1]** 32/4
**referring [1]** 13/11
**reflect [2]** 10/25 10/25
**refusal [1]** 15/3
**refused [3]** 9/9/11 64/8 64/9
**regard [2]** 14/5 48/10
**regarding [7]** 7/20 9/5 10/15 10/21 35/5 41/10 41/19
**registration [2]** 32/19 32/25
**relate [1]** 6/19
**related [5]** 10/11 10/21 11/2 24/23 63/15
**relates [1]** 33/12
**relating [8]** 7/14 7/17 9/3 9/7 44/15 50/14 58/3 58/7
**relationship [5]** 22/4 22/10 23/21 30/5 59/3
**relativity [2]** 48/3 48/7
**relevancy [11]** 20/2 22/3 25/16 25/21 43/20 58/12 58/20 59/6 59/9 60/11 62/8
**relevant [14]** 11/24 18/11 18/12 19/19 20/17 21/1 21/5 21/12 21/16 23/24 40/7 48/22 49/8 60/14
**rely [2]** 37/12 37/22
**relying [2]** 8/4 62/6
**Remanufacturing [1]** 2/8
**remarked [1]** 47/2
**remind [1]** 20/7
**removal [1]** 53/7
**renewal [1]** 37/13
**renewed [1]** 37/12
**repeated [1]** 8/24
**repeatedly [2]** 47/6 57/2
**reply [7]** 7/4 7/5 7/18 7/19 14/18 27/21 31/21 39/22 39/22 40/14 41/20 41/22 41/25 42/15

**quote [1]** 34/25

43/5 58/15 60/22 62/9 62/10 62/10
**Reporter [3]** 2/11 4/8 65/6
**reports [2]** 25/8 42/7
**represent [1]** 56/21
**representation [2]** 14/1 38/7
**representative [2]** 28/2 31/14
**represented [4]** 12/6 13/25 45/18 50/6
**represents [1]** 53/17
**request [12]** 13/24 14/25 38/19 43/25 47/19 49/8 49/8 49/9 50/13 55/23 63/14 63/15
**requested [3]** 22/21 44/6 58/2
**requests [22]** 7/17 7/25 8/21 8/24 11/16 11/18 12/13 13/20 23/14 28/18 31/10 33/14 33/16 34/12 36/6 36/11 49/10 53/15 54/4 55/20 63/12 64/9
**requirement [2]** 34/21 35/8
**requirements [1]** 37/11
**rereview [1]** 50/4
**research [2]** 6/14 9/8
**researched [1]** 48/1
**resident [1]** 1/10
**residential [2]** 26/23 30/25
**residential-type [1]** 26/23
**resolution [1]** 35/4
**resolve [2]** 6/22 25/5
**resolved [3]** 10/5 35/21 41/15
**resolving [1]** 35/19
**respect [2]** 10/6 17/21
**respond [6]** 11/23 22/2 24/16 27/17 31/5 51/8
**responded [2]** 41/10 42/25
**responding [3]** 55/16 55/17 55/20
**response [19]** 7/3 7/17 8/12 8/17 8/23 9/15 11/11 33/5 33/9 33/22 39/10 42/24 44/8 44/13 45/19 52/4 52/9 52/12 58/4
**responses [4]** 16/3 34/6 43/9 57/15
**responsive [16]** 7/8 12/3 12/8 12/10 14/4 38/18 39/8 47/18 47/20 47/23 51/2 54/7 54/8 54/18 55/19 56/8
**rest [1]** 55/21
**result [2]** 18/15 44/15
**resulted [1]** 44/16
**retail [1]** 30/24
**revenue [1]** 34/4
**revenues [1]** 18/3
**reverted [1]** 26/12
**review [7]** 6/6 11/18 44/8 52/19 52/24 54/12 56/7
**reviewed [6]** 6/5 6/19 10/13 35/23 36/11 50/6
**rid [1]** 50/2
**right [52]** 5/6 5/22 6/15 6/16 7/2 8/11 9/12 9/14 10/3 11/8 13/18 14/14 15/4 16/7 19/3 19/7 21/2 21/20 23/11 27/16 29/6 29/13 29/20 31/4 31/25 32/2 33/3 34/13 34/16 37/19 40/25 41/3 42/17 42/22 43/11 43/21 45/9 45/14 46/10 51/3 53/4 56/17 58/8 59/19 60/21 61/10 62/1 62/10 63/7 63/17 64/11 64/15
**rights [1]** 31/2
**RPR [2]** 2/11 65/6
**rule [6]** 6/19 6/24 20/2 35/8 44/7 44/7
**rules [2]** 22/25 55/11
**RULING [3]** 3/6 3/21 4/6
**run [4]** 21/19 23/5 38/25 59/12
**runaround [1]** 63/2
**rundown [1]** 24/2
**rupture [1]** 30/5

