**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

Case No. 8:14-CV-01955-MSS-AEP

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,

       Plaintiff,

v.

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC.,
a California corporation; and JEFFREY L.
OHAI, an individual California Resident,

       Defendants.
_____/

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; and HI-LITE
MANUFACTURING COMPANY,
INC., a California corporation,

       Counterclaim Plaintiffs,
v.
BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,

       Counterclaim Defendants,
and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

       Third-Party Defendants.
_____/

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER
<u>DENYING MOTION TO COMPEL [DKT. 109]</u>**

Plaintiff, Barn Light Electric Company, LLC ("Barn Light Electric"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), respectfully submits its objections to the November 24, 2015 Order ("Dkt. 175" or "Order") on Plaintiff's Expedited Third Motion to Compel Production of Documents and for Discovery Sanctions ("Dkt. 109" or "Plaintiff's Motion").   Plaintiff respectfully states as follows:

<u>INTRODUCTION</u>

Barn Light Electric filed its Complaint alleging cybersquatting, unfair competition, direct and contributory trademark infringement under the Lanham Act against *all* Defendants, including Hi-Lite Manufacturing Co. ("Hi-Lite") and Jeffrey Ohai ("Ohai").   *See* Dkt. 107, Counts I, II, III, VI, VII, and VIII of Plaintiff's Third Amended Complaint ("TAC") at ¶¶ 109-118, 119-126, 127-132, 143-147 & 148-153.   The Lanham Act provides relief for trademark infringement in the form of an infringer's profits.   *See* 15 U.S.C. § 1117(a). Furthermore, the Anticybersquatting Consumer Protection Act provides relief for cybersquatting in the form of actual damages and profits or an award of statutory damages.   *See* 15 U.S.C. 1125(d)(1) & 1117.   Hi-Lite has counterclaimed for, among other things, numerous Lanham Act and Copyright Act violations.   *See* Defendants' Second Amended Counterclaim and Third Party Complaint (Dkt. 60, "SACC").   To establish its claim for damages, further develop its legal theories and prepare its defenses against Hi-Lite's counterclaims, Barn Light Electric sought discovery from Hi-Lite pursuant to Fed. R. Civ. P. 26(b).   This included propounding a range of document requests and interrogatories, and taking multiple depositions.   In response to Barn Light Electric's numerous requests and interrogatories about Hi-Lite's financial and

business records, including its tax returns, Hi-Lite produced three numbers listed on a single page. *See* Exhibit A. *Nothing more*.

Hi-Lite's express refusal to produce financial and business records, or to provide responsive answers to interrogatories forced Barn Light Electric to file Plaintiff's Motion to Compel.[1]  *See* Dkts. 109 & 124.  Defendant Hi-Lite waited nearly one year had passed after the filing of Plaintiff's initial Complaint to expressly inform Plaintiff of its intentional refusal to provide discovery relating to its financial and business records—all the while leading Plaintiff's to believe discovery responses and relevant documents would be forthcoming.  It was not until the eve of the Expert Reports deadline and, only after much of the discovery period had expired, that Plaintiff learned of Defendants' intention to withhold such documents and information— causing Plaintiff severe prejudice.  Upon learning of Hi-Lite's intention to withhold from discovery documents and information to which it was clearly entitled under the broad scope of discovery afforded by Federal Rule of Civil Procedure 26 and clear precedent of the Eleventh Circuit, Barn Light Electric filed its Expedited Motion To Compel.  *Id.*

Following the parties' briefing and oral argument, the Magistrate ruled that *all* of Barn Light Electric's discovery requests for certain Hi-Lite financial and business records were "exceedingly overbroad" and sought "irrelevant information."  Order, p. 2.  Moreover, even in view of the Plaintiff's claims and defenses in this litigation, the Magistrate ruled that none of Barn Light Electric's damages-related reasons for seeking discovery established relevancy.  Order, p. 3.

---

[1] Hi-Lite has roundly obstructed every attempt to gather information about its profits and sales revenue.  For example, Hi-Lite intentionally refused to testify as to the entire topic of its financial and business records during its deposition pursuant to Fed. R. Civ. P. 30(b)(6).  Hi-Lite's improper refusals to answer and produce competent witnesses are the subject of Barn Light Electric's pending Motion to Compel Deposition of Defendants Hi-Lite and Barnlight Originals (Dkt. 134).

Contrary to the law of the Eleventh Circuit, the Magistrate committed clear error by: (i) failing to apply the correct standard of "arguable relevance" in concluding that the discovery sought by Plaintiff, concerning the financial and business records of Defendant Hi-Lite, was irrelevant to Barn Light Electric's multiple Lanham Act damages claims; (ii) preempting issues reserved for this Court, namely, whether Hi-Lite violated the Lanham Act, and if so, whether Barn Light Electric is entitled to Hi-Lite's profits for such violations; and (iii) over-generalizing separate interrogatories and requests for production of widely varying breadths as a single "request for essentially all of Hi-Lite's records."  Order at p. 2.

