BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,
        Plaintiff,

v.

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; and
HI-LITE MANUFACTURING COMPANY, INC.,
a Nevada corporation,
JEFFREY L. OHAI, an individual California resident,
        Defendants.
_____/

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; and
HI-LITE MANUFACTURING COMPANY, INC.,
a Nevada corporation,
JEFFREY L. OHAI, an individual California resident,
        Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,
        Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida residents,
        Third-Party Defendants.
_____/

**PLAINTIFF BARN LIGHT ELECTRIC COMPANY, LLC AND BRYAN AND DONNA
SCOTT'S *CORRECTED* MOTION FOR PARTIAL SUMMARY JUDGMENT
ON COUNTS IX-XII OF PLAINTIFF'S THIRD AMENDED COMPLAINT, AND
COUNTS II-IX AND XIII-XIX OF DEFENDANTS' SECOND AMENDED
<u>COUNTERCLAIM AND THIRD-PARTY COMPLAINT</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  SUMMARY JUDGMENT STANDARD .......................................................... 2

III.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT OF NO TRADE DRESS INFRINGEMENT BECAUSE DEFENDANTS' ALLEGED PRODUCT DESIGNS LACK SECONDARY MEANING AND ARE GENERIC AND FUNCTIONAL ............................... 3

IV.  PRODUCT SALES AND PUBLIC USE MORE THAN ONE YEAR BEFORE DEFENDANTS FILED U.S. PATENT NO. 8,556,477 INVALIDATE THE PATENT AND RENDER IT UNENFORCEABLE AGAINST BARN LIGHT ELECTRIC ........................ 17

V.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT OF NONINFRINGEMENT OF COPYRIGHT BECAUSE PLAINTIFF'S USE WAS LICENSED AND HI-LITE'S CLAIMS ARE BARRED BY THE DOCTRINE OF EQUITABLE ESTOPPEL AND THE STATUTE OF LIMITATIONS ............................... 27

VI.  PLAINTIFF IS ENTITLED TO A FINDING OF SUMMARY JUDGMENT OF NONINFRINGEMENT BECAUSE HI-LITE'S PART NUMBERS ARE NOT PROTECTABLE SUBJECT MATTER ................................................................. 39

VII. DEFENDANTS' §43 LANHAM ACT CLAIMS IMPROPERLY CONFLATE THE PROTECTIONS OF THE LANHAM ACT AND COPYRIGHT ACT ............................... 44

VIII.  CONCLUSION ............................................................................................. 45

## CORRECTION

A copy of the Plaintiff's Statement of Undisputed Facts is attached as Exhibit 14. Counsel for Plaintiff aver that each of these material facts has been already specified in Plaintiff's Motion for Partial Summary Judgment [Dkt. 165]. Exhibit 14 is being submitted for the Court's convenience. Additionally, the above Table of Contents has been corrected to properly reference the headings set forth throughout this Motion. While the numbering of the headings have been corrected, the wording has not been changed. The Table of Authorities has also been updated to reference the appropriate page numbers for the cited cases. No other corrections have been made.

# TABLE OF AUTHORITIES

## Cases

*Allen Engineering Corp. v. Bartell Industries*, 299 F.3d 1336 (Fed. Cir. 2002) ......................... 22

*AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531 (11th Cir. 1986) ........................................... 3, 5, 12, 39

*Amer. Hoist & Derrick v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984) ......................... 19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............. 2

*Arrow Fastner Co., Inc., v. Stanley* Works, 59 F.3d 384 (2d Cir. 1995) ...................................... 40

*Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008) ........................ 29, 30, 33

*Atkins v. Fischer*, 331 F.3d 988 (D.C. Cir. 2003) ......................................................................... 29

*Atlantis Info. Tech. v. CA, Inc.*, 485 F. Supp. 2d 224 (E.D.N.Y. 2007) ...................................... 32

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 753 F.2d 1557 (Fed. Cir. 1988) ................ 17

*Bayco Prods., Inc. v. Lynch*, 2011 WL 1602571 (N.D. Tex. Apr. 28, 2011) ............................... 16

*Bourne v. Walt Disney Co.*, 68 F.3d 621 (2d Cir. 1995) ............................................................. 32

*Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854 (11th Cir. 1983) ............................... 10

*Carson v. Dynegy, Inc.,* 344 F.3d 446 (5th Cir. 2003) ................................................................. 34

*Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991) ......................................................... 2

*Davis v. Tampa Bay Arena, Ltd.,* 2013 WL 3285278 (M.D. Fla. Jun. 27, 2013) ......................... 33

*Default Proof Credit Card Sys. v. Home Depot USA, Inc.*, 389 F.Supp. 2d 1325 (S.D. Fla 2004)
............................................................................................................................................. 18

*Denney v. City of Albany*, 247 F.3d 1172 (11th Cir. 2001) ............................................................ 2

*Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197 (11th Cir. 2004) ... 10, 12, 13

*Eastman Kodack Co. v. Bell & Howell Document Management Prods. Co.,* 994 F.2d 1569 (Fed.
Cir. 1993) ........................................................................................................................... 40

*Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) ........................................... 28, 30

*Epic Metals Corp. v. Souliere*, 99 F.3d 1034 (11th Cir. 1996) ............................................. 4, 13, 29

*Fennell v. Gilstrap*, 559 F.3d 1212 (11th Cir.2009) ...................................................................... 2

*Field v. Google, Inc.*, 412 F.Supp.2d 1106 (D. Nev. 2006) ................................................... 32, 35

*Filipino Yellow Pages Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143 (9th Cir. 1999) . 11

*Gaiman v. McFarlane*, 360 F.3d 644 (7th Cir. 2004) .................................................................. 38

*General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350 (Fed. Cir. 1999) ................................. 19

*Genesis Health Ventures, Inc. v. Sebelius,* 798 F.Supp.2d 170 (D.D.C. 2011) .......................... 36

*Glassbaby, LLC v. Provide Gifts, Inc.*, 2011 WL 4571876 (W.D. Wash. Sept. 30, 2011) .......... 10

*Gracen v. Bradford Exchange*, 698 F.2d 300 (7th Cir. 1983) ..................................................... 29

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) ................................................................... 29, 32

*Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, 2011 WL 4005454 (S.D. Fla. Sept. 8,
2011) ...................................................................................................................................... 4

*Heckler v. Cmty. Health Servs.*, 467 U.S. 51 (1984) .................................................................. 36

*HGI Associates, Inc. v. Wetmore Printing Co.*, 427 F.3d 867 (11th Cir. 2005) .......................... 35

*Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982 (Fed. Cir. 2007) ........ 19

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (5th Cir. 1996) .................................................................... 28

*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir. 1979) ............................... 40

*Impax Labs v. Aventis Pharmaceuticals*, 468 F.3d 1366 (Fed. Cir. 2006) ................................. 18

*In re Morton–Norwich Prods., Inc.,* 671 F.2d 1332 (C.C.P.A. 1982) ......................................... 13

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749 (11th Cir. 1997) ................................... 28, 29, 30, 32

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) .................................................................. 29

*John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir. 1983) ................................ 3

*Karlson v. Red Door Homes, LLC.*, 18 F.Supp.3d 1301 (N.D. Ala. 2014) ................................. 30

*Kennedy v. Gish, Sherwood, & Friends, Inc.*, 2015 WL 6750811 (E.D. Mo. Nov. 5, 2015) ....... 32

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997) .................... 4, 11

*Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224 (11th Cir. 2010) ............................................ 29, 30

*Luar Music Corp. v. Universal Music Group, Inc.*, 847 F.Supp.2d 299 (D.P.R. 2012) .............. 38

*Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872 (5th Cir. 1997) ........................ 33

*Mangus v. Present*, 135 So.2d 417 (Fla. 1961) ....................................................................... 34

*Markman v. Westview Instr., Inc.*, 52 F.3d 967 (Fed Cir. 1995) ........................................... 17, 18

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002) ............................................... 35

*Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996) .......................................................................... 37

*Miracle Blade, LLC. v. Ebrands Commerce Group, LLC,* 207 F.Supp. 2d 1136 (D. Nev. 2002) 11

*Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC*, 845 F.Supp. 2d 1241 (M.D. Fla. 2012) ................................................................................................................... 10

*National Lighting Co. v. Bridge Metal Industries*, 601 F. Supp. 2d 556 (S.D.N.Y. 2009) .... 11, 12

*Nautilus Group, Inc. v. ICON Health and Fitness, Inc.*, 372 F.3d 1330 (Fed. Cir. 2004) ........... 11

*Official Airline Guides, Inc. v. Goss*, 198 F.3d 1385 (9th Cir. 1993) ....................................... 11

*Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011) ................................................. 29

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .......................................................... 18

*Porter v. Ray*, 461 F.3d 1315 (11th Cir. 2006) ......................................................................... 3

*Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337 (7th Cir. 1998) ..................................... 13

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995) ............................................... 13, 16

*Quinn v. City of Detroit,* 23 F.Supp.2d 741 (E.D. Mich. 1998) ................................................ 35

*Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011) ...................................... 35

*Richdel, Inc., v. Sunspool Corp.*, 714 F.2d 1573 (Fed. Cir. 1983) ............................................ 18

*Rouse v. Walter & Associates, LLC*, 513 F.Supp.2d 1041 (S.D. Iowa 2007) ............................ 35

*Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991) ....... 19, 25

*Shelbyco Inc. v. W. Trimming Corp.*, 43 U.S.P.Q.2d 1140, 1997 WL 377982 (D. Utah 1997) ... 10

*Shevy Custom Wigs, Inc. v. Aggie Wigs,* 2006 WL 3335008 (E.D.N.Y. Nov. 17, 2006) ............. 12

*Sieger Suarez Architectural v. Arquitectonica*, 998 F.Supp.2d 1340 (S.D. Fla. 2014) ......... 35, 38

*Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494 (Fed. Cir. 1992) ................................. 19

*Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148 (3d Cir. 2001) ............................................. 41

*Sprengel v. Mohr,* 2013 WL 645532 (C.D. Cal. February 21, 2013) ......................................... 34

*Sugar Busters LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999) ................................................... 5

*Sun Microsys., Inc., v. Microsoft Corp.*, 188 F.3d 1115 (9th Cir. 1999) ................................... 29

*Thornton v. J Jargon Co.*, 580 F.Supp.2d 1261 (M.D. Fla. 2008) ............................................ 36

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001) ...................... 4, 10, 12, 13

*University of Florida v. KPB, Inc.*, 89 F.3d 773 (11th Cir. 1996) .............................................. 40

*Vital Pharmaceuticals, Inc. v. American body Bldg. Products, LLC*, 511 F.Supp.2d 1303 (S.D. Fla. 2007) ................................................................................................................... 5, 10

*Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ....................................... 17

*Warren Freedenfeld Assocs., Inc. v. McTigue,* 531 F.3d 38 (1st Cir. 2008) .............................. 38

*Welding Servs., Inc. v. Forman*, 509 F.3d 1351 (11th Cir. 2007) ............................................... 2

*Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949 (11th Cir. 2009) ...................................... 29, 30

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) ........................................ 4, 11, 16

Plaintiff Barn Light Electric Company, LLC and Third-Party Defendants Bryan and Donna Scott (collectively, "Plaintiffs"), by and through their undersigned counsel, Feldman Gale, P.A., and pursuant to Federal Rule of Civil Procedure 56, hereby move for partial summary judgment on Counts IX-XII of Plaintiff's Third Amended Complaint (D.E. 107) ("Complaint"), and Counts IX, IXVIII and XIX of Defendants' Second Amended Counterclaim and Third Party Complaint (D.E. 60) ("SACC") and in support thereof, respectfully state as follows.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Defendants asserted numerous counterclaims that, after extensive discovery, are unsupported by any evidence or cognizable legal theory.

First, Hi-Lite's trade dress is invalid. Specifically, Hi-Lite failed to produce any evidence that any of the asserted trade dress has achieved secondary meaning. Further, every asserted trade dress consists of generic features and is primarily functional.

