# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,
        Plaintiff,

v.                                          **CASE NO.: 8:14-CV-1955-MSS-AEP**

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; and
HI-LITE MANUFACTURING COMPANY, INC.,
a Nevada corporation,
JEFFREY L. OHAI, an individual California resident,
        Defendants.
_____/


BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; and
HI-LITE MANUFACTURING COMPANY, INC.,
a Nevada corporation,
JEFFREY L. OHAI, an individual California resident,
        Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,
        Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida residents,
        Third-Party Defendants.
_____/

## PLAINTIFF BARN LIGHT ELECTRIC COMPANY, LLC AND THIRD-PARTY DEFENDANTS BRYAN AND DONNA SCOTT'S OPPOSITION TO HI-LITE MANUFACTURING CO., INC.'S MOTION FOR SUMMARY JUDGMENT ON COUNTS V, VI, VII AND VIII OF ITS SECOND AMENDED COUNTERCLAIMS AND JEFFREY L. OHAI'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IX, X, XI, AND XII OF BARN LIGHT ELECTRIC COMPANY, LLC'S <u>THIRD AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   SUMMARY JUDGMENT STANDARD ........................................................ 1

III.  HI-LITE'S COUNTERCLAIMS III, IV & V UNDER THE LANHAM ACT MUST BE DISMISSED PURSUANT TO THE SUPREME COURT'S HOLDING IN *DASTAR* ... 1

IV.  HI-LITE IS NOT ENTITLED TO SUMMARY JUDGMENT FOR FALSE ADVERTISING PURSUANT TO § 43(a)(1)(B) (COUNT V) ................................ 10

V.   SUMMARY JUDGMENT IS IMPROPER ON THE COPYRIGHT COUNTS ......... 17

VI.  OHAI'S THIRD COVENANT STILL FAILS TO EXTINGUISH THE DISPUTE REGARDING THE '477 PATENT ........................................................... 31

VII. CONCLUSION ......................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**

*Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011) .................................... 5, 6

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013) .......................................................... 31, 32, 33

*Andela v. Univ. of Miami*, 461 F. App'x 832 (11th Cir. 2012) ................................................. 4, 6

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................................. 1

*Antidote Int'l Films, Inc. v. Bloomsbury Publishing, PLC,* 467 F.Supp.2d 394 (S.D.N.Y. 2006) 4, 9

*AppSoft Development, Inc. v. Diers, Inc.*, 2014 WL 3893316 (M.D. Fla. Aug. 8, 2014)............. 20

*Argonide Corp. v. In-Tec Water Prods., LLC*, Case No. 6:09-cv-852, Doc. 25 (M.D. Fla., Dec. 17, 2009) ................................................................................................................................... 32

*AstraZeneca LP v. Breath Ltd.*, 2013 WL 2404167, *3 (D.N.J. May 31, 2013) ........................ 35

*Atlanta Allergy & Asthma Clinics, P.A. v. Allergy & Asthma of Atlanta, LLC*, 685 F. Supp. 2d 1360 (N.D. Ga. 2010) ........................................................................................................... 14

*Avalos v. IAC/Interactivecorp.*, No. 13-CV-8351 JMF, 2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) ............................................................................................................................... 6, 7, 16

*Baby Buddies, Inc. v. Toys R Us, Inc.,* 611 F.3d 1308 (11th Cir. 2010) ...................................... 27

*Baden Sports, Inc. v. Molten USA, Inc.,* 556 F.3d 1300 (Fed. Cir. 2009) aff'ing No. 06-210, 2007 WL 2058673, at *1 (W.D. Wash. Jul. 16, 2007) ....................................................................... 4

*Bateman v. Mnemonics, Inc.,* 79 F.3d 1532 (11th Cir. 1996) ..................................................... 20

*Block State Testing Services, L.P. v. Kontractor's Prep Corp.*, 4 F. Supp. 2d 1365 (M.D. Fla. 1997) ............................................................................................................................... 20, 23

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576 (7th Cir. 2005) ................................. 4

*BWP Media USA Inc. v. A.R. Communications, LLC*, No. 6:14-CV-120-ACC-KRS, 2014 WL 5038590 (M.D. Fla. 2014) ...................................................................................................... 30

*Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991) ....................................................... 1

*Clark v. Walt Disney Co.*, 642 F.Supp.2d 775 (S.D. Ohio 2009) ................................................. 4

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24 (1st Cir. 2000) .... 12

*Commercial Recovery Corp. v. Bilateral Credit Corp., LLC*, 2013 WL 8350184 (S.D.N.Y. Dec. 19, 2013) ............................................................................................................................... 35

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.,* 546 F.Supp.2d 120 (S.D.N.Y. 2008) ........................................................................................................................................ 4

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ............................. passim

*Donald Frederick Evans *1272 and Assocs., Inc. v. Cont'l Homes, Inc.,* 785 F.2d 897 (11th Cir. 1986) ................................................................................................................................... 26

*Dowbenko v. Google Inc.,* 582 Fed.Appx. 801 (11th Cir. 2014) ........................................... 25, 30

*Eldred v. Ashcroft*, 537 U.S. 186 (2003)....................................................................................... 3

*Evers v. Gen. Motors Corp.,* 770 F.2d 984 (11th Cir. 1985) ...................................................... 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340 (1991) ........................................ 27

*Fennell v. Gilstrap,* 559 F.3d 1212 (11th Cir. 2009) .................................................................... 1

*Geoscan, Inc. v. Geotrace Techs., Inc.*, 226 F.3d 387 (5th Cir. 2000) ........................................ 18

*Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, 2011 WL 4005454 (S.D. Fla. Sept. 8, 2011) ................................................................................................................................... 19

*Herzog v. Castle Rock Entertainment*, 193 F.3d 1241 (11th Cir. 1999)...................................... 30

*Higher One, Inc. v. TouchNet Info. Sys., Inc.,* No. 3:10-CV-1435, 2014 WL 4798546 (D. Conn. 2014) ................................................................................................................................... 32

*Ivory v. Holme*, No. 8:07-CV-2354-T-TBM, 2009 WL 513720 (M.D. Fla. Feb. 27, 2009) ........ 22

*Jim Marshall Photography, LLC v. John Varvatos of California*, 109 U.S.P.Q.2d 1114 (N.D. Cal. 2013)............................................................................................................................ 26

*Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002) .................. 12

*Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576 (6th Cir. 2015) 4, 6, 7, 8

*Kernel Records Oy v. Mosley*, 694 F.3d 1294 (11th Cir. 2012) ............................................ 26, 30

*Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224 (11th Cir. 2010) ...................................... 20, 27, 28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014) ................... 16, 17

*Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir. 1995), *aff'd by*, 516 U.S. 233 (1996) ........................................................................................................................................ 20

*Lundgren v. Ameristar Credit Solutions, Inc.*, 40 F.Supp.3d 543 (W.D. Pa. 2014) .............. 16, 17

*Marc Anthony Builders, Inc. v. Javic Properties, LLC*, No. 8:11-CV-00432-EAK, 2011 WL 2709882 (M.D. Fla. 2011) ....................................................................................................... 26

*Nguyen v. Biondo*, 2013 WL 530840 (11th Cir. 2013)................................................................. 15

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002)................................................................................................................... 12

*Olem Shoe Corp. v. Washington Shoe Co.*, 2010 WL 3505100 (S.D. Fla., Sept. 03, 2010) ........ 26

*Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218 (11th Cir. 2008) ........................... 30

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821 (11th Cir. 1982) .............. 26

*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298 (11th Cir. 2010)..................................................... 12

*Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193 (10th Cir. 2005) ......................... 20

*PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*, 951 F. Supp. 2d 1083, 1089 (E.D. Ark. 2013) ........................................................................................................................................ 32

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803 (N.D.Ill. Feb. 8, 2012)........................................................................................................ 4, 10

*Quadratec, Inc. v. Turn 5, Inc.*, No. CIV.A. 13-6384, 2015 WL 4876314 (E.D. Pa. Aug. 13, 2015) ................................................................................................................................. 4, 6, 7, 9

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ................................................................ 30

*Romero v. Buhimschi*, 396 Fed.Appx. 224 (6th Cir. 2010) ............................................................ 4

*Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276 (3rd. Cir. 2004) ............................................... 8

*Spicy Beer Mix, Inc. v. New Castle Beverage*, 2014 WL 7672167 (C.D. Cal. Aug. 1, 2014)...... 35

*Sterpetti v. E-Brands Acquisition, LLC*, 2006 Copr. L. Dec. P 29211, 2006 WL 1046949 (M.D. Fla. Apr. 20, 2006)................................................................................................................... 22

*Stiefel Laboratories Inc. v. Brookstone Pharmaceuticals, L.L.C.*, No. 12-14309 (11th Cir.  Aug. 19, 2013) ................................................................................................................................ 14

*Suntree Technologies v. Ecosense Int'l*, 802 F.Supp.2d 1273 (11th Cir. 2011) ............... 6, 12, 14

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008)............................ 2

*Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010)................................................................... 15

*Tartell v. South Florida Sinus And Allergy Center*, 790 F.3d 1253 (11th Cir. 2015)....... 14, 15, 16

*Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294 (11th Cir. 2007)........................................... 8

*Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261 (M.D. Fla. July 8, 2008)................................. 26

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ................................. 12

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001) ........................................ 3

*United Fabrics Int'l, Inc. v. C & J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011) ............................ 20

*Univ. of FL v. KPB, Inc.*, 89 F.3d 773 (11th Cir. 1996) ................................................................ 6

*Watson v. K2 Design Group, Inc.*, No. 15-CIV-61020, 2015 WL 4720797 (S.D. Fla. 2015)...... 26

Plaintiff Barn Light Electric Company, LLC and Third-Party Defendants Bryan and Donna Scott, hereby respond to Defendants' motion for partial summary judgment [Dkt. 167] ("Defendants' Motion"), and state as follows:

## MEMORANDUM OF LAW

### I.     INTRODUCTION

Hi-Lite predicates its summary judgment motion on an incomplete and heavily biased portrayal of the record, along with questionable declarations. Considering the full record and controlling authority, however, multiple genuine disputes of material fact prohibit summary judgment on the false advertising, copyright and patent related counts.

### II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap,* 559 F.3d 1212, 1216 (11th Cir. 2009). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Evidence is reviewed in the light most favorable to the non-moving party. *Fennell,* 559 F.3d at 1216.

### III.     HI-LITE'S COUNTERCLAIMS III, IV & V UNDER THE LANHAM ACT MUST BE DISMISSED PURSUANT TO THE SUPREME COURT'S HOLDING IN *DASTAR.*

To the extent that Hi-Lite alleges that Barn Light Electric has misappropriated its "part numbers, copyrighted photographs, and depictions" of its products ("Marketing Materials"), its recourse lies in an action under the Copyright Act—claims which it has also alleged in this matter—not false designation of origin or false advertising under the Lanham Act. *See* SACC, ¶¶ 101-115. Section 43(a)(1)(A) of the Lanham Act cannot create liability from Barn Light

1

Electric's use of the Marketing Materials because they do not concern the "origin of goods," to which Section 43(a)(1)(A) is directed; nor do they concern false designations of origin relating to the "nature, characteristics, [or] qualities" of the products at issue, to which Section 43(a)(1)(B) has been interpreted to address.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008).  As more fully set forth below, pursuant to the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), Hi-Lite's Counts (III), (IV) & (V) of the SACC, ¶¶ 101-115 fail to state cognizable claims under the Lanham Act. Plaintiff, respectfully cross-moves for summary judgment, requests that this Court deny Hi-Lite's Motion and dismiss Counts III, IV & V pursuant to Fed.R.Civ.P. 12(b)(6).

