UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

      Plaintiff,

v.                            CASE NO. 8:14-cv-01955-MSS-AEP

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation; and JEFFREY L.
OHAI, an individual California Resident,

      Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF BARN LIGHT ELECTRIC COMPANY, LLC'S AND BRYAN AND DONNA SCOTT'S CORRECTED MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS IX-XII OF PLAINTIFF'S THIRD AMENDED COMPLAINT, AND COUNTS II-IX AND XIII-XIX OF DEFENDANTS' SECOND AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT [DKT. 198] AND MEMORANDUM OF LAW IN SUPPORT[1]**

Pursuant to Local Rule 3.01(b) and Amended Case Management and Scheduling Order [Dkt. 106] Defendants Hi-Lite Manufacturing Company, Inc. ("Hi-Lite") and Mr. Jeffrey Ohai (collectively "Defendants"), by and through their undersigned counsel, hereby submit this Opposition to Plaintiff Barn Light Electric Company, LLC's and Bryan and Donna Scott's Corrected Motion for Partial Summary Judgment [Dkt. 198] (hereinafter "Motion"). In support of this Opposition, Defendants state as follows:

---

[1] Defendant's Statement of Disputed Facts is Filed Herewith as Exhibit I.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. *Id.* (citing *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997)). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## II. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HI-LITE'S TRADE DRESS INFRINGEMENT CLAIM BECAUSE THE ALLEGED DESIGNS HAVE SECONDARY MEANING AND ARE NOT FUNCTIONAL.

As noted in the SACC, Hi-Lite is asserting trade dress protection in twelve of its most unique lighting fixture designs (hereinafter the "Hi-Lite Designs"). "In order to prevail on a claim for trade dress infringement under § 43(a) of the Lanham Act, a plaintiff must prove that (1) the product design of the two products is confusingly similar; (2) the features of the product design are primarily non-functional; and (3) the product design is inherently distinctive or has acquired secondary meaning." *Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1320

(M.D. Fla. 2013) (citing *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004)).

Plaintiff's Motion fails to make even a passing reference to the first of these elements. This is because Plaintiff has made *identical* copies of each and every one of the Hi-Lite Designs. Trying to escape the consequences of this blatant copying, Plaintiff argues that the Hi-Lite Designs lack secondary meaning and are functional. But Hi-Lite has ample evidence of secondary meaning. The Hi-Lite Designs have been widely advertised for as many as twelve years and tens of thousands of the light fixtures have been sold throughout the country. Moreover, the very fact that Plaintiff copied the Hi-Lite Designs in the first place is evidence of secondary meaning. Plaintiff's Motion attempts to establish functionality by focusing on separate features of the Hi-Lite Designs in isolation. But this is not the correct test. The proper analysis looks at the product as a whole. Under this proper test, it is abundantly clear that the Hi-Lite Designs are not primarily functional.

Thus, Hi-Lite can establish trade dress protection in the Hi-Lite Designs. At a minimum, each of the three trade dress elements involves a questions of fact such that summary judgment is generally inappropriate. *See TR Information Publishers v. Randall Publishing Co., Inc.*, 2006 WL 2868933, at *3 (M.D. Fla. Oct. 6, 2006) ("As each of these elements involves a question of fact, summary judgment as to Plaintiff's trade dress infringement claim is denied."). Specifically, there are genuine issues of material fact regarding secondary meaning and the non-functionality of Hi-Lite's Designs. Plaintiff's Motion for Summary Judgment as to Counts IX, XVIII, and XIX must be denied.

### A. Whether Hi-Lite's Lighting Fixture Designs Have Achieved Secondary Meaning is a Disputed Question of Fact

"In an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000). The term "secondary meaning" denotes that customers have formed an association in their minds between the trade dress and the source or origin of the product. *Id.*; *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1536 n.4 (11th Cir. 1986). "[S]ales and advertising may be considered by the finder of fact in making the secondary meaning inquiry." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1540, n.40 (11th Cir. 1986) (citing *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984)). Surveys are not an absolute prerequisite for finding secondary meaning under § 43(a). *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). Proof of secondary meaning can be provided by either direct or circumstantial evidence. *Isaly Co. v. Kraft, Inc.*, 619 F. Supp. 983, 990 (M.D. Fla. 1985).

Hi-Lite has spent millions of dollars developing new and unique lighting fixtures. (*See* Ohai Decl. at ¶3.)[2] It has also spent considerable amounts of time and money advertising these fixtures. (*See id.*) Hi-Lite's lighting fixtures are featured at trade shows, in magazines, in catalogs, as well as in show rooms across the country. (*See id.*) Hi-Lite catalogs featuring the Hi-Lite Designs have been circulated to between 30,000 to 40,000 individuals. (*See id.* ¶8.) Hi-Lite's Commercial and Residential Catalog 208 has been in circulation for over seven years and features all of the Hi-Lite Designs. (*See id.*) The 208 Catalog includes the unambiguous statement that Hi-Lite's designs are protected by trade dress. (*See id.*) Certain of the Hi-Lite Designs have been featured in catalogs for over twelve years. (*See id.*) Many of the Hi-Lite

---

[2] The Declaration of Jeffrey L. Ohai is being filing concurrently with this Opposition.

Designs have been sold tens of thousands of times. (*See id.* at ¶¶10-21.) As a result of these efforts, the Hi-Lite Designs are readily identifiable both within the lighting industry and by consumers. (*See id.* at ¶7.) In fact, the wide spread popularity of the Hi-Lite Designs has led them to be featured in many nationally recognized restaurants, such as Golden Corral and Joe's Crab Shack. (*See id* at ¶6.) Such "exclusive continuous use" is strong circumstantial evidence that secondary meaning has attached to the Hi-Lite Designs. *See Remcraft Lighting Prods., Inc. v. Maxim Lighting, Inc.*, 706 F. Supp. 855 (S.D. Fla. 1989) (upholding lighting fixture trade dress based upon ten years of continuous use).

But the popularity of the Hi-Lite Designs is not the only proof of secondary meaning. "[P]roof of intentional copying is probative evidence on the secondary meaning issue." *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983); *see also Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992) (considering "proof of intentional copying" in assessing secondary meaning). "[A] producer's trade dress is protected without proof of secondary meaning against practices imbued with an odor of bad faith . . . These practices include palming off, actual deception, appropriation of another's property, . . . or deliberate copying." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 138 (2d Cir. 1991)).

Thus, Hi-Lite has ample evidence of secondary meaning. This evidence is in the form of both the wide spread popularity of the Hi-Lite Designs themselves and Plaintiff's efforts to covertly copy the designs. This evidence more than adequately establishes the secondary meaning needed to support Hi-Lite's trade dress claims. At a minimum, Plaintiff's intentional copying of Hi-Lite's best-selling products, in combination with Hi-Lite's extensive advertising and promotional activities, establishes secondary meaning is a dispute as to a material fact. *Garden Meadow, Inc. v. Smart Solar, Inc.*, 24 F. Supp. 3d 1201, 1211 (M.D. Fla. 2014).

