UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

    Plaintiff,

v.                                CASE NO. 8:14-cv-01955-MSS-AEP

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation; and JEFFREY L.
OHAI, an individual California Resident,

    Defendants.
_____/

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

In its Opposition, Plaintiff attempts to distract this Court by citing inapposite case law and addressing claims not raised in Hi-Lite's Motion for Summary Judgment [Dkt. 167]. For instance, Plaintiff's Opposition attacks Hi-Lite's claims of trademark infringement (Count III) and passing off (Count IV), but Hi-Lite has not moved for summary judgment on either of these claims. Because these claims are beyond the scope of Hi-Lite's Motion, their consideration here is improper. Plaintiff's Opposition contains other irrelevant and procedurally inappropriate requests. Buried on page 8 of the opposition, Plaintiff portrays its Opposition as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). *See* Opp'n at Pg. 8. Making such a request at this late date via a passing reference in an opposition brief is obviously inadequate. *See Pinellas Suncoast Transit Authority v. Mincom, Inc.*, 2007 WL 2225812, at *5 (M.D. Fla. July 31, 2007)

(moving to dismiss under 12(b)(6) in an opposition is inappropriate and not contemplated by Rule 12(h)(2)).[1]

Leaving aside such distractions, Plaintiff has presented no material issues of fact precluding summary judgment in Defendants' favor. Defendants' motion must be granted.

I. **HI-LITE IS ENTITLED TO SUMMARY JUDGMENT ON ITS FALSE ADVERTISING CLAIMS.**

Regarding the only Lanham Act claim actually at issue here, Plaintiff attempts to persuade this Court that Hi-Lite's false advertising claim arising under section 43(a)(1)(B) of the Lanham Act is precluded by the Supreme Court's holding in *Dastar*. This is simply not the case. As is abundantly clear from a proper reading of post-*Dastar* false advertising jurisprudence, Hi-Lite's claims are exactly the type of unfair trade practices the Lanham Act was intended to prevent. Plaintiff's Opposition again attempts to misdirect this Court by conflating the proper test for false advertising in this jurisdiction with elements of entirely different causes of action.[2] When applying the proper test in this jurisdiction for violation of Section 43(a)(1)(B) of the Lanham Act, which was outlined by the Eleventh Circuit in its post-*Dastar* opinion in *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1348-49 (11th Cir. 2012), it is readily apparent that there no remaining issues of material fact that would preclude this Court from granting summary judgment in favor of Hi-Lite.

---

[1] Plaintiff also inferentially asserts a number of "cross motions" in its opposition. *See, e.g.*, Opp'n at Pg. 30. Pursuant to the Amended Case Management and Scheduling Order, dispositive motions were due November 23, 2015. *See* [Dkt. 106]. Further, the discovery deadline in this case was October 26, 2015. *See id.* Pursuant to Rule 56(b), November 25, 2015 was the last day Plaintiff could have filed its motion. *See* Fed. R. Civ. P. 56(b). The "cross motion" was filed December 23, 2015 and was, therefore, untimely pursuant to either the Case Management Order or Rule 56(b).

[2] *See, e.g.*, Opp'n at Pg. 14-16 (arguing that Hi-Lite's false advertising claims fail because its product designations have failed to achieve secondary meaning, which is not an element of the cause of action).

A.  Hi-Lite's False Advertising Claims Survive the Supreme Court's Holding in *Dastar*.

Contrary to Plaintiff's assertion, the Supreme Court's holding in *Dastar* has not been expanded so far as to preclude Hi-Lite's false advertising claims. As explained in Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment [Dkt. 215], *Dastar*, a reverse passing off case, stands for the proposition that the Lanham Act should not be extended to cover that which is subject to U.S. copyright or patent law. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (concluding that "the phrase ['origin of goods'] refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods [because] [t]o hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do.") (internal citation omitted). Thus, the ultimate question after *Dastar* is whether the protection afforded Hi-Lite under the Lanham Act, taking into account the Supreme Court's definition of "origin of goods," would place the Act in conflict with the patent or copyright laws. The answer to this question is no.

"Section 43(a) of the Lanham Act prohibits actions . . . that deceive consumers and impair a producer's goodwill." *Id.* at 32. The Lanham Act exists to "assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product." *Id.* at 34 (quoting *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 163–64 (1995)). The Act is "a remedial statute that should be broadly construed." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (internal citation omitted).

