BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,
    Plaintiff,

v.

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; and
HI-LITE MANUFACTURING COMPANY, INC.,
a Nevada corporation,
JEFFREY L. OHAI, an individual California resident,
    Defendants.
_____/

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; and
HI-LITE MANUFACTURING COMPANY, INC.,
a Nevada corporation,
JEFFREY L. OHAI, an individual California resident,
    Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,
    Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida residents,
    Third-Party Defendants.
_____/

**PLAINTIFF BARN LIGHT ELECTRIC COMPANY, LLC AND THIRD PARTY DEFENDANTS BRYAN AND DONNA SCOTT'S REPLY TO DEFENDANTS' OPPOSITON TO THE *CORRECTED* MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS IX-XII OF PLAINTIFF'S THIRD AMENDED COMPLAINT, AND COUNTS II-IX AND XIII-XIX OF DEFENDANTS' <u>SECOND AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT</u>**

# TABLE OF CONTENTS

I. SUMMARY JUDGMENT OF NO TRADE DRESS INFRINGEMENT IS PROPER.. 1
II. U.S. PATENT NO. 8,556,477 IS INVALID UNDER 35 U.S.C. § 102(B) ......................... 4
III. SUMMARY JUDGMENT OF COPYRIGHT NONINFRINGEMENT IS PROPER... 8
IV. SUMMARY JUDGMENT OF NO FALSE ADVERTISING IS PROPER .................. 11
V. CONCLUSION ................................................................................................................ 15

Plaintiff and Third-Party Defendants (collectively, "Plaintiffs"), hereby submit their Reply to Defendants' Opposition [Dkt. 215] ("Opposition") to Plaintiffs' *Corrected* Motion for Partial Summary Judgment [Dkt. 198] ("Motion"), and respectfully state as follows:

## MEMORANDUM OF LAW

### I. SUMMARY JUDGMENT OF NO TRADE DRESS INFRINGEMENT IS PROPER

Try as Defendants may, there is no hiding the obvious: Defendants sell the same light fixture designs as countless others in a crowded industry. Those light fixture designs are mundane and unoriginal; generic and functional in every sense; and no more than copies of copies, dusty from decades in the public domain. There is no material question of fact about the invalidity of Defendants' so-called trade dress on light fixture designs, and thus summary judgment is appropriate in favor of Plaintiffs for Counts IX, XVIII, and XIX of the Second Amended Complaint ("SACC").

#### A. Defendants Present No Evidence of Acquired Secondary Meaning

Defendants' entire argument for secondary meaning of its light fixtures is the unsupported claim that "Hi-Lite has spent millions of dollars developing new and unique lighting fixtures" as well as "considerable amounts of time and money advertising these fixtures."[1] Defendants, having refused to produce financial documents, cannot support their secondary meaning arguments with precisely information they withheld.[2] Defendants also failed to provide evidence to demonstrate the effectiveness of their promotional efforts[3] and survey evidence

---

[1] Opposition, at 4 (citing Ohai Decl. at ¶3).

[2] Hi-Lite's refusal to produce financials is hotly contested and the subject of Plaintiff's Objections to the Magistrate Judge's Order Denying Motion to Compel, Dkt. 185. It would be grossly unfair to allow a party to, on the one hand, withhold financial documents, and on the other, argue that they spent millions on development or advertising to try to show secondary meaning.

[3] *See Vital Pharmaceuticals, Inc. v. American Body Bldg. Products, LLC*, 511 F. Supp. 2d 1303, 1311 (S.D. Fla. 2007) (noting that the "dispositive factor is not the extent of the promotional efforts, but their effectiveness.").

demonstrating any of its product designs acquired secondary meaning.[4] In sum, there is no material evidence of secondary meaning.

Regardless, "extensive sales … and advertising do not necessarily establish secondary meaning."[5] Defendants improperly argue *Garden Meadow, Inc. v. Smart Solar, Inc.*, 24 F. Supp. 3d 1201 (M.D. Fla. 2014) supports their secondary meaning contention. The *Garden Meadow* court made no determination as to whether secondary meaning was established because, in denying the motion for judgment on the pleadings as to the complaint, that court took the allegations as true. Moreover, Garden Meadow established that its products acquired secondary meaning through *exclusive use* by providing evidence that it was the *only producer* of its products. Defendants also improperly rely on a case where secondary meaning was supported by the plaintiff's *exclusive use* by depositions of wholesalers that identified the designs with the plaintiff.[6] Hi-Lite has not and cannot demonstrate exclusive use, and thus secondary meaning.

