**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Case No. 8:14-CV-01955-MSS-AEP

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,

      Plaintiff,

v.

BARNLIGHT ORIGINALS, INC.,
a Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC.,
a California corporation; and JEFFREY L.
OHAI, an individual California Resident,

      Defendants.
_____/ CASE NO. 8:14-CV-01955-MSS-AEP

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; and HI-LITE
MANUFACTURING COMPANY,
INC., a California corporation,

      Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,

      Counterclaim Defendant,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

      Third-Party Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' RENEWED MOTION TO COMPEL [DKT. 260]**

Plaintiff Barn Light Electric Company, LLC and Third Party Defendants, Bryan and Donna Scott (collectively, "Plaintiffs"), submit their Response in Opposition to Defendants' Renewed Motion to Compel Discovery Responses [Dkt. 260] ("Motion"), and in support thereof, respectfully states as follows:

## I.     INTRODUCTION

After a months-long, exhaustive document collection and review process, Plaintiffs produced over 125,000 pages of documents from upwards of 70 individuals and sources. The entire production effort was overseen by counsel for Plaintiffs to ensure its integrity and probity.  At this point, Barn Light Electric has far surpassed its legal obligation to conduct an objectively reasonable search of its documents to identify and produce those that are responsive.

Nevertheless, after eleven depositions, hundreds upon hundreds of requests for production, interrogatories and requests for admission, Defendants still persist in their attempts to reopen discovery.  In attempting to justify their request, Defendants exaggerate a number of minor discovery mishaps which were the result of harmless error and caused Defendants no prejudice.  Based on such exaggerations, Defendants extend their attack to the totality of Barn Light Electric's production.  As shown below, however, the vast majority of documents which Defendants sought in its Motion to Compel [Dkt. 133] simply *do not exist*. The handful of additional responsive documents that were recently identified as inadvertently misclassified have been voluntarily produced by Plaintiff.  The balance of what Defendants

1

seek is objectionable for the reasons raised in Plaintiffs prior opposition briefing. Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motion.

## II.     STANDARD OF LAW

"[T]he Federal Rules of Civil Procedure do not require perfection or a guarantee that every possible responsive document has been found or produced. When a party responds to discovery requests the Rules require only that a search for responsive materials be objectively reasonable." *NXP B.V. v. Blackberry, Ltd.*, 2013 WL 6768350 at *5 (M.D. Fla. Dec. 20, 2013).

Motions to compel disclosures and other discovery under Rule 37(a) are committed to the sound discretion of the trial court. *Commercial Union Insurance Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir.1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. *Id.* at 731. Under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, even where a motion to compel discovery is granted or discovery is provided after a motion is filed, sanctions are not appropriate where: (i) a movant filed the motion before attempting in good faith to obtain the disclosure, (ii) the opposing party's nondisclosure was substantially justified, or (iii) other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A).

Courts in the Middle District of Florida have refused to grant sanctions, including attorney's fees, for failure to strictly adhere to L.R. 3.01(g), where a motion to compel is filed prematurely without allowing a party to complete its supplemental production, where the movant failed to engage in a good faith meet and confer, and where nondisclosure is

substantially justified.  *See Eli Research, LLC v. Must Have Info Inc.,* Case No. 2:13-cv-695-FtM-38CM (M.D. Fla. Aug 20, 2015).  The requirement to engage in a meaningful meet and confer pursuant to L.R. 3.01(g) applies with equal force to renewed motions to compel.  *See Communications Center, Inc. v. Komatsu*, No. 6:05-cv-1254-Orl-31GJK, 2008 WL 1777725, at *1 (M.D. Fla. Mar. 9, 2009) (noting previous denial of a renewed motion to compel without prejudice in part for failure to comply with Local Rule 3.01(g)); *Durden v. Citicorp Trust Bank, FSB*, No. 3:07-cv-974-J-34JRK, 2010 WL 2105924, at *2 (M.D. Fla. Apr. 27, 2010) (requiring parties to meet and confer pursuant to Local Rule 3.01(g) before filing a renewed motion).

