# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability

    company, Plaintiff,

v.

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING
COMPANY, INC., a
California corporation; and
JEFFREY L. OHAI, an
individual California Resident,

    Defendants.
_____/    CASE NO. 8:14-cv-01955-MSS-AEP

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; and HI-LITE
MANUFACTURING COMPANY,
INC., a California corporation,

    Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

    Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

    Third-Party Defendants.
_____/

**DECLARATION OF MICHAEL S. KOLLER**

I, Michael S. Koller, do hereby declare, swear and affirm:

1. I am over the age of 18 and am fully competent to testify in this matter.

2. I have personal knowledge of the facts set forth herein.

3. I am the Director of Information Technology ("IT") for Barn Light Electric Company, LLC ("Barn Light Electric").

4. In early 2011, all data resident on the Barn Light Electric servers was lost due to the malicious acts of a former employee.

5. Following this event, efforts to restore the data previously resident on the Barn Light Electric servers were unsuccessful due to the refusal of a company associated with the former employee to provide Barn Light Electric with access to its backup data.  As a result, Barn Light Electric lost almost all of its historical, electronically stored data, including data resident on its e-mail server.  Barn Light Electric was, however, able to restore its e-commerce and Quickbooks servers.

6. I was hired by Bryan and Donna Scott in March 2011 to serve as the Director of IT following the malicious attack on Barn Light Electric's servers by its former employee.

7. From 2011 through mid-August 2014, because the storage capacity of its servers was limited and data storage demands were substantial, it was Barn Light Electric's policy to purge all of the files of its former employees from Barn Light Electric's servers no longer than one year following their departure from the company.

8. From 2011 through mid-August 2014, Barn Light Electric utilized external backup drives to back up its server data in the event of a server failure.  Barn Light Electric's external backup drives had the capacity to retain backup data for a period of approximately

1

fourteen days. Following the expiration of this period of time, data was overwritten on Barn Light Electric's external backup drives, starting with the oldest data set.

9. In 2012, Barn Light Electric had a company policy of disabling the e-mail account of its former employees for a period of time no longer than one year. Upon the expiration of this time period, the e-mail accounts of former employees were deleted from the server to free up server capacity.

10. Following ███████████████████████████████████████, Bryan Scott asked that I inspect Mr. Schultz's laptop computer, file folders resident on the Barn Light Electric file server and e-mail. Upon inspection, I discovered that Mr. Schultz had deleted all of the files from his laptop computer, leaving only the operating system intact.

11. Upon inspection of the file and e-mail servers following the departure of Mr. Schultz from Barn Light Electric, it became apparent that he had deleted all of his files on the share file directory, home directory and e-mail server.

12. Since then, I have re-confirmed that Mr. Schultz's e-mail, home directory and other files were permanently deleted from the Barn Light Electric servers prior to this litigation.

13. W███████████████████████████████████████████████████████ ███████████ Following ████████████████████████████ by Barn Light Electric Mr. Solms retained his company-issued laptop. As a result, I was unable to retrieve or preserve any files resident on Mr. Solm's laptop computer.

14. I have confirmed that Mr. Solms e-mail, home directory and other files were permanently deleted from the Barn Light Electric servers prior to this litigation.

15. ███████████████████████████████████████████████████████. I have confirmed that Katie Fredericks e-mail, home directory and other files were permanently deleted from the Barn Light Electric servers prior to this litigation.

16. ███████████████████████████████████████████████. I have confirmed that Brian Day's e-mail, home directory and other files were permanently deleted from the Barn Light Electric servers prior to this litigation.

17. Barn Light Electric maintains a server running Dassault Systems Solidworks 3-D Computer Assisted Design ("CAD") software, which is located in its manufacturing facilities ("Solidworks Server"). The Solidworks Server contains a feature called secure file vaulting which allows the administrator of the Solidworks software to control user access to sensitive or proprietary product information stored on the server. The files contained on the Solidworks Server are comprised solely of the Solidworks software and proprietary Solidworks CAD files.

18. On or about August 2, 2012, Bryan Scott directed me to assist Bay Area Innovations in transferring Barn Light Electric's SolidWorks files to a folder located on Barn Light Electric's SolidWorks server.

