UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY, LLC.,
a Florida Limited Liability Company,

     Plaintiff,

 VS.                            Tampa, Florida

BARNLIGHT ORIGINALS, INC.,       February 23, 2016
a Nevada Corporation; HI-LITE
MANUFACTURING COMPANY, INC.,     9:30 a.m.
a California Corporation; and
JEFFREY L. OHAI, an individual
California Resident,

     Defendants.

_____/  Case No.8:14-CV-1955-T-35AEP

BARNLIGHT ORIGINALS, INC., a
Nevada Corporation; and HI-LITE
MANUFACTURING COMPANY, INC.,
a California Corporation,

      Counterclaim Plaintiffs,

vs.

BARN LIGHT ELECTRIC COMPANY, LLC.,
a Florida Limited Liability Company,

      Counterclaim Defendant,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

      Third-Party Defendants.

_____/

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

```
 1              TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
                 BEFORE THE HONORABLE MARY S. SCRIVEN
 2                    UNITED STATES DISTRICT JUDGE

 3      Appearances:

 4      For the Plaintiff:        ALEJANDRO J. FERNANDEZ, ESQUIRE
                                  JOSEPH R. SOZZANI, ESQUIRE
 5                                STEPHEN J. LEAHU, ESQUIRE
                                  Feldman Gale, PA.
 6                                400 N. Tampa St., Ste 2830
                                  Tampa, FL  33602
 7                                (813)374-8890
                                  afernandez@feldmangale.com
 8                                jsozzani@feldmangale.com
                                  sleahu@feldmangale.com
 9                                GREGORY L. HILLYER, ESQUIRE
                                  Feldman Gale, PA
10                                5335 Wisconsin Ave., NW, Ste 410
                                  Washington, DC  20015
11                                (202)478-9685
                                  ghillyer@feldmangale.com
12
        For the Defendants:       MICHAEL J. COLITZ, III, ESQUIRE
13                                STEPHEN G. ANDERSON, ESQUIRE
                                  STEFAN V. STEIN, ESQUIRE
14                                Gray Robinson, PA
                                  401 E. Jackson St., Ste 2700
15                                Tampa, FL  33602
                                  (813)273-5073
16                                michael.colitz@gray-robinson.com
                                  stephen.anderson@gray-robinson.com
17                                stefan.stein@gray-robinson.com

18      Counsel for Intervenors:  MS. JULIE K. LINHART
                                  Colliau Carluccio Keener Morrow
19                                Peterson & Parsons
                                  4631 Woodland Corporate Blvd. Ste 315
20                                Tampa, FL  33614
                                  (813)880-5168
21                                julie.linhart@cna.com

22      Court Reporter:           MS. CLAUDIA SPANGLER-FRY, RPR, RMR
                                  Official Court Reporter
23                                801 North Florida Ave., 7th Floor
                                  Tampa, FL 33602
24                                (813)301-5575
                                  cookiefry@aol.com
25
```

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

P R O C E E D I N G S

February 23, 2016

\*\*\*\*\*\*

1
2
3
4          THE COURT:  Good morning.  Please call the case.
5          THE CLERK:  In the matter of Barn Light Electric
6   Company, LLC, versus Barnlight Originals, Inc., et al, Case
7   Number 8:14-Civil-1955.
8          Counsel, please state your appearances starting with
9   counsel for the Plaintiff.
10          MR. FERNANDEZ:  Alex Fernandez with Feldman Gale on
11   behalf of Barn Light Electric and Bryan and Donna Scott.
12          MR. HILLYER:  Gregory Hillyer also on behalf of Barn
13   Light Electric and the Scotts.
14          MR. LEAHU:  Stephen Leahu also on behalf of --
15          THE COURT:  I can't hear you and it's this Court's
16   practice for lawyers to stand when they address the Court.
17          Yes, sir?
18          MR. LEAHU:  Stephen Leahu for Barn Light Electric and
19   Donna and Bryan Scott.
20          MR. SOZZANI:  Joseph Sozzani for Barn Light Electric
21   and Bryan and Donna Scott.
22          MR. COLITZ:  Morning, Your Honor, Michael Colitz with
23   the Law Firm of Gray Robinson, here on behalf of the
24   Defendants, Hi-Lite Manufacturing, Barnlight Originals and Mr.
25   Jeffrey Ohai.

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

```
 1              MR. ANDERSON:  Stephen Anderson on behalf of
 2   Defendants, Hi-Lite Manufacturing, Barnlight Originals and
 3   Jeffrey Ohai.
 4              MR. STEIN:  Good morning, Your Honor, Stefan Stein on
 5   behalf of the Defendants.
 6              THE COURT:  Good morning.
 7              MS. LINHART:  Julie Linhart on behalf of the proposed
 8   intervenors, Valley Forge Insurance Company and Transportation
 9   Insurance Company.
10              THE COURT:  Good morning.
11              And are those the Scotts behind Plaintiff's counsel
12   table?
13              MR. FERNANDEZ:  Yes, Your Honor.
14              THE COURT:  All right.
15              We're here because you all keep filing motions.  And
16   every time we resolve something, I think we resolve it, we get
17   a different motion and another motion, and when we set the
18   hearing to resolve all outstanding motions, the response was to
19   file more motions.  And we can't spend all of our time dealing
20   with one case.
21              So, we're going to get all of the motions that are
22   pending resolved today, and encourage you not to file anymore
23   motions and see if we can't get you in a courtroom to try the
24   case if that is what you want to do.
25              And I understand that somebody came by chambers on
```

1  Friday to inquire about the content of my order?  Who was that?

2          MR. FERNANDEZ:  Yes, Your Honor, that was me.

3          THE COURT:  All right.

4          That's not proper.  If you have a question about the

5  Court's orders, you should file a motion for clarification

6  rather than come by and have a hearing.

7          MR. FERNANDEZ:  I apologize, Your Honor.

8          THE COURT:  All right.

9          MR. FERNANDEZ:  I believe it was regarding a

10 procedural matter and --

11         THE COURT:  All right.

12         You're glad I wasn't there.  All right.

13         Let me understand -- see if I understand the

14 scenario.  The Plaintiff had a relationship with Hi-Lite to

15 distribute Hi-Lite lights.  Something happened in that

16 arrangement and Plaintiff became dissatisfied with the

17 arrangement and the parties agreed to go their separate ways,

18 so to speak.

19         The Plaintiff, though, wanted to continue doing what

20 it had been doing in its business, and so Plaintiff decided to

21 go buy some China that were deleted and develop its own product

22 using the Defendant Counter Plaintiff Hi-Lite's product as a

23 prototype for that develop.

24         Not surprisingly, Hi-Lite became upset, and one of

25 Hi-Lite's principals decided rather than to sue to stop, he

1  would get even.  And he then developed his own product to

2  compete with BLE's product, and to add insult to injury, would

3  open the business with an arguably confusingly similar mark.

4          And so then the Plaintiff sued to stop the

5  infringement of the mark and all the other claims, and then the

6  Defendant Counter Plaintiff responded by suing for all of the

7  things that should have been sued for before.  And we're here.

8  And they're in a blood bath, and you're spending all your

9  clients' money litigating to -- like in a -- one of those

10  new-fangled fights to the death.  What do you call that; UFC

11  fighters?

12          MR. COLITZ:  Cage fight, Your Honor.

13          THE COURT:  Cage fight.  That's essentially what this

14  is.  And apparently, they all have money and don't mind

15  spending it this way rather than making lights and selling

16  lights, and so here is the ring.

17          Is that essentially it?

18          MR. FERNANDEZ:  Your Honor, we would disagree with a

19  number of the factual --

20          THE COURT:  Let me hear the disagreement.

21          MR. FERNANDEZ:  Well, regarding the relationship, it

22  was a simple online retailer.  Barn Light Electric was selling

23  retail lights on the Internet, and one of its manufacturers was

24  the Defendant, Hi-Lite.

25          THE COURT:  There was no agreement to do that?

1       MR. FERNANDEZ:  No, ma'am.  No, Your Honor.

2       THE COURT:  So you just purchased lights randomly

3    from Hi-Lite and put them on your website for resell?  You

4    didn't talk to Hi-Lite and say, we would love to service you --

5    sell your lamps, we would love to be one of your principal

6    distributors of your lamps?

7       MR. FERNANDEZ:  No, Your Honor, that's not how it

8    played out.

9       THE COURT:  They just went online, purchased them in

10   the open market and put them on their website to sell?

11      MR. FERNANDEZ:  Your Honor, initially, our client was

12   selling its own lights, and as demand grew for those lights, it

13   sought out another manufacturer.  And it reached out to the

14   representative of Hi-Lite and that representative sold products

15   to our client.  There's no agreement whatsoever, there's

16   never -- at that time, there wasn't even any communication

17   between --

18      THE COURT:  Well, how do you sell something without

19   there being an agreement?

20      MR. FERNANDEZ:  It's a purchase and a sale.

21      THE COURT:  That's a contract.

22      MR. FERNANDEZ:  Well --

23      THE COURT:  I agree to buy from you X number of

24   lights and you agree to sell me X number of lights at X price.

25   That's a classic easy first grade contract.

1　　　　　MR. FERNANDEZ:  Agreed, Your Honor, but it is not a

2　distribution.

3　　　　　THE COURT:  I didn't say there was a distribution

4　agreement.  I said that there was an agreement and the parties

5　later decided they didn't want to be in that deal anymore.  The

6　fight is about what the terms of that agreement are, but

7　curiously, there's no breach of contract claim here, so there's

8　no litigation fight about it, it's just a backdrop fight about

9　it.  So we agree that there was an agreement.  We disagree as

10　to the nature and terms of the agreement and the breadth of the

11　agreement.

12　　　　　MR. FERNANDEZ:  Yes, Your Honor.

13　　　　　THE COURT:  What's the other thing you disagree

14　about?

15　　　　　MR. FERNANDEZ:  Well, the termination of the

16　so-called agreement that was actually instituted by the

17　Defendants, Hi-Lite, immediately prior to them starting up

18　their own business, Barnlight Originals.  That was not

19　originated by Barn Light Electric.

20　　　　　THE COURT:  Did I say it was initiated by Barn Light

21　Electric?

22　　　　　MR. FERNANDEZ:  My understanding from what Your Honor

23　said was that the agreement was terminated by Barn Light

24　Electric because they became dissatisfied.

25　　　　　THE COURT:  Well, I'm not sure what I said about

1  that.  My understanding is that the parties agreed no longer to
2  do business with each other under the terms of that buy/sell
3  agreement, however it was formulated.  That is true?
4          MR. FERNANDEZ:  It is true.
5          THE COURT:  And then you -- your client still wanted
6  to keep selling lights?
7          MR. FERNANDEZ:  That was their business before there
8  was ever any relationship.
9          THE COURT:  And it wanted to keep doing that?
10         MR. FERNANDEZ:  Yes, Your Honor.
11         THE COURT:  And it wanted to keep selling lights that
12 were similar to Hi-Lite's lights?
13         MR. FERNANDEZ:  It wanted to keep selling lights that
14 were similar to those manufactured from the 1920s, '30s and
15 '40s.
16         THE COURT:  Which included Hi-Lite lights?
17         MR. FERNANDEZ:  I do not believe Hi-Lite was even
18 around then, Your Honor.
19         THE COURT:  It wanted to keep selling lights similar
20 to the lights it had always sold, including the lights it sold
21 when it was selling Hi-Lite lights?
22         MR. FERNANDEZ:  Agreed, Your Honor.
23         THE COURT:  And it did so in part using pictures from
24 Hi-Lite's catalogs?
25         MR. FERNANDEZ:  I disagree with that, Your Honor.

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

```
 1            THE COURT:  So there were no Hi-Lite catalog
 2   photographs on the website of Barn Light Electric after Barn
 3   Light Electric stopped selling Hi-Lite lights?
 4            MR. FERNANDEZ:  There was a two-week period when
 5   there was a --
 6            THE COURT:  So there were; yes or no?
 7            MR. FERNANDEZ:  Yes, Your Honor.
 8            THE COURT:  Okay.  So it kept selling lights and it
 9   kept having photographs of Hi-Lite lights on the website when
10   it kept selling lights.  And I'm not saying any of this is
11   illegal or bad or a trademark infringement or copyright
12   infringement, I'm just telling you what the facts are that the
13   parties really can't dispute or haven't, at least, on the
14   record.
15            So it kept selling lights similar to the ones it had
16   been selling, including during the period it was selling
17   Hi-Lite lights, and it kept pictures of the Hi-Lite lights on
18   its website, at least for a time.
19            Now, are you telling me now that Barn Light Electric
20   accepted the revocation of the -- I'm sorry -- of the
21   non-exclusive license to use those photographs?
22            MR. FERNANDEZ:  Not at all, Your Honor.
23            THE COURT:  Okay.  So it had a right to use those
24   photographs and it never decided by any agreement with Hi-Lite
25   to stop using those photographs?
```

1     MR. FERNANDEZ:  I would agree in broad strokes, but
2  there's a lot of detail there.
3     THE COURT:  Well, there's no question there's a lot,
4  but we're going to get to the detail, but I've just got to get
5  the broad strokes so we can get the box top of the puzzle.
6     And so is there something else you disagree with?
7     MR. FERNANDEZ:  I think that's it in broad strokes
8  without going into detail.
9     THE COURT:  Okay.  Thank you.
10     None of this seems particularly easy, but let's start
11  then at the beginning.  Barn Light Electric has asked the Court
12  to declare, as a matter of law, that it did not infringe the
13  477 Patent, and one of the principal reasons is the 477 Patent
14  is invalid, and Mr. Ohai has tried to circumvent that lawsuit
15  by offering to kind of sort of covenant that he may or may not
16  pursue them right directly.
17     And I keep asking him to give me a covenant that I
18  can say is reliable as a matter of law to eliminate such a
19  claim.  And he keeps giving me a mealy-mouthed covenant that
20  gives him leeway to assign a claim to Hi-Lite so Hi-Lite can
21  bring the claim or preserve in himself the ability to bring the
22  claim without really saying he's never going to bring a claim.
23     So what is the status of his agreement not to pursue
24  Barnlight Originals or Hi-Lite in connection with -- I'm
25  sorry -- Barn Light Electric or Hi-Lite -- Barn Light Electric

1  in connection with the use of that patent?

2          MR. COLITZ:  May I speak from the podium?

3          THE COURT:  You may speak from wherever you can find

4  a microphone.

5          MR. COLITZ:  Thank you, Your Honor.

6          Mr. Ohai is the only owner of the 477 Patent.  If

7  they want a covenant also from Hi-Lite, it would sort of be

8  nonsensical because Hi-Lite doesn't own the patent.

9          THE COURT:  Well, will he agree he will not assign

10 the patent to Hi-Lite?

11         MR. COLITZ:  He would agree to that, Your Honor.

12         THE COURT:  And he will agree that he will not now,

13 ever or in the future sue Barn Light Electric for infringement

14 of the 477?

15         MR. COLITZ:  Therein lies the problem, Your Honor.

16 He's willing to say that he's not going to sue on anything that

17 he's aware of, any products that he's seen --

18         THE COURT:  Okay.  Well then, we have a patent claim,

19 and so we have to talk about invalidity.  Let's talk about

20 invalidity.

21         MR. COLITZ:  Your Honor, if I may, just -- I don't

22 think that the relevant case law -- he should not be charged

23 with things he doesn't know about.  And what he has asked them

24 and what we've tried to do through discovery is say if there's

25 a product that they have that they're making that they're

1    concerned may pose an infringement issue, show it to us.

2              THE COURT:  You're right, you're absolutely correct,

3    he does not have to stipulate to anything he doesn't want to

4    stipulate.  He doesn't have to offer a covenant about anything

5    that he doesn't want to covenant about and the Court can't

6    force him to do that.

7              MR. COLITZ:  But Your Honor, it's not an issue of him

8    not being willing to give a covenant, he's given a covenant

9    over absolutely everything he's aware of, everything he's seen

10   in the litigation, he's saying that's not an infringement,

11   that's not an infringement.

12             But what I don't think is required for him to do is

13   basically give them -- say, you can have the patent and you can

14   do whatever you want under the patent and we can never sue you

15   again on the 477 Patent.  That would essentially be giving away

16   the 477 Patent.  We can't say that, okay, again out in the

17   future, they can now start making products that are an

18   infringement.  That would be unfair to Mr. Ohai.

19             All we're saying is all he's required to do under the

20   law is say, everything that I'm aware of, everything that I've

21   seen is not an infringement, and I'm not going to sue you on

22   any of that, which is exactly what he said.

23             But what they're trying to do is basically give

24   themselves a license to do anything they want under the 477

25   Patent, which I don't think is required by the case law.

1          THE COURT:  Counsel, what is it that you want to do

2     that Mr. Ohai doesn't know about?

3          MR. FERNANDEZ:  Your Honor, we have proprietary

4     products that are coming on the market that would be included

5     in this patent, and they've asserted the patent against, not

6     just those proprietary products, but the others that we already

7     sell.  They keep hedging, going back --

8          THE COURT:  What proprietary products?

9          MR. FERNANDEZ:  There's one that we could point to

10    that has just been completed in development and --

11         THE COURT:  And Mr. Ohai does not know about that

12    product?

13         MR. FERNANDEZ:  No, Your Honor.  But it does come

14    within the scope, you know, ostensibly of their threat.

15         THE COURT:  Well, how can he agree not to sue you for

16    infringing the patent on a product he does not know you are

17    developing?

18         MR. FERNANDEZ:  The *Already versus Nike* case

19    indicates that the burden is initially on the party making the

20    threat to create a covenant that is broad enough to extinguish

21    the threat and all possible threats.  And then the burden would

22    shift at that point.

23         At this point, we believe that the product under

24    development would fall under a contemplated device such as what

25    was being discussed in *Nike* with different shoes in that

1  instance.

2          THE COURT:  Counsel?

3          MR. COLITZ:  Yes, Your Honor.  We did try to resolve

4  this with discovery and we gave them an interrogatory that

5  said, in good faith, we said, tell us what you're thinking may

6  be an infringement and we'll look at it.  We gave them an

7  interrogatory request, tell us what your -- what products

8  you're concerned about, and the answer was nothing.

9          THE COURT:  The answer was the word "nothing" or the

10 answer was not to answer?

11         MR. COLITZ:  The answer was they identified no

12 products that were of a concern to them.  They identified no

13 products that they thought were implicated by our cease and

14 desist letter.  And so --

15         THE COURT:  So let me stop you there.  So you said

16 tell us the products that you think could create a problem of

17 infringement and the answer was, we have no products

18 potentially implicated by the patent?

19         MR. COLITZ:  Exactly, Your Honor.  And what they have

20 done now in the opposition to summary judgment, for the first

21 time pulled out this product that is theoretically under

22 development that we had never seen before, was not produced

23 during discovery, is thrown out there in an opposition to our

24 motion for summary judgment to keep the issue alive.

25         THE COURT:  Counsel, is that the answer you gave in

interrogatory?

MR. FERNANDEZ:  Your Honor, we did not say --

THE COURT:  You don't have to keep unbuttoning and buttoning your jacket.  It's fine.

MR. FERNANDEZ:  Thank you, Your Honor.

We did not indicate that there was no --

THE COURT:  What was your interrogatory answer?

MR. FERNANDEZ:  I'm not sure what interrogatory he's referring to --

THE COURT:  Does anybody have it?

MR. FERNANDEZ:  -- let alone our response.  There's been hundreds of interrogatories.  I'm sorry --

THE COURT:  I'm sure there's only been 33 interrogatories.

MR. FERNANDEZ:  You're correct.

THE COURT:  But hundreds of answers.

MR. FERNANDEZ:  Yes.

The bottom line, Your Honor, is that --

THE COURT:  Wait, let me hear the interrogatory and answer.

MR. COLITZ:  It's really two things, Your Honor.  We asked for an identification of all products manufactured --

THE COURT:  I want the question number.

MR. COLITZ:  That's Plaintiff's response to Interrogatory Number 15, Your Honor.

1       THE COURT:  Number 15?

2       MR. COLITZ:  Yes, ma'am.

3       THE COURT:  All right.

4       MR. COLITZ:  And we asked an identification of all

5  products manufactured and sold or offered for sale by Barn

6  Light Electric that Barn Light Electric believes are accused of

7  infringing the 477 Patent.  Again, we stressed that not what

8  you think is infringement --

9       THE COURT:  I don't want to know what you stress in

10 your mind, I want to know what the question was.

11      MR. COLITZ:  That was the question.

12      THE COURT:  And then what was the answer?

13      MR. COLITZ:  They did not reference a single product

14 that they believed stood accused of infringement.

15      THE COURT:  So that's not the answer.  They didn't

16 reference the product?

17      MR. COLITZ:  They didn't reference any products.

18      THE COURT:  Was the answer left blank or did they say

19 there are no products?

20      MR. COLITZ:  They basically gave us a laundry list of

21 objections and then just didn't give --

22      THE COURT:  So they didn't answer the question?

23      MR. COLITZ:  Basically, yes, Your Honor, they did not

24 answer the question.

25      THE COURT:  Well, you just told me they answered the

1    question and that their answer was there are no products.

2         MR. COLITZ:  They did not affirmatively say there are

3    no products, they just basically did not identify any products.

4    They gave us a laundry list of objections and didn't identify

5    any products.

6         THE COURT:  Did you move to compel an answer over

7    their objections?

8         MR. COLITZ:  No.

9         THE COURT:  So the question has never been answered

10   in an interrogatory?

11        MR. COLITZ:  That's one way of looking at it, Your

12   Honor.

13        THE COURT:  Well, that's the only way of looking at

14   it unless you can show me an answer.

15        MR. COLITZ:  I also --

16        THE COURT:  Correct?

17        MR. COLITZ:  Correct, Your Honor.

18        THE COURT:  There's no interrogatory, as you just

19   represented, that has an answer that says there are no

20   products.  There's just a non answer and a no motion to compel

21   an answer?

22        MR. COLITZ:  Right.  I would also say, Your Honor,

23   that during the deposition of Mr. Scott, we asked him, so what

24   Mr. Ohai has provided is a covenant not to sue with a picture

25   of the product that -- the only product he's aware of is

1  something they call the two-piece extended coupler.  And what I
2  showed Mr. Scott during his deposition was a picture of that
3  two-piece extended coupler, and I said --
4          THE COURT:  The coupler, the two-piece extended
5  coupler is some apparatus in a lamp?
6          MR. COLITZ:  Yes, ma'am.
7          THE COURT:  All right.
8          And you showed him, Mr. Scott, a picture of this
9  apparatus and his -- and you asked him what?
10         MR. COLITZ:  You sell anything else like this.  And
11 his answer was, I don't think there's anything quite like this
12 that they sell.  So his answer was, they don't sell anything --
13         THE COURT:  No, his answer was, I don't think there's
14 anything quite like this?
15         MR. COLITZ:  Yes, Your Honor.
16         THE COURT:  And you asked him if he sells anything,
17 and if he hadn't finished developing it, then he doesn't sell
18 it.
19         MR. COLITZ:  Correct.
20         THE COURT:  And that's how lawyers tell their clients
21 to answer questions, just what's asked and nothing more.  And
22 you didn't ask him in that deposition, are you all developing a
23 product that you're aware of that might infringe this coupler
24 or that might look like this or function this way?  He wasn't
25 asked those questions and you didn't give an answer?

1          MR. COLITZ:  You're correct, Your Honor.

2          THE COURT:  And so now they're telling us now that

3     there is some secret thing they're developing that might be

4     infringing and they want a broad covenant to protect themselves

5     against suit for that unknown broad thing?

6          MR. COLITZ:  And the invitation that we've extended

7     to them is let us look at that and we'll be happy to include it

8     in the covenant.

9          THE COURT:  Counsel?

10         MR. FERNANDEZ:  Yes, Your Honor.  The concern here is

11    that they've raised a threat and we don't want to end up back

12    in Court every single time we're developing a product because

13    they're asserting that same patent against us and making the

14    same arguments about invalidity.

15         THE COURT:  So why don't you just show them what

16    you're producing and say, does this infringe your patent?

17         MR. FERNANDEZ:  My concern is that in the future, if

18    we develop other ones beyond that, it's an incremental baby

19    steps approach which is not what is contemplated by a true

20    covenant not to sue.  The idea is to fully extinguish the

21    threat and let our client proceed in peace without the sort of

22    Damocles hanging over their head with a patent infringement

23    suit.

24         MR. COLITZ:  Your Honor?

25         THE COURT:  Yes, sir?

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

| | |
|---|---|
| 1 | MR. COLITZ: I think what the case law says is they |
| 2 | have to have concrete plans in place and it's their burden to |
| 3 | demonstrate that, and all we've seen is a photograph of |
| 4 | something produced in response to a motion for summary |
| 5 | judgment. The idea that this is a controversy because at some |
| 6 | point in the future they may develop something else, I think, |
| 7 | is a problematic argument. The parties have enough to argue |
| 8 | about without some hypothetical problem down the road in the |
| 9 | future. |
| 10 | THE COURT: But now we have a picture and it's not |
| 11 | any longer hypothetical. |
| 12 | MR. COLITZ: Right. So again, we would be more than |
| 13 | willing to physically -- we haven't physically looked at that |
| 14 | product, but once we look at that product and if it's not an |
| 15 | infringement, we include it in the covenant and everybody goes |
| 16 | on their way and save everybody a lot of time. |
| 17 | THE COURT: And what if three days before trial they |
| 18 | develop a new product? |
| 19 | MR. COLITZ: And that's what I don't think we're |
| 20 | required to do is just to continually give them a pass on every |
| 21 | single hypothetical product done in the future. If they've got |
| 22 | something concrete, which is the language of the case law, |
| 23 | something concrete, we'll take a look at it, but this idea that |
| 24 | we have to give them a covenant ad infinitum into the future on |
| 25 | all future variations of what they may do I don't think is |

1   supported by the case law.

2        We've given them a covenant over absolutely

3   everything that we're aware of, and we're willing to look at

4   whatever they have and covenant -- and give a covenant to that.

5   But what we should not be required to do is basically give them

6   our patent, which is essentially I think what they're trying to

7   do.

8        THE COURT:  Okay.  Let's talk about the invalidity

9   argument.  Does the defense disagree that the device that was

10   sold to the Eberharts contained the coupler that is the subject

11   of the patent or does the defense just say we don't know

12   because anybody could have put that in there later?

13        MR. COLITZ:  We don't know what was sold.  All we

14   have is the photographs of what they say was purchased.

15        THE COURT:  And so how would you intend at trial to

16   challenge what they say was sold?

17        MR. COLITZ:  We would point out the fact that they're

18   saying it was a sale to a -- people by the name of Eberharts,

19   and they have yet to produce an invoice of that sale to the

20   Eberharts.  They've produced an invoice from Hi-Lite to Barn

21   Light Electric, but there's no sale directly to the Eberharts.

22   So there is sort of a chain of custody issue there as to who

23   bought this and when it was --

24        THE COURT:  It's not a privity problem is it?

25        MR. COLITZ:  No, Your Honor, it's just an issue

1   that --
2          THE COURT:  So they say we sold a lamp to the
3   Eberharts and the Eberharts hung it on the porch and kept it
4   there and then we bought the porch and now we have it and here
5   it is and we opened it up and, voila, here's a coupling device.
6   And you want to challenge that at trial on the basis of the
7   absence of evidence?
8          MR. COLITZ:  Yes, Your Honor.  Their obligation would
9   be to show a commercial sale.  And what we're saying is there
10  was no commercial sale because they have not produced an
11  invoice.
12         THE COURT:  We have a witness who said there was a
13  commercial sale.  There's no requirement that the commercial
14  sale be proven by an invoice.
15         MR. COLITZ:  Yes, Your Honor, but I don't think they
16  even have a witness.  The Eberharts aren't on their witness
17  list.
18         THE COURT:  But the Plaintiff's own witness said I
19  sold this to the Eberharts and delivered it to the Eberharts.
20  So that absence of evidence is what the defense is relying on
21  to challenge the Eberharts' sale?
22         MR. COLITZ:  Yes, Your Honor.  I would also point out
23  that --
24         THE COURT:  Yes?
25         MR. COLITZ:  Yes, Your Honor, that we would -- the

1  standard is clear and convincing evidence that there was a
2  sale, and if there is an absence of an invoice and all we're
3  relying on is oral testimony, I think there is case law out
4  there that says oral testimony is not enough to meet the clear
5  and convincing standard --
6           THE COURT:  But we also have the light and we also
7  have someone who opened the light and says this is what was in
8  the light.
9           MR. COLITZ:  Yes, Your Honor.
10           THE COURT:  And the only thing that I hear you say
11  you have to defeat that is we don't have the Eberharts
12  confirming it, we don't have an invoice, and who knows what
13  happened to the light in the years it sat on the porch?
14           MR. COLITZ:  Yes, Your Honor.  And the fact that it's
15  a clear and convincing standard and that oral evidence -- the
16  case law suggests that oral evidence is not enough to overcome
17  that clear and convincing standard.
18           The only thing I would point out there, Your Honor,
19  is we do admit that at around that time, that there were -- we
20  were manufacturing early prototypes of this two-piece extended
21  coupler and that they were all defective.
22           THE COURT:  Including this one that lasted in this
23  lamp for five years?
24           MR. COLITZ:  Well, we don't know because the
25  threading -- the threading was wrong on the coupler, thickness

1  of the coupler was off, and --

2      THE COURT:  Well, do you know, having looked at this

3  coupler, whether it was one of the prototypes?

4      MR. COLITZ:  We don't know, Your Honor, we don't

5  know.

6      THE COURT:  Have you tested it to see if it was one

7  of the prototypes?

8      MR. COLITZ:  We haven't, but what we do know, Your

9  Honor, is all of the products from that time period, I think it

10  was in 2009, all of the products from that time period suffered

11  from these defects and that --

12      THE COURT:  Well, you have the prototype now -- well,

13  you have the thing that you claim is a prototype or -- well,

14  you have the thing that was in the light or that they claim was

15  in the light and you then should have the ability to see if it

16  was one of the old ones or one of the newer ones.

17      MR. COLITZ:  I believe we have pictures of it.  I

18  don't know if we actually --

19      THE COURT:  But you haven't tested it to see or --

20      MR. COLITZ:  No, Your Honor.

21      THE COURT:  -- evaluated it or sent it to your

22  experts to say, oh, yeah, this is one of the old prototypes or

23  no, this is one of the ones that was produced after the

24  defects?

25      MR. COLITZ:  We haven't done that, Your Honor.

1          THE COURT:  All right.

2          So there's either a factual dispute about whether

3   there's an invalid patent or the Plaintiffs have the only

4   evidence of the validity of the patent because you can't defeat

5   summary judgment on the absence of evidence.

6          MR. COLITZ:  I do believe we can in this instance

7   because --

8          THE COURT:  Of the burden?

9          MR. COLITZ:  -- because of the burden and case law

10  that suggests just oral representation --

11         THE COURT:  But we don't just have oral evidence.  If

12  there were just some person at Barn Light Electric who said,

13  oh, yeah, I remember that we sold a light that somehow I knew

14  had the coupling device in it to the Eberharts in 2008, that's

15  my memory; that would not meet the clear and convincing test,

16  perhaps.  But to say we sold it, to say the lamp still sits in

17  the apartment they rented, to say we went upstairs and pulled

18  it off the wall and it was still there, and then we opened it

19  and found the coupling device, is more than oral testimony.

20         And so then, you're talking about burdens of proof or

21  the absence of evidence, and at best, that gets you to trial on

22  the issue, it may or may not get them to summary judgment, I'll

23  hear about that, but at best, it gets you to trial.

24         And then we're back to the, we'll give up the claim

25  and moot the issue and destroy the Court's jurisdiction to hear

|||
|---|---|
| 1 | it, but they won't tell us enough to satisfy us, their |
| 2 | covenant, it's not sufficiently broad, and you won't offer them |
| 3 | a broader covenant that they find to be sufficiently broad, and |
| 4 | I have to decide. |
| 5 | MR. COLITZ:  Well, I would say, Your Honor, if they |
| 6 | want to show us what's under development, we'll include that in |
| 7 | the covenant. |
| 8 | THE COURT:  You'll include it or you'll think about |
| 9 | including it? |
| 10 | MR. COLITZ:  Well, we'll think about it.  We have to |
| 11 | look at it before we can give a covenant on it, but we -- |
| 12 | THE COURT:  All right. |
| 13 | Because you believe the patent is valid and you don't |
| 14 | want to covenant not to sue them for something that you think |
| 15 | may infringe the patent? |
| 16 | MR. COLITZ:  What I believe, Your Honor, is that they |
| 17 | are trying to keep this issue alive through hypothetical future |
| 18 | products and development. |
| 19 | THE COURT:  But you're keeping the patent alive as a |
| 20 | possible threat of litigation because you won't agree to give |
| 21 | up the patent protection for something they might develop or |
| 22 | something they might have already developed. |
| 23 | MR. COLITZ:  I wouldn't put it that way.  We're |
| 24 | willing to give it up for something that's under development as |
| 25 | long as we see it first, but what we're not willing to do is |

1  give up the patent for things we don't know about.

2          THE COURT:  Why do you need to see it first?

3          MR. COLITZ:  We would have to compare it to the

4  claims to see if it's an infringement, and if it's not an

5  infringement, we'll include it in the covenant.

6          THE COURT:  Well, obviously, you won't sue them for

7  something for which there is no suit.

8          MR. COLITZ:  Correct, so that's why we would put it

9  in the covenant.

10          THE COURT:  But you want to sue them for things that

11  are infringing of the patent.  You want to preserve the right

12  to sue them for things that infringe?

13          MR. COLITZ:  Correct, in the future that we may not

14  know about now.  The case law does not require us to basically

15  give up our patent.  We should not have to -- what the Court is

16  asking us to do is essentially give them --

17          THE COURT:  I'm not asking you to do anything.  I'm

18  asking you that if you don't want to litigate the patent, we

19  got to get rid of the patent as it relates to the things that

20  are subject to litigation.  And you don't want to give up the

21  patent and they don't want to tell you and the question is,

22  have they told you enough or not.

23          Let me hear from them on the question of invalidity.

24          MR. HILLYER:  Your Honor, point of order, may I be

25  permitted to address this particular argument?

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

1    THE COURT:  That's fine as long as it's just you.

2    MR. HILLYER:  Yes.  Thank you, Your Honor.

3    THE COURT:  And tell me your name again.

4    MR. HILLYER:  Gregory Hillyer.

5    THE COURT:  Yes, sir?

6    MR. HILLYER:  May it please the Court.

7    What counsel has left out, and I do believe there's

8    been multiple pieces of evidence in the record before Your

9    Honor that do memorialize the transactions in question, what I

10    want to emphasize is that there's actually three incidents that

11    show invalidity.

12    First, there was a sale from Hi-Lite to Barn Light

13    Electric.  That was a commercial sale, profit was made.  The

14    witness, David McAdam, was shown the part, the one Ms. Scott

15    attached from the roof.  He said, yeah, that was it, that's

16    what we sold.

17    I showed him a picture of the patent figures.  He

18    said he was familiar with it.  I had him look at figures one

19    and two.  That's the whole apparatus, the one that falls within

20    the scope of every claim in that patent.  He said, yeah, that's

21    what we sold.  We have the invoice from that transaction, okay.

22    When Mr. Colitz says there's no paperwork

23    memorializing the transaction from Ms. Scott to the Eberharts,

24    that's incorrect.  There is an invoice and it's part of her

25    declaration.  I believe it's Exhibit 3.

1            Then -- that's two commercial sales.  Then, there's

2    the observation of the public use which, in and of itself,

3    constitutes a separate ground of invalidity, all of which

4    happened a year before the patent was filed.

5            And as you aptly pointed out, when this case arose,

6    she took the light fixture down, disassembled it, and then I,

7    in turn, used it in David McAdam's deposition.  I wish we had

8    it here today, but it's sitting in our office.

9            So there's rarely a patent case, and I litigate a lot

10   of these, where you have a situation where the patent owner

11   themselves sold the product.  You didn't hear anything from

12   them saying that the claims don't cover it.  The reason we know

13   that is because the claims were designed to cover it.

14           We have three incidents and a witness with personal

15   knowledge and paperwork that this was available far before the

16   patent was filed, the statutory period, one year, which is a

17   complete bar, it doesn't matter who sold it.

18           Now, let me address just a few of the points and then

19   I'll surrender.  This argument regarding whether or not it was

20   a prototype is belied by the sale itself.  The standard is, is

21   it fit for the particular purpose.  Clearly it was because it

22   was sold and used by the Eberharts, so there's really no

23   question and they've never taken the position that that was

24   defective.  I mean, the device was there at the deposition.

25   Whether or not they had manufacturing issues that they needed

| | |
|---|---|
| 1 | to tweak is quite beside the point because the hallmark of the |
| 2 | On Sale and Sale Doctrine is whether or not there was a |
| 3 | financial incentive. |
| 4 | You know, this isn't an experimental use case where |
| 5 | you have a design, for example, that has to be demonstrated in |
| 6 | the public, so the Court gives you a break there because you're |
| 7 | really testing it. There's no testing going on. They weren't |
| 8 | accessing the Eberharts' light fixture, it was in public use. |
| 9 | So that argument fails. |
| 10 | I mean, I think that is the gravamen of the argument. |
| 11 | And, you know, if I could, I'd just like to add to this point |
| 12 | about -- that Mr. Fernandez was making about the covenant. |
| 13 | Right now as it stands here today, Defendants have |
| 14 | all the options. We have a situation where, if they're able to |
| 15 | give the covenant on a product basis, if we come up with a |
| 16 | product in the future, rather than operating free because the |
| 17 | patent is invalid, we have to show them -- have them tell us |
| 18 | whether or not it infringes an invalid patent. The only |
| 19 | recourse is to go back into Court, at which point they can give |
| 20 | a product-specific covenant again, rip the rug out, and we're |
| 21 | back to ground zero again. |
| 22 | Now clearly, there is a penumbra around the |
| 23 | Declaratory Judgment Act that talks about this constant threat |
| 24 | of apprehension and threat. That's the threat. And I agree |
| 25 | with Your Honor that at this point, they have two options; tell |

1    us they're not going to sue under the patent, and, you know, I
2    don't think there's anything we can do under the subject matter
3    jurisdiction standard that would allow us to invalidate that
4    patent 'cause I think it's an invalid patent and for public
5    policy reasons, it needs to go.
6            Okay.  On the other hand, I think they should have to
7    take their chances and the Court, respectfully, should strongly
8    consider our summary judgment motion because the issue, to me,
9    is resolved through our papers, our presentation and our claim
10   charts.
11           THE COURT:  Thank you.
12           How many products are you developing currently that
13   might potentially infringe the patent, Mr. Hillyer?
14           MR. HILLYER:  Your Honor, I'm not aware of the full
15   research and development that's currently going on.
16           THE COURT:  More than one?
17           MR. HILLYER:  I'm sorry, Your Honor?
18           THE COURT:  More than one?
19           MR. HILLYER:  I don't currently know that answer,
20   Your Honor, I apologize.
21           THE COURT:  Does somebody know the answer?
22           MR. HILLYER:  May we ask our clients directly, Your
23   Honor?
24           THE COURT:  I need to know the answer.
25           MR. COLITZ:  Your Honor, if I may?

```
 1              THE COURT:  No, sir.
 2              (Brief pause.)
 3              MR. FERNANDEZ:  At this point, they're developing at
 4   least one product, Your Honor, and it's for use in multiple --
 5              THE COURT:  Well, I had already heard they were
 6   developing at least one.  Are there more?
 7              MR. FERNANDEZ:  It's for use in connection with
 8   multiple light fixtures, Your Honor.
 9              THE COURT:  So potentially, multiple light fixtures
10   would infringe the patent if the patent is valid?
11              MR. FERNANDEZ:  Well, we certainly wouldn't agree
12   that it infringes, but we would agree that counsel would
13   probably try and assert it against us.
14              THE COURT:  Yes, sir?
15              MR. COLITZ:  Your Honor, the patent isn't on the
16   light fixture, it's on the -- it's not a coupler, it's a
17   coupler that basically connects a lamp shade to --
18              THE COURT:  Well, the effect would be to take the
19   whole lamp apart and buy a new coupler system to put in there
20   to make it function.
21              MR. COLITZ:  It sounds to me like, Your Honor, what
22   we saw in the opposition to our motion for summary judgment is
23   correct.  There's one product under development.  The fact they
24   may put it on a different lamp shade has no relevance to the
25   patent.  There's one product under the --
```

1    THE COURT:  It has relevance to the person you claim
2  to be infringing because if you put the infringing coupler in
3  17,000 lamps, you're not going to be satisfied if they give you
4  a coupler back, you want them to stop making all the lamps that
5  have the infringing coupler in them.
6    MR. COLITZ:  We would be willing to stipulate that
7  the patent is just on the coupler and that we're not --
8    THE COURT:  But that's not my question.  You say it's
9  irrelevant how many light fixture are implicated by the device,
10  but it's quite relevant because if they intend to put this
11  thing that you might later claim is covered by your patent in
12  17,000 lamps, in the end of the day, if they refuse, you want
13  all the profits from all 17,000 lamps.
14    MR. COLITZ:  That's true, but in order for that to
15  happen, the one coupler that they're referring to would have to
16  be an infringement.  If the one coupler that's under
17  development is not an infringement, then none of those 17,000
18  lamps infringe.  So all we need to do is look at that one
19  coupler.
20    THE COURT:  But you've already seen it.
21    MR. COLITZ:  We've seen a picture of it for the first
22  time in the opposition to motion for summary Judgment.  If we
23  took a look at that physical coupler and give them a covenant
24  that --
25    THE COURT:  Have you moved to compel the production

1  of the coupler that is the source of the picture?

2       MR. COLITZ:  We saw it for the first time after

3  discovery was closed, Your Honor.

4       THE COURT:  Did you ask them to send it to you in a

5  letter?

6       MR. COLITZ:  No, Your Honor.  But we would willing to

7  look at it and include it in the covenant.

8       THE COURT:  Well, you already know you're willing to

9  include it in the covenant without even looking at it.

10       MR. COLITZ:  We would like to confirm our belief by

11  actually physically looking at the product.

12       THE COURT:  The belief that what?

13       MR. COLITZ:  That it's not infringing.

14       THE COURT:  Because no coupler could?

15       MR. COLITZ:  No, because it appears that it is not an

16  infringement.

17       THE COURT:  Why?

18       MR. COLITZ:  The patent is quite limited and requires

19  that the threads be tapered, that the threads on the coupler,

20  basically a bolt, that they be tapered segments.  And it does

21  not appear that they do that.  And that was the basis, frankly,

22  that we gave them the first covenant because they were -- they

23  had the two-piece extended coupler, did not have tapered

24  threaded segments, so we gave them a covenant.  And we'd be

25  happy to do that again with this -- again, it sounds to me like

1  it's one coupler.  They may try to say that it's 17,000 because
2  you can attach it to 17,000 different light fixtures, but
3  again, I think that's --
4          THE COURT:  Well, they're not saying that.  I asked
5  you what implication it would have and it would have the
6  implication for anything they might use it for.
7          MR. COLITZ:  Yes, Your Honor.
8          THE COURT:  Is a covenant that covers all non-tapered
9  couplers sufficient to moot the claim?
10          MR. FERNANDEZ:  It covers all non-tapered couplers
11  along with the current patent.  And we also received the
12  agreement not to sue from Hi-Lite that they suggested they
13  would provide.  We would certainly be pleased with that.
14          THE COURT:  So can you offer a non -- all non-tapered
15  coupler covenant including the covenant not to sue by Hi-Lite
16  that you offer?
17          MR. COLITZ:  Yes, we would be happy with that
18  covenant with respect to the 477 Patent, yes.
19          MR. FERNANDEZ:  Again, they've hedged and said it's
20  only with respect to the 477 Patent.
21          THE COURT:  That's the only one at issue in front of
22  this Court.  What other patent are you talking about?
23          MR. FERNANDEZ:  Well, Your Honor, the idea was that
24  they would extend a covenant that's sufficiently broad to cover
25  both tapered and untapered couplers, as I understood it.

1          THE COURT:  No, it would be all non-tapered couplers
2    'cause they're saying their patent covers -- their patent
3    covers tapered couplers, and looking at the picture that you
4    provided on summary judgment, it would not appear to them that
5    the patent would be infringed -- potentially infringed by it
6    because it's not a tapered coupler.
7          So then I said, well, if they say we'll accept a
8    covenant as to all non-tapered couplers and we will also offer
9    you a covenant not to sue by Hi-Lite so he couldn't just assert
10   it to Hi-Lite, would that be sufficient, and I thought you
11   said, yes.  And now I'm hearing you say we want one that covers
12   tapered and non-tapered couplers.
13         MR. FERNANDEZ:  I'm sorry, I misunderstood the
14   premise, Your Honor.  Let me please clarify.
15         THE COURT:  Okay.
16         MR. FERNANDEZ:  Their patent covers serially spaced
17   apart tapered threaded segments.  And our client has sold and
18   they may continue to sell actually tapered segments or
19   couplers.  They also sell other types of light fixtures that
20   use other types of couplers that are not tapered.  So to be --
21         THE COURT:  So you want tapered and non-tapered to be
22   covered by the covenant?
23         MR. FERNANDEZ:  Yes, Your Honor.
24         THE COURT:  And they're only offering tapered; is
25   that accurate?

1      MR. COLITZ:  I can only say what our patent --

2      THE COURT:  Yes or no, is that accurate, that you are

3   asking to preserve in violet tapered couplers?

4      MR. COLITZ:  That's what the patent is directed to.

5      THE COURT:  So yes?

6      MR. COLITZ:  Yes, Your Honor.

7      THE COURT:  Okay.  We'll have to litigate the

8   validity of the patent.

9      MR. COLITZ:  We'll include that, Your Honor, if that

10  would please the Court.

11     THE COURT:  It doesn't matter whether it would please

12  me or not please me 'cause I have no preference.  My preference

13  is to either litigate the patent or not litigate the patent if

14  you offer a covenant, but I don't think under the facts that

15  are presented I can force you to covenant.

16         You have to decide whether you're going to covenant

17  and then that would, if it's sufficiently broad, destroy the

18  Court's jurisdiction, and then I wouldn't have a choice in that

19  either.  I would have to relinquish jurisdiction if you

20  covenant it and moot it, the claim, though I'm not sure what

21  the implications would be for fees at this point, but certainly

22  for purposes of litigating the validity of the patent, which I

23  presume you're trying to preserve because other people could

24  potentially be making the same claims, but you can either do it

25  or not do it.  It's not based upon my pleasure.

1          MR. COLITZ:  We're willing to do it, Your Honor.

2          THE COURT:  All right.

3          So, I would need to see this covenant within seven

4   days of today's date and it needs to be satisfactory to Barn

5   Light Electric.

6          MR. COLITZ:  Yes, Your Honor.

7          (Brief pause.)

8          THE COURT:  So then let's go to the trade dress claim

9   by Barn Light Electric.

10          MR. COLITZ:  That would be Hi-Lite's claim, Your

11   Honor.  I'll be happy to address that.

12          THE COURT:  Yes, sir?

13          MR. COLITZ:  So what we think at trial the evidence

14   is going to show is that during the course of the relationship,

15   when Hi-Lite was selling product to Barn Light Electric, Barn

16   Light Electric was our distributor, they may dispute that, but

17   that's the way we viewed it, that while the parties were in

18   business with one another, Barn Light Electric made the

19   decision that they wanted to become a manufacturer and that

20   they actually wanted to manufacture products that --

21          THE COURT:  Tell me whether the lamps are protected

22   by trade dress.

23          MR. COLITZ:  Yes, they are.  There's 12 designs in

24   particular that Mr. Ohai himself designed that have been the

25   subject of hundreds of thousands of dollars of sales and

1    advertising that have been widely advertised and are readily

2    identifiable in the industry.

3              And the other thing that is important to this claim

4    --

5              THE COURT:  To the point that they have obtained

6    secondary meaning?

7              MR. COLITZ:  Yes, Your Honor.

8              THE COURT:  And what is the evidence of that other

9    than his supposition that they have and the money he spent

10   making it so?

11             MR. COLITZ:  We have evidence that -- we're going to

12   have testimony from one of Barn Light Electric's former

13   employees.

14             THE COURT:  What is the evidence on summary judgment

15   in the way of an affidavit or a document or some deposition

16   testimony?

17             MR. COLITZ:  We have deposition testimony.

18             THE COURT:  That you've offered in support of summary

19   judgment?

20             MR. COLITZ:  Yes, ma'am.

21             THE COURT:  Yes, sir?

22             MR. COLITZ:  And that evidence is that the former

23   employee by the name of Michael Schultz was hired to basically

24   reverse engineer these lighting fixtures, that his --

25             THE COURT:  Well, there's no question that they were

1    copied insofar as summary judgment is concerned.  So I think

2    that of the three elements, the direct identity or the -- what

3    is it, substantially similar or identical element, is probably

4    proven.

5              The secondary meaning, though, aside from the fact

6    that we copied it, because people copy things all the time that

7    are generic 'cause that's the nature of generic, so what is it

8    about his having copied it that makes it secondary meaning?

9              MR. COLITZ:  We provided case law in our motion for

10   summary judgment that suggests that the -- the fact that they

11   were copied is suggestive of secondary meaning.  They would not

12   have copied them if -- but for the fact that these were popular

13   fixtures that would be recognized in the industry.  The fact

14   that they --

15             THE COURT:  Evidence sufficient to overcome summary

16   judgment?

17             MR. COLITZ:  Yes, Your Honor.

18             THE COURT:  That if I like round black garbage cans

19   and I want to copy your round black garbage can, the fact that

20   no one could distinguish my can from your can, from anyone

21   else's can, is still evidence that my can is not only just an

22   identical copy of yours, but because I copied yours, yours has

23   secondary meaning?

24             MR. COLITZ:  It's not direct evidence, that's why the

25   Courts say it's probative evidence, it's suggestive.

| | |
|---|---|
| 1 | Obviously, in that case, it would not be probative of secondary |
| 2 | meaning 'cause that design would be generic and not subject to |
| 3 | trade dress protection.  But in this case, the fact that we've |
| 4 | got Mr. Ohai's testimony, coupled with the fact that they |
| 5 | deliberately set about to copy these fixtures and frankly hide |
| 6 | the fact that they were copying the fixtures from Hi-Lite, that |
| 7 | in totality is sufficient secondary meaning to survive summary |
| 8 | judgment in our opinion. |
| 9 | THE COURT:  Counsel? |
| 10 | MR. HILLYER:  Your Honor, we've made two primary |
| 11 | arguments in connection with the trade dress.  The first was |
| 12 | that, as the Court already indicated and I think it's well |
| 13 | understood, that for product designs as opposed to packaging, |
| 14 | secondary meaning is imperative, so says the Supreme Court |
| 15 | under the *Wal-Mart* decision. |
| 16 | And it's our position that secondary meaning could |
| 17 | never be achieved in connection with devices that are so |
| 18 | ubiquitous.  As to the copying argument, if I make a round |
| 19 | ball, other people make a round ball, that's a combination of |
| 20 | our first argument which is round balls are very well known, |
| 21 | that belongs to the public at large, and the second argument |
| 22 | we've made, which is functionality. |
| 23 | I'd like to try to use the ELMO real quick, if I may, |
| 24 | to demonstrate the two points.  You know, one of the narratives |
| 25 | that the Scotts tell is how they actually came about making |

1   these lights in the first place, and it was in part based on
2   the --
3           THE COURT:  That's very interesting for an Appellate
4   Court and a jury, but I just need to understand if -- let's use
5   your round ball analysis.  A ball is a ball is a ball, and you
6   don't need to go and get Hi-Lite's ball to copy and make a
7   round ball.  Tell me why it is that the fact that, in this
8   case, it is alleged that you hire an engineer to copy Hi-Lite's
9   round ball, so to speak, that that is not evidence that the
10  jury should consider in concluding that this was not just an
11  ordinary round ball, and that it had secondary meaning because,
12  otherwise, you could have gone back to a Gun Smoke film and
13  copied a barn light out of the film and made your own barn
14  light.
15          MR. HILLYER:  At the risk of sounding dismissive
16  because I'm not being, I don't think it matters because until
17  you have a right to protect, then there's no violation for
18  copying.  So, one of things we attempted to do, through
19  visuals, was point out that these designs, and I think we came
20  pretty close in finding designs that have been around literally
21  for hundreds of years that matched the designs exactly, whether
22  or not we brought in an engineer to fashion certain designs, I
23  think, is quite beside the point if there's no protection, then
24  it's really of no moment.
25          Now they may have an issue with that from a

competitive standpoint, it doesn't mean it's a trade dress

violation because unless and until you can find secondary

meaning, there's no right to protect.  So not only do we have

the examples in the literature, and all Your Honor has to do is

do a search for antique RLM lighting and you'll see hundreds of

pages of these fixtures going back --

      THE COURT:  What would they have to show you to

establish or show the jury to establish some evidence of a

secondary meaning or that these were readily identifiable as

Hi-Lite lights versus just barn lights of a type?

      MR. HILLYER:  That the public makes an association

between the goods and their source.  See, part of the problem

that they're having in establishing secondary meaning is that

the lights are so prevalent in the industry that no one can say

that's a Hi-Lite feature, that's a Barn Light Electric light,

know it when I see it.

      In fact, one of the deposition pieces of testimony

that we provided was a distributor for Hi-Lite.  If anybody

knew those light fixtures, it was going to be this

representative from C-A-L, Cal Lighting.

      We showed him pictures in the deposition.  We weren't

trying to play hide the ball.  We showed him a picture and we

said, you're a Hi-Lite distributor, he said, yeah, we said, can

you tell us whose fixture that is, he said, no, I can't.  And

we asked him why.  He said because there's so many of them and

1    they all contain the same features.

2             And it's not that difficult to believe when the

3    features are a dome shape, a radial wave, I mean, honestly,

4    these -- we have the catalogs, and if we get that far, we'll

5    endeavor to present them at trial.

6             This is where Bryan Scott learned how to make these

7    from these old catalogs.  Now, it may very well be that decades

8    later, Hi-Lite made some versions, too, but to come in later

9    and say that we copied them from Hi-Lite just because they're

10   making them like hundreds of other manufacturers, I think is a

11   bridge too far.

12            THE COURT:  Well, but you did copy them.  The

13   question is, was copying of a device that had secondary meaning

14   in the market, not whether it was copied, but whether it was

15   of, as you say, something that was protectable, and they say

16   it's protectable because we are in magazines, people actually

17   buy our product and we've spent hundreds of thousands if not

18   millions of dollars developing our products.  And you say that

19   doesn't matter because no matter how much you've spent, you

20   still got a round ball.

21            MR. HILLYER:  That's right.  And that's why I think

22   the strongest evidence of a lack of secondary meaning takes two

23   forms; the prior existence of the very designs they're claiming

24   rights in and the failure of them to be able to point to

25   anything that designates the consumer association with the

1  source.

2        Your Honor, that is the touchstone of secondary

3  meaning.  In fact, I think it's the very definition of

4  secondary meaning.  And so not only have they presented no

5  evidence of that, but we've presented compelling evidence that

6  quite the opposite is true, that they're so ubiquitous that no

7  one could ever attach it.  Nobody is going to be able to look

8  at a round soccer ball and say, oh, that's from this company.

9  So that sort of gets to the point.

10        You know, they have no survey evidence.  You asked me

11  what kind of examples they might give to meet that standard.

12  There's no survey.  And ironically, Your Honor, one of the

13  problems they're having is that Hi-Lite has refused to provide

14  their financials in discovery.  And so they can't rely on their

15  sales because they won't give them to us.

16        So even though they can stand here and say they've

17  made millions of dollars, well, we don't have the documents to

18  prove that.  And it's because they want to avoid giving them to

19  us so we can make a profit assessment, and now they want to

20  say, well, we want to rely on our financials.  That doesn't

21  work.

22        So, that's the gravamen of the first argument is that

23  there's no secondary meaning.  And I know Your Honor has seen

24  the second argument before because I think I've written it

25  twice now.  I know I've written it at least once, and that has

1  to do with the Functionality Doctrine.  And so, maybe the round
2  ball is, if we can extend that metaphor a little further, I
3  have to be able to make a round ball 'cause any other shape
4  doesn't work as a ball.  A square ball is not going to work.
5  And an octagonal ball is not going to work as well.  So you
6  can't, under the auspices of trade dress, preclude people from
7  making functional features.
8          I know Your Honor has had trade dress cases before
9  you before, I know that you know this better than I do, but I
10 think to suggest that there's no functionality associated with
11 these features ignores, you know, the very sort of function of
12 the lights in the first place.
13         You know, I went -- I had Hi-Lite's corporate
14 representative at deposition.  And I plopped down this picture
15 in front of him and I asked him to circle the trade dress
16 elements which I read out of the complaint.  And he did that
17 and he circled every element.  That's the picture on the right.
18         Then I went through and I said, okay.  I pointed to
19 each and I said, what's the function.  And he was very easily
20 able to assign a function, as I'm sure the Court could, just by
21 looking at it.  You don't need to be an engineer to know that
22 the shape of the shade has to do with the reflection of light,
23 that it's narrowed because it has to hold the socket, that the
24 arm up top is bowed in that way because it holds it from the
25 top, that there's a support bar, and then there's a point that

```
 1   affixes it to the wall.
 2           And indeed, I did my level best within the page
 3   limitations to invite the Court to do that same analysis with
 4   the rest of them.  And, in fact, aside from those that have
 5   shapes of a shade, you know, all these variances on this
 6   so-called --
 7           THE COURT:  Well, is the test of functionality or
 8   primary functionality a test of whether this particular design
 9   feature is functional or whether this particular design feature
10   is non-functional?
11           MR. HILLYER:  I believe the test is that the trade
12   dress must be directed to the non-functional elements.
13           THE COURT:  So is it the element that couldn't
14   function any other way or is it the element that happens to
15   function in this way because, as we know, we can probably look
16   in this room and see 17 lights that all are functional, but are
17   designed differently?
18           And if, for example, you contract Chihuly to make you
19   a light fixture, that light fixture would have very discreet
20   design elements that would have functional value and purpose,
21   but would nonetheless be not necessary and still be potentially
22   protected, I would imagine.
23           MR. HILLYER:  Your point is well taken.  You can
24   certainly serve a function in multiple way.  And perhaps
25   there's room for design in those multiple ways.  The problem is
```

1    that when you start getting into the design of the product as
2    opposed to a package, which allows for, you know, sort of
3    artistic --
4              THE COURT:  So is the Chihuly lamp whose glass dome
5    of varying shapes and crazy design that causes the light to
6    shine down rather than disperses the light, a non-protectable
7    design because it serves the function or is it still protected?
8              MR. HILLYER:  No, Your Honor, I think it's protected,
9    but I do think it is interesting that you went to one of the
10   most recognizable, one of the most artistic, in fact, world
11   renown types of designs to exemplify the point.
12             You would not go to a lamp that you pulled from Home
13   Depot to say, look at the artistic endeavor.  In fact, it's the
14   lack of the ability, at least from Plaintiff's perspective, to
15   find any of the sort of design expression that one could
16   identify.  I mean, the first time we saw this trade dress
17   claim, we filed a motion and said, you haven't identified the
18   elements.  And they came back and they filed a new complaint
19   that had elements in it --
20             THE COURT:  I've been here the whole time.
21             MR. HILLYER:  No, I know, but the reason I'm raising
22   it is this, Your Honor.  Just because you're able to go to a
23   ball and describe it as an elaborate curvature that covers the
24   circumferential surface of a sporting device, it doesn't make
25   it a design.  And indeed, all it was was a recitation of every

1  element in there, all of which we have shown to serve a
2  function.
3          So, in closing, there's simply no room for protection
4  based on lights that are so prevalent they almost define
5  function.  I mean, taking a bowl light and hanging it from a
6  string, I think that has been done, Your Honor, and I think it
7  keeps being done because we need to be able to have the freedom
8  to make lights of that type and not be encumbered by trade
9  dress, and that's why product designs are particularly
10 problematic and entitled only to very narrow protection.
11         THE COURT:  All right.
12         MR. HILLYER:  Thank you.
13         THE COURT:  Anything else from the --
14         MR. COLITZ:  Yes, Your Honor, just briefly.
15         Just first to note that the designs actually that
16 were put up here on the ELMO were not really the designs at
17 issue.  The designs that we're talking about are -- here we
18 have a Hi-Lite design, here we have --
19         THE COURT:  Use the microphone.
20         MR. COLITZ:  I'm sorry.
21         Here we have the Hi-Lite design.
22         THE COURT:  Here, where?
23         MR. COLITZ:  Right here.
24         THE COURT:  Here on what, for the record?
25         MR. COLITZ:  On the left side of the page.  This is

1   from page 10 to our opposition to their motion for summary

2   judgment.  And likewise, here on page 10, left side, is the

3   Hi-Lite fixture, right side is the Barn Light Electric fixture,

4   so the fixtures that they were pointing to were actually things

5   that were not our designs.

6            And I would just want to -- I noted to the Court that

7   proof of intentional copying is probative evidence on the

8   secondary meaning issue.  That's *Brooks Shoe versus Suave Shoe*,

9   716 F2d., 854, it's an Eleventh Circuit case.

10           Also in our opposition, we've got a Seventh Circuit

11  case -- I'm sorry, a Second Circuit case, *Laureyssens versus*

12  *Idea Group*, 964 F2d., 131.  A producer's trade dress is

13  protected without proof of secondary meaning against practices

14  imbued with an odor of bad faith.  These practices include

15  palming off actual deception, appropriation of another's

16  property or deliberate copying.  This is not an instance where

17  these are two separate companies on opposite sides of the

18  country --

19           THE COURT:  So are you saying that you can eliminate

20  the requirement to prove secondary meaning if someone

21  deliberately copies your product?

22           MR. COLITZ:  I am saying that the Eleventh Circuit

23  has certainly said that that is probative of secondary meaning

24  and other circuits have said it eliminates the need for

25  secondary meaning.

| | |
|---|---|
| 1 | THE COURT:  Has the Eleventh Circuit spoken to that |
| 2 | question? |
| 3 | MR. COLITZ:  The Eleventh Circuit has not said it |
| 4 | totally does away with -- |
| 5 | THE COURT:  Has the Eleventh Circuit spoken to the |
| 6 | question? |
| 7 | MR. COLITZ:  All the Eleventh Circuit has said is |
| 8 | proof of intentional copying is probative, it's probative |
| 9 | evidence. |
| 10 | THE COURT:  So has the Eleventh Circuit said you can |
| 11 | eliminate secondary meaning? |
| 12 | MR. COLITZ:  No, no, Your Honor. |
| 13 | THE COURT:  Has it said that you cannot? |
| 14 | MR. COLITZ:  No, it just says it's probative.  And |
| 15 | so, I would just remind the Court that the allegations here are |
| 16 | pretty egregious, that while they were a distributor, they were |
| 17 | secretly -- they hired an employee by the name of Michael |
| 18 | Schultz.  And when he was employed, they said, here's the list |
| 19 | of Hi-Lite products that we want you to reverse engineer, and |
| 20 | they were the best selling products.  And he -- |
| 21 | THE COURT:  And can you point me to whether all of |
| 22 | the products that you claim he reversed engineered are design |
| 23 | quality versus -- some of them being design quality and some of |
| 24 | them being merely functional? |
| 25 | MR. COLITZ:  On that point, Your Honor, we admit that |

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1  certain elements of the lighting fixture are functional.

2          THE COURT:  That's not my question.  So the light

3  that you have from this document, the Hi-Lite versus Barn Light

4  Electric, the cage around the top of the tube, I assume you

5  would say is non-functional?

6          MR. COLITZ:  Yes, Your Honor.

7          THE COURT:  That is purely a design element?

8          MR. COLITZ:  Yes, Your Honor.

9          THE COURT:  And that to the extent that they copied

10  this, that that is actionable?

11          MR. COLITZ:  Yes, Your Honor.

12          THE COURT:  I assume you would agree that some of the

13  lamps he copied have a dome?

14          MR. COLITZ:  Yes, Your Honor.

15          THE COURT:  And a dome has a function and that is to

16  send the light in a particular direction?

17          MR. COLITZ:  Yes, Your Honor.

18          THE COURT:  And to the extent that they copied a

19  standard dome-looking light, are they subject to liability for

20  a copying of a standard dome-looking light?

21          MR. COLITZ:  To be clear, Your Honor, I think the

22  evidence shows that they copied a whole range of our products.

23  Of the range that they copied, we selected 12.  So it's not

24  like we're saying all of our products are the subject of a

25  trade dress claim, we limited it to just those products that we

 1   thought had a sort of artistic quality to them.

 2            And on the point of functionality that I wanted to

 3   make was just that they may be able to pick apart and say

 4   individual elements are functional.  We don't disagree with

 5   that.  But the relevant test, and that's the *Ambrit v Kraft*

 6   case, is that even though individual features may be

 7   functional, if the overall design, if the overall impression is

 8   non-functional, then that supports trade dress.  So in here --

 9            THE COURT:  One could argue that a lamp that doesn't

10   have a globe or a dome has a different functionality, and that

11   is, it disperses light both upward and down, and that the

12   function of that is to more broadly disperse the light if you

13   remove the dome from the cage.

14            MR. COLITZ:  Uh-huh.  (Indicating affirmatively.)

15            THE COURT:  And so all of it, even the one you

16   present as an exemplar, is all function and no design.

17            MR. COLITZ:  Yeah, but the question is, is that the

18   only way it could look to achieve that function, meaning if you

19   wanted the light to point up and down, there's a number of

20   different ways you could arrange a light fixture to do that.

21            THE COURT:  Well, that's not the legal question.  The

22   legal question is that is it primarily functional, not whether

23   all designs could be made a different way, and if there's any

24   different way you can make it, then ours necessarily is

25   non-functional.

1    MR. COLITZ:  But I think that is the test, Your

2  Honor, that if there's a variety of different ways to achieve

3  the same function, and they happen to arrive at the very way we

4  do it, that that would be an indication that's it's, in fact,

5  non-functional because there's a variety --

6    THE COURT:  And then you're back to the original

7  question, 'cause I think there may be a factual dispute on

8  functionality.  I don't think there's any real dispute about

9  copying based upon the evidence that's in this record.  But I

10  think the question is would I know a Hi-Lite light from any

11  other light and what evidence is there that Hi-Lite has offered

12  to defeat summary judgment on that question other than to go

13  back to rely on the first element which is copying.

14    And when I have asked you that now three times, your

15  answer has been, but copying, but copying, but copying, and if

16  I find that copying is not enough, under Eleventh Circuit Law,

17  to eliminate the need to prove secondary meaning, and then

18  we're left with no evidence of secondary meaning other than the

19  first element, which is copying, in which case you conflate the

20  two elements.

21    MR. COLITZ:  I would say two things to that, Your

22  Honor.  We do have Mr. Ohai's testimony about the extent to

23  which it's been distributed and used.  We do have the evidence

24  of copying.  And then we also have plenty of evidence of

25  customers who came to Barn Light Electric and said, we want

```
 1    this product, you know, we want this light fixture.  And it was
 2    on their website as a Hi-Lite light fixture and we want this
 3    light fixture.
 4              THE COURT:  That doesn't mean they know it's a
 5    Hi-Lite light fixture, they just know it's a pretty light
 6    fixture.
 7              MR. COLITZ:  Well, they do know it's a Hi-Lite light
 8    fixture when it's a picture of a Hi-Lite product with the
 9    Hi-Lite designation on the website.  And then the customers
10    order that and, in fact, get something else.  They get the Barn
11    Light --
12              THE COURT:  That's another question.  So the
13    principal evidence you have on the question of secondary
14    meaning is copying?
15              MR. COLITZ:  Yes, I would say that's our principal
16    evidence.
17              THE COURT:  All right.
18              (Brief pause.)
19              What's the Eleventh Circuit case that you refer to on
20    some copying, I mean, copying as some evidence?
21              MR. COLITZ:  Yes, ma'am, just give me a moment.  I
22    had it up and --
23              (Brief pause.)
24              Here it is, Your Honor, I apologize for the delay.
25    *Brooks Shoe versus Suave Shoe Corporation*, that's at 716 F2d,
```

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

| | |
|---|---|
| 1 | 854.  It's an Eleventh Circuit case from 1983.  And if Your |
| 2 | Honor is interested in the Second Circuit case, I can give you |
| 3 | that as well. |
| 4 | THE COURT:  716 Federal 2d, 854? |
| 5 | MR. COLITZ:  Yes, ma'am. |
| 6 | THE COURT:  That's fine.  You would agree without the |
| 7 | secondary meaning element, the claim would fail? |
| 8 | MR. COLITZ:  We do require secondary meaning. |
| 9 | THE COURT:  And that means that the trade dress |
| 10 | infringement and the vicarious trade dress infringement and the |
| 11 | contributory trade dress infringement would all fail? |
| 12 | MR. COLITZ:  Yes.  But one point on that, Your Honor. |
| 13 | It's not that people have to look at these lighting fixtures |
| 14 | and say it comes from Hi-Lite, they have to look at those |
| 15 | lighting fixtures and say, wait, it comes from a source.  They |
| 16 | don't necessarily have to know the source, it just comes from a |
| 17 | single source. |
| 18 | THE COURT:  Right. |
| 19 | Let me hear from you on the reverse passing off claim |
| 20 | which is sort of embodied in the unfair competition claim. |
| 21 | MR. COLITZ:  Yes, Your Honor.  And I think we've |
| 22 | actually moved on that as a false advertising claim under |
| 23 | Lanham, the related claims both under 43(a) under the Lanham |
| 24 | Act, and whether it's unfair competition or false advertising. |
| 25 | Our allegation is essentially this. |

|  |  |
|---|---|
| 1 | So, the relationship between Hi-Lite and Barn Light |
| 2 | Electric started in -- |
| 3 | THE COURT:  Hold on one second.  You have that case |
| 4 | with you, the Eleventh Circuit case? |
| 5 | MR. COLITZ:  I do not, Your Honor. |
| 6 | THE COURT:  'Cause my trusty Law Clerk tells me that |
| 7 | that case says intentional copying alone is not enough and -- |
| 8 | MR. COLITZ:  I believe the quote is that it's |
| 9 | probative, however. |
| 10 | THE COURT:  All right. |
| 11 | MR. COLITZ:  So, our case on false advertising is |
| 12 | essentially that during the course of the relationship when |
| 13 | Barn Light Electric was our distributor, that Hi-Lite began to |
| 14 | notice that the sale of one of its most popular products, a |
| 15 | product we call the H15116, it's a particular light fixture, |
| 16 | sales of that product, through Barn Light Electric, were |
| 17 | decreasing, and that gave us some suspicion as to something |
| 18 | fishy may be going on. |
| 19 | So what we did or what the client did, what Hi-Lite |
| 20 | did, was arrange to have a gentleman up in Ohio by the name of |
| 21 | William Sanders visit the Barn Light Electric site with the |
| 22 | intention of buying a Hi-Lite light fixture, with the intent of |
| 23 | buying an H15116.  And he did that.  His testimony will be I |
| 24 | went to the -- |
| 25 | THE COURT:  I understand what he did, and he bought |

| | |
|---|---|
| 1 | it and he got it and the thing that they have on the website as |
| 2 | the light is not the thing they were sending to customers. |
| 3 | MR. COLITZ: Yes, Your Honor. And we have testimony |
| 4 | from one of Barn Light Electric's former employees, actually |
| 5 | one of their first employees, a gentleman by the name of Trey |
| 6 | Solms, and Mr. Solms is going to testify that that was no |
| 7 | isolated incident, that that was part of a pattern and practice |
| 8 | of Barn Light Electric. |
| 9 | THE COURT: With respect to that fixture? |
| 10 | MR. COLITZ: With respect to all Hi-Lite fixtures. |
| 11 | His testimony is up to 50 percent of all orders for Hi-Lite |
| 12 | products were being fulfilled with Barn Light Electric |
| 13 | manufactured products. |
| 14 | And his testimony is that they knew what they were |
| 15 | doing was wrong and they took steps to hide it. If they were |
| 16 | fulfilling an order for a light fixture that was going to be |
| 17 | shipped out to California where Hi-Lite is located, they would |
| 18 | fulfill that with a genuine Hi-Lite product because there was a |
| 19 | chance that Hi-Lite might find out about that. |
| 20 | If they were fulfilling an order for somebody who had |
| 21 | purchased before and previously received a genuine Hi-Lite |
| 22 | product, they would fulfill that with a genuine Hi-Lite |
| 23 | product. But other times, if they thought they could get away |
| 24 | with it, they fulfilled the order with their own manufactured |
| 25 | products. |

1          THE COURT:  It's almost as though your argument falls
2     on its own sword because if a customer wants a Hi-Lite product
3     because either they've had a Hi-Lite product or they're
4     sophisticated enough to know whether they are getting a Hi-Lite
5     product, then the fact of it being a Hi-Lite product influences
6     that customer's buying decision.  But if Mary Scriven wants a
7     lamp that looks like that, and I really don't know what is a
8     Hi-Lite product or a low light product, I just like that lamp,
9     I order it, I get what I get and I am not influenced in my
10    decision in getting that by anything Barn Light has done, I
11    just like the light, and the fact that it is an H1222 is
12    irrelevant to my buying decision, and it doesn't influence my
13    buying decision in the least.
14          MR. COLITZ:  Well, I think in our false advertising
15    claim, that we've put forth case law that basically says it's
16    almost a strict liability offense.  It does not matter whether
17    people are fooled if this advertisement is factually wrong.
18    And it is factually wrong if they are saying this is a H15116
19    and here's a picture of the Hi-Lite product, and using those
20    materials to sell something that is not a genuine Hi-Lite
21    product, that's false advertising.  And whether or not
22    somebody, you know, may have been confused, it's a strict
23    liability offense.
24          Now -- and that's how sort of the false advertising
25    differs from the passing off or the unfair competition claim.

| | |
|---|---|
| 1 | But again, we've only moved on the false advertising claim. |
| 2 | THE COURT:  You have not moved on the unfair |
| 3 | competition claim? |
| 4 | MR. COLITZ:  Well, competition is sort of the broad |
| 5 | umbrella, but we've moved for false advertising which falls |
| 6 | under unfair competition. |
| 7 | And the purpose of -- |
| 8 | THE COURT:  Under the Lanham Act? |
| 9 | MR. COLITZ:  Yes, ma'am.  It's 43(a)1(b) under the |
| 10 | Lanham Act. |
| 11 | THE COURT:  And as it relates to the photograph in |
| 12 | the advertisement, you would or wouldn't agree that the |
| 13 | photograph is not protected under the Lanham Act? |
| 14 | MR. COLITZ:  No, the photograph is not protected |
| 15 | under the Lanham Act. |
| 16 | THE COURT:  It is the good itself that has been |
| 17 | submitted, the Barn Light good having been sent after having |
| 18 | been advertised as a Hi-Lite product? |
| 19 | MR. COLITZ:  Correct.  And I would also point out, |
| 20 | Your Honor, that one of the other purposes of false advertising |
| 21 | is to protect not just the consumer but the competitor or the |
| 22 | other party to the transaction here.  So every time this |
| 23 | occurred, and again, this was occurring while they were |
| 24 | supposed to be our distributor, when this occurred, we were |
| 25 | supposed to be getting that sale, right. |

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1          We gave them our pictures and let them use depictions

2     of our products and let them use our product codes so that we

3     could make a sale.  So every time that they fulfilled an order

4     for a Hi-Lite product with their own product, that took a

5     dollar out of our pocket.  That's not fair.  That's not --

6     that's actionable as false advertizing under the Lanham Act.

7          THE COURT:  How do we know that that took a dollar

8     out of your pocket?

9          MR. COLITZ:  Because we should have been the one

10    fulfilling it.  If they were fulfiling the orders for the

11    H15116 with a genuine Hi-Lite product, we would then have sold

12    that to Barn Light Electric and made some money on that

13    transaction.  So they were essentially depriving Hi-Lite of

14    sales.

15         THE COURT:  Counsel?

16         MR. FERNANDEZ:  Your Honor, there was limited

17    instances where Hi-Lite was unable to produce any or

18    manufacture the products that were necessary to fulfill orders

19    from Barn Light Electric.  And Dorothy Ohai, the president of

20    Hi-Lite, testified as much.

21         In those instances, which were very limited, there

22    was a call placed to the consumer saying, you've ordered this

23    light, we don't have it in, we're not going to get it for a

24    period of time, can we substitute another light.  And they

25    would show the consumer that light, and if the consumer agreed,

1  they would be sent the light.

2        At all times, there was never an understanding that

3  it was coming from a particular source or that the product

4  itself was anything other than what was shown on the website.

5        So, bottom line is, there's no falsehood here if the

6  consumers were told you're going to receive something else and

7  is it okay if you receive this.  In addition, it's also not

8  taking a dollar out of their pocket in that they weren't able

9  to fulfill the order to begin with.

10        THE COURT:  And so you disagree with the evidence

11  that this happened 50 percent of the time which they claim

12  they'll be able to demonstrate at trial?

13        MR. FERNANDEZ:  We strenuously disagree with that.

14  It's ludicrous and the financials show as much and the --

15        THE COURT:  Your financials?

16        MR. FERNANDEZ:  Yes, Your Honor.  And we absolutely

17  believe that we're going to be able to establish that at trial.

18        THE COURT:  And this claim, Counsel, goes only to the

19  period of time when Barn Light Electric was a distributor, as

20  alleged, of Hi-Lite's.

21        MR. COLITZ:  Yes, Your Honor.

22        THE COURT:  Not for any time after the claimed

23  distributorship was terminated?

24        MR. COLITZ:  That's correct, Your Honor.  Yes, Your

25  Honor.

1          THE COURT:  Who is this employee?

2          MR. COLITZ:  A gentleman by the name of Trey Solms or

3  Walter Solms I think is his correct name.

4          THE COURT:  Use your microphone.  You can stand up,

5  you just have to speak in front of it.

6          MR. COLITZ:  Yes.  Walter Solms or Trey Solms, and

7  his testimony, essentially, is that it was occurring up to

8  50 percent of all Hi-Lite orders and that they were actually

9  limiting it to that number because they didn't want to tip off

10  Hi-Lite.

11          THE COURT:  And have you produced these documents

12  that you say triggered your concern that your sales were

13  declining of your product through Barn Light Electric?

14          MR. COLITZ:  We've got testimony --

15          THE COURT:  Yes or no?

16          MR. COLITZ:  No, we don't -- I don't think we have

17  evidence that the sales were decreasing.  We have testimony to

18  that effect.  But we do have all of the documents that are

19  actually in our second amended complaint of the transaction

20  that took place by Mr. William Sanders who --

21          THE COURT:  Why do you think you don't have to

22  produce the sales information that you say is the triggering

23  event for your detection of this behavior that you allege was

24  occurring 50 percent of the time?

25          MR. COLITZ:  We don't think it's directly relevant,

1    we --

2            THE COURT:  Well, you said it three times in your

3    briefs and you just said it in oral argument.

4            MR. COLITZ:  I don't believe we've produced that, but

5    we'll look.

6            THE COURT:  Well, that's part of the motion to compel

7    that Judge Porcelli denied, your financial data, at least to

8    that degree.

9            MR. COLITZ:  Yes, Your Honor.

10            THE COURT:  If the claim survives, that will have to

11    be produced because you can't argue that the triggering event

12    for your belief that Barn Light was bootlegging your product is

13    the decline -- precipitous decline in your revenue stream as it

14    relates to sales and then not produce the documents related to

15    those sales as a percentage of your profit on that type of

16    product, not just we looked at their orders and they weren't

17    ordering as much, but we noticed that we were losing X

18    percentage in sales and decided it must be a Barn Light issue.

19            MR. COLITZ:  To that point, Your Honor, that is not

20    one of the elements cause of action, but also, we're not

21    alleging -- Hi-Lite is not alleging damages.  Hi-Lite has

22    agreed to forego --

23            THE COURT:  You can't limit the discovery of relevant

24    evidence by declining to seek money for that element if it's

25    still part of the narrative because your narrative may be false

1  which might undermine your assertion.

2          If it turns out that that is not even true, that

3  there was no precipitous drop in your revenue, in fact, and you

4  just suspected that, and then this other person is going to say

5  it happened 50 percent of the time, and Barn Light E is going

6  to say it didn't happen 50 percent of time, and it turns out

7  your revenues didn't shrink, then that would be some indication

8  that what this person is saying isn't true, and what you're

9  saying was the trigger isn't true, and that it had more to do

10  with personality than money, and the jury is free to do what it

11  wants to do with that.  But this notion of hiding behind

12  confidentiality while arguing about confidential things is not

13  consistent.  But I hear what you're saying.

14          Anything else from the -- from Barn Light Electric?

15          MR. FERNANDEZ:  Not on the false advertising claim,

16  Your Honor.

17          THE COURT:  And so the Lanham Act claim is -- this

18  reverse passing off is not at issue on the motions, but it's

19  going to arise at some later point, this notion that these

20  photographs aren't protected by the Lanham Act, 'cause now

21  you're saying you're not claiming that they are, you're just

22  claiming that the goods that were sold are protected by the

23  Lanham Act; is that true?

24          MR. COLITZ:  That's correct, Your Honor.

25          THE COURT:  So you concede that to the extent that

1   any claim is argued to flow from the Lanham Act based upon

2   photographs; you're not making any such claim?

3              MR. COLITZ:  Only to the extent that a consumer

4   looking at -- the fact that the photograph was on the website

5   in conjunction with our product identifiers led people to

6   believe that they were going to get the genuine Hi-Lite product

7   when they didn't.  That's the essence of our claim.

8              THE COURT:  And so you believe that extinguishes any

9   argument you need to make about the Lanham Act and under

10  *Daystar* and doesn't cover photographs?

11             MR. FERNANDEZ:  Well, I believe that that's exactly

12  the fact scenario under *Daystar*, where there's an attempt to

13  use a copyright or an image --

14             THE COURT:  But I know what the facts were, but my

15  question is if he's not suing you for using an image, he's

16  suing you for sending out the product as a passed off product

17  of Hi-Lite's, and if no product went anywhere, it doesn't

18  matter that you had a thousand photographs on the website.

19             MR. FERNANDEZ:  Your Honor, the counterclaims don't

20  indicate that they're suing us for sending out the product

21  alone --

22             THE COURT:  That's what he's telling me now, that

23  he's suing you for sending out the product and that you passed

24  off your product as theirs, and if they can establish that,

25  then they will prevail because you told the customers you were

1    sending them A and here's a picture of A, the customer got B,

2    and the customer was thereby falsely induced to buy B.

3          MR. FERNANDEZ:  If we remove the photograph from the

4    equation, I don't understand how they can make any sort of

5    claim.  Essentially, they're saying that nothing was showed to

6    the consumer, and they were still confused by what they

7    received, even though they received a call.

8          THE COURT:  Well, no more than if you have a Gucci

9    bag in your raincoat, and you say, here's what I'm selling,

10    I'll send you one in the mail, the person looks at that,

11    examines it, determines that's the thing they want, and then

12    you send them the fake bag; that's a passing off of a good as

13    the good of another because you have to have some image of the

14    thing to sell.  And so they're not suing you as I initially

15    thought from your motion for using the photograph, they're

16    suing you for selling the good.

17          MR. FERNANDEZ:  The distinction there, Your Honor, is

18    that under the Gucci analogy, there's actually a trademark and

19    a protectable interest in that mark.  But in the analogy

20    that -- or in the current fact scenario, there is no Gucci,

21    there is no identification of a product by a source, there is

22    no passing off.  It's you're going to receive a lamp, a light

23    fixture, that you ordered, and if you're not, then we'll call

24    you up and say, can you take this other light fixture, can you

25    accept this other light fixture in its stead.  Either way, it's

```
 1    not a false advertising claim.
 2              THE COURT:  All right.
 3              MR. FERNANDEZ:  And may I, Your Honor, just add one
 4    more point?  The whole purpose of *Daystar* is to preclude
 5    exactly this type of claim where they don't have a trademark
 6    interest and they try and shoehorn it into a copyright claim as
 7    they have done.
 8              Thank you, Your Honor.
 9              (Brief pause.)
10              THE COURT:  Is there any customer who's going to make
11    this allegation that the customer was misled by the photographs
12    other than the customer you sent to make the purchase?
13              MR. COLITZ:  No, Your Honor.
14              THE COURT:  And that customer wasn't misled because
15    that customer was sent to make a specific purpose of a specific
16    item, so it didn't matter what it looked like, he was told to
17    go buy a HI -- whatever it is.
18              MR. COLITZ:  H15116.  He will testify that he thought
19    he was going to get a genuine Hi-Lite product, that he
20    identified --
21              THE COURT:  He didn't care, he was sent by you to go
22    get whatever you told him to get.  And he didn't even open the
23    box.
24              MR. COLITZ:  Correct.
25              THE COURT: So he didn't know what he was getting, he
```

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1      didn't care what he got and he didn't even see it.

2             MR. COLITZ:  Well, I think he subsequently learned

3      after we opened the box in California or Hi-Lite opened the box

4      in California and showed him what it was.

5             THE COURT:  He was just a pigeon, though, he didn't

6      care.  You sent him to go do something for you and he did that

7      and he didn't care what was in the box.

8             MR. COLITZ:  Correct.

9             THE COURT:  All right.

10            And now on that point, since we're there, did he look

11     at what was in the box before you did?

12            MR. COLITZ:  I don't believe Mr. Sanders opened the

13     box.

14            THE COURT:  Did he photograph the picture?  Did he

15     take the picture?

16            MR. COLITZ:  He took the pictures of the outside of

17     the box and then we took the pictures of what's in the box.

18            THE COURT:  Well, what's in the box is what we're

19     trying to be concerned about.  He didn't take the pictures of

20     what was in the box?

21            MR. COLITZ:  No, ma'am.

22            THE COURT:  And so he's not going to be asked to

23     authenticate those photographs?

24            MR. COLITZ:  No, we have David McAdam who is going to

25     authenticate --

1          THE COURT:  So to the extent there's a motion in

2   limine to preclude him from authenticating the photographs is

3   moot because he's not going to do that?

4          MR. COLITZ:  Not of the picture of the lighting

5   fixtures themselves.  We have somebody else to do that.

6          THE COURT:  He's going to authenticate the

7   photographs of the outside of the box?

8          MR. COLITZ:  Yes, ma'am.

9          THE COURT:  Any objection to him doing that?

10          MR. FERNANDEZ:  No, Your Honor.

11          THE COURT:  All right.

12          So that motion in limine is denied as moot.

13          The issue of whether a non-exclusive license was

14   issued to Barn Light Electric to use Hi-Lite's catalogs has

15   been discovered because there's been summary judgment evidence

16   about that fact.  But as I understand Hi-Lite, it does not want

17   Barn Light to now be able to argue that it had such a license

18   because it didn't preserve that in its original answer to the

19   counterclaim.

20          MR. COLITZ:  Yes, Your Honor.

21          THE COURT:  To the main claim.

22          MR. COLITZ:  Yes, Your Honor.

23          THE COURT:  What is the prejudice to conforming the

24   pleadings to the evidence on that point?

25          MR. COLITZ:  It's just that it did take us by

1    surprise to this extent, Your Honor.  Clearly, while the

2    parties were in the relationship and they were our distributor,

3    we would acknowledge that they had an implied license to use

4    our photographs to sell Hi-Lite products.

5              THE COURT:  And it was non-exclusive?

6              MR. COLITZ:  Non-exclusive, that's without question.

7    But what did catch us off guard was in their summary judgment

8    briefing to then argue that that is a fully paid up totally

9    irrevocable license all the way into the future.  That was a

10   novel concept to when we received it in the summary judgment

11   briefings.  And they actually alerted us to it because they, in

12   their summary judgment briefings, said that was an affirmative

13   defense.  We then looked back at their affirmative defenses

14   and, in fact, I don't think there were any affirmative defenses

15   in relation to our copyright claim.

16             THE COURT:  Well, that's the premise of my question.

17   There was no such affirmative defense.  They say you fully

18   discovered it.  Now you say it was revoked when you terminated

19   this unwritten agreement.  And they accepted the revocation,

20   although curiously, you are suing them for breaching the

21   acceptance that you say they made.  And so, the license to the

22   extent that it existed has been revoked.

23             MR. COLITZ:  Yes, that's our position.  That in

24   September, I think it's September 7th, September 4th 2012, when

25   we ended the relationship, we sent them an email and said, you

1    are no longer authorized to use our photographs, our art works,

2    our line drawings, you're not allowed to use that anymore.  And

3    the response was, okay, we'll take it down.  And --

4              THE COURT:  The response was okay, we're in the

5    process of looking at that?

6              MR. COLITZ:  Right.  So --

7              THE COURT:  And they never did because that's why

8    we're here.

9              MR. COLITZ:  Right.  Well, we're here because, to

10   this day, right now, today, on the Barn Light Electric website,

11   you will find copied photographs --

12             THE COURT:  So they've not accepted your attempt to

13   revoke their claimed non-exclusive license, and that's the

14   problem, because even though you asked them to or you insisted

15   they do, they didn't.

16             MR. COLITZ:  Well, they represented that they would

17   and then kept --

18             THE COURT:  They didn't represent that they would if

19   you look at the letter of what you told me they said.  They

20   represented that they would essentially kind of sort of think

21   about it.

22             MR. COLITZ:  Okay.

23             THE COURT:  And now you say, well, even if they --

24   even if they didn't, they should be precluded from arguing that

25   they didn't because they didn't raise it as an affirmative

1  defense.  And my question to you is, how have you been
2  prejudiced since you know the facts surrounding the attempted
3  revocation, and they are what they are, and you have the
4  evidence of how they behaved and how you behaved in reference
5  to that, what more would you need to know to defend against
6  that affirmative defense?
7        MR. COLITZ:  Well, certainly if we thought that their
8  position was going to be that they have a license to this day,
9  which is essentially what their position is, we could have
10 explored that with interrogatories or during deposition --
11       THE COURT:  What interrogatory would you ask; do you
12 have a license to this day?
13       MR. COLITZ:  Yes.
14       THE COURT:  And they would say yes?
15       MR. COLITZ:  And what consideration was paid for that
16 license.
17       THE COURT:  The consideration that was paid for it
18 when we originally got it and all of the money we paid you
19 while we were selling your product is what they have said is
20 the consideration they paid for it and that's either adequate
21 or inadequate.
22       MR. COLITZ:  Right.  And we think it's inadequate
23 because there was -- certainly during the course of the
24 relationship, we would have gotten consideration, but again,
25 there's testimony we didn't get our full extent of the

1    consideration because there was this passing off.  But
2    certainly, when we tell them stop using the photographs and
3    they are no longer, presumably as of today, no longer selling
4    Hi-Lite products, there's no more consideration for that.
5           THE COURT:  Isn't there case law that says operating
6    outside the scope of the non-exclusive license is really a
7    breach of contract claim not an infringement claim?
8           MR. COLITZ:  The case law that we have in our brief
9    suggests that operating outside of the scope of a license is
10   actionable as copyright infringement, which is exactly the
11   situation we have here.
12          THE COURT:  A non-exclusive license previously given?
13          MR. COLITZ:  Correct.
14          THE COURT:  And that goes to all of the catalog
15   claims?
16          MR. COLITZ:  Yes, Your Honor.  To hold to the
17   contrary would allow them to continue to use our photography
18   forever to sell their own products.  I can't accept that that
19   is the answer.
20          THE COURT:  Unless you gave them a non-exclusive
21   irrevocable license, in which case you have done that, not if
22   they can steal your catalog and go and take it and put it on
23   their website, but if you gave them a non-exclusive irrevocable
24   license in exchange for their selling your product for a period
25   of time, then I think the case law says that's what it is, it's

1  irrevocable.

2          MR. COLITZ:  Right.  But I think it's pretty much

3  undisputed on both sides, we've got testimony that everybody

4  understood that that was given, that license was given for the

5  purpose of selling Hi-Lite products, and they're not doing

6  that, so they're exceeding the scope.

7          THE COURT:  Counsel?

8          MR. SOZZANI:  Yes, Your Honor.  I think the issue

9  here is clear.  There was no prejudice in bringing this

10 affirmative -- or this motion for leave to add the affirmative

11 defense of license, quite simply, because all of the issues

12 that --

13         THE COURT:  Why didn't you just assert it when you

14 could have and should have?

15         MR. SOZZANI:  Well, Your Honor, the second amended

16 complaint was filed in April of last year.  And as you know, by

17 viewing the record, discovery has been very contentious,

18 especially with regard to Hi-Lite.  It wasn't until the very

19 end of discovery, after we have -- we were able to analyze --

20         THE COURT:  When was this motion filed?

21         MR. SOZZANI:  I'm sorry, Your Honor?

22         THE COURT:  When was the motion filed?

23         MR. SOZZANI:  This motion was filed February 5th.

24         THE COURT:  Of 2016?

25         MR. SOZZANI:  Correct, Your Honor.

1    THE COURT:  And when was the summary judgment motion
2  filed on the issue?
3    MR. SOZZANI:  The summary judgment motion was filed,
4  I believe, in the first week of January.  I don't have the
5  specific date in front of me.
6    And in our reply in support of our motion for summary
7  judgment, we also included a footnote which stated that we were
8  going to be seeking a motion for leave to amend our pleadings.
9    Your Honor discussed just before a case which states
10  that an action for breach of a non-exclusive license is in
11  contract, and that is correct.  In *Jacobson versus Katzer*,
12  Federal Circuit of Appeals case in 2008, the Court stated that
13  the copyright owner who grants a non-exclusive license to use
14  his copyrighted material waives his right to sue the licensee
15  for copyright infringement and can only sue for a breach of
16  contract.
17    THE COURT:  Even if the contention is that the
18  issuing of the non-exclusive license was for the sole purpose
19  of selling their product?
20    MR. SOZZANI:  Of course.  And that's my next point.
21  In our briefing, we've included case law from the Eleventh
22  Circuit which establishes that the time to limit the scope of a
23  license is at the time of delivery of the works to the opposing
24  party from the holder of those works.
25    THE COURT:  Well, counsel just told me that all the

1   parties stipulate and agree that the license was issued for the

2   limited purpose of selling Hi-Lite lights.

3           MR. SOZZANI:  Well, Your Honor, that is definitely a

4   point which has come up in some of the depositions and through

5   our discovery.  At no point in time was there any express

6   limitation made.  And when there is no express limitation made

7   at the time of delivery of a copyrighted work, there is no

8   limitation on the use of that work.

9           THE COURT:  So if you amend your complaint to add

10  this affirmative defense, can they amend their response or

11  counterclaim and bring a breach of contract claim for breaching

12  the scope of the extended license?

13          MR. SOZZANI:  Well, Your Honor, that would be an

14  issue for the Court to take up.

15          THE COURT:  Well, I'm asking you whether you would

16  agree to stipulate to allowing them to bring a breach of

17  contract claim since you just now decided in February to amend

18  your complaint to add a license claim?

19          MR. SOZZANI:  Well, Your Honor, I would say that

20  their amendment to bring the breach of contract claim would

21  require that there is a contract to begin with.

22          THE COURT:  Well, assuming there's a contract and

23  they could prove up a contract, would there be any downside to

24  allowing them to amend to bring a contract claim?  And you

25  would have to file your answer to the contract claim and assert

1    your affirmative defenses to the contract claim.  And we might
2    get to trial in this case by December of this year.
3                MR. SOZZANI:  Could I caucus with my colleagues?
4                THE COURT:  Yes, sir.
5                MR. SOZZANI:  Thank you.
6                (Brief Pause.)
7                Your Honor, I don't think that bringing a contract
8    issue conceptually is an issue for us, you know, if we were
9    allowed to amend our answer to add this affirmative defense
10   which we believe that the Defendants have been on notice of
11   from very early on in this litigation through the discovery
12   process.
13               However, there are potential issues in the bringing a
14   contract claim under the Statute of Frauds, under the Statute
15   of Limitations, and it will also lead to protracted litigation
16   in this case, whereas this particular issue of license has been
17   vetted, it will not require any additional discovery, it will
18   not require any reopening of discovery in this case.  And all
19   of the issues have already been admitted by the Defendants in
20   this case that relate to this particular issue of implied
21   license.  They've admitted that they've granted the implied
22   license.
23               The only issue left for the Court is the scope, and
24   as a matter of law, and I think counsel said that they were
25   surprised and the surprise was that this case law exists which

1   states that as a matter of law, once there's been an implied

2   license granted without any kind of limitation at the time of

3   the delivery of the works and some consideration, that becomes

4   an irrevocable non-exclusive implied license.  And that is the

5   surprise.  The surprise is that there is a defense.

6           It has already been admitted in the record and really

7   all that's left, as I noted, was just the scope of that license

8   which is, again, a matter of law and will not require

9   additional discovery.

10          THE COURT:  Counsel?

11          MR. COLITZ:  First of all, Your Honor, we would be

12  fine with that proposal.  We would allow them to amend to add

13  the affirmative defense and we would bring then a claim for

14  breach of contract.  We're totally in agreement with that.  It

15  sounds reasonable and fair.

16          THE COURT:  Breach of contract; which contract?

17          MR. COLITZ:  The contract --

18          THE COURT:  The oral contract?

19          MR. COLITZ:  Yes, Your Honor.

20          THE COURT:  To do what?

21          MR. COLITZ:  For them to sell our products at a -- we

22  believe that the agreement was they were going to be given a

23  substantial discount on the Hi-Lite fixtures in exchange for

24  exclusivity not to sell competing product lines.

25          THE COURT:  Why didn't you bring that contract claim?

1    I'm talking about the contract claim that says you have the
2    right to use our catalog for the limited purpose of selling our
3    product, not the original contract claim, we had a handshake
4    agreement, and you would do this and you would do that and you
5    would do the other, this is a breach of contract claim that
6    goes solely to the limitation that you purported to place
7    impliedly on the presentation of your catalogs and your
8    proprietary photographs to Barn Light Electric?
9              MR. COLITZ:  And we would agree with that as well, if
10   that -- that would be also a breach of contract claim.
11             THE COURT:  But what contract?
12             MR. COLITZ:  The contract that they were to be using
13   our art work, our photography and our part numbers to sell our
14   products and not sell other products.
15             THE COURT:  And there was an oral discussion about
16   that?
17             MR. COLITZ:  There was no oral discussion about that.
18             THE COURT:  Then how was there a contract?
19             MR. COLITZ:  Because it was understood.  It was
20   understood by everybody.  They've testified to that, we've
21   testified to that.  And there's --
22             THE COURT:  What's the law of understood contracts?
23             MR. COLITZ:  That it's -- that if something is common
24   sense, as this, that if we're going to give you a picture of
25   our product, you're going to use it to sell our products and

1   not competitive products.  If you are a dealer for --

2          THE COURT:  Products that you considered to be

3   copyrighted?

4          MR. COLITZ:  Either copyrighted or depictions of our

5   products or our line drawings.  We gave -- Hi-Lite gave to Barn

6   Light Electric a whole wealth of materials --

7          THE COURT:  Well, there's a whole body of law around

8   copyright, and if the contention is the reason they were

9   supposed to keep it for this limited purpose is because it was

10   copyrighted material, there's a procedure by which you limit

11   the ability to use copyrighted material and it's not just let's

12   hope they do the right thing 'cause that's understood.

13          It's a procedure whereby you provide, as I

14   understand, the product material, and in connection with

15   providing the product material, there's some sort of document

16   that's on the top of the cover that says you understand this is

17   copyrighted material and it will only be used for the limited

18   purpose of selling ours, and once you're done, you'll give it

19   back to us.

20          And I don't understand that there was ever such a

21   writing to that effect.

22          MR. COLITZ:  There was not.

23          THE COURT:  And now you're telling me there was no

24   oral discussion to that effect, but it was your client's

25   supposition by what was common sense?

1          MR. COLITZ:  And that they have agreed to.

2          THE COURT:  But they didn't agree to it if they

3   didn't say we agree.  You have to agree to something, either

4   orally or in writing.  You don't agree to it by some sort of --

5   I don't mean to be flip, but some sort of mind transfer.  There

6   has to be some indicia of agreement, either by a writing or by

7   some oral communication.

8          MR. COLITZ:  And what I'm proposing, Your Honor, is

9   that when we deposed Mr. and Mrs. Scott, that their testimony

10  was that they knew that these materials were just to be used to

11  sell Hi-Lite manufactured products.  And that it is understood,

12  a course of conduct within the industry.  We've got other

13  testimony from other distributors that says, yes, it's common

14  sense that when the manufacturer gives you a picture of the

15  manufactured product, that you're not going to use that for

16  someone else's product.

17          If you're a Honda dealer and Honda gives you pictures

18  of Honda cars, you're not going to use those photos to sell

19  Toyotas.  So, maybe it wasn't expressed orally or in a

20  contract, but it's the type of thing that everybody understands

21  that you're to adhere to.

22          THE COURT:  All right.

23          Well, the Court will allow the amendment because I

24  think it's been fully litigated and discovered.  If there's

25  some specific interrogatory that you would like to propound to

1  get any further information or some specific piece of

2  discovery, file the motion identifying it, no more than three

3  interrogatories and no more than one document request limited

4  to a specific document, not limited to all documents that

5  refer, reflect or relate to blah, blah blah.  I want a specific

6  document request.

7  　　　　　If you have one and maybe you don't because you don't

8  need one, and a specific interrogatory or two that you think

9  you might need to ask, but I don't think there's any prejudice

10  by allowing this amendment, albeit a late one, because it looks

11  like everything was discovered in connection with this because

12  the responses are sufficient to raise it.  And the Court will

13  not allow a breach of mental contract claim to be asserted to

14  protect copyrightable or alleged copyrightable material.

15  　　　　　MR. COLITZ:  May we -- may we nonetheless move to

16  amend on other grounds?

17  　　　　　THE COURT:  What ground?

18  　　　　　MR. COLITZ:  May we have permission to at least brief

19  the issue with a motion for leave to amend?

20  　　　　　THE COURT:  To amend to add a breach of mental

21  contract claim?

22  　　　　　MR. COLITZ:  Yes, Your Honor.

23  　　　　　THE COURT:  No.

24  　　　　　MR. SOZZANI:  Your Honor?

25  　　　　　THE COURT:  Yes, sir.

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1          MR. SOZZANI:  If I might, I'm sorry.

2          THE COURT:  You've already won, so you need something

3     else?

4          MR. SOZZANI:  On a separate issue.

5          THE COURT:  Yes, sir?

6          MR. SOZZANI:  Implied license, Your Honor.  If I

7     might, I wanted to just make a couple of comments about the

8     Section 43(a)1(a) claim that you had discussed earlier.  While

9     it's true that Defendants have not moved under 43(a)1(a), the

10    reverse passing off claim, we have moved on that particular

11    claim in a cross motion.

12         THE COURT:  Well, I asked about that and I think the

13    counsel said that's our claim, but let me hear you on the

14    reverse passing off claim from BLE.

15         MR. SOZZANI:  Thank you, Your Honor.

16         If it would please the Court, I'm sure the Court's

17    aware of the *Daystar* arguments which have been made in the

18    briefing.  And I think that oral argument on this particular

19    issue would particularly benefit the Court.

20         THE COURT:  I'm listening.

21         MR. SOZZANI:  Thank you very much, Your Honor.

22         So in *Daystar*, the Supreme Court --

23         THE COURT:  I know the *Daystar* case, so tell me how

24    it has to do with this case.

25         MR. SOZZANI:  Absolutely.  Hi-Lite claims under

1    43(a)1(a) fail for two reasons under *Daystar*.  The first is

2    that a reverse passing off claim, as discussed in *Daystar*, and

3    I'll use Justice Scalia's example.

4            THE COURT:  Well, let me just back you up.  I have

5    heard that the -- Hi-Lite does not intend to assert any sort of

6    reverse passing off claim based on any catalog use that may

7    have been made by the Scotts or by Barn Light Electric.  Just

8    by having on there their pictures on your website and so forth,

9    they're not asserting any such claim.  Are you asserting a

10   reverse passing off claim of their use of the Barn Light

11   Electric mark?

12           MR. SOZZANI:  I'm not, Your Honor.  So, is it my

13   understanding that they've withdrew the claims that they --

14           THE COURT:  They withdrew any claim based upon

15   reverse passing off having to do solely with the use of

16   photographs from your -- from their catalogs.  Their only claim

17   remaining is that by sending goods to customers that you

18   allegedly passed off as their goods, actual goods, not

19   photographs of goods, that they have a false advertising claim,

20   sort of kind of like a Lanham Act claim, and your contention is

21   what with respect to reverse passing off?

22           MR. SOZZANI:  Well, if the claim for reverse passing

23   off has been withdrawn, that would be Count Four, I believe, of

24   the second amended complaint, then it's a non-issue and I won't

25   address that particular issue.  But what was described by

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

1  counsel is relevant to their Section 43(a)1(b) claim.

2          THE COURT:  Counsel, is that correct, that the

3  reverse passing off claim as a stand-alone claim, as it relates

4  to the photographs on the website, has been withdrawn, and now,

5  you are bringing a false advertisement claim related to the

6  goods that were sent, which your witness is going to say half

7  of the goods during the time that they were our distributor

8  were really their sort of bootleg goods passed off as yours?

9          MR. COLITZ:  Yes, Your Honor.  I wouldn't say we're

10 withdrawing the unfair competition reverse passing off claim,

11 it's just that the basis of that claim is not just the presence

12 of a photograph.  We're not saying that merely because they had

13 the photograph that that is the basis of the claim or the

14 photograph is the good that was the subject of the origin.

15         What we're talking about is the origin of the actual

16 goods that they shipped that was misrepresented.  That by

17 showing our photograph and our designations, but shipping the

18 Barn Light Electric product, that is the unfair competition

19 claim, and whether it's a 43(a)1(a) or (a)1(b), it's the same

20 set of facts.

21         THE COURT:  Counsel?

22         MR. SOZZANI:  I don't see the distinction between the

23 two, Your Honor.  On one hand, counsel is saying that they're

24 withdrawing the case as it relates to the use of a photograph

25 to sell the products, but on the other hand, he's saying that

1  we're brining the claim because of the photograph shown.  So, I

2  don't find a distinction between the two.

3          In either event, neither of those two particular

4  scenarios would establish reverse passing off under those facts

5  whatsoever.

6          The Supreme Court in Daystar made very clear that the

7  term "origin" relates to a tangible good, not a photograph.

8          The whole purpose of the *Daystar* case was to

9  foreclose litigants from filing these shotgun claims and

10 including what would otherwise be properly brought under the

11 Copyright Act or the Patent Act, as a Lanham Act claim.  And

12 that is precisely what's happened here.

13         A reverse passing off claim, it literally requires,

14 and I'll use Justice Scalia's example.  He uses a Coca-Cola

15 bottle and a Pepsi bottle as the easiest way to understand.  A

16 passing off claim is essentially putting another person's label

17 on to your product and passing that off as the other person's.

18 So a Coca-Cola manufacturer taking a Pepsi label, putting the

19 Pepsi label on their bottle, and selling it as a Pepsi product.

20 Reverse passing off is just the opposite of that.

21         THE COURT:  I know what they are, but tell me how

22 Hi-Lite -- how Barn Light Electric did not pass off its goods

23 as Hi-Lite's if they said, I am sending you this and this is a

24 picture of that Hi-Lite product, and it's going to cost you

25 $300.  And then it sends the customer this other thing, which

| | |
|---|---|
| 1 | is a Barn Light China product, and says, here is the thing |
| 2 | we're sending you. |
| 3 | MR. SOZZANI:  Well, Your Honor, there's two points to |
| 4 | make there.  First, we dispute that has ever happened. |
| 5 | THE COURT:  Well, I understand that, but -- |
| 6 | MR. SOZZANI:  And in the event that that was the |
| 7 | case, hypothetically, and I don't think that it can be proven, |
| 8 | there's only one purchase which has been pointed to by |
| 9 | Mr. Sanders.  Mr. Sanders already testified that what he |
| 10 | received was a Barn Light Electric product manufactured by Barn |
| 11 | Light Electric that was tested as a Barn Light Electric |
| 12 | product. |
| 13 | Their own distributor stated on the record that he |
| 14 | did not believe Barn Light Electric was trying to pass off |
| 15 | itself or its product as a product from any other company. |
| 16 | Their own distributor testified to this during his deposition, |
| 17 | the one that they point to for the sole purchase that is the |
| 18 | basis of all of their claims.  That's my first point. |
| 19 | Second, the case law that follows *Daystar* clearly |
| 20 | establishes that the use of a photograph is not sufficient to |
| 21 | sustain a claim for a reverse passing off claim under 43(a)1(a) |
| 22 | nor is it sufficient to state a claim under 43(a)1(b).  The |
| 23 | case law is very clear.  There's a full body of case law that's |
| 24 | been developed after *Daystar*.  That would amount -- the use of |
| 25 | a photograph would amount to either the misappropriation of a |

1    photograph in a copyright claim or a false statement as to the
2    attribution or authorship of that photograph, not the product
3    itself.
4           The product itself must actually be relabeled for a
5    reverse passing off, the physical product, and this is what the
6    Supreme Court held, that origin refers to the tangible product,
7    the producer of the tangible product, not a photograph or a
8    depiction of that product.
9           And the case law hashes that out very clearly.  As a
10   matter of fact, one of the cases that is cited is virtually
11   identical to the case that's at issue here.  And that's the
12   *Keogh* case of the Sixth Circuit.  And I understand, Your Honor,
13   that this Sixth Circuit case wouldn't necessarily be
14   controlling here in the Eleventh District, obviously, or the
15   Eleventh Circuit, rather.  But it is quite instructive and the
16   facts of that case were nearly identical.
17          It was a manufacturer, there was a distributor.  The
18   manufacturer was manufacturing light fixtures.  The
19   manufacturer went beyond the scope of their relationship and
20   started manufacturing light fixtures on their own.  These were
21   cloned light fixtures that were at issue in *Keogh*.  They used
22   the same part numbers, they used the same pictures in their
23   catalogs to sell the light fixtures.  The light fixtures were
24   not patented and they were not subject to trade dress.  There
25   were trade dress claims, but trade dress was not found.

1    And in that case, applying *Daystar*, the Sixth Circuit
2  held that it's not enough to utilize a photograph of a product
3  or a part number or other underlying intellectual property that
4  is embodied by that product to establish a Lanham Act claim.
5  The whole purpose of *Daystar* was to foreclose those claims.
6    THE COURT:  Instead, you have to?
7    MR. SOZZANI:  You have to file either a copyright
8  claim --
9    THE COURT:  No, in order to pass off reverse pass
10 off, you have to do what?
11    MR. SOZZANI:  Well, to reverse pass off, you --
12    THE COURT:  In a light fixture type of case?
13    MR. SOZZANI:  In the light fixture case, it would be
14 actually affixing the Hi-Lite mark to a light fixture that was
15 manufactured in China and selling it as a Hi-Lite product.  Or
16 manufacturing your own product and attaching a Hi-Lite logo to
17 that product and selling it.
18    It would be some change to the tangible good, the
19 physical product, for a reverse passing off.  And the same
20 reasoning also extends into 43(a)1(b) for false advertising.
21 The use of a photograph does not substantiate a false
22 advertising claim under the Lanham Act.  A photograph is a
23 copyright claim.
24    And that was the purpose of *Daystar*, to avoid this
25 overlap.  And the policy reasoning is very clear in *Daystar*.

1  In a copyright context, you have a limited period of time in

2  which you have rights in the copyright in the patent context.

3  You have a limited period of time.  There's a quid pro quo with

4  society.

5          Same with trade dress.  Trade dress is very, you

6  know, limited -- there are a great deal of limitations to

7  qualify for trade dress.  There's a body of case law which

8  establishes the criteria that must be met for a trade dress.

9          But with a Lanham Act claim, it's perpetual.  There

10 is no limit.  And the risk that subsists there is that one

11 could file a claim and essentially copyright under a Lanham Act

12 claim for 43(a)1(a) or (a)1(b) and have a perpetual copyright

13 or a perpetual patent or trade dress rights when those trade

14 dress rights would not subsist under the laws controlling

15 criteria necessary for trade dress.

16         THE COURT:  Thank you.

17         Yes, sir?

18         MR. COLITZ:  If I understand Mr. Sozzani correctly,

19 what he's saying is because we didn't allege that they

20 basically put our logo on their products, that we don't -- we

21 haven't properly alleged a reverse passing off claim.  If

22 that's true, what we did allege, and what is crystal clear from

23 the second amended complaint is what I've been saying all along

24 today, Your Honor, and that is, they were using our part

25 numbers and our photography to sell their products.

1           THE COURT:  Do you believe your part numbers have
2   secondary meaning in the market?
3           MR. COLITZ:  Yes, I do, Your Honor.
4           THE COURT:  All of them?
5           MR. COLITZ:  The ones that we've alleged in our
6   complaint, correct.
7           THE COURT:  What market would know your part numbers,
8   all the lighting market, the consumer lighting market; who is
9   it that knows if they're getting a -- whatever the number is?
10          MR. COLITZ:  H15116.  Somebody in the lighting
11  industry would know that that's a Hi-Lite product.  But let me
12  just point out, Your Honor, if what he's saying is that that
13  allegation is really passing off as opposed to reverse passing
14  off, then we would like to amend our complaint to say passing
15  off instead of reverse passing off, if that's what they're
16  saying.
17          But the substance of our claim is just that, the use
18  of our part numbers and our photography to sell the Barn Light
19  Electric products.  If what they're saying is that's really
20  passing off, then we agree to that and amend our complaint
21  accordingly.
22          THE COURT:  Well, I think what they're saying is that
23  neither is protected, neither your number nor your photograph,
24  and that they can't then be bootstrapped into a passing off or
25  a reverse passing off claim because they used those numbers and

1   those photographs as part of their inducement to get customers

2   to buy a product which they then sent from their offices and it

3   was not a Hi-Lite product but was a Barn Light product.

4         MR. COLITZ:  Right.  I think they're frankly making

5   too much of *Daystar*, and just a quick summary of what that was,

6   that was an old videotape made by Twentieth Century --

7         THE COURT:  I really did read the case, I promise

8   you.

9         MR. COLITZ:  Right.  No, but I'm just saying that

10   we're not trying to -- we're not saying that people are

11   confused because they look at the actual physical product and

12   think it's ours, no.  We're saying people are confused because

13   they're looking at a picture of our product and our product

14   designation and getting something different.

15         The origin of the product is being misrepresented

16   because they're looking at our designations and our photography

17   and getting a Barn Light Electric product.  That is a

18   misidentification of the origin of the good and the good isn't

19   some, you know, intellectual property, the good isn't some

20   expired copyright, the good is the actual light fixture that

21   they supplied to the customer.  That's the good, the origin of

22   which is being misrepresented.  So I don't think we have a

23   *Daystar* problem.

24         THE COURT:  Yes, sir?

25         MR. COLITZ:  But just to -- if I may just finish,

1   Your Honor, if what they're saying is that they recognize our
2   claim as a passing off claim --
3              THE COURT:  We're not going to amend the complaint
4   anymore.  Thank you.
5              Yes, sir?
6              MR. SOZZANI:  Your Honor, just a couple of brief --
7              THE COURT:  I assume you're not intending to suggest
8   that they mislabeled it as a reverse passing off claim when it
9   was really a passing off claim?
10             MR. SOZZANI:  No, Your Honor.
11             THE COURT:  Which would be sustained.
12             MR. SOZZANI:  No, Your Honor.
13             What I'd like to bring to the Court's attention is
14  another case that's cited in the brief, it's *Quadratec*.
15  *Quadratec* is this exact scenario and relates to exactly what
16  counsel just mentioned here.
17             THE COURT:  Okay.  I'll take a look at it.  Thank
18  you.  I'll take a look at it.
19             MR. SOZZANI:  Thank you, Your Honor.
20             THE COURT:  Thank you.
21             MR. SOZZANI:  The other point I wanted to make with
22  regard to the part numbers is there has been no evidence of
23  secondary meaning --
24             THE COURT:  I know.  Thank you.
25             MR. SOZZANI:  -- in the part numbers.  And thank you

 1  very much, Your Honor.

 2          (Brief pause.)

 3          THE COURT:  The Court is not going to exclude

 4  Mr. Karaban.  He can testify and you can cross-examine him if

 5  you think his questions were inadequate to produce his

 6  conclusion or that his questions were impermissibly leading and

 7  BLE can say, well, they were intended to not be misleading and

 8  you can work that out in front of the jury if the claims are

 9  surviving.

10          I'm sorry, I think Stec was the one you said was

11  doing this methodology where he would say, look at this and

12  look at this and do you believe this mark shows this other

13  thing and the Respondents would say, no.  I think that just

14  goes to the content and credibility of his conclusion, not to

15  it's admissibility.

16          This question of the damages, though, is a little bit

17  interesting.  Is the expert, Stephenson, I guess, BLO's expert,

18  is he able to exclude what are concededly non-infringing

19  authorized sales of Hi-Lite product before the termination --

20  alleged termination?

21          MR. COLITZ:  No, Your Honor.

22          THE COURT:  Why not?

23          MR. COLITZ:  Because they were hiding those sales

24  from us.  They were --

25          THE COURT:  Hiding your own sales from you?

1          MR. COLITZ: Well, they were hiding the fact that

2 they were accepting orders for our products and selling their

3 own product.

4          THE COURT: But no, my question is, I assume they

5 sold some of you products?

6          MR. COLITZ: That's correct.

7          THE COURT: And I assume you know how many of those

8 products there were?

9          MR. COLITZ: Yes, Your Honor.

10          THE COURT: And I assume, therefore, that to the

11 extent they sold your products, their profit related to their

12 products would be the difference between your costs demanded of

13 them and whatever they made?

14          MR. COLITZ: Correct.

15          THE COURT: And so I assume as it relates to them,

16 then I would call those legitimate sales of Hi-Lite product,

17 you should know what those are within a reasonable degree of

18 certainty?

19          MR. COLITZ: Yes, Your Honor.

20          THE COURT: So why can't your expert take those out

21 of the mix of all revenues of BLE in his opening number of what

22 the infringing profits are?

23          MR. COLITZ: Because it's not our burden.

24          THE COURT: Well, can he, is my question, not did

25 you?

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

1        MR. COLITZ:  I believe he would be able to do that,

2  but our position is that it's not our burden.  They could

3  easily also show that deduction or offset, and the statute,

4  both in the Lanham Act and the Copyright Act, is crystal clear.

5  We come forward with revenues and then they show offset and

6  deduction.  So if they want to show --

7        THE COURT:  But the revenues are not supposed to be

8  tell me all the revenues you made in ABC Corporation, it tells

9  me all the revenues that you made by virtue of your

10  infringement of our product.

11        MR. COLITZ:  Right.  And so --

12        THE COURT:  And so if the non-infringing product is

13  readily known to you, then it shouldn't be part of the opening

14  salvo on damages, and they could come back and say, well, not

15  as to this, we didn't do this as to this, and not as to the

16  other, that's not infringement or not as to the AOC lamp

17  because that one has a functional purpose.

18        But as it relates to infringement as a damages

19  question, it seems to me that the law requires there to be some

20  causal connection between the claimed damages in the first

21  instance before the burden shifts to excise those that the

22  Defendant believes are not properly included.

23        MR. COLITZ:  Right, Your Honor.  And so what

24  Mr. Stephenson did in his report is he offered a number of

25  alternatives.  He gave just the general revenue, he gave the

 1    gross profits, and then as an alternative theory, he drilled
 2    down and to the best he could, he said, these are the specific
 3    products that we believe are associated with whatever the claim
 4    is, copyright infringement, unfair competition, what have you.
 5    So he actually offered alternative numbers.  And so --
 6              THE COURT:  Counsel, who's arguing this?
 7              MR. HILLYER:  Yes, I am, Your Honor, thank you.
 8              I think the table is already set for the argument I
 9    was going to make, Your Honor, which is really there's two
10    aspects of the report.  And I think that you've latched on to
11    what was going to be my first argument exactly right.  But what
12    I'd like to do is give the Court some assurances that that law
13    is exactly right.
14              THE COURT:  I don't need any assurances, I need you
15    to explain to me why he can't now just tell you what the
16    infringing damages are and you can take out whatever it is you
17    believe to be improperly included within the subset of his
18    damages analysis.
19              MR. HILLYER:  Very well, Your Honor.
20              The answer to that question is because the expert in
21    this case, while we don't question his qualifications, actually
22    performed no tasks whatsoever by way of an analysis applying
23    any methodology of any kind.
24              And, in fact, if you'll permit me, there's four
25    causes of action at issue; trademark, trade dress, copyright

1   and false advertising.  And I understand we're short on time,
2   but I'd like the opportunity to convince the Court that this
3   damages expert, using frankly an enormous degree of candor in
4   his deposition, conceded to me in connection with each and
5   every cause of action two things.
6           One, he did nothing other than take numbers that were
7   given to him by the lawyers and added them.  I'm almost quoting
8   verbatim.  And I asked him in connection with every single
9   cause of action.
10          The second thing he conceded in connection with every
11  cause of action is that he made no effort, zero, to tie the
12  profits to the cause of action.  So you mentioned a moment ago
13  that -- and you're exactly right, that the law requires -- and
14  by the way, the cases use all kinds of different words to talk
15  about this connection.  They use nexus, causal connection, they
16  use reasonable relationship.  In fact, I think they cited the
17  *Thornton* case --
18          THE COURT:  So the expert didn't do the work and he
19  has no ability now to tell the Court with any reasonable degree
20  of certainty the extent to which the damages or profits that
21  BLE purportedly achieved were due to infringing behavior?
22          MR. HILLYER:  That's correct, Your Honor.
23          May I show you his testimony on each point just to
24  convince the Court of --
25          THE COURT:  Give me an exemplar.

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

| | |
|---|---|
| 1 | MR. HILLYER:  Okay.  I'll give you an exemplar, and I |
| 2 | hope that the -- so directing -- this is the trade dress claim, |
| 3 | and I apologize -- |
| 4 | THE COURT:  What page? |
| 5 | MR. HILLYER:  Sorry, it's page 78 of the Stephenson |
| 6 | deposition, and I'm going to start at line 23 and go to the |
| 7 | following page. |
| 8 | I asked him, "So directing your attention to the next |
| 9 | section which is the trade dress infringement claim, if you |
| 10 | want to, you can read that portion into the record, but I want |
| 11 | to have an understanding of how you arrived at the numbers in |
| 12 | table six".  These are his profits. |
| 13 | "I was given part numbers by clients and did the |
| 14 | addition for the time periods indicated there from July through |
| 15 | December of 2012, 2013, '14 and first half of 2015.  Sales |
| 16 | associated with those part numbers." |
| 17 | Here's the second point I wanted to make.  He gives |
| 18 | a -- in his Exhibit B, a list of trade dress part numbers.  And |
| 19 | I brought to his attention the fact that R.W.S. was not |
| 20 | contained in the interrogatory response that was provided by |
| 21 | counsel.  And that may seem like a ministerial difference, but |
| 22 | it highlights the larger point by this deposition transcript. |
| 23 | I'm now at page 82, Your Honor. |
| 24 | "Sir, you're being shown what's been marked as |
| 25 | Exhibit 5, and you indicated before I gave it to you that you |

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

1  may not have seen it before".  And just to paraphrase, this is
2  where I'm showing in the interrogatory response.  And he says,
3  "I'm there.  Can you see the section near the bottom?"
4          THE COURT:  Pull the microphone toward you while
5  you're using that.
6          MR. HILLYER:  I'm sorry, Your Honor, I'm struggling a
7  little bit with the ELMO.  My apologies.
8          So I'm just going to paraphase this page that I'm on,
9  page 83 for the record.  I point out to him that this R.W.S.
10  Number is not contained in the interrogatories, and then I
11  asked him, aside from the product numbers on -- I'm on page 84
12  now -- "aside from the product numbers, did you ever make any
13  effort to cross reference these product numbers to the
14  paragraphs that we talked about in the complaint.  That's where
15  the trade dresses are set out.  I believe I did early on, but
16  it was a fairly tedious exercise and it's possible that the two
17  lists are not exactly -- may not exactly correspond with a
18  hundred percent accuracy".
19          Well, there were only 30 of these.  And, in fact, I
20  can tell Your Honor that the folks in my office, myself
21  included, cross referenced them very easily so we could
22  highlight the part number that was missing.  You know, he says
23  -- I mean, I just want to juxtapose this against his own
24  article.  He writes the -- excuse me --
25          THE COURT:  One second.

| 1 | MR. HILLYER:  Sorry about that. |
| 2 | So he writes an article on proving trade damages -- |
| 3 | THE COURT:  I don't need to hear about his article, I |
| 4 | know what he has to show.  So if he didn't do the cross |
| 5 | reference to the claims and he didn't do the cross reference to |
| 6 | the interrogatory responses, Counsel, how is his evidence |
| 7 | competent evidence of damages with respect to these claims such |
| 8 | that it shifts some burden to the Defendant on these claims to |
| 9 | respond? |
| 10 | MR. COLITZ:  Well, we dispute that.  We dispute, I |
| 11 | think, that that -- the particular part number was not on the |
| 12 | list he was looking at -- |
| 13 | THE COURT:  You need to bring your microphone back, |
| 14 | I'm sorry. |
| 15 | MR. COLITZ:  They were referring to an interrogatory |
| 16 | response where we listed out all the products accused of trade |
| 17 | dress infringement.  And on one of them, I think there is a |
| 18 | dispute as to whether or not he should have included that in |
| 19 | the calculations.  We think he should have, they don't think he |
| 20 | should have.  I think it's just an issue with a part number and |
| 21 | whether or not the part numbers were exact. |
| 22 | But I think that goes to the weight and not |
| 23 | admissibility of his testimony.  They have their own expert who |
| 24 | issued an 88-page report where they did the math and said, |
| 25 | well, he shouldn't have included that, and so here's what the |

1    number should be.  And that -- I think that argument, that two

2    sides of the story should be presented to the jury.  I don't

3    think it goes to the weight -- I don't think it goes to the

4    admissibility of his testimony.

5             THE COURT:  But by your admission, he reported on all

6    revenues, not revenues even marginally associated with

7    infringement as alleged, but all revenues.  And that he wasn't

8    asked and he hasn't been prepared to only include revenues

9    related to infringement.  And you want them to come back and

10   say, but these four we are legitimately entitled to have done

11   because these are Hi-Lite's product, and we sold them and we

12   paid Hi-Lite for them, and we ordered them from Hi-Lite, we

13   paid them back, so they know that these are all legitimate

14   sales, and there's no dispute about that.

15            MR. COLITZ:  There's no dispute that some of the

16   sales were legitimate, that's correct.

17            THE COURT:  But there's no dispute that even the

18   legitimate sales are included within his calculous.

19            MR. COLITZ:  Correct.  And what their expert did is

20   their expert then said, well, Mr. Stephenson is wrong, and they

21   should subtract out these legitimate sales, and which is what

22   they did.  So I see no problem with presenting those two sides

23   of the story to the jury.  Again, it goes to weight, not

24   admissibility.

25            But just to be clear, what Mr. Stephenson did in

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1    presenting the larger revenue and gross profit figures, he then
2    drilled down, and it's very easy to make the association on our
3    claims.
4         For instance, on the copyright claims, they're using,
5    up until quite recently, our copyrighted photographs on their
6    website, and they're not just photographs, they're hypertext
7    links.  So when you click on one of the photos of our
8    copyrighted photos, it takes you to a product page where you
9    can buy all this variety of Barn Light Electric lighting
10   fixtures.
11        And so what Mr. Stephenson did is he totaled up what
12   those sales were 'cause that's our position as to what our
13   damages are on, for example, the copyright infringement.
14        Now, did Mr. Stephenson himself physically, you know,
15   push the print button on the printer to get that list of
16   products; no, but I don't think he's required to do that as an
17   expert.  But he certainly understands the link between our
18   copyrighted photograph, again, copyrighted photograph that is a
19   link to their product page, and he added those photos up and he
20   says this is what I think the damages for the copyright
21   infringement should be.
22        On, for example, the false advertising claim, what he
23   did was, we've got the testimony of Trey Solms, that it was at
24   least happening with the H15116, so he took and for the time
25   period at issue, from the time period that we think that this

```
 1    false advertising occurred to the end of relationship, he
 2    totaled those sales of the H15116.
 3              THE COURT:  And only H15116?
 4              MR. COLITZ:  Correct, 'cause that's all we know
 5    about.  And so he limited -- he did the best he could to limit
 6    it to what we know about.  And can they come back and say --
 7              THE COURT:  What's the number?
 8              MR. COLITZ:  The product?
 9              THE COURT:  What's the financial number?
10              MR. COLITZ:  His financial number for the copyright
11    infringement was 2.6 million, trade dress infringement was
12    236,000, and for the various unfair competition claims,
13    2.6 million.
14              THE COURT:  For the H1 -- what's the number?
15              MR. COLITZ:  Uh, yeah, H15116.
16              THE COURT:  Was how much?
17              MR. COLITZ:  I believe it's 2.6 million.
18              THE COURT:  That's how much was earned on just that
19    one light?
20              MR. COLITZ:  Correct.  And he did limit it to the
21    time period, he didn't include sales after the relationship was
22    over 'cause presumably there was no longer any false
23    advertisement, so he did the best he could.
24              Now, can they come back and say, well, some of those
25    sales were legitimate because we can show that we actually got
```

1    the product from Hi-Lite Manufacturing; sure, and their expert

2    has done that.  Their expert has an exhaustive 88-page report

3    that details what is wrong with Mr. Stephenson's report.  And

4    again, all goes to weight, not admissibility.

5          But I'd also stress to the Court that the reason --

6    the very reason that the Lanham Act and the Copyright Act have

7    an admittedly light burden on the Plaintiff is because the

8    possibility for deception.  And that's at issue here.

9          THE COURT:  There's no possibility for deception of

10   Hi-Lite as to what Hi-Lite sold to Barn Light E and what

11   Hi-Lite was paid for what it sold to Barn Light E?  No

12   possibility of deception?

13         MR. COLITZ:  We don't necessarily know that that

14   product would have made it into the hands of the end user.  We

15   don't know that if we supplied a product to them that that was

16   then used in fulfillment of an order.

17         THE COURT:  Well, you know whether you were paid for

18   the product and you know what you were paid for the product and

19   you know that as it relates to what you were paid for the

20   product, it couldn't factor into any profit that they made on

21   the product.

22         MR. COLITZ:  True.

23         THE COURT:  Because they paid you the money.

24         MR. COLITZ:  Right, but we don't know, for instance,

25   if someone ordered a H15116, even if we supplied the product to

1    Barn Light Electric, we don't know that that made it into the
2    hands of the end consumer.
3              THE COURT:  But you know whether you were paid for
4    it.
5              MR. COLITZ:  Yes, we do, Your Honor.
6              THE COURT:  And so if you charged them $100 for it
7    and they paid you $100 for it, they didn't make $100 profit on
8    that light because you have that $100.
9              MR. COLITZ:  Right.  And all of that is detailed in
10   their rebuttal report.
11             THE COURT:  But none of it is detailed in your
12   expert's principal report on the damages associated with
13   infringement, he just includes even what you made --
14             MR. COLITZ:  Correct.
15             THE COURT:  -- in that number, and what number is
16   that?
17             MR. COLITZ:  2.6 million.
18             THE COURT:  That's how much you made?
19             MR. COLITZ:  I'm sorry, that's the damage number.
20             THE COURT:  How much of that damage number is money
21   that --
22             MR. COLITZ:  I don't have that --
23             THE COURT:  Well, you're looking at their report,
24   what does their report say it is?
25             MR. COLITZ:  I would have to find that.

| | |
|---|---|
| 1 | THE COURT: Does counsel know what your report says |
| 2 | it is? |
| 3 | MR. HILLYER: I apologize, Your Honor, in connection |
| 4 | with which claim, Your Honor? |
| 5 | THE COURT: Whichever claim. |
| 6 | MR. SOZZANI: Your Honor, with the H15116, one issue |
| 7 | I'd like to bring up -- |
| 8 | THE COURT: How much money is it that you claim was |
| 9 | given to Hi-Lite that should be taken out of Mr. Stephenson's |
| 10 | report as improperly included as damages? |
| 11 | MR. SOZZANI: Your Honor, the reason that I can't |
| 12 | answer that question is because Hi-Lite has not provided their |
| 13 | financials. We were unable to -- |
| 14 | THE COURT: Well, you know how much you paid Hi-Lite |
| 15 | for the lights you bought from Hi-Lite. |
| 16 | MR. SOZZANI: That's correct, but the way the |
| 17 | recordkeeping is, there's no way to break out a particular part |
| 18 | number in total unless that particular part number was the only |
| 19 | one purchased. And this is because this claim goes all the way |
| 20 | back to the genesis of the company. It's for every single sale |
| 21 | of the H15116 which happens to be the best selling product. |
| 22 | THE COURT: So you don't know how much you paid them |
| 23 | and they don't know how much you paid them? |
| 24 | MR. SOZZANI: Well, we would know if Hi-Lite was to |
| 25 | provide their financials. They have not in this matter, as you |

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1  know, so there's no way for us to determine the traceable

2  sales.  Essentially, what we would need to determine is the

3  total number of sales which has been identified, the

4  2.6 million is the total sales of the H15116, but we need to

5  know how many of those we purchased from Hi-Lite, and Hi-Lite

6  has those records.

7           Hi-Lite knows exactly of that 2.6 million, as Your

8  Honor has pointed out, what has been purchased from Hi-Lite.

9  That would also show that this allegation that something else

10 was being sent was not occurring.

11          THE COURT:  That's true.

12          How much did you get paid?

13          MR. COLITZ:  We did provide -- the notion that we

14 didn't provide any of --

15          THE COURT:  Did you show them how much money you were

16 paid by Barn Light Electric for the product they bought from

17 you?

18          MR. COLITZ:  Yes, we showed them all the financial

19 transactions between Hi-Lite and Barn Light Electric.

20          THE COURT:  So that if there was a light bought in --

21 whenever this relationship started, and they paid you $50 for

22 that light, they have that information that you have provided?

23          MR. COLITZ:  I believe so, Your Honor, and I know

24 that --

25          THE COURT:  Light specific or --

1    MR. COLITZ:  No, not light specific.

2    THE COURT:  -- Excel printout or what?

3    MR. COLITZ:  No, it was just a general number of the

4    financial transactions between Hi-Lite and --

5    THE COURT:  This is your summation of those numbers?

6    MR. COLITZ:  Yes, Your Honor.

7    THE COURT:  Not the documents underlying those

8    numbers?

9    MR. COLITZ:  Correct, Your Honor.

10   THE COURT:  Well, how are they supposed to believe

11   what you tell them?

12   MR. COLITZ:  Well, they have their own --

13   THE COURT:  Well, produce it.  Produce documents

14   related to the transactions that establish the sales that

15   Hi-Lite had of these products because sending them a final

16   summary of what you say they sold and what you say they bought

17   requires them to believe you, and that's why you all are

18   litigating because nobody believes anybody on both sides and

19   all three sides of this transaction.  Nobody believes anybody.

20   And so you have to produce the underlying financial documents.

21   If you want to do it under cloak of confidentiality, if you

22   want to do it experts only, if you want to hire a special

23   master, we've got to get the financial documents if there's

24   going to be litigation over money.

25   MR. COLITZ:  We have produced the underlying purchase

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

```
1   orders as well.  So it could be gathered from the underlying
2   purchase orders.
3              THE COURT:  You didn't gather them from the
4   underlying purchase orders, you gathered them from your
5   financial documents.  That's how I assume you made your
6   summations.
7              MR. COLITZ:  I believe so, Your Honor.
8              THE COURT:  All right.
9              So whatever is available that would demonstrate
10  purchases made and sales paid and numbers given, you all need
11  to exchange so that it can be verified and no one has to just
12  take another's word for it.
13             Do you need some sort of underlying protection for
14  that such that it doesn't go to the Scotts or that it goes only
15  to the experts or it doesn't really matter?
16             MR. COLITZ:  We have a protective order in the case,
17  Your Honor.
18             THE COURT:  It's already in place?
19             MR. COLITZ:  Yes, Your Honor.
20             THE COURT:  And it would serve this function?
21             MR. COLITZ:  Yes, Your Honor.
22             THE COURT:  All right.
23             MR. HILLYER:  May I be heard briefly in rebuttal to
24  something that was said?
25             THE COURT:  Sure.
```

1     MR. HILLYER:  So, I have no doubt that Mr. Colitz and
2   his team have a firm grasp on how they might argue that certain
3   numbers are attached to certain behavior, but I want to pull
4   the Court's focus back to this motion in particular, which is
5   about this expert.
6         Mr. Colitz just indicated that he --
7         THE COURT:  Well, what's going to happen with this
8   expert is that a day or so before trial, we're going to have to
9   voir dire this expert in a sort of *Daubert* sort of fashion,
10  because listening to the two of you talk about him doesn't give
11  me any additional value than what I have in reading the papers.
12  It sounds like the expert has some competency issues that may
13  preclude his testimony outright.  But I need to hear him.  I
14  need to hear what he says, I need to hear how he did what he
15  did, and what he did and then make a decision in the context of
16  voir dire and examination of the expert.
17        MR. HILLYER:  Very well, Your Honor, I appreciate the
18  clarification.  Thank you.
19        THE COURT:  So to that extent, the objection to Judge
20  Porcelli's order is respectfully overruled -- I mean,
21  sustained, and the requirement will be that Hi-Lite will need
22  to produce financial information that is sufficient to disclose
23  transactions between Hi-Lite and BLE with respect to sales and
24  purchases such that BLE will be able to ascertain for itself
25  how much money was paid to Hi-Lite on which transactions on

1  which dates so that there can be a meaningful disagreement
2  about what is a sale on an infringing product and what is a
3  sale on a non-infringing product.
4          The rebuttal expert or the criticizing expert,
5  Seggev; is that how his name is pronounced?
6          MR. COLITZ:  Yes, Your Honor.
7          THE COURT:  That motion is denied.
8          Yes, sir?
9          MR. FERNANDEZ:  If I may, Your Honor, following up or
10  dovetailing in connection with the discovery of financial
11  documents, we have also not been provided the evidence or
12  financials relating to infringement claims that we've made
13  against Hi-Lite.  And those relate to Hi-Lite's own conduct,
14  not just the transactions between Hi-Lite and Barn Light
15  Electric, but the transactions that happened between Hi-Lite
16  and Barnlight Originals and third parties.
17          So we have direct evidence that Barnlight Originals
18  engaged in infringement and infringing conduct.  We have direct
19  evidence that Hi-Lite engaged in infringing conduct itself --
20          THE COURT:  By doing what?
21          MR. FERNANDEZ:  By taking sales -- or first of all,
22  by emblazoning the Barnlight Originals' mark on the products
23  that they're selling and shipping out the door on behalf of
24  Barnlight Originals.
25          THE COURT:  But that's going to be covered in the

```
 1    Barnlight Originals' discovery, if it came out of Barnlight
 2    Originals.
 3              MR. FERNANDEZ:  Your Honor, the profits that are
 4    associated with their doing that have not been disclosed and we
 5    have no way of accessing that.  The only information that
 6    they've produced is purchase orders from Barnlight Originals to
 7    Hi-Lite and then invoices from Hi-Lite to Barnlight Originals
 8    and the three-line memo.
 9              They also have not produced any of the instances
10    where their Hi-Lite employee, which was actually working at --
11    upstairs in the so called Barnlight Originals' offices, and
12    whenever there was a call for a commercial order or some other
13    type of order for products that weren't on the Barnlight
14    Originals' site, that employee would send the customer directly
15    to Hi-Lite and Hi-Lite would fulfill the order themselves.  So
16    that's --
17              THE COURT:  I'm sure that didn't happen, did it?
18              MR. FERNANDEZ:  We have --
19              THE COURT:  Counsel?
20              MR. FERNANDEZ:  I have testimony from --
21              THE COURT:  I'm asking Barnlight Originals' lawyer.
22              MR. COLITZ:  Even if it happened, it's --
23              THE COURT:  Well, did it happen?
24              MR. COLITZ:  I believe he's got testimony that that
25    may have happened.
```

1          THE COURT:  And if it happened and they therefore

2     entered into the Hi-Lite universe through the Barnlight

3     Originals' competing company which was established for the sole

4     purpose of getting back at Barn Light Electric, then wouldn't

5     Hi-Lite have profited from that endeavor?

6          MR. COLITZ:  For a trademark infringement claim,

7     which is what they have got, the only thing that is relevant is

8     who is the infringer, who was using the infringing mark.  The

9     mark that they're accused of infringing is Barnlight Originals'

10    and Hi-Lite never used that mark.  That's all we have to know.

11    They do not get to Hi-Lite's financials just because maybe

12    somebody at Hi-Lite referred an order to Barnlight Originals.

13    That does not make Hi-Lite an infringer.

14         THE COURT:  Well, what if Barnlight got the customer

15    through the use of Barn Light Electric's mark and Barnlight

16    Originals then contacted Hi-Lite which was downstairs or

17    upstairs and said, we are trying to fulfill this order, we

18    don't want it to get over to Barn Light Electric, can you give

19    us enough product to fill this order?

20         MR. COLITZ:  There's certainly no evidence of

21    anything of that sort.  The best evidence that they could hope

22    for would be that somebody came to Hi-Lite and said, I want to

23    purchase a light fixture.  Hi-Lite doesn't sell direct to

24    consumers, so they say, use our direct to consumer entity,

25    Barnlight Originals.

1           THE COURT:  That's not what I just heard there to be

2    evidence of.  I heard that there was evidence that someone

3    contacted Barnlight Originals and said we want a thousand

4    lights, and Barnlight Originals says we only have 300 in the

5    box.  They refer that call up knowingly to Hi-Lite and say, we

6    need 700 more lights, and Hi-Lite, through the efforts of

7    Barnlight Originals, says, we'll fulfill the order.

8           MR. COLITZ:  I'm not aware of any of that testimony.

9           THE COURT:  Well, let me hear the deposition

10   transcript.

11          MR. FERNANDEZ:  This is the deposition of George

12   Gonzalez who is a former employee of Hi-Lite.

13          THE COURT:  Just read it to me.

14          MR. FERNANDEZ:  Mr. Gonzalez was asked --

15          THE COURT:  What pages?

16          MR. FERNANDEZ:  This is on page 149 at line 11.

17          "You said that if anybody called about a Hi-Lite

18   product, try to find the equivalent."  And they're

19   correcting -- he's correcting some prior testimony there.  But

20   the response was, "Oh, if anybody called about a Barn Light

21   Electric product, and they're calling us, they were calling me

22   at Barnlight Originals, that I would -- I was supposed to find

23   an equivalent, either on the Barnlight Originals' website or

24   the Hi-Lite website, because the Barnlight Originals' website

25   didn't have all the Hi-Lite products uploaded yet.  And then if

1    it wasn't available to send them -- send them the customers --
2    send Hi-Lite the customer."
3         That's exactly this scenario.  There was instances
4    where consumers were reaching out to Barnlight Originals with
5    the expectation that it was Barn Light Electric, and then
6    Barnlight Originals was instructed and it was actually an
7    employee of Hi-Lite was calling up the guys at -- downstairs
8    and saying, here's the sale, you fulfill it.
9         That's not the only instance, Your Honor.  There's
10   another one where there was an email from Wes Johnson who is
11   also an employee of Hi-Lite.  The subject --
12        THE COURT:  Well, let me ask you this.  Let's assume
13   that happened.  Customer A calls Barnlight Originals believing
14   they're trying to talk to Barn Light Electric, and they say, we
15   need a thousand lights.  And Barnlight Originals either doesn't
16   carry those lights or doesn't have a thousand and the employee
17   of Hi-Lite says, send the order to -- he sends the order to
18   Hi-Lite directly and Hi-Lite fulfills the order.
19        What evidence would there be of that?  Is it your
20   contention then that the order would be filled by Hi-Lite
21   through Barnlight or the order would be filled directly by
22   Hi-Lite?
23        MR. FERNANDEZ:  It was filled directly by Hi-Lite.
24        THE COURT:  And how would we know that?
25        MR. FERNANDEZ:  There would be a transaction -- there

1    could be emails and correspondence directly from the employee
2    that was sitting in the office upstairs at Barnlight Originals.
3            THE COURT:  Well, that's not financial information,
4    these emails and such.  You should already have those.
5            MR. FERNANDEZ:  That would connect the correspondence
6    or that would connect the transaction to the transaction that
7    was completed or finished by Hi-Lite.
8            THE COURT:  Well, Judge Porcelli's order went to
9    financial data.  Judge Porcelli's order didn't speak to emails
10   that related to direct infringement by Hi-Lite.  I would assume
11   if there were any such emails, you've requested them and you've
12   gotten them.  And then from there, you said, ah-ha, this
13   happened, and now we need to know how much.  But are you now
14   asking for me to allow you to get emails that would disclose
15   that this happened and then get the financials related to that
16   which hasn't yet been established?
17           MR. FERNANDEZ:  No, Your Honor.  Let me clarify.
18   There was a transaction that occurred.  We want the financial
19   information associated with that transaction.  We --
20           THE COURT:  You want financial information that
21   discloses any time Hi-Lite fulfilled an order called in by Barn
22   Light Electric?
23           MR. FERNANDEZ:  Yes or referred by --
24           THE COURT:  I mean Barnlight Originals?
25           MR. FERNANDEZ:  Yes, or referred by Barnlight

1    Originals to Hi-Lite.

2            THE COURT:  You can get that.  If there's such

3    evidence of transactions fulfilled by Hi-Lite due to referrals

4    from Barnlight Originals, then that information needs to be

5    produced.

6            MR. COLITZ:  Your Honor, even if that happened, even

7    assume -- let's just assume that happened, that doesn't make

8    Hi-Lite a trademark infringer.

9            THE COURT:  Then you'll make that argument.  But

10   right now we're talking about producing the financial

11   information that Hi-Lite fulfilled orders that Barnlight

12   requested be fulfilled because Barnlight was marketing on --

13   Barnlight O was marketing on Barn Light E's alleged trademark

14   because they were working together, according to the Barn Light

15   Electric claim, and they were using Barn Light Electric's

16   trademark to sell to customers.

17           And if your contention is we were just an innocent

18   bystander and we didn't know that the trademark was being used

19   in this way, and we didn't have any use of the trademark, we

20   didn't pass this off as anything, then we'll hear about it.

21           But in the short term, just produce the transactional

22   information of referrals from Barnlight Originals to Hi-Lite

23   and any financial information demonstrating Hi-Lite having

24   fulfilled orders through Barnlight Originals.

25           MR. COLITZ:  Yes, ma'am.

1    MR. FERNANDEZ:  Your Honor, if I may just supplement
2  to that.  I'll be brief.
3    Two points.  They also -- we're also seeking the
4  financials between Hi-Lite and Barnlight Originals so that we
5  can derive what the profits were associated with Hi-Lite's
6  portion of that transaction.
7    Now what they've done is they're trying to say this
8  company, if they're infringing, that's not our problem, we
9  don't have to account for that, our profits are our profits.
10  So they created a safe haven.
11    Now what's important here is that Jeffrey Ohai, the
12  vice president of Hi-Lite, is the president of Barnlight
13  Originals.  And Dorothy Ohai, Jeffrey's mother, is -- or
14  Mr. Ohai's mother is the treasurer of Barnlight Originals.  So
15  they're all melded together, and it's been absolutely a knowing
16  concerted effort to profit from --
17    THE COURT:  What information do you want precisely?
18    MR. FERNANDEZ:  I want Hi-Lite's financials relating
19  to the profits that they derived from their relationship with
20  Barnlight Originals.
21    THE COURT:  Are there such profits derived from
22  Barnlight Originals?
23    MR. COLITZ:  Just be what Your Honor's referred to.
24  I mean, the only surprise to us that it occurred, but what --
25  I'm sorry -- what we've just previously agreed to give would be

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

1   any referrals from Barnlight Originals to Hi-Lite.  That would
2   be the extent of the --
3            THE COURT:  So if -- Hi-Lite, I'm assuming, does not
4   own Barnlight Originals?
5            MR. COLITZ:  No, they're separate entities.
6            THE COURT:  And Hi-Lite does not derive any profits
7   from Barnlight Originals directly or indirectly, except to the
8   extent they may have fulfilled orders Barnlight Originals
9   referred to them through people thinking they were dealing with
10  Barn Light Electric as alleged?
11           MR. COLITZ:  If that's what is alleged, we can
12  produce that, otherwise, there's no relationships, they're
13  separate entities.
14           THE COURT:  Well, then file an affidavit -- prepare
15  an affidavit from your client that says that Hi-Lite derived no
16  profits from Barnlight Originals as any sort of pass through
17  profit basis.  I don't know what else to tell you.  If they say
18  they're not connected and they don't derive any profit, I don't
19  know how we can do anything about that other than say it seems
20  like they might have.
21           MR. FERNANDEZ:  Your Honor, this requires for the
22  Court to accept that they were selling products through
23  Barnlight Originals at no profit.  And on its face, we should
24  be able to explore that and see, well, are you really telling
25  the Court that the margin on product sales between Hi-Lite and

1  Barnlight Originals, two companies which they maintain were
2  separate or individual companies, that they're doing those pro
3  bono or --
4          THE COURT:  Well, I assume that if they prepare such
5  an affidavit, they would have considered whether they profited
6  by selling product to Barnlight.
7          MR. COLITZ:  We did.  That's -- that's a given, that
8  basically, Barnlight Originals is an account of Hi-Lite.  So
9  Hi-Lite does sell products through Barnlight Originals.
10         THE COURT:  What is the ownership interest of the
11  Ohais in Hi-Lite?
12         MR. COLITZ:  I believe Hi-Lite is owned by
13  Ms. Dorothy Ohai.
14         THE COURT:  One hundred percent?
15         MR. COLITZ:  I believe so, yes.
16         THE COURT:  So whatever profit they made, she made?
17         MR. COLITZ:  Yes.
18         THE COURT:  And so she creates her own little entity,
19  calls it a separate entity, competes with the entity she's met
20  with, sells product to them at whatever cost, and makes no
21  profit on those sales?
22         MR. COLITZ:  That's not what I'm saying.  First of
23  all, Barnlight Originals was established by her son,
24  Mr. Jeffrey Ohai.  And they are separate entities.  They're
25  separate companies.  They -- now Barnlight Originals is an

1    account of Hi-Lite's, so Hi-Lite -- if you go to the Barnlight
2    Originals' website, those are Hi-Lite lighting fixtures, but
3    it's an account of --
4            THE COURT:  Produce to the Court, in camera, the
5    profits between Ohai son and Ohai mom, and then I'll decide
6    whether it's pertinent to disclose to Barn Light Electric.
7            MR. COLITZ:  Yes, Your Honor.
8            THE COURT:  And that includes profits made on product
9    sold through Barnlight Originals purchased from Hi-Lite as a
10   client or customer.
11           MR. COLITZ:  Yes, ma'am.
12           THE COURT:  How long would it take to produce that?
13           MR. COLITZ:  I would have to check with my client,
14   but I would imagine --
15           THE COURT:  Weeks or days?
16           MR. COLITZ:  I would imagine weeks.
17           THE COURT:  All right.
18           (Brief pause.)
19           Well, since the insurance company is here and been
20   waiting patiently, I don't understand how this is supposed to
21   work.  You're going to propound some interrogatories to my jury
22   in this case that purport to determine whether you have to pay
23   coverage on these claims based upon the date on which the
24   claims accrued?
25           MS. LINHART:  Yes, to a certain extent.

1          THE COURT:  So why don't you file your own coverage
2    case when this is over?  Don't I have enough to deal with?
3          MS. LINHART:  Well, what we're seeking to do is to
4    intervene for the limited purpose of participating in the
5    drafting of the jury verdict forms so that way, if there is any
6    determination of liability against Barn Light Electric or the
7    Scotts, we would get an allocation of damages that would help
8    us avoid additional litigation and that would provide a
9    breakdown of the damages based on these various counts, the
10   causes of action, also by date --
11         THE COURT:  Who is your insured?
12         MS. LINHART:  We are defending Barn Light Electric
13   and the Scotts in connection with the counterclaim --
14         THE COURT:  Your potential insureds are Barn Light
15   Electric and the Scotts?
16         MS. LINHART:  And the Scotts in connection solely
17   with the counterclaim and the third party complaint.
18         THE COURT:  And Barnlight Originals is interested in
19   knowing whether the claims are covered claims?
20         MS. LINHART:  They would have -- well, I think all --
21   both sides would be -- would have an interest in knowing what
22   claims -- what damages would or wouldn't be covered.
23         THE COURT:  So why wouldn't they draft their own
24   special interrogatories without your help?
25         MS. LINHART:  Well, the hope is they would prepare

1    their own verdict forms and that we would be able to review the
2    verdict forms to insure that it addresses the information we'll
3    need to break down the damages.
4         THE COURT:  Aren't they required to cooperate with
5    you in insurance coverage issues?
6         MS. LINHART:  Barn Light Electric and the Scotts
7    would, under the policy, have cooperation obligations.  There
8    are provisions that require them to cooperate with us.
9         THE COURT:  So can't you tell them to make sure when
10   you prepare the verdict form that you have this broken down by
11   dates?
12        MS. LINHART:  Yes, we have told them that and we --
13        THE COURT:  So why do you need to intervene?
14        MS. LINHART:  Well, there are various coverage
15   issues, it's not just particular to dates.
16        THE COURT:  Then you'll need to file a coverage
17   lawsuit when this is over.  I'm not going to try coverage in
18   the liability case.  And who's going to argue for these various
19   breakdowns and various coverage breakdowns to the jury?
20        MS. LINHART:  We would be -- we would not be looking
21   to argue any of the coverage issues to the jury.  It could be
22   limited that if the jury finds liability on behalf of Barn
23   Light Electric or the Scotts in connection with the
24   counterclaim, that supplemental to any determination, they have
25   a jury verdict interrogatory that asks them to allocate the

damages.

THE COURT: Okay. Let's say we do that, let's say we prepare this verdict form and it says -- is this a claims made policy or a --

MS. LINHART: It's an occurrence policy.

THE COURT: Okay. Let's say we do that and let's says that there's a fear that the jury is going to pick the wrong date and occur it in the date that's not covered. And Barn Light Electric doesn't want that to happen nor does Barnlight Originals because everybody wants your money. So who is going to stand up to the jury and say make sure you allocate this to this period? Who's going to offer the evidence from which the jury would be able to allocate it during the period and make the argument for doing so?

MS. LINHART: Well, the carrier is not seeking to intervene to do that.

THE COURT: I understand that, but what I'm saying is who would?

MS. LINHART: I think the parties, through trial of the case and use of their experts, will be looking for, you know, an award as to damages for these various --

THE COURT: Well, why would they tell the jury how to do that if they don't want it done if there's a fear, for example, they're going to do it the wrong way? Who's going to do this? Is Barnlight Originals going to argue allocution to

1  the covered period one way or the other?

2          MR. COLITZ:  My understanding is the more relevant

3  issue is whether or not the conduct was willful and that would

4  --

5          THE COURT:  Well, that's not been the argument.

6  You're not asking the jury to find willfulness as part of this.

7          You can file your own coverage case, no intervention

8  by the carrier.  File your own coverage case when this is over.

9          MS. LINHART:  I mean, some of these things would not

10  be able to be later determined in the coverage case.

11          THE COURT:  The parties who are insured and who have

12  a right to coverage and a right to be paid need to be arguing

13  for these special verdict forms, with or without your help

14  behind the screens if they choose.  So why is the Court going

15  to have you intervene and go sit in my charge conference and

16  tell me to make findings in a certain way adverse to the

17  interest of both of these parties, potentially, at a charge

18  conference?

19          I'm not trying the coverage case in the liability

20  case.  So if you want to influence anybody on what the verdict

21  form should look like, feel free to call them, but I'm not

22  going to let the carrier intervene in this case to sort of

23  prove up the coverage, because the lawyers know and the clients

24  know if they have coverage risks and they know if those

25  coverage risks aren't tried properly in the underlying case,

1    they might be at risk for losing or gaining coverage.  And so

2    if they want to do that, they're free to do it and if they

3    don't want to do it, I'm not doing it for them, and you're not

4    going to intervene on the eve of trial into the case to try to

5    try coverage in the liability case.

6         Why wouldn't all carriers do that?  They try,

7    actually.  They bring the coverage case and the liability case

8    and the Court always stays the coverage case until the

9    liability case is decided.  And sometimes they goof and they

10   don't get the right findings and so they either lose coverage

11   or they suffer coverage, but either way, you try coverage

12   separately.

13        MS. LINHART:  Well, right, we're not looking to try

14   the coverage issues in this case, we're just asking that the

15   jury be asked to allocate the damages per count so that we know

16   what damages stem from what count, and also if they're going to

17   be awarding any type of attorneys fees against Barn Light

18   Electric and the Scotts, that should -- have that separate, and

19   if there's any type of award for punitive damages based on

20   willfulness, treble damages, that that be separated out so that

21   there's a -- whatever the damages award, shows what it's being

22   awarded for.

23        THE COURT:  Thank you for that information.

24   Everybody hears that.  Anybody wants that, ask for it at the

25   charge conference, argue against it if you don't want it, and

1    I'll make a decision based upon the parties at issue before me
2    and not based on the carrier who is not a party.  And if they
3    do it wrong, then you'll have to re-litigate it, if they do it
4    right, then you'll have your answer, and you'll go hence
5    without day.  But I'm not going to allow the carrier to
6    intervene in this case and direct a verdict form that no one is
7    bound to explain to this jury.

8            If I allowed you to sit in the charge conference and
9    put these questions to the jury and neither of the parties wish
10   to explain to the jury where to go find that evidence to do
11   that, and neither of the parties argue to the jury what the
12   proper allocation was, this jury would have a verdict form and
13   not know what to do with it.  And then we'd have a probably
14   faulty verdict because no one will have instructed them.

15           Now, if any party buys into this, believes they're
16   duty bound to do it or believes it's to their benefit to do it
17   and they do it and they argue it and everybody agrees or the
18   Court orders it, then we'll do it, but not by intervention of
19   the carrier in a liability case on a question of coverage.

20           But I understand your need to have this information,
21   but that's left up to the people who stand to benefit from this
22   policy to protect their interests in it, and if they don't,
23   then they don't, and if they do, then they do.

24           MS. LINHART:  Thank you.

25           THE COURT:  Anybody disagree with that?

1          MR. FERNANDEZ:  No, Your Honor.

2          MR. COLITZ:  No, Your Honor.

3          THE COURT:  The handshake agreement business, if

4    that's part of the narrative, they can say whatever they want

5    to say about it and you can cross-examine whoever says it.  The

6    motion therefore is denied.

7          The motion regarding forgery, as I understand it,

8    that State Court case was dismissed and there was never a

9    finding of forgery; is that right?

10          MR. FERNANDEZ:  That's correct, Your Honor.

11          THE COURT:  Is that right?

12          MR. COLITZ:  Yes, Your Honor.

13          THE COURT:  All right.

14          Then the motion in limine is granted.

15          MR. COLITZ:  I just -- if I may on that one point,

16   Your Honor?

17          THE COURT:  Yes, sir?

18          MR. COLITZ:  We think -- we think that is relevant

19   because --

20          THE COURT:  Somebody accused him of forging a

21   non-complete agreement, they litigate it, they resolved it and

22   the case was dismissed and there was no finding of forgery.  So

23   that doesn't go to reputation, generally, it goes to past --

24   alleged past act, bad act.  And even if it were marginally

25   relevant, it would be excluded under 403.  So the motion is

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

1  granted.

2      MR. COLITZ:  Yes, Your Honor.

3      THE COURT:  Prior violence and crime.  Do you really

4  intend to offer this evidence of somebody making threats about

5  a gun and acts committed by the Scotts' kids and drug use by

6  Mr. Scott and BLE hires ex-cons and murderers?

7      MR. COLITZ:  No.

8      THE COURT:  All right.

9      That's granted as -- well, denied as moot.

10     And Sanders, we've already discussed, is not going to

11 offer to authenticate the photographs of the inside of the box,

12 but he will offer evidence to authenticate the outside of the

13 box.

14     And if Mr. Scott called the product China S-H-I-T,

15 well then he did and he'll have to live with it.  So that

16 motion is denied.

17     I'll tell you, I came in prepared to make certain

18 rulings.  I'm a little bit held up by a couple of things I've

19 heard today.  I am not convinced that there is any trade dress

20 associated with the Hi-Lite product because of the absence of

21 evidence of secondary meaning.  I'll look back at the case law,

22 the Eleventh Circuit case, but I've been reading pieces of it

23 here as we've been talking, and the Eleventh Circuit seems to

24 hold that the requirement that that be proven as an element and

25 cannot -- the fact of copying cannot by itself establish

secondary meaning, and I think that's pretty much all we have
here on that element.  And if it fails, admittedly all of it
fails, but I'll look back at it.

The invalidity issue seems to have been resolved by
the stipulation of covenant, we expect, so I'll see that when
it comes in.  This license is an issue.  It seems like an
irrevocable non-exclusive license was given with no limitations
on it.  And it doesn't seem like it was ever effectively
revoked because we wouldn't be here, I don't think, for the
claims post dating the termination of the relationship if it
had been.

I was convinced before I came here that *Daystar*
precluded the false advertisement claims as it related to the
reverse passing off.  I'll look back at that, but I am less
sure than I was, but not moved completely to the other side.
And I think that might affect all of the catalog claims.  I
don't know why there hasn't been a motion directed to the
patent -- I'm sorry -- the trademark infringement claim brought
by BLO, I guess, but there hasn't been, so it sits out there
because this mark, if it's protectable, was first used by BLE
and BLO is suing on it, right?

MR. COLITZ:  Yes, Your Honor, because they used our
identical Barnlight Originals' mark on their website.  It's the
identical mark.  They used it on their website to sell their
products.

1           THE COURT:  The original --

2           MR. COLITZ:  Not the original Barn Light, Barnlight

3   Originals, our company name they used on their website.  That's

4   our claim for trademark infringement.

5           THE COURT:  All right.

6           Well, that's where we stand.  Has there been an

7   effort to try to resolve this case short of some full blown

8   litigation and do your clients really know how much of their

9   money you're spending.

10          MR. FERNANDEZ:  Yes, Your Honor.  There's been the

11  mediation in December, and we reached out to the other side

12  earlier last week and coordinated to have an actual

13  teleconference between the principals directly so that there

14  wouldn't be any miscommunication.  And that teleconference took

15  place on Wednesday, last week, I believe, and the parties are

16  unfortunately light years apart.

17          THE COURT:  All right.

18          So no chance of a resolution is what you are saying?

19          MR. COLITZ:  I never say that, Your Honor.

20          MR. FERNANDEZ:  I would say there is no chance of a

21  resolution based on their last comments.

22          THE COURT:  Well, I think they need to come up with a

23  resolution because what they may or may not appreciate is that

24  you are spying more litigation no matter what I say, no matter

25  what the jury says, that's just going to be one more ticket to

1 another round of litigation.  I doubt that any outcome that is
2 fashioned and forced will resolve their differences between
3 each other.  And the real issues will have to be resolved among
4 them in order for them to be satisfied with the resolution or
5 by the Court of last appeal which is going to be enormously
6 time consuming and expensive.

7            I will say I don't want anymore motions filed in this
8 case at all without a motion for leave to file a motion.  And I
9 need you to have met with each other and talked about it before
10 you file it.  Other than what I've asked you to submit, I don't
11 want to see anymore motions filed in the case with me or with
12 Judge Porcelli unless the parties have met and conferred and
13 have filed a motion asking for my permission to file a motion.

14            And I will tell you that motions that are filed need
15 to be well founded because to the extent that an attorney fee
16 shift can be made on such motions, I intend to make them
17 because this has really gotten out of hand.  I don't have
18 hearings in most of my cases unless they've gotten out of hand.

19            Part of it I take some onus in because I think if we
20 had gotten to some of these early motions sooner, some of it
21 would have been resolved.  But we can get this matter tried.  I
22 see you all have a motion for extension of time.  We'll have to
23 grant that to permit this discovery.

24            How long do you think you need to get the financial
25 data from the BLE?

1          MR. COLITZ:  I would imagine we would need two to
2     three weeks to get that.
3          THE COURT:  And this amendment -- limited amendment
4     that you are going to file will take about a week?
5          MR. FERNANDEZ:  We can make the limited amendment
6     very quickly, but Your Honor, Judge Porcelli has already
7     anticipated that there would be 30(b)6 depositions that have to
8     be taken based on Your Honor's ruling as well as the improper
9     conduct for improper preparation in connection with those
10    30(B)6s, so we need time to schedule those if, in fact, the --
11         THE COURT:  30(b)6 on the financial information you
12    mean?
13         MR. FERNANDEZ:  No, Your Honor, the 30(b)6 is related
14    to a separate motion to compel that was filed in October and
15    which Judge Porcelli -- which is pending before Judge Porcelli.
16         THE COURT:  Well, the Court is withdrawing the
17    reference.  I'll rule on them and get you a deadline.
18         MR. FERNANDEZ:  Thank you, Your Honor.
19         THE COURT:  And so three weeks for the financial
20    information, a week for the amendment, 14 days to respond to
21    the amendment, not by filing a motion to amend to add a
22    contract claim because that's denied.  And then perhaps some
23    deposition discovery to follow the financial discovery.
24              And what is the issue before Judge Porcelli?
25         MR. FERNANDEZ:  Your Honor, during our 30(b)6

| | |
|---|---|
| 1 | depositions, the Defendant's representatives showed up entirely |
| 2 | unprepared and fully stonewalled.  They didn't know numerous |
| 3 | topics, they refused to answer on numerous topics, and on -- |
| 4 | which those topics which they did respond to, many of them were |
| 5 | I don't know, I spent 45 minutes preparing for this, I only |
| 6 | read the topics, I didn't prepare.  So we got a half-baked |
| 7 | 30(b)6 deposition out of both or out of three different -- |
| 8 | THE COURT:  I knew if I kept you here long enough you |
| 9 | would get mean again to each other. |
| 10 | MR. FERNANDEZ:  I'm sorry, Your Honor? |
| 11 | THE COURT:  I said I knew if I kept you here long |
| 12 | enough you'd get mean to each other, start using the |
| 13 | pejoratives "half-baked, "stonewalled" type of language. |
| 14 | MR. FERNANDEZ:  I'm sorry, Your Honor. |
| 15 | THE COURT:  Do we have this in the folder?  Which |
| 16 | one? |
| 17 | MR. FERNANDEZ:  I will blame it on -- |
| 18 | THE COURT:  Delirium. |
| 19 | (Brief pause.) |
| 20 | MR. FERNANDEZ:  Your Honor, it's docket entry -- |
| 21 | THE COURT:  I have it.  Have the parties agreed to |
| 22 | redepose or not? |
| 23 | MR. COLITZ:  No, Your Honor, we don't think it's |
| 24 | necessary. |
| 25 | THE COURT:  Because they answered all the questions? |

```
1           MR. COLITZ:  Yes, Your Honor.
2           THE COURT:  And they were prepared at the deposition?
3           MR. COLITZ:  Yes, they were, Your Honor.
4           THE COURT:  So if I rule on this motion adversely to
5  you, I'll be dead wrong?
6           MR. COLITZ:  I believe you'd be incorrect, Your
7  Honor.
8           I would also point out to the Court that we also have
9  a motion to compel before Judge Porcelli related to their
10 discovery.  Judge Porcelli allowed us to basically take the
11 deposition of their document custodian in view of certain
12 questions regarding discovery.
13          The deposition of that custodian has revealed that
14 some of their collection efforts were not adequate, shall we
15 say, and so that is also a motion that is before Judge
16 Porcelli.  And I would just point out that we filed our
17 opposition to their motion for a continuance before we filed
18 that renewed motion for motion to compel given what we're
19 asking for, and the renewed motion to compel we now agree that
20 April is unlikely as a trial term.  And our motion is at Docket
21 260, Your Honor.
22          THE COURT:  All right.
23          I'll take those motions up and I'll give you a
24 resolution of them and then I'll fashion a reasonable extension
25 of the deadlines in this case and try to get you back on track
```

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

```
 1    for a trial on all issues that remain to be tried and encourage
 2    you to try to work out a resolution in the short term.
 3            Yes, sir?
 4            MR. COLITZ:  Given that that's the case and that
 5    we're not allowed to file anymore motions, if the Court is
 6    inclined to take us off the April trial term, we have a --
 7    currently a deadline for the pretrial brief on March --
 8            THE COURT:  Those are all extended.  All of the final
 9    pretrial deadlines are terminated, the Court's order setting
10    the case back on a trial schedule post this discovery that has
11    to be undertaken and post my review of the motions in front of
12    Judge Porcelli -- I lost my train of thought.
13            But once I resolve those, I'll set you back on a
14    trial calendar with appropriate deadlines so that you can
15    presumably meet those deadlines.
16            MR. FERNANDEZ:  Thank you, Your Honor.
17            THE COURT:  Anything else I can assist you with
18    before we adjourn?
19            MR. COLITZ:  Thank you for your time.
20            MR. FERNANDEZ:  Thank you, Your Honor.  I apologize
21    to opposing counsel for my outbursts of anger.
22            THE COURT:  Thank you.  Nothing like a reasoned
23    resolution.  Your primary job to your client is as counselors
24    not as advocates.  And this -- nobody is going to be happy with
25    the resolution of this case.  And so the only thing they can
```

1   expect to be is reasonably dissatisfied.  And they need to get
2   to a point of reasonable dissatisfaction so they can get on
3   with making a set of lights which is what I presume they prefer
4   to do.
5            I was teasing my Law Clerk this morning and I said
6   two wrongs don't make a right except for a right ugly lawsuit
7   which is what I think happened here.
8            MR. COLITZ:  Thank you, Your Honor.
9            MR. FERNANDEZ:  Thank you, Your Honor.
10           (Thereupon, the proceedings concluded.)
11                    ********
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CERTIFICATE

STATE OF FLORIDA          )

COUNTY OF HILLSBOROUGH    )

        I, CLAUDIA SPANGLER-FRY, Official Court Reporter for the United States District Court, Middle District, Tampa Division,

        DO HEREBY CERTIFY, that I was authorized to and did, through use of Computer Aided Transcription, report in shorthand the proceedings and evidence in the above-styled cause, as stated in the caption hereto, and that the foregoing pages numbered 1 to 141, inclusive, constitute a true and correct transcription of my shorthand report of said proceedings and evidence.

        IN WITNESS WHEREOF I have hereunto set my hand in the City of Tampa, County of Hillsborough, State of Florida, this 8th day of March, 2016.

*Claudia Spangler-Fry*
_____
CLAUDIA SPANGLER-FRY, Official Court Reporter

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

**$**

$100 [4] 108/6 108/7 108/7 108/8
$300 [1] 88/25
$50 [1] 110/21

**'**

'14 [1] 101/15
'30s [1] 9/14
'40s [1] 9/15
'cause [13] 32/4 37/2 38/12 41/7 42/2 47/3 55/7 58/6 66/20 82/12 105/12 106/4 106/22

**1**

10 [2] 51/1 51/2
11 [1] 117/16
12 [2] 39/23 53/23
131 [1] 51/12
14 [1] 136/20
141 [1] 141/13
149 [1] 117/16
15 [2] 16/25 17/1
17 [1] 48/16
17,000 [6] 34/3 34/12 34/13 34/17 36/1 36/2
1920s [1] 9/14
1955 [1] 3/7
1983 [1] 57/1

**2**

2.6 million [6] 106/11 106/13 106/17 108/17 110/4 110/7
20015 [1] 2/10
2008 [2] 26/14 77/12
2009 [1] 25/10
2012 [2] 72/24 101/15
2013 [1] 101/15
2015 [1] 101/15
2016 [4] 1/7 3/2 76/24 141/18
202 [1] 2/11
23 [3] 1/7 3/2 101/6
236,000 [1] 106/12
260 [1] 138/21
2700 [1] 2/14
273-5073 [1] 2/15
2830 [1] 2/6
2d [1] 57/4

**3**

30 [7] 102/19 136/7 136/10 136/11 136/13 136/25 137/7
300 [1] 117/4
301-5575 [1] 2/24
315 [1] 2/19
33 [1] 16/13
33602 [3] 2/6 2/15 2/23
33614 [1] 2/20
35AEP [1] 1/12
374-8890 [1] 2/7

**4**

400 [1] 2/6
401 [1] 2/14
403 [1] 131/25
410 [1] 2/10
43 [11] 57/23 61/9 85/8 85/9 86/1 87/1 87/19 89/21 89/22 91/20 92/12
45 [1] 137/5
4631 [1] 2/19
477 [10] 11/13 11/13 12/6 12/14 13/15 13/16 13/24 17/7
36/18 36/20
478-9685 [1] 2/11
4th [1] 72/24

**5**

50 percent [6] 59/11 63/11 64/8 64/24 66/5 66/6
5073 [1] 2/15
5168 [1] 2/20
5335 [1] 2/10
5575 [1] 2/24
5th [1] 76/23

**6**

6s [1] 136/10

**7**

700 [1] 117/6
716 [3] 51/9 56/25 57/4
78 [1] 101/5
7th [2] 2/23 72/24

**8**

801 [1] 2/23
813 [4] 2/7 2/15 2/20 2/24
82 [1] 101/23
83 [1] 102/9
84 [1] 102/11
854 [3] 51/9 57/1 57/4
88-page [2] 103/24 107/2
8890 [1] 2/7
8:14-Civil-1955 [1] 3/7
8th [1] 141/18

**9**

964 [1] 51/12
9685 [1] 2/11
9:30 [1] 1/8

**A**

a.m [1] 1/8
ABC [1] 98/8
ability [5] 11/21 25/15 49/14 82/11 100/19
able [20] 31/14 45/24 46/7 47/3 47/20 49/22 50/7 54/3 63/8 63/12 63/17 71/17 76/19 96/18 98/1 113/24 122/24 126/1 127/13 128/10
about [66] 5/1 5/4 8/6 8/8 8/8 8/14 8/25 12/19 12/19 12/23 13/4 13/5 14/2 14/11 15/8 20/14 21/8 22/8 26/2 26/20 26/23 27/8 27/10 28/1 28/14 31/12 31/12 31/23 36/22 41/8 42/5 42/25 50/17 55/8 55/22 59/19 66/12 67/9 70/19 71/16 73/21 81/1 81/15 81/17 85/7 85/12 87/15 100/15 102/14 103/1 103/3 104/14 106/5 106/6 113/5 113/10 114/2 117/17 117/20 120/10 120/20 122/19 131/5 132/4 135/9 136/4
above [1] 141/12
above-styled [1] 141/12
absence [6] 23/7 23/20 24/2 26/5 26/21 132/20
absolutely [6] 13/2 13/9 22/2 63/16 85/25 121/15
accept [4] 37/7 68/25 75/18 122/22
acceptance [1] 72/21
accepted [3] 10/20 72/19 73/12

accepting [1] 97/2
accessing [2] 31/8 115/5
according [1] 120/14
accordingly [1] 93/21
account [4] 121/9 123/8 124/1 124/3
accrued [1] 124/24
accuracy [1] 102/18
accurate [2] 37/25 38/2
accused [5] 17/6 17/14 103/16 116/9 131/20
achieve [2] 54/18 55/2
achieved [2] 42/17 100/21
acknowledge [1] 72/3
act [26] 31/23 57/24 61/8 61/10 61/13 61/15 62/6 66/17 66/20 66/23 67/1 67/9 86/20 88/11 88/11 88/11 91/4 91/22 92/9 92/11 98/4 98/4 107/6 107/6 131/24 131/24
action [8] 65/20 77/10 99/25 100/5 100/9 100/11 100/12 125/10
actionable [3] 53/10 62/6 75/10
acts [1] 132/5
actual [6] 51/15 86/18 87/15 94/11 94/20 134/12
actually [24] 8/16 25/18 29/10 35/11 37/18 39/20 42/25 45/16 50/15 51/4 57/22 59/4 64/8 64/19 68/18 72/11 90/4 91/14 99/5 99/21 106/25 115/10 118/6 129/7
ad [1] 21/24
add [10] 6/2 31/11 69/3 76/10 78/9 78/18 79/9 80/12 84/20 136/21
added [2] 100/7 105/19
addition [2] 63/7 101/14
additional [4] 79/17 80/9 113/11 125/8
address [5] 3/16 28/25 30/18 39/11 86/25
addresses [1] 126/2
adequate [2] 74/20 138/14
adhere [1] 83/21
adjourn [1] 139/18
admissibility [5] 96/15 103/23 104/4 104/24 107/4
admission [1] 104/5
admit [2] 24/19 52/25
admitted [3] 79/19 79/21 80/6
admittedly [2] 107/7 133/2
adverse [1] 128/16
adversely [1] 138/4
advertised [2] 40/1 61/18
advertisement [1] 60/17 61/12 87/5 106/23 133/13
advertising [18] 40/1 57/22 57/24 58/11 60/14 60/21 60/24 61/1 61/5 61/20 66/15 69/1 86/19 91/20 91/22 100/1 105/22 106/1
advertizing [1] 62/6
advocates [1] 139/24
afernandez [1] 2/7
affect [1] 133/16
affidavit [4] 40/15 122/14 122/15 123/5
affirmative [12] 72/12 72/13 72/14 72/17 73/25 74/6 76/10 76/10 78/10 79/1 79/9 80/13

# A

affirmatively [2]   18/2 54/14
affixes [1]   48/1
affixing [1]   91/14
after [9]   10/2 25/23 35/2
61/17 63/22 70/3 76/19 89/24
106/21
again [19]   13/15 13/16 17/7
21/12 29/3 31/20 31/21 35/25
35/25 36/3 36/19 61/1 61/23
74/24 80/8 104/23 105/18 107/4
137/9
against [11]   14/5 20/5 20/13
33/13 51/13 74/5 102/23 114/13
125/6 129/17 129/25
ago [1]   100/12
agree [24]   7/23 7/24 8/9 11/1
12/9 12/11 12/12 14/15 27/20
31/24 33/11 33/12 53/12 57/6
61/12 78/1 78/16 81/9 83/2
83/3 83/3 83/4 93/20 138/19
agreed [9]   5/17 8/1 9/1 9/22
62/25 65/22 83/1 121/25 137/21
agreement [22]   6/25 7/15 7/19
8/4 8/4 8/6 8/9 8/10 8/11 8/16
8/23 9/3 10/24 11/23 36/12
72/19 80/14 80/22 81/4 83/6
131/3 131/21
agrees [1]   130/17
ah [1]   119/12
ah-ha [1]   119/12
Aided [1]   141/10
al [1]   3/6
albeit [1]   84/10
ALEJANDRO [1]   2/4
alerted [1]   72/11
Alex [1]   3/10
alive [3]   15/24 27/17 27/19
all [123]   4/14 4/15 4/18 4/19
4/21 5/3 5/8 5/11 5/12 6/5 6/6
6/8 6/14 10/22 13/19 13/19
14/21 16/22 17/3 17/4 19/7
19/22 21/3 21/25 22/13 24/2
24/21 25/9 25/10 26/1 27/12
30/3 31/14 34/4 34/13 34/13
34/18 36/8 36/10 36/14 37/1
37/8 39/2 41/6 44/4 45/1 48/5
48/16 49/25 50/1 50/11 52/7
52/21 53/24 54/15 54/16 54/23
56/17 57/11 58/10 59/10 59/11
63/2 64/8 64/18 69/2 70/9
71/11 72/9 74/18 75/14 76/11
77/25 79/18 80/7 80/11 83/22
84/4 89/18 92/23 93/4 93/8
97/21 98/8 98/9 100/14 103/16
104/5 104/7 104/13 105/9 106/4
107/4 108/9 109/19 110/18
111/17 111/19 112/8 112/10
112/22 114/21 116/10 117/25
121/15 123/23 124/17 125/20
129/6 131/13 132/8 133/1 133/2
133/16 134/5 134/17 135/8
135/22 137/25 138/22 139/1
139/8 139/8
allegation [4]   57/25 69/11
93/13 110/9
allegations [1]   52/15
allege [3]   64/4 92/19 92/22
alleged [11]   43/8 63/20 84/14
92/21 93/5 96/20 104/7 120/13
122/10 122/11 131/24
allegedly [1]   86/18

alleging [2]   65/21 65/21
allocate [4]   126/25 127/11
127/13 129/15
allocation [2]   125/7 130/12
allocution [1]   127/25
allow [7]   32/3 75/17 80/12
83/23 84/13 119/14 130/5
allowed [5]   73/2 79/9 130/8
138/10 139/5
allowing [3]   78/16 78/24 84/10
allows [1]   49/2
almost [4]   50/4 60/1 60/16
100/7
alone [4]   16/11 58/7 67/21
87/3
along [2]   36/11 92/23
already [16]   14/6 14/18 27/22
33/5 34/20 35/8 42/12 79/19
80/6 85/2 89/9 99/8 112/18
119/4 132/10 136/6
also [33]   3/12 3/14 12/7 18/15
18/22 23/22 24/6 24/6 36/11
37/8 37/19 51/10 55/24 61/19
63/7 65/20 77/7 79/15 81/10
91/20 98/3 107/5 110/9 114/11
115/9 118/11 121/3 121/3
125/10 129/16 138/8 138/8
138/15
alternative [2]   99/1 99/5
alternatives [1]   98/25
although [1]   72/20
always [2]   9/20 129/8
am [6]   51/22 60/9 88/23 99/7
132/19 133/14
Ambrit [1]   54/5
amend [14]   77/8 78/9 78/10
78/17 78/24 79/19 82/10 84/16
84/19 84/20 93/14 93/20 95/3
136/21
amended [4]   64/19 76/15 86/24
92/23
amendment [8]   78/20 83/23
84/10 136/3 136/3 136/5 136/20
136/21
among [1]   135/3
amount [2]   89/24 89/25
analogy [2]   68/18 68/19
analysis [4]   43/5 48/3 99/18
99/22
analyze [1]   76/19
ANDERSON [2]   2/13 4/1
anger [1]   139/21
another [10]   4/17 7/13 39/18
56/12 62/24 68/13 88/16 95/14
118/10 135/1
another's [2]   51/15 112/12
answer [37]   15/8 15/9 15/10
15/10 15/11 15/17 15/25 16/7
16/20 17/12 17/15 17/18 17/22
17/24 18/1 18/6 18/14 18/19
18/20 18/21 19/11 19/12 19/13
19/21 19/25 32/19 32/21 32/24
55/15 71/18 75/19 78/25 79/9
99/20 109/12 130/4 137/3
answered [3]   17/25 18/9 137/25
answers [1]   16/16
anticipated [1]   136/7
antique [1]   44/5
any [65]   7/16 9/8 10/10 10/24
12/17 13/22 17/17 18/3 18/5
21/11 47/3 48/14 49/15 54/23
55/8 55/10 62/17 63/22 67/1
67/2 67/8 68/4 69/10 71/9

72/14 78/5 78/23 79/17 79/18
80/2 84/1 84/9 86/5 86/6 86/9
86/14 89/15 99/14 99/23 99/23
100/19 102/12 106/22 107/20
110/14 113/11 115/9 117/8
119/11 119/21 120/19 120/23
122/1 122/6 122/16 122/18
125/5 126/21 126/24 129/17
129/19 130/15 132/19 134/14
135/1
anybody [10]   16/10 22/12 44/18
111/18 111/19 117/17 117/20
128/20 129/24 130/25
anymore [7]   4/22 8/5 73/2 95/4
135/7 135/11 139/5
anyone [1]   41/20
anything [22]   12/16 13/3 13/4
13/24 19/10 19/11 19/12 19/14
19/16 28/17 30/11 32/2 36/6
45/25 50/13 60/10 63/4 66/14
116/21 120/20 122/19 139/17
anywhere [1]   67/17
AOC [1]   98/16
aol.com [1]   2/24
apart [4]   33/19 37/17 54/3
134/16
apartment [1]   26/17
apologies [1]   102/7
apologize [6]   5/7 32/20 56/24
101/3 109/3 139/20
apparatus [3]   19/5 19/9 29/19
apparently [1]   6/14
appeal [1]   135/5
Appeals [1]   77/12
appear [2]   35/21 37/4
appearances [2]   2/3 3/8
appears [1]   35/15
Appellate [1]   43/3
applying [2]   91/1 99/22
appreciate [2]   113/17 134/23
apprehension [1]   31/24
approach [1]   20/19
appropriate [1]   139/14
appropriation [1]   51/15
April [3]   76/16 138/20 139/6
aptly [1]   30/5
are [107]   4/11 4/21 8/6 10/12
10/19 13/17 14/4 14/16 17/6
17/19 18/1 18/2 18/19 19/22
27/17 28/11 28/20 32/12 33/6
34/9 36/22 37/20 38/2 38/15
39/21 39/23 40/1 41/7 42/17
42/20 44/14 45/3 45/16 48/16
48/16 50/4 50/9 50/17 51/17
51/19 52/15 52/22 53/1 53/19
53/24 54/4 60/4 60/17 60/18
64/18 66/21 66/22 72/20 73/1
74/3 74/3 75/3 79/13 82/1
84/12 86/9 87/5 88/21 92/6
94/10 94/12 96/8 96/18 97/17
97/22 98/7 98/22 99/2 99/3
99/16 101/12 102/15 102/17
104/10 104/11 104/13 104/18
105/13 111/10 111/17 113/3
115/3 116/17 119/13 121/9
121/21 122/24 123/24 124/2
125/12 125/14 125/19 126/8
126/14 128/11 134/15 134/18
134/24 135/1 136/4 139/8
139/9
aren't [4]   23/16 66/20 126/4
128/25
arguably [1]   6/3

**A**

argue [12]   21/7 54/9 65/11 71/17 72/8 113/2 126/18 126/21 127/25 129/25 130/11 130/17
argued [1]   67/1
arguing [4]   66/12 73/24 99/6 128/12
argument [21]   21/7 22/9 28/25 30/19 31/9 31/10 42/18 42/20 42/21 46/22 46/24 60/1 65/3 67/9 85/18 99/8 99/11 104/1 120/9 127/14 128/5
arguments [3]   20/14 42/11 85/17
arise [1]   66/19
arm [1]   47/24
arose [1]   30/5
around [6]   9/18 24/19 31/22 43/20 53/4 82/7
arrange [2]   54/20 58/20
arrangement [2]   5/16 5/17
arrive [1]   55/3
arrived [1]   101/11
art [2]   73/1 81/13
article [3]   102/24 103/2 103/3
artistic [4]   49/3 49/10 49/13 54/1
as [122]   5/22 7/12 8/9 11/12 11/18 14/24 18/18 22/22 27/19 27/24 27/25 28/19 29/1 29/1 30/5 31/13 36/25 37/8 41/1 42/12 42/13 42/18 44/9 45/15 47/4 47/5 47/20 48/15 49/1 49/23 54/16 56/2 56/20 57/3 57/22 58/17 59/1 60/1 61/11 61/18 62/6 62/20 63/14 63/19 65/13 65/15 65/17 67/16 67/24 68/12 68/14 69/6 71/12 71/16 73/25 75/3 75/10 76/16 79/24 80/1 80/7 81/9 81/24 82/13 86/2 86/18 87/3 87/3 87/8 88/23 89/11 89/15 90/1 90/9 91/15 93/13 94/1 95/2 95/8 97/15 98/15 98/15 98/15 98/18 98/18 99/1 101/24 103/18 104/7 105/12 105/16 107/10 107/19 109/10 109/10 109/25 110/7 112/1 120/20 122/10 122/16 124/9 127/21 128/6 131/7 132/9 132/9 132/23 132/24 133/13 136/8 136/8 138/20 139/23 139/24 141/12
ascertain [1]   113/24
aside [4]   41/5 48/4 102/11 102/12
ask [7]   19/22 32/22 35/4 74/11 84/9 118/12 129/24
asked [24]   11/11 12/23 16/22 17/4 18/23 19/9 19/16 19/21 19/25 36/4 44/25 46/10 47/15 55/14 70/22 73/14 85/12 100/8 101/8 102/11 104/8 117/14 129/15 135/10
asking [11]   11/17 28/16 28/17 28/18 38/3 78/15 115/21 119/14 128/6 129/14 135/13 138/19
asks [1]   126/25
aspects [1]   99/10
assert [5]   33/13 37/9 76/13 78/25 86/5
asserted [2]   14/5 84/13

asserting [3]   20/13 86/9 86/9
assertion [1]   66/1
assessment [1]   46/19
assign [3]   11/20 12/9 47/20
assist [1]   139/17
associated [9]   47/10 99/3 101/16 104/6 108/12 115/4 119/19 121/5 132/20
association [3]   44/11 45/25 105/2
assume [13]   53/4 53/12 95/7 97/4 97/7 97/10 97/15 112/5 118/12 119/10 120/7 120/7 123/4
assuming [2]   78/22 122/3
assurances [2]   99/12 99/14
attach [2]   36/2 46/7
attached [2]   29/15 113/3
attaching [1]   91/16
attempt [2]   67/12 73/12
attempted [2]   43/18 74/2
attention [3]   95/13 101/8 101/19
attorney [1]   135/15
attorneys [1]   129/17
attribution [1]   90/2
auspices [1]   47/6
authenticate [5]   70/23 70/25 71/6 132/11 132/12
authenticating [1]   71/2
authorized [3]   73/1 96/19 141/9
authorship [1]   90/2
available [3]   30/15 112/9 118/1
Ave [2]   2/10 2/23
avoid [3]   46/18 91/24 125/8
award [3]   127/21 129/19 129/21
awarded [1]   129/22
awarding [1]   129/17
aware [9]   12/17 13/9 13/20 18/25 19/23 22/3 32/14 85/17 117/8
away [3]   13/15 52/4 59/23

**B**

baby [1]   20/18
back [29]   14/7 20/11 26/24 31/19 31/21 34/4 43/12 44/6 49/18 55/6 55/13 72/13 82/19 86/4 98/14 103/13 104/9 104/13 106/6 106/24 109/20 113/4 116/4 132/17 133/3 133/14 138/25 139/10 139/13
backdrop [1]   8/8
bad [3]   10/11 51/14 131/24
bag [2]   68/9 68/12
baked [2]   137/6 137/13
ball [19]   42/19 42/19 43/5 43/5 43/5 43/5 43/6 43/7 43/9 43/11 44/22 45/20 46/8 47/2 47/3 47/4 47/4 47/5 49/23
balls [1]   42/20
bar [2]   30/17 47/25
barn [98]   1/3 1/18 3/5 3/11 3/12 3/18 3/20 6/22 8/19 8/20 8/23 10/2 10/2 10/19 11/11 11/25 11/25 12/13 17/5 17/6 22/20 26/12 29/12 39/4 39/9 39/15 39/15 39/18 40/12 43/13 43/13 44/10 44/15 51/3 53/3 55/25 56/10 58/1 58/13 58/16 58/21 59/4 59/8 59/12 60/10

61/17 62/12 62/19 63/19 64/13 65/12 65/18 66/5 66/14 71/14 71/17 73/10 81/8 82/5 86/7 86/10 87/18 88/22 89/1 89/10 89/10 89/11 89/14 93/18 94/3 94/17 105/9 107/10 107/11 108/1 110/16 110/19 114/14 116/4 116/15 116/18 117/20 118/5 118/14 119/21 120/13 120/14 120/15 122/10 124/6 125/6 125/12 125/14 126/6 126/22 127/9 129/17 134/2
BARNLIGHT [68]   1/7 1/13 3/6 3/24 4/2 8/18 11/24 114/16 114/17 114/22 114/24 115/1 115/1 115/6 115/7 115/11 115/13 115/21 116/2 116/9 116/12 116/14 116/15 116/25 117/3 117/4 117/7 117/22 117/23 117/24 118/4 118/6 118/13 118/15 118/21 119/2 119/24 119/25 120/4 120/11 120/12 120/13 120/22 120/24 121/4 121/12 121/14 121/20 121/22 122/1 122/4 122/7 122/8 122/16 122/23 123/1 123/6 123/8 123/9 123/23 123/25 124/1 124/9 125/18 127/10 127/25 133/23 134/2
based [14]   38/25 43/1 50/4 55/9 67/1 86/6 86/14 124/3 125/9 129/19 130/1 130/2 134/21 136/8
basically [14]   13/13 13/23 17/20 17/23 18/3 22/5 28/14 33/17 35/20 40/23 60/15 92/20 123/8 138/10
basis [7]   23/6 31/15 35/21 87/11 87/13 89/18 122/17
bath [1]   6/8
be [168]
became [3]   5/16 5/24 8/24
became [113]   4/15 8/24 12/8 20/12 21/5 22/12 23/10 24/24 26/4 26/7 26/9 27/13 27/20 30/13 30/21 31/1 31/6 31/16 32/8 34/2 34/10 35/14 35/15 35/22 36/1 37/6 38/23 41/6 41/22 43/11 43/16 43/16 44/2 44/25 45/9 45/16 45/19 46/15 46/18 46/24 47/23 47/24 48/15 49/7 49/22 50/7 55/5 59/18 60/2 60/3 62/9 64/9 65/11 65/25 67/25 68/13 69/14 71/3 71/15 71/18 72/11 73/7 73/9 73/14 73/25 74/23 75/1 76/11 81/19 82/9 83/23 84/7 84/10 84/11 87/12 88/1 92/19 93/25 94/11 94/12 94/16 96/23 97/23 98/17 99/20 104/11 106/25 107/7 107/23 108/8 109/12 109/19 111/15 111/18 113/10 116/11 117/24 120/12 120/14 127/10 128/23 130/14 131/19 132/20 133/9 133/20 133/22 134/23 135/15 135/17 135/19 136/22 137/25
become [1]   39/19
becomes [1]   80/3
been [58]   5/20 6/7 10/16 14/10 16/12 16/13 18/9 29/8 39/24 40/1 43/20 49/20 50/6 55/15 55/23 60/22 61/16 61/17 61/18

**B**

been... [39] 62/9 71/15 71/15 72/22 74/1 76/17 79/10 79/16 79/19 80/1 80/6 83/24 85/17 86/7 86/23 87/4 89/8 89/24 92/23 95/22 101/24 104/8 110/3 110/8 114/11 115/4 119/16 121/15 124/19 128/5 132/22 132/23 133/4 133/11 133/17 133/19 134/6 134/10 135/21
before [29] 2/1 6/7 9/7 15/22 21/17 27/11 29/8 30/4 30/15 46/24 47/8 47/9 59/21 70/11 77/9 96/19 98/21 101/25 102/1 113/8 130/1 133/12 135/9 136/15 136/24 138/9 138/15 138/17 139/18
began [1] 58/13
begin [2] 63/9 78/21
beginning [1] 11/11
behalf [9] 3/11 3/12 3/14 3/23 4/1 4/5 4/7 114/23 126/22
behaved [2] 74/4 74/4
behavior [3] 64/23 100/21 113/3
behind [3] 4/11 66/11 128/14
being [15] 7/19 13/8 14/25 43/16 50/7 52/23 52/24 59/12 60/5 94/15 94/22 101/24 110/10 120/18 129/21
belied [1] 30/20
belief [3] 35/10 35/12 65/12
believe [39] 5/9 9/17 14/23 25/17 26/6 27/13 27/16 29/7 29/25 45/2 48/11 58/8 63/17 65/4 67/6 67/8 67/11 70/12 77/4 79/10 80/22 86/23 89/14 93/1 96/12 98/1 99/3 99/17 102/15 106/17 110/23 111/10 111/17 112/7 115/24 123/12 123/15 134/15 138/6
believed [1] 17/14
believes [6] 17/6 98/22 111/18 111/19 130/15 130/16
believing [1] 118/13
belongs [1] 42/21
benefit [3] 85/19 130/16 130/21
beside [2] 31/1 43/23
best [9] 26/21 26/23 48/2 52/20 99/2 106/5 106/23 109/21 116/21
better [1] 47/9
between [18] 7/17 44/12 58/1 87/22 88/2 97/12 98/20 105/17 110/19 111/4 113/23 114/14 114/15 121/4 122/25 124/5 134/13 135/2
beyond [2] 20/18 90/19
bit [3] 96/16 102/7 132/18
black [2] 41/18 41/19
blah [3] 84/5 84/5 84/5
blame [1] 137/17
blank [1] 17/18
BLE [9] 85/14 96/7 97/21 100/21 113/23 113/24 132/6 133/20 135/25
BLE's [1] 6/2
BLO [2] 133/19 133/21
BLO's [1] 96/17
blood [1] 6/8
blown [1] 134/7

Blvd [1] 2/19
body [3] 82/7 89/23 92/7
bolt [1] 35/20
bono [1] 123/3
bootleg [1] 87/8
bootlegging [1] 65/12
bootstrapped [1] 93/24
both [9] 36/25 54/11 57/23 76/3 98/4 111/18 125/21 128/17 137/7
bottle [3] 88/15 88/15 88/19
bottom [3] 16/18 63/5 102/3
bought [7] 22/23 23/4 58/25 109/15 110/16 110/20 111/16
bound [2] 130/7 130/16
bowed [1] 47/24
bowl [1] 50/5
box [15] 11/5 69/23 70/3 70/3 70/7 70/11 70/13 70/17 70/17 70/18 70/20 71/7 117/5 132/11 132/13
breach [13] 8/7 75/7 77/10 77/15 78/11 78/16 78/20 80/14 80/16 81/5 81/10 84/13 84/20
breaching [2] 72/20 78/11
breadth [1] 8/10
break [3] 31/6 109/17 126/3
breakdown [1] 125/9
breakdowns [2] 126/19 126/19
bridge [1] 45/11
brief [15] 33/2 39/7 56/18 56/23 69/9 75/8 79/6 84/18 95/6 95/14 96/2 121/2 124/18 137/19 139/7
briefing [3] 72/8 77/21 85/18
briefings [2] 72/11 72/12
briefly [2] 50/14 112/23
briefs [1] 65/3
bring [13] 11/21 11/21 11/22 78/11 78/16 78/20 78/24 80/13 80/25 95/13 103/13 109/7 129/7
bringing [4] 76/9 79/7 79/13 87/5
brining [1] 88/1
broad [11] 11/1 11/5 11/7 14/20 20/4 20/5 27/2 27/3 36/24 38/17 61/4
broader [1] 27/3
broadly [1] 54/12
broken [1] 126/10
Brooks [2] 51/8 56/25
brought [4] 43/22 88/10 101/19 133/18
BRYAN [5] 1/22 3/11 3/19 3/21 45/6
burden [10] 14/19 14/21 21/2 26/8 26/9 97/23 98/2 98/21 103/8 107/7
burdens [1] 26/20
business [7] 5/20 6/3 8/18 9/2 9/7 39/18 131/3
button [1] 105/15
buttoning [1] 16/4
buy [9] 5/21 7/23 9/2 33/19 45/17 68/2 69/17 94/2 105/9
buy/sell [1] 9/2
buying [5] 58/22 58/23 60/6 60/12 60/13
buys [1] 130/15
bystander [1] 120/18

**C**

C-A-L [1] 44/20

cage [4] 6/12 6/13 53/4 54/13
Cal [1] 44/20
calculations [1] 103/19
calculous [1] 104/18
calendar [1] 139/14
California [6] 1/8 1/9 1/14 59/17 70/3 70/4
call [11] 3/4 6/10 19/1 58/15 62/22 68/7 68/23 97/16 115/12 117/5 128/21
called [7] 8/16 48/6 115/11 117/17 117/20 119/21 132/14
calling [3] 117/21 117/21 118/7
calls [2] 118/13 123/19
came [9] 4/25 42/25 43/19 49/18 55/25 115/1 116/22 132/17 133/12
camera [1] 124/4
can [77] 11/5 11/18 11/20 12/3 13/13 13/13 13/14 13/17 14/15 18/14 26/6 27/11 31/19 32/2 36/2 36/14 38/1 38/15 38/24 41/19 41/20 41/20 41/21 41/21 44/2 44/14 44/23 46/16 46/19 47/2 48/15 48/23 51/19 52/10 52/21 54/24 57/2 62/24 64/4 67/24 68/4 68/24 68/24 75/22 77/15 78/10 89/7 96/4 96/4 96/7 96/8 97/24 99/16 101/10 102/3 102/20 105/9 106/6 106/24 106/25 112/11 114/1 116/18 120/2 121/5 122/11 122/19 128/7 131/4 131/5 135/16 135/21 136/5 139/14 139/17 139/25 140/2
can't [18] 3/15 4/19 4/23 10/13 13/5 13/16 26/4 44/24 46/14 47/6 65/11 65/23 75/18 93/24 97/20 99/15 109/11 126/9
candor [1] 100/3
cannot [2] 52/13 132/25 132/25
cans [1] 41/18
caption [1] 141/12
care [4] 69/21 70/1 70/6 70/7
Carluccio [1] 2/18
carrier [6] 127/15 128/8 128/22 130/2 130/5 130/19
carriers [1] 129/6
carry [1] 118/16
cars [1] 83/18
case [100] 1/12 3/4 3/6 4/20 4/24 12/22 13/25 14/18 21/1 21/22 22/1 24/3 24/16 26/9 28/14 30/5 30/9 31/4 41/9 42/1 42/3 43/8 51/9 51/11 51/11 54/6 55/19 56/19 57/1 57/2 58/3 58/4 58/7 58/11 60/15 75/5 75/8 75/21 75/25 77/9 77/12 77/21 79/2 79/16 79/18 79/20 79/25 85/23 85/24 87/24 88/8 89/7 89/19 89/23 89/23 90/9 90/11 90/12 90/13 90/16 91/1 91/12 91/13 92/7 94/7 95/14 99/21 100/17 112/16 124/22 125/2 126/18 127/20 128/7 128/8 128/10 128/19 128/20 128/22 128/25 129/4 129/5 129/7 129/7 129/8 129/9 129/14 130/6 130/19 131/8 131/22 132/21 132/22 134/7 135/8 135/11 138/25 139/4 139/10 139/25

# C

cases [4]   47/8 90/10 100/14
  135/18
catalog [6]   10/1 75/14 75/22
  81/2 86/6 133/16
catalogs [7]   9/24 45/4 45/7
  71/14 81/7 86/16 90/23
catch [1]   72/7
caucus [1]   79/3
causal [2]   98/20 100/15
cause [6]   65/20 100/5 100/9
  100/11 100/12 141/12
causes [3]   49/5 99/25 125/10
cease [1]   15/13
Century [1]   94/6
certain [8]   43/22 53/1 113/2
  113/3 124/25 128/16 132/17
  138/11
certainly [10]   33/11 36/13
  38/21 48/24 51/23 74/7 74/23
  75/2 105/17 116/20
certainty [2]   97/18 100/20
CERTIFICATE [1]   141/1
CERTIFY [1]   141/9
chain [1]   22/22
challenge [3]   22/16 23/6 23/21
chambers [1]   4/25
chance [3]   59/19 134/18 134/20
chances [1]   32/7
change [1]   91/18
charge [4]   128/15 128/17
  129/25 130/8
charged [2]   12/22 108/6
charts [1]   32/10
check [1]   124/13
Chihuly [2]   48/18 49/4
China [4]   5/21 89/1 91/15
  132/14
choice [1]   38/18
choose [1]   128/14
circle [1]   47/15
circled [1]   47/17
Circuit [22]   51/9 51/10 51/11
  51/22 52/1 52/3 52/5 52/7
  52/10 55/16 56/19 57/1 57/2
  58/4 77/12 77/22 90/12 90/13
  90/15 91/1 132/22 132/23
circuits [1]   51/24
circumferential [1]   49/24
circumvent [1]   11/14
cited [3]   90/10 95/14 100/16
City [1]   141/17
Civil [1]   3/7
claim [119]   8/7 11/19 11/20
  11/21 11/22 11/22 12/18 25/13
  25/14 26/24 29/20 32/9 34/1
  34/11 36/9 38/20 39/8 39/10
  40/3 49/17 52/22 53/25 57/7
  57/19 57/20 57/22 60/15 60/25
  61/1 61/3 63/11 63/18 65/10
  66/15 66/17 67/1 67/2 67/7
  68/5 69/1 69/5 69/6 71/21
  72/15 75/7 75/7 78/11 78/17
  78/18 78/20 78/24 78/25 79/1
  79/14 80/13 80/25 81/1 81/3
  81/5 81/10 84/13 84/21 85/8
  85/10 85/11 85/13 85/14 86/2
  86/6 86/9 86/10 86/14 86/16
  86/19 86/20 86/22 87/1 87/3
  87/3 87/5 87/10 87/11 87/13
  87/19 88/1 88/11 88/13 88/16
  89/21 89/21 89/22 90/1 91/4
  91/8 91/22 91/23 92/9 92/11
  92/12 92/21 93/17 93/25 95/2
  95/2 95/8 95/9 99/3 101/2
  101/9 105/22 109/4 109/5 109/8
  109/19 116/6 120/15 133/18
  134/4 136/22
claimed [3]   63/22 73/13 98/20
claiming [3]   45/23 66/21 66/22
claims [30]   6/5 28/4 30/12
  30/13 38/24 57/23 75/15 85/25
  86/13 88/9 89/18 90/25 91/5
  96/8 103/5 103/7 103/8 105/3
  105/4 106/12 114/12 124/23
  124/24 125/19 125/19 125/22
  127/3 133/10 133/13 133/16
clarification [2]   5/5 113/18
clarify [2]   37/14 119/17
classic [1]   7/25
CLAUDIA [3]   2/22 141/6 141/21
clear [13]   24/1 24/4 24/15
  24/17 26/15 53/21 76/9 88/6
  89/23 91/25 92/22 98/4 104/25
clearly [5]   30/21 31/22 72/1
  89/19 90/9
CLERK [3]   3/5 58/6 140/5
click [1]   105/7
client [10]   7/11 7/15 9/5
  20/21 37/17 58/19 122/15
  124/10 124/13 139/23
client's [1]   82/24
clients [5]   19/20 32/22 101/13
  128/23 134/8
clients' [1]   6/9
cloak [1]   111/21
cloned [1]   90/21
close [1]   43/20
closed [1]   35/3
closing [1]   50/3
cna.com [1]   2/21
Coca [2]   88/14 88/18
Coca-Cola [2]   88/14 88/18
codes [1]   62/2
Cola [2]   88/14 88/18
COLITZ [14]   2/12 3/22 3/22
  18/17 19/6 27/5 28/8 29/22
  35/6 56/7 69/24 113/1 113/6
  140/8
colleagues [1]   79/3
collection [1]   138/14
Colliau [1]   2/18
combination [1]   42/19
come [11]   5/6 14/13 31/15 45/8
  78/4 98/5 98/14 104/9 106/6
  106/24 134/22
comes [4]   57/14 57/15 57/16
  133/6
coming [2]   14/4 63/3
comments [2]   85/7 134/21
commercial [7]   23/9 23/10
  23/13 23/13 29/13 30/1 115/12
committed [1]   132/5
common [3]   81/23 82/25 83/13
communication [2]   7/16 83/7
companies [4]   51/17 123/1
  123/2 123/25
company [16]   1/3 1/3 1/8 1/14
  1/18 1/18 3/6 4/8 4/9 46/8
  89/15 109/20 116/3 121/8
  124/19 134/3
compare [1]   28/3
compel [8]   18/6 18/20 34/25
  65/6 136/14 138/9 138/18
  138/19
compelling [1]   46/5
compete [1]   6/2
competency [1]   113/12
competent [1]   103/7
competes [1]   123/19
competing [2]   80/24 116/3
competition [10]   57/20 57/24
  60/25 61/3 61/4 61/6 87/10
  87/18 99/4 106/12
competitive [2]   44/1 82/1
competitor [1]   61/21
complaint [14]   47/16 49/18
  64/19 76/16 78/9 78/18 86/24
  92/23 93/6 93/14 93/20 95/3
  102/14 125/17
complete [2]   30/17 131/21
completed [2]   14/10 119/7
completely [1]   133/15
Computer [1]   141/10
concede [1]   66/25
conceded [2]   100/4 100/10
concededly [1]   96/18
concept [1]   72/10
conceptually [1]   79/8
concern [4]   15/12 20/10 20/17
  64/12
concerned [4]   13/1 15/8 41/1
  70/19
concerted [1]   121/16
concluded [1]   140/10
concluding [1]   43/10
conclusion [2]   96/6 96/14
concrete [3]   21/2 21/22 21/23
conduct [6]   83/12 114/13
  114/18 114/19 128/3 136/9
conference [5]   2/1 128/15
  128/18 129/25 130/8
conferred [1]   135/12
confidential [1]   66/12
confidentiality [2]   66/12
  111/21
confirm [1]   35/10
confirming [1]   24/12
conflate [1]   55/19
conforming [1]   71/23
confused [4]   60/22 68/6 94/11
  94/12
confusingly [1]   6/3
conjunction [1]   67/5
connect [2]   119/5 119/6
connected [1]   122/18
connection [19]   11/24 12/1
  33/7 42/11 42/17 82/14 84/11
  98/20 100/4 100/8 100/10
  100/15 100/15 109/3 114/10
  125/13 100/15 126/23 136/9
connects [1]   33/17
cons [1]   132/6
consider [2]   32/8 43/10
consideration [7]   74/15 74/17
  74/20 74/24 75/1 75/4 80/3
considered [2]   82/2 123/5
consistent [1]   66/13
constant [1]   31/23
constitute [1]   141/14
constitutes [1]   30/3
consumer [10]   45/25 61/21
  62/22 62/25 62/25 67/3 68/6
  93/8 108/2 116/24
consumers [3]   63/6 116/24
  118/4
consuming [1]   135/6
contacted [2]   116/16 117/3

## C

contain [1] 45/1
contained [3] 22/10 101/20 102/10
contemplated [2] 14/24 20/19
content [2] 5/1 96/14
contention [5] 77/17 82/8 86/20 118/20 120/17
contentious [1] 76/17
context [3] 92/1 92/2 113/15
continually [1] 21/20
continuance [1] 138/17
continue [3] 5/19 37/18 75/17
contract [35] 7/21 7/25 8/7 48/18 75/7 77/11 77/16 78/11 78/17 78/20 78/21 78/22 78/23 78/24 78/25 79/1 79/7 79/14 80/14 80/16 80/16 80/17 80/18 80/25 81/1 81/3 81/5 81/10 81/11 81/12 81/18 83/20 84/13 84/21 136/22
contracts [1] 81/22
contrary [1] 75/17
contributory [1] 57/11
controlling [2] 90/14 92/14
controversy [1] 21/5
convince [2] 100/2 100/24
convinced [2] 132/19 133/12
convincing [5] 24/1 24/5 24/15 24/17 26/15
cookiefry [1] 2/24
cooperate [2] 126/4 126/8
cooperation [1] 126/7
coordinated [1] 134/12
copied [15] 41/1 41/6 41/8 41/11 41/12 41/22 43/13 45/9 45/14 53/9 53/13 53/18 53/22 53/23 73/11
copies [1] 51/21
copy [7] 41/6 41/19 41/22 42/5 43/6 43/8 45/12
copying [21] 42/6 42/18 43/18 45/13 51/7 51/16 52/8 53/20 55/9 55/13 55/15 55/15 55/15 55/16 55/19 55/24 56/14 56/20 56/20 58/7 132/25
copyright [25] 10/11 67/13 69/6 72/15 75/10 77/13 77/15 82/8 88/11 90/1 91/7 91/23 92/1 92/2 92/11 92/12 94/20 98/4 99/4 99/25 105/4 105/13 105/20 106/10 107/6
copyrightable [2] 84/14 84/14
copyrighted [11] 77/14 78/7 82/3 82/4 82/10 82/11 82/17 105/5 105/8 105/18 105/18
corporate [2] 2/19 47/13
Corporation [6] 1/7 1/8 1/13 1/14 56/25 98/8
correct [32] 13/2 16/15 18/16 18/17 19/19 20/1 28/8 28/13 33/23 61/19 63/24 64/3 66/24 69/24 70/8 75/13 76/25 77/11 87/2 93/6 97/6 97/14 100/22 104/16 104/19 106/4 106/20 108/14 109/16 111/9 131/10 141/14
correcting [2] 117/19 117/19
correctly [1] 92/18
correspond [1] 102/17
correspondence [2] 119/1 119/5
cost [2] 88/24 123/20

costs [1] 97/12
could [33] 14/9 15/16 22/12 31/11 35/14 38/23 41/20 42/16 43/12 46/7 47/20 49/15 54/9 54/18 54/20 54/23 59/23 62/3 74/9 76/14 78/23 79/3 92/11 98/2 98/14 99/2 102/21 106/5 106/23 112/1 116/21 119/1 126/21
couldn't [3] 37/9 48/13 107/20
counsel [29] 2/18 3/8 3/9 4/11 14/1 15/2 15/25 20/9 29/7 33/12 42/9 62/15 63/18 76/7 77/25 79/24 80/10 85/13 87/1 87/2 87/21 87/23 95/16 99/6 101/21 103/6 109/1 115/19 139/21
counselors [1] 139/23
count [36] 86/23 129/15 129/16
Count Four [1] 86/23
Counter [2] 5/22 6/6
counterclaim [7] 1/16 1/20 71/19 78/11 125/13 125/17 126/24
counterclaims [1] 67/19
country [1] 51/18
counts [1] 125/9
COUNTY [2] 141/4 141/17
couple [3] 85/7 95/6 132/18
coupled [1] 42/4
coupler [28] 19/1 19/3 19/4 19/5 19/23 22/10 24/21 24/25 25/1 25/3 33/16 33/17 33/19 34/2 34/4 34/5 34/7 34/15 34/16 34/19 34/23 35/1 35/14 35/19 35/23 36/1 36/15 37/6 couplers [10] 36/9 36/10 36/25 37/1 37/3 37/8 37/12 37/19 37/20 38/3
coupling [3] 23/5 26/14 26/19
course [5] 39/14 58/12 74/23 77/20 83/12
COURT [68] 1/1 2/22 2/22 3/16 11/11 13/5 17/12 18/16 19/13 20/12 27/19 28/15 29/3 29/6 31/6 31/19 32/7 36/22 38/10 39/8 42/12 42/14 43/4 47/20 48/3 50/22 51/6 52/15 61/2 62/7 69/25 76/22 77/12 78/14 79/23 83/23 84/12 85/16 85/19 85/22 88/6 90/6 93/7 96/3 97/4 99/12 100/2 100/19 100/24 107/5 108/15 115/23 116/14 122/22 122/25 124/4 128/14 129/8 130/18 131/8 131/11 135/5 136/16 138/8 139/5 141/6 141/7 141/21
Court's [8] 3/15 5/5 26/25 38/18 85/16 95/13 113/4 139/9
courtroom [1] 4/23
Courts [1] 41/25
covenant [47] 11/15 11/17 11/19 12/7 13/4 13/5 13/8 13/8 14/20 18/24 20/4 20/8 20/20 21/15 21/24 22/2 22/4 22/4 27/2 27/3 27/7 27/11 27/14 28/5 28/9 31/12 31/15 31/20 34/23 35/7 35/9 35/22 35/24 36/8 36/15 36/15 36/18 36/24 37/8 37/9 37/22 38/14 38/15 38/16 38/20 39/3 133/5
cover [5] 30/12 30/13 36/24 67/10 82/16

coverage [25] 124/23 125/1 126/5 126/14 126/16 126/17 126/19 126/21 128/7 128/8 128/10 128/12 128/19 128/23 128/24 128/25 129/1 129/5 129/7 129/8 129/10 129/11 129/11 129/14 130/19
covered [7] 34/11 37/22 114/25 125/19 125/22 127/8 128/1
covers [7] 36/8 36/10 37/2 37/3 37/11 37/16 49/23
crazy [1] 49/5
create [2] 14/20 15/16
created [1] 121/10
creates [1] 123/18
credibility [1] 96/14
crime [1] 132/3
criteria [2] 92/8 92/15
criticizing [1] 114/4
cross [7] 85/11 96/4 102/13 102/21 103/4 103/5 131/5
cross-examine [2] 96/4 131/5
crystal [2] 92/22 98/4
curiously [2] 8/7 72/20
current [2] 36/11 68/20
currently [4] 32/12 32/15 32/19 139/7
curvature [1] 49/23
custodian [2] 138/11 138/13
custody [1] 22/12
customer [15] 60/2 68/1 68/2 69/10 69/11 69/12 69/14 69/15 88/25 94/21 115/14 116/14 118/2 118/13 124/10
customer's [1] 60/6
customers [8] 55/25 56/9 59/2 67/25 86/17 94/1 118/1 120/16
CV [1] 1/12

## D

damage [2] 108/19 108/20
damages [26] 65/21 96/16 98/14 98/18 98/20 99/16 99/18 100/3 100/20 103/2 103/7 105/13 105/20 108/12 109/10 125/7 125/9 125/22 126/3 127/1 127/21 129/15 129/16 129/19 129/20 129/21
Damocles [1] 20/22
data [3] 65/7 119/9 135/25
date [6] 39/4 77/5 124/23 125/10 127/8 127/8
dates [3] 114/1 126/11 126/15
dating [1] 133/10
Daubert [1] 113/9
David [3] 29/14 30/7 70/24
day [7] 34/12 73/10 74/8 74/12 113/8 130/5 141/18
days [4] 21/17 39/4 124/15 136/20
Daystar [19] 67/10 67/12 69/4 85/17 85/22 85/23 86/1 86/2 88/6 88/8 89/19 89/24 91/1 91/5 91/24 91/25 94/5 94/23 133/12
DC [1] 2/10
dead [1] 138/5
deadline [2] 136/17 139/7
deadlines [4] 138/25 139/9 139/14 139/15
deal [3] 8/5 92/6 125/2
dealer [2] 82/1 83/17
dealing [2] 4/19 122/9

# D

death [1] 6/10
decades [1] 45/7
December [3] 79/2 101/15 134/11
deception [4] 51/15 107/8 107/9 107/12
decide [3] 27/4 38/16 124/5
decided [7] 5/20 5/25 8/5 10/24 65/18 78/17 129/9
decision [8] 39/19 42/15 60/6 60/10 60/12 60/13 113/15 130/1
declaration [1] 29/25
Declaratory [1] 31/23
declare [1] 11/12
decline [2] 65/13 65/13
declining [2] 64/13 65/24
decreasing [2] 58/17 64/17
deduction [2] 98/3 98/6
defeat [3] 24/11 26/4 55/12
defective [2] 24/21 30/24
defects [2] 25/11 25/24
defend [1] 74/5
Defendant [6] 1/20 5/22 6/6 6/24 98/22 103/8
Defendant's [1] 137/1
Defendants [11] 1/11 1/24 2/12 3/24 4/2 4/5 8/17 31/13 79/10 79/19 85/9
defending [1] 125/12
defense [12] 22/9 22/11 23/20 72/13 72/17 74/1 74/6 76/11 78/10 79/9 80/5 80/13
defenses [3] 72/13 72/14 79/1
define [1] 50/4
definitely [1] 78/3
definition [1] 46/3
degree [4] 65/8 97/17 100/3 100/19
delay [1] 56/24
deleted [1] 5/21
deliberate [1] 51/16
deliberately [2] 42/5 51/21
Delirium [1] 137/18
delivered [1] 23/19
delivery [3] 77/23 78/7 80/3
demand [1] 7/12
demanded [1] 97/12
demonstrate [4] 21/3 42/24 63/12 112/9
demonstrated [1] 31/5
demonstrating [1] 120/23
denied [7] 65/7 71/12 114/7 131/6 132/9 132/16 136/22
depiction [1] 90/8
depictions [2] 62/1 82/4
deposed [1] 83/9
deposition [22] 18/23 19/2 19/22 30/7 30/24 40/15 40/17 44/17 44/21 47/14 74/10 89/16 100/4 101/6 101/22 117/9 117/11 136/23 137/7 138/2 138/11 138/13
depositions [3] 78/4 136/7 137/1
Depot [1] 49/13
depriving [1] 62/13
derive [3] 121/5 122/6 122/18
derived [3] 121/19 121/21 122/15
describe [1] 49/23
described [1] 86/25

design [18] 31/5 42/2 48/8 48/9 48/20 48/25 49/1 49/5 49/7 49/15 49/25 50/18 50/21 52/22 52/23 53/7 54/7 54/16
designates [1] 45/25
designation [2] 56/9 94/14
designations [2] 87/17 94/16
designed [3] 30/13 39/24 48/17
designs [14] 39/23 42/13 43/9 43/20 43/21 45/22 45/23 49/11 50/9 50/15 50/16 50/17 51/5 54/23
desist [1] 15/14
destroy [2] 26/25 38/17
detail [3] 11/2 11/4 11/8
detailed [2] 108/9 108/11
details [1] 107/3
detection [1] 64/23
determination [2] 125/6 126/24
determine [3] 110/1 110/2 124/22
determined [1] 128/10
determines [1] 68/11
develop [6] 5/21 5/23 20/18 21/6 21/18 27/21
developed [3] 6/1 27/22 89/24
developing [9] 14/17 19/17 19/22 20/3 20/12 32/12 33/3 33/6 45/18
development [9] 14/10 14/24 15/22 27/6 27/18 27/24 32/15 33/23 34/17
device [9] 14/24 22/9 23/5 26/14 26/19 30/24 34/9 45/13 49/24
devices [1] 42/17
did [62] 8/20 9/23 11/12 15/3 16/2 16/6 17/13 17/18 17/23 18/2 18/3 18/6 35/4 35/23 45/12 47/16 48/2 58/19 58/19 58/20 58/23 58/25 70/6 70/10 70/11 70/14 70/14 71/25 72/7 73/7 88/22 89/14 92/22 94/7 97/24 98/24 100/6 101/13 102/12 102/15 103/24 104/19 104/22 104/25 105/11 105/14 105/23 106/5 106/20 106/23 110/12 110/13 110/15 113/14 113/15 113/15 115/17 115/23 123/7 132/15 137/4 141/10
didn't [52] 7/4 8/3 8/5 17/15 17/17 17/21 17/22 18/4 19/22 19/25 30/11 64/9 66/6 66/7 67/7 69/16 69/21 69/22 69/25 70/1 70/1 70/5 70/7 70/19 71/18 73/15 73/18 73/24 73/25 73/25 74/25 76/13 80/25 83/2 83/3 92/19 98/15 100/18 103/4 103/5 106/21 108/7 110/14 112/3 115/17 117/25 119/9 120/18 120/19 120/20 137/2 137/6
difference [2] 97/12 101/21
differences [1] 135/2
different [12] 4/17 14/25 33/24 36/2 54/10 54/23 54/24 55/2 94/14 100/14 137/7
differently [1] 48/17
differs [1] 60/25
difficult [1] 45/2
dire [2] 113/9 113/16
direct [8] 41/2 41/24 114/17 114/18 116/23 116/24 119/10

130/6
directed [3] 38/4 48/12 133/17
directing [2] 101/2 101/8
direction [1] 53/16
directly [11] 11/16 22/21 32/22 64/25 115/14 118/18 118/21 118/23 119/1 122/7 134/13
disagree [10] 6/18 8/9 8/13 9/25 11/6 22/9 54/4 63/10 63/13 130/25
disagreement [2] 6/20 114/1
disassembled [1] 30/6
disclose [3] 113/22 119/14 124/6
disclosed [1] 115/4
discloses [1] 119/21
discount [1] 80/23
discovered [4] 71/15 72/18 83/24 84/11
discovery [22] 12/24 15/4 15/23 35/3 46/14 65/23 76/17 76/19 78/5 79/11 79/17 79/18 80/9 84/2 114/10 115/1 135/23 136/23 136/23 138/10 138/12 139/10
discreet [1] 48/19
discussed [5] 14/25 77/9 85/8 86/2 132/10
discussion [3] 81/15 81/17 82/24
dismissed [2] 131/8 131/22
dismissive [1] 43/15
disperse [1] 54/12
disperses [2] 49/6 54/11
dispute [12] 10/13 26/2 39/16 55/7 55/8 89/4 103/10 103/10 103/18 104/14 104/15 104/17
dissatisfaction [1] 140/2
dissatisfied [3] 5/16 8/24 140/1
distinction [3] 68/17 87/22 88/2
distinguish [1] 41/20
distribute [1] 5/15
distributed [1] 55/23
distribution [2] 8/2 8/3
distributor [12] 39/16 44/18 44/23 52/16 58/13 61/24 63/19 72/2 87/7 89/13 89/16 90/17
distributors [2] 7/6 83/13
distributorship [1] 63/23
DISTRICT [6] 1/1 1/1 2/2 90/14 141/7 141/7
DIVISION [2] 1/2 141/8
do [115] 4/24 6/10 6/25 7/18 9/2 9/17 12/24 13/6 13/12 13/14 13/19 13/23 13/24 14/1 21/20 21/25 22/5 22/7 24/19 25/2 25/8 26/6 27/25 28/2 28/16 28/17 29/7 29/9 32/2 34/18 35/21 35/25 38/24 38/25 39/1 43/18 44/3 44/4 44/5 47/1 47/9 47/22 48/3 49/9 54/20 55/4 55/22 55/23 56/7 57/8 58/5 62/7 64/18 64/21 66/9 66/10 66/11 70/6 71/3 71/5 73/15 74/11 80/20 81/4 81/4 81/5 82/12 85/24 86/15 91/10 93/1 93/3 96/12 98/1 98/15 99/12 100/18 103/4 103/5 105/16 108/5 111/21 111/22 112/13 116/11 121/17 122/19

**D**

do... [28]  125/3 126/13 127/2
127/6 127/16 127/23 127/24
127/25 129/2 129/2 129/3 129/6
130/3 130/3 130/10 130/13
130/16 130/16 130/17 130/18
130/23 130/23 132/3 134/8
135/24 137/15 140/4 141/9
docket [2]  137/20 138/20
Doctrine [2]  31/2 47/1
document [7]  40/15 53/3 82/15
84/3 84/4 84/6 138/11
documents [11]  46/17 64/11
64/18 65/14 84/4 111/7 111/13
111/20 111/23 112/5 114/11
does [23]  13/3 14/11 14/13
14/16 16/10 20/16 22/9 22/11
28/14 32/21 35/20 52/4 60/16
71/16 86/5 91/21 108/24 109/1
116/13 122/3 122/6 123/9 127/9
doesn't [29]  12/8 12/23 13/3
13/4 13/5 14/2 19/17 30/17
38/11 44/1 45/19 46/20 47/4
49/24 54/9 56/4 60/12 67/10
67/17 112/14 112/15 113/10
116/23 118/15 118/16 120/7
127/9 131/23 133/8
doing [12]  5/19 5/20 9/9 59/15
71/9 75/5 96/11 114/20 115/4
123/2 127/14 129/3
dollar [3]  62/5 62/7 63/8
dollars [3]  39/25 45/18 46/17
dome [8]  45/3 49/4 53/13 53/15
53/19 53/20 54/10 54/13
dome-looking [2]  53/19 53/20
don't [100]  6/14 12/21 13/12
13/25 16/3 17/9 19/11 19/12
19/13 20/11 20/15 21/19 21/25
22/11 22/13 23/15 24/11 24/12
24/24 25/4 25/4 25/18 26/11
27/13 28/1 28/18 28/20 28/21
30/12 32/2 32/19 38/14 43/6
43/16 46/17 47/21 54/4 55/8
57/16 60/7 62/23 64/16 64/16
64/21 64/25 65/4 67/19 68/4
69/5 70/12 72/14 77/4 79/7
82/20 83/4 83/5 84/7 84/7 84/9
87/22 88/2 89/7 92/20 94/22
99/14 99/21 103/3 103/19 104/2
104/3 105/16 107/13 107/15
107/24 108/1 108/22 109/22
109/23 116/18 121/9 122/17
122/18 122/18 124/20 125/1
125/2 127/23 129/3 129/10
129/25 130/22 130/23 133/9
133/17 135/7 135/10 135/17
137/5 137/23 140/6
done [13]  15/20 21/21 25/25
50/6 50/7 60/10 69/7 75/21
82/18 104/10 107/2 121/7
127/23
DONNA [4]  1/22 3/11 3/19 3/21
door [1]  114/23
Dorothy [3]  62/19 121/13
123/13
doubt [2]  113/1 135/1
dovetailing [1]  114/10
down [11]  21/8 30/6 47/14 49/6
54/11 54/19 73/3 99/2 105/2
126/3 126/10
downside [1]  78/23
downstairs [2]  116/16 118/7

draft [1]  125/23
drafting [1]  125/5
drawings [2]  73/2 82/5
dress [34]  39/8 39/22 42/3
42/11 44/1 47/6 47/8 47/15
48/12 49/16 50/9 51/12 53/25
54/8 57/9 57/10 57/11 90/24
90/25 90/25 92/5 92/5 92/7
92/8 92/13 92/14 92/15 99/25
101/2 101/9 101/18 103/17
106/11 132/19
dresses [1]  102/15
drilled [2]  99/1 105/2
drop [1]  66/3
drug [1]  132/5
due [2]  100/21 120/3
during [12]  10/16 15/23 18/23
19/2 39/14 58/12 74/10 74/23
87/7 89/16 127/13 136/25
duty [1]  130/16

**E**

E's [1]  120/13
each [8]  9/2 47/19 100/4
100/23 135/3 135/9 137/9
137/12
earlier [2]  85/8 134/12
early [4]  24/20 79/11 102/15
135/20
earned [1]  106/18
easiest [1]  88/15
easily [3]  47/19 98/3 102/21
easy [5]  7/25 11/10 105/2
Eberharts [13]  22/10 22/18
22/20 22/21 23/3 23/3 23/16
23/19 23/19 24/11 26/14 29/23
32/25
Eberharts' [2]  23/21 31/8
effect [4]  33/18 64/18 82/21
82/24
effectively [1]  133/8
effort [4]  100/11 102/13
121/16 134/7
efforts [2]  117/6 138/14
egregious [1]  52/16
either [17]  26/2 38/13 38/19
38/24 60/3 68/25 74/20 82/4
83/3 83/6 88/3 89/25 91/7
117/23 118/15 129/10 129/11
elaborate [1]  49/23
ELECTRIC [78]  1/3 1/18 3/5
3/11 3/13 3/18 3/20 6/22 8/19
8/21 8/24 10/2 10/3 10/19
11/11 11/25 11/25 12/13 17/6
17/6 22/21 26/12 29/13 39/5
39/9 39/15 39/16 39/18 44/15
51/3 53/4 55/25 58/2 58/13
58/16 58/21 59/8 59/12 62/12
62/19 63/19 64/13 66/14 71/14
73/10 81/8 82/6 86/7 86/11
87/18 88/22 89/10 89/11 89/11
89/14 93/19 94/17 105/9 108/1
110/16 110/19 114/15 116/4
116/18 117/21 118/5 118/14
119/22 120/15 122/10 124/6
125/6 125/12 125/15 126/6
126/23 127/9 129/18
Electric's [4]  40/12 59/4
116/15 120/15
element [12]  41/3 47/17 48/13
48/14 50/1 53/7 55/13 55/19
57/7 65/24 132/24 133/2
elements [10]  41/2 47/16 48/12

48/20 49/18 49/19 53/1 54/4
55/20 65/20
Eleventh [16]  51/9 51/22 52/1
52/3 52/5 52/7 52/10 55/16
56/19 57/1 58/4 77/21 90/14
90/15 132/22 132/23
eliminate [4]  11/18 51/19
52/11 55/17
eliminates [1]  51/24
ELMO [3]  42/23 50/16 102/7
else [12]  11/6 19/10 21/6
50/13 56/10 63/6 66/14 71/5
85/3 110/9 122/17 139/17
else's [2]  41/21 83/16
email [2]  72/25 118/10
emails [5]  119/1 119/4 119/9
119/11 119/14
emblazoning [1]  114/22
embodied [2]  57/20 91/4
emphasize [1]  29/10
employed [1]  52/18
employee [10]  40/23 52/17 64/1
115/10 115/14 117/12 118/7
118/11 118/16 119/1
employees [3]  40/13 59/4 59/5
encourage [2]  4/22 139/1
encumbered [1]  50/8
end [6]  20/11 34/12 76/19
106/1 107/14 108/2
endeavor [3]  45/5 49/13 116/5
ended [1]  72/25
engaged [2]  114/18 114/19
engineer [5]  40/24 43/8 43/22
47/21 52/19
engineered [1]  52/22
enormous [1]  100/3
enormously [1]  135/5
enough [14]  14/20 21/7 24/4
24/16 27/1 28/22 55/16 58/7
60/4 91/2 116/19 125/2 137/8
137/12
entered [1]  116/2
entirely [1]  137/1
entities [3]  122/5 122/13
123/24
entitled [2]  50/10 104/10
entity [4]  116/24 123/18
123/19 123/19
entry [1]  137/20
equation [1]  68/4
equivalent [2]  117/18 117/23
especially [1]  76/18
ESQUIRE [7]  2/4 2/4 2/5 2/9
2/12 2/13 2/13
essence [1]  67/7
essentially [15]  6/13 6/17
13/15 22/6 28/16 57/25 58/12
62/13 64/7 68/5 73/20 74/9
88/16 92/11 110/2
establish [8]  44/8 44/8 63/17
67/24 88/4 91/4 111/14 132/25
established [3]  116/3 119/16
123/23
establishes [3]  77/22 89/20
92/8
establishing [1]  44/13
et [1]  3/6
evaluated [1]  25/21
eve [1]  129/4
even [24]  6/1 7/16 9/17 23/16
35/9 46/16 54/6 54/15 66/2
68/7 69/22 70/1 73/14 73/23
73/24 77/17 104/6 104/17

## E

even... [6]  107/25 108/13
115/22 120/6 120/6 131/24
event [4]  64/23 65/11 88/3
89/6
ever [7]  9/8 12/13 46/7 82/20
89/4 102/12 133/8
every [12]  4/16 20/12 21/20
29/20 47/17 49/25 61/22 62/3
100/5 100/8 100/10 109/20
everybody [8]  21/15 21/16 76/3
81/20 83/20 127/10 129/24
130/17
everything [6]  13/9 13/9 13/20
13/20 22/3 84/11
evidence [61]  23/7 23/20 24/1
24/15 24/16 26/4 26/5 26/11
26/21 29/8 39/13 40/8 40/11
40/14 40/22 41/15 41/21 41/24
41/25 43/9 44/8 45/22 46/5
46/5 46/10 51/7 52/9 53/22
55/9 55/11 55/18 55/23 55/24
56/13 56/16 56/20 63/10 64/17
65/24 71/15 71/24 74/4 95/22
103/6 103/7 114/11 114/17
114/19 116/20 116/21 117/2
117/2 118/19 120/3 127/12
130/10 132/4 132/12 132/21
141/11 141/15
ex [1]  132/6
ex-cons [1]  132/6
exact [2]  95/15 103/21
exactly [14]  13/22 15/19 43/21
67/11 69/5 75/10 95/15 99/11
99/13 100/13 102/17 102/17
110/7 118/3
examination [1]  113/16
examine [2]  96/4 131/5
examines [1]  68/11
example [7]  31/5 48/18 86/3
88/14 105/13 105/22 127/24
examples [2]  44/4 46/11
exceeding [1]  76/6
Excel [1]  111/2
except [2]  122/7 140/6
exchange [3]  75/24 80/23
112/11
excise [1]  98/21
exclude [2]  96/3 96/18
excluded [1]  131/25
exclusive [14]  10/21 71/13
72/5 72/6 73/13 75/6 75/12
75/20 75/23 77/10 77/13 77/18
80/4 133/7
exclusivity [1]  80/24
excuse [1]  102/24
exemplar [3]  54/16 100/25
101/1
exemplify [1]  49/11
exercise [1]  102/16
exhaustive [1]  107/2
Exhibit [3]  29/25 101/18
101/25
Exhibit 3 [1]  29/25
Exhibit 5 [1]  101/25
existed [1]  72/22
existence [1]  45/23
exists [1]  79/25
expect [2]  133/5 140/1
expectation [1]  118/5
expensive [1]  135/6
experimental [1]  31/4

expert [19]  96/17 96/17 97/20
99/20 100/3 100/18 103/23
104/19 104/20 105/17 107/1
107/2 113/5 113/8 113/9 113/12
113/16 114/4 114/4
expert's [1]  108/12
experts [4]  25/22 111/22
112/15 127/20
expired [1]  94/20
explain [3]  99/15 130/7 130/10
explore [1]  122/24
explored [1]  74/10
express [2]  78/5 78/6
expressed [1]  83/19
expression [1]  49/15
extend [2]  36/24 47/2
extended [8]  19/1 19/3 19/4
20/6 24/20 35/23 78/12 139/8
extends [1]  91/20
extension [2]  135/22 138/24
extent [16]  53/9 53/18 55/22
66/25 67/3 71/1 72/1 72/22
74/25 97/11 100/20 113/19
122/2 122/8 124/25 135/15
extinguish [2]  14/20 20/20
extinguishes [1]  67/8

## F

F2d [3]  51/9 51/12 56/25
face [1]  122/23
fact [35]  22/17 24/14 33/23
41/5 41/10 41/12 41/13 41/19
42/3 42/4 42/6 43/7 44/17 46/3
48/4 49/10 49/13 55/4 56/10
60/5 60/11 66/3 67/4 67/12
68/20 71/16 72/14 90/10 97/1
99/24 100/16 101/19 102/19
132/25 136/10
factor [1]  107/20
facts [7]  10/12 38/14 67/14
74/2 87/20 88/4 90/16
factual [2]  6/19 26/2 55/7
factually [2]  60/17 60/18
fail [2]  57/7 57/11 86/1
fails [3]  31/9 133/2 133/3
failure [1]  45/24
fair [2]  62/5 80/15
fairly [1]  102/16
faith [2]  15/5 51/14
fake [1]  68/12
fall [1]  14/24
falls [3]  29/19 60/1 61/5
false [23]  57/22 57/24 58/11
60/14 60/21 60/24 61/1 61/5
61/20 62/6 65/25 66/15 69/1
86/19 87/5 90/1 91/20 91/21
100/1 105/22 106/1 106/22
133/13
falsehood [1]  63/5
falsely [1]  68/2
familiar [1]  29/18
fangled [1]  6/10
far [3]  30/15 45/4 45/11
fashion [3]  43/22 113/9 138/24
fashioned [1]  135/2
faulty [1]  130/14
fear [2]  127/7 127/23
feature [3]  44/15 48/9 48/9
features [5]  45/1 45/3 47/7
47/11 54/6
February [4]  1/7 3/2 76/23
78/17
February 5th [1]  76/23

Federal [2]  57/4 77/12
fee [1]  135/15
feel [1]  128/21
fees [2]  38/21 129/17
Feldman [3]  2/5 2/9 3/10
feldmangale.com [4]  2/7 2/8
2/8 2/11
FERNANDEZ [9]  2/4 3/10 6/21
10/4 31/12 63/13 117/14 117/16
139/20
few [1]  30/18
fight [5]  6/12 6/13 8/6 8/8
8/8
fighters [1]  6/11
fights [1]  6/10
figures [3]  29/17 29/18 105/1
file [1]  4/19 4/22 5/5 78/25
84/2 91/7 92/11 122/14 125/1
126/16 128/7 128/8 135/8
135/10 135/13 136/4 139/5
filed [17]  30/4 30/16 49/17
49/18 76/16 76/20 76/22 76/23
77/2 77/3 135/7 135/11 135/13
135/14 136/14 138/16 138/17
filing [3]  4/15 88/9 136/21
fill [1]  116/19
filled [3]  118/20 118/21
118/23
film [2]  43/12 43/13
final [2]  111/15 139/8
financial [21]  31/3 65/7 106/9
106/10 110/18 111/4 111/20
111/23 112/5 113/22 114/10
119/3 119/9 119/18 119/20
120/10 120/23 135/24 136/11
136/19 136/23
financials [11]  46/14 46/20
63/14 63/15 109/13 109/25
114/12 116/11 119/15 121/4
121/18
find [13]  12/3 27/3 44/2 49/15
55/16 59/19 73/11 88/2 108/25
117/18 117/22 128/6 130/10
finding [3]  43/20 131/9 131/22
findings [2]  128/16 129/10
finds [1]  126/22
fine [4]  16/4 29/1 57/6 80/12
finish [1]  94/25
finished [2]  19/17 119/7
firm [2]  3/23 113/2
first [29]  7/25 15/20 27/25
28/2 29/12 34/21 35/2 35/22
42/11 42/20 43/1 46/22 47/12
49/16 50/15 55/13 55/19 59/5
77/4 80/11 86/1 89/4 89/18
98/20 99/11 101/15 114/21
123/22 133/20
fishy [1]  58/18
fit [1]  30/21
five [1]  24/23
fixture [29]  30/6 31/8 33/16
34/9 44/24 48/19 48/19 51/3
51/3 53/1 54/20 56/1 56/2 56/3
56/5 56/6 56/8 58/15 58/22
59/9 59/16 68/23 68/24 68/25
91/12 91/13 91/14 94/20 116/23
fixtures [23]  33/8 33/9 36/2
37/19 40/24 41/13 42/5 42/6
44/6 44/19 51/4 57/13 57/15
59/10 71/5 80/23 90/18 90/20
90/21 90/23 90/23 105/10 124/2
FL [4]  2/6 2/15 2/20 2/23
flip [1]  83/5

## F

Floor [1]   2/23
FLORIDA [8]   1/1 1/3 1/6 1/18
 1/22 2/23 141/3 141/18
flow [1]   67/1
focus [1]   113/4
folder [1]   137/15
folks [1]   102/20
follow [1]   136/23
following [2]   101/7 114/9
follows [1]   89/19
fooled [1]   60/17
footnote [1]   77/7
force [2]   13/6 38/15
forced [1]   135/2
foreclose [2]   88/9 91/5
forego [1]   65/22
foregoing [1]   141/13
forever [1]   75/18
Forge [1]   4/8
forgery [3]   131/7 131/9 131/22
forging [1]   131/20
form [5]   126/10 127/3 128/21
 130/6 130/12
former [4]   40/12 40/22 59/4
 117/12
forms [5]   45/23 125/5 126/1
 126/2 128/13
formulated [1]   9/3
forth [2]   60/15 86/8
forward [1]   98/5
found [2]   26/19 90/25
founded [1]   135/15
four [3]   86/23 99/24 104/10
frankly [4]   35/21 42/5 94/4
 100/3
Frauds [1]   79/14
free [4]   31/16 66/10 128/21
 129/2
freedom [1]   50/7
Friday [1]   5/1
front [6]   36/21 47/15 64/5
 77/5 96/8 139/11
FRY [3]   2/22 141/6 141/21
fulfill [8]   59/18 59/22 62/18
 63/9 115/15 116/17 117/7 118/8
fulfilled [9]   59/12 59/24 62/3
 119/21 120/3 120/11 120/12
 120/24 122/8
fulfilling [4]   59/16 59/20
 62/10 62/10
fulfillment [1]   107/16
fulfills [1]   118/18
full [4]   32/14 74/25 89/23
 134/7
fully [5]   20/20 72/8 72/17
 83/24 137/2
function [17]   19/24 33/20
 47/11 47/19 47/20 48/14 48/15
 48/24 49/7 50/2 50/5 53/15
 54/12 54/16 54/18 55/3 112/20
functional [16]   47/7 48/9
 48/10 48/12 48/16 48/20 52/24
 53/1 53/5 54/4 54/7 54/8 54/22
 54/25 55/5 98/17
functionality [8]   42/22 47/1
 47/10 48/7 48/8 54/2 54/10
 55/8
further [2]   47/2 84/1
future [12]   12/13 13/17 20/17
 21/6 21/9 21/21 21/24 21/25
 27/17 28/13 31/16 72/9

## G

gaining [1]   129/1
Gale [3]   2/5 2/9 3/10
garbage [2]   41/18 41/19
gather [1]   112/3
gathered [2]   112/1 112/4
gave [16]   5/14 15/6 15/25
 17/20 18/4 35/22 35/24 58/17
 62/1 75/20 75/23 82/5 82/5
 98/25 98/25 101/25
general [2]   98/25 111/3
generally [1]   131/23
generic [3]   41/7 41/7 42/2
genesis [1]   109/20
gentleman [3]   58/20 59/5 64/2
genuine [7]   59/18 59/21 59/22
 60/20 62/11 67/6 69/19
George [1]   117/11
get [44]   4/16 4/21 4/23 6/1
 11/4 11/4 11/5 26/22 28/19
 43/6 45/4 56/10 56/10 59/23
 60/9 60/9 62/23 67/6 69/19
 69/22 69/22 74/25 79/2 84/1
 94/1 105/15 110/12 111/23
 116/11 116/18 119/14 119/15
 120/2 125/7 129/10 135/21
 135/24 136/2 136/17 137/9
 137/12 138/25 140/1 140/2
gets [3]   26/21 26/23 46/9
getting [9]   49/1 60/4 60/10
 61/25 69/25 93/9 94/14 94/17
 116/4
ghillyer [1]   2/11
give [35]   11/17 13/8 13/13
 13/23 17/21 19/25 21/20 21/24
 22/4 22/5 26/24 27/11 27/20
 27/24 28/1 28/15 28/16 28/20
 31/15 31/19 34/3 34/23 46/11
 46/15 56/21 57/2 81/24 82/18
 99/12 100/25 101/1 113/10
 116/18 121/25 138/23
given [14]   13/8 22/2 75/12
 76/4 76/4 80/22 100/7 101/13
 109/9 112/10 123/7 133/7
 138/18 139/4
gives [5]   11/20 31/6 83/14
 83/17 101/17
giving [3]   11/19 13/15 46/18
glad [1]   5/12
glass [1]   49/4
globe [1]   54/10
go [20]   5/17 5/21 31/19 32/5
 39/8 43/6 49/12 49/22 55/12
 69/17 69/21 70/6 75/22 101/6
 112/14 124/1 128/15 130/4
 130/10 131/23
goes [13]   21/15 63/18 75/14
 81/6 96/14 103/22 104/3 104/3
 104/23 107/4 109/19 112/14
 131/23
going [74]   4/21 11/4 11/8
 11/22 12/16 13/21 14/7 31/7
 32/1 32/15 34/3 38/16 39/14
 40/11 44/6 44/19 46/7 47/4
 47/5 58/18 59/6 59/16 62/23
 63/6 63/17 66/4 66/5 66/19
 67/6 68/22 69/10 69/19 70/22
 70/24 71/3 71/6 74/8 77/8
 80/22 81/24 81/25 83/15 83/18
 87/6 88/24 95/3 96/3 99/9
 99/11 101/6 102/8 111/24 113/7
 113/8 114/25 124/21 126/17

## H

H1 [1]   106/14
H1222 [1]   60/11
H15116 [14]   58/15 58/23 60/18
 62/11 69/18 93/10 105/24 106/2
 106/3 106/15 107/25 109/6
 109/21 110/4
ha [1]   119/12
had [31]   5/14 5/20 9/20 10/15
 10/23 15/22 26/14 29/18 30/7
 30/25 33/5 35/23 43/11 45/13
 47/8 47/13 49/19 54/1 56/22
 59/20 60/3 66/9 67/18 71/17
 72/3 81/3 85/8 87/12 111/15
 133/11 135/20
hadn't [1]   19/17
half [4]   87/6 101/15 137/6
 137/13
half-baked [2]   137/6 137/13
hallmark [1]   31/1
hand [6]   32/6 87/23 87/25
 135/17 135/18 141/16
hands [2]   107/14 108/2
handshake [2]   81/3 131/3
hanging [2]   20/22 50/5
happen [7]   34/15 55/3 66/6
 113/7 115/17 115/23 127/9

126/18 127/7 127/11 127/12
 127/24 127/24 127/25 128/14
 128/22 129/4 129/16 130/5
 132/10 134/25 135/5 136/4
 139/24
gone [1]   43/12
Gonzalez [2]   117/12 117/14
good [18]   3/4 4/4 4/6 4/10
 15/5 61/16 61/17 68/12 68/13
 68/16 87/14 88/7 91/18 94/18
 94/18 94/19 94/20 94/21
goods [1]   44/12 66/22 86/17
 86/18 86/18 86/19 87/6 87/7
 87/8 87/16 88/22
goof [1]   129/9
got [20]   11/4 21/21 28/19 42/4
 45/20 51/10 59/1 64/14 68/1
 70/1 74/18 76/3 83/12 105/23
 106/25 111/23 115/24 116/7
 116/14 137/6
gotten [5]   74/24 119/12 135/17
 135/18 135/20
grade [1]   7/25
grant [1]   135/23
granted [5]   79/21 80/2 131/14
 132/1 132/9
grants [1]   77/13
grasp [1]   113/2
gravamen [2]   31/10 46/22
gray [5]   2/14 2/16 2/16 2/17
 3/23
gray-robinson.com [3]   2/16
 2/16 2/17
great [1]   92/6
GREGORY [3]   2/9 3/12 29/4
grew [1]   7/12
gross [2]   99/1 105/1
ground [3]   30/3 31/21 84/17
grounds [1]   84/16
Group [1]   51/12
guard [1]   72/7
Gucci [3]   68/8 68/18 68/20
guess [2]   96/17 133/19
gun [2]   43/12 132/5
guys [1]   118/7

## H

**happened [17]** 5/15 24/13 30/4 63/11 66/5 88/12 89/4 114/15 115/22 115/25 116/1 118/13 119/13 119/15 120/6 120/7 140/7

**happening [1]** 105/24

**happens [2]** 48/14 109/21

**happy [5]** 20/7 35/25 36/17 39/11 139/24

**has [65]** 11/11 11/14 12/23 14/10 18/9 18/19 18/24 29/7 31/5 33/24 34/1 37/17 41/22 44/4 46/13 46/23 46/25 47/8 47/22 47/23 50/6 51/23 52/1 52/3 52/5 52/7 52/10 52/13 53/15 54/10 55/11 55/15 60/10 61/16 65/21 71/14 72/22 76/17 78/4 79/16 80/6 83/6 85/24 86/23 87/4 89/4 89/8 95/22 98/17 100/19 103/4 107/2 107/2 109/12 110/3 110/6 110/8 110/8 112/11 113/12 134/6 135/17 136/6 138/13 139/10

**hashes [1]** 90/9

**hasn't [4]** 104/8 119/16 133/17 133/19

**have [251]**

**haven [1]** 121/10

**haven't [7]** 10/13 21/13 25/8 25/19 25/25 49/17 92/21

**having [10]** 10/9 25/2 41/8 44/13 46/13 61/17 61/17 86/8 86/15 120/23

**he [126]** 5/25 6/1 11/15 11/19 12/9 12/9 12/11 12/12 12/12 12/22 12/23 12/23 13/3 13/3 13/4 13/5 13/22 14/15 14/16 19/16 19/17 19/17 19/24 29/15 29/17 29/18 29/20 37/9 40/9 44/23 44/24 44/25 47/16 47/17 47/19 52/18 52/20 52/22 53/13 58/23 58/25 58/25 59/1 69/16 69/18 69/18 69/19 69/19 69/21 69/21 69/22 69/25 69/25 70/1 70/1 70/2 70/5 70/5 70/6 70/7 70/10 70/14 70/14 70/16 70/19 88/14 89/9 89/13 96/4 96/11 96/18 97/24 98/1 98/24 98/25 98/25 99/1 99/2 99/2 99/5 99/15 100/6 100/10 100/11 100/18 101/17 102/2 102/22 102/24 103/2 103/4 103/4 103/5 103/12 103/18 103/19 103/19 103/25 104/5 104/7 104/8 105/1 105/11 105/17 105/19 105/19 105/22 105/24 106/1 106/5 106/5 106/5 106/20 106/21 106/23 106/23 108/13 113/6 113/14 113/14 113/14 113/15 118/17 132/12 132/15

**he'll [1]** 132/15

**he's [25]** 11/22 12/16 12/16 12/17 12/17 13/8 13/9 13/9 13/10 13/19 16/8 18/25 67/15 67/15 67/22 67/23 70/22 71/3 71/6 87/25 92/19 93/12 105/16 115/24 117/19

**head [1]** 20/22

**hear [17]** 3/15 6/20 16/19 24/10 26/23 26/25 28/23 30/11 57/19 66/13 85/13 103/3 113/13 113/14 113/14 117/9 120/20

**heard [6]** 33/5 86/5 112/23 117/1 117/2 132/19

**hearing [3]** 4/18 5/6 37/11

**hearings [1]** 135/18

**hears [1]** 129/24

**hedged [1]** 36/19

**hedging [1]** 14/7

**held [3]** 90/6 91/2 132/18

**help [1]** 125/7 125/24 128/13

**hence [1]** 130/4

**her [3]** 29/24 123/18 123/23

**here [43]** 3/23 4/15 6/7 6/16 8/7 20/10 23/4 30/8 31/13 46/16 49/20 50/16 50/17 50/18 50/21 50/22 50/23 50/24 51/2 52/15 54/8 56/24 61/22 63/5 73/8 73/9 75/11 76/9 88/12 89/1 90/11 90/14 95/16 107/8 121/11 124/19 132/23 133/2 133/9 133/12 137/8 137/11 140/7

**here's [8]** 23/5 52/18 60/19 68/1 68/9 101/17 103/25 118/8

**HEREBY [1]** 141/9

**hereto [1]** 141/12

**hereunto [1]** 141/16

**HI [203]**

**HI-LITE [184]**

**Hi-Lite's [18]** 5/22 5/25 9/12 9/24 39/10 43/6 43/8 47/13 63/20 67/17 71/14 88/23 104/11 114/13 116/11 121/5 121/18 124/1

**hide [3]** 42/5 44/22 59/15

**hiding [4]** 66/11 96/23 96/25 97/1

**highlight [1]** 102/22

**highlights [1]** 101/22

**HILLSBOROUGH [2]** 141/4 141/17

**HILLYER [7]** 2/9 3/12 29/4 29/4 29/6 32/13 50/12

**him [31]** 11/17 11/20 13/6 13/7 13/12 18/23 19/8 19/9 19/16 19/22 29/17 29/18 44/21 44/22 44/25 47/15 47/15 69/22 70/4 70/6 71/2 71/9 96/4 100/7 100/8 101/8 102/9 102/11 113/10 113/13 131/20

**himself [3]** 11/21 39/24 105/14

**hire [2]** 43/8 111/22

**hired [2]** 40/23 52/17

**hires [1]** 132/6

**his [41]** 6/1 11/23 19/2 19/9 19/11 19/12 19/13 40/9 40/24 41/8 58/23 59/11 59/14 64/3 64/7 77/14 77/14 89/16 96/5 96/5 96/6 96/14 97/21 98/24 99/17 99/21 100/4 100/23 101/12 101/18 101/19 102/23 103/3 103/6 103/23 104/4 104/18 106/10 113/2 113/13 114/5

**hold [14]** 47/23 58/3 75/16 132/24

**holder [1]** 77/24

**holds [1]** 47/24

**Home [1]** 49/12

**Honda [3]** 83/17 83/17 83/18

**honestly [1]** 45/3

**Honor [217]**

**Honor's [2]** 121/23 136/8

**HONORABLE [1]** 2/1

**hope [4]** 82/12 101/2 116/21 125/25

**how [48]** 7/7 7/18 14/15 19/20 22/15 32/12 34/9 42/25 45/6 45/19 60/24 62/7 68/4 74/1 74/4 74/4 81/18 85/23 88/21 88/22 97/7 101/11 103/6 106/16 106/18 108/18 108/20 109/8 109/14 109/22 109/23 110/5 110/12 110/15 111/10 112/5 113/2 113/14 113/25 114/5 118/24 119/13 122/19 124/12 124/20 127/22 134/8 135/24

**however [3]** 9/3 58/9 79/13

**huh [1]** 54/14

**hundred [2]** 102/18 123/14

**hundreds [7]** 16/12 16/16 39/25 43/21 44/5 45/10 45/17

**hung [1]** 23/3

**hypertext [1]** 105/6

**hypothetical [4]** 21/8 21/11 21/21 27/17

**hypothetically [1]** 89/7

## I

**I'd [7]** 31/11 42/23 95/13 99/12 100/2 107/5 109/7

**I'll [203]** 26/22 30/19 39/11 68/10 86/3 88/14 95/17 95/18 101/1 121/2 124/5 130/1 132/17 132/21 133/3 133/5 133/14 136/17 138/5 138/23 138/23 138/24 139/13

**I'm [61]** 8/25 10/10 10/12 10/20 11/24 13/20 13/21 16/8 16/12 16/13 28/17 28/17 32/14 32/17 37/11 37/13 38/20 43/16 47/20 49/21 50/20 51/11 68/9 76/21 78/15 81/1 83/8 85/1 85/16 85/20 86/12 94/9 96/10 100/7 101/6 101/23 102/2 102/3 102/6 102/6 102/8 102/8 102/11 103/14 108/19 115/17 115/21 117/8 121/25 122/3 123/22 126/17 127/17 128/19 128/21 129/3 130/5 132/18 133/18 137/10 137/14

**I've [9]** 11/4 13/20 46/24 46/25 49/20 92/23 132/18 132/22 135/10

**idea [5]** 20/20 21/5 21/23 36/23 51/12

**identical [6]** 41/3 41/22 90/11 90/16 133/23 133/24

**identifiable [2]** 40/2 44/9

**identification [3]** 16/22 17/4 68/21

**identified [5]** 15/11 15/12 49/17 69/20 110/3

**identifiers [1]** 67/5

**identify [3]** 18/3 18/4 49/16

**identifying [1]** 84/2

**identity [1]** 41/2

**ignores [1]** 47/11

**III [1]** 2/12

**illegal [1]** 10/11

**image [3]** 67/13 67/15 68/13

**imagine [4]** 48/22 124/14 124/16 136/1

**imbued [1]** 51/14

**immediately [1]** 8/17

**imperative [1]** 42/14

**impermissibly [1]** 96/6

## I

implicated [3]  15/13 15/18 34/9
implication [2]  36/5 36/6
implications [1]  38/21
implied [6]  72/3 79/20 79/21 80/1 80/4 85/6
impliedly [1]  81/7
important [2]  40/3 121/11
impression [1]  54/7
improper [2]  136/8 136/9
improperly [2]  99/17 109/10
inadequate [3]  74/21 74/22 96/5
INC [5]  1/7 1/8 1/13 1/14 3/6
incentive [1]  31/3
incident [1]  59/7
incidents [2]  29/10 30/14
inclined [1]  139/6
include [11]  20/7 21/15 27/6 27/8 28/5 35/7 35/9 38/9 51/14 104/8 106/21
included [11]  9/16 14/4 77/7 77/21 98/22 99/17 102/21 103/18 103/25 104/18 104/19
includes [2]  108/13 124/8
including [6]  9/20 10/16 24/22 27/9 36/15 88/10
inclusive [1]  141/13
incorrect [2]  29/24 138/6
incremental [1]  20/18
indeed [2]  48/2 49/25
indicate [2]  16/6 67/20
indicated [4]  42/12 101/14 101/25 113/6
indicates [1]  14/19
Indicating [1]  54/14
indication [2]  55/4 66/7
indicia [1]  83/6
indirectly [1]  122/7
individual [5]  1/9 1/22 54/4 54/6 123/2
induced [1]  68/2
inducement [1]  94/1
industry [5]  40/2 41/13 44/14 83/12 93/11
infinitum [1]  21/24
influence [2]  60/12 128/20
influenced [1]  60/9
influences [1]  60/5
information [18]  64/22 84/1 110/22 113/22 115/5 119/3 119/19 119/20 120/4 120/11 120/22 120/23 121/17 126/2 129/23 130/20 136/11 136/20
infringe [8]  11/12 19/23 20/16 27/15 28/12 32/13 33/10 34/18
infringed [2]  37/5 37/5
infringement [45]  6/5 10/11 10/12 12/13 13/1 13/10 13/11 13/18 13/21 15/6 15/17 17/8 17/14 20/22 21/15 28/4 28/5 34/16 34/17 35/16 57/10 57/10 57/11 75/7 75/10 77/15 98/10 98/16 98/18 99/4 101/9 103/17 104/7 104/9 105/13 105/21 106/11 106/11 108/13 114/12 114/18 116/6 119/10 133/18 134/4
infringer [3]  116/8 116/13 120/8
infringes [2]  31/18 33/12
infringing [20]  14/16 17/7 20/4 28/11 34/2 34/2 34/5 35/13 96/18 97/22 98/12 99/16 100/21 114/2 114/3 114/18 114/19 116/8 116/9 121/8
initially [3]  7/11 14/19 68/14
initiated [1]  8/20
injury [1]  6/2
innocent [1]  120/17
inquire [1]  5/1
inside [1]  132/11
insisted [1]  73/14
insofar [1]  41/1
instance [7]  15/1 26/6 51/16 98/21 105/4 107/24 118/9
instances [4]  62/17 62/21 115/9 118/3
instead [2]  91/6 93/15
instituted [1]  8/16
instructed [2]  118/6 130/14
instructive [1]  90/15
insult [1]  6/2
insurance [4]  4/8 4/9 124/19 126/5
insure [1]  126/2
insured [2]  125/11 128/11
insureds [1]  125/14
intellectual [2]  91/3 94/19
intend [5]  22/15 34/10 86/5 132/4 135/16
intended [1]  96/7
intending [1]  95/7
intent [1]  58/22
intention [1]  58/22
intentional [3]  51/7 52/8 58/7 125/21 128/17
interest [5]  68/19 69/6 123/10 125/21 128/17
interested [1]  57/2 125/18
interesting [3]  43/3 49/9 96/17
interests [1]  130/22
Internet [1]  6/23
interrogatories [7]  16/12 16/14 74/10 84/3 102/10 124/21 125/24
interrogatory [17]  15/4 15/7 16/1 16/7 16/8 16/19 16/25 18/10 18/18 74/11 83/25 84/8 101/20 102/2 103/6 103/15 126/25
intervene [7]  125/4 126/13 127/16 128/15 128/22 129/4 130/6
intervenors [2]  2/18 4/8
intervention [2]  128/7 130/18
invalid [5]  11/14 26/3 31/17 31/18 32/4
invalidate [1]  32/3
invalidity [8]  12/19 12/20 20/14 22/8 28/23 29/11 30/3 133/4
invitation [1]  20/6
invite [1]  48/3
invoice [8]  22/19 22/20 23/11 23/14 24/2 24/12 29/21 29/24
invoices [1]  115/7
ironically [1]  46/12
irrelevant [2]  72/9 60/12
irrevocable [6]  72/9 75/21 75/23 76/1 80/4 133/7
is [461]
is related [1]  136/13
isn't [7]  31/4 33/15 66/8 66/9

## J

jacket [1]  16/4
Jackson [1]  2/14
Jacobson [1]  77/11
January [1]  77/4
JEFFREY [5]  1/9 3/25 4/3 121/11 123/24
Jeffrey's [1]  121/13
job [1]  139/23
Johnson [1]  118/10
JOSEPH [2]  2/4 3/20
jsozzani [1]  2/8
JUDGE [14]  2/2 65/7 113/19 119/8 119/9 135/12 136/6 136/15 136/15 136/24 138/9 138/10 138/15 139/12
judgment [25]  15/20 15/24 21/5 26/5 26/22 31/23 32/8 33/22 34/22 37/4 40/14 40/19 41/1 41/10 41/16 42/8 51/2 55/12 71/15 72/7 72/10 72/12 77/1 77/3 77/7
JULIE [2]  2/18 4/7

75/5 94/18 94/19
isolated [1]  59/7
issue [41]  13/1 13/7 15/24 22/22 22/25 26/22 26/25 27/17 32/8 36/21 43/25 50/17 51/8 65/18 66/18 71/13 76/8 77/2 78/14 79/8 79/8 79/16 79/20 79/23 84/19 85/4 85/19 86/24 86/25 90/11 90/21 99/25 103/20 105/25 107/8 109/6 128/3 130/1 133/4 133/6 136/24
issued [3]  71/14 78/1 103/24
issues [11]  30/25 76/11 79/13 79/19 113/12 126/5 126/15 126/21 129/14 135/3 139/1
issuing [1]  77/18
it [415]
it's [118]  3/15 7/20 8/8 13/7 16/4 16/21 20/18 21/2 21/10 21/14 22/24 22/25 24/14 27/2 28/4 28/4 29/1 29/24 29/25 30/8 32/4 33/4 33/7 33/16 33/16 33/16 34/8 34/10 35/13 36/1 36/1 36/19 37/6 38/17 38/25 41/24 41/25 41/25 42/12 42/16 43/24 44/1 45/2 45/16 46/3 46/18 47/23 49/8 49/13 51/9 52/8 52/14 53/23 55/4 55/23 56/4 56/5 56/7 56/8 57/1 57/13 57/24 58/8 58/15 60/1 60/15 60/22 61/9 63/7 63/14 64/25 65/24 66/18 68/22 68/25 71/25 72/24 74/22 75/25 76/2 81/23 82/11 82/13 83/13 83/20 83/24 85/9 86/24 87/11 87/19 87/19 88/24 91/2 92/9 94/12 95/14 96/15 97/23 98/2 101/5 102/16 103/20 105/2 106/17 109/20 112/18 115/22 121/15 124/3 124/6 126/15 127/5 129/21 130/16 133/20 133/23 137/20 137/23
item [1]  69/16
its [12]  5/20 5/21 6/23 7/12 10/18 58/14 60/2 68/25 71/18 88/22 89/15 122/23
itself [10]  30/2 30/20 61/16 63/4 89/15 90/3 90/4 113/24 114/19 132/25

## J

julie.linhart [1]   2/21
July [1]   101/14
jurisdiction [4]   26/25 32/3
38/18 38/19
jury [25]   43/4 43/10 44/8
66/10 96/8 104/2 104/23 124/21
125/5 126/19 126/21 126/22
126/25 127/7 127/11 127/13
127/22 128/6 129/15 130/7
130/9 130/10 130/11 130/12
134/25
just [105]   7/2 7/9 8/8 10/12
11/4 12/21 14/6 14/10 17/21
17/25 18/3 18/18 18/20 19/21
20/15 21/20 22/11 22/25 26/10
26/11 26/12 29/1 30/18 31/11
34/7 37/9 41/21 43/4 43/10
44/10 45/9 47/20 49/22 50/14
50/15 51/6 52/14 52/15 53/25
54/3 56/5 56/21 57/16 60/8
60/11 61/21 64/5 65/3 65/16
66/4 66/21 69/3 70/5 71/25
76/13 77/9 77/25 78/17 80/7
82/11 83/10 85/7 86/4 86/7
87/11 87/11 88/20 93/12 93/17
94/5 94/9 94/25 94/25 95/6
95/16 96/13 98/25 99/15 100/23
102/1 102/8 102/23 103/20
104/25 105/6 106/18 108/13
111/3 112/11 113/6 114/14
116/11 117/1 117/13 120/7
120/17 120/21 121/1 121/23
121/25 126/15 129/14 131/15
134/25 138/16
Justice [2]   86/3 88/14
juxtapose [1]   102/23

## K

Karaban [1]   96/4
Katzer [1]   77/11
Keener [1]   2/18
keep [12]   4/15 9/6 9/9 9/11
9/13 9/19 11/17 14/7 15/24
16/3 27/17 82/9
keeping [1]   27/19
keeps [2]   11/19 50/7
Keogh [2]   90/12 90/21
kept [9]   10/8 10/9 10/10 10/15
10/17 23/3 73/17 137/8 137/11
kids [1]   132/5
kind [6]   11/15 46/11 73/20
80/2 86/20 99/23
kinds [1]   100/14
knew [6]   26/13 44/19 59/14
83/10 137/8 137/11
know [103]   12/23 14/2 14/11
14/14 14/16 17/9 17/10 22/11
22/13 24/24 25/2 25/4 25/5
25/8 25/18 28/1 28/14 30/12
31/4 31/11 32/1 32/19 32/21
32/24 35/8 42/24 44/16 46/10
46/23 46/25 47/8 47/9 47/9
47/11 47/13 47/21 48/5 48/15
49/2 49/21 55/10 56/1 56/4
56/5 56/7 57/16 60/4 60/7
60/22 62/7 67/14 69/25 74/2
74/5 76/16 79/8 85/23 88/21
92/6 93/7 93/11 94/19 95/24
97/7 97/17 102/22 103/4 104/13
105/14 106/4 106/6 107/13
107/15 107/17 107/18 107/19

107/24 108/1 108/3 109/1
109/14 109/22 109/23 109/24
110/1 110/5 110/23 116/10
118/24 119/13 120/18 122/17
122/19 127/21 128/23 128/24
128/24 129/15 130/13 133/17
134/8 137/2 137/5
knowing [3]   121/15 125/19
125/21
knowingly [1]   117/5
knowledge [1]   30/15
known [2]   42/20 98/13
knows [3]   24/12 93/9 110/7
Kraft [1]   54/5

## L

label [3]   88/16 88/18 88/19
lack [2]   45/22 49/14
lamp [14]   19/5 23/2 24/23
26/16 33/17 33/19 33/24 49/4
49/12 54/9 60/7 60/8 68/22
98/16
lamps [9]   7/5 7/6 34/3 34/4
34/12 34/13 34/18 39/21 53/13
language [2]   21/22 137/13
Lanham [20]   57/23 57/23 61/8
61/10 61/13 61/15 62/6 66/17
66/20 66/23 67/1 67/9 86/20
88/11 91/4 91/22 92/9 92/11
98/4 107/6
large [1]   42/21
larger [2]   101/22 105/1
last [5]   76/16 134/12 134/15
134/21 135/5
lasted [1]   24/22
latched [1]   99/10
late [1]   84/10
later [7]   8/5 22/12 34/11 45/8
45/8 66/19 128/10
laundry [2]   17/20 18/4
Laureyssens [1]   51/11
law [37]   3/23 11/12 11/18
12/22 13/20 13/25 21/1 21/22
22/1 24/3 24/16 26/9 28/14
41/9 55/16 58/6 60/15 75/5
75/8 75/25 77/21 79/24 79/25
80/1 80/8 81/22 82/7 89/19
89/23 89/23 90/9 92/7 98/19
99/12 100/13 132/21 140/5
laws [1]   92/14
lawsuit [3]   11/14 126/17 140/6
lawyer [1]   115/21
lawyers [4]   3/16 19/20 100/7
128/23
lead [1]   79/15
leading [1]   96/6
LEAHU [4]   2/5 3/14 3/14 3/18
learned [2]   45/6 70/2
least [10]   10/13 10/18 33/4
33/6 46/25 49/14 60/13 65/7
84/18 105/24
leave [4]   76/10 77/8 84/19
135/8
led [1]   67/5
leeway [1]   11/20
left [8]   17/18 29/7 50/25 51/2
55/18 79/23 80/7 130/21
legal [2]   54/21 54/22
legitimate [6]   97/16 104/13
104/16 104/18 104/21 106/25
legitimately [1]   104/10
less [1]   133/14
let [20]   5/13 6/20 15/15 16/11

16/19 20/7 20/21 28/23 30/18
37/14 57/19 62/1 62/2 85/13
86/4 93/11 117/9 118/12 119/17
128/22
let's [12]   11/10 12/19 22/8
39/8 43/4 82/11 118/12 120/7
127/2 127/2 127/6 127/6
letter [3]   12/14 35/5 73/19
level [1]   48/2
liability [13]   1/3 1/18 53/19
60/16 60/23 125/6 126/18
126/22 128/19 129/5 129/7
129/9 130/19
license [34]   10/21 13/24 71/13
71/17 72/3 72/9 72/21 73/13
74/8 74/12 74/16 75/6 75/9
75/12 75/21 75/24 76/4 76/11
77/10 77/13 77/18 77/23 78/1
78/12 78/18 79/16 79/21 79/22
80/2 80/4 80/7 85/6 133/6
133/7
licensee [1]   77/14
lies [1]   12/15
light [167]
lighting [12]   40/24 44/5 44/20
53/1 57/13 57/15 71/4 93/8
93/8 93/10 105/9 124/2
lights [40]   5/15 6/15 6/16
6/23 7/2 7/12 7/12 7/24 7/24
9/6 9/11 9/12 9/13 9/16 9/19
9/20 9/20 9/21 10/3 10/8 10/9
10/10 10/15 10/17 10/17 43/1
44/10 44/10 44/14 47/12 48/16
50/4 50/8 78/2 109/15 117/4
117/6 118/15 118/16 140/3
like [32]   6/9 19/10 19/11
19/14 19/24 31/11 33/21 35/10
35/25 41/18 42/23 45/10 53/24
60/7 60/8 60/11 69/16 83/25
84/11 86/20 93/14 95/13 99/2
100/2 101/21 109/7 113/12
122/20 128/21 133/6 133/8
139/22
likewise [1]   51/2
limine [3]   71/2 71/12 131/14
limit [6]   65/23 77/22 82/10
92/10 106/5 106/20
limitation [5]   78/6 78/6 78/8
80/2 81/6
limitations [4]   48/3 79/15
92/6 133/7
limited [20]   1/3 1/18 35/18
53/25 62/16 62/21 78/2 81/2
82/9 82/17 84/3 84/4 92/1 92/3
92/6 106/5 125/4 126/22 136/3
136/5
limiting [1]   64/9
line [7]   16/18 63/5 73/2 82/5
101/6 115/8 117/16
lines [1]   80/24
LINHART [2]   2/18 4/7
link [2]   105/17 105/19
links [1]   105/7
list [7]   17/20 18/4 23/17
52/18 101/18 103/12 105/15
listed [1]   103/16
listening [2]   85/20 113/10
lists [1]   102/17
LITE [184]
Lite's [18]   5/22 5/25 9/12
9/24 39/10 43/6 43/8 47/13
63/20 67/17 71/14 88/23 104/11
114/13 116/11 121/5 121/18

## L

Lite's... [1]  124/1
literally [2]  43/20 88/13
literature [1]  44/4
litigants [1]  88/9
litigate [7]  28/18 30/9 38/7
  38/13 38/13 130/3 131/21
litigated [1]  83/24
litigating [3]  6/9 38/22
  111/18
litigation [11]  8/8 13/10
  27/20 28/20 79/1 79/15 111/24
  125/8 134/8 134/24 135/1
little [5]  47/2 96/16 102/7
  123/18 132/18
live [1]  132/15
LLC [3]  1/3 1/18 3/6
located [1]  59/17
logo [2]  91/16 92/20
long [6]  27/25 29/1 124/12
  135/24 137/8 137/11
longer [6]  9/1 21/11 73/1 75/3
  75/3 106/22
look [29]  15/6 19/24 20/7
  21/14 21/23 22/3 27/11 29/18
  34/18 34/23 35/7 46/7 48/15
  49/13 54/18 57/13 57/14 65/5
  70/10 73/19 94/11 95/17 95/18
  96/11 96/12 128/21 132/21
  133/3 133/14
looked [5]  21/13 25/2 65/16
  69/16 72/13
looking [17]  18/11 18/13 35/9
  35/11 37/3 47/21 53/19 53/20
  67/4 73/5 94/13 94/16 103/12
  108/23 126/20 127/20 129/13
looks [3]  60/7 68/10 84/10
lose [1]  129/10
losing [2]  65/17 129/1
lost [1]  139/12
lot [4]  11/2 11/3 21/16 30/9
love [2]  7/4 7/5
low [1]  60/8
ludicrous [1]  63/14

## M

ma'am [11]  7/1 17/2 19/6 40/20
  56/21 57/5 61/9 70/21 71/8
  120/25 124/11
made [33]  29/13 39/18 42/10
  42/22 43/13 45/8 46/17 54/23
  62/12 72/21 78/6 78/6 85/17
  86/7 88/6 94/6 97/13 98/8 98/9
  100/11 107/14 107/20 108/1
  108/13 108/18 112/5 112/10
  114/12 123/16 123/16 124/8
  127/3 135/16
magazines [1]  45/16
mail [1]  68/10
main [1]  71/21
maintain [1]  123/1
make [39]  33/20 42/18 42/19
  43/6 45/6 46/19 47/3 48/18
  49/24 50/8 54/3 54/24 62/3
  67/9 68/4 69/12 69/15 69/15
  85/7 89/4 95/21 99/9 101/17
  102/12 105/2 108/7 113/15
  116/13 120/7 120/9 126/9
  127/11 127/14 128/16 130/1
  132/17 135/16 136/5 140/6
makes [3]  41/8 44/11 123/20
making [16]  6/15 12/25 13/17
  14/19 20/13 31/12 34/4 38/24
  40/19 42/25 45/10 47/7 67/2
  94/4 132/4 140/3
manufacture [2]  39/20 62/18
manufactured [9]  9/14 16/22
  17/5 59/13 59/24 83/11 83/15
  89/10 91/15
manufacturer [7]  7/13 39/19
  83/14 88/18 90/17 90/18 90/19
manufacturers [2]  6/23 45/10
manufacturing [10]  1/8 1/14
  3/24 4/2 24/20 30/25 90/18
  90/20 91/16 107/1
many [6]  32/12 34/9 44/25 97/7
  110/5 137/4
March [2]  139/7 141/18
margin [1]  122/25
marginally [2]  104/6 131/24
mark [14]  6/3 6/5 68/19 86/11
  91/14 96/12 114/22 116/8 116/9
  116/10 116/15 133/20 133/23
  133/24
marked [1]  101/24
market [7]  7/10 14/4 45/14
  93/2 93/7 93/8 93/8
marketing [2]  120/12 120/13
Mart [1]  42/15
MARY [2]  2/1 60/6
master [1]  111/23
matched [1]  43/21
material [7]  77/14 82/10 82/11
  82/14 82/15 82/17 84/14
materials [3]  60/20 82/6 83/10
math [1]  103/24
matter [21]  3/5 5/10 11/12
  11/18 30/17 32/2 38/11 45/19
  45/19 60/16 67/18 69/16 79/24
  80/1 80/8 90/10 109/25 112/15
  134/24 134/24 135/21
matters [1]  43/16
may [49]  11/15 11/15 12/2 12/3
  12/21 13/1 15/5 21/6 21/25
  26/22 26/22 27/15 28/13 28/24
  29/6 32/22 32/25 33/24 36/1
  37/18 39/16 42/23 43/25 45/7
  54/3 54/6 55/7 58/18 60/22
  65/25 69/3 84/15 84/15 84/18
  86/6 94/25 100/23 101/21 102/1
  102/17 112/23 113/12 114/9
  115/25 121/1 122/8 131/15
  134/23 134/23
maybe [4]  47/1 83/19 84/7
  116/11
McAdam [2]  29/14 70/24
McAdam's [1]  30/7
me [55]  5/2 5/13 6/20 7/4
  10/19 11/17 11/19 15/15 16/19
  17/25 18/14 28/23 29/3 30/18
  32/8 33/21 35/25 37/14 38/12
  38/12 39/21 43/7 46/10 52/21
  56/21 57/19 58/6 67/22 73/19
  77/5 77/25 82/23 85/23 85/23
  86/4 88/21 93/11 98/8 98/9
  98/19 99/15 99/24 100/4 100/25
  102/24 113/11 117/9 117/13
  117/21 118/12 119/14 119/17
  128/16 130/1 135/11
mealy [1]  11/19
mealy-mouthed [1]  11/19
mean [17]  30/24 31/10 44/1
  45/3 49/16 50/5 56/4 56/20
  83/5 102/23 113/20 119/24
  121/24 128/9 136/12 137/9
  137/12
meaning [34]  40/6 41/5 41/8
  41/11 41/23 42/2 42/7 42/14
  42/16 43/11 44/3 44/9 44/13
  45/13 45/22 46/3 46/4 46/23
  51/8 51/13 51/20 51/23 51/25
  52/11 54/18 55/17 55/18 56/14
  57/7 57/8 93/2 95/23 132/21
  133/1
meaningful [1]  114/1
means [1]  57/9
mediation [1]  134/11
meet [4]  24/4 26/15 46/11
  139/15
melded [1]  121/15
memo [1]  115/8
memorialize [1]  29/9
memorializing [1]  29/23
memory [1]  26/15
mental [2]  84/13 84/20
mentioned [2]  95/16 100/12
merely [2]  52/24 87/12
met [4]  92/8 123/19 135/9
  135/12
metaphor [1]  47/2
methodology [2]  96/11 99/23
MICHAEL [4]  2/12 3/22 40/23
  52/17
michael.colitz [1]  2/16
microphone [5]  12/4 50/19 64/4
  102/4 103/13
MIDDLE [2]  1/1 141/7
might [19]  19/23 19/24 20/3
  27/21 27/22 32/13 34/11 36/6
  46/11 59/19 66/1 79/1 84/9
  85/1 85/7 113/2 122/20 129/1
  133/16
million [6]  106/11 106/13
  106/17 108/17 110/4 110/7
millions [2]  45/18 46/17
mind [3]  6/14 17/10 83/5
ministerial [1]  101/21
minutes [1]  137/5
misappropriation [1]  89/25
miscommunication [1]  134/14
misidentification [1]  94/18
mislabeled [1]  95/8
misleading [1]  96/7
misled [2]  69/11 69/14
misrepresented [3]  87/16 94/15
  94/22
missing [1]  102/22
misunderstood [1]  37/13
mix [1]  97/21
mom [1]  124/5
moment [3]  43/24 56/21 100/12
money [15]  6/9 6/14 40/9 62/12
  65/24 66/10 74/18 107/23
  108/20 109/8 110/15 111/24
  113/25 127/10 134/9
moot [6]  26/25 36/9 38/20 71/3
  71/12 132/9
more [19]  4/19 19/21 21/12
  26/19 32/16 32/18 33/6 54/12
  66/9 68/8 69/4 74/5 75/4 84/2
  84/3 117/6 128/2 134/24 134/25
morning [6]  3/4 3/22 4/4 4/6
  4/10 140/5
Morrow [1]  2/18
most [4]  49/10 49/10 58/14
  135/18
mother [2]  121/13 121/14
motion [50]  4/17 4/17 5/5

**M**

motion... [47]   15/24 18/20
  21/4 32/8 33/22 34/22 41/9
  49/17 51/1 65/6 68/15 71/1
  71/12 76/10 76/20 76/22 76/23
  77/1 77/3 77/6 77/8 84/2 84/19
  85/11 113/4 114/7 131/6 131/7
  131/14 131/25 132/16 133/17
  135/8 135/8 135/13 135/13
  135/22 136/14 136/21 138/4
  138/9 138/15 138/17 138/18
  138/18 138/19 138/20
motions [14]   4/15 4/18 4/19
  4/21 4/23 66/18 135/7 135/11
  135/14 135/16 135/20 138/23
  139/5 139/11
mouthed [1]   11/19
move [2]   18/6 84/15
moved [8]   34/25 57/22 61/1
  61/2 61/5 85/9 85/10 133/15
MR [27]   3/14 3/22 3/24 4/4
  6/21 10/4 13/18 18/17 19/6
  27/5 28/8 29/4 29/6 31/12 35/6
  50/12 56/7 63/13 69/24 83/9
  105/11 105/14 117/14 117/14
  117/16 139/20 140/8
Mr. [31]   11/14 12/6 14/2 14/11
  18/23 18/24 19/2 19/8 29/22
  32/13 39/24 42/4 55/22 59/6
  64/20 70/12 89/9 89/9 92/18
  96/4 98/24 104/20 104/25 107/3
  109/9 113/1 113/6 121/14
  123/24 132/6 132/14
Mr. Colitz [3]   29/22 113/1
  113/6
Mr. Hillyer [1]   32/13
Mr. Jeffrey [1]   123/24
Mr. Karaban [1]   96/4
Mr. Ohai [6]   11/14 12/6 14/2
  14/11 18/24 39/24
Mr. Ohai's [3]   42/4 55/22
  121/14
Mr. Sanders [3]   70/12 89/9
  89/9
Mr. Scott [5]   18/23 19/2 19/8
  132/6 132/14
Mr. Solms [1]   59/6
Mr. Sozzani [1]   92/18
Mr. Stephenson [3]   98/24
  104/20 104/25
Mr. Stephenson's [2]   107/3
  109/9
Mr. William [1]   64/20
Mrs [1]   83/9
MS [2]   2/18 2/22
Ms. [3]   29/14 29/23 123/13
Ms. Dorothy [1]   123/13
Ms. Scott [2]   29/14 29/23
much [22]   45/19 62/20 63/14
  65/17 76/2 85/21 94/5 96/1
  106/16 106/18 108/18 108/20
  109/8 109/14 109/22 109/23
  110/12 110/15 113/25 119/13
  133/1 134/8
multiple [6]   29/8 33/4 33/8
  33/9 48/24 48/25
murderers [1]   132/6
must [4]   48/12 65/18 90/4 92/8
my [40]   5/1 8/22 9/1 20/17
  26/15 34/8 38/12 38/25 41/20
  41/21 48/2 53/2 58/6 60/9
  60/12 60/12 67/14 72/16 74/1

77/20 79/3 86/12 89/18 97/4
  97/24 99/11 102/7 102/20
  124/13 124/21 128/2 128/15
  135/13 135/18 139/11 139/12
  139/21 140/5 141/14 141/16
myself [1]   102/20

**N**

name [10]   22/18 29/3 40/23
  52/17 58/20 59/5 64/2 64/3
  114/5 134/3
narrative [3]   65/25 65/25
  131/4
narratives [1]   42/24
narrow [1]   50/10
narrowed [1]   47/23
nature [2]   8/10 41/7
near [1]   102/3
nearly [1]   90/16
necessarily [4]   54/24 57/16
  90/13 107/13
necessary [4]   48/21 62/18
  92/15 137/24
need [42]   28/2 32/24 34/18
  39/3 43/4 43/6 47/21 50/7
  51/24 55/17 67/9 74/5 84/8
  84/9 85/2 99/14 99/14 103/3
  103/13 110/2 110/4 112/10
  112/13 113/13 113/14 113/14
  113/21 117/6 118/15 119/13
  126/3 126/13 126/16 128/12
  130/20 134/22 135/9 135/14
  135/24 136/1 136/10 140/1
needed [1]   30/25
needs [3]   32/5 39/4 120/4
neither [5]   88/3 93/23 93/23
  130/9 130/11
Nevada [2]   1/7 1/13
never [13]   7/16 10/24 11/22
  13/14 15/22 18/9 30/23 42/17
  63/2 73/7 116/10 131/8 134/19
new [4]   6/10 21/18 33/19 49/18
new-fangled [1]   6/10
newer [1]   25/16
next [2]   77/20 101/8
nexus [1]   100/15
Nike [2]   14/18 14/25
no [143]
No.8:14 [1]   1/12
No.8:14-CV-1955-T-35AEP [1]
  1/12
nobody [4]   46/7 111/18 111/19
  139/24
non [35]   10/21 18/20 36/8
  36/10 36/14 36/14 37/1 37/8
  37/12 37/21 48/10 48/12 49/6
  53/5 54/8 54/25 55/5 71/13
  72/5 72/6 73/13 75/6 75/12
  75/20 75/23 77/10 77/13 77/18
  80/4 86/24 96/18 98/12 114/3
  131/21 133/7
non-complete [1]   131/21
non-exclusive [14]   10/21 71/13
  72/5 72/6 73/13 75/6 75/12
  75/20 75/23 77/10 77/13 77/18
  80/4 133/7
non-functional [6]   48/10 48/12
  53/5 54/8 54/25 55/5
non-infringing [3]   96/18 98/12
  114/3
non-issue [1]   86/24
non-protectable [1]   49/6
non-tapered [7]   36/8 36/10

36/14 37/1 37/8 37/12 37/21
none [3]   11/10 34/17 108/11
nonetheless [2]   48/21 84/15
nonsensical [1]   12/8
North [1]   2/23
not [268]
note [1]   50/15
noted [2]   51/6 80/7
nothing [6]   15/8 15/9 19/21
  68/5 100/6 139/22
notice [2]   58/14 79/10
noticed [1]   65/17
notion [3]   66/11 66/19 110/13
novel [1]   72/10
now [45]   10/19 10/19 12/12
  13/17 15/20 20/2 20/2 21/10
  23/4 25/12 28/14 30/18 31/13
  31/22 37/11 43/25 45/7 46/19
  46/25 55/14 60/24 66/20 67/22
  70/10 71/17 72/18 73/10 73/23
  78/17 82/23 87/4 99/15 100/19
  101/23 102/12 105/14 106/24
  119/13 119/13 120/10 121/7
  121/11 123/25 130/15 138/19
number [31]   3/7 6/19 7/23 7/24
  16/23 16/25 17/1 54/19 64/9
  91/3 93/9 93/23 97/21 98/24
  102/10 102/22 103/11 103/20
  104/1 106/7 106/9 106/10
  106/14 108/15 108/15 108/19
  108/20 109/18 109/18 110/3
  111/3
numbered [1]   141/13
numbers [23]   81/13 90/22 92/25
  93/1 93/7 93/13 93/23 95/22
  95/25 99/5 100/6 101/11 101/13
  101/16 101/18 102/11 102/12
  102/13 103/21 111/5 111/8
  112/10 113/3
numerous [2]   137/2 137/3
NW [1]   2/10

**O**

objection [2]   71/9 113/19
objections [3]   17/21 18/4 18/7
obligation [1]   23/8
obligations [1]   126/7
observation [1]   30/2
obtained [1]   40/5
obviously [3]   28/6 42/1 90/14
occur [1]   127/8
occurred [5]   61/23 61/24 106/1
  119/18 121/24
occurrence [1]   127/5
occurring [4]   61/23 64/7 64/24
  110/10
octagonal [1]   47/5
October [1]   136/14
odor [1]   51/14
off [52]   25/1 26/18 51/15
  57/19 60/25 64/9 66/18 67/16
  67/24 68/12 68/22 72/7 75/1
  85/10 85/14 86/2 86/6 86/10
  86/15 86/18 86/21 86/24 87/3
  87/8 87/10 88/4 88/13 88/16
  88/17 88/20 88/22 89/14 89/21
  90/5 91/9 91/10 91/11 91/19
  92/21 93/13 93/14 93/15 93/15
  93/20 93/24 93/25 95/2 95/8
  95/9 120/20 133/14 139/6
offense [2]   60/16 60/23
offer [10]   13/4 27/2 36/14
  36/16 37/8 38/14 127/12 132/4

## O

offer... [2]  132/11 132/12
offered [5]  17/5 40/18 55/11
  98/24 99/5
offering [2]  11/15 37/24
office [3]  30/8 102/20 119/2
offices [2]  94/2 115/11
Official [3]  2/22 141/6 141/21
offset [2]  98/3 98/5
oh [4]  25/22 26/13 46/8 117/20
OHAI [17]  1/9 3/25 4/3 11/14
  12/6 13/18 14/2 14/11 18/24
  39/24 62/19 121/11 121/13
  123/13 123/24 124/5 124/5
Ohai's [3]  42/4 55/22 121/14
Ohais [1]  123/11
Ohio [1]  58/20
okay [19]  10/8 10/23 11/9
  12/18 13/16 22/8 29/21 32/6
  37/15 38/7 47/18 63/7 73/3
  73/4 73/22 95/17 101/1 127/2
  127/6
old [4]  25/16 25/22 45/7 94/6
old catalogs [1]  45/7
once [5]  21/14 46/25 80/1
  82/18 139/13
one [82]  4/20 5/24 6/9 6/23
  7/5 11/13 14/9 18/11 24/22
  25/3 25/6 25/16 25/16 25/22
  25/23 29/14 29/18 29/19 30/16
  32/16 32/18 33/4 33/6 33/23
  33/25 34/15 34/16 34/18 36/1
  36/21 37/11 39/18 40/12 41/20
  42/24 43/18 44/14 44/17 46/7
  46/12 49/9 49/10 49/15 54/9
  54/15 57/12 58/3 58/14 59/4
  59/5 61/20 62/9 65/20 68/10
  69/3 84/3 84/7 84/8 84/10
  87/23 89/8 89/17 90/10 92/10
  96/10 98/17 100/6 102/25
  103/17 105/7 106/19 109/6
  109/19 112/11 118/10 123/14
  128/1 130/6 130/14 131/15
  134/25 137/16
ones [6]  10/15 20/18 25/16
  25/16 25/23 93/5
online [1]  6/22 7/9
only [38]  12/6 16/13 18/13
  18/25 24/10 24/18 26/3 31/18
  36/20 36/21 37/24 38/1 41/21
  44/3 46/4 50/10 54/18 61/1
  63/18 67/3 77/15 79/23 82/17
  86/16 89/8 102/19 104/8 106/3
  109/18 111/22 112/14 115/5
  116/7 117/4 118/9 121/24 137/5
  139/25
onus [1]  135/19
open [3]  6/3 7/10 69/22
opened [6]  23/5 24/7 26/18
  70/3 70/3 70/12
opening [2]  97/21 98/13
operating [3]  31/16 75/5 75/9
opinion [1]  42/8
opportunity [1]  100/2
opposed [3]  42/13 49/2 93/13
opposing [2]  77/23 139/21
opposite [3]  46/6 51/17 88/20
opposition [7]  15/20 15/23
  33/22 34/22 51/1 51/10 138/17
options [2]  31/14 31/25
oral [14]  24/3 24/4 24/15
  24/16 26/10 26/11 26/19 65/3

orally [2]  83/4 83/19
order [31]  5/1 28/24 34/14
  56/10 59/16 59/20 59/24 60/9
  62/3 63/9 91/9 107/16 112/16
  113/20 115/12 115/13 115/15
  116/12 116/17 116/19 117/7
  118/17 118/17 118/18 118/20
  118/21 119/8 119/9 119/21
  135/4 139/9
ordered [4]  62/22 68/23 104/12
  107/25
ordering [1]  65/17
orders [15]  5/5 59/11 62/10
  62/18 64/8 65/16 97/2 112/1
  112/2 112/4 115/6 120/11
  120/24 122/8 130/18
ordinary [1]  43/11
origin [7]  87/14 87/15 88/7
  90/6 94/15 94/18 94/21
original [5]  55/6 71/18 81/3
  134/1 134/2
originally [1]  74/18
ORIGINALS [51]  1/7 1/13 3/6
  3/24 4/2 8/18 11/24 114/16
  114/17 114/24 115/2 115/6
  115/7 116/12 116/16 116/25
  117/3 117/4 117/7 117/22 118/4
  118/6 118/13 118/15 119/2
  119/24 120/1 120/4 120/22
  120/24 121/4 121/13 121/14
  121/20 121/22 122/1 122/4
  122/7 122/8 122/16 122/23
  123/1 123/8 123/9 123/23
  123/25 124/9 125/18 127/10
  127/25 134/3
Originals' [11]  114/22 115/1
  115/11 115/14 115/21 116/3
  116/9 117/23 117/24 124/2
  133/23
originated [1]  8/19
ostensibly [1]  14/14
other [51]  6/5 8/13 9/2 20/18
  32/6 36/22 37/19 37/20 38/23
  40/3 40/8 42/19 45/10 47/3
  48/14 51/24 55/11 55/12 55/18
  59/23 61/20 61/22 63/4 66/4
  68/24 68/25 69/12 81/5 81/14
  83/12 83/13 84/16 87/25 88/17
  88/25 89/15 91/3 95/21 96/12
  98/16 100/6 115/12 122/19
  128/1 133/15 134/11 135/3
  135/9 135/10 137/9 137/12
others [1]  14/6
otherwise [3]  43/12 88/10
  122/10
our [111]  4/19 7/11 7/15 15/13
  15/23 16/11 20/21 22/6 28/15
  30/8 32/8 32/9 32/9 32/9 32/22
  33/22 35/10 37/17 38/1 39/16
  41/9 42/8 42/16 42/20 45/17
  45/18 46/20 51/1 51/5 51/10
  53/22 53/24 56/15 57/25 58/11
  58/13 60/14 61/24 62/1 62/2
  62/2 62/5 64/19 67/5 67/7 72/2
  72/4 72/15 72/23 73/1 73/1
  73/2 74/25 75/8 75/17 77/6
  77/6 77/8 77/21 78/5 79/9
  80/21 81/2 81/2 81/13 81/13
  81/13 81/13 81/25 81/25 82/4
  82/5 85/13 87/7 87/17 87/17
  92/20 92/24 92/25 93/5 93/14

  93/17 93/18 93/18 93/20 94/13
  94/13 94/16 94/16 95/1 97/2
  97/23 98/2 98/2 98/10 105/2
  105/5 105/7 105/12 105/12
  105/17 116/24 121/8 121/9
  121/9 133/22 134/3 134/4
  136/25 138/16 138/20
ours [3]  54/24 82/18 94/12
out [52]  7/8 7/13 7/13 13/16
  15/21 15/23 22/17 23/22 24/3
  24/18 29/7 30/5 31/20 43/13
  43/19 47/16 59/17 59/19 61/19
  62/5 62/8 63/8 66/2 66/6 67/16
  67/20 67/23 90/9 93/12 96/8
  97/20 99/16 102/9 102/15
  103/16 104/21 109/9 109/17
  110/8 114/23 115/1 118/4
  129/20 133/19 134/11 135/17
  135/18 137/7 137/7 138/8
  138/16 139/2
outbursts [1]  139/21
outcome [1]  135/1
outright [1]  113/13
outside [5]  70/16 71/7 75/6
  75/9 132/12
outstanding [1]  4/18
over [10]  13/9 18/6 20/22 22/2
  106/22 111/24 116/18 125/2
  126/17 128/8
overall [2]  54/7 54/7
overcome [2]  24/16 41/15
overlap [1]  91/25
overruled [1]  113/20
own [28]  5/21 6/1 7/12 8/18
  12/8 23/18 43/13 59/24 60/2
  62/4 75/18 89/13 89/16 90/20
  91/16 96/25 97/3 102/23 103/23
  111/12 114/13 122/4 123/18
  125/1 125/23 126/1 128/7 128/8
owned [1]  123/12
owner [3]  12/6 30/10 77/13
ownership [1]  123/10

## P

PA [3]  2/5 2/9 2/14
package [1]  49/2
packaging [1]  42/13
page [16]  48/2 50/25 51/1 51/2
  101/4 101/5 101/7 101/23 102/8
  102/9 102/11 103/24 105/8
  105/19 107/2 117/16
pages [3]  44/6 117/15 141/13
paid [23]  72/8 74/15 74/17
  74/18 74/20 104/12 104/13
  107/11 107/17 107/18 107/19
  107/23 108/3 108/7 109/14
  109/22 109/23 110/12 110/16
  110/21 112/10 113/25 128/12
palming [1]  51/15
papers [2]  32/9 113/11
paperwork [2]  29/22 30/15
paragraphs [1]  102/14
paraphase [1]  102/8
paraphrase [1]  102/1
Parsons [1]  2/19
part [31]  9/23 29/14 29/24
  43/1 44/12 59/7 65/6 65/25
  81/13 90/22 91/3 92/24 93/1
  93/7 93/18 94/1 95/22 95/25
  98/13 101/13 101/16 101/18
  102/22 103/11 103/20 103/21
  109/17 109/18 128/6 131/4
  135/19

**P**

participating [1]  125/4

particular [19]  28/25 30/21
  39/24 48/8 48/9 53/16 58/15
  63/3 79/16 79/20 85/10 85/18
  86/25 88/3 103/11 109/17
  109/18 113/4 126/15

particularly [3]  11/10 50/9
  85/19

parties [18]  5/17 8/4 9/1
  10/13 21/7 39/17 72/2 78/1
  114/16 127/19 128/11 128/17
  130/1 130/9 130/11 134/15
  135/12 137/21

party [7]  1/24 14/19 61/22
  77/24 125/17 130/2 130/15

pass [8]  21/20 88/22 89/14
  91/9 91/9 91/11 120/20 122/16

passed [4]  67/16 67/23 86/18
  87/8

passing [36]  57/19 60/25 66/18
  68/12 68/22 75/1 85/10 85/14
  86/2 86/6 86/10 86/15 86/21
  86/22 87/3 87/10 88/4 88/13
  88/16 88/17 88/20 89/21 90/5
  91/19 92/21 93/13 93/13 93/14
  93/15 93/20 93/24 93/25 95/2
  95/8 95/9 133/14

past [2]  131/23 131/24

patent [71]  11/13 11/13 12/1
  12/6 12/8 12/10 12/18 13/13
  13/14 13/15 13/16 13/25 14/5
  14/5 14/16 15/18 17/7 20/13
  20/16 20/22 22/6 22/11 26/3
  26/4 27/13 27/15 27/19 27/21
  28/1 28/11 28/15 28/18 28/19
  28/21 29/17 29/20 30/4 30/9
  30/10 30/16 31/17 31/18 32/1
  32/4 32/4 32/13 33/10 33/10
  33/15 33/25 34/7 34/11 35/18
  36/11 36/18 36/20 36/22 37/2
  37/2 37/5 37/16 38/1 38/4 38/8
  38/13 38/13 38/22 88/11 92/2
  92/13 133/18

patented [1]  90/24

patiently [1]  124/20

pattern [1]  59/7

pause [9]  33/2 39/7 56/18
  56/23 69/9 79/6 96/2 124/18
  137/19

pay [1]  124/22

peace [1]  20/21

pejoratives [1]  137/13

pending [2]  4/22 136/15

penumbra [1]  31/22

people [13]  22/18 38/23 41/6
  42/19 45/16 47/6 57/13 60/17
  67/5 94/10 94/12 122/9 130/21

Pepsi [4]  88/15 88/18 88/19
  88/19

per [1]  129/15

percent [8]  59/11 63/11 64/8
  64/24 66/5 66/6 102/18 123/14

percentage [2]  65/15 65/18

performed [1]  99/22

perhaps [3]  26/16 48/24 136/22

period [16]  10/4 10/16 25/9
  25/10 30/16 62/24 63/19 75/24
  92/1 92/3 105/25 105/25 106/21
  127/12 127/13 128/1

periods [1]  101/14

permission [2]  84/18 135/13

permit [2]  99/24 135/23

permitted [1]  28/25

perpetual [3]  92/9 92/12 92/13

person [5]  26/12 34/1 66/4
  66/8 68/10

person's [2]  88/16 88/17

personal [1]  30/14

personality [1]  66/10

perspective [1]  49/14

pertinent [1]  124/6

Peterson [1]  2/19

photograph [26]  21/3 61/11
  61/13 61/14 67/4 68/3 68/15
  70/14 87/12 87/13 87/14 87/17
  87/24 88/1 88/7 89/20 89/25
  90/1 90/2 90/7 91/2 91/21
  91/22 93/23 105/18 105/18

photographs [26]  10/2 10/9
  10/21 10/24 10/25 22/14 66/20
  67/2 67/10 67/18 69/11 70/23
  71/2 71/7 72/4 73/1 73/11 75/2
  81/8 86/16 86/19 87/4 94/1
  105/5 105/6 132/11

photography [5]  75/17 81/13
  92/25 93/18 94/16

photos [4]  83/18 105/7 105/8
  105/19

physical [4]  34/23 90/5 91/19
  94/11

physically [4]  21/13 21/13
  35/11 105/14

pick [2]  54/3 127/7

picture [21]  18/24 19/2 19/8
  21/10 29/17 34/21 35/1 37/3
  44/22 47/14 47/17 56/3 60/19
  68/1 70/14 70/15 71/4 81/24
  83/14 88/24 94/13

pictures [11]  9/23 10/17 25/17
  44/21 62/1 70/16 70/17 70/19
  83/17 86/8 90/22

piece [6]  19/1 19/3 19/4 24/20
  35/23 84/1

pieces [3]  29/8 44/17 132/22

pigeon [1]  70/5

place [7]  21/2 43/1 47/12
  64/20 81/6 112/18 134/15

placed [1]  62/22

Plaintiff [11]  1/5 2/4 3/9
  5/14 5/16 5/19 5/20 5/22 6/4
  6/6 107/7

Plaintiff's [4]  4/11 16/24
  23/18 49/14

Plaintiffs [2]  1/16 26/3

plans [1]  21/2

play [1]  44/22

played [1]  7/8

pleadings [2]  71/24 77/8

please [8]  3/4 3/8 29/6 37/14
  38/10 38/11 38/12 85/16

pleased [1]  36/13

pleasure [1]  38/25

plenty [1]  55/24

plopped [1]  47/14

pocket [3]  62/5 62/8 63/8

podium [1]  12/2

point [48]  14/9 14/22 14/23
  21/6 22/17 23/22 24/18 28/24
  31/1 31/11 31/19 31/25 33/3
  38/21 40/5 43/19 43/23 45/24
  46/9 47/25 48/23 49/11 52/21
  52/25 54/2 54/19 57/12 61/19
  65/19 66/19 69/4 70/10 71/24
  77/20 78/4 78/5 89/17 89/18

permit [2]  99/24 135/23

93/12 95/21 100/23 101/17
  101/22 102/9 131/15 138/8
  138/16 140/2

pointed [4]  30/5 47/18 89/8
  110/8

pointing [1]  51/4

points [4]  30/18 42/24 89/3
  121/3

policy [6]  32/5 91/25 126/7
  127/4 127/5 130/22

popular [2]  41/12 58/14

Porcelli [10]  65/7 135/12
  136/6 136/15 136/15 136/24
  138/9 138/10 138/16 139/12

Porcelli's [3]  113/20 119/8
  119/9

porch [2]  23/3 23/4 24/13

portion [2]  101/10 121/6

pose [1]  13/1

position [7]  30/23 42/16 72/23
  74/8 74/9 98/2 105/12

possibility [3]  107/8 107/9
  107/12

possible [3]  14/21 27/20
  102/16

post [3]  133/10 139/10 139/11

potential [2]  79/13 125/14

potentially [7]  15/18 32/13
  33/9 37/5 38/24 48/21 128/17

practice [2]  3/16 59/7

practices [2]  51/13 51/14

precipitous [2]  65/13 66/3

precisely [2]  88/12 121/17

preclude [4]  47/6 69/4 71/2
  113/13

precluded [2]  73/24 133/13

prefer [1]  140/3

preference [2]  38/12 38/12

prejudice [3]  71/23 76/9 84/9

prejudiced [1]  74/2

premise [2]  37/14 72/16

preparation [1]  136/9

prepare [6]  122/14 123/4
  125/25 126/10 127/3 137/6

prepared [3]  104/8 132/17
  138/2

preparing [1]  137/5

presence [1]  87/11

present [2]  45/5 54/16

presentation [2]  32/9 81/7

presented [4]  38/15 46/4 46/5
  104/2

presenting [2]  104/22 105/1

preserve [5]  11/21 28/11 38/3
  38/23 71/18

president [3]  62/19 121/12
  121/12

presumably [3]  75/3 106/22
  139/15

presume [2]  38/23 140/3

pretrial [2]  139/7 139/9

pretty [5]  43/20 52/16 56/5
  76/2 133/1

prevail [1]  67/25

prevalent [2]  44/14 50/4

previously [3]  59/21 75/12
  121/25

price [1]  7/24

primarily [1]  54/22

primary [3]  42/10 48/8 139/23

principal [5]  7/5 11/13 56/13
  56/15 108/12

principals [2]  5/25 134/13

**P**

print [1]   105/15
printer [1]   105/15
printout [1]   111/2
prior [4]   8/17 45/23 117/19
   132/3
privity [1]   22/24
pro [2]   92/3 123/2
probably [4]   33/13 41/3 48/15
   130/13
probative [8]   41/25 42/1 51/7
   51/23 52/8 52/8 52/14 58/9
problem [10]   12/15 15/16 21/8
   22/24 44/12 48/25 73/14 94/23
   104/22 121/8
problematic [2]   21/7 50/10
problems [1]   46/13
procedural [1]   5/10
procedure [2]   82/10 82/13
proceed [1]   20/21
proceedings [4]   2/1 140/10
   141/11 141/15
process [2]   73/5 79/12
produce [13]   22/19 62/17 64/22
   65/14 96/5 111/13 111/13
   111/20 113/22 120/21 122/12
   124/4 124/12
produced [12]   15/22 21/4 22/20
   23/10 25/23 64/11 65/4 65/11
   111/25 115/6 115/9 120/5
producer [1]   90/7
producer's [1]   51/12
producing [2]   20/16 120/10
product [140]   5/21 5/22 6/1
   6/2 12/25 14/12 14/16 14/23
   15/21 17/13 17/16 18/25 18/25
   19/23 20/12 21/14 21/14 21/18
   21/21 30/11 31/15 31/16 31/20
   33/4 33/23 33/25 35/11 39/15
   42/13 45/17 49/1 50/9 51/21
   56/1 56/8 58/15 58/16 59/18
   59/22 59/23 60/2 60/3 60/5
   60/5 60/8 60/8 60/9 60/21
   61/18 62/2 62/4 62/4 62/11
   63/3 64/13 65/12 65/16 67/5
   67/6 67/16 67/16 67/17 67/20
   67/23 67/24 68/21 69/19 74/19
   75/24 77/19 80/24 81/3 81/25
   82/14 82/15 83/15 83/16 87/18
   88/17 88/19 88/24 89/1 89/10
   89/12 89/15 89/15 90/2 90/4
   90/5 90/6 90/7 90/8 91/2 91/4
   91/15 91/16 91/17 91/19 93/11
   94/2 94/3 94/3 94/11 94/13
   94/13 94/15 94/17 96/19 97/3
   97/16 98/10 98/12 102/11
   102/12 102/13 104/11 105/8
   105/19 106/8 107/1 107/14
   107/15 107/18 107/18 107/20
   107/21 107/25 109/21 110/16
   114/2 114/3 116/19 117/18
   117/21 122/25 123/6 123/20
   124/8 132/14 132/20
product-specific [1]   31/20
production [1]   34/25
products [69]   7/14 12/17 13/17
   14/4 14/6 14/8 15/7 15/12
   15/13 15/16 15/17 16/22 17/5
   17/17 17/19 18/1 18/3 18/3
   18/5 18/20 25/9 25/10 27/18
   32/12 39/20 45/18 52/19 52/20
   52/22 53/22 53/24 53/25 58/14
   59/12 59/13 59/25 62/2 62/18
   72/4 75/4 75/18 76/5 80/21
   81/14 81/14 81/25 82/1 82/2
   82/5 83/11 87/25 92/20 92/25
   93/19 97/2 97/5 97/8 97/11
   97/12 99/3 103/16 105/16
   111/15 114/22 115/13 117/25
   122/22 123/9 133/25
profit [13]   29/13 46/19 65/15
   97/11 105/1 107/20 108/7
   121/16 122/17 122/18 122/23
   123/16 123/21
profited [2]   116/5 123/5
profits [16]   34/13 97/22 99/1
   100/12 100/20 101/12 115/3
   121/5 121/9 121/9 121/19
   121/21 122/6 122/16 124/5
   124/8
promise [1]   94/7
pronounced [1]   114/5
proof [4]   26/20 51/7 51/13
   52/8
proper [2]   5/4 130/12
properly [4]   88/10 92/21 98/22
   128/25
property [3]   51/16 91/3 94/19
proposal [1]   80/12
proposed [1]   4/7
proposing [1]   83/8
propound [2]   83/25 124/21
proprietary [4]   14/3 14/6 14/8
   81/8
protect [6]   20/4 43/17 44/3
   61/21 84/14 130/22
protectable [5]   45/15 45/16
   49/6 68/19 133/20
protected [10]   39/21 48/22
   49/7 49/8 51/13 61/13 61/14
   66/20 66/22 93/23
protection [6]   27/2 42/3
   43/23 50/3 50/10 112/13
protective [1]   112/16
prototype [4]   5/23 25/12 25/13
   30/20
prototypes [4]   24/20 25/3 25/7
   25/22
protracted [1]   79/15
prove [5]   46/18 51/20 55/17
   78/23 128/23
proven [4]   23/14 41/4 89/7
   132/24
provide [7]   36/13 46/13 82/13
   109/25 110/13 110/14 125/8
provided [8]   18/24 37/4 41/9
   44/18 101/20 109/12 110/22
   114/11
providing [1]   82/15
proving [1]   103/2
provisions [1]   126/8
public [6]   30/2 31/6 31/8 32/4
   42/21 44/11
pull [1]   102/4 113/3
pulled [3]   15/21 26/17 49/12
punitive [1]   129/19
purchase [9]   7/20 69/12 89/8
   89/17 111/25 112/2 112/4 115/6
   116/23
purchased [8]   7/2 7/9 22/14
   59/21 109/19 110/5 110/8 124/9
purchases [2]   112/10 113/24
purely [1]   53/7
purport [1]   124/22
purported [1]   81/6

**Q**

Quadratec [2]   95/14 95/15
qualifications [1]   99/21
qualify [1]   92/7
quality [3]   52/23 52/23 54/1
question [39]   5/4 11/3 16/23
   17/10 17/11 17/22 17/24 18/1
   18/9 28/21 28/23 29/9 30/23
   34/8 40/25 45/13 52/2 52/6
   53/2 54/17 54/21 54/22 55/7
   55/10 55/12 56/12 56/13 67/15
   72/6 72/16 74/1 96/16 97/4
   97/24 98/19 99/20 99/21 109/12
   130/19
questions [7]   19/21 19/25 96/5
   96/6 130/9 137/25 138/12
quick [2]   42/23 94/5
quickly [1]   136/6
quid [1]   92/3
quite [10]   19/11 19/14 31/1
   34/10 35/18 43/23 46/6 76/11
   90/15 105/5
quo [1]   92/3
quote [1]   58/8
quoting [1]   100/7

**R**

R.W.S [2]   101/19 102/9
radial [1]   45/3
raincoat [1]   68/9
raise [2]   73/25 84/12
raised [1]   20/11
raising [1]   49/21
randomly [1]   7/2
range [2]   53/22 53/23
rarely [1]   30/9
rather [6]   5/6 5/25 6/15 31/16
   49/6 90/15
re [1]   130/3
re-litigate [1]   130/3
reached [2]   7/13 134/11
reaching [1]   118/4
read [5]   47/16 94/7 101/10
   117/13 137/6
readily [3]   40/1 44/9 98/13
reading [2]   113/11 132/22
real [3]   42/23 55/8 135/3
really [21]   10/13 11/22 16/21
   30/22 31/7 43/24 50/16 60/7
   75/6 80/6 87/8 93/13 93/19
   94/7 95/9 99/9 112/15 122/24
   132/3 134/8 135/17
reason [6]   30/12 49/21 82/8
   107/5 107/6 109/11
reasonable [6]   80/15 97/17
   100/16 100/19 138/24 140/2
reasonably [1]   140/1
reasoned [1]   139/22
reasoning [2]   91/20 91/25

**P**

purportedly [1]   100/21
purpose [17]   30/21 48/20 61/7
   69/4 69/15 76/5 77/18 78/2
   81/2 82/9 82/18 88/8 91/5
   91/24 98/17 116/4 125/4
purposes [2]   38/22 61/20
pursue [2]   11/16 11/23
push [1]   105/15
put [14]   7/3 7/10 22/12 27/23
   28/8 33/19 33/24 34/2 34/10
   50/16 60/15 75/22 92/20 130/9
putting [2]   88/16 88/18
puzzle [1]   11/5

**R**

reasons [3]  11/13 32/5 86/1
rebuttal [3]  108/10 112/13
 114/4
receive [3]  63/6 63/7 68/22
received [6]  36/11 59/21 68/7
 68/7 72/10 89/10
recently [1]  105/5
recitation [1]  49/25
recognizable [1]  49/10
recognize [1]  95/1
recognized [1]  41/13
record [9]  10/14 29/8 50/24
 55/9 76/17 80/6 89/13 101/10
 102/9
recordkeeping [1]  109/17
records [1]  110/6
recourse [1]  31/19
redepose [1]  137/22
refer [3]  56/19 84/5 117/5
reference [8]  17/13 17/16
 17/17 74/4 102/13 103/5 103/5
 136/17
referenced [1]  102/21
referrals [2]  120/3 120/22
 122/1
referred [5]  116/12 119/23
 119/25 121/23 122/9
referring [3]  16/9 34/15
 103/15
refers [1]  90/6
reflect [1]  84/5
reflection [1]  47/22
refuse [1]  34/12
refused [2]  46/13 137/3
regard [2]  76/18 95/22
regarding [5]  5/9 6/21 30/19
 131/7 138/12
relabeled [1]  90/4
relate [3]  79/20 84/5 114/13
related [11]  57/23 65/14 87/5
 97/11 104/9 111/14 119/10
 119/15 133/13 136/13 138/9
relates [10]  28/19 61/11 65/14
 87/3 87/24 88/7 95/15 97/15
 98/18 107/19
relating [2]  114/12 121/18
relation [1]  72/15
relationship [16]  5/14 6/21
 9/8 39/14 58/1 58/12 72/2
 72/25 74/24 90/19 100/16 106/1
 106/21 110/21 121/19 133/10
relationships [1]  122/12
relevance [2]  33/24 34/1
relevant [10]  12/22 34/10 54/5
 64/25 65/23 87/1 116/7 128/2
 131/18 131/25
reliable [1]  11/18
relinquish [1]  38/19
rely [3]  46/14 46/20 55/13
relying [2]  23/20 24/3
remain [1]  139/1
remaining [1]  86/17
remember [1]  26/13
remind [1]  52/15
remove [2]  54/13 68/3
renewed [2]  138/18 138/19
renown [1]  49/11
rented [1]  26/17
reopening [1]  79/18
reply [1]  77/6
report [13]  98/24 99/10 103/24
107/2 107/3 108/10 108/12
 108/23 108/24 109/1 109/10
 141/10 141/15
reported [1]  104/5
Reporter [4]  2/22 2/22 141/6
 141/21
represent [1]  73/18
representation [1]  26/10
representative [4]  7/14 7/14
 44/20 47/14
representatives [1]  137/1
represented [3]  18/19 73/16
 73/20
reputation [1]  131/23
request [2]  15/7 84/3 84/6
requested [2]  119/11 120/12
require [7]  28/14 57/8 78/21
 79/17 79/18 80/8 126/8
required [7]  13/12 13/19 13/25
 21/20 22/5 105/16 126/4
requirement [4]  23/13 51/20
 113/21 132/24
requires [6]  35/18 88/13 98/19
 100/13 111/17 122/21
research [1]  32/15
resell [1]  7/3
Resident [1]  1/9
Residents [1]  1/22
resolution [8]  134/18 134/21
 134/23 135/4 138/24 139/2
 139/23 139/25
resolve [7]  4/16 4/16 4/18
 15/3 134/7 135/2 139/13
resolved [6]  4/22 32/9 131/21
 133/4 135/3 135/21
respect [7]  36/18 36/20 59/9
 59/10 86/21 103/7 113/23
respectfully [2]  32/7 113/20
respond [3]  103/9 136/20 137/4
responded [2]  6/6
Respondents [1]  96/13
response [11]  4/18 16/11 16/24
 21/4 73/3 73/4 78/10 101/20
 102/2 103/16 117/20
responses [2]  84/12 103/6
rest [1]  48/4
retail [1]  6/23
retailer [1]  6/22
revealed [1]  138/13
revenue [4]  65/13 66/3 98/25
 105/1
revenues [10]  66/7 97/21 98/5
 98/7 98/8 98/9 104/6 104/6
 104/7 104/8
reverse [7]  40/24 52/19 57/19
 66/18 85/10 85/14 86/2 86/6
 86/10 86/15 86/21 86/22 87/3
 87/10 88/4 88/13 88/20 89/21
 90/5 91/9 91/11 91/19 92/21
 93/13 93/15 93/25 95/8 133/14
reversed [1]  52/22
review [2]  126/1 139/11
revocation [3]  10/20 72/19
 74/3
revoke [1]  73/13
revoked [3]  72/18 72/22 133/9
rid [1]  28/19
right [68]  4/14 5/3 5/8 5/11
 5/12 10/23 11/16 13/2 17/3
 18/22 19/7 21/12 26/1 27/12
 28/11 31/13 39/2 43/17 44/3
 45/21 47/17 50/11 50/23 51/3
 56/17 57/18 58/10 61/25 69/2
70/9 71/11 73/6 73/9 73/10
 74/22 76/2 77/14 81/2 82/12
 83/22 94/4 94/9 94/9 98/11 98/23
 99/11 99/13 100/13 107/24
 108/9 112/8 112/22 120/10
 124/17 128/12 128/12 129/10
 129/13 130/4 131/9 131/11
 131/13 132/8 133/21 134/5
 134/17 138/22 140/6 140/6
rights [4]  45/24 92/2 92/13
 92/14
ring [1]  6/16
rip [1]  31/20
risk [3]  43/15 92/10 129/1
risks [2]  128/24 128/25
RLM [1]  44/5
RMR [1]  2/22
road [1]  21/8
Robinson [2]  2/14 3/23
robinson.com [3]  2/16 2/16
 2/17
roof [1]  29/15
room [3]  48/16 48/25 50/3
round [14]  41/18 41/19 42/18
 42/19 42/20 43/5 43/7 43/9
 43/11 45/20 46/8 47/1 47/3
 135/1
RPR [1]  2/22
rug [1]  31/20
rule [2]  136/17 138/4
ruling [1]  136/8
rulings [1]  132/18

**S**

S-H-I-T [1]  132/14
safe [1]  121/10
said [55]  8/4 8/23 8/25 13/22
 15/5 15/5 15/15 19/3 23/12
 23/18 26/12 29/15 29/18 29/20
 36/19 37/7 37/11 44/23 44/23
 44/23 44/24 44/25 47/18 47/19
 49/17 51/23 51/24 52/3 52/7
 52/10 52/13 52/18 55/25 65/2
 65/3 72/12 72/25 73/19 74/19
 79/24 85/13 88/23 96/10 99/2
 103/24 104/20 112/24 116/17
 116/22 117/3 117/17 119/12
 137/11 140/5 141/15
sale [23]  7/20 17/5 22/18
 22/19 22/21 23/9 23/10 23/13
 23/14 23/21 24/2 29/12 29/13
 30/20 31/2 31/2 58/14 61/25
 62/3 109/20 114/2 114/3 118/8
sales [33]  30/1 39/25 46/15
 58/16 62/14 64/12 64/17 64/22
 65/14 65/15 65/18 96/19 96/23
 96/25 97/16 101/15 104/14
 104/16 104/18 104/21 105/12
 106/2 106/21 106/25 110/2
 110/3 110/4 111/14 112/10
 113/23 114/21 122/25 123/21
salvo [1]  98/14
same [11]  20/13 20/14 38/24
 45/1 48/3 55/3 87/19 90/22
 90/22 91/19 92/5
Sanders [6]  58/21 64/20 70/12
 89/9 89/9 132/10
sat [1]  24/13
satisfactory [1]  39/4
satisfied [2]  34/3 135/4
satisfy [1]  27/1
save [1]  21/16
saw [3]  33/22 35/2 49/16

**S**

say [88]  7/4 8/3 8/20 11/18
12/16 12/24 13/13 13/16 13/20
16/2 17/18 18/2 18/22 20/16
22/11 22/14 22/16 23/2 24/10
25/22 26/16 26/16 26/17 27/5
34/8 36/1 37/7 37/11 38/1
41/25 44/14 45/9 45/15 45/15
45/18 46/8 46/16 46/20 49/13
53/5 54/3 55/21 56/15 57/14
57/15 64/12 64/22 66/4 66/6
68/9 68/24 72/17 72/18 72/21
73/23 74/14 78/19 83/3 87/6
87/9 93/14 96/7 96/11 96/13
98/14 104/10 106/6 106/24
108/24 111/16 111/16 116/24
117/5 118/14 121/7 122/17
122/19 127/2 127/2 127/6
127/11 131/4 131/5 134/19
134/20 134/24 135/7 138/15
saying [36]  10/10 11/22 13/10
13/19 22/18 23/9 30/12 36/4
37/2 51/19 51/22 53/24 60/18
62/22 66/8 66/9 66/13 66/21
68/5 87/12 87/23 87/25 92/19
92/23 93/12 93/16 93/19 93/22
94/9 94/10 94/12 95/1 118/8
123/22 127/17 134/18
says [28]  18/19 21/1 24/4 24/7
29/22 42/14 52/14 58/7 60/15
75/5 75/25 81/1 82/16 83/13
89/1 102/2 102/22 105/20 109/1
113/14 117/4 117/7 118/17
122/15 127/3 127/7 131/5
134/25
Scalia's [2]  86/3 88/14
scenario [5]  5/14 67/12 68/20
95/15 118/3
scenarios [1]  88/4
schedule [2]  136/10 139/10
Schultz [2]  40/23 52/18
scope [10]  14/14 29/20 75/6
75/9 76/6 77/22 78/12 79/23
80/7 90/19
SCOTT [13]  1/22 3/11 3/19 3/21
18/23 19/2 19/8 29/14 29/23
45/6 83/9 132/6 132/14
Scotts [12]  3/13 4/11 42/25
86/7 112/14 125/7 125/13
125/15 125/16 126/6 126/23
129/18
Scotts' [1]  132/5
screens [1]  128/14
SCRIVEN [2]  2/1 60/6
search [1]  44/5
second [3]  42/21 46/24 51/11
57/2 58/3 64/19 76/15 86/24
89/19 92/23 100/10 101/17
102/25
secondary [33]  40/6 41/5 41/8
41/11 41/23 42/1 42/7 42/14
42/16 43/11 44/2 44/9 44/13
45/13 45/22 46/2 46/4 46/23
51/8 51/13 51/20 51/23 51/25
52/11 55/17 55/18 56/13 57/7
57/8 93/2 95/23 132/21 133/1
secret [1]  20/3
secretly [1]  52/17
section [4]  85/8 87/1 101/9
102/3
see [21]  4/23 5/13 25/6 25/15
25/19 27/25 28/2 28/4 39/3

44/5 44/12 44/16 48/16 70/1
87/22 102/3 104/22 122/24
133/5 135/11 135/22
seek [1]  65/24
seeking [4]  77/8 121/3 125/3
127/15
seem [2]  101/21 133/8
seems [6]  11/10 98/19 122/19
132/23 133/4 133/6
seen [9]  12/17 13/9 13/21
15/22 21/3 34/20 34/21 46/23
102/1
Seggev [1]  114/5
segments [4]  35/20 35/24 37/17
37/18
selected [1]  53/23
sell [31]  7/5 7/10 7/18 7/24
9/2 14/7 19/10 19/12 19/12
19/17 37/18 37/19 60/20 68/14
72/4 75/18 80/21 80/24 81/13
81/14 81/25 83/11 83/18 87/25
90/23 92/25 93/18 116/23
120/16 123/9 133/24
selling [34]  6/15 6/22 7/12
9/6 9/11 9/13 9/19 9/21 10/3
10/8 10/10 10/15 10/16 10/16
39/15 52/20 68/9 68/16 74/19
75/3 75/24 76/5 77/19 78/2
81/2 82/18 88/19 91/15 91/17
97/2 109/21 114/23 122/22
123/6
sells [2]  19/16 123/20
send [9]  35/4 53/16 68/10
68/12 115/14 118/1 118/1 118/2
118/17
sending [9]  59/2 67/16 67/20
67/23 68/1 86/17 88/23 89/2
111/15
sends [2]  88/25 118/17
sense [3]  81/24 82/25 83/14
sent [11]  25/21 61/17 63/1
69/12 69/15 69/21 70/6 72/25
87/6 94/2 110/10
separate [12]  5/17 30/3 51/17
85/4 122/5 122/13 123/2 123/9
123/24 123/25 129/18 136/14
separated [1]  129/20
separately [1]  129/21
September [3]  72/24 72/24
72/24
September 7th [1]  72/24
serially [1]  37/16
serve [3]  48/24 50/1 112/20
serves [1]  49/7
service [1]  7/4
set [8]  4/17 42/5 87/20 99/8
102/15 139/13 140/3 141/16
setting [1]  139/9
seven [1]  39/3
Seventh [1]  51/10
shade [4]  33/17 33/24 47/22
48/5
shall [1]  138/14
shape [3]  45/3 47/3 47/22
shapes [2]  48/5 49/5
she [3]  30/6 123/16 123/18
she's [1]  123/19
shift [2]  14/22 135/16
shifts [2]  98/21 103/8
shine [1]  49/6
shipped [2]  59/17 87/16
shipping [2]  87/17 114/23
Shoe [4]  51/8 51/8 56/25 56/25

shoehorn [1]  69/6
shoes [1]  14/25
short [4]  100/1 120/21 134/7
139/2
shorthand [2]  141/11 141/15
shotgun [1]  88/9
should [25]  5/5 6/7 12/22 22/5
25/15 28/15 32/6 32/7 43/10
62/9 73/24 76/14 97/17 103/18
103/19 103/20 104/1 104/2
104/21 105/21 109/9 119/4
122/23 128/21 129/16
shouldn't [2]  98/13 103/25
show [20]  13/1 18/14 20/15
23/9 27/6 29/11 31/17 39/14
44/7 44/8 62/25 63/14 98/3
98/5 98/6 100/23 103/4 106/25
110/9 110/15
showed [9]  19/2 19/8 29/17
44/21 44/22 68/5 70/4 110/18
137/1
showing [2]  87/17 102/2
shown [5]  29/14 50/1 63/4 88/1
101/24
shows [3]  53/22 96/12 129/21
shrink [1]  66/7
side [5]  50/25 51/2 51/3
133/15 134/11
sides [7]  51/17 76/3 104/2
104/22 111/18 111/19 125/21
similar [6]  6/3 9/12 9/14 9/19
10/15 41/3
simple [1]  6/22
simply [2]  50/3 76/11
since [4]  70/10 74/2 78/17
124/19
single [6]  17/13 20/12 21/21
57/17 100/8 109/20
sir [17]  3/17 20/25 29/5 33/1
33/14 39/12 40/21 79/4 84/25
85/5 92/17 94/24 95/5 101/24
114/8 131/17 139/3
sit [2]  128/15 130/8
site [2]  58/21 115/14
sits [2]  26/16 133/19
sitting [2]  30/8 119/2
situation [3]  30/10 31/14
75/11
six [1]  101/12
Sixth [3]  90/12 90/13 91/1
sleahu [1]  2/8
Smoke [1]  43/12
so [198]
so-called [2]  8/16 48/6
soccer [1]  46/8
society [1]  92/4
socket [1]  47/23
sold [26]  7/14 9/20 9/20 17/5
22/10 22/13 22/16 23/2 23/19
26/13 26/16 29/16 29/21 30/11
30/17 30/22 37/17 62/11 66/22
97/5 97/11 104/11 107/10
107/11 111/16 124/9
sole [3]  77/18 89/17 116/3
solely [3]  81/6 86/15 125/16
Solms [7]  59/6 59/6 64/2 64/3
64/6 64/6 105/23
some [49]  5/21 19/5 20/3 21/5
21/8 26/12 40/15 44/8 45/8
52/23 52/23 53/12 56/20 56/20
58/17 62/12 66/7 66/19 68/13
78/4 80/3 82/15 83/4 83/5 83/6
83/7 83/25 84/1 91/18 94/19

## S

some... [19]   94/19 97/5 98/19
  99/12 103/8 104/15 106/24
  112/13 113/12 115/12 117/19
  124/21 128/9 134/7 135/19
  135/20 135/20 136/22 138/14
somebody [10]   4/25 32/21 59/20
  60/22 71/5 93/10 116/12 116/22
  131/20 132/4
somehow [1]   26/13
someone [3]   24/7 51/20 83/16
  107/25 117/2
something [26]   4/16 5/15 7/18
  11/6 19/1 21/4 21/6 21/22
  21/23 27/14 27/21 27/22 27/24
  28/7 45/15 56/10 58/17 60/20
  63/6 70/6 81/23 83/3 85/2
  94/14 110/9 112/24
sometimes [1]   129/9
son [2]   123/23 124/5
sooner [1]   135/20
sophisticated [1]   60/4
sorry [19]   10/20 11/25 16/12
  32/17 37/13 50/20 51/11 76/21
  85/1 96/10 101/5 102/6 103/1
  103/14 108/19 121/25 133/18
  137/10 137/14
sort [26]   11/15 12/7 20/21
  22/22 46/9 47/11 49/2 49/15
  54/1 57/20 60/24 61/4 68/4
  73/20 82/15 83/4 83/5 86/5
  86/20 87/8 112/13 113/7 113/9
  116/21 122/16 128/22
sought [1]   7/13
sounding [1]   43/15
sounds [4]   33/21 35/25 80/15
  113/12
source [8]   35/1 44/12 46/1
  57/15 57/16 57/17 63/3 68/21
SOZZANI [3]   2/4 3/20 92/18
spaced [1]   37/16
SPANGLER [3]   2/22 141/6 141/21
SPANGLER-FRY [3]   2/22 141/6
  141/21
speak [6]   5/18 12/2 12/3 43/9
  64/5 119/9
special [3]   111/22 125/24
  128/13
specific [12]   31/20 69/15
  69/15 77/5 83/25 84/1 84/4
  84/5 84/8 99/2 110/25 111/1
spend [1]   4/19
spending [3]   6/8 6/15 134/9
spent [4]   40/9 45/17 45/19
  137/5
spoken [2]   52/1 52/5
sporting [1]   49/24
spying [1]   134/24
square [1]   47/4
St [2]   2/6 2/14
stand [7]   3/16 46/16 64/4 87/3
  127/11 130/21 134/6
stand-alone [1]   87/3
standard [9]   24/1 24/5 24/15
  24/17 30/20 32/3 46/11 53/19
  53/20
standpoint [1]   44/1
stands [1]   31/13
start [5]   11/10 13/17 49/1
  101/6 137/12
started [3]   58/2 90/20 110/21
starting [2]   3/8 8/17

state [5]   3/8 89/22 131/8
  141/3 141/17
stated [4]   77/7 77/12 89/13
  141/12
statement [1]   90/1
states [5]   1/1 2/2 77/9 80/1
  141/7
status [2]   1/1 11/23
statute [3]   79/14 79/14 98/3
statutory [1]   30/16
stays [1]   129/8
Ste [4]   2/6 2/10 2/14 2/19
stead [1]   68/25
steal [1]   75/22
Stec [1]   96/10
STEFAN [2]   2/13 4/4
stefan.stein [1]   2/17
STEIN [3]   2/13 4/4 4/4
stem [1]   129/16
STEPHEN [5]   2/5 2/13 3/14 3/18
  4/1
stephen.anderson [1]   2/16
Stephenson [7]   96/17 98/24
  101/5 104/20 104/25 105/11
  105/14
Stephenson's [2]   107/3 109/9
steps [2]   20/19 59/15
still [9]   9/5 26/16 26/18
  41/21 45/20 48/21 49/7 65/25
  68/6
stipulate [5]   13/3 13/4 34/6
  78/1 78/16
stipulation [1]   133/5
stonewalled [2]   137/2 137/13
stood [1]   17/14
stop [6]   5/25 6/4 10/25 15/15
  34/4 75/2
stopped [1]   10/3
story [2]   104/2 104/23
stream [1]   65/13
strenuously [1]   63/13
stress [2]   17/9 107/5
stressed [1]   17/7
strict [2]   60/16 60/22
string [1]   50/6
strokes [3]   11/1 11/5 11/7
strongest [1]   45/22
strongly [1]   32/7
struggling [1]   102/6
styled [1]   141/12
Suave [2]   51/8 56/25
subject [10]   22/10 28/20 32/2
  39/25 42/2 53/19 53/24 87/14
  90/24 118/11
submit [1]   135/10
submitted [1]   61/17
subsequently [1]   70/2
subset [1]   99/17
subsist [1]   92/14
subsists [1]   92/10
substance [1]   93/17
substantial [1]   80/23
substantially [1]   41/3
substantiate [1]   91/21
substitute [1]   62/24
subtract [1]   104/21
such [16]   11/18 14/24 67/2
  71/17 72/17 82/20 86/9 103/7
  112/14 113/24 119/4 119/11
  120/2 121/21 123/4 135/16
sue [18]   5/25 12/13 12/16
  13/14 13/21 14/15 18/24 20/20
  27/14 28/6 28/10 28/12 32/1

36/12 36/15 37/9 77/14 77/15
sued [2]   6/4 6/7
suffer [1]   129/11
suffered [1]   25/10
sufficient [8]   36/9 37/10
  41/15 42/7 84/12 89/20 89/22
  113/22
sufficiently [4]   27/2 27/3
  36/24 38/17
suggest [2]   47/10 95/7
suggested [1]   36/12
suggestive [2]   41/11 41/25
suggests [4]   24/16 26/10 41/10
  75/9
suing [9]   6/6 67/15 67/16
  67/20 67/23 68/14 68/16 72/20
  133/21
suit [3]   20/5 20/23 28/7
summary [26]   15/20 15/24 21/4
  26/5 26/22 32/8 33/22 34/22
  37/4 40/14 40/18 41/1 41/10
  41/15 42/7 51/1 55/12 71/15
  72/7 72/10 72/12 77/1 77/3
  77/6 94/5 111/16
summation [1]   111/5
summations [1]   112/6
supplement [1]   121/1
supplemental [1]   126/24
supplied [3]   94/21 107/15
  107/25
support [3]   40/18 47/25 77/6
supported [1]   22/1
supports [1]   54/8
supposed [7]   61/24 61/25 82/9
  98/7 111/10 117/22 124/20
supposition [2]   40/9 82/25
Supreme [4]   42/14 85/22 88/6
  90/6
sure [12]   8/25 16/8 16/13
  38/20 47/20 85/16 107/1 112/25
  115/17 126/9 127/11 133/15
surface [1]   49/24
surprise [5]   72/1 79/25 80/5
  80/5 121/24
surprised [1]   79/25
surprisingly [1]   5/24
surrender [1]   30/19
surrounding [1]   74/2
survey [2]   46/10 46/12
survive [1]   42/7
survives [1]   65/10
surviving [1]   96/9
suspected [1]   66/4
suspicion [1]   58/17
sustain [1]   89/21
sustained [2]   95/11 113/21
sword [1]   60/2
system [1]   33/19

## T

table [3]   4/12 99/8 101/12
take [22]   21/23 32/7 33/18
  68/24 70/15 70/19 71/25 73/3
  75/22 78/14 95/17 95/18 97/20
  99/16 100/6 112/12 124/12
  135/19 136/4 138/10 138/23
  139/6
taken [4]   30/23 48/23 109/9
  136/8
takes [2]   45/22 105/8
taking [4]   50/5 63/8 88/18
  114/21
talk [7]   7/4 12/19 12/19 22/8

**T**

talk... [3]   100/14 113/10
 118/14
talked [2]   102/14 135/9
talking [7]   26/20 36/22 50/17
 81/1 87/15 120/10 132/23
talks [1]   31/23
TAMPA [9]   1/2 1/6 2/6 2/6 2/15
 2/20 2/23 141/7 141/17
tangible [4]   88/7 90/6 90/7
 91/18
tapered [20]   35/19 35/20 35/23
 36/8 36/10 36/14 36/25 37/1
 37/3 37/6 37/8 37/12 37/12
 37/17 37/18 37/20 37/21 37/21
 37/24 38/3
tasks [1]   99/22
team [1]   113/2
teasing [1]   140/5
tedious [1]   102/16
teleconference [2]   134/13
 134/14
tell [27]   15/5 15/7 15/16
 19/20 27/1 28/21 29/3 31/17
 31/25 39/21 42/25 43/7 44/24
 75/2 85/23 88/21 98/8 99/15
 100/19 102/20 111/11 122/17
 126/9 127/22 128/16 132/17
 135/14
telling [6]   10/12 10/19 20/2
 67/22 82/23 122/24
tells [2]   58/6 98/8
term [5]   88/7 120/21 138/20
 139/2 139/6
terminated [4]   8/23 63/23
 72/18 139/9
termination [4]   8/15 96/19
 96/20 133/10
terms [3]   8/6 8/10 9/2
test [6]   26/15 48/7 48/8 48/11
 54/5 55/1
tested [3]   25/6 25/19 89/11
testified [5]   62/20 81/20
 81/21 89/9 89/16
testify [3]   59/6 69/18 96/4
testimony [29]   24/3 24/4 26/19
 40/12 40/16 40/17 42/4 44/17
 55/22 58/23 59/3 59/11 59/14
 64/7 64/14 64/17 74/25 76/3
 83/9 83/13 100/23 103/23 104/4
 105/23 113/13 115/20 115/24
 117/8 117/19
testing [2]   31/7 31/7
than [24]   5/6 5/25 6/15 21/12
 26/19 31/16 32/16 32/18 40/9
 47/9 49/6 55/12 55/18 63/4
 66/10 68/8 69/12 84/2 84/3
 100/6 113/11 122/19 133/15
 135/10
thank [28]   11/9 12/5 16/5 29/2
 32/11 50/12 69/8 79/5 85/15
 85/21 92/16 95/4 95/17 95/19
 95/20 95/24 95/25 99/7 113/18
 129/23 130/24 136/18 139/16
 139/19 139/20 139/22 140/8
 140/9
that [981]
that's [129]   5/4 6/13 7/7 7/21
 7/25 11/7 13/10 13/11 16/24
 17/15 18/11 18/13 19/20 21/19
 26/14 27/24 28/8 29/1 29/15
 29/19 29/20 29/24 30/1 31/24

32/15 34/8 34/14 34/16 36/3
 36/21 36/24 38/4 39/17 41/7
 41/24 42/19 43/3 44/15 44/15
 45/21 45/21 46/8 46/22 47/17
 50/9 51/8 53/2 54/5 54/21 55/4
 55/9 56/12 56/15 56/25 57/6
 60/21 60/24 62/5 62/5 62/6
 63/24 65/6 66/24 67/7 67/11
 67/22 68/11 68/12 72/6 72/16
 72/23 73/7 73/13 74/20 75/25
 77/20 80/7 82/12 82/16 85/13
 89/18 89/23 90/11 90/11 92/22
 93/11 93/15 93/19 94/21 95/14
 97/6 98/16 100/22 102/14
 104/16 105/12 106/4 106/18
 107/8 108/18 108/19 109/16
 110/11 111/17 112/5 114/25
 115/16 116/10 117/1 118/3
 118/9 119/3 121/8 122/11 123/7
 123/7 123/22 127/8 128/5
 130/21 131/4 131/10 132/9
 133/1 134/3 134/6 134/25
 136/22 139/4
their [94]   5/17 7/10 8/18 9/7
 14/14 18/1 18/7 19/20 20/22
 21/2 21/16 23/8 23/16 27/1
 32/7 37/2 37/2 37/16 44/12
 46/14 46/14 51/1 56/2 59/5
 59/24 62/4 63/8 65/16 72/7
 72/12 72/13 73/13 74/7 74/9
 75/18 75/23 75/24 77/19 78/10
 78/20 83/9 86/8 86/10 86/16
 86/16 86/18 87/1 87/8 88/19
 89/13 89/16 89/18 90/19 90/20
 90/22 92/20 92/25 94/1 94/2
 97/2 97/11 97/11 103/23 104/19
 104/20 105/5 105/19 107/1
 107/2 108/10 108/23 108/24
 109/12 109/25 111/12 115/4
 115/10 121/19 125/23 126/1
 127/20 130/16 130/22 133/23
 133/24 133/24 134/3 134/8
 134/21 135/2 138/9 138/11
 138/14 138/17
theirs [1]   67/24
them [104]   7/3 7/9 7/10 8/17
 11/16 12/23 13/13 15/4 15/6
 15/12 20/7 20/15 21/20 21/24
 22/2 22/5 26/22 27/2 27/14
 28/6 28/10 28/12 28/16 28/23
 30/12 31/17 31/17 34/4 34/5
 34/23 35/4 35/22 35/24 37/4
 41/12 44/25 45/5 45/9 45/10
 45/12 45/24 46/15 46/18 48/4
 52/23 52/24 54/1 62/1 62/1
 62/2 68/1 68/12 72/20 72/25
 73/14 75/2 75/17 75/20 75/23
 78/16 78/24 80/12 80/21 93/4
 97/13 97/15 100/7 102/21
 103/17 104/9 104/11 104/12
 104/12 104/13 107/15 108/6
 109/22 109/23 110/15 110/18
 111/11 111/15 111/17 112/3
 112/4 118/1 118/1 119/11
 119/12 122/9 123/20 126/8
 126/9 126/12 126/25 128/21
 129/3 130/14 135/4 135/4
 135/16 136/17 137/4 138/24
themselves [5]   13/24 20/4
 30/11 71/5 115/15
then [89]   6/1 6/4 6/5 9/5 9/18
 11/11 12/18 14/21 17/12 17/21
 19/17 23/4 25/15 26/18 26/20

26/24 30/1 30/1 30/6 30/18
 34/17 37/7 38/17 38/18 39/8
 43/17 43/23 47/18 47/25 54/8
 54/24 55/6 55/17 55/24 56/9
 60/5 62/11 65/14 66/4 66/7
 67/25 68/11 68/23 70/17 72/8
 72/13 73/17 75/25 80/13 81/18
 86/24 88/25 93/14 93/20 93/24
 94/2 97/16 98/5 98/13 99/1
 102/10 104/20 105/1 107/16
 113/15 115/7 116/4 116/16
 117/25 118/5 118/20 119/12
 119/15 120/4 120/9 120/20
 122/14 124/5 126/16 130/3
 130/4 130/13 130/18 130/23
 130/23 131/14 132/15 136/22
 138/24
theoretically [1]   15/21
theory [1]   99/1
there [122]   5/12 6/25 7/16
 7/19 8/3 8/4 8/9 9/7 10/1 10/4
 10/5 10/6 11/2 11/6 15/15
 15/23 16/6 17/19 18/1 18/2
 18/19 20/3 22/12 22/22 22/22
 23/4 23/9 23/12 24/1 24/2 24/3
 24/4 24/18 24/19 26/12 26/18
 28/7 29/12 29/24 30/24 31/2
 31/6 31/22 33/6 33/19 50/1
 55/7 55/11 59/18 62/16 62/21
 63/2 66/3 68/17 68/20 68/21
 68/21 69/10 70/10 72/14 72/17
 74/23 75/1 75/5 76/9 78/5 78/6
 78/7 78/21 78/23 79/13 80/5
 81/15 81/17 81/18 82/20 82/22
 82/23 83/5 86/8 89/4 90/17
 90/24 92/6 92/9 92/10 95/22
 97/8 98/19 101/14 102/3 102/19
 103/17 106/22 110/20 114/1
 115/12 117/1 117/2 117/19
 118/3 118/10 118/19 118/25
 118/25 119/11 119/12 119/18
 121/21 125/5 126/7 126/14
 131/8 131/22 132/19 133/17
 133/19 133/19 134/6 134/13
 134/20 136/7
there's [85]   7/15 7/15 8/7 8/7
 11/2 11/3 11/3 12/24 14/9
 16/11 16/13 18/18 18/20 19/11
 19/13 22/21 23/13 26/2 26/3
 29/7 29/10 29/22 30/1 30/9
 30/22 31/7 32/2 33/23 33/25
 39/23 40/25 43/17 43/23 44/3
 44/25 46/12 46/23 47/10 47/25
 47/25 48/25 50/3 54/19 54/23
 55/2 55/5 55/8 63/5 67/12
 68/18 71/1 71/15 74/25 75/4
 78/22 80/1 81/21 82/7 82/10
 82/15 83/24 84/9 89/3 89/8
 89/23 92/3 92/7 99/9 99/24
 104/14 104/15 104/17 107/9
 109/17 110/1 111/23 116/20
 118/9 120/2 122/12 127/7
 127/23 129/19 129/21 134/10
thereby [1]   68/2
therefore [3]   97/10 116/1
 131/6
Therein [1]   12/15
Thereupon [1]   140/10
these [43]   25/11 30/10 40/24
 41/12 42/5 43/1 43/19 44/6
 44/9 45/4 45/6 45/7 47/11 48/5
 51/14 51/17 57/13 64/1 66/19
 83/10 88/9 90/20 99/2 101/12

# T

these... [19]  102/13 102/19
103/7 103/8 104/10 104/11
104/13 104/21 111/15 119/4
124/23 125/9 126/18 127/21
128/9 128/13 128/17 130/9
135/20
they [334]
they'll [1]  63/12
they're [58]  6/8 12/25 12/25
13/23 20/2 20/3 20/13 22/6
22/17 31/14 32/1 33/3 34/15
36/4 37/2 37/24 44/13 45/9
45/23 46/6 46/13 60/3 67/20
68/5 68/14 68/15 76/5 76/6
86/9 87/23 93/9 93/15 93/19
93/22 94/4 94/13 94/16 95/1
105/4 105/6 105/6 114/23 116/9
117/18 117/21 118/14 121/7
121/8 121/15 122/5 122/12
122/18 123/2 123/24 127/24
129/2 129/16 130/15
they've [16]  14/5 20/11 21/21
22/20 30/23 36/19 46/16 60/3
73/12 79/21 79/21 81/20 86/13
115/6 121/7 135/18
thickness [1]  24/25
thing [21]  8/13 20/3 20/5
24/10 24/18 25/13 25/14 34/11
40/3 59/1 59/2 68/11 68/14
82/12 83/20 88/25 89/1 96/13
100/10 116/7 139/25
things [15]  6/7 12/23 16/21
28/1 28/10 28/12 28/19 41/6
43/18 51/4 55/21 66/12 100/5
128/9 132/18
think [102]  4/16 11/7 12/22
13/12 13/25 15/16 17/8 19/11
19/13 21/1 21/6 21/19 21/25
22/6 23/15 24/3 25/9 27/8
27/10 27/14 31/10 32/2 32/4
32/6 36/3 38/14 39/13 41/1
42/12 43/16 43/19 43/23 45/10
45/21 46/3 46/24 47/10 49/8
49/9 50/6 50/6 53/21 55/1 55/7
55/8 55/10 57/21 60/14 64/3
64/16 64/21 64/25 70/2 72/14
72/24 73/20 74/22 75/25 76/2
76/8 79/7 79/24 83/24 84/8
84/9 85/12 85/18 89/7 93/22
94/4 94/12 94/22 96/5 96/10
96/13 99/8 99/10 100/16 103/11
103/17 103/19 103/19 103/20
103/22 104/1 104/3 104/3
105/16 105/20 105/25 125/20
127/19 131/18 131/18 133/1
133/9 133/16 134/22 135/19
135/24 137/23 140/7
thinking [2]  15/5 122/9
third [3]  1/24 114/16 125/17
Third-Party [1]  1/24
this [211]
Thornton [1]  100/17
those [57]  4/11 6/9 7/12 9/14
10/21 10/23 10/25 14/6 19/25
34/17 44/19 48/4 48/25 53/25
57/14 60/19 61/22 65/15 70/23
77/24 83/18 88/3 88/4 91/5
92/13 93/25 94/1 96/23 97/7
97/16 97/17 97/20 98/21 101/16
104/22 105/12 105/19 106/2
106/24 110/5 110/6 111/5 111/7
114/13 118/16 119/4 123/2
123/21 124/2 128/24 136/9
136/10 137/4 138/23 139/8
139/13 139/15
though [10]  5/19 38/20 41/5
46/16 54/6 60/1 68/7 70/5
73/14 96/16
thought [8]  15/13 37/10 54/1
59/23 68/15 69/18 74/7 139/12
thousand [4]  67/18 117/3
118/15 118/16
thousands [2]  39/25 45/17
threaded [2]  35/24 37/17
threading [2]  24/25 24/25
threads [2]  35/19 35/19
threat [9]  14/14 14/20 14/21
20/11 20/21 27/20 31/23 31/24
31/24
threats [2]  14/21 132/4
three [12]  21/17 29/10 30/14
41/2 55/14 65/2 84/2 111/19
115/8 136/2 136/19 137/7
three-line [1]  115/8
through [22]  12/24 27/17 32/9
43/18 47/18 58/16 64/13 78/4
79/11 101/14 116/2 116/15
117/6 118/21 120/24 122/9
122/16 122/22 123/9 124/9
127/19 141/10
thrown [1]  15/23
ticket [1]  134/25
tie [1]  100/11
time [43]  4/16 4/19 7/16 10/18
15/21 20/12 21/16 24/19 25/9
25/10 34/22 35/2 41/6 49/16
49/20 61/22 62/3 62/24 63/11
63/19 63/22 64/24 66/5 66/6
75/25 77/22 77/23 78/5 78/7
80/2 87/7 92/1 92/3 100/1
101/14 105/24 105/25 106/21
119/21 135/6 135/22 136/10
139/19
times [4]  55/14 59/23 63/2
65/2
tip [1]  64/9
today [7]  4/22 30/8 31/13
73/10 75/3 92/24 132/19
today's [1]  39/4
together [2]  120/14 121/15
told [9]  17/25 28/22 63/6
67/25 69/16 69/22 73/19 77/25
126/12
too [3]  45/8 45/11 94/5
took [10]  30/6 34/23 59/15
62/4 62/7 64/20 70/16 70/17
105/24 134/14
top [5]  11/5 47/24 47/25 53/4
82/16
topics [4]  137/3 137/3 137/4
137/6
total [3]  109/18 110/3 110/4
totaled [2]  105/11 106/2
totality [1]  42/7
totally [3]  52/4 72/8 80/14
touchstone [1]  46/2
toward [1]  102/4
Toyotas [1]  83/19
traceable [1]  110/1
track [1]  138/25
trade [36]  39/8 39/22 42/3
42/11 44/1 47/6 47/8 47/15
48/11 49/16 50/8 51/12 53/25
54/8 57/9 57/10 57/11 90/24

90/25 90/25 92/5 92/5 92/7
92/8 92/13 92/13 92/15 99/25
101/2 101/9 101/18 102/15
103/2 103/16 106/11 132/19
trademark [12]  10/11 68/18
69/5 99/25 116/6 120/8 120/13
120/16 120/18 120/19 133/18
134/4
train [1]  139/12
transaction [12]  29/21 29/23
61/22 62/13 64/19 111/19
118/25 119/6 119/6 119/18
119/19 121/6
transactional [1]  120/21
transactions [9]  29/9 110/19
111/4 111/14 113/23 113/25
114/14 114/15 120/3
transcript [3]  2/1 101/22
117/10
transcription [2]  141/10
141/14
transfer [1]  83/5
Transportation [1]  4/8
treasurer [1]  121/14
treble [1]  129/20
Trey [4]  59/5 64/2 64/6 105/23
trial [18]  21/17 22/15 23/6
26/21 26/23 39/13 45/5 63/12
63/17 79/2 113/8 127/19 129/4
138/20 139/1 139/6 139/10
139/14
tried [5]  11/14 12/24 128/25
135/21 139/1
trigger [1]  66/9
triggered [1]  64/12
triggering [2]  64/22 65/11
true [14]  9/3 9/4 20/19 34/14
46/6 66/2 66/8 66/9 66/23 85/9
92/22 107/22 110/11 141/14
trusty [1]  58/6
try [16]  4/23 15/3 33/13 36/1
42/23 69/6 117/18 126/17 129/4
129/5 129/6 129/11 129/13
134/7 138/25 139/2
trying [12]  13/23 22/6 27/17
38/23 44/22 70/19 89/14 94/10
116/17 118/14 121/7 128/19
tube [1]  53/4
turn [1]  30/7
turns [2]  66/2 66/6
tweak [1]  31/1
Twentieth [1]  94/6
twice [1]  46/25
two [32]  10/4 16/21 19/1 19/3
19/4 24/20 29/19 30/1 31/25
35/23 42/10 42/24 45/22 51/17
55/20 55/21 84/8 86/1 87/23
88/2 88/3 89/3 99/9 100/5
102/16 104/1 104/22 113/10
121/3 123/1 136/1 140/6
two-piece [5]  19/1 19/3 19/4
24/20 35/23
two-week [1]  10/4
type [10]  44/10 50/8 65/15
69/5 83/20 91/12 115/13 129/17
129/19 137/13
types [3]  37/19 37/20 49/11

# U

ubiquitous [2]  42/18 46/6
UFC [1]  6/10
ugly [1]  140/6
Uh [2]  54/14 106/15

**U**

Uh-huh [1]  54/14
umbrella [1]  61/5
unable [2]  62/17 109/13
unbuttoning [1]  16/3
under [45]  9/2 13/14 13/19
  13/24 14/23 14/24 15/21 27/6
  27/24 32/1 32/2 33/23 33/25
  34/16 38/14 42/15 47/6 55/16
  57/22 57/23 57/23 61/6 61/8
  61/9 61/13 61/15 62/6 67/9
  67/12 68/18 79/14 79/14 85/9
  85/25 86/1 88/4 88/10 89/21
  89/22 91/22 92/11 92/14 111/21
  126/7 131/25
underlying [8]  91/3 111/7
  111/20 111/25 112/1 112/4
  112/13 128/25
undermine [1]  66/1
understand [19]  4/25 5/13 5/13
  43/4 58/25 68/4 71/16 82/14
  82/16 82/20 88/15 89/5 90/12
  92/18 100/1 124/20 127/17
  130/20 131/7
understanding [6]  8/22 9/1
  63/2 86/13 101/11 128/2
understands [2]  83/20 105/17
understood [8]  36/25 42/13
  76/4 81/19 81/20 81/22 82/12
  83/11
undertaken [1]  139/11
undisputed [1]  76/3
unfair [10]  13/18 57/20 57/24
  60/25 61/2 61/6 87/10 87/18
  99/4 106/12
unfortunately [1]  134/16
UNITED [3]  1/1 2/2 141/7
universe [1]  116/2
unknown [1]  20/5
unless [6]  18/14 44/2 75/20
  109/18 135/12 135/18
unlikely [1]  138/20
unprepared [1]  137/2
untapered [1]  36/25
until [5]  43/16 44/2 76/18
  105/5 129/8
unwritten [1]  72/19
up [38]  8/17 20/11 23/5 26/24
  27/21 27/24 28/1 28/15 28/20
  31/15 47/24 50/16 54/19 56/22
  58/20 59/11 64/4 64/7 68/24
  72/8 78/4 78/14 78/23 86/4
  105/5 105/11 105/19 109/7
  114/9 117/5 118/7 127/11
  128/23 130/21 132/18 134/22
  137/1 138/23
uploaded [1]  117/25
upon [6]  38/25 55/9 67/1 86/14
  124/23 130/1
upset [1]  5/24
upstairs [4]  26/17 115/11
  116/17 119/2
upward [1]  54/11
us [37]  13/1 15/5 15/7 15/16
  17/20 18/4 20/2 20/7 20/13
  27/1 27/1 27/6 28/14 28/16
  31/17 32/1 32/3 33/13 44/24
  46/15 46/19 58/17 67/20 71/25
  72/7 72/11 79/8 82/19 96/24
  110/1 116/19 117/21 121/24
  125/8 126/8 138/10 139/6
use [48]  10/21 10/23 12/1 30/2

  31/4 31/8 33/4 33/7 36/6 37/20
  42/23 43/4 50/19 62/1 62/2
  64/4 67/13 71/14 72/3 73/1
  73/2 75/17 77/13 78/8 81/2
  81/25 82/11 83/15 83/18 86/3
  86/6 86/10 86/15 87/24 88/14
  89/20 89/24 91/21 93/17 100/14
  100/15 100/16 116/15 116/24
  120/19 127/20 132/5 141/10
used [15]  30/7 30/22 55/23
  82/17 83/10 90/21 90/22 93/25
  107/16 116/10 120/18 133/20
  133/22 133/24 134/3
user [1]  107/14
uses [1]  88/14
using [15]  5/22 9/23 10/25
  60/19 67/15 68/15 75/2 81/12
  92/24 100/3 102/5 105/4 116/8
  120/15 137/12
utilize [1]  91/2

**V**

valid [2]  27/13 33/10
validity [3]  26/4 38/8 38/22
Valley [1]  4/8
value [2]  48/20 113/11
variances [1]  48/5
variations [1]  21/25
variety [3]  55/2 55/5 105/9
various [6]  106/12 125/9
  126/14 126/18 126/19 127/21
varying [1]  49/5
verbatim [1]  100/8
verdict [11]  125/5 126/1 126/2
  126/10 126/25 127/3 128/13
  128/20 130/6 130/12 130/14
verified [1]  112/11
versions [1]  45/8
versus [9]  3/6 14/18 44/10
  51/8 51/11 52/23 53/3 56/25
  77/11
very [27]  42/20 43/3 45/7
  45/23 46/3 47/11 47/19 48/19
  50/10 55/3 62/21 76/17 76/18
  79/11 85/21 88/6 89/23 90/9
  91/25 92/5 96/1 99/19 102/21
  105/2 107/6 113/17 136/6
vetted [1]  79/17
vicarious [1]  57/10
vice [1]  121/12
videotape [1]  94/6
view [1]  138/11
viewed [1]  39/17
viewing [1]  76/17
violation [2]  43/17 44/2
violence [1]  132/3
violet [1]  38/3
virtually [1]  90/10
virtue [1]  98/9
visit [1]  58/21
visuals [1]  43/19
voila [1]  23/5
voir [2]  113/9 113/16

**W**

wait [2]  16/19 57/15
waiting [1]  124/20
waives [1]  77/14
Wal [1]  42/15
Wal-Mart [1]  42/15
wall [2]  26/18 48/1
Walter [2]  64/3 64/6
want [64]  4/24 8/5 12/7 13/3

  13/5 13/14 13/24 14/1 16/23
  17/9 17/10 20/4 20/11 23/6
  27/6 27/14 28/10 28/11 28/18
  28/20 28/21 29/10 34/4 34/12
  37/11 37/21 41/19 46/18 46/19
  46/20 51/6 52/19 52/20 56/1
  56/2 64/9 68/11 71/16 84/5
  98/6 101/10 101/10 102/23
  104/9 111/21 111/22 111/22
  113/3 116/18 116/22 117/3
  119/18 119/20 121/17 121/18
  127/9 127/23 128/20 129/2
  129/3 129/25 131/4 135/7
  135/11
wanted [13]  5/19 9/5 9/9 9/11
  9/13 9/19 39/19 39/20 54/2
  54/19 85/7 95/21 101/17
wants [5]  60/2 60/6 66/11
  127/10 129/24
was [267]
Washington [1]  2/10
wasn't [8]  5/12 7/16 19/24
  69/14 76/18 83/19 104/7 118/1
wave [1]  45/3
way [32]  6/15 18/11 18/13
  19/24 21/16 27/23 39/17 40/15
  47/24 48/14 48/15 48/24 54/18
  54/23 54/24 55/3 68/25 72/9
  88/15 99/22 100/14 109/16
  109/17 109/19 110/1 115/5
  120/19 125/5 127/24 128/1
  128/16 129/11
ways [4]  5/17 48/25 54/20 55/2
we [323]
we'd [2]  35/24 130/13
we'll [19]  15/6 20/7 21/23
  26/24 27/6 27/10 28/5 37/7
  38/7 38/9 45/4 65/5 68/23 73/3
  117/7 120/20 126/2 130/18
  135/22
we're [49]  4/15 4/21 6/7 11/4
  13/19 20/12 21/19 22/3 22/3
  23/9 24/2 26/24 27/23 27/25
  31/20 34/7 39/1 40/11 50/17
  53/24 55/18 62/23 63/17 65/20
  70/10 70/18 73/4 73/8 73/9
  80/14 81/24 87/9 87/12 87/15
  88/1 89/2 94/10 94/10 94/12
  95/3 100/1 113/8 120/10 121/3
  125/3 129/13 129/14 138/18
  139/5
we've [28]  12/24 20/6 21/3
  22/2 34/21 42/3 42/10 42/22
  45/17 46/5 51/10 57/21 60/15
  61/1 61/5 64/14 65/4 76/3
  77/21 81/20 83/12 93/5 105/23
  111/23 114/12 121/25 132/10
  132/23
wealth [1]  82/6
website [23]  7/3 7/10 10/2
  10/9 10/18 56/2 56/9 59/1 63/4
  67/4 67/18 73/10 75/23 86/8
  87/4 105/6 117/23 117/24
  117/24 124/2 133/23 133/24
  134/3
Wednesday [1]  134/15
week [6]  10/4 77/4 134/12
  134/15 136/4 136/20
weeks [4]  124/15 124/16 136/2
  136/19
weight [4]  103/22 104/3 104/23
  107/4
well [114]  6/21 7/18 7/22 8/15

# W

well... [110]   8/25 11/3 12/9
12/18 14/15 17/25 18/13 24/24
25/2 25/12 25/12 25/13 27/5
27/10 28/6 33/5 33/11 33/18
35/8 36/4 36/23 37/7 40/25
42/12 42/20 45/7 45/12 46/17
46/20 47/5 48/7 48/23 54/21
56/7 57/3 60/14 61/4 65/2 65/6
67/11 68/8 70/2 70/18 72/16
73/9 73/16 73/23 74/7 76/15
77/25 78/13 78/13 78/15 78/19
78/22 81/9 82/7 83/23 85/12
86/4 86/22 89/3 89/5 91/11
93/22 96/7 97/1 97/24 98/14
99/19 102/19 103/10 103/25
104/20 106/24 107/17 108/23
109/14 109/24 111/10 111/12
111/13 112/1 113/7 113/17
115/23 116/14 117/9 118/12
119/3 119/8 122/14 122/24
123/4 124/19 125/3 125/20
125/25 126/14 127/15 127/22
128/5 129/13 132/9 132/15
134/6 134/22 135/15 136/8
136/16

went [9]   7/9 26/17 47/13 47/18
49/9 58/24 67/17 90/19 119/8
were [109]   5/21 9/12 9/14 10/1
10/6 15/12 15/13 24/19 24/20
24/21 26/12 30/13 33/5 35/22
39/17 40/25 41/11 41/12 42/6
44/9 50/16 50/16 51/4 51/4
51/5 52/16 52/16 52/20 58/16
59/2 59/12 59/14 59/15 59/20
61/23 61/24 62/10 62/13 62/18
62/21 63/6 64/8 64/12 64/17
65/17 66/22 67/6 67/14 67/25
68/6 72/2 72/2 72/14 74/19
76/19 77/7 79/8 79/24 80/22
81/12 82/8 83/10 87/6 87/7
87/8 90/16 90/20 90/21 90/23
90/24 90/25 92/24 96/5 96/6
96/7 96/23 96/24 97/1 97/2
97/8 100/6 100/21 102/19
103/15 103/21 104/16 105/12
106/25 107/17 107/18 107/19
108/3 109/13 110/15 117/21
118/4 119/11 120/14 120/15
120/17 121/5 122/9 122/22
123/1 131/24 137/4 138/2 138/3
138/14

weren't [5]   31/7 44/21 63/8
65/16 115/13
Wes [1]   118/10
what [206]
what's [15]   8/13 19/21 27/6
47/19 56/19 70/17 70/18 81/22
88/12 101/24 106/7 106/9
106/14 113/7 121/11
whatever [13]   13/14 22/4 69/17
69/22 93/9 97/13 99/3 99/16
112/9 123/16 123/20 129/21
131/4
whatsoever [3]   7/15 88/5 99/22
when [39]   3/16 4/17 9/21 10/4
10/9 22/23 29/22 30/5 39/15
44/16 45/2 49/1 52/18 55/14
56/8 58/12 61/24 63/19 67/7
72/10 72/18 72/24 74/18 75/2
76/13 76/20 76/22 77/1 78/6
83/9 83/14 92/13 95/8 105/7

125/2 126/9 126/17 128/8 133/5
whenever [2]   110/21 115/12
where [22]   30/10 30/10 31/4
31/14 45/6 50/22 51/6 59/17
62/17 67/12 69/5 96/11 102/2
102/14 103/16 103/24 105/8
115/10 118/4 118/10 130/10
134/6
whereas [1]   79/16
whereby [1]   82/13
WHEREOF [1]   141/16
wherever [1]   12/3
whether [32]   25/3 26/2 30/19
30/25 31/2 31/18 38/11 38/16
39/21 43/21 45/14 45/14 48/8
48/9 52/21 54/22 57/24 60/4
60/16 60/21 71/13 78/15 87/19
103/18 103/21 107/17 108/3
123/5 124/6 124/22 125/19
128/3
which [73]   9/16 13/22 13/25
20/19 21/22 22/6 28/7 30/2
30/3 30/16 31/19 38/22 42/20
42/22 47/16 49/2 50/1 55/13
55/19 55/19 55/23 57/20 61/5
62/21 63/11 66/1 74/9 75/10
75/21 77/7 77/9 77/22 78/4
79/10 79/25 80/8 80/16 82/10
85/17 87/6 88/25 89/8 92/2
92/7 94/2 94/22 95/11 99/9
100/20 101/9 104/21 109/4
109/21 110/3 113/4 113/25
114/1 115/10 116/3 116/7
116/16 119/16 123/1 124/23
127/13 135/5 136/15 136/15
137/4 137/4 137/15 140/3 140/7
Whichever [1]   109/5
while [9]   39/17 52/16 61/23
66/12 72/1 74/19 85/8 99/21
102/4
who [26]   5/1 22/22 23/12 24/7
24/12 26/12 30/17 55/25 59/20
64/1 64/20 70/24 77/13 93/8
103/23 116/8 116/8 117/12
118/10 125/11 127/10 127/18
128/11 128/11 130/2 130/21
who's [5]   69/10 99/6 126/18
127/12 127/24
whoever [1]   131/5
whole [9]   29/19 33/19 49/20
53/22 69/4 82/6 82/7 88/8 91/5
whose [2]   44/24 49/4
why [24]   20/15 28/2 28/8 35/17
41/24 43/7 44/25 45/21 50/9
64/21 73/7 76/13 80/25 96/22
97/20 99/15 111/17 125/1
125/23 126/13 127/22 128/14
129/6 133/17
widely [1]   40/1
will [29]   12/9 12/9 12/12
12/12 37/8 58/23 65/10 67/25
69/18 73/11 79/15 79/17 79/17
80/8 82/17 83/23 84/12 113/21
113/21 113/24 127/20 130/14
132/12 135/2 135/3 135/7
135/14 136/4 137/17
willful [1]   128/3
willfulness [2]   128/6 129/20
William [2]   58/21 64/20
willing [10]   12/16 13/8 21/13
22/3 27/24 27/25 34/6 35/6
35/8 39/1
Wisconsin [1]   2/10

wish [2]   30/7 130/9
withdrawing [3]   87/10 87/24
136/16
withdrawn [2]   86/23 87/4
withdrew [2]   86/13 86/14
within [8]   14/14 29/19 39/3
48/2 83/12 97/17 99/17 104/18
without [14]   7/18 11/8 11/22
20/21 21/8 35/9 51/13 57/6
72/6 80/2 125/24 128/13 130/5
135/8
witness [8]   23/12 23/16 23/16
23/18 29/14 30/14 87/6 141/16
won [1]   85/2
won't [6]   27/1 27/2 27/20 28/6
46/15 86/24
Woodland [1]   2/19
word [2]   15/9 112/12
words [1]   100/14
work [11]   46/21 47/4 47/4 47/5
78/7 78/8 81/13 96/8 100/18
124/21 139/2
working [2]   115/10 120/14
works [4]   73/1 77/23 77/24
80/3
world [1]   49/10
would [177]
wouldn't [12]   27/23 33/11
38/18 61/12 87/9 90/13 116/4
125/22 125/23 129/6 133/9
134/14
writes [2]   102/24 103/2
writing [3]   82/21 83/4 83/6
written [2]   46/24 46/25
wrong [10]   24/25 59/15 60/17
60/18 104/20 107/3 127/8
127/24 130/3 138/5
wrongs [1]   140/6

# Y

yeah [7]   25/22 26/13 29/15
29/20 44/23 54/17 106/15
year [4]   30/4 30/16 76/16 79/2
years [4]   24/13 24/23 43/21
134/16
yes [105]   3/17 4/13 5/2 8/12
9/10 10/6 10/7 15/3 16/17 17/2
17/23 19/6 19/15 20/10 20/25
23/8 23/15 23/22 23/24 23/25
24/9 24/14 29/2 29/5 33/14
36/7 36/17 36/18 37/11 37/23
38/2 38/5 38/6 39/6 39/12
39/23 40/7 40/20 40/21 41/17
50/14 53/6 53/8 53/11 53/14
53/17 56/15 56/21 57/5 57/12
57/21 59/3 61/9 63/16 63/21
63/24 64/6 64/15 65/9 71/8
71/20 71/22 72/23 74/13 74/14
75/16 76/8 79/4 80/19 83/13
84/22 84/25 85/5 87/9 92/17
93/3 94/24 95/5 97/9 97/19
99/7 108/5 110/18 111/6 112/19
112/21 114/6 114/8 119/23
119/25 120/25 123/15 123/17
124/7 124/11 124/25 126/12
131/12 131/17 132/2 133/22
134/10 138/1 138/3 139/3
yet [3]   22/19 117/25 119/16
you [454]
you'd [2]   137/12 138/6
you'll [10]   27/8 27/8 44/5
82/18 99/24 120/9 126/16 130/3
130/4 130/4

## Y

you're [46]   5/12 6/8 13/2 13/2
 15/5 15/8 16/15 19/23 20/1
 20/16 26/20 27/19 31/6 34/3
 35/8 38/16 38/23 44/23 49/22
 55/6 63/6 66/8 66/13 66/21
 66/21 66/21 67/2 68/22 68/23
 73/2 81/25 82/18 82/23 83/15
 83/17 83/18 83/21 95/7 100/13
 101/24 102/5 108/23 124/21
 128/6 129/3 134/9
you've [8]   34/20 40/18 45/19
 62/22 85/2 99/10 119/11 119/11
your [313]
yours [4]   41/22 41/22 41/22
 87/8

## Z

zero [2]   31/21 100/11