## S

**saddle [1]** 15/22
**said [20]** 10/18 12/1 18/2 20/10 34/3 38/1 38/13 38/23 46/20 48/21 48/25 49/2 49/12 49/16 49/18 49/21 49/22 50/3 57/2 58/15

## S

**sale [6]** 9/11 9/11 10/21 10/22 10/25 19/24
**sales [21]** 17/21 18/1 18/7 18/15 18/22 18/23 19/1 19/6 19/10 23/19 24/20 26/12 26/15 32/6 36/21 37/4 37/6 37/7 58/25 59/2 59/20
**same [6]** 17/18 20/25 22/21 22/23 25/1 62/6
**sample [1]** 45/11
**sanctions [5]** 43/25 44/6 50/2 53/7 63/14
**sat [1]** 49/20
**satisfaction [1]** 9/23
**satisfied [8]** 9/22 11/11 13/19 14/3 33/7 42/17 42/22 43/3
**saw [1]** 31/20
**say [22]** 18/21 19/20 23/1 23/8 23/10 26/25 28/1 28/18 41/6 46/12 51/15 51/15 53/13 53/22 54/2 56/11 56/25 59/13 59/21 60/16 60/16 62/4
**saying [6]** 10/9 32/19 47/3 47/4 56/2 61/9
**says [12]** 10/13 11/5 16/23 19/3 26/24 28/21 30/21 31/7 38/15 38/16 39/16 46/16
**scanned [1]** 36/21
**scared [1]** 49/15
**scheduled [4]** 6/17 46/18 48/15 49/1
**scheduling [1]** 51/6
**scrivener's [2]** 31/7 59/16
**seal [4]** 39/21 46/16 47/13 47/14
**sealed [1]** 62/24
**search [13]** 11/17 11/20 10/21 12/4 12/8 44/15 54/24 55/2 55/8 55/13 55/18 55/21 56/20
**searched [1]** 11/1
**second [5]** 7/13 21/7 29/2 29/7 29/18
**secondary [2]** 15/20 27/8
**secondly [1]** 7/12
**see [9]** 5/24 9/12 18/23 35/3 46/15 47/14 48/8 52/19 62/18
**seek [1]** 43/9
**seeking [5]** 21/7 21/10 21/13 38/12 55/23
**seem [1]** 6/23
**seemed [3]** 14/16 14/19 34/7
**seems [3]** 9/2 22/20 25/19
**self [1]** 60/15
**self-serving [1]** 60/15
**sell [1]** 18/8
**selling [4]** 17/2 17/6 26/11 30/8
**sells [1]** 28/3
**semantics [1]** 51/16
**sending [1]** 26/15
**sensitive [1]** 20/23
**sensitivities [1]** 22/24
**sensitivity [1]** 61/6
**sentence [1]** 53/2
**separate [3]** 24/24 45/7 48/8
**sequence [2]** 47/16 48/11
**sequential [2]** 47/19 48/6
**seriously [1]** 46/24
**served [1]** 37/1
**serving [1]** 60/15
**set [4]** 30/20 36/9 36/24 49/9
**seven [6]** 9/11 29/9 39/15 47/24 48/18 50/23
**several [1]** 58/10
**SGNA [2]** 42/8
**shake [1]** 61/25
**share [1]** 40/25
**shop [1]** 21/18
**should [13]** 6/25 12/17 13/11 15/21 19/22 23/15 24/14 27/14 29/2 43/6 55/24 60/13 62/17
**show [3]** 26/10 42/9 48/6
**showing [3]** 23/19 42/8 54/5
**shows [1]** 62/11
**side [6]** 9/19 28/17 40/23 56/5 57/7 58/16