The Magistrate's holding is clearly erroneous, contrary to law and highly prejudicial to Barn Light Electric.  The Magistrate's refusal to grant discovery that is unquestionably relevant and necessary to establish Barn Light Electric's damages claims, including Hi-Lite's profits, has deprived Plaintiff of the ability to fully develop its claims and defenses in this matter.  Without such discovery, Barn Light Electric's expert will be precluded from preparing a complete damages report.  Moreover, the Magistrate's holding also effectively deprives Barn Light Electric of *any* meaningful investigation of documents relevant to Hi-Lite's, Barnlight Originals, Inc.'s ("Barnlight Originals" or "BLO"), or Ohai's (collectively, "Defendants") claims and defenses regarding their sales, profits and the true nature of their relationship.[2]

---

[2] As alleged in the TAC, and further detailed in Plaintiff's Motion, Defendants' relationship is totally blurred. *See, e.g.*, TAC, ¶ 111 ("Defendant Ohai is knowingly and deliberately directing and controlling the infringing activities of Hi-Lite and BLO.").  Defendant Jeffrey Ohai is a Vice President of Defendant Hi-Lite, which is owned by his mother, Dorothy Ohai.  Dorothy Ohai Depo. [Dkt. S-138], 16:12-23.  Mr. Ohai is the owner of Barnlight Originals. *Id.*, 63:7-10.  BLO is a shell company that sells Hi-Lite products using only informally "leased" employees from Hi-Lite and operates out of a tiny room in Hi-Lite's facilities. *Id.*, 67:9–70:17.  In fact, Jeffrey Ohai—signing with his title as VP of Hi-Lite—engaged a third-party to create the accused website.  Jeffrey Ohai Depo. [Dkt. S-138], 33:11–34:2; 73:8–74:22; and 79:13–81:9.  Hi-Lite paid for, and directly profits from, BLO's sales of Hi-Lite products through the accused website.  Dorothy Ohai Depo. [Dkt. S-138], 73:15–76:14.  Of course, given Hi-Lite's refusal to produce documents, Barn Light Electric has not yet been able to marshal the additional documentary evidence from Hi-Lite's business and financial records to fully develop its claims on these points and others.

Accordingly, Barn Light Electric files its objections to the Order and respectfully requests that this Court reverse the Magistrate's Order and grant Barn Light Electric the discovery requested, its request for sanctions, including attorney's fees and costs associated with the filing of its motion, and any and all other relief as deemed proper or just by this Court.

## OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(a), Barn Light Electric respectfully objects to the following portions of the Magistrate's Order of November 24, 2015:

1.      The refusal to compel production of documents responsive to Barn Light Electric's First Set of Interrogatories number 2, and Second Set of Interrogatories number 15, as set forth below together with objections raised by Defendants.

### Plaintiff's First Set of Interrogatories

**INTERROGATORY #2:** As to each product promoted, sold, or distributed in connection with the BARNLIGHT ORIGINALS marks, please provide the following information:
a. the number of units sold, and to whom the units were sold;
b. the sales prices of each unit;
c. the gross income received from sales of these units;
d. the net income received from sales of these units;
e. the profits received from sales of these units; and
f. an itemized list of the fixed and variable costs associated with the manufacture, production, marketing, advertising, and selling of these units. A complete response to this interrogatory will identify each entity that promotes, sells, or offers for sells Defendants' products and include all of the information in (a) through (f) above.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 33(d), Barnlight Originals will provide documents, to the extent any exist, at a mutually agreeable time and place from which the information can be gathered.

### Plaintiffs Second Set of Interrogatories

**INTERROGATORY NO. 15:** Please state Hi-Lite's total annual volume of sales of all Hi-Lite products (including, but not limited to, products sold under any mark or brand that Hi-Lite claims to own, including Barnlight Originals) to all of its purchasers (including, but not limited to, Barn Light Electric) in each year from 2004 through 2015 (to date), in both total annual revenues and total unit sold. In responding to this interrogatory, please specify how much of the total annual revenues and total annual units sold in each year was attributable to sales of products sold under a given brand or mark that Hi-Lite claims to own, including Barnlight Originals.

**RESPONSE TO INTERROGATORY NO. 15:** Pursuant to Fed. R. Civ. P. 33(b)(4), Defendants object to this request as being irrelevant, overly broad, burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Hi-Lite has never owned Barnlight Originals.

2.    The refusal to compel production of documents responsive to Barn Light

Electric's third requests for production numbers 53-56 and 64, as set forth below together with

objections raised by Defendants.

**Barn Light Electric's Third Requests for Production**

**REQUEST NO. 53:**
All audited, prepared, and/or reviewed financial statements for Barnlight Originals, and Hi-Lite including but not limited to: (i) Income statements / profit & loss statements, (ii) balance sheets, and (iii) cash flow statements.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 34(b), Defendants object to this request as being overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Defendants also object to this request as irrelevant to the extent it relates to Hi-Lite. Defendants further object to this request to the extent that it seeks information protected by attorney-client privilege and/or the work product doctrine. Subject to the foregoing general and specific objections, Barnlight Originals will produce responsive, non-privileged documents, to the extent any exist that have not previously been produced, at a mutually agreeable place and time.

**REQUEST NO. 54:** All internally generated profit and loss or income statements for each Barnlight Originals and Hi-Lite business unit or division which sells the products at issue in this litigation.
**RESPONSE:** [SAME RESPONSE]

**REQUEST NO. 55:** All data and/or documents containing Barnlight Originals and Hi-Lite sales transaction data, including: product/model number, description, gross sales, net sales, returns, cost of sales, units sold, customer name and shipping location.
**RESPONSE:** [SAME RESPONSE]

**REQUEST NO. 56:** Summary documents from which it is possible to determine the types and amounts of costs or expenses incurred by Barnlight Originals, Hi-Lite and Ohai in connection with the creation, production, performance, and delivery of products at issue.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 34(b), Defendants object to this request as being overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Defendants also object to this request as irrelevant to the extent it relates to Hi-Lite and Mr. Ohai. Defendants further object to this request to the extent that it seeks information protected by attorney-client privilege and/or the work product doctrine. Subject to the foregoing general and specific objections, Barnlight Originals will produce responsive,

non-privileged documents, to the extent any exist that have not previously been produced, at a mutually agreeable place and time.