Second, U.S. Pat. No. 8,556,477 ("'477 patent") is invalid. There is undisputed evidence that Defendants and Plaintiff sold the subsequently patented device to distributors and consumers for more than one year before the filing date the '477 patent. Likewise, undisputed evidence shows that consumers actually used the device for more than one year before the filing date of the '477 patent. Defendants attempt to avoid the impact of their sales and uses by with the "experimental use" exception. However, as a matter of law, unrestricted commercial sales and uses of a product do not qualify for any "experimental use" exception.

Third, Defendants' copyright claims fail as a matter of law. Uncontested evidence shows that Hi-Lite granted Barn Light Electric an irrevocable, non-exclusive implied license to use the images in-suit. Such a license was provided when Hi-Lite sent the images-in-suit to Barn Light

1

Electric and Barn Light Electric purchased products from Hi-Lite for resale. Defendants' copyright claims are also barred by the doctrine of equitable estoppel. Defendants provided the images-in-suit to Barn Light Electric; Defendants knew Barn Light Electric was using the images in marketing materials; by incorporating countless images provided to it by Hi-Lite, Barn Light Electric relied on Hi-Lite's conduct; and Barn Light Electric's reliance on Hi-Lite's conduct was to Barn Light Electric's detriment when Hi-Lite insisted Barn Light Electric immediately stop use of all the images-in-suit. Moreover, Hi-Lite's copyright infringement claims are, in large part, barred by the three year statute of limitations for copyright actions.

Fourth, Defendants trademark and copyright claims relating to the use of Hi-Lite part numbers fail because Hi-Lite's part numbers are not protectable subject matter under the Lanham and Copyright Acts, or any common law.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap,* 559 F.3d 1212, 1216 (11th Cir. 2009) (citing *Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Evidence is reviewed in the light most favorable to the non-moving party. *Fennell,* 559 F.3d at 1216 (citing *Welding Servs., Inc.,* 509 F.3d at 1356). A moving party discharges its burden on a motion for summary by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted). Then the

non-moving party must designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1321 (11th Cir. 2006) (citation omitted).

**III.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT OF NO TRADE DRESS INFRINGEMENT BECAUSE DEFENDANTS' ALLEGED PRODUCT DESIGNS LACK SECONDARY MEANING AND ARE GENERIC AND FUNCTIONAL**

In Paragraphs 33-44 and Counts IX, XVIII and XIX of the SACC, Defendants assert trade dress rights in lighting designs that are old and functional and that fail to identify a single source for the lighting products.  An unregistered product design is only protectable as a trade dress if it has acquired secondary meaning.  This must be shown through consumer surveys, consumer testimony, advertising expenditures, sales data or other evidence establishing that buyers associate the designs with their source.  Defendants, however, have not presented *any* evidence of source identification.  This is due, in part, to the fact that all of the designs are based on *generic* RLM lighting fixtures that have been in extensive commercial and industrial use since the 1920s.  Furthermore, every aspect of the claimed trade dresses is primarily *functional*.  This is demonstrated through the testimony of the manufacturer, its representatives and third party descriptions of the functional features.  Thus, Counts IX, XVIII and XIX should be dismissed.

**A.      Trade Dress Protection For Product Designs Is Exceedingly Narrow**

Federal trade dress law is designed to protect trade dress features whose "primary significance [is] to identify the source of the product rather than the product itself."  *Wal-mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) .  "Trade dress" is defined as "the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1535 (11th Cir. 1986); *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 982 (11th Cir. 1983).  To prevail on a claim for trade dress infringement of a product design under § 43(a), a

plaintiff must prove three elements: (1) that the trade dress of the two products is confusingly similar; (2) that the features of the trade dress are primarily non-functional; and (3) that the trade dress has acquired secondary meaning. *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1038 (11th Cir. 1996) (as modified by *Wal-mart* at 216).

Although the Lanham Act allows for the protection of an unregistered trade dress, the Supreme Court has cautioned that trade dress protection for product designs is extremely limited. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28-29 (2001) (quoting 15 U.S.C. § 1125(a)(3), but explaining that "in general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying"); *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, 2011 WL 4005454, at *6 (S.D. Fla. Sept. 8, 2011) (a party attempting to bring a claim for violation of an unregistered trade dress "*faces a difficult task*") (emphasis added). Unlike in a case involving the trade dress of a product packaging, the courts must exercise "'particular caution' when extending protection to product designs." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001). Caution is required because of the significant risk of "creat[ing] a monopoly in the goods themselves" by improperly "granting trade dress protection to an ordinary product design." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997).

### B. Defendants Cannot Establish Trade Dress Rights In The Product Designs

#### 1. Secondary Meaning Is Required For An Unregistered Trade Dress

"[I]n an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning." *Wal-mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000). The term "secondary meaning" denotes that consumers have formed an association in their minds between

4

the trade dress and the source or origin of the product.  *Id*.; *AmBrit, Inc. v. Kraft, Inc*., 812 F.2d 1531, 1536, n. 4 (11th Cir. 1986).

Appellate courts have held that survey evidence "is the most direct and persuasive evidence" to establish secondary meaning.  *Vital Pharmaceuticals, Inc. v. American body Bldg. Products, LLC*, 511 F.Supp.2d 1303 (S.D. Fla. 2007) (citing *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999)).   Other factors to consider in analyzing secondary meaning include (1) the length and manner of use; (2) the nature and extent of advertising and promotion; (3) the efforts made to promote a conscious connection with the public's mind between the design and the product; and (4) the extent to which the public actually identifies the design with the product.  *Vital Pharmaceuticals* at 1303 (internal citations omitted).

### 2.     Defendants Have Not And Cannot Show Secondary Meaning

### a.     There Is No Evidence Of Secondary Meaning In The Record

There is no evidence in the record that the public associates the alleged trade dresses with their source—Hi-Lite.   The public is not even aware that the product designs are protected.   None of the trade dresses in which Defendants claim rights are ▮▮▮▮▮▮.[1]   The products ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[2]  Hi-Lite has ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[3]  Hi-Lite has not produced any advertising expenses and has refused to provide its product revenue.  D.E. 109 and D.E. 134.   Under such circumstances, Defendants cannot rely on any sales data or advertising expenditures to establish secondary meaning.

Defendants have offered no survey evidence and there is no factual support for the notion

---

[1]  Exhibit 1(a), Deposition of Hi-Lite, witness David McAdam ("Hi-Lite Depo."), p. 180, lns. 14-18.

[2]  Exhibit 2, Deposition of Jeffrey Ohai ("J. Ohai Depo."), p. 59, lns. 18-21.

[3]  Exhibit 2, J. Ohai Depo., p. 55, ln. 7 – p. 56, ln. 4.

that consumers associate Hi-Lite with the alleged trade dresses.[4]  To the contrary, the evidence establishes that there is no association made between the fixtures and Hi-Lite at all.  Hi-Lite's own manufacturing representative, CAL Lighting—an entity that actually *markets* Hi-Lite products[5]—could ████████████████████████████████████████████████████ ██████.  Specifically, after being shown thirty (30) product designs, some of which are reflected in Paragraphs 33-36, 38 and 43 of the SACC (and others available from Barn Light Electric and third parties),[6] the witness was █████████████████████████████████.[7]  According to the witness, the lighting industry "██████████████████████████████████████████ ████████████████████████████."[8]  There is █████████████████████████████ ███████████████████████████████████████.[9]

    This conclusion is corroborated by the testimony of Micheal Schultz, a lighting retailer who sells Hi-Lite fixtures.  When shown each product design in Paragraphs 33-44 of the SACC, the witness admitted ███████████████████████████████████████████ ███████████████████████████████████████████████[10]  Per Mr. Shultz, "███████████████████████████████████████████████."[11]

---

[4]  Hi-Lite does not ███████████████████████████████████████).  Exhibit 1(b), Hi-Lite Depo., witness Dorothy Ohai, p. 25, ln. 21 – p. 26, ln. 20.

[5]  Exhibit 3(a), Deposition of Cal Lighting ("CAL Depo."), p. 9, ln. 17 – p. 12, ln. 10.

[6]  Exhibit 3(b), Summary of Exhibits to CAL Lighting Deposition.

[7]  Exhibit 3(a), CAL Depo., p. 23, ln. 10 – p. 29, ln. 13.

[8]  Exhibit 3(a), CAL Depo., p. 57, ln. 19 – 24.

[9]  Exhibit 3(a), CAL Depo., p. 57, ln. 25 – p. 58, ln. 3; p. 68, ln. 21-25.

[10]  Exhibit 5, Deposition of Micheal Schultz ("Schultz Depo."), p. 102, ln. 12 - p. 105, ln. 22, citing Exhibit 13.  The witness conceded that even if a product had a designation identifying the source, consumers still would not be able to identify the source because light fixtures are mounted in locations where consumers could not even see the name (walls or ceilings).  Schultz Depo., p. 106, lns. 8-13.

[11]  Exhibit 5, Schultz Depo., p. 107, lns. 1-4.

**b.** **Defendants Cannot Show Source Identification For Generic Lighting Features That Have Been Available For A Century**

The SACC provides pictures and descriptions for twelve light fixtures.[12]  The purported "trade dress elements" are ███████████████████████████████████ ████████████[13]  These features include the following generic lamp designs.



**SACC, ¶ 33**



**SACC, ¶ 34**



**SACC, ¶ 35**

Hi-Lite was founded in 1959.[14]  The features of these alleged "trade dresses" were in the public domain decades before its founding as established by multiple catalogues published in the 1920s – 1950s.  For example, the following RLM shades were publically available in 1923.[15]



**Bowl Shade**[16]



**Radial Wave Shade**



**Dome Shade**

There is nothing new or different about Defendants' shades. None of them contain original or artistic sizes, shapes, colors, textures, patterns, finishes, decorations, materials or motifs.  There

---

[12]  SACC, ¶¶33-44.

[13] According to CAL Lighting, these features are ███████████████████████████. Exhibit 3(a), CAL Depo., p. 57, ln. 19-24.

[14] Exhibit 1(b), Hi-Lite Depo, p. 17, lns. 20-21.

[15] Exhibit 6(d), Benjamin Industrial Lighting Equipment (1928) ("Benjamin"), pp. 10, 12, 14 and 64.

[16] For similar shades with guard cast feature, *see* discussion, *infra* and Exhibit 6(b), Crouse-Hinds Lighting Equipment (1937) ("Crouse-Hinds"), Section 212, p. 23; and Exhibit 6(c), Goodrich Elec. Co. (1940) ("Goodrich"), p. 85.

is nothing distinctive or differentiating about their configurations. In fact, the shades are so ancient in the lighting arts that they have become synonymous with the generic term "lampshade."[17] The remaining features of Defendants' designs are simply standard supports for suspended lamps (*e.g.*, "curved arm," "horizontal bar" and "base portion").



**Tube Arm**[18]      **Iron Pipe Stem**[19]      **Outlet Box Cover**[20]

The same arguments apply to the trade dresses in paragraphs 36, 39 and 44 of the SACC.



**SACC, ¶ 36**      **SACC, ¶ 39**      **SACC, ¶ 44**

As shown below, all of these features were well-known prior to Hi-Lite's founding.

---

[17]  According to Wikipedia: [a] lampshade is a fixture that covers the lightbulb on a lamp to diffuse the light it emits. Conical, cylindrical and other forms on floor-, desk- or table top-mounted as well as suspended lamp models are the most common and are made in a wide range of materials. http://en.wikipedia.org/wiki/Lampshade.

[18]  Exhibit 6(e), Peerless Light Company (1924) ("Peerless").

[19]  Exhibit 6(d), Benjamin, p. 10.

[20]  Exhibit 6(d), Benjamin, p. 11.