### A.  The Supreme Court's Holding In *Dastar* and its Progeny Substantially Narrowed the Scope of Claims Under § 43(a)(1)(A)&(B) of the Lanham Act.

The Supreme Court in *Dastar* made clear that the term "origin" in § 43(a)(1) of the Lanham Act refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  539 U.S. at 37.  In *Dastar*, a Hollywood studio that produced a WWII documentary series brought suit under § 1125(a)(1)(A) of the Lanham Act against a production company, Dastar Corp., that purchased a copy of its series, made minor edits, and sold it under a new title as its own product.  *Id.* at 25-28.  At issue before the Court was whether the Lanham Act's reference to the "origin of goods" should be construed to include only the manufacturer of the tangible product that was marketed, *i.e.,* Dastar, or also the creator of the underlying work that was copied, *i.e.,* Twentieth Century Fox.  *Id.* at 31.  The Supreme Court held that:

> [T]he "origin" of "goods" [and] the source of wares is the producer of the tangible product sold in the marketplace, in this case the physical Campaigns videotape sold by Dastar.... [A]s used in the Lanham Act, the phrase "origin of goods" is in our view incapable of connoting the person or entity that originated the ideas or communications that "goods" embody or contain.  Such an extension would not

only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent.

*Id.* at 31-32.

The Court rejected the idea that communicative products—those valued for the intellectual content they convey (e.g., videos, photographs, recordings, publications) —should be treated any differently. *Id.* at 33. It stated that "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* at 34 (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 29 (2001)). "'The Lanham Act ... does not exist to reward manufacturers for their innovation in creating a particular device; this is the purpose of patent law and its period of exclusivity.'" *Id.* The Court concluded as follows:

> [R]eading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were), we conclude that the phrase refers to *the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. Cf.* 17 U.S.C. § 202 (distinguishing between a copyrighted work and "any material object in which the work is embodied"). To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do.

*Id.* at 37 (emphasis added) quoting *Eldred v. Ashcroft,* 537 U.S. 186, 208 (2003).

In so holding, the *Dastar* Court found that the term "origin" as used in the Lanham Act does not refer to authorship or inventorship, that is, "the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id*. at 32. To hold otherwise, would mean that the definition of "origin" of "goods" would encompass the intellectual property underlying a product and improperly bring the Lanham Act into direct conflict with the Copyright and Patent Acts. "Thus, the Court held that the Lanham Act did not create a cause of action for behavior that amounted to plagiarism or the use of unprotected work without attribution." *Romero v.*

3

*Buhimschi,* 396 Fed.Appx. 224, 231 (6th Cir. 2010) citing *Dastar,* 539 U.S. at 36; accord *Andela*

*v. Univ. of Miami*, 461 F. App'x 832, 837 (11th Cir. 2012) (applying *Dastar*).

Accordingly, because Dastar did not merely purchase the product, repackage it, and sell it

as its own, but was rather the producer of the product it sold, there could be no "false designation

of origin" and therefore no Lanham Act claim. *Id.* at 38.  In short, the *Dastar* Court narrowed

the scope of claims under § 43(a)(1)(A) of the Lanham Act and made clear that the term "origin"

as used therein refers only to "the producer of the tangible goods that are offered for sale, and not

to the author of any idea, concept, or communication" embodied in or underlying those goods,

which are rights directly preempted by the Copyright or Patent Acts. *Id.* at 37.

### B.  The Supreme Court's Holding In *Dastar* Applies Equally To Claims Made Pursuant to Section 43(a)(1)(B) of the Lanham Act.

The overwhelming body of law construing *Dastar* strongly supports Barn Light Electric's

entitlement to summary judgment and the dismissal of Hi-Lite's § 43(a)(1)(B) Lanham Act

claims.[1]  Following *Dastar*, the Sixth, Seventh, Ninth and Federal Circuits as well as district

courts in virtually every other Circuit have universally held that the reasoning and holding in

---

[1] *See e.g, Kehoe Component Sales Inc. v. Best Lighting Products, Inc.,* 796 F.3d 576 (6th Cir. 2015) (lighting fixture manufacturer's advertising of identical cloned products of competitor not actionable under § 43(a)(1)(B) in view of *Dastar*);  *Quadratec, Inc. v. Turn 5, Inc.,* No. CIV.A. 13-6384, 2015 WL 4876314 (E.D. Pa. Aug. 13, 2015) (holding use of photographs and marketing materials to sell Plaintiff's product following termination of license not a cognizable claim under § 43(a)(1)(B) in view of *Dastar*); *see also Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.,* No. 11 C 5177, 2012 WL 414803 (N.D.Ill. Feb. 8, 2012) (dismissing claims under §§ 43(a)(1)(B) where competitor used Plaintiff's copyrighted works to sell their own products on a website);  *Romero v. Buhimschi,* 09-1195 at p. 8-9 (6th Cir. 2010) (same; concerning the false attribution of authorship in medical journal article); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.,* 419 F.3d 576, 580 (7th Cir. 2005) (use of competitor's product in which it claimed trade dress to sell cloned product not actionable under Lanham Act); *Clark v. Walt Disney Co.,* 642 F.Supp.2d 775 (S.D. Ohio 2009) (sale of posters embodying accused product not actionable under § 43(a)(1)(B)); *Baden Sports, Inc. v. Molten USA, Inc.,* 556 F.3d 1300, 1307-08 (Fed. Cir. 2009) *aff'ing* No. 06-210, 2007 WL 2058673, at *1 (W.D. Wash. Jul. 16, 2007) (applying *Dastar,* reversing lower court, dismissing claims under §§ 43(a)(1)(B) where competitor's marketing claimed "innovation" of patented basketball as his own); *Antidote Int'l Films, Inc. v. Bloomsbury Publishing, PLC,* 467 F.Supp.2d 394, 399-400 (S.D.N.Y. 2006) (hold copyright claims cannot be recast as false affiliation claims in view of *Dastar*); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.,* 546 F.Supp.2d 120, 130 (S.D.N.Y. 2008) (collecting cases, finding that *Dastar*'s holding applies irrespective of whether the work is protected by copyright).

*Dastar* applies equally to both false designation and false advertising claims brought under §§ 43(a)(1)(A) & (B) of the Lanham Act. *Id.*

### 1.    Hi-Lite's Lanham Act Claims Must Be Dismissed Under Dastar.

In this case, for the reasons stated in *Dastar* and its progeny, Hi-Lite has failed to state viable claims under the Lanham Act for unfair competition, reverse passing off and false advertising pursuant to §§ 43(a)(1)(A) & (B) because they are all premised on the infringement of its Marketing Materials.  *See* SACC, ¶¶106-115; *supra* n.1.  As numerous courts have held, claims made pursuant to § 43(a)(1)(B) are generally attempts to recast § 43(a)(1)(A) claims, and are, thus, subject to dismissal under the same reasoning in *Dastar*.  *Id.*  "[T]he allegations supporting [plaintiff's] false advertising claim are identical to those supporting [plaintiff's] false representation claim. The import of *Dastar* that . . . [its] recourse for unauthorized use is in copyright cannot be avoided by shoe-horning a claim into section 43(a)(1)(B) rather than 43(a)(1)(A)."  *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) Here, Hi-Lite's false advertising claim (Count V) is simply an attempt to recast its unfair competition and reverse passing off claims (Counts, III & IV) in an effort to circumvent the requirements and limitations in maintaining an action under the Copyright Act.  *Id.*  The *Dastar* Court's mandate that courts foreclose attempts to invoke Lanham Act protections for those properly asserted under the Copyright and Patent Acts applies here.  *Dastar*, 539 U.S. at 34.

### a.    Hi-Lite fails to state a claim under § 43(a)(1)(A) of the Lanham Act.

First, as a matter of law, Counts III & IV of Hi-Lite's SACC alleging unfair competition and reverse passing off under § 43(a)(1)(A) fail because they are precisely the type of claims the *Dastar* Court sought to foreclose.  That is, on their face, Hi-Lite's claims allege Barn Light Electric's false designation of its "**part numbers** . . . **copyrighted photographs**, and **depictions of Hi-Lite products**" as its own.  *See* SACC, ¶¶101, 107 (emphasis added).  Hi-Lite "essentially

seeks protection of its marketing of its products.  However, the Lanham Act does not protect 'originality or creativity,' nor does it 'creat[e] a cause of action for, in effect, plagiarism.'" *Quadratec, Inc. v. Turn 5, Inc.*, No. CIV.A. 13-6384, 2015 WL 4876314, at *9 (E.D. Pa. Aug. 13, 2015) citing *Avalos v. IAC/Interactivecorp.*, No. 13-CV-8351 JMF, 2014 WL 5493242, at *3 (S.D.N.Y. Oct. 30, 2014) ("In attempting to plead a Lanham Act claim based on Defendants' unauthorized use of its photographs . . . [plaintiff] attempts to achieve precisely what *Dastar* prohibits: an end run around copyright law. Accordingly, [plaintiff's] claim on this front fails.").  "Because photographs are 'communicative products' protected by copyright, false designation of their authorship is not cognizable under section 43(a)(1)(A) after *Dastar.*" *Agence France Presse*, 769 F. Supp. 2d at 307.  Thus, Hi-Lite fails to state a claim upon which relief can be granted under § 43(a)(1)(A) of the Lanham Act.  *Quadratec, Inc.*, 2015 WL 4876314, at *9 ("By copying [p]laintiff's [p]roduct [p]resentations, Defendant's rights are protected under the Copyright Act.  Plaintiff's claim under § 1125(a)(1)(A) will be dismissed."); *see also Andela*, 461 F. App'x at 837.  Likewise, because it has failed to provide extrinsic evidence of secondary meaning, as it must, Hi-Lite's part numbers do not fall within the ambit of protectable subject matter under the Lanham Act.[2]

Second, "[a]s *Dastar* makes plain, an entity makes a false designation of origin sufficient to support a reverse passing off claim only where it falsely represents . . . that it has manufactured the tangible product that is sold in the marketplace when it did not in fact do so." *Kehoe Component Sales Inc.*, 796 F.3d at 587 citing *Dastar,* 539 U.S. at 29, 31 ("*Kehoe*").  Here, Hi-Lite makes no such claim.  Even assuming *arguendo* that Hi-Lite's allegation that Barn Light Electric used a Hi-Lite photograph to sell a non-Hi-Lite product is true (which it is not), it alleges

---

[2] *See Univ. of FL v. KPB, Inc.,* 89 F.3d 773, 776-77 (11th Cir. 1996);  *Suntree Technologies v. Ecosense Int'l*, 802 F.Supp.2d 1273, 1288 (11th Cir. 2011) (requiring survey, expert or like extrinsic evidence).