**B.     Whether Hi-Lite's Designs Are Functional is a Disputed Question of Fact**

In its Motion, Plaintiff makes a series of elaborate arguments regarding the functionality of Defendants' unique and distinctive lighting fixture designs. "[W]hether trade dress is functional has been consistently treated as a question of fact." *Garden Meadow, Inc. v. Smart Solar, Inc.*, 24 F. Supp. 3d 1201, 1211 (M.D. Fla. 2014) (internal citation omitted); *Elmer and HTH, Inc. v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995) ("Functionality is a question of fact.") (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 982 (11th Cir. 1983)); *see also Vax-D Med. Techs., LLC v. Allied Health Mgmt., Ltd.*, 2006 WL 923737, at *1 (M.D. Fla. Apr. 10, 2006) (Lazzara, J.) (denying motion for summary judgment); *Epic Metals Corp v. Souliere*, 99 F.3d 1034, 1039 (11th Cir. 1996) ("[t]he issue of functionality has been consistently treated as a question of fact"). Plaintiff goes to great lengths to pick apart every

component of Defendants' asserted trade dress, arguing that each of the individual elements described in the Second Amended Counterclaims [Dkt. 60] were either well known, common, or functional, and thus not entitled to trade dress protection. *See* Motion at Pg. 13-17. Plaintiff's approach is misguided and entirely contrary to this Circuit's trade dress jurisprudence.

This Court defines trade dress as "the *total image* of a product," which may include features such as size, shape, color, color combinations, textures, and graphics. *See High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, 2015 WL 926048, at *5 (M.D. Fla. Feb. 12, 2015) (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 982 (11th Cir. 1983) (emphasis added)). In fact, "[c]ourts have *rejected* an analysis of functionality which examines individual elements of a given design for the their functional aspects, and instead determines if the particular arrangement of design elements that identifies the item are non-functional *as a whole*." *Jungle Rags, Inc. v. Rainbow Graphics, Inc.*, 1993 WL 720672, at *3 (M.D. Fla. July 23, 1993); *cf. Vital Pharms., Inc. v. Am. Body Bldg. Prods., LLC*, 511 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007) (taking into account shape, style, and lettering of article as a whole). Even if the individual components of the trade dress are functional, the overall arrangement of the components may still be nonfunctional. *See Callaway Golf Co. v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1213 (M.D. Fla. 1995) ("individual elements of the trade dress can still be functional and the entire package still be protected under the Lanham Act"); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986) ("[t]hat individual elements . . . are functional does not, however, render the . . . whole unprotectable."); *Publ'ns Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 342 (7th Cir. 1998) ("[a]lthough none of the functional features of PIL's cookbooks can be appropriated to serve as a trade dress, it doesn't follow that the ensemble cannot be"); *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449

(Fed. Cir. 1993) ("functional elements that are separately unprotectable can be protected together as part of a trade dress").

A product design is functional "if it is *essential* to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32-33 (2001) (citing *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)) (emphasis added). In expanding upon what it means to be essential to the use and purpose of an article, the U.S. Supreme Court has observed that "a functional feature is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage." *Id.* (emphasis added). Factors to consider when determining whether a product feature is essential include "whether there alternative trade dress configurations available, and whether a particular design is comparatively simple or cheap." *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2006 WL 3755331, at *11 (M.D. Fla. Nov. 15, 2006). A product is "eligible for legal protection as trade dress *unless it is the only way the product can look*, consistent with its performing each of the product's functions optimally." *Dippin' Dots*, 369 F.3d at 1206-07 (emphasis added)(citing *Landoll*, 164 F.3d at 342); *see also Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1250 (M.D. Fla. 2002) (stating that "a design is legally functional, and thus unprotectable, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the trade dress protection.") (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (2002)). "[T]he fact that a design feature performs a function does not make it essential to the performance of that function; it is the absence of alternative construction performing the same function that renders the feature functional." *Brandir Int'l, Inc. v. Cascase Pacific Lumber Co.*, 834 F.2d 1142, 1148 (2d Cir. 1987).

In its Motion, however, Plaintiff picks apart Defendant's lighting fixtures piece by piece and comes to the conclusion that the trade dress "*must* encompass functional aspects because the elements include *every* feature of the light fixtures." *See* Motion at Pg. 13-16. As indicated above, this approach to assessing whether trade dress is nonfunctional has been outright rejected by this Court. The proper analysis when assessing functionality is to consider the designs as a whole, taking into account the total impression the designs have on an observer, and not just the individual elements. In fact, David McAdam, Hi-Lite's 30(b)(6) representative, explained that the fixtures as a whole were considered to be Hi-Lite's trade dress. *See* Ex. B. Plaintiff presented Mr. McAdam with a photograph of the fixture depicted in SACC ¶ 35 and asked Mr. McAdam to circle each feature encompassed by the description of the trade dress elements. Ex. B at 185:1-189:8. After circling the elements described in the paragraph, Mr. McAdam was asked:

> Q. Okay. All right. So if you've circled everything, tell me what you think the inter alia, among other things, means. What other trade dress elements here are subject to protection?
>
> A. The whole fixture within itself.

Ex. B at 188:19-23. It is clear that the elements as a single, unitary whole are what Hi-Lite is claiming as its trade dress. *See Callaway Golf*, 915 F. Supp. at 1213.

While it is true that lampshades generally house the socket, reflect light downward, and protect the bulb from falling objects, *see* Motion at Pg. 14, Plaintiff has failed to show that the particular lamp shade designs being asserted were *essential* to their use or purpose. There are numerous other lighting fixture constructions available on the market. "The nature, price, and utility of these constructions are material issues of fact not suitable for determination by summary judgment." *Brandir*, 834 F.2d at 1148. Also, there is no evidence that the Hi-Lite Designs are superior to that of other designs or that the Hi-Lite Designs are comparatively simple

or cheap. Effective competition in the marketplace would not be hindered by the grant of an exclusive right to use the Hi-Lite Designs in the marketplace. *See Callaway Golf*, 915 F. Supp. at 1213.

Plaintiff has failed to show that that each design overall is essential to its use or purpose and therefore has failed to show the absence of a genuine dispute as to whether Hi-Lite's light fixture designs are functional. Plaintiff's Motion should be denied.

## C.    New Combinations of Known Elements May Comprise Protectable Trade Dress.

While the Hi-Lite Designs may include features that were present in others' lighting fixtures, the overall impression resulting from the combination of existing elements may still function as protectable trade dress. *See AmBrit*, 812 F.2d at 1537 (11th Cir. 1986); *see also Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 373 (4th Cir. 1999) (citing *AmBrit* for the proposition that "the fact that design elements have been used separately before does not foreclose the possibility that their combination in a new, unique way will create an inherently distinctive trade dress.").

Plaintiff ignores both the applicable law as well as the overall impression of the Hi-Lite Designs and instead focuses on individual design elements. It then attempts to arrive at these design elements by literally cutting and pasting from various old trade catalogs. *See* Motion at Pg. 7-10. But Plaintiff's handiwork warrants close attention. Plaintiff actually cut pieces from different lighting fixtures, intended for different purposes, and made by different manufacturers. Plaintiff then crops, flips, and inverts the images as noted below. Plaintiff then pastes these altered pieces together in a futile attempt to arrive at the Hi-Lite Designs. The result is little more than a photoshopped version of the truth. The fact that Plaintiff had to cobble together the

catalogs of six different manufacturers in a failed effort to arrive at the Hi-Lite Designs only demonstrates that they are indeed unique.