The Supreme Court in *Dastar* was very clearly interpreting the phrase "origin of goods" in Section 43(a)(1)(A) of the Lanham Act, not 43(a)(1)(B), which is applicable here. *See Dastar*,

3

539 U.S. at 31 ("At bottom, we must decide what § 43(a)(1)(A) of the Lanham Act means by the 'origin' of 'goods.'"). While some courts have extended *Dastar's* "origin of goods" definition to Section 43(a)(1)(B), that extension still fails to foreclose Hi-Lite's claim. "[W]hile the two causes of action [43(a)(1)(A) and 43(a)(1)(B)] are derived from the same principles and contained in the same statute, the Supreme Court has recognized that the false advertising provision [43(a)(1)(B)] of the Lanham Act entails broader protections." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1276 (11th Cir. 2015) (citing *POM Wonderful LLC v. Coca–Cola Co.*, 134 S.Ct. 2228, 2234 (2014)). "The Lanham Act's trademark provisions are the primary means of achieving [the statute's] ends. But the Act also creates a federal remedy [for false advertising] 'that goes beyond trademark protection.' The broader remedy is at issue here." *POM Wonderful*, 134 S.Ct. at 2234 (quoting *Dastar*, 539 U.S. at 29). "The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling. Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for *competitors*, not consumers." *Id.* (emphasis added).

In its Opposition, Plaintiff incorrectly argues that Hi-Lite's false advertising claims are "an attempt . . . to circumvent the requirements and limitations in maintaining an action under the Copyright Act." Opp'n at Pg. 5. This is simply not the case. Hi-Lite's false advertising claims are *not* based on any failure by Plaintiff to provide attribution to Hi-Lite of its copyrighted photographs (as alleged in *Dastar*), nor are its claims alleging that Plaintiff was not allowed to display Hi-Lite's copyrighted photographs on its website during the course of the business relationship between the parties.[3] Instead, Hi-Lite alleges that Plaintiff advertised Hi-Lite's products for sale and fulfilled those orders with Barn Light Electric-manufactured products,

---

[3] While Barn Light Electric was a retailer for Hi-Lite products, Barn Light Electric was permitted to advertise and sell Hi-Lite products via its website.

4

thereby diverting sales revenue from Hi-Lite to Barn Light Electric. *See* Motion, [Dkt. 167 at Pg. 6-13]. Even after *Dastar*, such an act constitutes false advertising under the Lanham Act.[4] Importantly, Hi-Lite's copyrighted works, product designations, and other product depictions are not the "goods" it alleges have been misrepresented.[5] Such claims would indeed be foreclosed under *Dastar*. Plaintiff's misrepresentations as to the origin of the lighting fixtures it sold is the misrepresentation at issue here. This blatant misrepresentation permitted Barn Light Electric to "reap the financial, reputation-related rewards associated with a desirable product." *Dastar*, 539 U.S. at 32.

Plaintiff's statement that "the overwhelming body of law construing *Dastar* strongly supports Barn Light Electric's entitlement to summary judgment and the dismissal of Hi-Lite's § 43(a)(1)(B) Lanham Act claims" is wholly inaccurate. *See* Opp'n at Pg. 4. In support of its proposition, Plaintiff cites nine cases outside of this jurisdiction, *see id.*, all of which are factually distinguishable from Hi-Lite's claims, and many of which are not even false advertising cases.[6] Upon proper application of post-*Dastar* false advertising jurisprudence, Hi-Lite must prevail.

---

[4] In its Opposition, Plaintiff's contends that "Hi-Lite's claim fails because it cannot prove secondary meaning." *See* Opp'n at Pg. 14. However, as indicated above, there is no requirement that Hi-Lite prove secondary meaning to prevail on its false advertising claim. *See Suntree Techs.*, 693 F.3d at 1348-49; [Dkt. 167] at Pg. 7.

[5] Nor does Hi-Lite's false advertising claim allege any copying of Hi-Lite's product designs.