Hi-Lite makes much of allegations of copying by Barn Light Electric. Even assuming *arguendo* that there was copying (there was not), such copying would do nothing to vest generic, public-domain light fixtures with secondary meaning. Indeed, intentional copying does not conclusively establishes acquired secondary meaning.[7] "'[T]here is absolutely nothing legally or morally reprehensible about exact copying of things in the public domain.'" *Id*. (citations omitted). "Most courts apply the rule that the senior user must prove … secondary meaning in its mark just prior to the time and place that the junior user first began use of that mark."[8] Thus, even if there was copying, Defendants did not meet their burden of showing that secondary

---

[4] *See Hartco Engineering, Inc. v. Wang's Int'l, Inc.,* 142 Fed. Appx. 455, 460 (Fed. Cir. 2005) (holding that "[t]he most direct and persuasive evidence to establish secondary meaning is survey evidence.").

[5] *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1540, n.40 (11th Cir. 1986).

[6] *Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc.*, 706 F. Supp. 855, 858 (S.D. Fla. 1989).

[7] *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983).

[8] 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 15:4 (4th ed. 2015).

meaning was established prior to Plaintiff's alleged use of the light fixtures at issue.[9]

### B. Defendants Reply on Inapposite Cases that Do Not Rebut Functionality

Defendants rely on inapposite cases to support their position that whether Hi-Lite's designs are functional is a disputed question of fact. As discussed above, the procedural posture in *Garden Meadow* required the court to evaluate all plausible inferences determined from the allegations in favor of the plaintiff.[10] In contrast, in the summary judgment context, Defendants must designate specific facts that demonstrate there is a genuine issue for trial.[11] Here, Defendants failed to identify facts rebutting the comprehensive functionality of the light fixtures that they claim trade dress in. *See* Motion, at 13-17.

In *Wal-mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211-16 (2000), the Supreme Court distinguished between "product-design" trade dress and "product-packaging" trade dress. When addressing "product-design" trade dress (such as the present fixtures), courts are inclined to rely on evidence that demonstrates trade dress of a product as a whole are functional.[12]

---

[9] Defendants erroneously cite *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131 (2d Cir. 1992) for the proposition that a producer's trade dress is protected without proof of secondary meaning against deliberate copying. The Second Circuit's clearly stated that it is New York's common law – not the Lanham Act – which may shield trade dress from intentional copying even if it has not acquired secondary meaning. *Id*. at 138. Indeed, the Second Circuit rejected the doctrine of secondary meaning *in the making* under the Lanham Act. *Id*. at 136-39. In short, secondary meaning must already be established *prior* to the act of copying. Otherwise, the copying cannot confuse consumers.

[10] *Garden Meadow, Inc.*, 24 F. Supp. 3d at 1211-12.

[11] *Porter v. Ray*, 461 F.3d 1315, 1321 (11th Cir. 2006).

[12] *See Sharn, Inc. v. Wolfe Tory Medical, Inc.,* No. 8:09–cv–706–T–33AEP, 2009 WL 3416503, at *9 (M.D. Fla. Oct.19, 2009) (denying a preliminary injunction motion based movant's failure to show a substantial likelihood of success its trade dress infringement claim due to the functionality of its devices). In *Sharn*, while the defendant demonstrated the availability of alternative trade dress configurations for its devices, the defendant failed to demonstrate that the product design of the devices "could look differently without affecting the devices' optimal functionality, and without affecting their cost and/or quality." *Id*. at *6. Just as in *Sharn*, Defendants failed to provide "any other evidence to support the proposition that the available alternative designs could achieve the optimal functionality of the [lighting fixtures at issue]" and "any evidence of a single alternative design which would have a similar cost and quality of the [lighting fixtures]." *Id*. at *7 (noting that it "can only speculate as to whether any of the alternative designs submitted by Wolfe Tory would not affect the cost or quality of the devices" and "whether the alternative designs … can perform the WT devices' functions optimally"). Here, Defendants have failed to rebut the exhaustive evidence highlighted in the Motion that supports the fact that every feature of Defendants' trade dresses set forth in paragraphs 36-38 and 40-43 of the SACC are "essential to the use or purpose of the article" and "affect the cost or quality of the article." Motion, at 16.

C.  **The Asserted Trade Dress For Light Fixtures *As a Whole* is Generic**

The Defendants' hand-wringing about an improperly deconstructive trade dress analysis is of no consequence. Defendants miss the point—there is nothing about *any aspect* of their alleged light fixture trade dress designs that is unique or original. Put differently, whether viewed as "the whole fixture within itself" or "a single unitary whole" or in a holistic "overall impression" of light fixture parts, the conclusion is the same: there is *nothing* unique or distinctive about Hi-Lite's asserted trade dress. Cal Lighting, Hi-Lite's own representative summed it up best: "███████████████████████████████████████████████ ███████████████."[13]

## II.  U.S. PATENT NO. 8,556,477 IS INVALID UNDER 35 U.S.C. § 102(B)[14]

Defendants failed to raise an issue of genuine fact that the features of Hi-Lite's Product Number 15116 contain each and every feature of the subject matter claimed in the '477 Patent.[15] Indeed, Defendants failed to address, much less provide any rebuttal to, Barn Light Electric's extensive invalidity charts demonstrating how Hi-Lite's product anticipates the claims of the '477 Patent. Instead, Defendants gin-up two phantom "issues" designed to prevent summary judgment: whether the patented component was part of the alleged sale and whether the sale was subject to the on-sale bar. Opposition, at 13. Neither argument is sustainable.