III.   **PLAINTIFFS FULFILLED THEIR DISCOVERY OBLIGATIONS TO PRESERVE, REVIEW AND PRODUCE RESPONSIVE DOCUMENTS TO DEFENDANTS**

   **A.  Plaintiffs Carefully Preserved Documents**

On August 14, 2014, months prior to its receipt of Defendants' litigation hold letter, Barn Light Electric initiated its own internal document preservation and litigation hold directive.  *See* the declaration of Michael S. Koller, attached herein as **Exhibit 1** ("Koller Decl."), at ¶ 22.  In fact, Mr. Koller's sworn testimony establishes that at upon the filing of Plaintiff's complaint, long before Defendants' filed their counterclaims, he received clear instructions from Bryan Scott to preserve all of Barn Light Electric's electronically stored information.  *See* the transcript for the deposition of Michael S. Koller, attached herein as **Exhibit 2** ("Koller Depo."), at 85:14-86:11.  Mr. Koller further testified that upon receipt of Mr. Scott's directive, he immediately implemented measures to ensure the preservation of all such information by utilizing external backup drives and, subsequently, a dedicated archive

3

server. *Id.*; 60:12-62:4.  In short, Mr. Koller had no reason to review Defendants' litigation

hold letter as a litigation hold had already been in place for several months.

### B.  Plaintiffs Conducted An Objectively Reasonable Search Of Their Records

Defendants incorrectly claim that Barn Light Electric "collected documents from only

four Barn Light Electric employees."  *See* Motion, at 3; *see also* Koller Depo., at 85:4-11;

86:8-88:16; 95:23-96:6; *see also* Koller Decl. at ¶¶ 22-31; *see also* the declaration of Donna

Scott, attached herein as **Exhibit 3** ("D. Scott Decl."), at ¶¶ 5-7.  Even a cursory review of

the many thousands of documents Plaintiffs produced exposes the inaccuracy of such a

claim.  An analysis of Plaintiffs' comprehensive document production carried out by its

third-party document vendor confirms that it produced documents relating to a multitude of

employees across virtually every department of the company.

For example, Plaintiffs produced e-mails originating from sixty-eight unique e-mail

addresses from the barnlightelectric.com domain.  Likewise, as confirmed by the sworn

testimony of Mr. Koller, Barn Light Electric collected companywide documents from the

home and share file directories of its internal file server—thus, capturing documents from

custodians across all departments of the company.[1]  More so, complete mirror image copies

of the hard drives of Barn Light Electric's President, Vice President and two key employees

were collected for the purposes of capturing historical documents which might not have

---

[1] *See* Koller Depo., 95:7- 96:6 ("Q. ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████
██████████████████████████ ").

4

otherwise existed on Barn Light Electric's servers for the reasons already noted.[2]  Barn Light Electric also copied the complete file directory and of its ecommerce server, CS Cart sales database, its entire Quickbooks accounting database and thousands upon thousands of additional documents.  *See* Koller Decl., at ¶¶ 22-27.

Additionally, as Mr. Koller's sworn testimony and the declarations of Bryan and Donna Scott also confirm, supplemental documents were collected from employees including those in Barn Light Electric's accounting, marketing, sales, research and development departments throughout this litigation.  *See* Koller Depo., at 88:1-25; *see also* Koller Decl., at ¶¶ 26-27; *see also* D. Scott Decl., ¶¶ 5-7.  In sum, Plaintiffs have met their discovery obligations in conducting an objectively reasonable search of its records.

Defendants' attempt to link the level of Mr. Koller's familiarity with Defendants' discovery requests to Plaintiff's fulfillment of its discovery obligations is unavailing.  As Mr. Koller testified, he globally "████████████████████████████████████ ███████████████████."  Koller Depo., at 86:20-24.  Mr. Koller then provided the comprehensive data set he collected to Plaintiff's third-party document vendor, Iris Data Services ("Iris").  *Id.*  In turn, Iris utilized Defendants' proposed keywords, as well as other criteria relating to Defendants' specific discovery requests, to conduct searches within the combined database of documents initially collected to identify potentially responsive

---

[2] In order to capture historical data either lost due to the malicious acts of a former employee or, otherwise, no longer resident on Plaintiff's servers, the hard drives of four employees were identified which utilized Post Office Protocol 3 (POP3), a client/server protocol in which e-mail is imported and stored on the user's local drive.  *See* Koller Decl., at ¶ 25.  Conversely, users that utilized the IMAP protocol would have only had e-mail resident on the server.

documents for further review and production by counsel.[3]  Because he imaged and provided to Iris the entirety of the drives and file structures copied, Mr. Koller had no reason to review Defendants' document requests.  Instead, commensurate with the breadth of the issues in this matter, Mr. Koller was instructed to provide a far broader universe of potentially relevant documents to Iris.  *See* Koller Decl., at ¶¶ 24-27.