19. At the time of the transfer, Bay Area Innovations inadvertently transferred in excess of forty three gigabytes of data to Barn Light Electric's SolidWorks server, the majority of which was proprietary data relating to other clients of Bay Area Innovations.

20. Upon notification by Bay Area Innovations of their error, I subsequently allowed Bay Area Innovations access to the folder on Barn Light Electric's SolidWorks server so they could purge all non-Barn Light Electric files from the data set they transmitted. The total size of all Barn Light Electric files transferred to Barn Light Electric's SolidWorks server by Bay Area Innovations was approximately fifteen gigabytes.

21. I have personally conducted keyword searches of the files transferred to Barn Light Electric from Bay Area Innovations including keyword searches for the following terms: "Bay Area Innovations", "BAI", "Hi-Lite", "HiLite", "H-", "H-15116", "H15116", "BLO", "Barnlight Originals", "Jeffrey Ohai", "Ohai" and "McAdam." The keyword searches I conducted failed to identify any instances of these search terms within any of the files transferred to Barn Light Electric by Bay Area Innovations.

22. On or about August 14, 2014, Bryan Scott notified me that Barn Light Electric had become involved in a lawsuit and directed me to preserve all data contained on all of Barn Light Electric's IT systems until further notice. I have complied with Mr. Scott's directive at all times and continue to do so today.

23. Shortly thereafter, I was contacted by Barn Light Electric's legal counsel and a representative from Iris Data Services for the purposes of coordinating the collection of data from the Barn Light Electric IT systems.

24. Iris Data Services instructed me to provide copies of the entire file directory and database structures of Barn Light Electric's file server (including both the home and share file directories for all users), data stored on the e-mail server, e-commerce server (including Barn Light Electric's entire CS Cart sales tracking database) and a complete copy of Barn Light Electric's Quickbooks database.

25. In addition to the companywide data I copied and provided to Iris Data Services, I also provided Iris Data Services with complete sector by sector backup copies of the local hard drives mounted to the desktop computers of Bryan Scott, Donna Scott, Katie Schilling and Anna Williams. Because each of these employees utilized the POP3 protocol to communicate with the

4

Barn Light Electric's e-mail server, their hard drives included e-mail files and other data which were no longer present on Barn Light Electric's servers.

26. Throughout the course of this litigation, I have personally received and fulfilled numerous additional requests for the collection of data from Barn Light Electric's expert witnesses and legal counsel.

27. I have also assisted numerous other employees of Barn Light Electric in providing copies of additional documents and financial data to Barn Light Electric's expert witnesses and legal counsel throughout the course of this litigation.

28. Barn Light Electric maintains a nonproduction server running Microsoft Navision software which is referred to as a "Sandbox Server." The Sandbox Server serves as a test facility for the safe operation of software and/or applications by users prior to the installation or implementation of any such software and/or application(s) on Barn Light Electric's production, file or e-commerce servers. The Sandbox Server does not now, nor has it ever, contained any Barn Light Electric production files.

29. Barn Light Electric maintains a server running Microsoft Navision software, which is located in its manufacturing facilities ("Manufacturing Server"). The Manufacturing Server is used to track the inventory of raw materials (e.g., sheet metal, paint, machinery, etc.) used in the manufacturing process. The Microsoft Navision software installed on the Manufacturing Server generates purchase orders for raw materials as they are depleted. All such records are transmitted to and maintained by the accounting department of Barn Light Electric.

30. Barn Light Electric also maintains external servers through a third-party servicer. The servers include a server that houses Barn Light Electric's Online Blog and Knowledge Base, a server that houses Barn Light Electric's e-commerce website, an e-mail server, a server that

5

houses Barn Light Electric's Help Desk Application, a server that houses the CS Cart database and a Domain Name Service ("DNS") Server.

31. I have previously copied and provided Iris Data Systems with data contained on the e-mail server, e-commerce website server and CS Cart database servers. The Blog and Knowledge Base server contains live website data which is publicly accessible. The Help Desk Application server contains help desk data. The DNS Server contains IP addresses and host names.

I declare under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of March, 2016, in Titusville, Florida.

Michael S. Koller