## 

**sides [2]** 53/22 58/18
**signed [3]** 22/13 32/5 32/20
**simplify [1]** 33/17
**simply [12]** 11/9 11/15 12/13 16/1 22/3 22/8 25/18 33/20 33/25 40/18 54/17 55/20
**since [2]** 6/17 24/25
**single [5]** 37/5 41/21 50/4 62/13 62/15
**sir [3]** 13/15 44/19 45/13
**sit [1]** 16/15
**situation [2]** 58/14 60/22
**six [4]** 9/7 29/9 48/11 48/12
**skill [1]** 40/11
**small [2]** 36/1 36/7
**so [89]**
**sole [2]** 16/1 36/20
**solely [3]** 12/4 14/17 15/7
**some [18]** 6/13 13/1 13/13 18/22 26/15 27/18 37/17 44/24 44/25 45/3 45/4 45/8 45/9 51/17 52/15 52/15 58/19 60/1
**somehow [6]** 8/24 17/16 23/10 23/12 24/1 53/6
**someone [1]** 55/21
**something [17]** 12/16 14/18 20/17 26/5 31/17 33/18 37/16 40/1 40/4 40/5 47/8 47/13 49/16 56/9 57/5 60/11 64/6
**somewhat [1]** 49/12
**somewhere [1]** 9/3
**soon [1]** 61/24
**sophisticated [1]** 36/5
**sorry [6]** 5/5 25/25 29/15 38/17 49/22 53/2
**sort [3]** 31/22 37/21 44/24
**sorts [1]** 21/21
**sought [2]** 22/22 34/6 50/13 58/16
**SOZANNI [3]** 3/17 3/19 34/16
**SOZZANI [2]** 2/3 5/11 34/14
**speak [2]** 48/13 59/20
**special [1]** 40/10
**specific [6]** 21/11 33/15 34/10 35/9 37/15 54/23
**specifically [11]** 9/4 14/25 20/9 27/9 31/13 35/14 39/7 39/16 43/5 52/6 59/7
**specifics [1]** 58/2
**speculation [2]** 11/6 12/14
**spell [1]** 39/3
**spending [1]** 24/5
**spreadsheet [2]** 23/19 37/7 57/5
**square [1]** 21/18
**squatting [1]** 32/24
**stand [3]** 23/1 51/18 60/21
**standard [4]** 25/12 60/11 60/19 62/4
**standing [1]** 23/5
**standpoint [1]** 11/1
**stands [1]** 17/13
**start [5]** 6/16 6/20 7/2 7/23 44/17
**started [2]** 26/11 30/8
**stash [2]** 47/8 50/5
**state [4]** 5/6 16/18 17/13 19/11
**stated [8]** 11/16 20/21 21/10 35/1 36/24 55/3 56/8 63/11
**statement [2]** 42/11 57/20
**statements [1]** 42/11
**states [4]** 1/1 1/16 17/12 65/7
**stating [1]** 16/2
**status [1]** 8/22
**statute [1]** 6/7
**step [2]** 13/23 15/15
**STEPHEN [3]** 2/3 2/7 5/18
**steps [2]** 36/8 41/9
**still [12]** 17/21 18/12 33/5 43/12 43/24 44/12 44/21 45/17 46/5 54/4 57/8 61/1
**stored [1]** 13/22
**story [1]** 30/4
**Street [2]** 2/4 2/8