**REQUEST NO. 64:**  All sales, revenue, and/or profit forecasts or projections generated by Barnlight Originals and Hi-Lite in connection with products at issue in this litigation.

**RESPONSE:**  Pursuant to Fed. R. Civ. P. 34(b), Defendants object to this request as being overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Defendants further object to this request to the extent that it seeks information protected by attorney-client privilege and/or the work product doctrine. Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents, to the extent any exist that have not previously been produced, at a mutually agreeable place and time.

      3.     The refusal to compel production of documents responsive to Barn Light Electric's fourth requests for production numbers 10, 16 and 31, as set forth below together with objections raised by Defendants.

**Barn Light Electric's Fourth Requests for Production**

**REQUEST NO. 10:** All documents relating to the manufacture, including the cost and method of manufacture, of each completed product, and each component part of each completed product, asserted against BLE as part of Defendants' trade dress infringement claims in this litigation.

**RESPONSE:**  Pursuant to Fed. R. Civ. P. 34(b), Defendants object to this request as being overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Defendants object to the request as irrelevant to the extent it relates to Barnlight Originals and Jeffrey Ohai. Defendants further object to this request to the extent that it seeks information protected by attorney-client privilege and/or the work product doctrine. Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents, to the extent any exist that have not previously been produced,  at  a mutually agreeable place and time.

**REQUEST NO. 16:**  All documents showing damages suffered by Defendants in connection with the allegations made in the Second Amended Counterclaims against BLE.
**RESPONSE:**  [SAME RESPONSE]

**REQUEST NO. 31:**  All documents used or to be relied upon by Defendants in calculating or ascertaining the damages allegedly sustained by Hi-Lite due to BLE's allegedly false and misleading advertisements.
**RESPONSE:** [SAME RESPONSE]

     In support, Barn Light Electric states as follows:

<u>**MEMORANDUM OF LAW**</u>

**I.      STANDARDS FOR REVIEW OF A MAGISTRATE JUDGE'S ORDER**

Under Federal Rule of Civil Procedure 72(a), a party may object to a Magistrate's order on a non-dispositive, pre-trial matter within fourteen days after service of the order.  Fed. R. Civ. P. 72(a).  The district judge in the case "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to the law."  *Id*.; *see also* 28 U.S.C. § 636(b)(1)(A).  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Barber v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgets & Helpers*, 778 F.2d 750, 754 (11th Cir. 1985); *see also Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013), quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997).  A Magistrate's order "is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id.*

A Magistrate cannot determine the issues expressly excluded from 28 U.S.C. § 636(b)(1)(A) without the consent of the parties.  *See* 28 U.S.C. § 636(c).  In the present case, the parties have not consented to a trial by the Magistrate, thus dispositive determinations are reserved exclusively to the Court.

**II.     THE THRESHOLD FOR RELEVANCY SET FORTH IN FED. R. CIV. P. 26(b)(1) IS LOW AND THE INQUIRY TURNS ON THE COMPLAINT AND DEFENSES THERETO**

Federal Rule of Civil Procedure Rule 26(b)(1) generally permits parties to "obtain discovery regarding any non-privileged matter that is relevant to any parties' claim or defense." FED.R.CIV.P. 26(b)(1).  "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002).  Courts interpret relevancy

liberally and "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Herbert v. Lando,* 441 U.S. 153, 177 (1979). Relevant information need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. *Shire Dev. LLC v. Mylan Pharm. Inc.*, No. 8:12-CV-1190-T30-AEP, 2013 WL 6858319, at *3 (M.D. Fla. Dec. 30, 2013). "Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action." *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01–0392–CIV–GOLD, 2001 WL 34079319 * 2 (S.D. Fla. Nov. 1, 2001). Rule 26, quite simply, "sets forth a very low threshold for relevancy," and "[t]hus, . . . court[s are] inclined to err in favor of discovery rather than against it." *Kipperman v. Onex Corp.*, No. 1:05-CV-1242-JOF, 2008 WL 1902227, at *10 (N.D. Ga. Apr. 25, 2008).

### III. IN THE ELEVENTH CIRCUIT THE DISCOVERY OF TAX RETURNS AND OTHER FINANCIAL INFORMATION REQUIRES ONLY A SHOWING OF ARGUABLE RELEVANCE

In the Eleventh Circuit, the discovery of a party's financial records, including tax returns, requires only that the request is "arguably relevant" to a parties' claims and defenses. *Maddow v. Procter & Gamble Co., Inc.* 107 F.3d 846 (11th Cir. 1997); *see also Erenstein v. S.E.C.,* 316 Fed. App'x 865, 869-70 (11th Cir. 2008) (per curiam) ("[I]n civil cases, we have not required a showing of compelling need before tax information may be obtained by a party in discovery, but instead have determined that such information need be only ***arguably relevant***." citing *Maddow*, 107 F. 3d. at 853 (emphasis added)). District Courts throughout the Eleventh Circuit have consistently applied the standard outlined in *Maddow* and *Erenstein* to grant discovery of tax returns and other sensitive financial information including financial statements,

profit and loss statements and general ledgers.  *See e.g.*, *Miller v. MP Global Producs, LLC*, No. 12-00747-KD-N, 2014 WL 1017887, at *2 (S.D. Ala. March 17, 2014) (discussing Eleventh Circuit case law at length, applying *Maddow* and *Erinstein* in granting discovery of "[a]ll year-end financial statements, federal and state income tax returns, profit and loss statements and general ledgers with respect to [Defendant] and any of its subsidiaries, parent corporations, or related entities from 2009 until the present date."  *Id.* at *1.)