**Vapor Lamp**[21]  **Shallow Bowl Shades with Gooseneck, Bracket and Stem**[23]  **Boundary Light**[22]

The fixtures recited in paragraphs 36-38 and 40-43 of the SACC are all obvious variations of "guard cast" lighting. Entire sections of catalogues dating back to the depression era are dedicated to such fixtures (known as vapor lights, VAP type and water tight). Many of the lights are configured to allow attachment to other lights through poles in various patterns.[24]








**Hi-Lite**  **Crouse Hinds (1937)**  **Goodrich (1940)**  **Benjamin (1923)**

Defendants' specific product designs using guard cast lights are set forth below.








**SACC, ¶ 37**  **SACC, ¶ 38**  **SACC, ¶ 41**[25]  **SACC, ¶ 43**

These designs employ common means for covering, arranging and suspending such lights.

---

21 Exhibit 6(c), Goodrich, p. 85.

22 Exhibit 6(b), Crouse-Hinds, Section 214, p. 2.

23 Exhibit 6(d), Benjamin, p. 63, 77 and Exhibit 6(c), Goodrich, p. 95.

24 Exhibit 6(b), Crouse-Hinds, Section 212, p. 2; Exhibit 6(c), Goodrich, p. 85, 95; and Exhibit 6(d), Benjamin, p. 56.

25 The light fixtures shown in Paragraphs 40 and 42 of the SACC are variations on this theme.






| **Vapor Light and Wire Guard**[26] | **Vapor Lamp with Porcelain Shade, and Drop Cords**[27] | **Vapor Lamp with Porcelain Shade, Stem and Bracket**[28] | **Wind Sock Light Fixture with Multi-Pole Bracket and Vapor Light**[29] |

The absence of distinctive features in a product shape is fatal to a claim of trade dress. *Shelbyco Inc. v. W. Trimming Corp.,* 43 U.S.P.Q.2d 1140, 1143, 1997 WL 377982 (D. Utah 1997) (although Plaintiff alleged "that there is a consistent overall look found in all of its specialty paper and that this look is entitled to trade dress protection . . . [T]he only consistent feature in [plaintiff's] trade dress is the display of commonplace, ordinary shapes in various colors."); *see also TraFix Devices, Inc.,* 532 U.S. at 29; *Wal-Mart Stores,* 529 U.S. at 213; Vol. I, *McCarthy on Trademarks and Unfair Competition* (4th Ed. 2009) § 8:5, at pp. 8-26 to 8-27.[30]

The features of Defendants' trade dress designs are nothing more than basic shapes that are "likely to be shared by different producers of the same product and therefore are unlikely to identify Defendants as the manufacturer." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d 1197, 1203 (11th Cir. 2004); *Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC,* 845 F.Supp. 2d 1241, 1257 (M.D. Fla. 2012); *Miracle Blade, LLC. v. Ebrands Commerce*

---

[26]   Exhibit 6(d), Benjamin, p. 56 and Exhibit 6(f), Westinghouse Industrial Lighting Equipment (1932) ("Westinghouse"), p. 45.

[27]   Exhibit 6(a), Sears and Roebuck and Co., p. 107 and Exhibit 6(c), Goodrich, p. 85.

[28]   Exhibit 6(d), Benjamin, pp. 10, 77 and Exhibit 6(c), Goodrich, p. 85.

[29]   Exhibit 6(b), Crouse-Hinds, Section 214, p. 2; Exhibit 6(c), Goodrich, pp. 85, 95.

[30]   *Vital Pharmaceuticals, Inc. v. American Body Bldg. Products, LLC,* 511 F. Supp. 2d 1303, 1310 (S.D. Fla. 2007) (citing *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 858 (11th Cir. 1983) ("Certainly, an 8 ounce, cylindrical bottle shape constitutes a 'common' basic shape or design, as there is nothing inherently unique about a cylindrical, geometric form.")); *Glassbaby, LLC v. Provide Gifts, Inc.*, No. C11-380 MJP, 2011 WL 4571876, at *2 (W.D. Wash. Sept. 30, 2011) ("Glassybaby's trade dress is generic and incapable of trademark protection. The mark describes the rough dimensions of a round glass container with convex sides, a thick, clear base, and a wide top…. It gives no indication of the source and merely describes one particular species of the genus of round containers.").

*Group, LLC,* 207 F.Supp. 2d 1136 (D. Nev. 2002). As such, Defendants' trade dress elements only answer the question "what-are-you" not "who-are-you." *Nautilus Group, Inc. v. ICON Health and Fitness, Inc.*, 372 F.3d 1330, 1342 (Fed. Cir. 2004) (citing *Official Airline Guides, Inc. v. Goss*, 198 F.3d 1385, 1391 (9th Cir. 1993)); *Filipino Yellow Pages Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999).

Defendants should not be permitted to extend trade dress rights to the design of ubiquitous products, particularly when the trade dress elements are exceedingly vague and the features are well known. *National Lighting Co. v. Bridge Metal Industries*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009). A similar situation was presented in *National Lighting*. There, plaintiff National Lighting was engaged in the business of manufacturing and designing lighting fixtures for installation in commercial offices, educational facilities and government buildings. *Id.* at 559. That textual description of the trade dress included the following elements:

> the positioning of the fluorescent bulb, the distribution of light from the bulb, the angle at which the metal frame is curved, the placements of screws, the appearance of the inside parts, the lack of visibility of hardware, the method of wiring, the shielding design and shielding width, fixture depth, and the overall color and texture combinations.

*Id*. at 562. The court explained why caution must be used when assessing such designs.

> The policy of protecting competition is at least as strongly implicated when . . . product designs or configurations are claimed as trade dress. While trademarking a generic term would create a monopoly in a necessary word or phrase, ***granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves***. For this reason, courts have exercised particular "caution" when extending protection to product designs.

*Id.* (quoting *Landscape Forms,* 113 F.3d at 380). For this reason, "trade dress protection for product design . . . entails a greater risk of impinging on ideas as compared with protection of packaging or labeling." *Id*. (citing *Yurman,* 262 F.3d at 101). The court further emphasized the legitimate fear of enabling "monopolistic behavior." *Id*. (citing *Landscape Forms* at 380).

Ultimately, the court ruled that the trade dress description was nothing more than "a laundry list of the elements that constitute a lighting fixture's design, rather than a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive." *National Lighting* at 562 (citing *Shevy Custom Wigs, Inc. v. Aggie Wigs,* 2006 WL 3335008, *5 (E.D.N.Y. Nov. 17, 2006) (granting a motion to dismiss a trade dress claim and stating that "[t]he issue is not just *which* features are distinctive, but also *how* they are distinctive") (emphasis in original)).

The same concerns addressed in *National Lighting* about extending protection to ordinary product designs are at issue here. Defendants have provided a mere "laundry list" of elements that, at most, constitutes generic designs and have failed to establish which elements are distinctive, much less how they are distinctive. Thus, Defendants' trade dress claims alleged in Counts IX, XVIII and XIX should be dismissed for lack of secondary meaning. *Id.* at 563.

### C.     Defendants' Product Designs Are Primarily Functional

#### 1.     The Functionality Doctrine Prohibits Controlling Product Features

For an unregistered trade dress, the party asserting trade dress rights carries the heavy burden of proving that the alleged trade dress is non-functional. *TrafFix*, 532 U.S. at 29-30. According to the Supreme Court, placing the burden of proof on the plaintiff "gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional." *Id.*; *AmBrit, Inc.,* 812 F.2d at 1538 ("Trade dress is protectable under section 43(a) only if it is primarily nonfunctional.")

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d 1197, 1202-03 (11th Cir. 2004) (quoting *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S.

159, 164 (1995)); *In re Morton–Norwich Prods., Inc.,* 671 F.2d 1332, 1336 (C.C.P.A. 1982) ("This requirement of 'nonfunctionality' . . . has as its genesis the judicial theory that there exists a fundamental right to compete through imitation of a competitor's product, which right can only be temporarily denied by the patent or copyright laws.").

A product feature is functional when it is essential to the use or purpose of the device or when it affects the cost or quality of the device. *TrafFix Devices,* 532 U.S. at 32–33; *Qualitex,* 514 U.S. at 165. Functional features are those "likely to be shared by different producers of the same product and therefore are unlikely to identify a particular producer." *Dippin' Dots*, 369 F.3d at 1203 (citing *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998)). "[T]hese features cannot be appropriated; otherwise, competitors would be prevented from duplicating the new product even to the extent permitted by the branches of the law of intellectual property that protect innovation rather than designations of source." *Id.*[31]

### 2. All Of Defendants' Alleged Trade Dress Elements Are Functional

Defendants claim that their trade dress elements are directed to "non-functional aspects."[32] However, Defendants' trade dress *must* encompass functional aspects because the elements include *every* feature of the light fixtures. Using the example from paragraph 35 above, Defendants enumerated the following "non-functional aspects" of the lighting fixture:

> As depicted below, nonfunctional aspects of Hi-Lite's trade dress include, inter alia, a lamp having an outwardly-angled portion and a generally cylindrical portion upstanding from the outwardly angled portion, the cylindrical portion having two district diameters with an intermediate step portion therebetween; a horizontal bar engaging both a base

---

[31] Two tests exist for determining functionality. *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1039 (11th Cir. 1996). The first test, known as the traditional test, is that "a product feature is functional . . . if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex*, 514 U.S. at 165. The second test, known as the competitive necessity test, is that a functional feature is one the "exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage." *Id.* Where the design is functional under the traditional test, "there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix Devices*, Inc., 532 U.S. at 33.

[32] SACC, ¶¶33-44.

portion and the cylindrical portion; and a curved arm extending upwards from the base portion and downwards to the top of the cylindrical portion.

When the corporate representative for Hi-Lite was asked to circle each feature encompassed by this paragraph, the witness circled every single aspect.[33]

 

Hi-Lite admitted ████████████████████████████████████████████. With respect to the "outwardly angled portion and generally cylindrical portion," Hi-Lite testified that ████ ████████████████████████████████████████████████████.[34] This is consistent with conventional wisdom that RLM lighting reflects light in a downward direction. This is true of all of the shades in paragraphs 33-36 of the SACC, which exhibit characteristic light distribution based on their shape.[35]



The remaining aspects of the designs recited in paragraphs 33-36 are equally functional.

[33] Exhibit 1(a), Hi-Lite Depo., p. 185, ln. 1 - p. 189, ln. 8 (citing Exhibit 3).

[34] Exhibit 1(a), Hi-Lite Depo., p. 193, ln. 18 – p. 194, ln. 1; p. 194, ln. 21 – p. 195, ln. 4.

[35] Exhibit 6(d), Benjamin, p. 12.

The "base portion" serves to ███████████████████████[36]; electrical wires run through the "curved arm" which ██████████████████;[37] and the "horizontal bar" is "███████████████████████████████████████"[38] Since this constitutes all of the features—and since all of the designs in paragraphs 33-36 of the SACC contain these functional features—the designs in paragraphs 33-36 and 39 are primarily, if not exclusively, functional. The witness for CAL Lighting ██████████████████.[39]

If the same analysis is performed on the remainder of Defendants' trade dress designs, the same conclusion is reached. As noted above, paragraphs 36-38 and 40-43 of the SACC involve "guard cast" lighting. The name itself conveys that the design is meant to protect the light fixture.[40] Both Hi-Lite and CAL Lighting admitted ██████████████.[41] Specifically, the guard cast fixture includes a glass portion ("jelly jar"),[42] and a light source, both of which are protected by the metal guard.[43] Historically, such lights were "supplied in a complete line with pendant, ceiling, outlet-box and bracket styles for indoor and outdoor use."[44] Where a light is suspended from the ceiling as a pendant, a conduit stem is used to connect to the upper portion which must be rounded to accommodate the casting.[45] Both pendants and post varieties may include a "hood" which attaches

---

[36] Exhibit 1(a), Hi-Lite Depo., p. 190, ln. 24 - p. 191, ln. 4.