Mr. Sanders received a light fixture manufactured by Barn Light Electric, not a Hi-Lite product represented as a Barn Light Electric product.[3]   Thus, Hi-Lite has failed to state a claim for reverse passing off and Count IV must be dismissed pursuant to Rule 12(b)(6).

Further, permitting Lanham Act claims to cover things other than tangible goods "would be akin to finding that [§§ 43(a)(1)(A) & (B)] created a species of perpetual patent and copyright, which Congress may not do." *Id.*   In dismissing the Lanham Act claims of a competing light fixture distributor akin to those made by Hi-Lite here, the Sixth Circuit made clear that:

> Because "the person or entity that originated the ideas" embodied in a good or service is not the "origin" of the good or service for purposes of § 43(a), a manufacturer does not falsely designate a product's origin under the Lanham Act [even] if it makes an exact replica of someone else's item and labels the item as its own. . . . That is not what the Lanham Act guards against.

*Kehoe Component Sales Inc.*, 796 F.3d at 587 citing *Dastar*, 539 U.S. at 32, 34.

Here, just as the Plaintiff sought in *Dastar*, Hi-Lite's claims seek copyright protection under the Lanham Act for the false designation of authorship in its "*copyrighted* photographs" and "part numbers."   *See* SACC, ¶101, 107, 113.   Courts applying *Dastar* have rejected such attempts.[4]   Hi-Lite has not alleged that Barn Light Electric purchased its products, repackaged them, and sold them as its own.   Mr. Sanders testimony and Hi-Lite's sworn affidavit confirm this fact.[5]   At best, Hi-Lite alleges a copyright infringement claims in Counts III and IV of the SACC, not Lanham Act claims.   *Quadratec, Inc.*, 2015 WL 4876314, at *12 ("Plaintiff's [unfair

---

[3] Defendants' Motion at 10; *see also* Dkt. 171 at ¶14 ("[T ███████████████████████████████████████ ");
**Exhibit 1**, Deposition of Sean Sanders ("Sanders Depo."), 13:2-9; 33:11-36:24; 41:12-18; 42:12-18; 43:1–47:14; 51:1–52:23; 54:5–56.

[4] *See Quadratec, Inc.*, 2015 WL 4876314, at *9 (product photographs); *Avalos*, 2014 WL 5493242, at *3 (product photographs); *Pers. Keepsakes, Inc.*, 2012 WL 414803, at *3-4 (distinguishing cases where the product at issue is itself a photograph).

[5] *See* Sanders Depo., 55:15 – 56:13 ("[W ████████████████████████████████
██████████████████ MR. COLITZ: Objection as to form. A: Yes."); Dkt. 171 at ¶ 14.

competition] claim is nothing more than a claim for unauthorized copying of its [] Product Presentations, which is not different than what Plaintiff alleges in its copyright infringement claims."); *see* SACC, ¶¶101-111 (Lanham Act claims) *c.f.* ¶¶116-148 (Copyright claims).  Thus, Hi-Lite's claims for unfair competition (Count III) and reverse passing off (Count IV) pursuant to § 43(a)(1)(A) are preempted by the Copyright Act and foreclosed by *Dastar* and must, as a matter of law, be dismissed.  *Dastar*, 539 U.S. at 37.

       **b.**      **Hi-Lite fails to state a claim under § 43(a)(1)(B) of the Lanham Act.**

Here, as in *Kehoe*, Hi-Lite's claim under Section 43(a)(1)(B) "is defective for largely the same reasons" its Section 43(a)(1)(A) claims fail.  *See Kehoe*, 796 F.3d at 589 ("[T]he district court would have been incorrect to conclude that a product's "origin" references the originator of the concepts embodied in the product.  Under *Dastar*, the term denotes only the manufacturer of the tangible object, which means that [defendant's] advertising was not false." *Id.* citing *Dastar*, 539 U.S. at 32.).  Hi-Lite fails to allege or identify a false statement regarding the "origin" of the light fixtures at issue and, instead, alleges unauthorized copying of "depictions of Hi-Lite products … part numbers, and … photographs …."  *See* SACC, ¶¶ 112-115.  Even if this Court finds that Hi-Lite is the "origin" of the *ideas* underlying its part numbers, *copyrighted* photographs, and product depictions, as the Supreme Court noted in *Dastar,* the Lanham Act was not designed to protect the *originality* or *creativity* of such *ideas*, nor was it designed to protect the authorship, tangible expression, or inventorship of an *idea*—such protections, instead, fall within the exclusive purview of the Copyright and Patent Acts.[6]

---

[6] *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1310 (11th Cir. 2007) ("The Supreme Court has explicitly held that such conduct does not give rise to a claim under § 1125."); *Southco, Inc. v. Kanebridge Corp.,* 390 F.3d 276, 278 (3rd. Cir. 2004) (describing the functionality and descriptiveness of part numbers nearly identical to Hi-Lite's); *see* B. Scott Dec., ¶¶ 13, 31; D. Scott Dec., ¶¶ 15-22, 25 & Ex. A.  The declarations of Donna Scott and Bryan Scott are being filed concurrently with this Opposition.

In *Quadratec*, a case with similar facts and allegations to those at issue here, the Court applied the reasoning in *Dastar* to dismiss plaintiff's Lanham Act claims under § 43(a)(1)(B) alleging "that [b]y falsely branding Quadratec's image and claiming it as its own, Defendant . . . in commercial advertising or promotion . . . misrepresent[ed] the nature, characteristics, and/or quality of its goods, services, or commercial activities." *Quadratec, Inc.*, 2015 WL 4876314, at *10. In dismissing plaintiff's claim, as failing to meet § 43(a)(1)(B), the Court held:

> Plaintiff has not alleged that Defendant made a false or misleading statement about its goods, or about Plaintiff's goods— aftermarket Jeep® products. Instead, Plaintiff claims that Defendant made a false statement about the ***photographs taken of those goods***. Specifically, Plaintiff claims that by superimposing its own brand name on a photograph authored by Plaintiff, Defendant misrepresents to consumers that Plaintiff's photograph and catalog services originated with Defendant. Plaintiff does not allege that Defendant "misrepresents the nature, characteristics, qualities, or geographic region" of the . . . products themselves, 15 U.S.C. § 1125(a)(1)(B), ***but rather the marketing materials used to promote those products***. These allegations are not sufficient to state a claim for false advertising under Section 1125(a)(1)(B).

*Id.* at *10. Here, Hi-Lite makes identical claims regarding its Marketing Materials.

In applying *Dastar*, the court further reasoned that, "if authorship was considered to be part of the 'nature' of the product, or a 'characteristic' or 'quality' of it, then the same claim the Supreme Court rejected in *Dastar* under § 43(a)(1)(A) would be available under § 43(a)(1)(B), assuming that product was commercially advertised (as most products are)." *Quadratec, Inc.* 2015 WL 4876314, at *10, quoting *Antidote Int'l,* 467 F. Supp. 2d at 400 (finding *Dastar*'s holding that 'origin' refers to producers, not authors, "necessarily implies that the words 'nature, characteristics [and] qualities' in § 43(a)(1)(B) cannot be read to refer to authorship."). In *Dastar,* the Supreme Court's overriding concern regarding the misuse of Lanham Act claims otherwise preempted by the Copyright Act is apparent here. As Courts in virtually every circuit have held in dismissing analogous claims under similar facts, Hi-Lite's "reading of § 43(a)(1)(B) would push the Lanham Act into the exclusive realm of copyright." *Pers. Keepsakes*, 2012

WL 414803, at *5.  Thus, pursuant to the Supreme Court's ruling in *Dastar*, this Court must deny Hi-Lite's Motion and grant Plaintiff's cross-motion for summary judgment on Counts III, IV & V or, in the alternative, dismiss its claims under Rule 12(b)(6).  To hold otherwise would amount to opening the door to the very claims which the Supreme Court sought to foreclose in *Dastar*.

## IV.   HI-LITE IS NOT ENTITLED TO SUMMARY JUDGMENT FOR FALSE ADVERTISING PURSUANT TO § 43(a)(1)(B) (COUNT V)

### A.  Genuine Issues Of Material Fact Remain For Trial

First, Hi-Lite misrepresents as an undisputed fact that Barn Light Electric used depictions, part numbers and photographs of Hi-Lite products to sell products that did not originate with Hi-Lite.  *See* Motion at 3-4, ¶¶6, 7, 14.  It has not, and the record is devoid of any credible evidence.[7]  Instead, the record evidence supports Plaintiff's assertion that it has never used Hi-Lite Marketing Materials to sell anything but Hi-Lite products.[8]  Plaintiff, however, was under no obligation, contractual or otherwise, to indefinitely endure lost sales, complaints and damage to its reputation due to Hi-Lite's inability to timely fulfill its purchase orders.[9]

Second, it is undisputed that Plaintiff was licensed to use Hi-Lite's Marketing Materials at the time of Mr. Sander's purchase, and Plaintiff avers its license was irrevocable.[10]  Third, Plaintiff's traceable sales records show it sold, and Hi-Lite drop shipped, at least, $████ worth of H-15116 and H-15116G light fixtures to its customers from November 2011 to

---

[7] *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").

[8] *See* **Exhibit 2**, Deposition of Donna Scott ("D. Scott Depo."), 178:1–181:2; **Exhibit 3**, Deposition of Bryan Scott ("B. Scott Depo."), 182:14–187:3; **Exhibit 4**, Deposition of Plaintiff ("BLE 30(b)(6) Depo."), 62:4–77:25; B. Scott Dec., ¶¶ 21, 26; D. Scott Dec., ¶ 14.

[9] *See* **Exhibit 5**, Deposition of Dorothy Ohai ("D. Ohai Depo."), 56:5-18; **Exhibit 6**, Deposition of David McAdam ("McAdam Depo."), 219:1–221:24; **Exhibit 7**, Deposition of Hi-Lite, witness David McAdam ("Hi-Lite 30(b)(6) (McAdam) Depo."), 82:9–100:22; BL00003680 & 3688; B. Scott Dec., ¶¶ 17-20 & Ex. C-D; D. Scott Dec ¶¶ 43-51.

[10] *Dkt. 165*, pp.28-35 Ex. 14, ¶¶25-41.