**Shallow Bowl Shades with Gooseneck, Bracket and Stem**[23]     **Vapor Light and Wire Guard**[26]     **Wind Sock Light Fixture with Multi-Pole Bracket and Vapor Light**[29]

Plaintiff generally focuses on a single element from the Hi-Lite Designs and argues that the particular element has been around "for a century" and that the other elements are merely "standard supports." *Id.* at 7-8. However, Plaintiff fails to take into account the Designs *as a whole*, as required by this Court's jurisprudence. *See High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, 2015 WL 926048, at *5 (M.D. Fla. Feb. 12, 2015) (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 982 (11th Cir. 1983) (emphasis added)). When looking at the Designs as a whole, none of the Designs as a whole have been available elsewhere "for a century."

### D. Plaintiff's Reliance on National Lighting is Unpersuasive

Plaintiff's reliance on *National Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556 (S.D.N.Y. 2009) to support its contention that Defendants are attempting to extend its trade dress rights to the "ubiquitous" designs is deficient for several reasons. First, the facts of *National Lighting* are distinct from those of the instant case. In *National Lighting*, the trade dress Plaintiff was seeking to enforce its rights to an ***entire product line***. *See id.* at 561 (stating "[j]udicial reluctance to extend trade dress protection to *entire product lines* is also motivated by

this fear of enabling monopolistic behavior") (emphasis added). Here, Hi-Lite is seeking trade

dress protection for specific lighting fixture designs, which are clearly identified in the SACC.

*See* [Dkt. 60] at ¶¶ 33-44. Second, the trade dress descriptions in *National Lighting* were much

broader than those in Hi-Lite's Second Amended Counterclaims ("SACC"), and were also an

attempt to describe the trade dress of an ***entire series*** of lighting fixtures. In *National Lighting*,

the Plaintiff provided a composite exhibit containing multiple images of distinct lighting fixtures

and alleged the following:

> National's products' trade dress is visibly different from other manufacturers and
> consists of the following non-functional elements: ***the positioning of the***
> ***fluorescent bulb, the distribution of light from the bulb, the angle at which the***
> ***metal frame is curved, the placements of screws, the appearance of the inside***
> ***parts, the lack of visibility of hardware, the method of wiring, the shielding***
> ***design and shielding width, fixture depth,*** and the overall color and texture
> combinations.

*National Lighting*, 601 F. Supp. 2d at 562 (emphasis added). The court held this description

deficient for two reasons, stating:

> First, courts cannot be expected to *distill from a set of images those elements that*
> *are common to a line of products and both distinctive and non-functional*. Second,
> nowhere in its Amended Complaint and at no point during oral argument did
> counsel inform the Court *which actual designs* were encompassed in its trade
> dress claim.

*Id.* at 562-63 (emphasis added). In other words, the court's concern in *National Lighting* was the

absence of an answer to *what* trade dress Plaintiff was claiming as its own. *What* "positioning of

the fluorescent bulb?" *What* "distribution of light from the bulb?" *What* "placement of the

screws?" *What* designs? And so on.

Here, however, Hi-Lite has very distinctly defined its trade dress. For example, the

SACC alleges the following:

> ***As depicted below***, nonfunctional aspect of Hi-Lite's trade dress include, *inter*
> *alia*, ***a central tubular structure reminiscent of traditional pipe fittings and six***

> ***outwardly-facing lamps arranged in a substantially co-planer fashion, each
> lamp including an elongate bowl portion surrounding a light bulb and a cage
> portion encasing the elongate bowl portion.***

*See* [Dkt. 60] at ¶ 43 (emphasis added). Thus, contrary to the allegations in *National Lighting*, there are no concerns of "monopolistic behavior" due to the lack of a "laundry list of the elements that constitute a lighting fixtures design." 601 F. Supp. 2d at 562. The descriptions present in the SACC are not attempts at "extending protection to ordinary product designs," Motion at 12, but rather show that the lighting fixtures are, in fact, unique.

At a minimum, there is a genuine issue of material fact as to whether the Designs have the requisite secondary meaning for trade dress protection. As a result, summary judgment as to Counts IX, XVIII, and XIX should be denied.

## III. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS IX AND X OF THE THIRD AMENDED COMPLAINT

Plaintiff alleges that summary judgment is warranted regarding its declaratory judgment claims of non-infringement and invalidity. However, Mr. Ohai has repeatedly promised not to sue Plaintiff regarding any infringement of U.S. Patent No. 8,556,477 (the "'477 Patent"). Mr. Ohai's promise extinguishes subject matter jurisdiction over Plaintiff's declaratory judgment claims. Further, even if the Court disagrees and analyzes the merits of Plaintiff's invalidity claims, there are two issues precluding summary judgment. These issues are: (1) whether the patented component in question (the "MU part") was even part of the alleged sale; and if so, (2) whether the sale was subject to the on sale bar under 35 U.S.C. §102(b). As addressed below, there are multiple factual disputes underlying each of these issues. Plaintiff's Motion for Summary Judgment with regard to Counts IX and X of the Third Amended Complaint must therefore be denied.

**A.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Declaratory Judgment Claims Because Defendant Has Provided a Covenant Not to Sue, Which Extinguishes Any Case or Controversy.**

As a threshold matter, the Court need not address the issue of patent validity, as Mr. Ohai has repeatedly promised not to sue the Plaintiff for any infringement of the '477 Patent. There is simply no on-going controversy to support Plaintiff's declaratory judgment claims.

As fully explained in Defendants' Motion for Partial Summary Judgment, Mr. Ohai has provided Plaintiff Barn Light Electric with multiple covenants not to sue on the '477 Patent. *See* [Dkt. 167] at Pg. 27. Covenants not to sue are unquestionably valid. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007). The party claiming declaratory judgment jurisdiction must establish that such jurisdiction existed when the claim for declaratory relief was filed and that it has continued since filing. *Id.* at 1344. Adequate covenants not only moot the controversy with respect to infringement, *see Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006), but also eliminate subject matter jurisdiction with respect to the remaining declaratory claims for patent invalidity and unenforceability, provided that no trial or resolution on the infringement issue has taken place. *Benitec*, 495 F.3d at 1343. So long as the covenant was provided before "the considerable effort connected [with a trial has] taken place," the court is divested of subject matter jurisdiction. *Id.* at 1347.

If the court's subject matter jurisdiction is extinguished as a result of a covenant not to sue, invalidity and unenforceability should not be examined. *See Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1345-49 (Fed. Cir. 2010). Here, Mr. Ohai has provided Plaintiff with a clear covenant not to sue prior to a ruling on non-infringement or validity, and prior to the "considerable effort" associated with trial. As a result, the validity of the '477 Patent should not be examined and Plaintiff's Motion for Summary Judgment should be denied.

**B.** **There is a Genuine Issue of Material Fact Regarding Whether the Patented Part Was Sold Prior to the '477 Patent's Critical Date.**

If this Court determines that Mr. Ohai's covenant is insufficient to extinguish the Court's declaratory judgment jurisdiction, then this Court should, in the alternative, deny Plaintiff's Motion as there remain serious issues of material fact regarding whether the MU part was included in the alleged sale.