[6] *See Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576, 590 (6th Cir. 2015) (reversing district court because "advertisements were false only because they represented that Pace, rather than Best, was the intellectual origin of the products"); *Quadratec, Inc. v. Turn 5, Inc.*, 2015 WL 4876314, at *10 (E.D. Pa. Aug. 13, 2015) (rejecting false advertising claim because "[p]laintiff has not alleged that Defendant made a false or misleading statement about its goods, or about Plaintiff's goods.... Instead, Plaintiff claims that Defendant made a false statement about the photographs taken of those goods."); *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 2012 WL 414803, at *5 (N.D. Ill. Feb. 8, 2012) (misrepresentation as to origin of poem was misrepresentation as to authorship and thus not actionable under 43(a)(1)(B)); *Romero v. Buhimschi*, 396 Fed.Appx. 224, 233 (6th Cir. 2010) (failure to provide attribution in research article not a misrepresentation as to the "nature, characteristics, or qualities of the research"); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 580 (7th Cir. 2005) (reverse passing off case lacking any false advertising claim); *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 784 (S.D. Ohio 2009) (declining to consider false advertising claims); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009) (rejecting false advertising claim because "authorship ... is not a nature, characteristic, or quality" under 43(a)(1)(B)); *Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC*, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006) (dismissing "claims that sound in false authorship"); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,

5

B.  **There Are No Issues of Fact with Regard to Hi-Lite's False Advertising Claim.**

As outlined in Hi-Lite's Motion for Summary Judgment [Dkt. 167], it is undisputed that Barn Light Electric fulfilled orders for Hi-Lite products with its own products. Plaintiff's contention that its "customer service policy" was to contact customers prior to shipping substitute products is neither supported by any evidence whatsoever nor a valid defense to false advertising. *See* Opp'n at Pg. 11. As indicated in Defendants' Motion, false advertising under the Lanham Act is a strict liability cause of action. *See* Motion, [Dkt. 167 at Pg. 6]. In fact, the mere existence of the "customer service policy" is an admission by Barn Light Electric that it was engaging in false advertising.

Plaintiff's contention that it "has never used Hi-Lite Marketing Materials to sell anything but Hi-Lite products" is simply untrue. *See* Opp'n at Pg. 10. First, Mr. Sanders received a Barn Light Electric product in fulfillment of an order for a Hi-Lite product. *See* Motion, [Dkt. 167 at Pg. 9-11]. Second, Bryan and Donna Scott each independently admitted that Barn Light Electric would systematically fulfill orders for Hi-Lite products with Barn Light Electric products. *See* Exhibit A, B. Scott Depo. at 176:12-187:21; Exhibit B, Barn Light Electric 30(b)(6) Depo. (B. Scott) at 106:4-107:25; Exhibit C, D. Scott Depo. at 109:24-110:23; 113:7-116:7. Third, Barn Light Electric's former General Manager, Walter Solms, identified the extent to which Barn Light Electric was fulfilling orders for Hi-Lite products with Barn Light Electric products. *See* Exhibit D, W. Solms Depo. at 23:19 – 30:7. Fourth, if Plaintiff was not illegally fulfilling orders for Hi-Lite products with Barn Light Electric products, then why even need a "customer service policy" for contacting the customer to determine whether a substitution was acceptable? Hi-Lite's Motion should be granted.

---

546 F. Supp. 2d 120, 131 (S.D.N.Y. 2008) (declining to consider merits of false advertising claim because Plaintiff failed to establish standing).

II. **HI-LITE IS ENTITLED TO SUMMARY JUDGMENT ON ITS COPYRIGHT INFRINGEMENT CLAIMS.**

As indicated in its Motion, there are no issues of fact that would preclude this Court from granting summary judgment in favor of Hi-Lite with regard to its copyright infringement claims. Plaintiff's attempts to attack the validity of Hi-Lite's copyright registrations are not persuasive, and are yet another attempt to distract this Court from the actual issues at hand.

A. **Hi-Lite's Copyright Registrations Are Valid.**

Plaintiff alleges that Hi-Lite's copyright registrations are invalid because Hi-Lite failed to disclose pre-existing works, intentionally misrepresented the authorship of its catalogs, and improperly identified its catalogs as works made for hire. *See* Opp'n at Pg. 17-30. Plaintiff's position, however, is unsupported by the evidence.