A.  **The Patented Component Was Part Of Multiple Sales That Took Place In 2008**

1.  **The MU Part Was Sold To Barn Light Electric**

Defendants claim that evidence tying the order placed by Donna Scott at Barn Light Electric to Hi-Lite's MU ¾ Part is "glaringly absent." Opposition, at 15-16. This argument is a

---

[13] Exhibit 1, Cal Lighting Depo, 26:2-3.

[14] Defendants retreaded arguments regarding lack of subject matter jurisdiction are rebutted in Plaintiffs' opposition to Defendants' motion for summary judgment. *See* Dkt. 211, p. 31-35.

[15] Dkt. 198-4, Invalidity Chart.

red-herring. Ms. Scott witnessed the Fixture when it was delivered and witnessed the MU ¾ Part when it was detached.[16] According to Ms. Scott, the package she received "contained the three Fixtures" which "contained a sticker" reflecting that they were a Hi-Lite product "MODEL H 15116" manufactured on the "DATE MAR 2009" and "the flanges of the mounting posts of the Fixtures were cast with "HI-LITE MFG" and part number "MU-3/4." Thus, the record is hardly "devoid of any evidence that the fixture Ms. Scott ordered actually included a MU part."

Jeffrey Ohai claims that he was "unable to find any evidence that the identified sale included a MU part." Ohai Decl., ¶¶29-30. An invoice, however, is not a complete list of every item contained in a product code. The invoice also did not reference other materials included, such as couplers, bolts, etc. However, both the invoice itself and the sticker on the MU ¾ Part reflected Product Code 15116, and as such, the MU ¾ Part was necessarily part of the order.[17] This same MU ¾ Part was subsequently detached and used in the deposition of Hi-Lite's corporate representative.[18] In that deposition, Hi-Lite authenticated the invoice and confirmed that it reflected the H-15116 fixture sold to Barn Light Electric prior to October 18, 2009.[19]

### 2. The Transaction At Issue Was A "Sale" Under 35 U.S.C. § 102(b)

Defendants argue that the transaction between Hi-Lite and Barn Light Electric was not a sale under 35 U.S.C. § 102(b) because Barn Light Electric was acting as an intermediary for Hi-Lite. This conclusion is wrong and the case relied on by Defendants is bad law. Opposition, at 17 (citing *Baker-Cammack Hosiery Mills v. Davis Co.*, 181 F.2d 550 (4th Cir. 1950).[20] There is no dispute that Barn Light Electric is an independent company selling product to the

---

[16] Dkt. 198-3, Declaration of Donna Scott ("Scott Decl."), ¶¶10, 12.
[17] The invoice also recites "LCGU" which is a Large cast guard unit supported by the MU ¾ Part.
[18] Scott Decl., ¶15.
[19] Exhibit 2, Hi-Lite Depo., 41:5-42:6, 44:1-5.
[20] While it was affirmed that there was no sale to any one except the broker and that the transaction did not invalidate the patent, it was noted that "[t]he situation may be contrasted with … the opinion of this court in *Jordan v. Hemphill Company*, 4 Cir., 1950, 180 F.2d 457, wherein a prior sale was held to invalidate a patent." *Id*. at 558.

consuming public on its own behalf with Hi-Lite acting only as its manufacturer. "There is no common ownership or control of the two corporate entities."[21]

Even if, as Defendants contend, "Barn Light Electric was acting as a Hi-Lite distributor," "[t]he mere fact that a product is delivered to a distributor does not exempt the transaction from 35 U.S.C. § 102(b)."[22] "By phrasing the statutory bar in the passive voice, Congress indicated that it does not matter who places the invention 'on sale.'"[23]

### 3. The Sale From Barn Light Electric To The Eberharts Took Place

Donna Scott declared that the purchase of the Fixtures was made on behalf of the Eberharts, who occupied the apartment upstairs.[24] Ms. Scott provided the invoice that reflected the sale, which included a profit margin above the price at which the Fixtures were purchased from Hi-Lite.[25] When the Fixtures arrived, they were provided to the Eberharts, who mounted them on the roof of their back porch.[26] Ms. Scott witnessed them hanging there for years before later removing one of them for use in this case.[27]

Nonetheless, Defendants baldly claim that "the only reasonable conclusion is that the sale never took place." Opposition, at 17. This absurd statement apparently stems from the fact that the invoice to the Eberharts does not reflect their name. However, Ms. Scott made clear that the address of the Eberharts was the same as Barn Light Electric, which explains why the address is

---

[21] *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888 (1999) (rejecting argument that sale from manufacture escaped 102(b)).