Furthermore, as Mr. Koller testified, he has assisted other employees at Barn Light Electric throughout this litigation in their seasonal supplementation of Plaintiff's production of responsive documents in response to Defendants' subsequent discovery requests.  Koller Depo., at 88:1-25; *see also* Koller Decl. at ¶¶ 26-27.  In so doing, Mr. Koller has conducted numerous additional searches of Plaintiff's servers.  *Id.*

### C.  Mr. Koller Confirmed That The Documents Defendants Seek Do Not Exist

Noticeably absent from Defendants' Renewed Motion [Dkt. 260] is any mention of the documents Defendants alleged Plaintiff was withholding in their initial motion [Dkt. 133] and at the January 12, 2016 hearing.  This is because Mr. Koller confirmed in precise detail what Plaintiffs have consistently averred—any e-mails relating to third-party, Bay Area Innovations and former Barn Light Electric employees, Michael Schultz, Walter Solms and Katie Fredricks were no longer present on Barn Light Electric's servers upon the initiation of this matter.  Koller Depo., at 89:3-91:9; 92:1-94:15.  That is, Mr. Koller provided sworn testimony confirming that: (i) Mr. Schultz, in fact, deleted all of his files prior to his departure from Barn Light Electric, (ii) e-mails deleted from a user's inbox in 2012 were

---

[3] Koller Depo., at 87:9-25 ("Q. ███████████████████████████████████████████████████████████████████████████████████████████████████████████.").

backed up on Barn Light Electric's servers for only two weeks and, (iii) prior to the initiation of this litigation, it was company policy to purge the e-mail accounts of former employees from Barn Light Electric's servers following the expiration of a time period of no more than one year. *Id.*; *see also* Koller Decl., at ¶¶ 4-16. Mr. Koller's testimony confirms that, to the extent any such documents existed on the date this action was initiated, such documents were, in fact, produced.[4]

Moreover, in their Motion, Defendants now for the first time allege that Barn Light Electric failed to produce documents relating to yet another former employee, Brian Day. *See* Motion at 9, Ex. B. However, for the very same reasons already noted, Mr. Day's October 4, 2012 e-mail was no longer present on the Barn Light Electric server on the date this action was initiated because his e-mail account had already been deleted in connection with Barn Light Electric's document retention practices. *See* Koller Decl. at ¶16. The same holds true with regard to the 2011-2012 e-mails produced by third-party, Bay Area Innovations. *See* Motion, at Ex. C & D; *see also* Koller Depo., at 89:14-90:12. Such documents simply do not exist.

Finally, Defendants offer speculation and conclusory assertions to persuade this Court to open discovery into Barn Light Electric's proprietary CAD files. *See* Motion at 10. As already noted, the e-mails produced by third-party Bay Area Innovations were not present on Barn Light Electric's servers and, thus, not produced. However, in the interest of bringing Defendants' discovery expedition to a conclusion, Mr. Koller conducted keyword searches

---

[4] *See* Koller Depo., at 94:9-15 ("Q. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ").

for terms that would have necessarily identified any reference to Defendants or its part numbers within the files transferred to Barn Light Electric's SolidWorks PDM Vault server by Bay Area Innovations on August 2, 2012. *See* Koller Decl., at ¶¶ 17-21. As stated in his sworn declaration, the searches Mr. Koller conducted confirm that the files neither relate to any of the Defendants nor any of their product renderings. *Id.* Instead, the files relate only to various components of Barn Light Electric's own light fixture designs. Plaintiff should not be compelled to produce such sensitive, proprietary information to its competitors based upon mere speculation. Accordingly, Defendants' Motion to compel should be denied.

IV. **PLAINTIFFS SATISFIED THEIR PRODUCTION OBLIGATIONS REGARDING FINANCIAL TRANSACTION INFORMATION**

   A. **Plaintiffs' Objectively Reasonable Production Efforts Regarding Purchase Orders**

Barn Light Electric's collection efforts resulted in the identification of electronically stored versions of certain purchase orders. At the direction of Barn Light Electric's counsel, several contract attorneys reviewed a large volume of electronically-stored documents that were potentially purchase orders (around 66,714 documents). Subsequently, Plaintiffs' counsel produced approximately 28,228 purchase orders that were identified as relevant because they include the term "Hi-Lite."