## T

**struggle [1]** 54/4
**struggling [1]** 54/1
**stuck [1]** 58/18
**stuff [2]** 10/20 48/22
**subject [1]** 33/13
**submit [1]** 39/20
**submitted [1]** 39/20
**subparts [1]** 53/19
**subpoenas [2]** 6/19 6/24
**subsections [1]** 38/18
**subsequent [2]** 6/18 34/24
**substantiate [3]** 24/11 47/11 59/25
**substantiation [1]** 31/9
**such [4]** 27/2 27/2 39/5 40/2
**sue [1]** 64/2
**sued [1]** 30/6
**sufficient [6]** 12/11 13/19 33/22 38/6 38/11 43/6
**suggest [4]** 53/6 57/6 59/12 62/23
**suggested [5]** 11/21 49/18 50/2 50/3 64/4
**suggesting [2]** 32/18 40/2
**suggests [2]** 38/24 61/21
**Suite [3]** 2/4 2/8 2/11
**sum [1]** 24/17
**summary [2]** 23/18 23/21
**summer [1]** 37/25
**superior [1]** 31/2
**supplement [3]** 35/15 36/25 38/20
**supplemental [1]** 33/7
**supplied [1]** 50/8
**support [6]** 17/8 24/14 26/8 29/24 59/22 61/20
**supposed [3]** 10/25 44/20 60/20
**supposedly [1]** 16/25
**sure [14]** 14/15 20/6 32/13 36/11 41/18 43/23 44/12 46/11 53/1 53/14 53/19 56/9 57/12 61/16
**surely [2]** 51/15 55/6
**surprise [1]** 35/12
**suspect [2]** 28/13 37/15

## T

**table [2]** 48/2 48/3
**take [19]** 13/25 15/15 17/22 24/7 24/22 25/12 26/2 27/12 41/8 42/3 53/14 55/6 55/10 55/24 57/1 60/20 62/18 62/19 63/7
**taken [3]** 16/25 26/4 62/15
**takes [1]** 43/11
**taking [1]** 63/14
**talk [1]** 31/16
**talking [7]** 28/11 46/6 46/19 47/15 49/23 50/21 50/22
**talks [1]** 17/13
**TAMPA [7]** 1/2 1/6 2/4 2/5 2/9 2/12 65/8
**telephone [1]** 35/10
**telephonically [1]** 35/3
**tell [2]** 33/6 52/16
**telling [2]** 20/3 61/14
**ten [2]** 44/3 46/8
**term [2]** 29/10 55/8
**terminology [2]** 7/11 46/17
**terms [15]** 11/17 11/20 11/21 12/4 22/22 24/6 26/18 30/10 46/6 54/24 55/2 55/13 55/18 55/21 56/20
**testified [2]** 12/20 12/22
**testimony [6]** 10/18 11/4 12/19 22/17 31/13 58/21
**testing [3]** 7/20 10/15 10/19
**than [11]** 12/14 13/4 13/4 28/ 33/25 37/6 46/21 51/16 51/17 60/5 60/11 62/11
**Thank [10]** 5/10 5/13 5/17 5/21 6/15 14/13 51/9 53/10 64/12 64/15
**that [465]**

## T

**that's [51]** 6/14 13/19 13/23 14/10 14/12 15/12 15/12 15/24 16/6 16/8 16/14 16/24 17/3 17/11 17/20 18/3 18/4 18/12 19/15 25/3 28/13 29/4 30/6 30/8 31/3 31/7 37/23 40/20 43/1 43/24 44/20 46/1 46/5 47/25 48/5 48/6 52/20 53/16 54/15 55/10 55/22 55/25 56/1 56/10 56/12 59/13 61/16 62/14 62/17 62/22 63/4