*Maddow* and *Erenstein*, affirm that the low threshold of "arguable relevance" is the sole consideration and controlling standard in the Eleventh Circuit in determining whether to grant discovery of tax returns and other financial information arguably relevant to a party's claims and defenses.  Indeed, *Maddox* and *Erenstein* have been consistently cited for this proposition in the Middle District of Florida and throughout the Eleventh Circuit—including in Lanham and Copyright Act cases.  *See, e.g., Coach, Inc. v. Visitors Flea Market, LLC*, No. 6:11-CV–1905–Orl19-TBS, 2013 WL 5770598, at *2–3 (M.D. Fla. Oct. 24, 2013) (ordering production of Defendants' financial records in a suit concerning damages for secondary liability under the Lanham and Copyright Acts and further noting "[t]he Eleventh Circuit has not . . . recognized a special privilege for tax records."); accord *Soliday v. 7-Eleven, Inc.*, No. 2:09-CV-807-FtM-29SPC, 2010 WL 4537903, at *1–2 (M.D. Fla. Nov. 3, 2010); *Coach Inc. v. Swap Shop, Inc.*, No. 12–60400–CIV., 2013 WL 4407064 (S.D. Fla. Aug. 13, 2013) (disgorgement of Defendants' profits for vicarious/alter ego liability in copyright infringement case); *Walker v. Americare Radiographics, Inc.*, No. 10–60340–CIV, 2010 WL 5437254, at *6 (S.D. Fla. Dec. 27, 2010); *Austrum v. Federal Cleaning Contractors, Inc.*, No. 14–81245–CIV–Marra, 2015 WL 6555081, at *3 (S.D. Fla. October 28, 2015); *Gutescu v. Carey Int'l, Inc.*, 2003 WL 25589035, at *3 (S.D. Fla. June 25, 2003) ("Plaintiff must produce her complete tax returns

.... The[y] are clearly relevant to mitigation of damages"); *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, No. 06-20976-CIV, 2008 WL 728540 at *3 (S.D. Fla. March 17, 2008) (disgorgement of Defendants' royalty profits for misappropriation of trademark rights).

Here, pursuant to Rule 26(b)(1) and the Eleventh Circuit's controlling precedent in *Maddox* and *Erenstein*, the Magistrate's Order must be reversed. In denying Plaintiff's Motion the Magistrate erroneously applied a heightened standard of law and failed to undertake the appropriate analysis of each of Plaintiff's discovery requests pursuant to the standard set forth in *Maddox* and *Erenstein*. Instead, the Magistrate summarily denied Plaintiff's Motion in its entirety on the basis that it failed "to demonstrate such information [is] relevant to **any claims or defenses**." Order at pp. 2-3 (emphasis added). However, there can be no question that Plaintiff's discovery requests are, at minimum, directly relevant to its assessment of Defendant Hi-Lite's profits pursuant to its Lanham Act claims for direct trademark infringement, unfair competition and cybersquatting as set forth and factually supported in its TAC. Indeed, Plaintiff's discovery requests far exceed the threshold of arguable relevance established by the Eleventh Circuit and, were it applicable, would even meet the standard for compelling need in this case. *See e.g., Miller*, 2014 WL 1017887, at *4 (S.D. Ala. Mar. 17, 2014).

At the hearing on Plaintiff's Motion to Compel, Defendants incorrectly argued that Plaintiff must show a compelling need for discovery of Defendant Hi-Lite's business and financial records. *See* Transcript of Motion [Dkt. 141], p. 61, ln. 1-9. Defendants' argument is incorrect as a matter of law. Plaintiff repeatedly urged the Court to consider the relevancy of its discovery requests pursuant to Rule 26(b)(1) in view of Plaintiff's *direct* claims against Hi-Lite for unfair competition, trademark infringement and cybersquatting, as well as its defenses to Defendants' Counterclaims. *See* Transcript of Motion [Dkt. 141], p. 21, ln.1 – p. 33, ln. 2; p. 59,

ln. 7 – p. 61, ln. 9.   However, instead of applying the "arguably relevant" standard set forth in *Maddox* and *Erenstein* to determine the scope of Plaintiff's discovery requests, the Magistrate committed clear error by applying a heightened standard of relevancy, virtually ignoring the well plead Counts for direct trademark infringement, unfair competition and cybersquatting contained in Plaintiff's TAC.   Order at pp. 2-3; *see also* Transcript of Motion [Dkt. 141], p. 16, lns. 2-6; p. 59, ln. 7 – p. 61, ln. 9.   Because there can be no question that Plaintiff's discovery requests are arguably relevant to its claims and defenses in this case, this Court should apply the correct standard of law and grant Plaintiff's requested discovery.   *See United States ex rel. Walker v. R & F Props. of Lake County, Inc.*, 433 F.3d 1349, 1358–59 (11th Cir. 2005) ("if, in limiting the ... scope of discovery, the district court 'made a clear error of judgment ... or ... applied an incorrect legal standard,' we must reverse that decision.") (*quoting Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d at 1159 (11th Cir. 2004)).

Finally, Courts applying *Maddox* and *Erenstein* have noted that confidentiality provisions within a protective order are fully capable of providing sufficient safeguards in producing sensitive financial information to a direct competitor.   *See Miller*, 2014 WL 1017887, at *6 ("[T]he court-adopted protective order, which allows for the production of those records under the designation "attorney's eyes only," should provide the requisite protection against dissemination to its competitors.").   Moreover, Defendants admit that the Protective Order entered in this case would address their concerns in producing financial and business records if so compelled.   *See* Transcript of Motion [Dkt. 141], p. 61, lns. 1-9.   In producing its comprehensive financial records from 2008 through present, pursuant to Defendants' broad financial discovery requests, Plaintiff also relied upon the Protective Order and appropriately

designated its production of sensitive financial documents as "Attorney's Eyes Only." Defendants can, of course, avail themselves of the same protections.