[37] Exhibit 1(a), Hi-Lite Depo., p. 191, lns. 6-16.

[38] Exhibit 5, Schultz Depo., p. 107, lns. 19-22.

[39] Exhibit 3(a), CAL Depo., pg. 61, ln. 2 - p. 64, ln. 21 (addressing ¶¶ 33-36 of the SACC: "██████████████").

[40] *See*, *e.g.*, Exhibit 6(b), Crouse-Hinds, p. 7 (referencing "Type VAP Series Unit With Guard").

[41] Exhibit 1(a), Hi-Lite Depo., p. 195, ln. 15 – p. 197, ln. 8.

[42] Exhibit 1(a), Hi-Lite Depo., p. 196, lns. 1-15.

[43] Exhibit 6(b), Crouse-Hinds, p. 23 ("Article 500 of the N.E. Code requires that the globe of a lighting fixture in hazardous locations, where exposed to breakage, be protected by a guard."); CAL Lighting Depo., p. 61, lns. 12-23 ("██████████████████████████████").

[44] SACC, ¶¶36-38 and 40-43; Exhibit 6(b), Crouse-Hinds, p. 23 ("pendent mounting on a conduit stem"); Exhibit 6(c), Goodrich, p. 85.

[45] SACC, ¶¶36-38 and 40-42; Exhibit 6(c), Goodrich, p. 85.

to the body of the casting and carries a "reflector" to "reflect the light that would otherwise be absorbed by the fixture."[46] Wire guards "made of heavily-tinned steel wire" may be used whenever lamps are susceptible to breakage.[47] Multi-shape wall brackets used for mounting are "threaded for use" with "ceiling vaporlite fixtures."[48] This constitutes every feature of Defendants' trade dresses set forth in paragraphs 36-38 and 40-43. Since these features are universal in the industry, and all serve a purpose, they are "essential to the use or purpose of the article" and "affect the cost or quality of the article." *Qualitex,* 514 U.S. at 165.

The conclusion that these features are purely functional is confirmed by the fact that numerous companies dating back to the 1920s have been providing these features to the public.[49] Granting Defendants exclusivity in these features would put all competitors "at a significant non-reputation-related disadvantage." *Id.* Permitting trade dress protection for critical, functional features improperly extends protection over a broad scope of lighting fixtures and creates an unfair monopoly that runs contrary to the principles behind extending Lanham Act protection to product designs. *See Wal–Mart Stores, Inc.,* 529 U.S. at 213; *see also, Bayco Prods., Inc. v. Lynch,* 2011 WL 1602571 *9 (N.D. Tex. Apr. 28, 2011) ("Bayco's deficiency lies . . . in the functional aspects of the particular design and shape features it alleges to be distinctive."). *Id.* at *9.[50] Because Defendants' alleged trade dresses are functional and generic, the trade dress claims in Counts IX,

---

[46] SACC, ¶¶36, 38, 40-44; Exhibit 6(b), Crouse-Hinds, p. 23; Exhibit 6(c), Goodrich, p. 85.

[47] SACC, ¶37; Exhibit 6(f), Westinghouse, p. 45.

[48] SACC, ¶¶40-43; Exhibit 6(c), Goodrich, p. 85 (*see,* Part No. 6700).

[49] *See,* discussion, *supra.*

[50] To the extent Defendants argue that the functional features are arbitrarily arranged in a way that is non-functional this argument fails. "A unique combination of elements may make a dress distinctive, but 'the fact that a trade dress is composed entirely of commonly used or functional elements might suggest that the dress should be regarded as unprotectable or 'generic' to avoid tying up a product or marketing idea.'" *Yurman Design,* 262 F.3d at 118 (quoting *Milstein,* 58 F.3d at 32). Defendants have not identified "what overall combination or design or shape configuration it assert[ed] to be arbitrary." *Bayco* at *9.

XVIII and XIX of the SACC must be dismissed.[51]

## IV. PRODUCT SALES AND PUBLIC USE MORE THAN ONE YEAR BEFORE DEFENDANTS FILED U.S. PATENT NO. 8,556,477 INVALIDATE THE PATENT AND RENDER IT UNENFORCEABLE AGAINST BARN LIGHT ELECTRIC

In the Third Amended Complaint (D.E. 107), Counts IX and X, Barn Light Electric requests a declaration that U.S. Patent No. 8,556,477 ("the '477 Patent") is not infringed and is invalid for failing to meet several conditions for patentability, including 35 U.S.C. § 102. "Summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 753 F.2d 1557, 1561 (Fed. Cir. 1988). Barn Light Electric is entitled to summary judgment because a product embodying the claimed subject matter was on sale and in public use in this country more than one year prior to the filing date of the application that led to the '477 Patent. Specifically, in March 2009, the product was (1) offered for commercial sale by Barn Light Electric; (2) purchased by Barn Light Electric from Hi-Lite; and (3) sold to and used in public by Jon and Terri Eberhart.[52] This invalidates the '477 Patent under 35 U.S.C. § 102(b).

### A. The Claims Of The '477 Patent Should Be Given Their Ordinary Meaning

In certain situations, patent claim terms may need to be interpreted, a process known as "claim construction." Claim construction is a matter of law. *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). The purpose of claim construction is to determine what the patent claims mean. *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 979 (Fed Cir. 1995), aff'd 517 U.S. 370 (1996). "[I]t is well established that the Rule 56 summary judgment motion is a

---

[51] In addition to moving for dismissal of Count IX (direct trade dress infringement by Barn Light Electric), Plaintiffs specifically request that Counts XVIII (contributory infringement against the Scotts) and XIX (vicarious infringement against the Scotts) be dismissed. Counts XVIII and XIX hinge on the existence of direct trade dress infringement by Barn Light Electric. Accordingly, both of these Counts require secondary meaning and non-functionality. If a proper claim has not been alleged against the direct accused infringer, a proper claim has not been alleged against the indirect infringers, whether through a contributory or vicarious liability theory.

[52] Declaration of Donna Scott ("Scott Decl."), ¶¶3-17, citing supporting Exhibits 1-6.

perfectly appropriate vehicle in which to conduct a *Markman* hearing or otherwise pronounce the meaning of the patent." *Markman* at 981; *Default Proof Credit Card Sys. v. Home Depot USA, Inc.*, 389 F.Supp. 2d 1325, 1338-1343 (S.D. Fla 2004).

The language of the patent claims, as well as the disclosure in the patent, controls the scope of a patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). The specification is "the single best guide to the meaning of a disputed term" and "acts as a dictionary when it expressly defines terms used in the claims." *Id*. Absent specific definitions, terms in a claim are "given their ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1313.

The '477 Patent provides descriptions for each of the claim terms.[53] For the purposes of this invalidity challenge, the terms are readily understandable, do not require a formal construction by the Court (or a *Markman* hearing) and should be given their ordinary meaning.[54]

### B.     A Patent Claim Is Invalid If A Product Used Or Sold In This Country More Than One Year Prior To The Patent Discloses Every Element Of The Claim

An issued patent is entitled to a presumption of validity. 35 U.S.C. § 282. A party challenging a patent has the burden of proving its invalidity case with clear and convincing evidence. *Impax Labs v. Aventis Pharmaceuticals,* 468 F.3d 1366, 1378 (Fed. Cir. 2006). It is an axiom of patent law that an invalid patent claim cannot be infringed. *Richdel, Inc., v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983). Title 35 of the U.S. Code, subsection 102(b) provides:

> "[a] person shall be entitled to a patent unless . . . (b) **the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application** for patent in the United States. . . ."

---

[53] *See*, Invalidity Chart, Exhibit 10.

[54] The fact that this motion concerns commercial embodiments of the '477 Patent removes the need to argue over the meaning of claim terms because, regardless of their meaning, the same features shown and described in the '477 Patent were sold more than one year prior to the filing of the application that led to the '477 Patent. Plaintiffs reserve the right to address or rebut any claim constructions provided by Defendants.

35 U.S.C. § 102(b) (emphasis added).

Under this subsection, products in public use or on sale in this country more than one year prior to the date of the application that led to a patent qualify as § 102(b) prior art. *Id.* A patent claim lacks novelty, and is invalid under § 102, if a single prior art reference describes either expressly or inherently every element of the claim. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991). Such a claim is said to be "anticipated" by the prior art reference. *Id.* The "on-sale bar" prohibits the patenting of an invention that has been the subject of an offer for sale more than one year before the filing date of the patent. *Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 996 (Fed. Cir. 2007).

"On summary judgment, once [a challenger] has presented facts sufficient to establish a prima facie case of invalidity, it falls to the patent owner to come forward with some evidence to the contrary sufficient to raise a genuine issue of material fact." *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 498 (Fed. Cir. 1992). Although lack of novelty is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact. *General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1353 (Fed. Cir. 1999). Summary judgment is proper if no reasonable jury could find that the patent is not anticipated. *Id.* Significantly, "*new prior art not before the PTO* (such as in the present case) may so clearly invalidate a patent that the burden is fully sustained merely by proving its existence and applying the proper law…". *Amer. Hoist & Derrick v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-1360 (Fed. Cir. 1984) (emphasis added).

## C.    All Claims Of The '477 Patent Lack Novelty Under 35 U.S.C. § 102(b)

The '477 Patent, entitled "Lighting Fixture Mounting Post," issued on October 15, 2013

from U.S. Application Serial No. 12/906,404, filed on October 18, 2010.[55]  The '477 Patent

generally describes "light fixtures," in particular, "light fixture mounting posts."[56]  The '477 Patent

contains twelve claims, including five independent (claims 1, 3, 6, 9 and 12) and seven dependent

(claims 2, 4, 5, 7, 8, 10 and 11).[57]  All of the claims are directed to "light fixture assemblies" and

"light fixture mounting posts."[58]  Claim 1 is representative:

> A light fixture mounting post comprising: a threaded upper portion for threadedly
> cooperation with a post nut for attaching the mounting post to a light shade; a
> threaded lower portion for attaching a light fixture to the light fixture mounting
> post, the threaded lower portion comprising: serially spaced apart tapered threaded
> segments; and reduced thickness spaces separating consecutive tapered threaded
> segments to allow easier shortening of the lower portion; a flange separating the
> upper portion from the lower portion; and an unthreaded shoulder adjacent to one
> of the reduced thickness spaces and additionally separating consecutive taper
> threaded segments to lengthen the separation of the taper threaded segments below
> the unthreaded shoulder from the taper threaded segments above the unthreaded
> shoulder.

### 1.      The '477 Patent Claims Lack Novelty Under 35 U.S.C. § 102(b)

The earliest filing date of the application that led to the '477 Patent is October 18, 2010.

The '477 Patent therefore has a 102(b) date—also known as a "critical date"—one year earlier, or

***October 18, 2009***.   All products in public use or sold in the U.S. prior to this date qualify as

potentially invalidating 102(b) prior art. Hi-Lite's Product Code 15116, which has mounting post

Model No. MU-3/4 ("MU ¾ Part"), is a commercial embodiment of the subject matter claimed in

the '477 Patent and was sold and used in the U.S. prior to October 18, 2009.  In fact, given the

similarities between the description in the '477 Patent and the MU ¾ Part, the '477 Patent was

specifically designed to cover this product.  Accordingly, the claims in the '477 Patent are time-

---

[55]  Exhibit 7, the '477 Patent, cover page.

[56]  Exhibit 7, the '477 Patent, Figures 1-8; col. 1, lns. 4-5.

[57]  Exhibit 7, the '477 Patent, col. 4, ln. 20 – col. 6, ln. 47.