August 2012.   Fourth, the record evidence establishes that Hi-Lite's inability and refusal to timely process Plaintiff's purchase orders, caused it harm, which resulted in the implementation of a customer service policy ("CSP") to protect its reputation and goodwill.   It did so by: (i) contacting customers to inform them of expected delays; (ii) offering customers the option to maintain, cancel or substitute their order for an alternate product available for immediate shipment (pursuant to the review of a product photo and description via its website or e-mail), and (iii) acting pursuant to its customer's direction.[11]   Such conduct is not false advertising, its good business.   Finally, it is undisputed that following Hi-Lite's request, Barn Light Electric immediately and systematically took action to remove all Hi-Lite Marketing Materials from its website, including the product listings at issue.[12]

### B.  Hi-Lite Has Not Established Its False Advertising Claim

*Dastar* aside, Hi-Lite fails to establish the necessary factual predicates to prove its entitlement to summary judgment.   Outside of conclusory assertions, the only record evidence Hi-Lite adduces in support of its false advertising claim is a single orchestrated purchase it made, not through an independent consumer, but its own sales representative of sixteen years, Mr. Sanders.[13]   Setting aside that evidence of a single purchase by a non-consumer cannot alone establish the elements for a claim under §43(a)(1)(B), and that such testimony is necessarily riddled with self-interest and bias, Mr. Sander's testimony itself establishes that he received exactly what he ordered—Barn Light 'The Original' Warehouse Shade light fixtures as pictured and described on the Barn Light Electric website.[14]

---

[11] *See* B. Scott Dec. ¶¶ 17-20 & Ex. C-D; D. Scott Dec. ¶¶ 43-51; D. Scott Depo., 178:1–181:2; B. Scott Depo., 182:14–187:3; BLE 30(b)(6) Depo., 62:4–77:25; Hi-Lite 30(b)(6) (McAdam) Depo., 82:9–100:22.

[12] *See* B. Scott Dec. ¶ 27-30; D. Scott Dec. ¶ 52-55.

[13] Sanders Depo., 23:11-25; 25:23-36:35; 31:1-32:19; 40:18-42:11.

[14] Sanders Depo., 43:1-22; 54:5–56:13; 43:1–47:14; 51:1–52:23; 54:5–56:13.

### 1. Plaintiff's Product Listings Are Neither Literally False Nor Misleading.

Literal falsity is a finding of fact.[15]  The "factfinder must determine the claim conveyed . . . [and] then evaluate whether that claim is false."  *Id.*  "When determining whether an advertisement is literally false or misleading, courts 'must analyze the message conveyed in full context,' and 'must view the face of the statement in its entirety. . . .'"[16]  "In doing so, '[t]he ambiguity of the statement at issue, or the lack thereof, is significant. . . . As the meaning of a statement becomes less clear . . . and it becomes susceptible to multiple meanings, the statement is more likely to be merely misleading."[17]  "[O]nly an *unambiguous* message can be literally false.  The greater the degree to which a message relies upon the viewer. . . to integrate its components and draw the apparent conclusion . . . the less likely it is that a finding of literal falsity will be supported."[18]  "[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false."[19]

Here, Plaintiff's product listings unambiguously offered Barn Light Electric products.[20] Mr. Sander's testimony itself establishes that he received exactly what he ordered: "Q ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮s."[21]  He also testified that he did not believe that Barn

---

[15] *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 34 (1st Cir. 2000).

[16] *Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1308 (11th Cir. 2010) citing *Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1248 (11th Cir. 2002).

[17] *Suntree Technologies,* 802 F.Supp.2d at 1287.

[18] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 587 (3d Cir. 2002).

[19] *Johnson Vision Care, Inc.,* 299 F.3d at 1248 quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 158 (2d Cir. 2007).

[20] Dkt. 171, Ex. C; *see also* B. Scott Dec. ¶ 12, 14-16.

[21] Sanders Depo, 54:5–56:13; *see also* 43:1–47:14; 43:1-22; 51:1–52:23.

Light Electric was attempting to pass off its products as Hi-Lite products or itself as the manufacturer of Hi-Lite products. *Id.* 54:5–56:13.

At his deposition, Mr. Sanders could not confirm whether he ever opened the boxes he received, whether or when he took photographs of their contents, or if the boxes contained the lights he ordered.[22] He did confirm, however, that Mr. McAdam directed his purchasing decision in selecting specific Barn Light Electric light fixtures.[23] While Mr. McAdam's affidavit now conveniently states that he took such photographs, his prior testimony was that he could not be certain whether the products ordered by Mr. Sanders were received.[24, 25]

However, even assuming *arguendo* that Mr. McAdam's photos can be authenticated, Mr. Sanders ordered, and, in fact, received Barn Light Electric 'The Original™' Warehouse Shade fixtures, sold under Plaintiff's trademarks which appeared on its website, marketing, products, listings, descriptions, purchase order, sales receipt and shipping boxes relating to Mr. Sanders' purchase.[26] The inclusion of a generic unmarked photograph of a generic design accompanied by a generic code does not change the analysis.[27] As the 11th Circuit found in *Suntree*, there

---

[22] *Id.* at 13:6-9; 35:16-36:2; 49:5-50:11; 64:18-24.

[23] *Id.* at 13:6-9; 35:30-36:2; 48:22-50:11; 56:10-13; 64:18-24.

[24] The photos upon which Hi-Lite relies are undated, unauthenticated and neither Mr. Sanders nor Mr. McAdam appears certain as to what was received from Barn Light Electric. *See* Sanders Depo., 48:3-14; 49:5-50:11; Dkt. 171, ¶14, Exhibits. D & E. At best, the photos as proffered are inadmissible hearsay. Likewise, the product listings proffered by Hi-Lite are inadmissible hearsay. Dkt. 171, ¶ 9 & Ex. C. The photographs are offered for the truth of the matter asserted. However, the attached affidavit itself establishes the document is unreliable, and more specifically, the images contained therein. *Id., Affidavit of Christopher Butler* at 1 ("The date assigned by the Internet Archive applies to the HTML file ***but not the image files linked therein***. Thus images that appear on a page may not have been archived on the same date as the HTML file."). Mr. Sanders also testified that the documents in Exhibit C ***were not*** an accurate representation of the website as he viewed it on January 13, 2012. *See* Sanders Depo., 52:2-52:24.

[25] *See* McAdam Depo, 211:18-20 *c.f.* Dkt. 171, ¶14.

[26] Sanders Depo., 13:2-9; 33:11-36:24; 41:12-18; 42:12-18; 43:1-22; 45:18-25; 51:12-52:1; 54:5–56:13.

[27] Sanders Depo., 9:19-25; 10:1-22; 42:12–46:25; 44:1-45:16; 46;14-17; 54:5–56:13; 66:17-20; 68:16-24.

13

simply cannot be a finding of literal falsity here because Barn light Electric's product listings "do not mention [Hi-Lite's] product."[28]  Plaintiff's listing were not literally false.

Absent literal falsity, "the movant is required to present [extrinsic] evidence of deception."  *Id.*  As Mr. Sander's testified, Plaintiff's product listings were not misleading or are unambiguous and that he agreed the photos of the products allegedly received by Mr. McAdam corresponded with the products advertised in the listings.[29]

### 2.   Hi-Lite's Claim Must Be Dismissed Because It Cannot Prove Materiality.

Even if Hi-Lite could prove deception, its claim still fails because it cannot meet its burden in proving Plaintiff's use of its photographs or product numbers was material to the purchasing decisions of consumers.[30]  "The materiality requirement is based on the premise that not all deceptions affect consumer decisions."[31]  To be material, a statement must misrepresent "an inherent quality or characteristic of the product.'"[32]  In the 11th Circuit, "[i]In order to prove deception, consumer survey research is often "key" evidence [but] . . . plaintiff still ***must*** provide some sort of expert testimony or similar evidence."[33]  Hi-Lite has not and can not provided any such evidence, as it must.  Thus, as in *Suntree*, its claim must fail on this prong alone.  *Id.*

### 3.   Hi-Lite's Claim Fails Because It Cannot Prove Secondary Meaning.

Whether a mark has acquired a secondary meaning is a question of fact.[34]  "A name has acquired secondary meaning when the primary significance of the term in the minds of the

---

[28] *Suntree Technologies*, 802 F.Supp.2d at 1287; Sanders Depo., 13:2-9; 33:11-36:24; 41:12-18; 42:12-18; 43:1-22; 51:12-52:1; 54:5–56:13.

[29] Sanders Depo., 43:1-22; 54:5–56:13; 43:1–47:14; 51:1–52:23; 54:5–56:13.

[30] *See Stiefel Laboratories Inc. v. Brookstone Pharmaceuticals, L.L.C.*, No. 12-14309 (11th Cir.  Aug. 19, 2013).

[31] *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247, 1250 (11th Cir. 2002).

[32] *Atlanta Allergy & Asthma Clinics, P.A. v. Allergy & Asthma of Atlanta, LLC*, 685 F. Supp. 2d 1360, 1380 (N.D. Ga. 2010).

[33] *Suntree Technologies*, 802 F.Supp.2d at 1288.

[34] *Tartell v. South Florida Sinus And Allergy Center*, 790 F.3d 1253, 1257 (11th Cir. 2015).

consuming public is not the product but the producer."  *Id.* Hi-Lite cannot establish secondary meaning through its own conclusory statements nor Google search results.  *Dkt*. 172 at ¶6. "[G]eneralized self-serving statements as to reputation ... add no material evidence... that is relevant to the secondary-meaning inquiry."[35]  The "minds of the consuming public," not the Defendant, define what, if any, secondary meaning is attributed to a mark, and as such, the owner of a mark must adduce evidence of what "the [mark] denotes to the consumer," not its own self-interested opinion of the same.  *Id.*

Here, Hi-Lite's attempts to rely on its photos and part numbers as a basis for its 43(a)(1)(B) claim is futile.  Hi-Lite's own distributor and sales representative testified that RLM fixtures identical to Hi-Lite's H-15116 product and Plaintiff's 'The Original™' products are generic and indistinguishable from those manufactured by "tons and tons" of companies.[36] Hi-Lite's H15116 product is sold by thousands of distributors, many of whom advertise the product under differing product names and do not even identify Hi-Lite.[37]  Such inconsistent, unpoliced use of Hi-Lite's alleged marks destroy their ability to identify a source of origin.[38] Thus, it stands to reason that a consumer's purchasing decision would not be swayed by an identical photo and part number used by numerous retailers using different product names; just as one would not be swayed by a photo of a light bulb, another ubiquitous, century old ware, manufactured by GE but sold by many under varying product names.[39]

---

[35] *See Tartell*, 790 F.3d at 1258 citing *Tana v. Dantanna's,* 611 F.3d 767, 777 (11th Cir. 2010).

[36] *See* **Exhibit 8**, Deposition of Cal Lighting ("Cal Lighting Depo."), 23:19-29:13; 61:2–65:8; Sanders Depo., 44:1-45:10; D. Scott Dec. ¶ 13-16, 21 & Ex. A-B.

[37] **Exhibit 9**, Deposition of Jeffrey Ohai ("J. Ohai Depo."), 142:10-14; B. Scott Dec. ¶ 13 & Ex. A (H-15116 sold as "The Patriarch").

[38] *See Nguyen v. Biondo*, 2013 WL 530840 at *3 (11th Cir. 2013) (naked licensing).