**1.** **No Evidence Ties Plaintiff's Photographs of the MU Part to the Alleged Sale.**

Plaintiff's supposedly invalidating sale is recounted in the Declaration of Mrs. Donna Scott. [Dkt. 198-3.] She describes a 2009 purchase from Hi-Lite. [*Id.* at ¶10.] But glaringly absent from her declaration is any testimony that what she ordered actually included the MU part. According to Mrs. Scott, "the invoice reflects the following: H 15116 – 16" shade; 96 – Galvanized; 10" ST – 10" Stem; HDSMC 3/4" – Heavy duty stem mount canopy in 3/4" size; 96 – Galvanized; LCGU – Large case guard unit; RIB – Ribbed glass; and 96 – Galvanized." [*Id.*] Nothing in this description references the MU part. This is consistent with the testimony of Mr. Jeffrey Ohai. (*See* Ohai Decl. at ¶¶29-30.) Mr. Ohai states that he was unable to find any evidence that the identified sale included a MU part. (*See id.*) He further states that the lighting fixture referenced in the invoice's description could have been installed without a MU part. (*See id.*) During Hi-Lite's Fed. R. Civ. P. 30(b)(6) deposition, the witness was asked whether photographs from Mrs. Scott's declaration corresponded with the figures from the '477 Patent. The witness responded "[b]ut there's no way for me to know that this was actually in there." *See* Ex. B, McAdam Depo. at 52:7-19. Indeed, the record is devoid of any evidence that the fixture Mrs. Scott ordered actually included a MU part.

The photographs Plaintiff relies upon admittedly show an older, prototype version of the MU part. But there is no evidence tying these photographs to the March 2009 sale. Importantly, Mrs. Scott states that "the package was sealed when I took custody of it and was delivered to the Eberharts." [Dkt. 198-3 ¶10.] Mrs. Scott does *not* say that the fixtures she ordered contained the MU part. Nor does she say that she took the fixtures apart or assisted with their installation. The only possible statement tying the March 2009 sale to Plaintiff's proffered photographs is Mrs. Scott's vague assertion that, "I was later able to see the internal aspects." [Dkt. 198-3 ¶12.] But a careful reading of her declaration reveals that she actually had to wait over five years to finally see these "internal aspects"! [Dkt. 198-3 ¶15.] Namely, she examined the fixtures for the very first time in August 2014 in preparation for Plaintiff's declaratory judgment claims. [*See id.*] What happened to the fixtures during this five year hiatus is anyone's guess. Notably absent from the record is the testimony of the only people who could actually answer this question -- Jon and Terri Eberhart. In the absence of such testimony, there exists material issues of fact regarding whether the MU part was, in fact, included in the March 2009 sale. These issues preclude entry of summary judgment.

**2.    There is Insufficient Evidence of a Commercial Sale.**

In addition to questions regarding whether the MU part was included in any sale, there are also disputed issues of fact concerning whether a commercial sale even took place. Again, such disputed issues preclude entry of summary judgment.

In her declaration, Mrs. Scott claims that "a true and correct copy of the sales receipt reflecting the sale from Barn Light Electric to the Eberharts is attached as Exhibit 4." [Dkt. 198-3 ¶15.] However, an examination of this sales receipt shows that the fixtures were "Sold To" and "Shipped To" Barn Light Electric Co. The sales receipt contains no mention of the Eberharts.

Although discovery in this case closed months ago, Plaintiff has been unable to unearth any documentation supporting any sale to the Eberharts. If the fixtures in question had been sold to the Eberharts as Mrs. Scott claims, one would assume that there would be documents evidencing such a sale. The only reasonable conclusion is that the sale never took place. The absence of such a sale is fatal to Plaintiff's invalidity claims. At a minimum, this raises a genuine issue of fact that precludes entry of summary judgment.

Plaintiff may attempt to overlook this defect by switching its focus and instead relying upon the underlying transaction from Hi-Lite to Plaintiff. [Dkt. 198-3 at Ex. 3.] But such a "sale" is irrelevant because at the time Barn Light Electric was acting as a Hi-Lite distributor. "[S]ales of commercial samples to the patentee's sales broker, in the absence of actual sales to the trade, do not constitute 'sales' within the terms of the statute." *Jack Winter, Inc. v. Koratron Co., Inc.*, 375 F. Supp. 1, 37 (N.D. Cal. 1974)(*citing Baker-Cammack Hosiery Mills v. Davis Co.*, 181 F.2d 550, 558 (4th Cir.)). Similarly, shipments of a patented article from one corporate division to another do not constitute a commercial sale for purposes of 35 U.S.C. §102(b). *See Union Carbide Corp. v. Filtrol Corp.*, 170 U.S.P.Q. 482, 521 (C.D. Cal. 1971). Here, it is undisputed that Plaintiff was a distributor for Hi-Lite at the time of the alleged transaction. Plaintiff served as an intermediary for Hi-Lite, not an actual trade partner. A sale, if any, only occurred between Hi-Lite and Plaintiff - an entity acting as part of Hi-Lite's distribution chain. Plaintiff acted as a broker for Hi-Lite, selling Hi-Lite fixtures to end users. The transactions between Plaintiff and Hi-Lite were legally insufficient to meet the on-sale bar requirements of 35 U.S.C. §102(b).

**C.    There is a Genuine Issue of Material Fact as to Whether the Alleged 2009 Sale is Subject to the On-Sale Bar.**

Even in the unlikely event that the Court determines that a commercial sale of the MU part took place as alleged, the sale would not have been invalidating. This is because the MU parts in existence at the time were largely defective prototypes. Hi-Lite's use of the MU at the time was limited to field testing. This testing demonstrated that the part was defective and not ready for patenting.

Every issued patent is presumed valid. *See* 35 U.S.C. § 282. The burden of persuasion to show that the patent is valid does not shift at any time to the patent owner; the burden is constant and remains throughout the suit on the challenger. *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965 (Fed. Cir. 1984). In order to overcome this presumption, a challenger must show that a patent is invalid by clear and convincing evidence. *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001). A challenger seeking to invalidate an issued patent pursuant to the on-sale bar must also prove facts establishing the elements described by the Supreme Court in *Pfaff v. Wells Elecs., Inc.* 525 U.S. 55, 67 (1998) (the "*Pfaff* prongs"). Specifically, Plaintiff must show that the product was both (1) the subject of a commercial offer for sale not primarily for the purposes of experimentation and (2) ready for patenting. *Id.* The first prong of this test involves a determination of whether a commercial offer for sale has occurred, applying traditional contract law principles. *See Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1048 (Fed. Cir. 2001) (citing *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041,1047 (Fed. Cir. 2001)). The second prong of the *Pfaff* test may be satisfied "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were

sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff*, 525 U.S. at 67–68.

## 1. There is a Genuine Issue of Fact Regarding Whether the Patented Part was the Subject of a Commercial Offer for Sale.

A genuine issue of fact exists relating to whether the alleged 2009 transaction constitutes a commercial offer for sale, because any sale at that time would have been experimental in nature. Accordingly, the first prong of the *Pfaff* test is not met.