1. **Plaintiff Has Failed to Demonstrate The Existence of Preexisting Works.**

Plaintiff contends that Hi-Lite's copyright registrations are invalid for failing to disclose preexisting works to the Copyright Office. *See* Opp'n at Pg. 18-19. However, Plaintiff has not provided any evidence in support of its contention apart from the self-serving statements of Ms. Donna Scott. *See* D. Scott Dec., [Dkt. 212 at ¶¶ 29-36]. In support of her claim, Ms. Scott states "[i]t is my understanding that Hi-Lite published its RLM catalog on its website as early as June of 2006." *Id.* at ¶34. Confusingly, she then refers the Court to Exhibit B of her declaration and states "I have attached hereto as Exhibit B a true and accurate printout of a page from the Internet Archive which shows that the Hi-Lite RLM catalog was included on [Hi-Lite's website] in *June 2008*." *Id.* (emphasis added). Notably, June 2008 is after the date of first publication of Hi-Lite's 208 catalog, which was listed on the face of the registration as May 14, 2008. *See* Opp'n at Ex. 10. Ms. Scott also refers the Court to Exhibits M and N of her declaration and claims that certain image files contain "modified date(s)" dating back as far as 2003. *See id.* at

7

¶¶59-60; Ex. M-N. These exhibits and references to "modified dates" hardly serve as evidence of prior publication. The same holds true for Plaintiff's Exhibit 19, allegedly depicting a comparison between certain "preexisting works" and Hi-Lite's copyrighted catalog. *See* Opp'n at Ex. 19. The date listed under certain images from Hi-Lite's RLM catalog is May 1, 2006. *Id.* However, as indicated in Ms. Scott's declaration, this date reflects a "modified date," not a date of publication. *See* D. Scott Dec. at ¶¶59-60; Ex. M-N. Ms. Scott's contentions with regard to Hi-Lite's line drawings are similarly unpersuasive. *See id.* at ¶36, Ex. C. Not only are the line drawings illegible, they are not the same line drawings asserted by Hi-Lite in its Motion or included in its registered catalog. *See* [Dkt. 167 at Pg. 25-26].

Furthermore, and most importantly, Plaintiff failed to produce Exhibits B, C, M, or N to Ms. Scott's declaration prior to the close of the discovery in this case, and is therefore precluded from relying on them in this matter. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless").

### 2. Hi-Lite is the Author and Owner of the Works That Are the Subject of its Copyright Registrations.

As indicated on the face of its copyright registrations, Hi-Lite is the author of the *catalogs* that are the subject of the respective registrations because they were prepared by Hi-Lite employees acting within the scope of their employment. It is those very catalogs that Barn Light Electric has infringed by its unauthorized reproduction of the photographs contained therein. Plaintiff's arguments with regard to authorship of the individual photographs in its catalogs are off point, and are yet another example of its fundamental lack of understanding of the claims against it.

"[A] work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 743 (1989). A work prepared by an employee is a work for hire if it is "prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. "If the work is for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a written agreement to the contrary." *CCNV*, 490 U.S. at 737 (citing 17 U.S.C. § 201(b)).

Here, Hi-Lite's catalogs were prepared by its employees. *See* Exhibit E, J. Ohai Depo. at 24:2-4 ("We or I design, we make sure everything is correct, we shoot photography on it, we catalog, and we distribute catalogs to our customers and sales reps."). As Plaintiff properly recognized in its Opposition, Mr. Dimitri Newman, the photographer responsible for some of the individual photographs included in Hi-Lite's catalogs, transferred his ownership of any copyrights in the individual photographs to Hi-Lite by assignment. *See* Opp'n at Pg. 23. Plaintiff's allegation that Hi-Lite failed to produce a signed version of Mr. Newman's copyright assignment is simply untrue. *See* Opp'n at Pg. 22. The signed version was produced to Barn Light Electric's counsel on July 13, 2015. *See* Exhibit F.[7] Accordingly, Hi-Lite is the owner of the copyrights in the individual photographs and is the author of the catalogs. Plaintiff's contention that "Hi-Lite intended to register the photographs themselves as original works" is entirely baseless and unsupported by the face of the copyright registrations. *See* Opp'n at Pg. 21; Ex. 10.

Furthermore, under the effective registration doctrine, a registration for a derivative or collective work encompasses underlying works that are owned by the copyright registrant.