[22] *In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985) (citations omitted).

[23] *Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1355 (Fed. Cir. 2001) (finding "the text of section 102(b) itself makes no room for a 'supplier' exception"); *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, 726 F.3d 1370, 1375 (Fed. Cir. 2013).

[24] Dkt. 198-3, Scott Decl., ¶ 8.

[25] Dkt. 198-3, Scott Decl., ¶ 12.

[26] Dkt. 198-3, Scott Decl., ¶ 13.

[27] Dkt. 198-3, Scott Decl., ¶ 13.

identical.[28] To accept Defendants' conclusion, the Court would have to dismiss the idea that this was done for mere convenience and accept the preposterous notion that Ms. Scott's version of events is entirely fabricated and Barn Light marked up the price to sell the same Fixtures to *itself*. Of course, this still would not explain the public use of the Fixtures on the back porch of the building as reflected in the photographs and supported by Ms. Scott's sworn declaration.

### B. Product Code 15116 Was Not A Prototype Unready For Patenting And The Sale Of It Was Not An "Experimental Use"

In a last ditch effort to whitewash an invalidating sale, Defendants cite the "*Pfaff* prongs" and claim that the MU ¾ Part was a "prototype" sold primarily for "experimentation" that was "not ready for patenting."[29] These arguments fall flat. First, the mere fact that a product is considered a prototype is not dispositive since this would *per se* preclude application of the on-sale bar.[30] Rather, courts "must consider whether the suspect activities were experiments as opposed to an attempt to profit from the invention, that is, whether the primary purpose of the offers and sales was to conduct experimentation." *Id*.

The idea that an unrestricted commercial sale to a third party—who unilaterally installed and used the product—could qualify as an "experiment" by Hi-Lite is nonsense. During the installation, Ms. Scott and the Eberharts had access to every part of the product, including the MU ¾ Part. There were no confidentiality obligations imposed on anyone. These parties did not, nor were they ever asked to, keep any records concerning the performance of the MU ¾ Part in the Fixtures as would normally be expected for experimental activity. Both parties were also required to make payment for the Fixtures. Under such circumstances, the purchase and

---

[28] Dkt. 198-3, Scott Decl., ¶ 6.
[29] Opposition, at 18-21 (citing Ohai Decl., ¶¶23, 25, 26).
[30] *See Allen Engineering Corp. v. Bartell Industries*, 299 F.3d 1336, 1354 (Fed. Cir. 2002).

subsequent use of the product was a barring sale and public use under § 102(b).[31]

The only basis Defendants have for claiming that the sale of the MU ¾ Part was "experimental" is Ohai and McAdam's claims that Hi-Lite identified quality control flaws that were later corrected. Putting aside the fact that none of the factors for *bona fide* experimentation are met, none of the alleged flaws were actually contained in the MU ¾ Part that was sold.[32] The fact that the MU ¾ Part did not contain any of the alleged defects also torpedoes Defendants' argument that the invention was "not ready for patenting." Despite all of the "significant flaws" identified by Ohai, none were remedied in a manner that changed the claimed subject matter from the time the product was sold to Barn Light Electric to when the patent application was filed. The description and claims in the '477 Patent were exactly what was commercialized. Barn Light Electric also established that the product worked precisely for its intended purpose. The fixture hung on and illuminated a back porch for years. The product was therefore "ready for patenting."

## III. SUMMARY JUDGMENT OF COPYRIGHT NONINFRINGEMENT IS PROPER

### A. Hi-Lite Granted Barn Light Electric An Irrevocable Nonexclusive Implied License

An implied nonexclusive license may be granted orally or implied through conduct.[33] Implied nonexclusive licenses are exempt from the writing requirement of the Copyright Act and may arise by operation of law. *See* 17 U.S.C. § 204(a). "[C]onsent given in the form of mere

---

[31] *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1318 (Fed. Cir. 2002) (affirming summary judgment of invalidity).