In an abundance of caution, Plaintiffs' counsel recently undertook a follow-up search of the purchase orders, including all memo and comments data fields. That search revealed that 126 invoices referencing Hi-Lite were inadvertently marked as "unresponsive" by the contract attorney reviewing those documents, and not initially produced. Upon learning of this, Plaintiffs produced the 126 invoices that were misclassified.

The following chart demonstrates that Plaintiffs' production efforts resulted only in a negligible, harmless error:

| | |
|---|---|
| Electronically-stored documents that were identified as potentially being purchase orders | ~ 66,714 |
| Electronically-stored documents that were identified as being responsive because they mentioned Hi-Lite and, thus, were timely produced | 28,228 |
| Electronically-stored purchase orders which mentioned Hi-Lite that were inadvertently withheld | 126   (100 of which were already in Hi-Lite's possession, and of the remaining purchase orders: 7 were recently produced, and some had cumulative information of produced purchase orders) |
| Percentage of Documents Stating "Hi-Lite" that were inadvertently misclassified | ~ 0.02 % |

The 126 inadvertently withheld purchase orders include: 100 purchase orders that list Hi-Lite as the vendor (these should already be Hi-Lite's possession);[5] 25 purchase orders[6] that list Baselite as the vendor and mention "Hi-Lite Cost," "Hi-Lite Pricing," "Hi-Lite price," or "sub" from Hi-Lite "codes"[7]; and, one purchase order that lists Barn Light Electric as the vendor (which states that the product is "to be painted HI-LITE Black for Customer").

Regarding purchase orders from Exhibit F of Defendants' Motion, Defendants duplicated copies of the following four purchase orders: 612431 (Bates No. BLE0125204); 612179 (Bates No. BLE0125173); 612116 (Bates No. BLE0125170); and 612065 (Bates No.

---

[5] There was no prejudice to Defendants by the inadvertent withholding of these purchase orders because these documents were already produced in this litigation or, otherwise, in Defendants' possession and control. If Defendants did not produce all of the purchase orders in its possession, it is disingenuous for Defendants to complain about an equivalent deficiency.

[6]  These purchase orders include seven that were produced on February 12, 2016 in response to the Court-ordered [Dkt. 236] sampling of one hundred purchase orders. *See* Defendants Motion, Ex. H.

[7] Regarding the latter purchase order, a related purchase order was produced. The original purchase order was inadvertently withheld while its replacement order was produced, e.g. a replacement order having the same numeric identifier followed by the abbreviation "REPL." The replacement purchase order indicates that a rush manufacturing charge was added.

BLE0125165).  Notably, none of the purchase orders in Exhibit F mention Hi-Lite.  Further, these purchase order do not mention any of the phrases or product numbers that Defendants proposed as a search terms.  *See* Motion, Ex. E.

"There is no such thing as perfect discovery and this case is no exception."  *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03 C 9421, 2008 WL 4876845, at *2 (N.D. Ill. 2008) *aff'd in part*, 03 C 9421, 2009 WL 331471 (N.D. Ill. June 16, 2009); *see also Am. Hardware Manufacturers Ass'n v. Reed Elsevier, Inc.*, No. 03 C 9421, 2008 WL 4090999, at *3 (N.D. Ill. August 20, 2008) ("no discovery is perfect").  Here, a negligible number of responsive purchase orders were withheld, but they were *not* withheld deliberately.  Moreover, upon learning that they were withheld, Plaintiffs promptly supplemented their production to resolve the issue.

### B.  Defendants Are Not Entitled To Unfettered Access to All Purchase Orders

For the same reasons set forth in Dkt. 146, the request for *all* purchase orders is simply too broad.  For example, there are purchase orders for raw materials, machinery and supplies such as sheet metal, wires, tools, and janitorial supplies.  These have no relation to Defendants' claims or defenses.

Defendants further argue that they are entitled to all purchase orders regarding the practice of substitution/replication/crossing/substitution of products.  Defendants' Motion, however, does not include any request for production of documents that require a search of these terms.