**their [52]** 5/7 8/24 9/21 10/24 13/5 14/24 14/24 16/25 17/3 17/16 17/22 18/12 18/4 18/7 18/21 21/8 21/10 22/22 24/11 25/12 27/10 27/14 28/1 30/24 31/13 31/19 31/21 32/9 34/2 34/2 34/7 34/9 35/12 36/16 37/17 37/4 37/24 37/25 38/9 38/10 39/13 39/14 39/22 39/22 39/25 49/8 50/12 52/4 52/7 52/9 57/15 62/20

**theirs [1]** 52/5

**them [38]** 6/19 7/7 9/13 12/4 13/16 15/20 18/4 18/6 19/13 20/18 22/22 22/25 23/8 23/9 23/10 23/13 23/16 23/18 23/21 23/23 24/2 24/4 24/12 27/9 29/12 35/22 35/24 41/7 42/14 46/3 47/3 47/22 47/25 52/6 55/22 62/6 62/9 62/25

**themselves [2]** 52/16 55/3

**then [45]** 6/16 7/2 7/4 7/8 11/17 12/3 13/10 14/14 14/17 14/18 16/2 17/19 17/22 19/8 19/21 19/23 20/5 21/5 24/14 25/20 27/2 28/9 29/13 33/18 34/8 38/4 38/13 38/23 39/11 41/1 42/18 43/8 43/11 45/14 45/17 48/7 49/2 49/17 56/24 56/25 57/1 57/7 57/9 58/6 59/5

**theories [1]** 22/3

**theory [7]** 15/7 15/20 17/24 18/16 19/10 20/6 21/4

**there [104]**

**there's [53]** 6/7 6/17 9/6 9/13 11/15 12/13 13/5 13/17 15/21 16/3 16/20 17/5 17/7 17/24 17/24 20/15 21/6 21/21 22/3 22/17 24/10 26/10 26/20 26/21 28/12 28/18 30/14 31/23 31/24 31/24 32/11 32/23 33/19 43/18 44/13 46/16 48/11 48/12 49/3 49/13 49/14 51/4 52/18 54/6 56/20 58/19 59/3 59/5 59/21 60/1 60/14 60/18 60/18

**therefore [1]** 18/23

**these [13]** 20/23 21/15 48/6 51/10 52/14 54/8 60/20 61/24 62/8 62/16 62/25 62/25 63/5

**they [90]**

**they're [21]** 13/7 13/9 14/22 17/16 17/17 17/18 18/2 18/23 21/1 21/3 24/8 24/13 24/23 25/1 26/10 45/25 46/4 52/15 59/12 60/5 61/24

**they've [12]** 10/24 24/9 24/18 27/1 30/9 37/3 39/21 55/2 56/21 56/23 57/2 59/11

**thing [4]** 20/22 56/18 61/1 63/18

**things [5]** 18/8 18/8 61/24 61/25 63/23

**think [38]** 6/2 7/1 9/21 9/22 10/8 10/20 11/6 16/10 17/12 18/5 18/12 19/21 23/13 27/23 33/19 37/20 38/5 39/14 40/4 40/5 41/9 43/13 47/1 47/2 48/22 53/18 54/15 54/15 54/17 54/18 55/11 55/23 55/24 60/9 61/6 61/7 61/14 63/20

**thinking [1]** 39/2

**third [4]** 13/21 29/3 35/24 49/9

**thirds [1]** 51/10

**this [81]**

**thorough [1]** 56/7

**those [41]** 6/19 6/22 8/5 8/9 8/15 9/10 9/15 9/23 10/2 10/8 10/10 10/18 11/4 11/20 13/6 13/15 15/9 18/24 19/13 19/13 19/17 19/21 19/23 20/18 21/11 24/8 24/20 24/23 27/15 35/4 35/5 35/16 36/22 45/3 50/23 53/11 53/11 56/15 59/1 59/2 60/5