## IV.   BARN LIGHT ELECTRIC'S REQUESTS FOR FINANCIAL AND BUSINESS DOCUMENTS FROM HI-LITE ARE RELEVANT TO ITS LANHAM ACT DAMAGES CLAIMS

The Magistrate committed clear error by holding that Barn Light Electric's requests for production are all overbroad and seek irrelevant information.  *See* Order, p. 2.

### A.  Discovery of Accused Infringer's Financials is Proper in Lanham Act Claims

The Magistrate held that Barn Light Electric's discovery requests are "irrelevant."  Under Eleventh Circuit law, however, financial information is squarely relevant to damages resulting from trademark infringement and are thus discoverable. *See Burger King v. Mason*, 710 F.2d 1490, 1495 (11th Cir. 1983) (noting that the burden is on the accused infringer to provide all documents as to the elements of costs and deductions to offset an award of defendant's profits associated with the infringement); *see also Wheel Pros, LLC v. Starr Wheel Group, Inc.*, 2010 WL 3815515, at *3 (S.D. Fla. Sept. 27, 2010) (compelling production of Plaintiff's total sales revenue and net income because they are "relevant and discoverable" to damages for claims of federal trademark infringement).

The Eleventh Circuit and numerous other courts have found an expansive number of documents as relevant to damages in Lanham Act and state trademark matters.  For example, the Eleventh Circuit has allowed discovery of tax returns and other financial information to assist in assessing sales information. *See Maddow,* 107 F.3d at 853  (affirming the district court's decision to compel discovery of tax records, finding it "was not an abuse of discretion" and also finding that the tax records were "arguably relevant to the case."); *see also Platypus Wear, Inc. v. Clarke Modet & Co.*, 515 F. Supp. 2d 1288 (S.D. Fla. Mar. 17, 2008) (compelling tax returns

because sensitivity regarding their confidentiality is mitigated by entry of a stipulated protective order); *Koninklijke Philips Elec. N.V. v. KXD Tech., Inc.*, 2007 WL 631950 (D. Nev. Feb. 26, 2007), *order clarified*, 2007 WL 879683 (D. Nev. Mar. 20, 2007) (court granted plaintiff's motion to compel the production of documents, including tax returns and prior litigation or seizure orders, since such discovery related to defendants' willfulness and a potential award of profits).  Courts also consider a defendant's bank accounts relevant to show revenues in Lanham Act matters.  *Gucci Am., Inc. v. Weixing Li*, No. 10-CV-4974-RJS, 2011 WL 6156936, at *5-6 (S.D.N.Y. Aug. 23, 2011), *vacated on other grounds Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) (noting that information related to a defendants' bank accounts is likely to provide the most effective measure of the revenues generated by defendants in the alleged contravention of the Lanham Act).

Additionally, information sufficient to quantify total revenues based upon sale of implicated goods is relevant in assessing trademark infringement damages.  *See Select Comfort Corp. v. Sleep Better Store, LLC*, No. 11-CV-621-JNE-JSM, 2012 WL 10036104, at *10 (D. Minn. Oct. 18, 2012) ("defendant shall provide to plaintiff the revenues from the sale of its products from 2005 to the present"); *see also Masters v. UHS of Del., Inc.*, No. 4:06-CV-1850-DJS, 2007 WL 3120015, at *2 (E.D. Mo. Oct. 23, 2007) (ordering accused infringer to provide breakdown of total revenues).

Courts have even found *backup* documentation for summaries of information relevant to a damages inquiry in a Lanham Act case.  *Best W. Int'l Inc. v. Bhagirath*, No. 12-0121 (M.D. La. May 14, 2013) ("Plaintiff's claim for disgorgement of profits entitles it to inquire into what profits were in fact made, and to the production of sufficient backup documentation to allow it to test any figures listed on tax returns, profit and loss statements, or the like.")  *Lee Valley Tools,*

*Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254 (W.D.N.Y. Jan. 29, 2013) is instructive. There, the Court considered relevant financial documents, namely summaries of costs associated with and revenues generated by Veritas's sales of hand planes and blades. The Court held that the summaries would be used by Veritas to defend against IBC's infringement damages calculation. Thus, the Court found that Veritas had a duty to disclose these documents, as well as the underlying data on which the summaries are based.

Hi-Lite implicitly and necessarily concedes that Barn Light Electric's discovery requests are relevant and discoverable. In comparison to the discovery requests at issue, Hi-Lite sought far more expansive financial discovery regarding its Lanham Act counterclaims. For example, Hi-Lite's Third Requests For Production expressly requested Barn Light Electric's income and balance sheets (Req. No. 35); all income statements and balance sheets (Req. No. 36); all gross annual revenues from Sept. 4, 2012 through present (Req. No. 37); and all Federal and State tax returns from the inception of the company (Req. No. 39). Further, as to all of Barn Light Electric's light fixtures (including those not in suit), Hi-Lite requested gross income, net income, profits, fixed and variable costs associated with manufacture, production, marketing, advertising or selling (*e.g.*, Req. Nos. 98-115); all invoices (Req. No. 116); and all purchase orders (Req. No. 118). To be sure, Hi-Lite has considered the scope of discovery to be so broad as to include the total value of all of Barn Light Electric's assets (Req. No. 147). *See* Ex. 1. Barn Light Electric, recognizing the broad scope of the Federal Rules of Civil Procedure, produced such documents pursuant to this Court's Protective Order (Dkt. 40).[3]

---

[3] In stark relief to Hi-Lite, Barn Light Electric actually produced its financials, as did Bryan and Donna Scott. As emphatically noted during the hearing on the Motion to Compel, Hi-Lite argues on the basis of an outrageous double standard. That is, Barn Light Electric's financial documents were relevant for Hi-Lite to prepare its claims and defenses, but the exact categories of documents are somehow irrelevant and overbroad when requested by Barn Light Electric.