[58]  Exhibit 7, the '477 Patent, col. 4, ln. 20 – col. 6, ln. 47.

barred by the prior sale of this product and invalid under 35 U.S.C. § 102(b).

a. **In March 2009 Barn Light Electric Advertised, Purchased And Sold Product Code H-15116 Which Contained The MU ¾ Part**

Barn Light Electric's first lighting catalogue was available, and offered Hi-Lite products for sale to the public, well prior to October 18, 2009.[59] In the lower, left-hand corner of page 12 of the first catalogue appears "The Original™ Warehouse Stem Mount," which equates to Hi-Lite Product Code 15116.[60] In or about March 2009, a coupled named Jon and Terri Eberhart owned the building at 305 S. Washington Avenue, Titusville, FL 32796, which Barn Light Electric was using as its principal place of business.[61] Barn Light Electric occupied the bottom floor while the Eberharts occupied the upper floor, which included an apartment with a back porch.[62] During one of the conversations between Jon Eberhart and Barn Light Electric's Vice-President, Donna Scott, Mr. Eberhart expressed interest in purchasing The Original™ Warehouse Stem Mount to mount on his back porch.[63]

As a result, on March 24, 2009, on behalf of the Eberharts, Ms. Scott placed an order via purchase order to Hi-Lite for three (3) of The Original™ Warehouse Stem Mount, Product Code 15116 ("Fixtures").[64] The package containing the three Fixtures arrived a few days later with an invoice reflecting the sale from Hi-Lite to Barn Light Electric dated March 27, 2009.[65] The invoice

---

[59] Scott Decl., ¶¶3, 4, citing, Exhibit 1.

[60] Scott Decl., ¶5, citing, Exhibit 1.

[61] Scott Decl., ¶6.

[62] Scott Decl., ¶6

[63] Scott Decl., ¶7.

[64] Scott Decl., ¶¶8, 9.

[65] Scott Decl., ¶10. Hi-Lite independently authenticated ███████████████████████████. Ex. 1(a), Hi-Lite Depo., p. 41, ln. 5 – p. 42, ln. 6; p. 44, lns. 1-5.

contained the following information.[66]



HI-LITE MFG. CO., INC.
13450 MONTE VISTA AVENUE • CHINO, CA 91710
(909) 465-1999 • FAX (909) 465-0907

| PRODUCT CODE | DESCRIPTION | DATE: | SOLD TO: | SHIP TO: |
|---|---|---|---|---|
| 15116 | H-15116 WAREHOUSE SHADE 96/10"ST/HDSMC-3/4" 96/LCGU-RIB-96 | 03-27-09 | BARN LIGHT ELECT CO., LLC 305 S. WASHINGTON AVE TITUSVILLE, FL 32796 | |

The DESCRIPTION in the invoice can be interpreted as follows: H-15116: 16" Shade; 96: Galvanized; 10" ST: 10" Stem; HDSMC 3/4": Heavy duty stem mount canopy in ¾" size[67]; 96: Galvanized; LCGU: Large cast guard unit; RIB: Ribbed glass; and 96: Galvanized.[68] As shown below, each Fixture received from Hi-Lite contained a sticker reflecting that it was "MODEL H 15116" manufactured on "DATE MAR 2009."[69] The flanges of the mounting posts of the Fixtures were cast with "HI-LITE MFG" and part number "MU-3/4."[70]

---

[66] Hi-Lite cannot rely on an experimental use defense under the auspice that the product sold was a prototype. "The on-sale bar applies when two conditions are satisfied before the critical date: (1) the claimed invention must be the subject of a commercial offer for sale; and (2) the invention must be ready for patenting." *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, No. 12-1581 (Fed. Cir. 2013). Both prongs are satisfied, including prong (2), given that what was patented was exactly what was commercially sold. *See* claim chart, *infra*. As for the experimental use exception, the primary purpose was to profit from the invention, not to conduct experimentation. *Allen Engineering Corp. v. Bartell Industries*, 299 F.3d 1336, 1354 (Fed. Cir. 2002). Hi-Lite cannot demonstrate ███████ ███████████████████████████████████ Ex. 1(a), Hi-Lite Depo., p. 35, lns. 1-12.

[67] To the extent Hi-Lite alleges it did not sell the MU ¾ Part because it did not charge for it, the invoice shows "HDSMC 3/4": Heavy duty stem mount canopy in ¾" size" and is included in the total price. Scott Decl., ¶10.

[68] Scott Decl., ¶10.

[69] Scott Decl., ¶12. This is consistent with the time-frame in which Hi-Lite ordered the part. Ex. 1(a), Hi-Lite Depo., p. 40, lns. 5-15; p. 45, lns. 3-6.

[70] Scott Decl., ¶12.





| **Light Assembly** | **MU ¾ Part (and Canopy)** | **Flange and Sticker** |

The Fixtures were, in turn, sold by Barn Light Electric to the Eberharts who mounted them on the roof of their back porch where they hung undisturbed in public view for many months prior to October 18, 2009.[71] As a result of Barn Light Electric subsequently acquiring the building at 305 S. Washington Avenue, Barn Light Electric is now the owner of the Fixtures.[72] In or about August, 2014, following receipt of letter from Hi-Lite's counsel alleging infringement of the '477 Patent by Barn Light Electric,[73] Ms. Scott detached one of the Fixtures and sent the portion containing the mounting post to counsel for Barn Light Electric.[74] The Fixture was extensively photographed and the specimen was used in the deposition of Hi-Lite.[75]

> **b.** **Hi-Lite Admits That Commercial Embodiments Of The '447 Patent Were Sold Prior To The Critical Date October 18, 2009**

Figure 1 of the '477 Patent shows an entire light assembly. Figure 2 shows the separate elements of Figure 1. According Hi-Lite, the "patented piece" is shown in Figure 6A, which equates to the physical specimen of the "mounting unit" that Barn Light Electric purchased.[76]

---

[71] Scott Decl., ¶¶11, 13. This constitutes *another* for-profit sale (by Barn Light Electric), followed by a public use (by the Eberharts), under 35 U.S.C. § 102(b). To the extent Hi-Lite attempts to argue an experimental use or other similar defense, there was obviously no experimentation by Hi-Lite associated with this sale or use since *Hi-Lite no longer had possession of or control over the Fixture*.

[72] Scott Decl, ¶14.

[73] D.E. 107-4.

[74] Scott Decl., ¶15.

[75] Scott Decl., ¶16; Exhibit 1(a), Hi-Lite Depo., p. 35, ln. 14 – p. 36, ln. 11.

[76] Exhibit 1(a), Hi-Lite Depo., p. 23, lns. 7 – p. 24, ln. 24; p. 36, ln. 21-p. 37, ln. 9.





**Figure 6A**                **MU ¾ Part (with Canopy)**

Hi-Lite admits that the complete fixture shown in Figure 1 of the '477 Patent—which includes all of the claimed subject matter including the "patented piece" MU ¾ Part — ████ ██████████████████████████ ████ .[77]  Hi-Lite further admits that ████████████ ████████████████████████████ (shown above).[78]

     **c.**    **The Eberharts' Use Of The MU ¾ Part Was Unrestricted, Commercial And Not For Experimental Purposes**

After receiving the Fixtures ordered from Hi-Lite through Barn Light Electric, the Eberharts mounted the Fixtures.  Scott Decl., ¶¶ 10, 13.  During the installation process, the Eberharts had access to the Fixtures' parts, including the MU ¾ Part.  *Id*.  Importantly, there was no confidentiality obligation imposed upon the Eberharts. Further, the Eberharts did not, nor were they ever asked to, keep any records or logs concerning the performance of the MU ¾ Part in the Fixtures – as would normally be created for experimental activity.  Moreover, the Eberharts were required to make a payment for the use of the Fixtures.  Under such circumstances, Eberharts' use was a barring public use under 102(b). *See Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1318 (Fed. Cir. 2002) (affirming the grant of summary judgment of invalidity).

     **d.**    **Hi-Lite Product Code 15116 With MU ¾ Part Contains Every Element of Every Claim Of The '477 Patent**

---

[77]  Exhibit 1(a), Hi-Lite Depo., p. 29, lns. 9-16; p. 35, lns. 1-3; p. 48, ln. 7 – p. 49, ln. 16; p. 50, lns. 20-25.

[78]  Exhibit 9, Defendants' Responses to Plaintiff's Requests for Admission ("RFA"),  Nos. 105-114.

All of the claims of the '477 Patent lack novelty, and are invalid under § 102(b), because a single prior art reference—Hi-Lite Product Code H-15116 with the MU ¾ Part—expressly contains every element of the claim. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991). The chart below establishes the invalidity of representative claim 1 of the '477 Patent in view of this prior art.[79]

| Claim 1 | The '477 Patent | Hi-Lite Product Code H-15116 With MU ¾ Part |
|---|---|---|
| 1. A light fixture **mounting post** comprising: | A mounting post. '477 Patent, Figure 6A.  | MU ¾ Part is a mounting post.  |
| a **threaded upper portion** for threadedly cooperation with a post nut for attaching the mounting post to a light shade; | The light fixture "mounting post" (16) includes an "upper portion" (20) for attaching to the light (14). '477 Patent, col. 2, lns. 57-58; Figure 6A.  | MU ¾ Part has a threaded upper portion for threaded cooperation with a post nut for attaching the mount post to a light shade.  |
| a **threaded lower portion** for attaching a light fixture to the light fixture mounting post, the threaded lower portion comprising: | The light fixture "mounting post" (16) includes…a "lower portion" for attaching the light fixture (18). '477 Patent, col. 2, lns. 57-59; Figure 6A.  | MU ¾ Part has a threaded lower portion for attaching a light fixture to a light fixture mounting post.  |

---

[79] Exhibit 10 is a full invalidity chart addressing all claims of the '477 Patent (with additional citations).

| Claim 1 | The '477 Patent | Hi-Lite Product Code H-15116 With MU ¾ Part |
|---|---|---|
| **serially spaced apart tapered threaded segments**; and | The "mounting post" (16) includes…a "lower portion" (21) having spaced apart "tapered pipe threaded segments" (29). Col. 3, lns 13-15; Figure 6A.<br> | MU ¾ Part has a threaded lower portion that includes serially spaced apart tapered threaded segments.<br> |
| **reduced thickness spaces** separating consecutive tapered threaded segments to allow easier shortening of the lower portion; | The "mounting post" (16) includes…a "lower portion" (21) having spaced apart "tapered pipe threaded segments" (29) separated by "spaces" (28). Col. 3, lns 13-15; Figure 6A.<br> | MU ¾ Part has a threaded lower portion that includes reduced thickness spaces separating consecutive tapered threaded segments to allow easier shortening of the lower portion.<br> |
| a **flange** separating the upper portion from the lower portion; and | The light fixture "mounting post" (16) includes an "upper portion" (20) for attaching to the light (14), a "post flange" (22), and a "lower portion" (21) for attaching the light fixture (18). Col. 2, lns 57-59; Figure 6A.<br> | MU ¾ Part has a flange separating the upper portion from the lower portion.<br> |

| Claim 1 | The '477 Patent | Hi-Lite Product Code H-15116 With MU ¾ Part |
|---|---|---|
| An **unthreaded shoulder** adjacent to one of the reduced thickness spaces and additionally separating consecutive taper threaded segments to lengthen the separation of the taper threaded segments below the unthreaded shoulder from the taper threaded segments above the unthreaded shoulder. | The "lower portion" (21) also includes an "unthreaded shoulder" (30) adjacent to a "space" (28) for extending "threaded segments" (29) below the "unthreaded shoulder" (30) downward. Col. 3, lns. 13-16; Figure 6A.   ← **Unthreaded shoulder** | MU ¾ Part has an unthreaded shoulder adjacent to one of the reduced thickness spaces and additionally separating consecutive tape threaded segments to lengthen the separation of the taper threaded segments below the unthreaded shoulder from the taper threaded segments above the unthreaded shoulder.   ← **Unthreaded shoulder** |

The remaining claims of the '477 Patent are equally invalid. They include the same limitations recited in claim 1, with minor additional elements.[80] However, every element of every claim is depicted in Figure 1 of the '477 Patent which Hi-Lite admitted to ███████████ ███████ ███.[81] Similarly, every element of every claim was included in the Hi-Lite Product Code 15116 with MU ¾ Part offered for sale, purchased and sold by Barn Light Electric (and later publically used by the Eberharts)[82] A full claim chart invalidating claims 1-12 of the '477 Patent is attached as Exhibit 10. Thus, claims 1-12 of the '477 Patent are invalid under 35 U.S.C. § 102(b) and summary judgment on Counts IX and X of the Complaint should be granted.