[39] *See* B. Scott Dec. ¶ 31 & Ex. F

Hi-Lite's part numbers are equally unavailing as marks. Part number H-15116 is generic.[40] Not even Mr. Sanders, a 16 year veteran employee could identify Hi-Lite's products by their part numbers.[41]   When presented with competitor product numbers in isolation, Mr. Sanders misidentified them as possible Hi-Lite products.[42]   He also testified that, without conducting research, a consumer would not be able to do so either.  *Id.* Without sufficient evidence of secondary meaning, Hi-Lite's part numbers are incapable of serving as a mark.[43]

### 4.   Hi-Lite Has Failed To Provide Evidence of Proximate Causation Or Injury.

Finally, Hi-Lite's claim fails because it has failed to provide any record evidence whatsoever that Plaintiff's alleged misuse of its photos and part numbers has proximately caused, or is likely to cause, it injury.[44]  The Supreme Court has held that a plaintiff alleging a claim pursuant to § 1125(a) "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."[45]  Hi-Lite cannot rely upon its own self-serving and conclusory assertions stating its injuries are "self evident."  Motion, at 12. Moreover, Hi-Lite "may not rest upon mere allegations or denials of [its] pleading," Fed.R.Civ.P. 56(e), and, cannot rely on its pleadings to create a material issue of fact for trial.[46] A § 43(a)(1)(B) movant must adduce evidence showing that consumers withheld business from it due to defendant's false statement.  *Avalos,* 2014 WL 5493242, at *5.  Hi-Lite has not.  "In light

---

[40] *See* B. Scott Dec. ¶ 31, Ex. F.

[41] *Id.* at 60:10-18; 62:11-63:2; 64:18-24.

[42] *Id.*, Ex. Nos. 2A & B (similar "H" part numbers).

[43] *Tartell*, 790 F.3d at 1258.

[44] *See* D. Ohai, 25:21-26:20.

[45] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1391 (2014).

[46] *Lundgren v. Ameristar Credit Solutions, Inc.*, 40 F.Supp.3d 543, 551-52 (W.D. Pa. 2014).

of this failure, [it] cannot establish the necessary nexus for proximate cause." *See e.g. Lundgren*, 40 F.Supp.3d at 551.  Thus, Hi-Lite "has failed to … rais[e] a material issue of fact for trial as to whether [it] has suffered an injury to a commercial interest in his reputation or sales, thereby [its claim is subject to] summary judgment" under the *Lexmark* test.  134 S.Ct. at 1390.

## V.    SUMMARY JUDGMENT IS IMPROPER ON THE COPYRIGHT COUNTS

Hi-Lite's copyright case is overwhelmed by a multitude of issues of material fact.  In sum, Defendants' Motion must be denied as to Counts VI-VIII of the SACC because: (a)  Hi-Lite's copyright registrations should be invalidated; (b) Hi-Lite has not proven ownership in the asserted works; (c) Hi-Lite failed to show that Plaintiff copied the asserted work; and, (d) Hi-Lite's claims are time barred, in part, and barred by an implied license and by the doctrine of equitable estoppel.  Further, this Court should rule in Plaintiff's favor based on: a finding of non-infringement as a matter of law, and Hi-Lite's failure to state a claim without a valid copyright registration.

### A.  Background

Pursuant to Hi-Lite's Registrations, the works deposited with the Copyright Office were first published in 2003, 2004 and 2008.  *See* **Exhibit 10** ("Registrations").  Hi-Lite did not attempt to register its copyrights until 2014.  *Id.*  While the deposits include three catalogs, Hi-Lite is attempting to extend protection to original photographs incorporated in the registered catalogs.  *Id.*  The original photographs, however, were previously published before being recast in the registered catalogs. [47]  Hi-Lite distributed numerous CD-ROMs containing original photographs of its products and digital copies of catalogs and permitted its distributors to use

---

[47] *See* D. Scott Dec. at ¶¶ 29-36.

these materials without any limitations.[48]  The original photographs depicted in the catalogs were taken by various photographers, including independent contractor Dimitri Newman.[49]

Although the Registrations claim rights to the original photographs themselves and represent Hi-Lite as the "author" via the work-for-hire doctrine (*see* Registrations), Hi-Lite offers no evidence of a preexisting written agreement that Mr. Newman's photographs were to be made as a "work-for-hire."  Rather, because it knew Mr. Newman was not engaged in a work-for-hire agreement, Hi-Lite required him to sign a license agreement (**Exhibit 14**, "Newman's License") in 2012 and assignment agreements (**Exhibit 15**, "Assignments") in 2013.  Hence, Hi-Lite knowingly included inaccurate statements in its copyright applications concerning authorship and work-for-hire status.

Hi-Lite also failed to disclose preexisting works to the Copyright Office.  Specifically, earlier versions of the asserted photographs and line drawings depicted in the registered catalogs were previously published by Hi-Lite via an unregistered website and an unregistered catalog.[50]  While the Registrations suggest that their scope includes all of the photographs shown in the deposited catalogs, Hi-Lite failed to submit the original publications of the asserted photographs.[51]  Furthermore, because the original photographs were recast in Hi-Lite's registered catalogs, the catalog images are derivatives of the original work.[52]  Preexisting material, including the original photographs that were previously published, cannot be protected

---

[48] *See* **Exhibit 11**, Defendants' Responses To Plaintiff's Second Request For Admissions ("Resp. 2nd RFAs") at Request No. 9, 71-78.

[49] *See* **Exhibit 12**, Defendant Hi-Lite Manufacturing Company, Inc.'s Responses to Plaintiff's Second Set of Interrogatories ("Resp. 2nd Interrog.") at Interrogatory No. 9; *see also* **Exhibit 13**, Defendants' Responses To Plaintiff's First Request For Admissions ("Resp. 1st RFAs") at Request Nos. 28-30.

[50] *See* D. Scott Dec., ¶¶ 29-36.

[51] The copyright deposit material cannot be a later version of the asserted work.  *See Pegasus Imaging Corp. v. Allscripts Healthcare Sols., Inc.*, 2009 Copr. L. Dec. P 29875, 2010 WL 497720, at *8 (M.D. Fla. Feb. 9, 2010), citing *Geoscan, Inc. v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000) (dismissing plaintiff's copyright infringement claim for lack of jurisdiction where the facts reflected that plaintiff submitted a later version).

[52] *See* D. Scott Dec., ¶¶ 29-36.

by registrations for the derivative works.[53]  *See* 17 U.S.C. § 103(b).  Rather, the Registrations can protect only new material, such as the background effects engulfing the catalog images.

All of the accused photographs shown in Defendants' Motion are images from archived magazines that were used with Hi-Lite's permission at the time that the national magazines published.[54]  To the extent that these archived magazine images are used as historical news of the popularity of the depicted products, the fair use doctrine should apply.  Nonetheless, a close comparison of the original photographs, the Registration deposits, and the archived magazines demonstrate that the accused magazine photographs were not copied from the derivative photographs recast in the Registration deposits.[55]  Furthermore, a careful comparison of the many differences between the registered line drawings from the deposited work and the unregistered versions shown in the Motion demonstrates that Hi-Lite's analysis is misleading.[56]

### B.  Hi-Lite's Copyright Registrations Should be Invalidated

#### 1.  Due To Hi-Lite's Delay In Obtaining the Registrations, The Certificates Should Not Be Afforded Any Weight

Because each of Hi-Lite's Registrations were obtained more than five (5) years after the date of first publications listed on the Registrations (*see* Registrations), this Court should deny any weight to the Registrations.[57]  Given its delay in securing its copyrights, Hi-Lite cannot rely on a presumption of validity in order to establish "prima facie evidence of the validity of the

---

[53] The Copyright Act defines "derivative work" as "a work based upon one or more preexisting works, such as … any other form in which a work may be **recast, transformed, or adapted**."  17 U.S.C. § 101 (emphasis added).

[54] *See* Defendants' Motion, at 16-24; *see also* B. Scott Dec., ¶ 21.

[55] *See infra* sub-section D.

[56] *See infra* sub-section B.6.

[57] Section 410(c) of the Copyright Act provides: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."  *See also Pegasus Imaging Corp.*, 2010 WL 497720, at *9 ("Importantly, because the registration was made more than five years after first publication of the work, Pegasus does not benefit from a presumption of validity of the copyright registration."); *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, 2011 WL 4005454, at *3 (S.D. Fla. Sept. 8, 2011) ("If the registration is made more than five years after first publication, then there is no presumption of validity.").

copyright and of the facts stated in the certificate."   17 U.S.C. § 410(c).  Having improperly relied upon such a presumption, Hi-Lite failed to proffer the requisite evidence to support its copyright claims and therefore Defendants' Motion must be denied.[58]

### 2.   Any Presumption of Validity Is Rebutted

"A certificate of registration … is not conclusive on the copyright ownership issue."[59] "'Once a plaintiff produces a certificate of registration, the burden shifts to the defendant.'"[60] "[T]o rebut the presumption of validity, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."[61]  In the event that this Court provides any weight to Hi-Lite's Registrations despite the untimely filing of its copyright applications, the Court should not find the Registrations to be valid in light of the preexisting photographs and Hi-Lite's noncompliance with formal statutory requirements.[62]

### 3.   Hi-Lite Failed To Comply With Formal Statutory Requirements

Hi-Lite's position regarding whether the three catalogs in the asserted Registrations are considered a compilation, derivative, or some other copyrightable work is unclear.  Regardless, the outcome is the same: Hi-Lite failed to comply with the applicable statutory requirements. The Registrations aver that the "author created": text, photograph(s), 2-D artwork (*see*

---

[58] A "prima facie case of copyright infringement requires a plaintiff to prove that the work is original and that the plaintiff complied with the applicable statutory formalities."  *AppSoft Dev., Inc. v. Diers, Inc.*, 2014 WL 3893316, at *5 (M.D. Fla. Aug. 8, 2014), citing *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010); *see also Bateman v. Mnemonics, Inc*., 79 F.3d 1532, 1541 (11th Cir. 1996) ("To 'satisfy *Feist's* first prong, a plaintiff must prove that the work ... is original and that the plaintiff complied with applicable statutory formalities.'"), quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995), *aff'd by*, 516 U.S. 233 (1996).

[59] *Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*, 549 Fed. Appx. 913, 918-19 (11th Cir. 2013) (holding that the presumption of copyright validity from a certificate of registration was rebutted because the works at issue were useful articles that did not contain separable copyrightable elements; and affirming summary judgment of non-infringement because light fixtures did not contain separable elements entitled to copyright protection).

[60] *Id*., quoting *Latimer*, 601 F.3d at 1233 (internal quotation marks omitted); *see also Bateman*, 79 F.3d at 1541 n. 20 (11th Cir. 1996) ("this presumption is rebuttable").

[61] *Id*., quoting *United Fabrics Int'l, Inc. v. C & J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (internal alterations omitted), citing *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005).

[62] *See Block State Testing Services, L.P. v. Kontractor's Prep Corp.*, 4 F. Supp. 2d 1365, 1366-67 (M.D. Fla. 1997) (finding sufficient rebuttal of prima facie case of infringement in light of an inadvertent material omission).

Registrations, at 1); text, photograph(s), 2-D artwork, technical drawings (*see id.*, at 2); and, photograph(s) (*see id.*, at 3).  Notably, none of the Registrations mentioned a compilation or derivative work as the author's creation or basis of claim.  *See id.*

Based on the subject matter claimed in the Registration, Hi-Lite intended to register the photographs themselves as original works.  However, the Registrations incorrectly list Hi-Lite as the author – rather than the true author of the photographs – and include other known inaccuracies.  *See infra* sub-sections 4, 5.  Moreover, Hi-Lite failed to disclose preexisting works.  *See* Registrations; *see also infra* sub-section 6.  Hi-Lite clearly failed to comply with the statutory requirements.  While the Registrations expressly reference the "photograph(s)," the Copyright Act precludes protection in any preexisting material.  17 U.S.C. § 103(b).