The determination of whether a sale constitutes an impermissible commercial offer for sale "involves an assessment of whether the circumstances surrounding the transaction show that the transaction was not primarily for purposes of experimentation." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352-53 (Fed. Cir. 2002). Adequate proof of experimentation negates a statutory bar. *TP Labs., Inc. v. Prof'l Positioners, Inc.*, 724 F.2d 965, 971 (Fed. Cir. 1984). Further, "it is incorrect to impose on the patent owner . . . the burden of proving that a public use was experimental." *Id.* (internal citation omitted). Proof that the buyer approached the patent owner, that less than full purchase price was paid, and that extensive quality assurance was performed is evidence of experimentation. *See EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1352-53 (Fed. Cir. 2002).

Here, the record supports that *if* the MU was part of the 2009 transaction, there is a genuine issue regarding whether its use was experimental. As explained in the concurrently filed Declaration of Jeffery Ohai, the first prototypes of the MU part were made in July of 2008. (Ohai Decl. at ¶23.) Hi-Lite then field tested these prototypes from January 2009 until about December 2010. (*Id.*) Hi-Lite's field testing demonstrated significant flaws with the MU design. For example, the threaded portions of the MU were warped and did not permit the MU to be properly mounted to the light shade or light fixture. (*See id.* at ¶25.) This resulted in the

light shade being crooked and the lighting fixtures becoming loose. (*See id.* at ¶25.) The internal opening in the MU also included sharp and exposed edges. (*See id.* at ¶26.) This was deemed to be a potential safety hazard. It was only by way of field testing that such defects would be ascertained. The field testing lead to a substantial redesign of the MU part. (*See id.* at ¶26.) The redesigned MU part was not completed until July 2010, long after the March 2009 sale relied upon by the Plaintiff.

Plaintiff's Motion for Summary Judgment should be denied because adequate evidence exists that any use of the MU in March of 2009 was part of Hi-Lite's experimental field testing.

> 2. **There is a Genuine Issue of Fact Regarding Whether the MU Was Ready for Patenting.**

Even if the sale in March 2009 is viewed as being non-experimental, the second prong of *Pfaff* is still not met. This is because the first version of the MU proved to be largely defective and thus not ready for patenting.

A product is shown to be "ready for patenting" through two methods: (1) showing reduction to practice prior to the critical date; or (2) having prepared drawings or descriptions that are sufficiently specific to enable a person skilled in the art to practice the invention. *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1366 (Fed. Cir. 2008). An invention is reduced to practice when it works for its intended purpose. *Id.* at 1367 (citing *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 997 (Fed. Cir. 2007). The party challenging patent validity bears the burden of demonstrating the device that was sold actually worked for the intended purpose as described in the patent. *Boydstun Metal Works, Inc. v. Cottrell, Inc.*, 519 F. Supp. 2d 1119, 1135 (D. Ore. 2007).

Here, there is a genuine dispute as to whether the MU part depicted in Mrs. Scott's declaration worked for its intended purpose. As explained in the specification of the patent, one of the problems in the art at the time of invention was that fixture mounting posts were often too long for their intended installations. *See* Ex. C, '477 Pat. at Col. 1, Lines 1-10. This made it difficult to tighten the nut that was needed to fix the position of the light fixture. *See id.* The inability to sufficiently tighten the nut resulted in the lighting fixture becoming loose. *See id.* at 1:9-12. The '477 Patent solved this issue. Plaintiff bears the burden of demonstrating the MU that was allegedly purchased in March of 2009 satisfactorily overcame these problems. *See Boydstun*, 519 F. Supp. 2d at 1135. But at no point in Plaintiff's Motion does it state that the product allegedly sold to the Eberharts solved these issues. In fact, Donna Scott, in her declaration, merely states that the light fixtures hung undisturbed from 2009 until Plaintiff's counsel took one down in 2014 for this litigation. [Dkt. 198-3 at ¶¶ 13, 15.] There is no assertion in Mrs. Scott's declaration that the light fixture had a part that fixed the position of the light fixture or was generally easier to tighten than previous fixtures in their possession. Essentially, Plaintiff has not alleged that the utility of the '477 Patent has been demonstrated or that the MU worked for its intended purpose.

Thus, at the time of the alleged sale, the MU part had not yet been reduced to practice, the product was not "ready for patenting" before the time of the critical date, and, therefore, application of the on-sale bar would be inappropriate. Plaintiff's motion must be denied.

## IV. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF COPYRIGHT.

The Court must deny Plaintiff's Motion as to Counts VI, VII, VIII, XIV, XV, XVI, XVII, and XVIII for the following reasons: (1) Plaintiff waived the affirmative defenses of implied license and statute of limitations; (2) Plaintiff accepted revocation of any implied license, thereby

terminating any implied license; (3) even if the Court finds that Plaintiff did not waive the affirmative defense of implied license, and finds that any implied license is irrevocable, Plaintiff nonetheless exceeded the scope of any implied license and thus infringed on Defendants' copyright; (4) even if the Court finds that Plaintiff did not waive the defense of statute of limitations, Hi-Lite's claims are not time barred, and (5) Plaintiff's defense of equitable estoppel fails.

### A. Plaintiff Waived the Affirmative Defenses of Implied License and Statute of Limitations.

The general rules of pleading and enumerated affirmatives defenses are governed by Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 8(c). Specifically, Fed. R. Civ. P. 8(c)(1) states, "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . license[and] statute of limitations . . . ." *See* Fed. R. Civ. P. 8. An answer to a complaint is a response to a pleading and thus falls within the ambit of Fed. R. Civ. P. 8(c). *See U.S. v. Jallali*, 478 Fed. Appx. 578, 581 (11th Cir. 2012).

When a party fails to raise an affirmative defense in its answer, that party waives its right to use that affirmative defense. *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988). "The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." *Id.* In determining whether to hear evidence on an untimely affirmative defense, a court must consider prejudice to the opposing party. *See id.* If a court finds that the opposing party would be prejudiced by raising the untimely affirmative defense, then the court must deny the use of such affirmative defense. *See id.*

In the Eleventh Circuit, "an implied license is an affirmative defense to a claim of copyright infringement." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010);

*Dawes-Ordonez v. Realtor Ass'n of Greater Ft. Lauderdale, Inc.*, 2010 WL 1791754, *2 (S.D. Fla. 2010); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). Similarly, the statute of limitations for a claim of copyright infringement is also an affirmative defense. *See Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007). Like other affirmative defenses, a party must raise the affirmative defenses of an implied license and statute of limitations in its response to a pleading. *See* Fed. R. Civ. P. 8(c)(1); *Hassan*, 842 F. 2d at 263. If a party fails to raise the affirmative defenses in its response, then the party waives the defenses and may not raise it at trial. *See Hassan*, 842 F. 2d at 263.

Defendants herein filed its counterclaims for copyright infringement on April 2, 2015. *See* [Dkt. 60]. Plaintiff responded to Hi-Lite's copyright claims by its Answer [Dkt. 62] dated April 20, 2014. Notably, Plaintiff failed to raise the affirmative defenses of an implied license or statute of limitations in its Answer. Accordingly, Plaintiff waived the defenses and may not raise them now.

Allowing Plaintiff to raise the affirmative defenses of implied license and statute of limitations now will cause prejudice to Defendants, because Defendants could not adequately prepare for such defense. The Court should adhere to the well-grounded rule in the Eleventh Circuit that the failure to raise an affirmative defense constitutes a waiver of such defense. Accordingly, the Court must deny Plaintiff's Motion for Partial Summary Judgment on the copyright infringement claims.