---

[7] For brevity, Defendants refer the Court to Plaintiff's Opp'n at Ex. 17 for the exhibits to Mr. Newman's copyright assignment.

"[W]hen the same party owns the derivative or collective work plus the underlying elements incorporated therein, its registration of the former is sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting." David Nimmer, 2 Nimmer on Copyright §7.16 [B][5][c] (2010) (internal citation and quotation marks omitted).[8] In the present case, Hi-Lite's ownership of the photographs in question is not in dispute.

### 3. Hi-Lite's Copyright Registrations Should Not Be Referred to the Copyright Office for an Advisory Opinion Because Plaintiff Has Failed to Demonstrate Any Inaccuracies in the Applications.

Plaintiff asks this Court to refer certain questions to the Copyright Office relating to "issues concerning the inaccuracies of the authorship, work-for-hire and preexisting works . . . ." However, Plaintiff has failed to establish (1) Hi-Lite's copyright applications contained inaccurate information; and (2) Hi-Lite had knowledge any information was inaccurate. *See* 17 U.S.C. § 411(b)(1)(A). The Seventh Circuit recognized § 411(b)(2)'s potential for abuse by litigants seeking to delay copyright infringement proceedings, and recommends that a party seeking a referral to the Copyright Office first establish the existence of a known inaccuracy in the copyright application.[9] Here, Plaintiff has not pointed to a single inaccuracy in either the applications or the registrations asserted by Hi-Lite. First, as described above, Hi-Lite is the author of its catalogs, which were prepared by Mr. Ohai and other Hi-Lite employees as works made for hire. Second, as described above, Plaintiff has failed to demonstrate the existence of

---

[8] *See also Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 682 (9th Cir. 2014); *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, 722 F.3d 591, 596 (4th Cir. 2013); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1143 (10th Cir. 2009); *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 746-47 (2nd Cir. 1998).

[9] *See DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) (stating that "[g]iven its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future" and "[a]lthough the statute appears to mandate that the Register get involved in any case in which inaccurate information in an application for copyright registration is alleged, . . . input need not be sought immediately after a party makes such a claim. Instead, courts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality. In other words, a litigant should demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office.") (internal citation omitted).

preexisting works. Third, even if there were any preexisting works, a failure to list those works in a copyright application is inconsequential.[10] Fourth, the "[a]uthor created" fields on the face of the registrations are accurate. *See* Opp'n at Ex. 12, Resp. 2nd Interrog. at Interrogatory No. 9 (catalogs include photographs and artwork prepared by employees, thereby making the employer the author under the work for hire doctrine). Thus, Hi-Lite can maintain its copyright infringement action, even if the works in question were preexisting.

B.  **Plaintiff's Contention that Hi-Lite's Copyright Claims Are Barred By An Implied License, the Doctrine of Equitable Estoppel, and the Statute of Limitations Lack Merit.[11,12]**

As described in detail in Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment [Dkt. 215], Plaintiff's arguments regarding any limits on Hi-Lite's copyright claims based on implied license or the statute of limitations were waived by its failure to include them as affirmative defenses in its answer to Defendants' Second Amended Counterclaims. *See* [Dkt. 215 at Pg. 22-23]. Even if this Court finds that the affirmative defenses of license or statute of limitations were not waived, they fail. [*See id.* at Pg. 23-28]. Plaintiff's defense of equitable estoppel likewise fails. [*See id.* at Pg. 28-29]. Hi-Lite is entitled to summary judgment on its copyright infringement claims.

---

[10] *See Lennar Homes of Texas Sales and Marketing, Ltd. v. Perry Homes, LLC*, 2015 WL 4633514, *5 (noting that failure to disclose derivative nature of designs is immaterial as it would not be basis for rejection by the Copyright Office); see also Nimmer § 7.20[B][1], at 7–212.4(8)(a).21 ("In general, failure to disclose that the registered work is derivative of an earlier, underlying work should occasion rejection of the registration certificate only if the claimant was for some reason ineligible to register the derivative work.").