[32] *Allen Engineering* provides thirteen factors to determine experimental use that work against Defendants: (1) the necessity for public testing (testing did not have to be public); (2) the amount of control retained (Ohai did not retain any control over Barn Light Electric or its customers; (3) the nature of the invention (a simple lamp); (4) the length of the experiment (zero in connection with sales); (5) whether payment was made (Barn Light Electric paid Hi-Lite for the fixture); (6) whether there were a secrecy obligation (none); (7) whether records of the experiment were kept (none); (9) the degree of commercial exploitation during testing (exploited for years); (10) whether the invention reasonably requires evaluation under actual conditions of use (unskilled, visual inspection would reveal flaws); (11) whether testing was systematically performed (none); and (12) whether the inventor continually monitored the invention during testing (not as part of the sales).

[33] *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999).

permission or lack of objection [i.e., acquiescence] is also equivalent to a nonexclusive license and is not required to be in writing."[34] Much like any other implied-in-fact contract, implied licenses are creatures of law, not equity.[35] "An implied license is created when one party (1) creates a work at another person's request; (2) delivers the work to that person; and (3) intends that the person copy and distribute the work."[36]

Hi-Lite's conduct satisfies all three prongs of the implied license test. *Id.* Moreover, because it is undisputed that Barn Light Electric paid consideration to Hi-Lite, its implied license is irrevocable.[37] Hi-Lite admits that it provided Plaintiff an implied nonexclusive license through delivery, conduct and acquiescence.[38] Further, Plaintiff requested and Hi-Lite created and delivered hundreds of works to Plaintiff without any express limitation as to their use, at the time of delivery.[39] The touchstone for finding an implied license is intent.[40] It is undisputed that Defendant provided its works to Plaintiff with the intention Plaintiff use, reproduce, distribute and display its works.[41] Hi-Lite admits that it had actual knowledge of Plaintiff's use of the requested Hi-Lite Works on its website and other advertising medium from 2008 through September 7, 2012, and it continued to facilitate such use throughout the parties' business

---

[34] *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (5th Cir. 1996).

[35] *See Effects Ass's, Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990).

[36] *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1235 (11th Cir. 2010).

[37] Exhibit 3, Defendants' Responses To Plaintiff's Second Set of Requests For Admission ("Resp. 2nd RFAs"), at Request No. 110; Donna Scott Decl. at ¶ 26; *see also Asset Marketing v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008).

[38] Exhibit 4, Defendant Hi-Lite Manufacturing Company, Inc.'s Responses to Plaintiff's Second Set of Interrogatories ("Resp. 2nd Interrog.") at Interrogatory No. 9; *see also* Exhibit 3, Resp. 2nd RFAs at Request Nos. 71-87; D. Scott Decl. at ¶¶ 8,10-14, 21, 28, 29, Ex. A.

[39] *See* Exhibit 5, Defendants' Responses To Plaintiff's First Set of Requests For Admission ("Resp. 1st RFAs"), Request Nos. 23, 35, 36 & 37 (admission by Hi-Lite that images were sent to Barn Light Electric from Catalog 203, 205 and 208 "without any written limitation regarding Barn Light Electric's use" of such photographs.); Exhibit 6, McAdam Depo., 123:11–127:3; 128:21-25; 179:2–180:3; *see also* Exhibit 7, Comp. Exh. at BLE0035079, BLE0088798, BLE0098694, BLE0108255 and BLO0085712 (evidencing transmissions of photographs by Hi-Lite to Barn Light Electric following Barn Light Electric's requests, which in some instances included fulfilled requests that Hi-Lite's remove watermarks from its photos for Barn Light Electric's use); D. Scott Decl., at ¶¶ 8,10-14, 21, 28, 29, Ex. A.

[40] *See John G. Danielson, Inc. v. Winchester-Conant Props., Inc.,* 322 F.3d 26, 40 (1st Cir. 2003).

[41] *Id.*

relationship.[42]

### B. Hi-Lite Failed To Expressly Limit The Scope Of The License

Hi-Lite's argument that Plaintiff exceeded the scope of the license is unavailing. In the Eleventh Circuit "an implied license will be limited to a specific use only if that limitation is expressly conveyed when the work is delivered." *Latimer*, 601 F.3d at 1235. There were no express limitations were conveyed upon delivery of Hi-Lite's copyrighted works.[43] Thus, as the Eleventh Circuit has held where there is no evidence that the licensor intended to limit the scope of licensee's use of its works at the time that licensor delivered the renderings, licensor "could not have, as a matter of law, limited the scope of the nonexclusive license he granted."[44] If the licensee makes out the existence of any license, the burden shifts to the licensor to show that the licensee's use exceeded the scope of that license.[45] Hi-Lite, as a matter of law, cannot create a genuine issue of fact regarding scope. Because it failed to *expressly* limit scope upon delivery, the scope of the implied license is unlimited. Even if there was a breach on the licensee's part, the licensor has a breach of contract claim against the licensee, "not a copyright infringement claim."[46]