### C.  The Spreadsheets Provide Accurate and Consistent Information

While Defendants argue that the series of spreadsheets summarizing information relating to Barn Light Electric's invoices and purchase orders are allegedly "inaccurate" and that "[m]any of the entries on the spreadsheets are inconsistent with the information contained on the actual purchase orders" (Motion, at 8, 13), Defendants fail to demonstrate a single inaccuracy or inconsistency in the spreadsheets.  This would not be possible because the spreadsheets and the actual purchase orders were generated from the same database system.

Plaintiffs had no obligation to generate such spreadsheets.  Rather, the spreadsheets were originally generated in good faith in order to efficiently summarize a voluminous amount of data stored in a database for Defendants' convenience.  These spreadsheets were proffered along with the opportunity to inspect the hardcopies of the purchase orders. Because Defendants disregarded the inspection of hard copies and archives, they can hardly accuse Plaintiffs of attempting to hide evidence in order to "limit its liability."  Motion, at 13.

In addition, Defendants incorrectly assume that there is in every instance a purchase order that corresponds to a sales invoice and that the spreadsheets are deficient because certain entries in the invoice summary spreadsheet lack a corresponding entry on the purchase order spreadsheet.  At times, Barn Light Electric customers have requested changes to their initial order following the issuance of a purchase order.  *See* D. Scott Decl., ¶ 20. Although efforts were generally made to reissue a new purchase order reflecting any changes made to a customer's order (e.g., a replacement purchase order), new purchase orders were not always generated.  Instead, in some instances, such changes are reflected only in Barn

11

Light Electric's Product Sales Report.   Accordingly, Barn Light Electric's Product Sales Report contains the most accurate summary of Barn Light Electric's sales data.

### D.  Plaintiffs Complied With the Ordered Sampling of Purchase Orders

Defendants' Motion repeatedly references "the 98 purchase orders produced."   Had Defendants' counsel simply made a good faith effort – before filing the present Motion – to inquire[8] into why only 98 purchase orders were produced, Defendants would have received the following satisfactory explanation.   Defendants requested purchase orders for Nos. 614676, 614677 and 614678.   All three relate to the same order, which was incorrectly placed by the customer on the first two attempts.   *See* D. Scott Decl., ¶¶ 10-12.  Specifically, PO Nos. 614676 and 614677 were not processed due to a failure in the customer's payment. *Id*.  Thus, those two orders were incomplete and a purchase order was never generated even though a PO number was assigned to the corresponding sales invoice.   *Id*., ¶ 13.  A review of these invoices demonstrates that the two incomplete orders are identical to the processed order, PO No. 614678, with the exception of the PO number, the "Completed" status, and the PayPal transaction code under the payment method.  *See id*., ¶ 14, Ex. 1.  The incomplete orders do not have a transaction code.  *Id*.  Notably, the three invoices and the corresponding purchase order do not reference Hi-Lite.  *Id*., ¶ 14.

### E.  Plaintiffs' Repeated Offers to Inspect Archived Financial Documents Went Ignored By Defendants

On multiple occasions, Plaintiffs provided Defendants an opportunity to inspect and copy archived, hard copy financial documents.   Rather than diligently examining these

---

[8] The term "confer" in Rule 3.01(g) means a substantive discussion.  Middle District Discovery (2015) at 12, ¶ III(A)(7).

documents, Defendants ignored Plaintiffs' offers to inspect.[9]   This rebuts Defendants' allegations of the improper withholding of relevant documents.   Furthermore, Defendants' request for a third-party vendor to undertake document collection at Plaintiffs' expense is improper because, upon being offered an opportunity to inspect, Defendants had the obligation to pay for such a discovery vendor.

### F.  Defendants' Speculation of Foul Play is Misplaced

With an accusing finger pointed at the purchase orders that list Barn Light Electric as the vendor (*see* Motion, Ex. G), Defendants incorrectly suggest wrongdoing in order to demand the universe of Barn Light Electric's purchase orders.   Defendants' Motion acknowledges that "many" – and not all – of the purchase orders in Exhibit G relate to a Hi-Lite product.  *See* Motion, at 12, Ex. G.   In addition, Defendants wrongly imply that the fulfillment by Barn Light Electric using Hi-Lite products is improper.   Through the years of doing business with Hi-Lite, Barn Light Electric amassed huge numbers of Hi-Lite products via customer returns and bulk purchases from Hi-Lite of frequently ordered products, which it kept in inventory to speed shipment.  *See* D. Scott Decl., ¶¶ 15-18.   Such in-stock products purchased from Hi-Lite were owned by Barn Light Electric, and it had the right to resell those items. *Id*.