**though [3]** 15/24 30/12 46/4

**thought [2]** 40/6 40/17

**thousands [1]** 42/7

**threatened [1]** 53/5

**three [8]** 23/13 24/19 24/20 24/20 29/8 29/12 37/6 48/20

**three-line [1]** 37/6

**through [15]** 14/15 25/15 35/21 38/19 38/19 38/21 42/12 46/1 46/2 46/13 48/9 48/23 52/13 56/22 57/6

**throughout [1]** 35/25

**ties [1]** 30/8

**time [13]** 13/2 15/15 16/16 24/25 27/19 27/21 31/4 32/2 38/5 53/23 55/6 63/17 63/22

**time-consuming [1]** 53/23

**timeline [1]** 46/13

**times [3]** 12/8 56/3 56/5

**today [1]** 6/22 6/25

**told [4]** 23/13 25/3 30/4 35/22

**tongue [1]** 52/11

**tongue-and-cheek [1]** 52/11

**tons [1]** 55/5

**too [1]** 24/8

**took [4]** 10/20 11/2 35/11 46/24

**top [2]** 26/12 52/18

**total [1]** 24/17

**totally [2]** 18/9 46/25

**touches [1]** 8/6

**trademark [9]** 17/3 17/4 22/23 27/9 28/5 28/10 31/11 31/11 59/15

**trademarks [1]** 31/15

**transaction [3]** 23/19 26/19 26/20

**transactions [3]** 23/22 23/24 60/4

**transcribed [1]** 1/24

**transcript [7]** 1/15 34/25 39/24 46/20 49/4 51/14 65/2

**transcription [1]** 1/25

**transcriptionist [1]** 1/24

**transcripts [1]** 62/24

**transfers [1]** 22/5

**trial [2]** 14/11 20/5

**tried [1]** 53/6

**troubles [1]** 11/16

**trove [1]** 56/23

**true [5]** 17/1 17/19 24/3 59/3 59/4

**try [2]** 46/13 55/7

**trying [4]** 20/20 25/5 25/15 25/15

**turn [4]** 19/2 19/21 19/23 59/11

**turned [4]** 22/25 23/17 42/5 60/2

**turns [2]** 47/6 48/17

**two [12]** 7/9 11/11 16/21 20/15 21/15 22/6 23/13 24/23 24/24 36/14 51/10 54/6

**Two-thirds [1]** 51/10

**two-week [1]** 36/14

**type [1]** 26/23

## U

**U.S [1]** 31/1

**ultimately [3]** 26/15 27/4 59/7

**unable [4]** 34/1 40/15 41/2 47/10

**unclear [1]** 7/15

**under [18]** 11/3 16/8 17/2 18/17 20/2 20/6 20/9 29/15 35/4 35/8 35/9 39/21 44/6 46/16 47/13 47/14 63/7 63/14

**understand [14]** 8/11 16/3 29/4 33/5 33/20 42/13 51/12 53/1 53/15 56/14 57/12 61/9 61/18 63/21

**understanding [3]** 15/5 44/23 54/3

**understood [4]** 13/20 22/2 32/13 56/2

**undertook [1]** 57/7

**unduly [1]** 49/19

**unearth [2]** 28/19 28/20

**unfair [1]** 22/21 22/23 27/9 59/15

**unfortunately [3]** 16/11 34/9 36/17

**unilateral [1]** 51/6

**unilaterally [2]** 49/1 59/11

**UNITED [3]** 1/1 1/16 65/7

**units [1]** 13/1

**unlawful [1]** 32/25

**unless [1]** 35/2

**until [5]** 7/18 28/14 31/21 52/16 56/22

**unwilling [3]** 47/9 49/17 49/25

**up [9]** 5/22 6/22 7/7 34/4 38/13 48/6 54/5 58/24 61/25

**upon [19]** 6/6 7/15 7/18 11/18 12/1 12/4 13/19 28/8 31/1 37/12 37/22 40/12 41/16 42/19 43/2 43/4 44/8 52/16 55/21

**upset [2]** 46/12 49/12

**upstairs [1]** 21/18

**us [24]** 6/13 13/5 22/21 23/9 24/18 24/21 25/2 25/3 32/8 35/11 41/1 43/11 47/4 48/18 50/16 52/5 52/12 52/20 57/4 60/9 60/24 60/25 62/6 63/4