Simply put, the ruling that Barn Light Electric's requests for financial documents were irrelevant is clearly erroneous.

### B. Hi-Lite Cannot Avoid Discovery of Its Financials By Ignoring The Express Language of the Operative Complaint or Hiding Behind BLO

Hi-Lite erroneously argued in its opposition that its financial documents are not discoverable because Hi-Lite is not directly accused of infringement, and secondary liability would not result in an award of Hi-Lite's profits, only BLO's. *See* Dkt. 113 at 10-11 ("Should Barn Light Electric prevail on its claim against Barnlight Originals, Hi-Lite would only be liable, if found to be a contributory or vicarious infringer, for fulfillment of a judgment measured by Barnlight Originals' profits resulting from the infringement." *Id.*). Hi-Lite's willful blindness of Barn Light Electric's direct claims against it as well as Barn Light Electric's and The Scott's right to seek discovery relating to its defenses, does not obviate Hi-Lite's responsibility to produce documents, provide discovery responses and deposition testimony in this litigation.

First, Barn Light Electric's TAC states Lanham Act infringement and unfair competition claims *directly* against Defendants, expressly including Hi-Lite. *See* TAC, Counts I, III, VI, VII and VIII. For example, paragraph 128 of the TAC states:

> **Defendants** acts tend to represent falsely that the **Defendants'** products are legitimately connected with Barn Light Electric, tend to describe falsely that **Defendants'** products emanate from or are sponsored or approved by Barn Light Electric; and tend to designate falsely that Defendants' products originate from Barn Light Electric, all of which constitute violations of 15 U.S.C. § 1125(a).

*Id*. (emphasis added). The TAC preamble, of course, defines "Defendants" to include Hi-Lite. Entire sections of the complaint refer to Hi-Lite's conduct violating the Lanham Act. TAC, *e.g.*, ¶¶ 55-60, 61-74, and 75-83. Ultimately, should Barn Light Electric prove at trial that Hi-Lite is liable for such infringement and unfair competition, Barn Light Electric will be entitled to

disgorgement of associated profits by presenting evidence of Hi-Lite's gross revenues regarding the infringing conduct.   This entitles Barn Light Electric to fulsome discovery of Hi-Lite's financials.

Second, Barn Light Electric's *indirect* infringement claims likewise justify its discovery requests for Hi-Lite's financials.  The law is well-settled that the doctrine of joint and several liability applies to claims arising under the Lanham Act and Florida law for trademark infringement and unfair competition.  *See, e.g., Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991) (joint and several liability applies to Lanham Act claims).  Each person in the chain of distribution of the infringing product is *equally liable* to plaintiff for any and all harm or benefits that were earned at Plaintiff's expense. *Id.; see also Inwood Labs*, 456 U.S. at 853-54 ("the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.").  Thus, a defendant is responsible for the monetary benefits it received and other parties received from infringing conduct that the defendant unlawfully contributed to - especially where the defendant is a willful infringer and a contributory infringer and acted like partners with another defendant. *See Belford, Clarke & Co. v. Scribner*, 144 U.S. 488, 507-08 (1892) (printer and publisher jointly and severally liable for disgorgement of both parties' profits because they were "practically partners"); *Harris v. Miller*, 50 U.S.P.Q. 625 (S.D.N.Y. 1941) (defendant jointly and severally liable for the unjust enrichment profits that other defendant earned on account of willful copyright infringement).  As Judge Cacheris wrote in *Black & Decker*, the "trial court's primary function is to make violations of the Lanham Act unprofitable to the [violating] party." *Black & Decker Inc. v. Pro-Tech Power, Inc.*, 26 F. Supp. 2d 834, 855 (E.D. Va. 1998).

Otherwise, an infringer manufacturer could infringe with impunity by creating a shell online retailer to sell infringing products, while the manufacturer kept profits and transferred costs to the online retailer. The net effect would be that the online retailer would not be profitable, and profits to surrender for its infringing acts, even while the manufacturer retained the profits from the infringement. That is precisely what Hi-Lite argues here. It takes the position that it need not produce documents regarding its profits on sales to BLO because such profits would not constitute damages under the Lanham Act *even if it is found liable for contributory or vicarious infringement*. *See* Opposition [Dkt. 113], p. 10.

Because Barn Light Electric made claims for direct and indirect infringement against Hi-Lite in its Complaint and included factual support for such claims, it is entitled to discovery regarding Hi-Lite's profits.

### C. Barn Light Electric's Requests Are Not "Requests For Essentially All of Hi-Lite's Records"

Relevance "is construed more broadly for discovery than at trial." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987); *see also Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985). Whether the confidential information being sought "is 'probative' is of no concern [during discovery]. What counts is whether the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 1212 (internal quotations omitted). "Where relevance is in doubt, the rule indicates that the court should be permissive." *Id.*, citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986); *Negotiated Data Sols. LLC v. Dell, Inc.*, No. C09-80012MISC-JF-HRL, 2009 WL 733876, at *2 (N.D. Cal. Mar. 17, 2009), citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006).