**V.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT OF NONINFRINGEMENT OF COPYRIGHT BECAUSE PLAINTIFF'S USE WAS LICENSED AND HI-LITE'S CLAIMS ARE BARRED BY THE DOCTRINE OF EQUITABLE ESTOPPEL AND THE STATUTE OF LIMITATIONS**

---

[80]  The remaining claims include the elements light shade, O-ring, recess, post-nut, washer and various threading. All of these elements are part of Hi-Lite Product Code H-15116 with MU ¾ Part.  Exhibit 10.

[81]  Exhibit 1(a), Hi-Lite Depo., p. 29, lns. 9-16; p. 35, lns. 1-3; p. 48, ln. 7 – p. 49, ln. 16; p. 50, lns. 20-25.

[82]  Scott Decl., ¶¶3-17, citing supporting Exhibits 1-6; Exhibit 10.

Partial summary judgment must be granted as to Defendants' claims in Counts VI, VII, VIII, XIV, XV, XVI, XVII & XVIII of the SACC alleging Direct, Contributory and Vicarious Infringement of U.S. Copyright Registration Nos. VA0001931982 (the "203 Catalog"), VA0001931193 (the "205 Catalog") and VA0001931001 (the "208 Catalog") (collectively, the "Hi-Lite Catalogs") as a matter of law, because: (i) Hi-Lite granted Barn Light Electric an irrevocable nonexclusive implied license to copy and distribute its works; (ii) Hi-Lite's claims of copyright infringement are barred by the doctrine of equitable estoppel; and (iii) to the extent Hi-Lite's claims of copyright infringement include allegations of copyright infringement which accrued prior to April 2, 2012, such claims are time barred under 17 U.S.C. §507(b).

## A. Barn Light Electric Is Entitled To Summary Judgment Of Noninfringement Because Hi-Lite Granted It An Irrevocable Implied License

The existence of a license is a full defense to copyright infringement. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (5th Cir. 1996). The Copyright Act requires a writing for all exclusive transfers of copyright. *See* 17 U.S.C. § 204(a). Although exclusive licenses are required to be in writing, nonexclusive licenses are not because there is no transfer of ownership. 17 U.S.C. §101; *MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinqer-Hansen, Inc.*, 952 F.2d 769, 778 (3d Cir. 199l). Instead, a non-exclusive license "may be granted orally, or may even be implied from conduct." *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997). "[C]onsent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing." *I.A.E., Inc.*, 74 F.3d at 775. Much like any other implied-in-fact contract, implied licenses are creatures of law, not equity. *See Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990).

In the Eleventh Circuit, "[a]n implied license is created when one party (1) creates a work at another person's request; (2) delivers the work to that person; and (3) intends that the person

copy and distribute the work." *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1235 (11th Cir.

2010). Courts focus on objective evidence revealing the intent of the parties to determine if an

implied license exists, and this inquiry also reveals the scope of that license. *See Wilchombe v.*

*TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009); *Gracen v. Bradford Exchange*, 698 F.2d

300, 303 (7th Cir. 1983) (the scope of an implied license may be proven through parol evidence).

In *Asset Marketing Systems, Inc. v. Gagnon*, the Ninth Circuit held that a copyright owner must

express the intent to restrict the scope of a license when they deliver the copyrighted work. 542

F.3d 748, 756 (9th Cir. 2008). "Thus, an implied license will be limited to a specific use only if

that limitation is expressly conveyed when the work is delivered." *Latimer,* 601 F.3d at 1235.

"[A] 'copyright owner who grants a nonexclusive license to use his copyrighted material

waives his right to sue the licensee for copyright infringement' and can sue only for breach of

contract." *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008), quoting *Sun Microsys., Inc.,*

*v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999), abrogated on other grounds by *Perfect*

*10, Inc. v. Google, Inc.*, 653 F.3d 976, 979-80 (9th Cir. 2011); *Graham v. James*, 144 F.3d 229,

236 (2d Cir. 1998); *see also Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) ("[T]he

existence of an implied license is an affirmative defense to infringement."). As explained by the

Eleventh Circuit in *Wilchombe v. TeeVee Toons, Inc.*:

> A nonexclusive license to use copyrighted material may be granted orally or
> implied from conduct. *See* [*Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293 (11th
> Cir. 1999)]; *Jacob Maxwell,* [110 F.3d at 752 (11th Cir. 1997)]. . . . An
> implied nonexclusive license is created when one party creates a work at
> another party's request and hands it over, intending that the other party copy
> and distribute it. *See Jacob Maxwell*, 110 F.3d at 752 (nonexclusive license
> created when songwriter created song at baseball team's request and handed a
> master tape over, intending that the baseball team play the song at its games). In
> determining whether an implied license exists, a court should look at objective
> factors evincing the party's intent, including deposition testimony and whether the
> copyrighted material was delivered "without warning that its further use would

constitute copyright infringement." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir.1996).

555 F.3d at 956 (citing *Jacob Maxwell*, 110 F.3d at 753; *see also Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010). "The relevant intent is the licensor's objective intent at the time of the creation and delivery of the [copyrighted work] as manifested by the parties' conduct." *Asset Marketing Systems, Inc.*, 542 F.3d at 756 (9th Cir.2008) citing *Effects*, 908 F.2d at 55[8] n. 6 (noting that "every objective fact concerning the transaction" supported the finding that an implied license existed). The copyright holder's "subjective intent is irrelevant." *Karlson v. Red Door Homes, LLC.*, 18 F.Supp.3d 1301, 1307 (N.D. Alabama 2014) *aff'd* Case No. 14-12371 (11th Cir. May 7, 2015) (holding for defendants on summary judgment, finding an irrevocable implied license was granted where there was no express restriction on the scope of use at the time the works were delivered, regardless of the subjective intent of the copyright holder).

Here, the undisputed evidence establishes that Hi-Lite granted Plaintiffs an implied license to copy and distribute its copyrighted works. "Hi-Lite [admits that it] ."[83] Hi-Lite further admits it ████████████████████ its line drawings, installation sheets, descriptive artwork, product codes, part numbers, color codes, color charts, photographs and Hi-Lite Catalogs (collectively, the "Hi-Lite Works") ████████ ████████████████████████████████████████████.[84]

Evidence in the record also establishes that upon Barn Light Electric's requests, Hi-Lite ████████████████████████████████████████████

[83] Exhibit 11, Defendant Hi-Lite Manufacturing Company, Inc.'s Responses to Plaintiff's Second Set of Interrogatories ("Resp. 2nd Interrog.") at Interrogatory No. 9.
[84] Exhibit 12, Defendants' Responses To Plaintiff's Second Set of Requests For Admission ("Resp. 2nd RFAs") at Request Nos. 71-87.

███████████████████████████████████████████████████████

████████████████████████████████████████.[85] For example, at

his deposition, David McAdam, the Hi-Lite employee responsible for delivering the Hi-Lite

Catalogs and Hi-Lite Works to distributors, provided the following sworn testimony: [86]



Q: ████████████████████████████████
   ██████████████████████████████?
A: ████████████████████.
Q: ████████████████████████████████
   ███████████████████████?
A: ████
Q: ████████████████████████████████
   █████████████████?
A: ████.

The record also shows that Hi-Lite ███████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████.[87] Moreover, Hi-Lite admits that it ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████.[88]

---

[85] Exhibit 9, Resp. 1st RFAs, Request Nos. 23, 35, 36 & 37; Exhibit 4, McAdam Depo., p. 123, ln. 11 – 127, ln. 3; p. 128, lns. 21-25;  p. 179, ln. 2 – p. 180, ln. 3.
[86] *See* Exhibit 2, J. Ohai Depo, p. 53, lns. 18-20; *see also* Exhibit 4, McAdam Depo., p. 123, ln. 11 – 127, ln. 3;  p. 128, lns. 21-25;  p. 179, ln. 2 – p. 180, ln. 3.
[87] Exhibit 9, Resp. 1st RFAs, Request Nos. 23, 35, 36 & 37 (admission by Hi-Lite that ████████████████████

of such photographs.); *see also* Exhibit 13, Comp. Exh. at BLE0035079, BLE0088798, BLE0098694, BLE0108255 and BLO0085712 (evidencing ████████████████████████████████████████████

████.

*Id.* at Request Nos. 81-84; *See also* Exhibit 4, McAdam Depo., p. 123, ln. 11 – 127, ln. 3;  p. 128, lns. 21-25;  p. 179, ln. 2 – p. 180, ln. 3; Exhibit 2, J. Ohai Depo, p. 53, lns. 18-20; Exhibit 5, Schulz Depo., p. 206, lns. 11-22.

Courts have also found that common industry conduct is instructive as to whether an implied license exists. For example, in *Kennedy v. Gish, Sherwood, & Friends, Inc.*, Case No. 4:13-cv-2236 JAR, 2015 WL 6750811, *2-3 (E.D. Miss. 2015), the Court held that where common industry conduct is known to the licensor and it is made aware of the likelihood that its copyrighted work may be used without an express limitation to the contrary, the objective intent *not* to so limit its use may be relied upon to find an implied license. Here, McAdam's sworn deposition testimony specifically addresses this point and makes clear that ██████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████.[89] Accordingly, under the reasoning in *Kennedy*, Hi-Lite's objective intent supports a finding that an implied license was granted to Barn Light Electric. *See also Field v. Google, Inc.*, 412 F.Supp.2d 1106, 1116 (D. Nev. 2006) (discussing knowledge of common industry custom and finding an implied license).

If the licensee makes out the existence of any license, the burden shifts to the licensor to show that the licensee's use exceeded the scope of that license. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 630 (2d Cir. 1995). Importantly, copyright law is clear that a licensee's breach of a covenant in a copyright license does not rescind the authorization to use the copyright work, but rather provides the licensor with a cause of action for a breach of contract. *See Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998); *Atlantis Info. Tech. v. CA, Inc.*, 485 F. Supp. 2d 224, 233-34 (E.D.N.Y. 2007); *see also Jacob Maxwell, Inc.*, 110 F.3d at 753-54 (breach of a covenant in a copyright license does no more than provide licensor an opportunity to seek rescission of the license, but does not constitute an *ab initio* rescission of the licensee's permission to use a

---

[89] Exhibit 4, McAdam Depo., p. 179, ln. 2 – 180, ln. 1 ("████████████████████████████████████████████ ████████████████████████████████.").

copyrighted work).  Defendants failed to allege breach of contract claims in this matter.

With regard to the scope of an implied license, courts in the Middle District have held that "even assuming that [licensor] . . . attached conditions to the [licensee's] use of his images . . . these conditions [a]re covenants, not conditions precedent to the granting of the implied license.  Accordingly, any breach on the [licensee's] part of these covenants provides [the licensor] with a breach of contract claim against [the licensee], not a copyright infringement claim."  *Davis v. Tampa Bay Arena, Ltd.,* Case No. 8:12-cv-60-T-30MAP, 2013 WL 3285278, *6-9 (M.D. Fla. 2012) (granting summary judgment for Defendant and finding an implied license for the use of photographs was granted and any use outside of the alleged scope of the implied license was immaterial for purposes of copyright infringement since such claims would only lie in a breach of contract claim, not copyright infringement).