Assuming arguendo that Hi-Lite intended the works to be registered as compilations or derivative works of the original photographs, the Registrations still fail to comply with the applicable legal requirements.  In the case of a compilation or derivative work, the Copyright Act expressly requires "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."  17 U.S.C. § 409(9).  Due to its noncompliance with these statutory requirements, Hi-Lite has failed to satisfy the first prong of the prima facie case for infringement.

### 4.   Both Mr. Newman's Copyright License and Assignments Preclude the Application of the Work-For-Hire Doctrine

The photographs depicted in Hi-Lite's catalogs at issue were taken by various photographers, including independent contractor Dimitri Newman.[63]  Although the Registrations claim rights to the photographs themselves and represent Hi-Lite as the "author" via the work-for-hire doctrine, Hi-Lite offers no evidence of a preexisting written agreement that Mr.

---

[63] *See* Exhibit 12, Resp. 2nd Interrog. at Interrogatory No. 9; Exhibit 13, Resp. 1st RFAs at Request Nos. 28-30.

Newman's photographs were to be made as a "work-for-hire."  As such, the subject matter that Hi-Lite seeks to assert via its Registrations cannot be considered a work-for-hire.[64] Documentary evidence forecloses any argument that the photographs were a work-for-hire.

First, Mr. Newman's assignments state that he was the author of the copyrighted works. *See* Assignments.  Specifically, the Assignments[65] state that Hi-Lite purchased the works (i.e. copies of the photographs, "Newman's Photographs"), and that "at the time of the purchase [of Newman's Photographs], [Mr. Newman] represented to [Hi-Lite], and herein confirms, that [Mr. Newman] was the sole author of [Newman's Photographs]; Author owned all copyright rights in and to [Newman's Photographs]." *Id*.  Hence, Newman's Photographs were not subject to the work-for-hire doctrine.  If they were, Hi-Lite – not Mr. Newman – would have been acknowledged as the author.[66]  Rather, the Assignments memorialize Hi-Lite's and Mr. Newman's understanding of their respective rights at the time that the works were created: neither intended for a work-for-hire arrangement.

Second, Hi-Lite asked Mr. Newman to sign a license agreement dated Dec. 18, 2012.[67]  If Hi-Lite believed that it could rely on the work-for-hire doctrine for copyright ownership of Newman's Photographs, there is no need for a written license from Mr. Newman in 2012. Hi-Lite clearly knew that it was not the author or copyright owner of Newman's Photographs.

Third, Hi-Lite produced an unsigned amendment to copyright assignment (**Exhibit 17**, "Amendment"), which dates back to October 6, 2014 per its metadata.  The Amendment demonstrates that, after the commencement of this action, Hi-Lite intended to have Mr. Newman

---

[64] *Ivory v. Holme*, No. 8:07-CV-2354-T-TBM, 2009 WL 513720, at *8 (M.D. Fla. Feb. 27, 2009), citing the "work made for hire" definition pursuant to 17 U.S.C. § 101 (requiring a written instrument for commissioned works).

[65] Due to the low quantity of the copies of the Assignments provided by Defendants, an unsigned draft version of the copyright assignment agreement is attached as **Exhibit 16** for the Court's reference.

[66] *See, e.g., Sterpetti v. E-Brands Acquisition, LLC*, 2006 Copr. L. Dec. P 29211, 2006 WL 1046949, at *4 (M.D. Fla. Apr. 20, 2006).

[67] *See* Exhibit 14, Newman's License.

assign "*nunc pro tunc* as of the date of the Assignment" 67 photographs as a supplemental exhibit and any photographs depicted in Catalog 208 as another exhibit.  This suggests that the 208 Catalog was modified and derivative works exist that require separate protection.  *See infra* sub-section 6.

### 5.  The Known Inaccuracies of Authorship and Work-for-Hire Status In the Registration Preclude Defendants' Copyright Claims

As discussed above, Hi-Lite obtained its copyrights via assignments – not the work-for-hire doctrine.  The distinction between the two concepts is critical[68, 69] and emphasized on copyright applications.[70]  It would be disingenuous for Defendants to argue that the inaccurate authorship information and work-for-hire status provided in the Registrations were inadvertent mistakes.  As explained above, Hi-Lite was well aware that it was not the author of Newman's Photographs – having sought a license and assignments from Mr. Newman.  Hence, it is undisputable that Hi-Lite had knowledge of the inaccuracies included in the Registrations.

Even if Hi-Lite's knowledge of these inaccuracies is challenged, this Court should preclude any presumption of validity and require Hi-Lite to establish the basis of its claim for registration of the particular works deposited with the Copyright Office.[71]  In *Block State Testing*, plaintiff's application for registration claimed authorship in the entire text of a manual

---

[68] A properly executed work-for-hire agreement would make Hi-Lite the "author" of the work and hence the original copyright owner, whereas a transfer would convey ownership – not authorship – of the copyright.  17 U.S.C. § 201.

[69] When work-for-hire status is claimed, as done by Hi-Lite in the Registrations, the year of publication is particularly critical because it determines the length of the copyright term.  *See* 17 U.S.C. § 302(c).[69]  By failing to disclose the publication date for each photograph, Hi-Lite's Registration do not provide the public with any certainty as to when Hi-Lite's purported copyright in any particular photograph expires and enters the public domain.

[70] Copyright applications issued by the Copyright Office provide detailed instructions based on this distinction and step-by-step directions.  Since Hi-Lite did not produce copies of the applications that it submitted to the Copyright Office, a true and correct copyright application and its instructions have been attached as **Exhibit 18** ("Blank Form") for the Court's reference.  The form includes a conspicuous "NOTE" adjacent to Section 2 which reminds the applicant that "[u]nder the law, the "author" of a "work made for hire" is generally the employer" and that two affirmative steps would be required: check "Yes" to confirm that the work was "made for hire" and provide the employer's name as the "author."  *See* Blank Form.

[71] *See Block State Testing Services, L.P.*, 4 F. Supp. 2d at 1366-67 (requiring plaintiff to establish the copyrightability of the work claimed to be infringed).

even though a substantial portion of the manual consisted of material not authored by plaintiff. *Id*. This Court found such inaccuracies to be significant. *Id*. Here, Hi-Lite has failed to establish the basis of its claim for registration of the works. Hence, its motion should be denied.

### 6. The Known Inaccuracies of Undisclosed Preexisting Works And Publication Dates Further Preclude Defendants' Copyright Claims

It is undisputed that Hi-Lite did not list any preexisting works in its copyright applications. *See* Registrations. Nonetheless, it is admitted that "additional product photographs, line drawings, and part numbers" were provided along with Hi-Lite's "various catalogs, including the 203 Catalog, 205 Catalog, and the 208 Catalog." *See* Ohai Dec. [Dkt. 172] at ¶ 14. Indeed, Hi-Lite distributed numerous CD-ROMs containing photographs of its products and digital copies of its catalogs, and permitted its distributors to use these photographs without any written limitations.[72] With respect to each of the Registrations, Hi-Lite also confirmed that the claimed photographs were first published in different years.[73] In addition to the three registered catalogs, Hi-Lite provided Plaintiff with CD-ROMs containing standalone pictures and other catalogs which contained earlier versions of the asserted photographs.[74]

For example, one of Hi-Lite's catalogs – the "RLM Catalog" – contains images dating back to May of 2006.[75] The original photographs of Hi-Lite's products lack the background effects utilized in the RLM Catalog and the 208 Catalog.[76] Accordingly, the images in the catalogs are derivative works.[77] Because Hi-Lite's CD-ROMs have been previously distributed to licensees, such as Plaintiff, without any restrictions, the original photographs are preexisting

---

[72] *See* Exhibit 11, Resp. 2nd RFAs at Request No. 9, 71-78.

[73] *See* Exhibit 13, Resp. 1st RFAs at Request Nos. 31-33 ("REQUEST #33: Admit that each and every photograph in Catalog 208 was first published in the same calendar year. RESPONSE: Denied.").

[74] *See* D. Scott Dec., ¶¶ 29-36; **Exhibit 19**, Chart of Preexisting Photos and Registered Works.

[75] *See* D. Scott Dec., ¶¶ 29-36; Exhibit 19, Chart of Preexisting Photos and Registered Works.

[76] *See* Exhibit 19, Chart of Preexisting Photos and Registered Works.

[77] "A 'derivative work' is a work based upon one or more preexisting works, … such as … any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

works that Hi-Lite should have disclosed in its copyright applications for the derivative images. Therefore, Hi-Lite failed to comply with the statutory requirements for such derivative works.[78] Furthermore, because it is undisputed that Hi-Lite knew it had previously distributed photographs on CDs,[79] its failure to disclosure the preexisting works was a known inaccuracy.

Likewise, the line drawings previously distributed by Hi-Lite are preexisting works, while the line drawings in the 208 Catalog submitted to the Copyright Office are derivative works.[80]   Indeed, the original line drawings have been "recast, transformed, or adapted" several times.[81]   For example, the registered version of Hi-Lite's B-4 drawing is notably different from the versions asserted in Defendants' Motion, at 25-26.   *Id*.   As such, Defendants' Motion improperly compares the accused drawings to unregistered drawings.   *Id*.   By comparing the registered drawing side-by-side with the unregistered versions shown in the Motion, this Court may note that the drawings contain certain dimensions, callouts, descriptions, shadings, and watermarks that are in fact different.   These differences have been circled in red in Exhibit 22. Because Defendants' incorrect assertions have been rebutted, its Motion should be denied. Moreover, because the Registrations cannot protect preexisting material pursuant to 17 U.S.C. § 103(b), Hi-Lite failed to limit its claim to appropriate subject matter.

### 7.   Pursuant to § 411 of the Copyright Act, These Inaccuracy Issues Must Be Referred to the Copyright Office for an Advisory Opinion

Without a valid registration, Hi-Lite cannot bring an action for copyright infringement. 17 U.S.C. § 411(a).[82]   On Oct. 13, 2008, the Copyright Act was amended to add the following:

---

[78] *See* 17 U.S.C. § 409(9).

[79] *See* Exhibit 11, Resp. 2nd RFAs at Request No. 72-73.

[80] *See* D. Scott Dec., ¶¶ 29-36; **Exhibit 20**, Chart of Preexisting Drawings and Registered Works.

[81] *See* Exhibit 20, Chart of Preexisting Drawings and Registered Works.