## B. Plaintiff Accepted Revocation of Any Implied License, Thereby Terminating the License.

Genuine issues of material fact exist as to whether Defendant granted Plaintiff an irrevocable implied license and the implied license terminated when Plaintiff accepted revocation. "Courts have historically viewed summary judgment as inappropriate in the

copyright infringement context because of the inherently subjective nature of the inquiry." *Latimer*, 601 F.3d at 1232. Defendants demonstrate the existence of genuine issues of material fact.

A copyright holder may grant an implied license to use its copyrighted material without transferring any ownership of the copyright. *See Latimer*, 601 F.3d at 1235; *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009); *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997); *Fun Spot of Fla., Inc. v. Magical Midway of Central Fla., Ltd.*, 242 F. Supp. 2d 1183, 1195 (M.D. Fla. 2002). An implied license may be granted orally or through conduct of the parties. *See id.* Once an implied license is granted, "such a license is revocable unless and until consideration is accepted by the licensor." *Vergara Hermosilla v. Coca-Cola Co.*, 717 F. Supp. 2d 1297, 1303 (S.D. Fla. 2010) (citing *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 (5th Cir. 2003)).

An irrevocable implied license is properly revoked when the licensee accepts revocation. *See Fun Spot of Fla., Inc.*, 242 F. Supp. 2d at 1200. In *Fun Spot of Fla., Inc.*, this Court's Orlando Division found that a copyright holder of drawings for an amusement park go-kart track did not grant a license to an owner of a new park. *Id.* The court held that even if a reasonable juror found that an implied license was granted, the license was properly revoked. *Id.* The court stated that even if the copyright holder could not unilaterally revoke the license (*i.e.*, the license was irrevocable), the licensee accepted "revocation by promising not to use any" of copyright holder's drawings. *Id.* The court found that the license discontinued after the copyright holder issued a letter of revocation, which was subsequently accepted by the licensee. *Id.*; *see also Wilchombe*, 555 F.3d at 956 (revocation of implied license by cease-and-desist letter was only rejected by the court on procedural grounds).

On September 4, 2012, Defendant Hi-Lite sent Plaintiff an email explicitly demanding that Plaintiff stop using Hi-Lite's "photos, artwork, line drawings, part numbers, instructions or any other data from Hi-Lite Mfg." on its websites. *See* Exhibit D. Plaintiff responded by email dated September 4, 2012, and again on September 7, 2012, and indicated its willingness to comply with Hi-Lite's request to remove Hi-Lite's copyrighted works from its websites. *See* Exhibits E and F, respectively. In Plaintiff's emails to Defendants, Plaintiff accepted Hi-Lite's revocation of any implied license. Thus, even if the license was unilaterally irrevocable, Plaintiff's acceptance of Hi-Lite's revocation rendered any license null and void.

The Court must deny Plaintiff's Motion for Partial Summary Judgment on the copyright infringement claims. Genuine issues of material fact exist as to whether Defendant granted Plaintiff an irrevocable implied license to use Hi-Lite's photographs, and whether Defendant revoked the implied license when Plaintiff agreed to revocation.

**C.** **Even if the Court Finds That Plaintiff Did Not Waive its Affirmative Defenses, or That Any Implied License is Irrevocable, Plaintiff Exceeded the Scope of the   Implied License, Which Constitutes Copyright Infringement.**

Genuine issues of material fact exist as to whether Plaintiff exceeded the scope of the implied license. In the Eleventh Circuit, "[i]mplied licenses may be limited and a defendant who exceeds the scope of an implied license commits copyright infringement." *Latimer*, 601 F.3d at 1235. If a licensee establishes the existence of a license, then the burden is on the licensor to prove that the licensee exceeded the scope of the license. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995); *Graham*, 144 F.3d at 236.

Courts focus on the intent of the parties and use parol evidence to determine the existence and scope of an implied license. *See Latimer*, 601 F.3d at 1235 (citing *Wilchombe*, 555 F.3d at 956 ("In determining whether an implied license exists, a court should look at objective factors

evincing the party's intent, including deposition testimony and whether the copyrighted material was delivered without warning that its further use would constitute copyright infringement." (internal citations omitted)); *Gracen v. Bradford Exch.*, 698 F.2d 300, 303 (7th Cir. 1983) (using parol evidence to determine that there existed a genuine issue of material fact as to the scope of an implied license)).

If Defendant Hi-Lite granted Plaintiff an implied license to use its copyrighted works to sell Hi-Lite products, the scope of the license was understood by the parties at the time of delivery. Plaintiff concedes the limitations on Plaintiff's use of Hi-Lite's copyrighted works in its Motion, which was to display the works to sell Hi-Lite products. *See* Motion at Pg. 36 ("the uncontested record makes clear that Hi-Lite provided . . . the photographs and other product information contained in the Hi-Lite catalogs for over four years . . . with the specific intention that Barn Light Electric use its copyrighted materials to market and sell its products."); *see also* Ex. G, D. Scott Depo. at 82:14 – 83:1 (admitting that Hi-Lite licensed to Barn Light Electric the right to use its copyrighted photographs and line drawings to sell Hi-Lite products). Thus, the scope of the implied license was mutually understood at the time of delivery as being limited to display on Barn Light Electric's websites to sell Hi-Lite products.

Further, Plaintiff was on notice that any use beyond the scope of an implied license would constitute copyright infringement. Plaintiff acknowledges receipt of Hi-Lite catalogs 203, 205, and 208. *See* [Dkt. 206] at ¶13. The back of catalogs 205 and 208 include a statement that "The designs are the sole property of Hi-Lite Mfg. Co. Inc. They are protected by Copyright, Trademark and Trade Dress Law." *See* Ex. H. Plaintiff therefore knew, based on its understanding of the limitations on the use of Hi-Lite's copyrighted materials, that any unauthorized use would constitute copyright infringement.

Plaintiff exceeded the scope of the implied license. Plaintiff uses Hi-Lite's photographs to sell Plaintiff's own products on its website. In fact, Hi-Lite's copyrighted photographs remained on Barn Light Electric's website as of the filing of Defendants' Motion for Summary Judgment. *See* [Dkt. 167] at Pg. 14. When Plaintiff exceeded the scope of the implied license, and used Hi-Lite's works on its website to sell its own products, Plaintiff infringed on Defendants' copyrights.

Accordingly, the Court must deny Plaintiff's Motion for Partial Summary Judgment on the copyright infringement claims. Genuine issues of material fact exist as to whether Plaintiff exceeded the scope of the implied license.

### D. Hi-Lite's Copyright Claims Are Not Barred by the Statute of Limitations

If this Court determines that Plaintiff did not waive the affirmative defense of statute of limitations, Hi-Lite's claims for copyright infringement are not time barred. In its Motion, Plaintiff contends that "any claims that accrued prior to April 21, 2012[3] are time barred and must be dismissed on summary judgment as a matter of law." Motion at Pg. 38. Plaintiff's statement amounts to nothing more than a hypothetical scenario devoid of any factual support whatsoever. In a motion for summary judgment, it is incumbent upon the moving party to come forward with specific facts in support of its position. Here, Plaintiff has come forward with none.