[11] In passing, Plaintiff also contends that its unauthorized use of Hi-Lite's copyrighted photographs on its website is subject to a fair use defense. *See* Opp'n at Pg. 19. Plaintiff is mistaken. Its use is undoubtedly commercial in nature. *See* [Dkt. 60]; Motion, [Dkt. 167] at Pg. 14; [Dkt. 172] at ¶18; *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449 (1984) (stating "commercial or profit-making . . . use [is] presumptively . . . unfair."). Further, because fair use is an affirmative defense to copyright infringement, Plaintiff's failure to raise it in its answer to Defendants' Second Amended Counterclaims resulted in its waiver of the defense.

[12] Plaintiff's assertion that Hi-Lite's copyright claims must fail because they did not photocopy the images in Hi-Lite's catalogs is also unpersuasive. *See* Opp'n at Pg. 28, Ex. 22. The standard for copyright infringement is "substantial similarity." *See Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012).

### III. MR. OHAI'S COVENANTS MOOT ANY CONTROVERSY REGARDING THE '477 PATENT.

After nearly a year of discovery, Plaintiff has been unable to establish any controversy regarding the '477 patent. Both in written discovery requests and deposition questions, Mr. Ohai asked the Plaintiff to identify any products it believed were accused of infringing the '477 patent. Mr. Ohai did this with the intention of reviewing the identified products and potentially including them in a subsequent covenant. However, other than the products already identified in Mr. Ohai's covenants, Plaintiff was unable to identify any such products. Faced with Mr. Ohai's motion, Mr. Bryan Scott now comes forward regarding "concrete plans" for some unidentified product to be made at some unspecified time in the future. But such speculative future conduct is simply insufficient to maintain declaratory judgment jurisdiction. Mr. Ohai's motion should be granted.

Mr. Ohai provided a covenant not to sue to Barn Light Electric over a year ago at the very outset of this case. [Dkt. 22-1.] This first covenant was ultimately deemed to be insufficient as it failed to precisely identify the products covered by the covenant. [Dkt. 49]. Mr. Ohai responded by providing a second covenant that included a photograph of the Barn Light Electric product that was the impetus of the August 21 cease and desist letter. [Dkt. 64-1]. The depicted product was Barn Light Electric's two piece extended coupler and it is the only product Mr. Ohai had knowledge of at the time of his August 21 cease and desist letter. [Dkt. 172 at ¶30]. Mr. Ohai's second covenant was deemed insufficient because it expressed "no intent to unconditionally extinguish all past, present, and future patent infringement claims." [Dkt. 105 at 5]. Mr. Ohai's most recent covenant clarifies the extent of his prior covenants and his intent to

relinquish "any past, present, or future" infringement claims." [Dkt. 172 at ¶31].[13] Considering Mr. Ohai's various covenants collectively, and the fact that no counterclaim for patent infringement has been made in this case, it is undeniable that any controversy regarding the '477 Patent is moot.

A.  **Mr. Ohai Has Met His Burden.**

The Supreme Court recently addressed the relative burdens of parties involved in a declaratory judgment matter. *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013). A declaratory judgment defendant carries the initial burden of showing it "could not reasonably be expected to resume its enforcement efforts" against the plaintiff. *See id.* at 727. This burden is discharged when the defendant issues a "covenant [that] encompasses all of [the] allegedly unlawful conduct." *See id.* at 728. Once this burden is discharged, it is "incumbent on the [opposing party] to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *See id.* Mr. Ohai has met his burden in this case by unconditionally agreeing not to sue regarding the only product that he is aware of that potentially infringes the '477 Patent. [Dkt. 172 at ¶31.] Mr. Ohai also affirmed that he is unaware of any other products implicated by his original cease and desist letter. [*See id.*] Given these sworn statements, the burden now rests with the Plaintiff to demonstrate it has "sufficiently concrete plans to engage in activities not covered by the covenant." *See Already*, 133 S.Ct. at 728. The reason for this burden shifting is simple: information regarding an accused party's "activities and plans is uniquely within its possession." *See id.*

Mr. Ohai propounded discovery to determine if there were any other products to potentially be included in a covenant. His Interrogatory No. 15 sought an identification of any

---

[13] Mr. Ohai has previously stated his intention to relinquish past, present, and future claims in his Motion to Dismiss. [Dkt. 64 at Pg. 3]. This was deemed insufficient by the Court insomuch as that language was not included as part of Mr. Ohai's covenant.[Dkt. 105 at 5.]