### C. Hi-Lite's Attempted Revocation Is Ineffective Under 11th Circuit Precedent

In *Karlson*, the Eleventh Circuit held that the copyright holder's attempt to limit or revoke the irrevocable nonexclusive implied license it granted was ineffective even where the Defendant voluntarily complied with its cease and desist request, removing Plaintiff's photos from its website, internally informing its sub-licensees not to use the photographs and replacing

---

[42] *Id.* at Request Nos. 81-84; *see* Exhibit 6, McAdam Depo., 123:11–127:3; 128:21-25; 179:2–180:3.; Exhibit 8, J. Ohai Depo, 53:18-20; Exhibit 9, Schulz Depo., 206:11-22. Exhibit 6, McAdam Depo., 179:2–180:1 ("BarnLight Originals sells their products online, right. Any online distributor, really, I guess, uploads them all the same way.").

[43] *See* D. Scott Decl., at ¶¶ 8,10-14, 21, 28, 29, Ex. A.

[44] *Karlson v Red Door Homes*, *LLC et al*, 611 Fed. Appx. 566, 571 (11th Cir. 2015).

[45] *Bourne v. Walt Disney Co.*, 68 F.3d 621, 630 (2d Cir. 1995).

[46] *Davis v. Tampa Bay Arena, Ltd.,* 2013 WL 3285278, at *7 (M.D. Fla. June 27, 2013).

the allegedly infringing photos. Any limitations had to be provided when the work was delivered.[47] Thus, the implied license granted to Plaintiffs is irrevocable.

### D. Plaintiff Has Not Waived The Defense Of Implied License

"[A] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement and can sue only for breach of contract."[48] Defendants' admissions establish that Hi-Lite granted Barn Light Electric an irrevocable implied license to use its copyrighted works. "[T]he existence of an implied license is an affirmative defense to infringement."[49] Summary judgment is routinely granted by courts "in cases such as this, where substantial similarity is undisputed by the parties, noninfringement may be determined as a matter of law on a motion for summary judgment."[50]

Moreover, the procedural safeguards of Rule 8(c) to avoid surprise or prejudice not implicated because Defendants were on actual notice of Plaintiff's defense long ago, the implied license issue was fully developed in the record, fully briefed by the parties and the evidentiary record on this issue is complete.[51]

## IV. SUMMARY JUDGMENT OF NO FALSE ADVERTISING IS PROPER

### A. *Dastar* Substantially Narrowed The Scope of Claims Under The Lanham Act

Defendants misunderstand the import and narrowing effect of the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In rejecting plaintiff's reverse passing off claim under § 1125(a)(1)(A) of the Lanham Act, the Supreme Court in *Dastar* concluded that the phrase "origin of goods" as used in the Lanham Act was not

---

[47] *Karlson*, at 571; *Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc.,* 128 F.3d 872, 882 (5th Cir.1997) (holding irrevocable implied license cannot be unilaterally revoked because the contract would be illusory).

[48] *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) (internal citations omitted).

[49] *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003).

[50] *Latimer,* 601 F.3d at 1232.

[51] In any case, to avoid severe prejudice to Plaintiff and because justice so requires, Plaintiff intends to file a Motion for leave to Amend Its Pleadings pursuant to FED.R.CIV.P. 15(a)(2).

intended to protect "originality or creativity" but "refers [only] to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. Because the plaintiff in *Dastar* did not manufacture the tangible goods sold by the defendant, the Court found that there could be no claim for false-designation under the Lanham Act. *Id.* at 38. Instead, the *Dastar* Court held, because defendant did not purchase plaintiff's tangible goods and "merely repackage them as its own," plaintiff failed to allege a cognizable claim for reverse passing off under the Lanham Act. *Id.* at 31.

Moreover, in view of its finding that the term "origin of goods" refers only to the producer of tangible goods and *not* the underlying intellectual property rights in such goods, the Court significantly narrowed the scope of allowable claims under the Lanham Act. *Id.* at 37. In so holding, the Court reasoned that claims which would otherwise be subject to the "carefully considered limitation[s]" of trade dress, Copyright or Patent Law could otherwise be easily circumvented by simply recasting such claims as Lanham Act claims, rendering such limitations "entirely pointless." *Id.* at 36.