When selling a fixture out of its own inventory, whether a product manufactured by another or one of its own, Barn Light Electric would have been listed as the vendor on such a purchase order.   *Id*.   For products manufactured by Hi-Lite, an earlier purchase order would

---

[9] **Composite Exhibit 4** is true and correct copies of multiple emails and letters from Plaintiffs' counsel offering Defendants' counsel the opportunity during the discovery period to inspect hard copy archives of Barn Light Electric's financial records.  Defendants ignored all of these offers to inspect emails.

necessarily exist for the same product.  In the case of returns, that purchase order would have listed the original customer and Hi-Lite as the vendor.  For bulk purchases, the purchase order would have listed Barn Light Electric as the customer and Hi-Lite as the vendor.  In either case, the purchase order was sent to Hi-Lite and Hi-Lite invoiced Barn Light Electric accordingly.  *Id.*

Whenever a customer returned a Hi-Lite product, it was Hi-Lite's policy never to accept a return.  *Id.*  Hence, Barn Light Electric was forced to keep any returned Hi-Lite products and refund the customers.  *Id.*  Thereafter, such returned products may have been placed on Barn Light Electric's website for sale in a "Clearance" section or, if the item was frequently ordered by customers, re-sold at full price.  *Id.*  As illustrated by Defendants' Exhibit G, some of Barn Light Electric's in-stock products had slight damage and others had to be repainted to a different color per customers' instructions.  *Id.*  As the rightful owner of the returned products, Barn Light Electric was properly listed as the vendor.  Barn Light Electric's inventory included numerous Hi-Lite products that were either returned by customers or purchased directly from Hi-Lite, and many of the purchase orders at issue concern those in-stock products.  *Id.*  Their relevancy to the present action, however, is unsupported by Defendants' arguments.

Other purchase orders in Defendants' Exhibit G relate again to those occasions when Hi-Lite failed to drop ship lighting fixtures to Barn Light Electric customers.  *Id.*, ¶ 19. When Hi-Lite refused or was otherwise unable to timely drop ship lighting fixtures to Barn Light Electric's customers, Barn Light Electric's policy was to call the customer and offer a substitute fixture. *Id.*  The substitute item may have been a product manufactured by Barn

Light Electric or by another vendor, such as Baselite.  *Id*.  As noted above, substitution of products is commonplace in the industry, especially when the order is time sensitive or when a manufacturer or vendor is unable or unwilling to timely drop ship product per the parties' agreement.[10]   Any purchase orders that merely relate to such necessary replication or substitution do not support any relevancy to the present action.

## V.   IN ACCORD WITH THIS COURT'S ORDER [DKT 236], PLAINTIFFS' COUNSEL PROPERLY LIMITED THE DEPOSITION OF MR. KOLLER TO THE ISSUES RAISED IN HEARING

Defendants' claim that Plaintiff's counsel obstructed the deposition of Mr. Koller is without merit.  Instead, pursuant to Federal Rule of Civil Procedure 30(c)(2), Plaintiff's counsel interposed its valid objections in good faith, in view of Defendants' repeated attempts to violate this Court's Order [Dkt. 236], limiting the temporal and substantive scope of Mr. Koller's deposition, as well as its Protective Order [Dkt. 40], prohibiting the disclosure of documents produced in this litigation under the designation of "Highly Confidential - Attorneys' Eyes Only."  *See* Koller Depo., at 49:20-50:11; 63:19-23; 66:14-15; 67:2-3; 70:13-71:24.