**use [10]** 7/10 10/16 10/23 19/3 19/6 19/13 28/21 29/19 30/21 30/23

**used [8]** 20/16 22/16 26/13 31/10 36/2 41/23 41/25 55/2

**uses [2]** 8/4 59/22

**using [2]** 1/24 56/20

**utilized [1]** 43/5

## V

**Valeen [1]** 6/13

**validity [1]** 9/7

**various [1]** 18/19

**vendors [1]** 42/6

**versa [1]** 26/16

**very [14]** 10/24 14/22 34/23 35/25 36/12 36/12 48/15 49/1 58/14 59/18 60/10 60/15 62/21 63/1

**via [1]** 1/24

**vicarious [6]** 15/18 16/1 16/8 17/13 17/19 25/18

**vice [2]** 26/15 30/3

**visited [1]** 50/18

**vital [1]** 43/13

**voluminous [1]** 53/23

**VP [5]** 21/19 22/14 30/5 32/4 32/20

## W

**wages [1]** 42/9

**wait [1]** 32/12

**walk [3]** 15/5 25/15 26/24

**walked [1]** 50/25

**want [28]** 5/22 6/10 7/7 14/15 15/15 19/17 22/1 22/20 24/7 24/16 27/5 27/16 29/14 31/5 32/12 33/17 37/22 46/11 51/5 53/1 53/14 55/18 57/12 58/9 59/12 60/16 60/16 62/19

**wanted [4]** 6/4 6/8 6/9 21/14

**wants [1]** 59/16

**was [125]**

**Washeng [5]** 10/7 12/23 13/3 13/3 13/12

**wasn't [4]** 35/10 48/17 52/12 54/17

**way [11]** 13/5 15/25 17/5 18/7 19/20 36/3 36/13 45/23 48/6 51/5 53/21

**ways [1]** 54/6

**we [168]**

**we'll [6]** 13/24 14/2 38/23 38/24 38/25 64/15

**we're [26]** 11/14 15/19 18/22 21/13 23/1 23/2 23/2 23/3 23/5 24/1 24/12 28/16 30/18 39/9 41/12 46/16 47/15 50/21 50/22 56/25 58/18 60/19 61/11 63/23 64/7 64/7

**we've [31]** 9/22 10/5 10/14 11/4 18/4 20/19 21/9 21/10 21/17 23/4 23/12 23/23 24/4 24/12 25/5 26/25 27/18 28/16 28/17 30/2 34/1 37/5 40/15 41/1 42/11 42/14 49/15 55/5