Request numbers 54-56 of Barn Light Electric's Third Requests for Production are likely to lead to the discovery of admissible evidence of Hi-Lite's sales of products sold by Hi-Lite to Barn Light Electric as well as BLO.  The request for profits is plainly relevant to Barn Light Electric's damages claims because the Lanham Act expressly provides relief for trademark infringement in the form of an infringer's profits.  *See* 15 U.S.C. § 1117(a).  Data concerning the sales transactions between Barnlight Originals and Hi-Lite, along with their net sales, cost of sales, cost of manufacture, and expenses related to the products at issue are all highly relevant because § 1117(a) requires BLO to prove all elements of costs or deductions claimed.  *Id.*; *see also Burger King*, 710 F.2d. at 1495.  Thus, the ruling that Barn Light Electric's requests for financial documents were irrelevant is clearly erroneous.

## V.    LIMITING BARN LIGHT ELECTRIC'S DISCOVERY OF HI-LITE'S RELEVANT FINANCIAL DOCUMENTS TO THREE FIGURES ON A SINGLE PAGE CONSTITUTES CLEAR ERROR

The Magistrate was satisfied that "according to Hi-Lite, it has produced all financial documents relating to its business with Hi-Lite and BLO."  Order, p. 3.  That conclusion was no doubt influenced by Hi-Lite's repeated and highly misleading statements that it produced all financial documents relating to its business with BLO and Plaintiff.  Specifically, Hi-Lite stated at the hearing:

> Mr. Colitz:  The idea that we have turned over no financials of Hi-Lite is not correct… *we've given them summary data of all the transactions between Hi-Lite and Barnlight Originals.*

Transcript of Motion [Dkt. 141], p. 23 (emphasis added).  Clearly, Hi-Lite's representation on the record misled the Magistrate to believe that some legitimate amount of production of documents had been produced by Hi-Lite regarding its transactions with BLO.

The truth is that the so called "summary data of all the transactions" was this:

| | A | B |
|---|---|---|
| 1 | HI-LITE SALES TO BARN LIGHT ORIGINALS  2015 to june 30th | $█████ |
| 2 | HI-LITE SALES TO BARN LIGHT ORIGINALS  2014 | $█████ |
| 3 | HI-LITE SALES TO BARN LIGHT ORIGINALS  2013 | $█████ |

*See* Exhibit A.  That's it.  In effect, the sum total of Hi-Lite's production about its financials relating to BLO in a case with more than thirty counts is encapsulated in three numbers.  On its face, the Magistrate's conclusion that Barn Light Electric must limit itself to this level of production from Hi-Lite (coupled with whatever documents BLO produced) to evaluate multiple damage claims amounts to clear error.  *See Beach Mart, Inc. v. L & L Wings, Inc.*, No. 2:11-CV-44-F, 2012 WL 4925724 (E.D.N.C. Oct. 16, 2012) ("Defendant should not have to rely on plaintiff's one-page summary of financial information, created in connection with this litigation, without being able to check behind the summary and confirm the accuracy of the underlying data.").  Indeed, in this case, there is simply no reason why Barn Light Electric should be entitled to anything less than the level of damages discovery routinely granted in Lanham Act cases.

## VI. THE MAGISTRATE COMMITTED CLEAR ERROR BY, IN EFFECT, GRANTING PARTIAL SUMMARY JUDGMENT ON A LIABILITY OR DAMAGES THEORY

The Magistrate's reliance on disputed, conclusory assertions made by Defendants as undisputed material facts in summarily denying Plaintiff's Motion was clearly erroneous.  For example, in the Order, the Magistrate relies upon "Defendants' [conclusory] representation[s] on the record that no hidden relationship exists between Hi-Lite and BLO, and . . . discovery failed to produce any evidence of direct infringement by Hi-Lite" to deny Plaintiff's Motion.  Order at p. 3.  In so finding, the Magistrate in effect granted partial summary judgment to Defendant with respect to Plaintiff's liability and damages theories in this action.  However, the discovery motion before the Magistrate was neither a motion for partial summary judgment, motion to

dismiss, nor a motion *in limine* on Barn Light Electric's damages theories, and thus none of the safeguards or standards for such a dispositive motion were applied.[4]

Hi-Lite's conclusory assertions to the Court are simply false and cannot form the basis of the Magistrate's ruling as to the relevancy of Plaintiff's discovery requests.  Through its third-party discovery, including the sworn deposition testimony of a former Hi-Lite employee, George Gonzalez, and the company that Hi-Lite contracted with to develop and design the BLO brand, logo and website, Bold Array, LLC, Plaintiff has indeed discovered compelling facts supporting its claims of direct trademark infringement, unfair competition and cybersquatting against Defendants Hi-Lite and Ohai.  For example, the sworn testimony of George Gonzalez and Bold Array, LLC provides factual support to Plaintiff's claims by *inter alia* strongly suggesting that sales to customers who intended to purchase products from Plaintiff were actively diverted, at Hi-Lite's direction, from BLO to Hi-Lite.  Plaintiff simply cannot confirm the occurrence of such instances without discovery of Hi-Lite's business and financial records.  Moreover, the testimony of George Gonzalez and Bold Array, LLC clearly points to potential comingling of funds between Hi-Lite and BLO.  For example, Bold Array, LLC produced documents and testimony that establish that Hi-Lite paid for, and directed the design and development of the BLO brand, logo and website.  Jeff Ohai's own testimony confirms that employees paid by Hi-Lite continue to operate the BLO website and process orders.  Furthermore, the testimony of Bold Array and George Gonzalez make clear that Hi-Lite directed the copying of Barn Light Electric's website,