Finally, because Hi-Lite received consideration from Barn Light Electric for its use of the Hi-Lite Works, the nonexclusive implied license Barn Light Electric received from Hi-Lite is irrevocable.  *See Asset Marketing v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008) citing *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 882 (5th Cir. 1997); NIMMER, §§ 10.02[B][5], 10.02[C][5] & n. 73.1 (2008) (observing that a license can be a form of contract in the sense that it is, in legal contemplation, merely an agreement not to sue the licensee for infringement)).  "[A] nonexclusive license supported by consideration is a contract." *Lulirama*, 128 F.3d at 882; *see also Karlson*, Case No. 14-12371 (11th Cir. May 7, 2015)(finding implied license irrevocable).  In *Lulirama,* the Fifth Circuit rejected the argument that the filing of a lawsuit worked a revocation on an implied license supported by consideration because to so find, would make the contract rights terminable at will and, thus, illusory.  128 F.3d at 882-83.

State law dictates the sufficiency of consideration to support a finding that an implied

license is irrevocable. *See, e.g., Sprengel v. Mohr,* Case No. CV 11-08742-MWF, 2013 WL 645532, *9-10 (C.D. Cal. 2013) (applying California law to determine adequacy of consideration for implied copyright license); *see also Carson v. Dynegy, Inc.,* 344 F.3d 446, 452 (5th Cir. 2003) (same, applying TX law). Under Florida law, in order to constitute valid consideration there must simply be either a benefit to the promisor or a detriment to the promisee. *Mangus v. Present*, 135 So.2d 417, 418 (Fla. 1961). Neither the benefit to the promisor nor the detriment to the promisee need be actual. Rather, it is a sufficient legal detriment to the promisee if it promises or performs any act, regardless of how slight or inconvenient, which it is not obligated to promise or perform. *Id.*; *see also* Williston on Contracts § 7:4 (4th ed. 2008).

Under Florida Law, Barn Light Electric provided Hi-Lite with valid consideration in support of its implied license. Barn Light Electric promised to promote and sell Hi-Lite's products through its website in exchange for the use of the Hi-Lite Works and, in exchange, Hi-Lite agreed to process and ship its orders to Barn Light Electric's customers in a timely fashion. It is undisputed that Hi-Lite received in excess of ███████ in sales revenue as a direct result of Barn Light Electric's use of the Hi-Lite Works and Catalogs on its website and within its other marketing materials.[90] Thus, because the implied license here is supported by consideration, it is, as a matter of law, irrevocable.

Accordingly, the undisputed facts in evidence, including Hi-Lite's admissions and the deposition testimony, objectively establish that there is no genuine issue of material fact that Hi-Lite granted Barn Light Electric an irrevocable implied license to use the Hi-Lite Works, including the Hi-Lite Catalogs. Thus, Barn Light Electric is entitled to summary judgment as to Counts VI, VII, VIII of Defendants' SACC as a matter of law. Furthermore, as a matter of law,

---

[90] Exhibit 12, Resp. 2nd RFAs, at Request No. 110.

there can be no secondary infringement without direct infringement. *Sieger Suarez Architectural v. Arquitectonica*, 998 F.Supp.2d 1340, 1354-55 (S.D. Fla. 2014) (dismissing direct infringement counts and, thus, secondary liability claims because "there was no infringing conduct to which any of the Defendants could contribute . . . [or] profit." *Id.* at 1356). Accordingly, Third Party Defendants, The Scotts, are likewise entitled to summary judgment as to Counts XIV, XV, XVI, XVII & XVIII of Defendants' SACC.

### B. Defendants' Copyright Infringement Claims Are Barred By The Doctrine Of Equitable Estoppel

The doctrine of equitable estoppel applies "where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 292 (2d Cir. 2002) (citation omitted). Essential to any finding of estoppel is "detrimental reliance on the adverse party's misrepresentations." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011). "A plaintiff is estopped from asserting a copyright claim if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out . . . by silence or inaction." *Rouse v. Walter & Associates, LLC*, 513 F.Supp.2d 1041, 1068 (S.D. Iowa 2007); citing *Field,* 412 F.Supp.2d at 1116 (quoting *Quinn v. City of Detroit,* 23 F.Supp.2d 741, 753 (E.D.Mich.1998)) (quotations omitted).

Copyright estoppel applies when the alleged infringer can show that "(1) the copyright owner knew the facts of the infringement, (2) the copyright owner intended its conduct to be acted upon or the copyright owner acted such that the alleged infringer has a right to believe it was so intended, (3) the alleged infringer is ignorant of the true facts, and (4) the alleged infringer relies on the copyright owner's conduct to his detriment." *HGI Associates, Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 875 (11th Cir. 2005); *see also Thornton v. J Jargon Co.*, 580 F.Supp.2d 1261,

1282 (M.D. Fla. 2008). "A holding out sufficient to raise an estoppel may be accomplished by silence and inaction, *particularly if prolonged.*" *Id.*; 4 NIMMER § 13.07[A] (emphasis added) (footnote omitted). "The defense of estoppel is clearly available, if the plaintiff has ... induced or caused the defendant to perform [the acts of alleged infringement]." *Id.* at § 13.07[A] (footnotes omitted). "A hallmark of the doctrine is its flexible application." *Heckler v. Cmty. Health Servs.,* 467 U.S. 51, 59 (1984).

Here, the elements of equitable estoppel are met. First, the uncontested record makes clear that Hi-Lite provided and had actual knowledge of Barn Light Electric's use of the photographs and other product information contained in the Hi-Lite Catalogs for over four years. *See supra,* n.5. It is undisputed that Hi-Lite delivered complete digital copies of Catalog Numbers 203, 205 and 208 on CD-ROM and other Hi-Lite Works to Barn Light Electric without any express limitation, and with the specific intention that Barn Light Electric use its copyrighted materials to market and sell its products. *Id.* Moreover, Hi-Lite does not dispute that it routinely provides the Hi-Lite Catalogs, including its product photographs, to its other distributors and sales representatives, without any express limitation, with the intention that said distributors and sales representatives also use its copyrighted material to market and sell its products. *See supra,* n.6. Accordingly, Hi-Lite's conduct in delivering the Hi-Lite Works, and its acquiescence in view of its actual knowledge of such use, reasonably led Barn Light Electric to believe it had the right to use the Hi-Lite Works, and that its use was so intended by Hi-Lite.

Barn Light Electric was unaware of the true facts. "To show reasonable reliance, a party seeking estoppel must show that it 'did not know nor should it have known that its adversary's conduct was misleading.'" *Genesis Health Ventures, Inc. v. Sebelius,* 798 F.Supp.2d 170, 184 (D.D.C.2011) (quoting *Heckler,* 467 U.S. at 59). Barn Light Electric relied upon Hi-Lite's

conduct in facilitating its use of the Hi-Lite Catalogs and other Hi-Lite Works and invested a great deal of time, energy and financial resources incorporating Hi-Lite's licensed works into its website, catalogs and other marketing medium. Barn Light Electric's reliance on Hi-Lite's conduct was to its own detriment. Specifically, on September 7, 2012, Hi-Lite unilaterally demanded that Barn Light Electric unwind the effort that its staff put into developing its website and immediately remove all of the Hi-Lite Works—severely disrupting and harming Barn Light Electric's ability to conduct business. Nevertheless, Barn Light Electric complied and promptly began work on the arduous task of removing all of the Hi-Lite Works from its website.

The undisputed facts show that the elements of equitable estoppel have been met. Therefore, in the alternative, Plaintiff and Third Party Defendants respectfully request that this Court enter summary judgment in favor of Plaintiff and Third Party Defendants and bar Hi-Lite's copyright infringement claims as to Counts VI, VII, VIII, XIV, XV, XVI, XVII & XVIII of the SACC based upon the doctrine of equitable estoppel.

### C. Hi-Lite's Copyright Infringement Claims Are Time Barred By The Statute Of Limitations

To the extent Hi-Lite's claims for copyright infringement accrued prior to April 21, 2012, they are time barred. The Copyright Act sets a three-year statute of limitations for copyright infringement claims. 17 U.S.C. § 507(b). The Supreme Court has not determined whether the injury or discovery rule governs accrual of copyright infringement claims. Nor has the Eleventh Circuit ruled on the issue. *See e.g., Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1236 (11th Cir. 2002). Some Circuits apply the so-called "discovery rule" wherein a claim accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996). That is, the "statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his

rights . . . ." *See e.g., Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (emphasis added). "Should have learned," means whether a reasonably prudent person in Plaintiff's position would have become aware of the alleged infringement. *Warren Freedenfeld Assocs., Inc. v. McTigue,* 531 F.3d 38, 44-45 (1st Cir.2008). "A reasonably prudent person is charged with a duty of diligence." *Luar Music Corp. v. Universal Music Group, Inc.,* 847 F.Supp.2d 299, 309 (D.P.R.2012) (citing *Warren,* 531 F.3d at 44). A plaintiff is put on notice, and the statute of limitations begins to run, once a plaintiff "possesses information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer." *Id.*

Here, under the reasonably prudent person standard, Hi-Lite should be charged with a duty of diligence such that it should have known of any alleged infringements that occurred within the past three years. Specifically, Hi-Lite ████████████████████████████████████████ ████████████████████████████████████████.[91] Given that the uses were all publicly accessible, Hi-Lite could have reasonably monitored any alleged infringement. Because Hi-Lite alleged its copyright claims for the first time in the SACC, filed on April 21, 2015, [D.E. 60], any claims that accrued prior to April 21, 2012 are time barred and must be dismissed on summary judgment as a matter of law. *Sieger*, 998 F.Supp.2d at 1354-55 (dismissing direct infringement counts and, thus, the remaining vicarious and contributory claims because "there was no infringing conduct to which any of the Defendants could contribute . . . [or] profit." *Id.* at 1356).

---

[91] Exhibit 9, Resp. 1st RFAs, Request Nos. 23, 35, 36 & 37 (admission by Hi-Lite that images ███████████████████████████████████████████████████████████" of such photographs.); *see also* Exhibit 13, Comp. Exh. at BLE0035079, BLE0088798, BLE0098694, BLE0108255 and BLO0085712 (evidencing ████████████████████████████████████████████████████████████ .

## VI. PLAINTIFF IS ENTITLED TO A FINDING OF SUMMARY JUDGMENT OF NONINFRINGEMENT BECAUSE HI-LITE'S PART NUMBERS ARE NOT PROTECTABLE SUBJECT MATTER

Partial summary judgment must be granted as to Defendants' claims in Counts II, III, IV & V of the SACC because: (i) Hi-Lite's part numbers are descriptive, (ii) lack secondary meaning, (iii) fail to indicate the origin of goods or services, (iv) are not registered trademarks, and as such (v) are incapable of causing consumer confusion. Moreover, Defendants have failed to adduce sufficient evidence in support of its claims that the Hi-Lite part numbers are protectable subject matter under the Copyright Act, Lanham Act or the Common Law. Accordingly, because there exists no genuine dispute of material fact, and because Hi-Lite's part numbers do not fall within the ambit of protectable subject matter, as a matter of law, Plaintiff respectfully requests that this Court grant partial summary judgment in its favor and dismiss Defendants' claims as to Counts II, III, IV & V.

### A. Part Numbers Are Not Protected by Trademark/Copyright Laws

Hi-Lite's claims fail as a matter of law because part numbers of the type Hi-Lite has asserted in the SACC cannot qualify for trademark protection because they lack secondary meaning and are descriptive and functional. In Counts II, III, IV & V, Defendants' SACC repeatedly alleges that simply because Hi-Lite has used its part numbers to sell its products to consumers that they are capable of serving as an identifier of the origin of Hi-Lite's products.

In *AmBrit, Inc. v. Kraft, Inc.*, the Eleventh Circuit held that to establish liability under § 43(a), the plaintiff must prove three elements: (1) its mark is inherently distinctive or has acquired secondary meaning, (2) its mark is primarily non-functional, and (3) the defendant's mark is confusingly similar. 812 F.2d 1531, 1535 (11th Cir. 1986). Defendants product numbers lack secondary meaning, are primarily functional and dissimilar to Plaintiffs' product codes.