[82] *See also Dowbenko v. Google Inc.,* 582 Fed.Appx. 801, 805 (11th Cir. 2014) ("The Supreme Court recently clarified that, although § 411(a)'s registration requirement is not jurisdictional, it nevertheless amounts to 'a precondition to filing a claim.'"; affirming the dismissal of a copyright claim based on a motion to dismiss the

(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—
(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

§ 411(b).  Before enactment of these provisions, the Eleventh Circuit applied its own precedent to the issue of inaccurate registrations.[83]  While the scienter standard is applicable for the defense of fraud on the Copyright Office, the Copyright Act now sets forth an express procedure for when registrations are challenged by allegations of known inaccuracies.  Based on the statutory mandate of § 411(b), such procedures are triggered without any allegation of fraud or scienter.[84]

In *Olem Shoe*, the court submitted several questions to the Register of Copyrights concerning alleged inaccuracies in the copyright applications for the copyright registrations at issue.  *Id.*, at *3-6.  For the reasons stated above, this Court should refer the issues concerning

complaint for failure to state a claim); *Kernel Records Oy v. Mosley,* 694 F.3d 1294, 1303-05 (11th Cir. 2012) (noting that if the work was not foreign, "registration was required prior to suit," and finding that work was not a foreign work exempt from the registration requirement); *Watson v. K2 Design Group, Inc.*, No. 15-CIV-61020, 2015 WL 4720797, at *3 (S.D. Fla. 2015) ("this Court follows the rationale of its predecessors who have had occasion to consider this issue and the Eleventh Circuit: while not a jurisdictional bar, the explicit language of § 411(a) provides a statutory bar to suit which requires a plaintiff to first obtain registration for the work at issue prior to initiating suit."); *Marc Anthony Builders, Inc. v. Javic Properties, LLC*, No. 8:11-CV-00432-EAK, 2011 WL 2709882, at *2 (M.D. Fla. 2011) (holding that the registration requirement is a "mandatory precondition to suit" that a district court should consider *sua sponte*, and consequentially granting a motion to dismiss the copyright claims); and *Jim Marshall Photography, LLC v. John Varvatos of Cal.*, 109 U.S.P.Q.2d 1114 (N.D. Cal. 2013) (disposing of copyright claims on summary judgment based on the finding that registrant's copyrights only covered books as compilations, and not the individual images in the books).

[83] In *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261 (M.D. Fla. July 8, 2008), only three months prior to the enactment of § 411(b), this Court held that "[i]n the Eleventh Circuit, omissions or misrepresentations in a copyright application render the registration invalid only when there is 'intentional or purposeful concealment of relevant information,' that is, scienter."  *Id.* at 1271-72 (finding the failure to identify a work as a compilation is not fatal to the validity of the registration when defendants failed to identify any evidence of scienter with respect to plaintiff's application), citing *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 828 (11th Cir. 1982) (finding that there was no fraud on copyright office where plaintiff had not completed item 6 at direction of copyright office personnel) and *Donald Frederick Evans *1272 and Assocs., Inc. v. Cont'l Homes, Inc.,* 785 F.2d 897, 904 (11th Cir. 1986) (affirming a finding of validity where defendants introduced no evidence of scienter).

[84] *See Olem Shoe Corp. v. Washington Shoe Co.,* 2010 WL 3505100, at *2 (S.D. Fla., Sept. 03, 2010) (holding that allegations of inaccurate information are sufficient to trigger the advisement requirement).

the inaccuracies of the authorship, work-for-hire and preexisting works to the Copyright Office for an advisory opinion.  For the Court's consideration, a list of proposed questions to be submitted to the Copyright Office is attached as **Exhibit 21**.

### C.  Hi-Lite Has Not Established Its Ownership Rights

While the unexecuted draft of the Amendment includes proposed exhibits, the copies of the signed Assignments produced by Hi-Lite did not include copies of the exhibits.  *See* Assignments; Amendment, Suppl. Ex. A & Ex. B.  Because Hi-Lite has not shown which of Newman's Photographs were covered by the three Assignments, Hi-Lite has not provided any proof of ownership of the purportedly asserted copyrights.  Indeed, the three Assignments merely describe the work at issue as follows: "the work designated as a Collection of Photographs as illustrated in Exhibit A."  *See* Assignments.  We are simply left to wonder which "Collection[s] of Photographs" were assigned, despite the fact that Hi-Lite has the burden of proving ownership.[85]  Because Hi-Lite failed to satisfy its burden, Defendants' Motion on the copyright claims cannot be granted.

### D.  Hi-Lite Fails to Show Actual Copying of the Registered Work

Hi-Lite failed to prove Plaintiff copied "constituent elements of the work that are original."[86]  The Court "must apply the substantial similarity test to only those elements of the copyrighted work that are actually subject to copyright protection—that is, elements of original expression in the copyrighted work."[87]  "To satisfy *Feist's* second prong, a plaintiff must

---

[85] "To establish a prima facie case of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Latimer*, 601 F.3d at 1232-33, quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991).

[86] *Baby Buddies, Inc. v. Toys R Us, Inc.,* 611 F.3d 1308, 1315 (11th Cir. 2010), quoting *Feist,* 499 U.S. at 361.

[87] *Id.* at 1316; *see also Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460-64 (11th Cir. 1994) (affirming the district court's finding of similarities consisted of noncopyrightable elements).

establish, as a factual matter, that the alleged infringer actually copied plaintiff's copyrighted material."[88]

In addition to the fact that Plaintiff had access to preexisting works, such as Newman's Photographs and the RLM Catalog, there is no dispute as to the source of the photographs used in the magazines archived on Barn Light Electric's website.  A comparison of the original photographs, the Registration deposits, and the archived magazines demonstrate that the accused magazine photographs were taken directly from Newman's Photographs in their original form – and not from the derivative photographs recast in the Registration deposits.  The accused photographs from certain archived magazines contain subject matter, i.e. chain links, that do not appear in the asserted Registration photographs yet appear in preexisting original works.[89]  Thus, necessarily, the accused photographs could not have been copied from the asserted photographs.

Furthermore, as discussed in *supra* sub-section B.6., the asserted Registrations cannot cover any previously published photographs pursuant to 17 U.S.C. § 103(b).  It is undisputed that the original works, and the RLM Catalog, were previously published.  Mr. Newman distributed his original photographs to Hi-Lite for further dissemination without any disclosure restrictions.[90]  Indeed, Newman's License provides: "I waive my right to inspect or approve the finished product … I understand that, although Hi-Lite will endeavor to use the above in accordance with standards of good judgment, Hi-Lite cannot warrant or guarantee that any further dissemination of the above will be subject to Hi-Lite's supervision or control."[91]  Furthermore, Hi-Lite delivered Newman's Photographs and its catalogs to Plaintiff and other

---

[88] *Latimer*, 601 F.3d at 1233.

[89] *See* **Exhibit 22**, Chart of Non-Infringing Works.

[90] *See* Exhibit 11, Resp. 2nd RFAs at Request No. 9, 71-78.

[91] Exhibit 14, Newman's License.

distributors without any restrictions with respect to disclosure of its contents.[92] The evidence fails to establish actual copying of original work that was not previously published[93] by Mr. Newman, Hi-Lite, [94] its distributors or national magazines[95]. Therefore, this Court should deny summary judgment to Defendants on the copyright infringement claims.

### E. Hi-Lite's Copyright Claims Are Barred By Plaintiff's Implied License, the Doctrine of Equitable Estoppel and The Statute of Limitations

Additionally, Defendant's Motion must be denied as to its copyright claims as a matter of law because: (i) Hi-Lite granted Barn Light Electric an irrevocable nonexclusive implied license to copy and distribute its works; (ii) Hi-Lite's claims of copyright infringement are barred by the doctrine of equitable estoppel; and (iii) to the extent Hi-Lite's claims of copyright infringement include allegations of copyright infringement which accrued prior to April 2, 2012, such claims are time barred under 17 U.S.C. §507(b).   These arguments are discussed in detail on pages 28-38 of Plaintiff's Motion (Dkt.165), which are hereby incorporated by reference.

### F. Cross-Motion for Non-Infringement Pursuant to Rule 56, and for Failure to State a Claim Pursuant to Rule 12(b)(6) and 17 U.S.C. § 411(a)

The Eleventh Circuit has "recognized that 'non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two

---

[92] Exhibit 13, Resp. 1st RFAs at Request Nos. 23, 35, 36 & 37 (admission by Hi-Lite that images were sent to Barn Light Electric from Catalog 203, 205 and 208 "without any written limitation regarding Barn Light Electric's use" of such photographs.); *see also* Exhibit 13 (filed under seal as S-180) of Dkt. 165, Comp. Exh. (evidencing transmissions of photographs by Hi-Lite to Barn Light Electric).

[93] The Copyright Act defines "publication," in relevant part, as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication."  17 U.S.C. § 101.

[94] *See* D. Scott Dec., ¶¶ 29-36 & Ex. B (archived website demonstrating publication of an original photograph in 2006 that was later recast by Hi-Lite in Catalog 208) & Ex. C (archived website demonstrating publication of an original line drawing in 2006 that was later transformed by Hi-Lite in Catalog 208).

[95] The same photographs accused of infringement on pages 21-22 of Defendants' Motion were published in the May 2008 edition of the *Traditional Home* magazine.  *See* D. Scott Dec., ¶ 58 & Ex. L.  As such, Hi-Lite frivolously attempts to assert protection for photographs contained in its 208 Catalog, which first published on May 14, 2008 per the Registrations, even though Hi-Lite had knowledge that such photographs were previously published.

29

works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'"[96] Here, any similarity between the asserted photographs and the accused photographs concerns only preexisting work, i.e. the photographs previously published by Mr. Newman, Hi-Lite, its distributors or national magazines. As such, this Court has discretion to find non-infringement as a matter of law. Plaintiff hereby respectfully makes its cross-motion for non-infringement.

Furthermore, a failure to comply with § 411(a)'s registration requirement amounts to a failure to state a claim, which cannot be waived.[97] Even though Barn Light Electric did not raise dismissal of Defendants' copyright claims in its motion for partial summary judgment, this Court has the authority to dismiss Defendants' copyright claims *sua sponte* at any time – should the Court find that Hi-Lite's Registrations are invalid or that their scope cannot protect the asserted photographs. In *Kernel Records Oy*, the Eleventh Circuit noted that The Supreme Court "reserved the question of whether district courts may or should enforce the registration prerequisite sua sponte."[98] The *Mosley* Court did the same because Mosley raised the issue of registration in a motion for summary judgment. *Id.* Here, Barn Light Electric affirmatively raises § 411(a)'s registration requirement in this cross-motion.

---

[96] *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008), quoting *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1247 (11th Cir. 1999).

[97] *See Dowbenko,* 582 Fed.Appx. at 805 (affirming dismissal of copyright claim for failure to state a claim); *Marc Anthony Builders, Inc.*, at *1-3 (dismissing copyright claim for failure to state a claim on a motion evaluated as a 12(c) motion); *BWP Media USA Inc. v. A.R. Commc'ns, LLC*, No. 6:14-CV-120-ACC-KRS, 2014 WL 5038590, at *3 (M.D. Fla. 2014) ("Unregistered Photographs cannot support a claim for copyright infringement").

[98] *Kernel Records Oy,* 694 F.3d at 1302 n.8, citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170-71 (2010).

## VI.   OHAI'S THIRD COVENANT STILL FAILS TO EXTINGUISH THE DISPUTE REGARDING THE '477 PATENT

### A.  Background—Ohai's Wack-A-Mole Covenants

By repeatedly offering covenants not to sue that are deliberately ambiguous and far narrower than what is necessary to extinguish the dispute with Barn Light Electric, Defendants are playing a vexatious game of wack-a-mole at the expense of Barn Light Electric and this Court.