"A copyright infringement claim accrues when a plaintiff 'learns, or should as a reasonable person have learned that the defendant was violating his rights.'" *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007) (quoting *Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, 2005 WL 3445522, *7 (M.D.Fla. Dec.14, 2005). Here, Plaintiff has failed to indicate when it believes Hi-Lite either learned or should have learned of

---

[3] Plaintiff's reference to April 21, 2012 in incorrect. Defendants' Second Amended Counterclaims and Third-Party Complaint [Dkt. 60] was filed on April 2, 2015. In fact, Defendant's alleged copyright infringement in its First Counterclaims [Dkt. 24], filed October 10, 2014.

its infringement. Indeed, any claim Hi-Lite has for infringement of its copyrighted works would have accrued on September 4, 2012, the date the parties ceased doing business. This holds true regardless of whether this Court agrees that any implied license was revoked upon Plaintiff's acceptance of Hi-Lite's revocation. If a license was properly terminated, then any use of Hi-Lite's copyrighted works thereafter constitutes infringement. If the license was not terminated, then any use thereafter would have necessarily exceeded the scope of the license. Hi-Lite ceased fulfilling orders from Barn Light Electric on September 4, 2012. *See* Ex. D. Therefore, any use of Hi-Lite's works after September 4, 2012 could not have been to sell Hi-Lite products. In fact, as indicated in Defendants' own Motion for Summary Judgment, Barn Light Electric linked Hi-Lite's copyrighted photographs on its website to a page that offered many of Plaintiff's products for sale. *See* [Dkt. 167]. Any use of Hi-Lite's copyrighted works after September 4, 2012 to sell non-Hi-Lite products constitutes an infringement.

Further, because a copyright claim accrues when a copyright infringement plaintiff either learns, or should have learned, of the infringement, any occurrences of copyright infringement that are subsequently uncovered in this litigation, including instances occurring prior to April 2, 2012, are not barred under the statute of limitations.

E.     **Hi-Lite's Copyright Infringement Claims Are Not Barred by the Doctrine of Equitable Estoppel**

Disputed issues of material fact exist as to whether Hi-Lite's claims of copyright infringement are barred by the doctrine of equitable estoppel. As Plaintiff points out, "[i]n copyright infringement actions, an alleged infringer may assert the defense of estoppel by demonstrating that: (1) the copyright owner knew the facts of the infringement, (2) the copyright owner intended its conduct to be acted upon or the copyright owner acted such that the alleged infringer has a right to believe it was so intended, (3) the alleged infringer is ignorant of the true

facts, and (4) the alleged infringer relies on the copyright owner's conduct to his detriment. *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1282 (M.D. Fla. 2008) (citing *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 875 (11th Cir. 2005). The doctrine of equitable estoppel applies "where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the formers words or conduct." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 292 (2d Cir. 2002).

In support of its defense, Plaintiff claims "Hi-Lite's conduct in delivering the Hi-Lite Works, and its acquiescence in view of its actual knowledge of such use, reasonably led Barn Light Electric to believe it had the right to use the Hi-Lite Works, and that its use was so intended by Hi-Lite." Motion at Pg. 36. As with its continued willful infringement of Hi-Lite's registered copyrights, such a statement reflects Plaintiff's utter lack of understanding of the claims against it. As indicated hereinabove, any use of Hi-Lite's copyrighted works after September 4, 2012 constitutes copyright infringement. The email of September 4, 2012, attached as Ex. D, made it absolutely clear that Barn Light Electric was to cease all use of Hi-Lite's copyrighted works. For Plaintiff to contend that it then relied on some conduct by Hi-Lite approving of its use of the works is nonsensical.

Further, its claim that Hi-Lite somehow acquiesced to Barn Light Electric's use of the works in view of some knowledge of the use fall flat. First, Plaintiff fails to cite any facts whatsoever indicating that Hi-Lite knew of its illegal use of the copyrighted works prior to its being sued by Barn Light Electric. Thus, a genuine issue of fact remains as the exact date in which Hi-Lite learned of any infringement. Plaintiff's defense of equitable estoppel fails.

## V.  HI-LITE'S PART NUMBERS ARE PROTECTABLE SUBJECT MATTER UNDER THE LANHAM ACT AND FLORIDA COMMON LAW

In its Motion, Plaintiff incorrectly asserts that "part numbers of the type Hi-Lite has asserted in the SACC cannot qualify for trademark protection because they lack secondary meaning and are descriptive and functional." *See* Motion at Pg. 39. Plaintiff inexplicably also takes the position that Hi-Lite's part numbers are not protectable under the U.S. Copyright Laws. Hi-Lite has never alleged copyright protection for its part numbers, and Plaintiff's arguments relating to copyright protection are irrelevant.

Courts have consistently recognized that part numbers, product numbers, and other style and grade designations may serve as source-identifying trademarks. *See, e.g,. Eastman Kodak Co. v. Bell & Howell Document Mgmt. Products Co.*, 994 F.2d 1569, 1576 (Fed. Cir. 1993) ("depending upon the nature and manner of use, it is possible for an alphanumeric designation, which functions only in part to designate model or grade, to be inherently distinctive, and hence not require a showing of secondary meaning in order to be protected as a trademark); *see also J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467 (10th Cir. 1985) (recognizing ability of descriptive alphanumeric symbols to serve as protectable trademark with showing of secondary meaning); *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1023 (7th Cir. 1979), cert. denied, 447 U.S. 924 (1980) (holding that numbers descriptive of size may function as trademarks).

"A trademark is defined in 15 U.S.C. § 1127 as including 'any word, name, symbol, or device or any combination thereof' used by any person 'to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (*quoting* 15 U.S.C. § 1127). "An identifying mark is distinctive and

capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id.* at 769. "Courts consider four factors to determine whether a mark has acquired secondary meaning: (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture. *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014) (*citing Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir.1984)). "A proprietor can make a prima facie showing of 'secondary meaning' by showing that the name has been used in connection with the proprietor's goods or service continuously and substantially exclusively for five years." *Jysk Bed'N Linen v. Dutta-Roy*, 2015 WL 8999502, at *6 (11th Cir. Dec. 16, 2015) (citing *Welding Servs. Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). "The existence of secondary meaning is a question of fact." *Tartell v. S. Florida Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015) (*citing Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir. 1987)).

Here, a genuine issue of fact exists as to whether Hi-Lite's unique product codes are either inherently distinctive or descriptive and have acquired secondary meaning. Jeffrey Ohai testified that Hi-Lite's H-15116 identifier has been in use since the 1990s. [Dkt. 172 at ¶6.] The H-15116 identifier has thus been used for at least 15 years. This is clearly long enough that it is readily identifiable by consumers. [Dkt. 172 at ¶6.] One such consumer is William Sanders. Mr. Sander's testified that he recognized both the H-15116 and the HL-A product identifiers as originating from Hi-Lite. [Sanders Depo., Dkt. 170 at Pgs. 11-12; 57.] Mr. Sanders further testified than when he ordered a H-15116 lighting fixture he fully expected to receive a genuine

Hi-Lite product. [Sanders Depo., Dkt. 170 at Pgs. 16] He also stated the consumers are "very educated" and are usually looking for very specific products. [Sanders Depo., Dkt. 170 at Pgs. 61.] As a result, he noted that consumers often look up specific products by searching for product codes on Google. [Sanders Depo., Dkt. 170 at Pgs. 59] When a consumer searches for "H-15116" on Google, other than a zip code reference, all the top results relates to Hi-Lite's warehouse shade. [Dkt. 172 at ¶6.] Hi-Lite's other part numbers, such as the H-CGU-F, are similarly recognizable by virtue of having been featured in Hi-Lite's catalogs for over seven years. [Dkt. 172 at ¶¶11-12.] Thus, even if Plaintiff prevails on establishing that Hi-Lite's part numbers are descriptive and not inherently distinctive, Hi-Lite will likely be able to demonstrate that those part numbers have achieved secondary meaning based on its continuous use in its advertisements for a period greater than five years. Plaintiff's Motion for Summary Judgment should therefore be denied.