13

products Barn Light Electric thought were accused of infringing the '477 Patent. Not a single product was identified. [Dkt. 167-1; Plaintiff's Response to Interrogatory No. 15.] Mr. Bryan Scott was also asked to identify any products that were similar to the two-piece extended coupler depicted in Mr. Ohai's second covenant. Again, he did not identify a single product. *See* Exhibit A, B. Scott Depo. at Pgs. 48-53, Ex. 6. Given Plaintiff's inability to identify any other products that are not covered by Mr. Ohai's covenant, it has not met its burden under *Already*.

Faced with Mr. Ohai's motion, Plaintiff now asks the Court to believe that it has newfound "concrete plans" to engage in activities not covered by the covenant. [Dkt. 213 at ¶33.] But other than parroting the "concrete plans" language from *Already*, Mr. Scott provides not a scintilla of evidence regarding what these plans entail. Mr. Scott provides no photographs, sketches, or engineering notebooks regarding his supposedly new design. Moreover, Paragraphs 32 and 34 of his Declaration are contradictory regarding sales of different coupler products. Exhibit 23 of the Opposition then depicts a previously undisclosed product that it alleges is "both functionally and physically different than the product depicted in Exhibit Q to the Ohai Covenant." *See* Opp'n at Pg. 34. It is notable, however, that Mr. Scott's Declaration actually fails to make any reference to this product. One would expect that if the product depicted in Exhibit 23 of the Opposition were part of Mr. Scott's "concrete plans" he would have testified to this fact. But he has not. In the absence of such, all that has been presented to the Court is a vague assertion that a "different" product is currently in the works. This testimony is simply insufficient to discharge Plaintiff's obligation. This is because a covenant not to sue need not cover potentially infringing activities in the future as long as it covers the past and present activities that constitute the "actual controversy" between the parties, due primarily to the speculative nature of future infringement for some as-of-yet undeveloped product. *Benitec*

*Australia, Ltd. v. Nucleonics*, 495 F.3d 1340, 1343 (Fed. Cir. 2007). "[A]n actual controversy cannot be based on fear of litigation over future products." *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (finding covenant sufficient despite new products "in the pipeline" that were not advertised, manufactured, marketed, or sold).

B.  **Hi-Lite Has No Covenant To Give.**

Plaintiff's argument that Hi-Lite needs to provide a covenant as well also lacks merit. Mr. Ohai has never assigned the '477 Patent to Hi-Lite or any entity. Mr. Ohai is the sole and 100% owner of the '477 Patent. This fact was made clear to Plaintiff well over a year ago. [Dkt. 29-4] ("Hi-Lite is neither the owner nor the assignee of U.S. Patent No. 8,556,477. You conceded this fact in your Second Amended Complaint."). If Hi-Lite were even able to bring any claims based on the '477 Patent against Plaintiff, it forfeited those rights like Mr. Ohai did when it failed to bring a compulsory counterclaim of infringement to Plaintiff's declaratory judgment challenge. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999) ("it is generally recognized that when the same patent is at issue in an action for declaration of non-infringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived."). It bears emphasis that Hi-Lite is a separate entity from the patent owner, Mr. Ohai, and has no enforcement rights whatsoever. Any concern regarding an assignment of rights in the '477 Patent is entirely speculative and not sufficiently concrete or particularized to justify having this Court force Hi-Lite to disclaim rights it does not have in the first place. As a result, the covenant as it currently stands is sufficient.

IV.  **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that Defendants' Motion for Partial Summary Judgment [Dkt. 167] should be granted.

Date: January 6, 2016                    Respectfully submitted,


                                         /s/ Michael J. Colitz, III
                                         Michael J. Colitz, III
                                         Trial Counsel
                                         Florida Bar No. 164348
                                         Stefan V. Stein
                                         Florida Bar No. 300527
                                         Stephen G. Anderson
                                         Florida Bar No. 0105697
                                         GrayRobinson, P.A.
                                         401 E. Jackson Street, Suite 2700
                                         Tampa, FL 33602
                                         Tel: 813/273-5000
                                         Fax: 813/273-5145
                                         michael.colitz@gray-robinson.com
                                         stefan.stein@gray-robinson.com
                                         stephen.anderson@gray-robinson.com
                                         *Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a copy to all counsel of record.

                                         /s/ Michael J. Colitz, III
                                         Michael J. Colitz, III

# 6302115 v4