For example, a plaintiff that could not "show[] that they had acquired 'secondary meaning,' . . . so that they 'identify the source of the product rather than the product itself,' . . . could turn around and pursue a reverse-passing-off claim under exactly the same provision of the Lanham Act."[52] Likewise, without such limitations, the outcome of the seminal cases of *Bonito Boats* (where defendants used molds to duplicate Plaintiff's unpatented boat hulls) and *TrafFix* (where the functional features of its signs prevented its trade dress claims) could have been vastly different were plaintiffs simply allowed to recast their claims as "reverse-passing-off claim[s] for unattributed copying of [their] design[s]" under § 43(a) of the Lanham Act. *Id.* at 37. Thus, the import of *Dastar's* holding is clear: Courts *must* foreclose Lanham Act claims

---

[52] *Id.* quoting *Wal-Mart Stores, Inc.,* 529 U.S. at 211.

seeking protection for intellectual property rights otherwise limited or more properly asserted under trade dress, Copyright or Patent law. Such concerns are particularly prudent with regard to the Lanham Act — which, unlike the patent and copyright regimes, creates exclusive rights that have no automatic expiration. "'The Lanham Act . . . does not exist to reward manufacturers for their innovation in creating a particular device; this is the purpose of patent law and its period of exclusivity.'" *Id.* at 34. "The right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition."[53]

### B. Defendants' Lanham Act Claims Are Foreclosed By *Dastar* and Preempted

Here, Hi-Lite's Lanham Act claims are precisely the type of claims foreclosed by *Dastar*. That is, "[i]n attempting to plead a Lanham Act claim based on Defendants' unauthorized use of its photographs . . . [Defendants] attempt[] to achieve precisely what *Dastar* prohibits: an end run around copyright law."[54] Each of Hi-Lite's claims are premised upon the alleged infringement of its marketing materials (i.e., "***part numbers***, ***copyrighted photographs and other depictions of Hi-Lite products***"), not the false-designation of origin of its tangible goods.[55] Hi-Lite's SACC does not allege that Plaintiff purchased its tangible products and repackaged them as its own.[56] Instead, Hi-Lite relies on a single purchase it made through its own sales representative, not a consumer, to claim Plaintiff used its copyrighted works to depict Hi-Lite's products, but shipped non-Hi-Lite products.[57] Even taking Hi-Lite's claims as true (which they are not), under the reasoning in *Dastar*, Hi-Lite has failed to assert cognizable claims under the Lanham Act.[58]

---

[53] *Freeplay Music, Inc. v. Cox Radio, Inc.,* 409 F.Supp.2d 259, 263 (S.D.N.Y. 2005).
[54] *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *3 (S.D.N.Y. 2014).
[55] *See* SACC, Counts (II) at ¶97, (III) at ¶101, (IV) at ¶107 & (V) at ¶113.
[56] *See Dkt.* 171 at ¶14 ("[T]he lighting fixtures were not manufactured by Hi-Lite"); *see also* Exhibit 10, Sanders Depo, 43:1-22; 54:5–56:13; 43:1–47:14; 51:1–52:23; 54:5–56:13.
[57] *See* SACC, at ¶97, 101, 107, 113.
[58] *Dastar*, at 37-38.

The Lanham Act does not protect "originality or creativity," nor does it "creat[e] a cause of action for, in effect, plagiarism." *Id.* at 37. "By copying [Defendant's] Product Presentations, Defendant's rights are protected [if at all] under the Copyright Act."[59] Moreover, contrary to Defendants assertion, courts have "expressly rejected the argument that *Dastar* does not apply where, as here, the work in issue is copyrighted."[60] In short, Hi-Lite's Lanham Act claims are all based on the very same allegedly infringing acts of "reproduction, use, publication, distribution, preparation of derivative works, and display of advertisements" that form the factual underpinning of its copyright claims. *See* SACC, Counts VI at ¶122, VII at ¶133, VIII at ¶144.

### 1. Defendants' 1125(a)(1)(A) Claims Fail Under The *Dastar* Analysis

Hi-Lite fails to allege a cognizable claim for reverse passing off because it does not allege its own tangible products were purchased, repackaged and sold by Plaintiff as their own. *Id*. at 32. Instead, it alleges Plaintiff's infringing use and false designation of the "origin and nature" of its **copyrighted works** and admits it was **not the "producer of the tangible product sold.**"[61] Thus, as the Court held in *Photographic Illus. Corp. v. Orgill, Inc.*, 2015 WL 4572296 (D. Mass. 2015) its claim under 1125(a)(1)(A) fails as a matter of law because the unauthorized use of another's product photograph to sell one's own product may be "actionable under the Copyright Act" but, after *Dastar* it "would be out of accord with the history and purpose of the Lanham Act to afford relief under trademark law as well."[62]

---

[59] *Quadratec, Inc. v. Turn 5, Inc.*, 2015 WL 4876314, at *9 (E.D. Pa. Aug. 13, 2015) (rejecting claims identical to Hi-Lite's under *Dastar*).

[60] *Contractual Obligation Prods., LLC v. AMC Networks, Inc.,* 546 F.Supp.2d 120, 130 (S.D.N.Y. 2008) (collecting cases); Response at 34.