At the January 12, 2016 hearing on Dkt. 133, this Court allowed Defendants to take the deposition of a custodian of records designated by Plaintiff for no more than two hours, for the limited purposes of discussing "*the issues raised during the hearing*, including but not limited to how Plaintiff maintains its information and records and how documents were produced in this action." [Dkt. 236] (emphasis added).  At the conclusion of the hearing, the Court clarified the temporal and substantive scope of the deposition as a deposition of "no

---

[10] Defendants have also engaged in the substitution of products.  **Composite Exhibit 5** is true and correct copies of Defendants' emails discussing the cross-references Barn Light Electric's product.

more than two hours to explore those matters as to how the information was being maintained electronically and specifically how an email such as the Fredericks email with Mr. Schultz would not have been . . . discovered in the production." *See* Jan. 12, 2016 Hearing Transcript, attached hereto as **Exhibit 6**, at 64:12-18.  However, as evidenced by its Motion, instead of adhering to the limitations imposed by this Court, Defendants misused the phrase "including but not limited to" in the Court's subsequent order as a license to freely depose Mr. Koller on issues far outside of the scope of those "raised at the hearing." *See* Motion, at 8-9.  For example, at his deposition, Defendants counsel repeatedly attempted to question Mr. Koller regarding two unrelated lawsuits against former employees, revealing otherwise confidential information (*see* Koller Depo. 9:6-10:19; 57:7-59:25), issues of fact relating to Defendants' counterclaims (*id.* at 32:10-33:17) and the collection of documents from an entirely unrelated entity in Australia (*id.* at 78:24-79:2).

Additionally, in violation of the Protective Order entered in this case, Defendants' counsel attempted to place before the witness a stack of third-party documents clearly marked with the designation, "Highly Confidential – Attorneys' Eyes Only." *Id.* at 49:20-50:11.  Plaintiffs' counsel properly interposed its objection and allowed the deposition to proceed on the relevant subject matter. *Id.*  However, even after Defendants' counsel admitted disclosure of such information to the witness would be improper under the Protective Order, he ultimately began to read the contents of the documents into the record verbatim. *Id.* at 70:13-71:25.  In fact, after disclosing the contents of the documents, Defendants' counsel voluntarily withdrew the exhibits, Plaintiffs stipulated to their withdrawal. *Id.* at 101:22-102:6.  Accordingly, pursuant to Fed. R. Civ. P. 30(c)(2),

Plaintiffs' counsel properly interposed its valid objections in good faith, urging Defendants' counsel to adhere to the limitations of this Court's Protective and Discovery Orders. Plaintiff's counsel did not obstruct Mr. Koller's deposition.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Renewed Motion to Compel Discovery Responses [Dkt. 260].

Dated: March 7, 2016                                     Respectfully submitted,

                                                         /s/ *Alejandro J. Fernandez*
                                                         Alejandro J. Fernandez
                                                         Board Certified in Intellectual Property Law
                                                         FL. Bar No. 32221
                                                         E-mail: AFernandez@FeldmanGale.com
                                                         Gregory L. Hillyer, Esq
                                                         FL. Bar No. 682489
                                                         E-mail: GHillyer@FeldmanGale.com
                                                         Stephen J. Leahu, Esq.
                                                         FL Bar No. 54037
                                                         E-mail: SLeahu@FeldmanGale.com
                                                         Joseph R. Sozzani, Esq.
                                                         FL. Bar No. 120297
                                                         E-Mail: JSozzani@FeldmanGale.com
                                                         Matthew N. Horowitz, Esq.
                                                         FL. Bar No. 98564
                                                         E-mail: MHorowitz@FeldmanGale.com
                                                         **FELDMAN GALE, P.A.**
                                                         400 N. Tampa Street, Suite 2830
                                                         Tampa, FL 33602
                                                         Telephone No. (813) 374-8890
                                                         Telefacsimile No. (305) 358-3309

                                                         *Counsel for Plaintiff, Counterclaim-*
                                                         *Defendants and Third Party Defendants*

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 7th day of March 2016, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/ Alejandro J. Fernandez
Alejandro J. Fernandez

## SERVICE LIST

*Barn Light Electric Company, LLC v. Barnlight Originals, Inc., et al.*
Case No.: 8:14-CV-1955-T-35AEP
United States District Court, Middle District of Florida

Stefan Vaughn Stein
Email: stefan.stein@gray-robinson.com
Michael J. Colitz, III
Email: michael.colitz@gray-robinson.com
Stephen Gregory Anderson
Email: Stephen.anderson@gray-robinson.com
**GrayRobinson, P.A.**
401 E. Jackson Street, Suite 2700
Post Office Box 3324
Tampa, FL 33601
Telephone No. (813) 273-5000

*Attorneys for Defendant/Counter-Plaintiffs*