# W

**we've... [3]** 61/7 62/23 63/22
**website [8]** 22/16 28/7 28/10 32/5 32/15 32/19 50/15 50/18
**weed [1]** 48/9
**week [3]** 6/2 36/14 63/8
**weeks [2]** 37/13 37/16
**well [25]** 5/23 9/18 13/18 15/4 15/17 16/13 18/16 19/25 23/1 25/14 29/3 30/18 32/18 33/2 38/8 41/8 42/22 43/21 44/23 52/1 52/2 55/9 55/21 57/23 63/14
**went [3]** 30/7 46/14 48/22
**were [61]** 7/16 7/16 7/19 8/4 8/4 8/7 8/9 8/14 8/16 9/16 9/16 11/3 11/16 11/7 11/17 11/21 12/16 12/18 14/16 19/16 19/24 22/13 25/7 25/9 32/6 34/10 35/16 35/16 35/18 35/22 35/23 36/8 36/22 38/6 38/11 40/6 40/8 40/19 41/21 43/2 43/19 47/2 49/3 49/6 50/23 51/18 52/14 52/14 53/15 56/15 57/8 57/9 57/14 57/20 58/1 58/25 59/2 62/16 63/2 63/3 64/1
**weren't [1]** 57/10
**what [75]**
**what's [13]** 11/18 28/25 45/15 45/18 52/21 52/21 52/22 54/9 55/25 57/3 60/11 60/12 61/10
**whatever [3]** 52/23 60/6 61/2
**whatsoever [1]** 49/25
**when [14]** 11/16 19/3 23/10 23/20 23/20 26/14 30/4 36/7 49/5 50/25 54/22 56/4 56/11 59/2
**where [13]** 32/4 32/7 37/17 39/25 46/16 54/10 54/11 58/1 58/14 58/15 58/19 60/22 64/1
**wherein [1]** 12/20
**whether [12]** 9/15 20/16 22/5 25/2 28/12 30/9 32/14 41/16 43/2 44/12 55/13 59/3
**which [32]** 8/20 10/22 12/6 21/9 22/16 29/17 31/16 33/14 33/21 34/5 35/13 36/11 36/22 37/1 39/18 40/18 41/22 41/25 42/2 42/9 42/15 43/25 44/16 47/18 48/15 48/18 48/20 50/1 51/21 52/5 57/6 57/19
**while [1]** 59/16
**who [6]** 5/25 10/12 17/23 21/17 22/16 32/22
**who's [2]** 6/13 50/18
**whoever [2]** 13/22 55/20
**why [10]** 6/21 9/16 15/15 15/21 30/6 33/6 37/21 40/10 42/18 62/17
**wide [2]** 47/3 49/13
**will [11]** 20/4 25/22 35/1 37/16 38/20 42/20 42/20 54/2 55/6 55/19 60/23
**willful [1]** 36/15
**wingdings [10]** 44/5 44/10 44/25 45/14 46/22 47/25 48/4 48/24 49/4 52/1
**withdraw [3]** 21/4 39/11 52/6
**withdrawing [1]** 52/2
**withdrawn [3]** 48/19 50/23 56/16
**withdrew [4]** 39/2 39/7 48/23 51/25
**withheld [1]** 63/24
**within [3]** 14/23 15/22 24/4
**without [5]** 12/11 13/5 25/9 54/8 64/10
**witnesses [4]** 22/17 62/16 62/20 63/4
**won't [1]** 48/13
**word [1]** 62/19
**words [1]** 40/10
**work [4]** 22/19 32/22 46/13 49/19
**worked [1]** 5/25
**world [1]** 55/18
**would [58]** 9/10 9/10 9/15 15/9 15/11 15/16 16/1 16/9 17/11 17/21 18/21 19/11 19/13 19/17 19/20 19/23 20/7 20/24 21/12 21/16 24/11 25/8 25/17 26/14 26/19 27/4 27/19 27/23 29/8 31/17 31/20 32/16 35/21 39/13

39/19 39/21 39/24 42/10 44/14 44/25 46/24 47/8 49/24 50/2 50/16 51/21 52/3 57/6 57/20 57/21 58/20 59/1 59/6 59/25 60/6 61/16 62/23 64/4
**written [3]** 39/1 39/9 63/16
**wrong [1]** 14/18

# Y

**years [2]** 6/1 25/1
**years' [1]** 24/20
**Yes [23]** 8/2 9/17 9/25 14/7 14/21 15/1 20/14 25/24 26/7 26/9 31/6 33/11 37/20 43/17 44/19 45/13 45/16 46/11 51/4 53/3 56/18 60/8 62/3
**yet [3]** 28/19 61/1 64/3
**you [123]**
**you'll [1]** 56/9
**you're [13]** 7/24 13/12 16/2 16/13 17/25 19/18 20/3 21/2 29/6 40/2 49/23 52/16 54/20
**you've [8]** 13/11 13/13 23/6 36/11 48/21 56/8 57/3 61/18
**your [87]**

# Z

**zip [2]** 47/19 50/16