---

[4] For example, when ruling on a motion for summary judgment, all of the non-movant's evidence is to be credited, and all justifiable inferences are to be drawn in the non-movant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (on a motion for summary judgment, the court views the evidence and any disputed factual issues in the light most favorable to the party opposing the motion). In deciding whether summary judgment is warranted, the court "must view the evidence presented through the prism of the substantive evidentiary burden" that would inhere at trial.  *Anderson*, 477 U.S. at 254.  A summary judgment motion must also be accompanied by findings of fact and conclusions of law, and an opposing party has an appropriate opportunity to file an opposition brief on the merits, not merely the rebuttal allowed for a discovery motion.  None of these procedural safeguards were applied.

including proprietary and distinctive elements, with the intention of causing actual confusion to consumers.   Moreover, Mr. Gonzalez' testimony confirms Hi-Lite's cybersquatting activities, direct trademark infringement and numerous instances of acts which clearly establish that Hi-Lite intentionally engaged in acts unfair competition with Barn Light Electric.

In view of the evidence it uncovered, Plaintiff propounded specific discovery requests upon Hi-Lite in an effort to further develop its claims and defenses, including discovery requests specifically tailored to gain the financial information and business records it needs from Hi-Lite to develop its damages theories.   However, Hi-Lite has refused to produce its financial and business records.   Hi-Lite cannot now rely upon its own refusal to provide discovery to argue that the absence of such evidence weighs against granting Plaintiff's Motion.   Hi-Lite is fully aware that there is no other source from which its internal financial and business records may be discovered and it should not be rewarded for circumventing the Federal Rules.   In short, the Magistrate's reliance on Hi-Lite's conclusory and self-serving assertion to form the basis of a denial of Plaintiff's motion is clear error and defeats the very purpose of Rule 26(b)(1).   As the Eleventh Circuit held in *Maddox* and *Erenstein*, the sole consideration in determining the discovery of financial records is whether they are arguably relevant to the parties' claims and defenses.   That standard, although not applied by the Magistrate, is clearly met.   Accordingly, this Court should reverse the Magistrate's Order and grant Plaintiff's requested relief.

Moreover, a Magistrate cannot determine the issues expressly excluded from 28 U.S.C. § 636(b)(1)(A) without the consent of the parties.   *See* 28 U.S.C. § 636(c).   In the present case, the parties have not consented to a trial by the Magistrate.   Thus dispositive determinations are reserved exclusively to the Court.   The Magistrate's ruling on the issues of direct infringement by Hi-Lite and the availability of damages for Barn Light Electric's indirect infringement claims

were in effect dispositive Barn Light Electric's legal theories of liability and damages. Moreover, reaching these issues as a predicate to allowing discovery deprived Barn Light Electric of its right to prepare its claims and defenses as contemplated by the Federal Rules, and thus constituted clear error.

Accordingly, the Magistrate's conclusion here that the sales of the products accompanying the sale of infringing products could not form part of the basis for a damages claim was inappropriate. The Magistrate abused his discretion in making a relevancy determination specifically reserved for this Court. The Magistrate also abused his discretion, and committed legal error, in concluding that "discovery failed to produce any evidence of direct infringement by Hi-Lite." Order, p. 3. Pursuant to Fed. R. Civ. P. 72(a), Plaintiff hereby appeals the Magistrate's denial of the Motion to Compel.

## CONCLUSION

Based on the foregoing, the November 24, 2015 Order (Dkt. 175) entered by Magistrate Judge Porcelli is clearly erroneous and contrary to law as it relates to Plaintiff's Motion. Accordingly, Plaintiff respectfully requests that this Honorable Court reconsider Magistrate Judge Porcelli's Order denying Plaintiff's Motion, sustain its objections set forth herein, and grant Plaintiff's Motion.

Dated:  December 7, 2015             Respectfully submitted,

                                     /s/Alejandro J. Fernandez

                                     By: Alejandro J. Fernandez
                                         Board Certified in Intellectual Property Law
                                         FL. Bar No.: 32221
                                         E-mail: AFernandez@FeldmanGale.com
                                         Gregory L. Hillyer, Esq
                                         Fla. Bar No. 682489
                                         E-mail: GHillyer@FeldmanGale.com
                                         Stephen J. Leahu, Esq.
                                         FL Bar No. 54037

E-mail: SLeahu@FeldmanGale.com
Joseph R. Sozzani, Esq.
*Admitted Pro Hac Vice*
E-Mail: JSozzani@FeldmanGale.com
Matthew N. Horowitz, Esq.
Fla. Bar No. 98564
E-mail: MHorowitz@FeldmanGale.com
**FELDMAN GALE, P.A.**
400 N. Tampa Street, Suite 2830
Tampa, FL 33602
Telephone No. (813) 374-8890
Telefacsimile No. (305) 358-3309

***Counsel for Plaintiff, Counterclaim-***
***Defendants and Third Party Defendants***

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 7th day of December 2015, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/* Alejandro J. Fernandez
Alejandro J. Fernandez

## SERVICE LIST

**Barn Light Electric Company, LLC v. Barnlight Originals, Inc., et al.**
Case No.: 8:14-CV-1955-T-35AEP
United States District Court, Middle District of Florida

Michael J. Colitz, III
Trial Counsel
Email: michael.colitz@gray-robinson.com
Stephen Gregory Anderson
Email: Stephen.anderson@gray-robinson.com
**GrayRobinson, P.A.**
401 E. Jackson Street, Suite 2700
Post Office Box 3324
Tampa, FL 33601
Telephone No. (813) 273-5000
*Attorneys for Defendant/Counter-Plaintiffs*