Courts have concluded that part numbers, model numbers, grade designations and course numbers are descriptive marks because they merely indicate size, capacity, model, style, grade, time or place. *Arrow Fastner Co., Inc., v. Stanley* Works, 59 F.3d 384, 391 (2d Cir. 1995) citing *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1023 (7th Cir. 1979) *cert. denied,* 447 U.S. 924 (1980); *cf., Eastman Kodack Co. v. Bell & Howell Document Management Prods. Co.,* 994 F.2d 1569, 1576 (Fed. Cir. 1993). The Eleventh Circuit has held that, in addition to showing a likelihood of confusion, absent "substantial evidence" showing that an arrangement of letters and numbers is nonfunctional and inherently distinctive, or has acquired secondary meaning, such subject matter is outside the ambit of protection contemplated by the §43(a) of the Lanham Act. In *University of Florida v. KPB, Inc.*, the 11th Circuit issued affirmed the district court's grant of a directed verdict, holding that Plaintiff's course numbering system was not protectable subject matter under the Lanham Act. 89 F.3d 773, 777 (11th Cir. 1996); *id.* at fn 9.

Likewise, as a matter of law, Hi-Lite's part numbers are not protectable subject matter under Copyright Act. In *Southco, Inc. v. Kanebridge Corp.,* 390 F.3d 276 (3rd. Cir. 2004) ("Southco II"), a case directly on point, the court held that a fastener manufacturer's part numbers were not entitled to copyright protection because they lacked the requisite degree of creativity. In the trial court, just as Hi-Lite has attempted to do here, Southco asserted claims for copyright infringement under 17 U.S.C. §§ 501-05, 509, as well as Lanham Act claims for false advertising, trademark infringement, and unfair competition, and claims for common law trademark infringement and trademark dilution.[92] In rejecting Southco's Copyright claims, Judge Alito described Southco's system as follows:

---

[92] The trial court never reached Southco's Lanham Act claims because they were settled between the parties upon the Court's holding that the Plaintiff's part numbering system and part numbers lacked the requisite degree of creativity and originality for copyright protection.

To assist its employees and customers in identifying and distinguishing among its products, Southco developed a numbering system under which ***each particular digit or group of digits signifies a relevant characteristic of the product***. Southco has referred to one of the numbers at issue in this case, part number 47-10-202-10, to show how the system works. ***The first two digits ("47") show that the part falls within a class of captive screws. Other digits indicate characteristics such as thread size ("632"), composition of the screw (aluminum), and finish of the knob ("knurled").*** *See Southco, Inc. v. Kanebridge Corp.,* 258 F.3d 148, 149 n. 2 (3d Cir. 2001) ("*Southco I*") (quoting Southco's brief).

*Id.* at 278 (emphasis added).

Hi-Lite's part numbers are no different than those in *Southco*. That is, the part numbers Hi-Lite utilizes are comprised of groupings of alphanumeric combinations which signify relevant characteristics of a particular product. *Id.* In fact, Southco's numbering scheme contained a total of nine digits per part number and was, thus, arguably more complex and original than the system used by Defendants – and it still failed to meet the threshold for protectable subject matter. Though the Court found that Southco had "devoted time, effort, and thought to the creation of the numbering system," the Third Circuit held that the very existence of the system itself "made it impossible for the numbers themselves to be original." *Id.* at 153. That is, once the numbering "system was in place, all of the products in the class could be numbered without the slightest element of creativity. Indeed, if any creativity were allowed to creep into the numbering process, the system would be defeated." *Southco II,* at 282.

As a leading treatise states, "basic copyright principles" lead to the conclusion that copyright protection should not be extended to part numbers that represent "an inevitable sequence dictated by the logic of the parts system." 1 WILLIAM F. PATRY, COPYRIGHT LAW AND PRACTICE 46 (2d ed.2004). *See also* 1 JOHN W. HAZARD, JR., COPYRIGHT LAW IN BUSINESS AND PRACTICE § 2.58 at 2-79 to 2-80 (2002). Moreover, the Court found that the part numbers themselves "were also excluded from copyright protection because they are

analogous to short phrases or the titles of works." *Id.* at 285.  Noting the Copyright Office's longstanding refusal to grant copyright protection to such subject matter, the Court held that it "accept[ed] the Copyright Office['s] position and believe[d] that it logically extends to part numbers." *Id.*  Thus, as a matter of law, part numbers are not protectable subject matter. In view of *Southco II*, Plaintiff respectfully requests that this Court grant its motion for partial summary judgment and dismiss Counts II, III, IV and V of Defendants' SACC.

In the SACC (¶ 96), Hi-Lite includes the following examples of its part numbers:

| H-15116 | HL-A | H-CGU-F | 91/CGU-CLR |
|---------|------|---------|------------|
|  |  |  |  |

Hi-Lite's admissions make clear that the part numbers it has provided in its SACC are functional and descriptive.  *See* SACC at ¶96.  In Example 1 noted above, Hi-Lite has admitted that it ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████.[93]

In Example 2 noted above, Hi-Lite has admitted that ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████.  Although,

not admitted, this part number is also descriptive and functional because the "HL" stands for Hi-Lite and "A" for "Angle Shade," which is commonly mounted to this wall mount lighting fixture.[94]

In Example 3 noted above, Hi-Lite has admitted that 

."[95]

Finally, in Example 4 noted above, Hi-Lite has admitted that

."[96]

As a matter of law, Hi-Lite's part numbers cannot qualify for trademark protection under the Lanham Act or Florida Common Law nor do they hold the requisite level of originality to qualify for copyright protection. Instead, like the part numbers rejected in *Southco,* the uncontroverted evidence of record clearly establishes that Hi-Lite's part numbers are merely groupings of alphanumeric characters from a prearranged system that functions to describe elements of Hi-Lite's light fixtures such as size, color and shape. Moreover, Defendants admissions establish that they have discovered no evidence of actual consumer confusion or consumers surveys providing proof of secondary meaning. Finally, Defendants admit that they

---

[94] *Id.* at Request Nos. 49-55.
[95] *Id.* at Request Nos. 56-62.
[96] *Id.* at Request Nos. 63-69.

provided in the abovementioned examples. Accordingly, because Hi-Lite's part numbers lack secondary meaning, and are merely descriptive and functional, they cannot sustain a claim for unfair competition under §43(a) of the Lanham Act. Accordingly, Plaintiffs respectfully request that this Court grant its motion for partial summary judgment and dismiss Counts II, III, IV & IV because Hi-Lite's part numbers are not within the ambit of protectable subject matter under the Lanham Act, Copyright Act or Common Law.

## VII. DEFENDANTS' §43 LANHAM ACT CLAIMS IMPROPERLY CONFLATE THE PROTECTIONS OF THE LANHAM ACT AND COPYRIGHT ACT

Defendants' claims in Counts II, III, IV & V of the SACC must be dismissed as a matter of law because a copyright interest in an illustration, photograph or part number, is not a "good" whose "origin" can be falsely designated under §§43(a)(1)(A) or (B) of the Lanham Act. *See Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 37 (2003). The Supreme Court in *Dastar* held that the phrase 'origin of goods' in the Lanham Act refers to the origin of the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. *Id.* In light of *Dastar*, courts have concluded that Lanham Act claims that depend on the use of another's copyrighted work, including such photographs embodying or depicting the good, rather than the tangible good itself are nothing more than camouflaged copyright claims which must be dismissed as preempted by the Copyright Act. *See Photographic Illustrators Corp. v. Orgill, Inc.,* 2015 WL 4572296 at *8-11 (D. Mass. July 29, 2015) (dismissing §43(a) claims on summary judgment holding photographs are communicative products protected by copyright, not the Lanham Act).

Courts have expanded the application of *Dastar* to further narrow the scope of Lanham Act claims of reverse passing off under §43(a)(1)(A) and false advertising under §43(a)(1)(B).

*Bretford Mfg., Inc. v. Smith System Mfg., Co.*, 286 F.Supp.2d 969, 971-973 (N.D. Ill. 2003) (applying *Dastar* to non-communicative product, granting summary judgment to defendant for reverse passing off claim involving trade dress of a table leg). Courts have also held that the reasoning in *Dastar* equally applies to reverse passing off and false advertising claims under the Lanham Act that are dependent on trade dress or copyright, and not the "origin" of "tangible goods" sold, must be dismissed as a matter of law. *Id.* In *Gen. Univ. Sys., Inc., v. Lee*, the Fifth Circuit held:

> While there are some differences between *Dastar* and the situation at hand, we find *Dastar*'s reasoning controlling. GUS has not accused HAL of taking tangible copies of its software, removing its trademarks, and selling them as its own. Rather, GUS asserts that HAL copied the ideas, concepts, structures, and sequences embodied in its copyrighted work. In sum and substance, GUS's claim is simply a claim that HAL has infringed its copyright in LOPEZ COBOL. *Dastar* makes clear that such claims are not actionable under § 43(a). . . summary judgment . . . affirmed.

379 F.3d 131, 149 (5th Cir. 2004). Here, under *Dastar*, Defendants' Counts must be dismissed as a matter of law because they all improperly allege the use of depictions, photographs and part numbers which are not legally cognizable claims under §43(a)(1)(A) or (B) of the Lanham Act and must be dismissed.[97] To allow Defendants' claims to proceed would otherwise facilitate the improper use of the Lanham Act to expand Defendants' camouflaged copyright claims—the very issue cautioned against by the *Dastar* Court.

## VIII. CONCLUSION

Accordingly, Plaintiffs are entitled to judgment as a matter of law on counts IX-XII of the Third Amended Complaint, and counterclaims II-IX and XIII-XIX of the SACC.

---

[97] *See* SACC at ¶¶96, 101, 107 & 113 (identifying precisely the types of claims the Supreme Court held are not cognizable under the Lanham Act because they fail to properly allege "tangible goods" but, instead, refer to photographs, depictions and part numbers.).

Dated: December 15, 2015               Respectfully submitted,

/s/Alejandro J. Fernandez

By: Alejandro J. Fernandez
    Board Certified in Intellectual Property Law
    FL. Bar No.: 32221
    E-mail: AFernandez@FeldmanGale.com
    Gregory L. Hillyer, Esq
    Fla. Bar No. 682489
    E-mail: GHillyer@FeldmanGale.com
    Stephen J. Leahu, Esq.
    FL Bar No. 54037
    E-mail: SLeahu@FeldmanGale.com
    Joseph R. Sozzani, Esq.
    *Admitted Pro Hac Vice*
    E-Mail: JSozzani@FeldmanGale.com
    Matthew N. Horowitz, Esq.
    Fla. Bar No. 98564
    E-mail: MHorowitz@FeldmanGale.com
    **FELDMAN GALE, P.A.**
    400 N. Tampa Street, Suite 2830
    Tampa, FL 33602
    Telephone No. (813) 374-8890
    Telefacsimile No. (305) 358-3309

    ***Counsel for Plaintiff, Counterclaim-Defendants and Third Party Defendants***

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 15th day of December 2015, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/* Alejandro J. Fernandez
Alejandro J. Fernandez

## SERVICE LIST

***Barn Light Electric Company, LLC v. Barnlight Originals, Inc., et al.***
Case No.: 8:14-CV-1955-T-35AEP
United States District Court, Middle District of Florida

Michael J. Colitz, III
Trial Counsel
Email: michael.colitz@gray-robinson.com
Stephen Gregory Anderson
Email: Stephen.anderson@gray-robinson.com
**GrayRobinson, P.A.**
401 E. Jackson Street, Suite 2700
Post Office Box 3324
Tampa, FL 33601
Telephone No. (813) 273-5000
*Attorneys for Defendant/Counter-Plaintiffs*

**EXHIBITS**

**1a, 1b, 2, 3a, 3b,4, 5, 9, 11, 12, 13 and 14**

**ARE REDACTED IN THEIR ENTIRETY**