After months of contentious discovery, and now that Barn Light Electric has evidence establishing that the '477 patent is invalid and was obtained through inequitable conduct before the USPTO, Ohai proffered a third covenant attached to Defendants' Motion.[99]   Rather than accepting the legitimate covenant offered by Barn Light Electric, Ohai attached the following to Hi-Lite's motion for summary judgment:

> I unconditionally agree not to sue Barn Light Electric for any past, present, or future infringement of the '477 Patent based upon the product depicted in **EXHIBIT Q**.  This includes variants of that product that differ only in length.  I am not aware of any products currently manufactured, sold, or offered for sale by Barn Light Electric that infringe the '477 Patent.  Nor am I aware of any other products implicated by my letter of August 21, 2014.

Ohai Covenant.   As a result of Ohai and Hi-Lite's stubborn refusal to proffer a good-faith covenant of appropriate breadth, Defendants have not extinguished the dispute created in their cease and desist letter.

### B.  The Ohai Covenant Does Not Moot The Controversy

#### 1.   The "Formidable Burden" Created by *Already* and its Progeny

To extinguish the controversy here, Defendants must make it "absolutely clear that [their] allegedly wrongful behavior could not reasonably be expected to recur."[100]   The party attempting

---

[99] *See* Declaration of Jeffrey L. Ohai, Dkt. 172, ¶ 31 ("Ohai Covenant").
[100] *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013).

to moot a controversy with a covenant not to sue has a "formidable" burden to make this showing.[101]   To avoid duplication, Barn Light Electric hereby incorporates by reference herein those legal authorities and arguments set forth in Barn Light Electric Oppositions, Dkt. 29 at 4-10, and 69 at 5-8, which are directly relevant and applicable to the third Ohai Covenant. Just as in Ohai's past defective covenants, as shown below, Ohai's narrow "picture covenant" misses Defendants' formidable burden to show that it is "absolutely clear that the allegedly wrongful behavior of the defendant could not reasonably be expected to recur."[102]

## 2.   Hi-Lite Is Withholding A Covenant

Ohai's covenant leaves a gaping hole as to Hi-Lite, the company that expressly threatened Barn Light Electric in the cease and desist letter.  At the inception of this dispute, Hi-Lite threatened Barn Light Electric.[103]   Hi-Lite, however, refuses to offer a covenant not to sue. To extinguish the present controversy, both Hi-Lite and Ohai must offer a covenant not to sue.

Defendants' counsel fully understand the importance of providing a covenant from *all parties* that make a threat.   In *Argonide Corp. v. In-Tec Water Prods., LLC*, Case No. 6:09-cv-852, Doc. 25 (M.D. Fla., Dec. 17, 2009), the defendants, represented **by Defendants' counsel in this case**, argued that there was no case or controversy based on the following unconditional covenant not to sue provided by **both** defendants: [104]

> In-Tec Water Products, LLC and John E Nohren, Jr. hereby unconditionally agree not to sue [Plaintiff] for any past, present or future contributory infringement or induced infringement as to any claim of U.S. Patent No. 7,473,362, based on the products currently manufactured and sold by [Plaintiff].

---

[101] *See e.g. Higher One, Inc. v. TouchNet Info. Sys., Inc.*, No. 3:10-CV-1435, 2014 WL 4798546, at *4 (D. Conn. 2014); *PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*, 951 F. Supp. 2d 1083, 1089 (E.D. Ark. 2013)*; Already, LLC*, 133 S. Ct. at 727.

[102] *Already, LLC*, 133 S. Ct. at 727.

[103] *See* Cease and Desist Letter, Dkt. 29-1 at 5.

[104] The *Argonide* Court never reached the merits of the renewed motion to dismiss and thus it remains an issue whether the covenant in that case was even sufficient.

It bears emphasis that the covenant Hi-Lite's counsel relied on in *Argonide* was provided by both a non-assignee company (In-Tec Water Products, LLC) and a sole inventor (John E. Nohren, Jr.). That is precisely the case here, where we have a non-assignee company (Hi-Lite) and a sole inventor (Ohai). Nevertheless, unlike *Argonide*, the Defendants refuse to provide any covenant from Hi-Lite. Even if Hi-Lite argues that by operation of law it is subject to the covenant offered by Ohai, there would be no meaningful reason for Hi-Lite to withhold such a covenant given that it made the original threats to sue Barn Light Electric.

### 3.   The Ohai Covenant Is Limited To A Single Product

Defendants failed to meet their formidable burden to moot the controversy because the Ohai Covenant does not extend to all of Barn Light Electric's products, but is limited to a ***single*** product depicted in a photograph. This means that the Ohai Covenant is of far narrower scope than Defendants' threat, which covered ***all*** of Barn Light Electric's product**s**. [105]

Without a broad covenant commensurate with Defendants' expansive infringement threats, Defendants can reasonably be expected to reassert their infringement claims against Barn Light Electric and its distributors and customers. Indeed, courts that have found covenants to be sufficient have typically done so ***because*** the covenant covered ***all*** of the alleged infringers' current and anticipated products. [106] Defendants have not identified a single case where any court accepted a covenant limited to a single photograph of a product.

All of Defendants' hand-waiving about Ohai's limited knowledge of only one product presently sold by Plaintiff is irrelevant. Defendants' cease and desist letters expansively covered ***all*** of Barn Light Electrics' products, including those known and unknown to Ohai. This presumably included all those previously sold by Barn Light Electric—including extended

---

[105] *See* Cease and Desist Letter, Dkt. 29-1 at 5.
[106] *See e.g. Already, LLC*, 133 S. Ct. at 729 (finding covenant not to sue that extended to current and/or previous footwear product designs and any colorable imitation thereof was sufficiently broad).

couplers different from the shown in the photograph provided at Exhibit Q of the Ohai Declaration. This includes couplers with tapered threads.[107] Unquestionably, Defendants' manifest intent was to force Barn Light Electric to stop selling **all** products that might fall within the scope of Defendant's patent and application. Thus, the Defendants must provide an equally broad covenant.

Moreover, even though they did not propound discovery on the topic of products under development, Defendants mistakenly assume that Barn Light Electric does not have concrete plans to develop and commercialize products other than those depicted in Exhibit Q of Ohai's Declaration, which would be encompassed by Defendants' sweeping infringement accusations. Barn Light Electric has more than just plans—it has developed at least one product not covered by the photograph in the Ohai Covenant.[108] In particular, Barn Light Electric developed the product shown in Exhibit 23, which is both functionally and physically different than the product depicted in Exhibit Q to the Ohai Covenant. Although Barn Light Electric has yet to manufacture, sell or offer for sale its new coupler, it certainly has plans to do so.[109] The existence of the new Barn Light Electric coupler product—without more—certainly establishes that Barn Light Electric has concrete plans to engage in activities not covered by the covenant. Accordingly, there is no question that Ohai's covenant does not pass muster under *Already* and its progeny.

### 4.   Other Problems With The Ohai Covenant

By merely stating that Ohai has "determined that he will not be asserting any infringement," rather than providing an unconditional and irrevocable covenant, Defendants

---

[107] *See* B. Scott Dec., ¶ 32.
[108] *See* **Exhibit 23**; *see also*, B. Scott Dec., ¶ 33.
[109] *See* Exhibit 23, B. Scott Dec,. ¶ 34.

leave room for Ohai to assign the patent to the remaining defendants or a third party, not bound by the covenant.  Drafting a covenant to overcome this problem would be straight-forward. *Commercial Recovery Corp. v. Bilateral Credit Corp., LLC*, 2013 WL 8350184, at *4 (S.D.N.Y. Dec. 19, 2013) (finding covenant not to sue that was made on behalf of defendant and "any successors-in-interest" to the patent in issue to be sufficiently broad).

Further, while the Ohai Covenant should be construed as a matter of law to cover downstream purchasers of the products sold by Barn Light Electric, the covenant provided does not explicitly provide that it extends to Barn Light Electric's employees, distributors, or customers.[110] From Barn Light Electric's perspective, this leaves open the same concerns about having to deal with the Defendants' future threats of suit.

For these reasons Defendants again failed to meet their burden to show that the Ohai Covenant limited to a product in a single photograph is sufficient to make "absolutely clear that the allegedly wrongful behavior of the defendant could not reasonably be expected to recur." *Spicy Beer Mix, Inc. v. New Castle Beverage*, 2014 WL 7672167, at *5 (C.D. Cal. Aug. 1, 2014).

## VII.   CONCLUSION

Accordingly, Hi-Lite is not entitled to judgment as a matter of law on Counts V, VI, VII, and VIII of the SACC, and Defendant Jeffrey L. Ohai is not entitled to judgment as a matter of law on Counts IX, X, XI, and XII on Plaintiff's Third Amended Complaint.

Dated:  December 23, 2015                    Respectfully submitted,

                                             /s/Alejandro J. Fernandez
                                             _____
                                             By: Alejandro J. Fernandez
                                                 Board Certified in Intellectual Property Law
                                                 FL. Bar No.: 32221

---

[110] *AstraZeneca LP v. Breath Ltd.*, 2013 WL 2404167, *3 (D.N.J. May 31, 2013) ("Unlike in [*Already*], [plaintiff's] covenant does not state that it is unconditional and irrevocable and does not cover its suppliers, distributors, and customers.").

E-mail: AFernandez@FeldmanGale.com
Gregory L. Hillyer, Esq
Fla. Bar No. 682489
E-mail: GHillyer@FeldmanGale.com
Stephen J. Leahu, Esq.
FL Bar No. 54037
E-mail: SLeahu@FeldmanGale.com
Joseph R. Sozzani, Esq.
*Admitted Pro Hac Vice*
E-Mail: JSozzani@FeldmanGale.com
Matthew N. Horowitz, Esq.
Fla. Bar No. 98564
E-mail: MHorowitz@FeldmanGale.com
**FELDMAN GALE, P.A.**
400 N. Tampa Street, Suite 2830
Tampa, FL 33602
Telephone No. (813) 374-8890
Telefacsimile No. (305) 358-3309

***Counsel for Plaintiff, Counterclaim-***
***Defendants and Third Party Defendants***

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 23[th] day of December 2015, I electronically filed the

foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing

document is being served this day on all counsel of record identified on the attached Service List

in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties not authorized to

receive electronically Notices of Electronic Filing.

*/s/* Alejandro J. Fernandez
Alejandro J. Fernandez

## SERVICE LIST

*Barn Light Electric Company, LLC v. Barnlight Originals, Inc., et al.*
Case No.: 8:14-CV-1955-T-35AEP
United States District Court, Middle District of Florida

Stefan Vaughn Stein
Email: stefan.stein@gray-robinson.com
Michael J. Colitz, III
Email: michael.colitz@gray-robinson.com
Stephen Gregory Anderson
Email: stephen.anderson@gray-robinson.com
**GrayRobinson, P.A.**
401 E. Jackson Street, Suite 2700
Post Office Box 3324
Tampa, FL 33601
Telephone No. (813) 273-5000
*Attorneys for Defendant/Counter-Plaintiffs*

EXHIBITS 1-17

ARE REDACTED

IN THEIR ENTIRETY