Plaintiff's reliance on *AmBrit v. Craft* in support of its position as to Counts II, III, IV, and V of Defendants' Second Amended Counterclaims [Dkt. 60] is misplaced. *AmBrit* was a trade dress infringement case, not a trademark infringement case. Counts II, III, IV, and V allege Florida Common Law Trademark Infringement[4], Unfair Competition (Trademark Infringement), Unfair Competition (Reverse Passing Off), and False Advertising. *See* [Dkt. 60] at ¶¶ 93-115. Plaintiff's reliance on *University of Florida v. KPB, Inc.* is similarly unpersuasive. *University of Florida* is also a trade dress case in which the Court relies on *AmBrit* and *Bauer Lamp Co.*, also trade dress cases, for the proposition that a Section 43(a) Lanham Act plaintiff must show non-functionality to prevail on a trade dress infringement claim. *See, e.g. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). The non-functionality requirement cited by Plaintiff is

---

[4] The analysis for Florida common law trademark infringement is the same as under the Lanham Act. *See Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003).

irrelevant to a claim of trademark infringement. In fact, a hallmark of a valid trademark is that it serves a very important function – an identification of source.

### A. The Supreme Court's *Dastar* Decision is Inapplicable to Counts II, III, IV, and V

Contrary to Plaintiff's assertion in its Motion, Counts II, III, IV, and V of Defendants' Second Amended Counterclaim [Dkt. 60] are not limited by the Supreme Court's holding in *Dastar*. The only question presented in *Dastar* was "whether § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prevents the unaccredited copying of a work . . . ." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 25 (2003). Here, Hi-Lite does not allege the unaccredited copying of its part numbers or product depictions. Instead, Hi-Lite alleges that Plaintiff illegally used its part numbers and product depictions to sell non-Hi-Lite products. [Dkt. 60 at Pg. 27.]

In *Dastar*, the defendant manufactured and sold a World War II video series as its own product. *See Dastar*, 539 U.S. at 27. The video set made no reference to the author of the underlying video footage, which was the subject of an expired copyright. *Id*. The plaintiff filed suit, alleging that defendant's sale of its video series without proper credit constituted reverse passing off in violation of 43(a) of the Lanham Act. *Id*. In assessing the plaintiff's claim to a right of attribution pursuant to the Lanham Act, the Supreme Court held that the phrase "origin of goods" in 43(a) of the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Id*. at 37. In other words, "the phrase 'origin of goods is . . . incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id*. at 32. Accordingly, the "goods" in *Dastar* were the actual tangible video tapes, not the underlying video footage. This interpretation was necessary because to hold otherwise would amount to "according special treatment to communicative products," which "causes the Lanham

Act to conflict with the law of copyright." *Id.* at 33. "[A]llowing a cause of action under 43(a) for [defendant's] representation [that it produced the video series] would create a species of mutant copyright law that limits the public's federal right to copy and use expired copyrights." *Id.* at 34. (internal citation omitted).

Here, Hi-Lite is not attempting to circumvent the well-established copyright law principle that the public is free to copy and use works that are the subject of an expired copyright. Instead, the allegation is that Plaintiff offered Hi-Lite's products for sale to consumers but fulfilled orders with non-Hi-Lite products. Plaintiff's actions constitute trademark infringement (Count II), unfair competition (Count III), reverse passing off (Count IV), and false advertising (Count V).

Plaintiff's reliance on *Photographic Illustrators*, *Bretford*, and *General Universal Systems* is unpersuasive. In *Photographic Illustrators*, the Plaintiff brought a claim under the Lanham Act alleging that Defendant "displayed its photographs with false attribution—the watermark—and, in doing so, misrepresented the 'origin and nature' of those photographs.*" Photographic Illustrators Corp. v. Orgill, Inc.*, 2015 WL 4572296, at *10 (D. Mass. July 29, 2015). The court reasoned that "after *Dastar*, the phrase 'origin of goods' applies only to the producer of the tangible product sold in the marketplace." *Id.* (citing *Dastar*, 539 U.S. at 31). In *Photographic Illustrators*, the tangible product sold in the marketplace was a light, not the photograph of the light. *Id.* Thus, the Lanham Act did not apply. "While the defendant's failure to attribute the images to [Plaintiff] is actionable under the Copyright Act, as discussed above, it would be out of accord with the history and purpose of the Lanham Act to afford [Plaintiff] relief under trademark law as well.

In *Bretford*, a table manufacturer brought an action under the Lanham Act, alleging "reverse passing off" based on its competitor's use of a table leg of the manufacturer as part of a

table submitted by the competitor to a third party as a *sample*. *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 286 F. Supp. 2d 969, 970 (N.D. Ill. 2003) (emphasis added). The court reasoned that because "there was no misrepresentation, or false advertising, in regard to the completed products -the tables-that were sold," the manufacturer's claim failed after *Dastar*. *Id.* at 972.

In *General Universal Systems*, the plaintiff alleged that the defendant, "by copying and marketing [plaintiff's] software as [defendants'], engaged in 'reverse palming off' in violation of § 43(a) of the Lanham Act". *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 148 (5th Cir. 2004). The court relied on *Dastar* in holding that the Lanham Act claim fails, stating "[plaintiff] has not accused [defendant] of taking tangible copies of its software, removing its trademarks, and selling them as its own. Rather, [plaintiff] asserts that [defendant] copied the ideas, concepts, structures, and sequences embodied in its copyrighted work." Id. at 149. (5th Cir. 2004).

Here, Hi-Lite is not alleging in Counts II, III, IV, and V that Plaintiff displayed its copyrighted works without attribution (*Photographic Illustrators*), included a Hi-Lite component in one of its sample products not actually offered for sale (*Bretford*), or copied Hi-Lite's copyrighted software (*General Universal Systems*). Accordingly, Plaintiff's reliance on inapposite case law for the conclusion that the holding of *Dastar* applies here fails.

## VI.    CONCLUSION

In light of the foregoing, Plaintiff's Motion should be DENIED.

Date: December 23, 2015

Respectfully submitted,

/s/ Michael J. Colitz, III
Michael J. Colitz, III
Trial Counsel
Florida Bar No. 164348
Stefan V. Stein
Florida Bar No. 300527
Stephen G. Anderson
Florida Bar No. 0105697
GrayRobinson, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL 33602
Tel: 813/273-5000
Fax: 813/273-5145
michael.colitz@gray-robinson.com
stefan.stein@gray-robinson.com
stephen.anderson@gray-robinson.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a copy to all counsel of record.

/s/ Michael J. Colitz, III
Michael J. Colitz, III

# 6280642 v4