[61] *Id.* at 37; *see Dkt.* 171 at ¶14.

[62] *Id.* at *10; *see also Kehoe Component Sales Inc. v. Best Lighting Products, Inc.,* 796 F.3d 576 (6th Cir. 2015) (dismissing § 43(a)(1)(A)&(B) claims under *Dastar* even where Defendant sold cloned light fixtures using Plaintiff's tooling, advertised the *light fixtures* in Defendant's catalog, and used Plaintiff's *product numbers*, box design, and UL numbers on the products).

### 2. Defendants' 1125(a)(1)(B) Claims Fail Under the *Dastar* Analysis

Likewise, Hi-Lite "cannot circumvent the import of *Dastar* by recasting its [false designation] claim[s] ... as a false advertising claim[s]."[63] Here, as in *Quadratec*, Defendants have "not alleged that Defendant made a false or misleading statement about its goods, or about Plaintiff's goods . . . Instead, [Defendants] claim[] that [Plaintiff] made a false statement about the photographs taken of those goods . . . allegations [] not sufficient to state a claim for false advertising under Section 1125(a)(1)(B)." *Quadratec*, 2015 WL 4876314, at *10. Moreover, the Sixth Circuit held in Kehoe that, "[a]bsent a false statement about geographic origin, a misrepresentation is actionable under § 1125(a)(1)(B) only if it misrepresents the 'characteristics of the good itself' — such as its properties or capabilities." 796 F.3d at 590.

Here, Hi-Lite does not claim that Plaintiff made any false statements whatsoever about its own or Hi-Lite's products. Hi-Lite's Lanham Act claims simply recast its copyright claims as boilerplate Lanham Act claims premised upon the same factual allegations of unauthorized use of its copyrighted works. In view of *Dastar*, Lanham Act claims such as those asserted by Hi-Lite in Counts II, III, IV & IV fail as a matter of law. Dismissal is especially appropriate where, as here, Defendants have also asserted copyright and trade dress claims covering the same alleged acts. Hi-Lite has failed to create any genuine material issue of fact for trial with regard to Plaintiff's motion for summary judgment pursuant to *Dastar*.[64] Thus, pursuant to the Supreme Court's ruling in *Dastar* and its progeny, Plaintiff respectfully requests that this Court, as a matter of law, grant Plaintiff's motion for summary judgment on Counts II, III, IV & V.

### V. CONCLUSION

Accordingly, Plaintiffs are entitled to judgment as a matter of law.

---

[63] *Contractual Obligation Prods.,* 546 F.Supp.2d at 131; *see also Photo. Illus.*, 2015 WL 4572296, at *11.
[64] *See* Response, at 33-35.

Dated:  January 6, 2016    Respectfully submitted,

/s/Alejandro J. Fernandez

By: Alejandro J. Fernandez
    Board Certified in Intellectual Property Law
    FL. Bar No.: 32221
    E-mail: AFernandez@FeldmanGale.com
    Gregory L. Hillyer, Esq
    Fla. Bar No. 682489
    E-mail: GHillyer@FeldmanGale.com
    Stephen J. Leahu, Esq.
    FL Bar No. 54037
    E-mail: SLeahu@FeldmanGale.com
    Joseph R. Sozzani, Esq.
    *Admitted Pro Hac Vice*
    E-Mail: JSozzani@FeldmanGale.com
    Matthew N. Horowitz, Esq.
    Fla. Bar No. 98564
    E-mail: MHorowitz@FeldmanGale.com
    **FELDMAN GALE, P.A.**
    400 N. Tampa Street, Suite 2830
    Tampa, FL 33602
    Telephone No. (813) 374-8890
    Telefacsimile No. (305) 358-3309

*Counsel for Plaintiff, Counterclaim-Defendants and Third Party Defendants*

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 6th day of January 2016, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/ Alejandro J. Fernandez
Alejandro J. Fernandez

## SERVICE LIST

*Barn Light Electric Company, LLC v. Barnlight Originals, Inc., et al.*
Case No.: 8:14-CV-1955-T-35AEP
United States District Court, Middle District of Florida

Stefan Vaughn Stein
Email: stefan.stein@gray-robinson.com
Michael J. Colitz, III
Trial Counsel
Email: michael.colitz@gray-robinson.com
Stephen Gregory Anderson
Email: Stephen.anderson@gray-robinson.com
**GrayRobinson, P.A.**
401 E. Jackson Street, Suite 2700
Post Office Box 3324
Tampa, FL 33601
Telephone No. (813) 273-5000
*Attorneys for Defendant/Counter-Plaintiffs*

**EXHIBITS 1-10**

**ARE REDACTED**

**IN THEIR ENTIRETY**