**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CASE NO. 8:14-cv-01955-MSS-AEP

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,

    Plaintiff,

v.

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING
COMPANY, INC., a California
corporation; and JEFFREY L.
OHAI, an individual California
Resident,

    Defendants.

_____/

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; and HI-LITE
MANUFACTURING COMPANY,
INC., a California corporation,

    Counterclaim Plaintiffs,

v.

BARN LIGHT ELECTRIC COMPANY, LLC,
a Florida limited liability company,

    Counterclaim Defendants,

and

BRYAN AND DONNA SCOTT, individual
Florida Residents,

    Third-Party Defendants.

_____/

**PLAINTIFF BARN LIGHT ELECTRIC COMPANY, LLC'S AND THIRD PARTY
DEFENDANTS BRYAN AND DONNA SCOTT'S RENEWED MOTION TO COMPEL
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to Fed. R. Civ. P. 37 and L.R. 3.04(a), Plaintiff Barn Light Electric Company, LLC and Third-Party Defendants Bryan Scott and Donna Scott (collectively, "Plaintiffs"), by and through their undersigned counsel, Feldman Gale, P.A., renew their previously filed Expedited Third Motion to Compel Production of Documents and for Sanctions [Dkt. 109] (the "Motion") and respectfully moves this Court for an order compelling Defendants, Hi-Lite Manufacturing, Inc. ("Hi-Lite"), Barnlight Originals, Inc. ("BLO"), and Jeffrey Ohai ("Ohai") (collectively, "Defendants") to produce documents and respond to interrogatories, as well as imposing sanctions on Defendants and awarding Plaintiffs expenses, including attorneys' fees and costs.  In support of this renewed motion, Plaintiffs state as follows:

## I.    INTRODUCTION

Barn Light Electric still needs financial and transactional documents sufficient to quantify and vet Hi-Lite's revenues from infringement, unfair competition and cybersquatting. Further, Barn Light Electric needs financial and transactional documents sufficient to quantify and vet BLO's claims regarding expenses purportedly charged to BLO by Hi-Lite for the sales in-suit.  Further still, Barn Light Electric needs written responses to interrogatories and other financial documents that are the subject of Plaintiff's Expedited Third Motion To Compel And For Sanctions [Dkt. 109].  Without any valid or stated reason, however, Hi-Lite refuses to produce the needed discovery of its financial and transactional documents.

This Court agreed that Hi-Lite's production was insufficient.  Specifically, the Court ordered Hi-Lite to produce: "1) the underlying financial records of all sales and purchases between Hi-Lite and BLE, sufficient to disclose how much money was paid to Hi-Lite by BLE on which dates and, to the extent available, for which products, and 2) financial records for any sales made and fulfilled by Hi-Lite due to referrals from BLO or otherwise for BLO customers

. . . [and to further produce] *in camera*, financial records of all profits made by Hi-Lite through sales to BLO (as Hi-Lite's client or customer or distributor—however designated)" for the Court's consideration of Defendants' suspect claims that Hi-Lite sells at arms length to BLO at no profit. (Dkt. 283 at ¶ 6). Rather than comply, Hi-Lite pointed back to tens of thousands of unhelpful individual purchase orders it produced last year. It also produced for *in camera* inspection a declaration about Hi-Lite's "estimated" profit margins for sales to BLO that raises serious questions about its trustworthiness, accuracy and significance.

As a result of Hi-Lite's continued withholding of discoverable financial and transactional information, Plaintiff now renews its Motion To Compel [Dkt. 109] and respectfully moves this Court to issue an order compelling Defendants to provide written responses and to finally produce all responsive documents to the subject discovery requests.

In addition, sanctions are meant to deter exactly the type of conduct Hi-Lite is engaged in—unjustified withholding of discoverable documents to the prejudice of the requesting party. Hi-Lite knows Plaintiffs are entitled to the requested financial and transactional documents. Not only are such documents routinely engaged in trademark and unfair competition matters, but Hi-Lite itself sought (and received) exactly the same type of information from Barn Light Electric in Hi-Lite's earliest requests for production and interrogatories. To make matters worse, for many months, Hi-Lite obscured its intention to withhold Hi-Lite's financial and transactional data from production. Even now, almost a year after the first motions to compel were filed on this topic, Hi-Lite keeps an iron grip on its financial and transactional documents. This has forced Plaintiffs to engage in protracted, extremely costly motions practice, including the filing of objections and preparation for multiple hearings on this topic. Undeterred, Hi-Lite circumvented this Court's Order [Dkt. 283] as detailed herein.

Defendants' recalcitrance has forced Plaintiffs to go to extremes to force the production of documents routinely exchanged in trademark discovery. Considering the attendant prejudice, time and costs incurred in getting such documents from Defendants—on top of the enormous waste of judicial resources dealing with avoidable discovery matters—Plaintiffs respectfully urge this Court to shift the burden of attorneys' fees in connection with this renewed motion, the underlying motion [Dkt. 109] and objections [Dkts. 185, 232].

## II.    DISCOVERY REQUESTS AT ISSUE

The following Requests for Production and Interrogatories (the "Requests"), first presented in Plaintiffs' Motion [Dkt. 109], are the subject of this motion.

### Plaintiff's First Set of Interrogatories

**INTERROGATORY NO. 2:** As to each product promoted, sold, or distributed in connection with the BARNLIGHT ORIGINALS marks, please provide the following information:
a. the number of units sold, and to whom the units were sold;
b. the sales prices of each unit;
c. the gross income received from sales of these units;
d. the net income received from sales of these units;
e. the profits received from sales of these units; and
f. an itemized list of the fixed and variable costs associated with the manufacture, production, marketing, advertising, and selling of these units. A complete response to this interrogatory will identify each entity that promotes, sells, or offers for sells Defendants' products and include all of the information in (a) through (f) above.
**RESPONSE:** Pursuant to Fed. R. Civ. P. 33(d), Barnlight Originals will provide documents, to the extent any exist, at a mutually agreeable time and place from which the information can be gathered.

### Plaintiffs Second Set of Interrogatories

**INTERROGATORY NO. 15:** Please state Hi-Lite's total annual volume of sales of all Hi-Lite products (including, but not limited to, products sold under any mark or brand that Hi-Lite claims to own, including Barnlight Originals) to all of its purchasers (including, but not limited to, Barn Light Electric) in each year from 2004 through 2015 (to date), in both total annual revenues and total unit sold. In responding to this interrogatory, please specify how much of the total annual revenues and total annual units sold in each year was attributable to sales of products sold under a given brand or mark that Hi-Lite claims to own, including Barnlight Originals.
**RESPONSE:** Pursuant to Fed. R. Civ. P. 33(b)(4), Defendants object to this request as being irrelevant, overly broad, burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Hi-Lite has never owned Barnlight Originals.

3

**Barn Light Electric's Third Requests for Production**

**REQUEST NO. 53:**
All audited, prepared, and/or reviewed financial statements for Barnlight Originals, and Hi-Lite including but not limited to: (i) Income statements / profit & loss statements, (ii) balance sheets, and (iii) cash flow statements.
**RESPONSE:** Pursuant to Fed. R. Civ. P. 34(b), Defendants object to this request as being overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Defendants also object to this request as irrelevant to the extent it relates to Hi-Lite. Defendants further object to this request to the extent that it seeks information protected by attorney-client privilege and/or the work product doctrine. Subject to the foregoing general and specific objections, Barnlight Originals will produce responsive, non-privileged documents, to the extent any exist that have not previously been produced, at a mutually agreeable place and time.

**REQUEST NO. 54:** All internally generated profit and loss or income statements for each Barnlight Originals and Hi-Lite business unit or division which sells the products at issue in this litigation.
**RESPONSE:** [SAME RESPONSE]

**REQUEST NO. 55:** All data and/or documents containing Barnlight Originals and Hi-Lite sales transaction data, including: product/model number, description, gross sales, net sales, returns, cost of sales, units sold, customer name and shipping location.
**RESPONSE:** [SAME RESPONSE]

**REQUEST NO. 56:** Summary documents from which it is possible to determine the types and amounts of costs or expenses incurred by Barnlight Originals, Hi-Lite and Ohai in connection with the creation, production, performance, and delivery of products at issue.
**RESPONSE:** Pursuant to Fed. R. Civ. P. 34(b), Defendants object to this request as being overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Defendants also object to this request as irrelevant to the extent it relates to Hi-Lite and Mr. Ohai. Defendants further object to this request to the extent that it seeks information protected by attorney-client privilege and/or the work product doctrine. Subject to the foregoing general and specific objections, Barnlight Originals will produce responsive, non-privileged documents, to the extent any exist that have not previously been produced, at a mutually agreeable place and time.

**REQUEST NO. 64:** All sales, revenue, and/or profit forecasts or projections generated by Barnlight Originals and Hi-Lite in connection with products at issue in this litigation.
**RESPONSE:** Pursuant to Fed. R. Civ. P. 34(b), Defendants object to this request as being overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Defendants further object to this request to the extent that it seeks information protected by attorney-client privilege and/or the work product doctrine. Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents, to the extent any exist that have not previously been produced, at a mutually agreeable place and time.

**Barn Light Electric's Fourth Requests for Production**

**REQUEST NO. 10:** All documents relating to the manufacture, including the cost and method of manufacture, of each completed product, and each component part of each completed product, asserted against BLE as part of Defendants' trade dress infringement claims in this litigation.
**RESPONSE:** Pursuant to Fed. R. Civ. P. 34(b), Defendants object to this request as being overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, vague, and ambiguous. Defendants object to the request as irrelevant to the extent it relates to Barnlight Originals and Jeffrey Ohai. Defendants further object to this request to the extent that it seeks information protected by attorney-client privilege and/or the work product doctrine. Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents, to the extent any exist that have not previously been produced, at a mutually agreeable place and time.

**REQUEST NO. 16:** All documents showing damages suffered by Defendants in connection with the allegations made in the Second Amended Counterclaims against BLE.
**RESPONSE:** [SAME RESPONSE]

**REQUEST NO. 31:** All documents used or to be relied upon by Defendants in calculating or ascertaining the damages allegedly sustained by Hi-Lite due to BLE's allegedly false and misleading advertisements.
**RESPONSE:** [SAME RESPONSE]

## MEMORANDUM OF LAW

### III.  STANDARD OF LAW

#### A.  Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure Rule 26(b)(1) generally permits parties to "obtain discovery regarding any non-privileged matter that is relevant to any parties' claim or defense." FED. R. CIV. P. 26(b)(1). "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002). Relevance "is construed more broadly for discovery than at trial." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987). Courts interpret relevancy liberally and "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

In the Eleventh Circuit, the discovery of a party's financial records requires only that the request is "arguably relevant" to a parties' claims and defenses. *Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 846 (11th Cir. 1997); *see also Erenstein v. S.E.C.,* 316 Fed. App'x 865, 869-70 (11th Cir. 2008) (per curiam).

Rule 26 also imposes a duty on parties to comply with disclosure deadlines and "grants them no right to produce information in a belated fashion." *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Solutions, LLC*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012) *aff'd*, 505 F. App'x 928 (11th Cir. 2013)(striking a party's expert report due to its failure to timely disclose discovery). Rule 26(g) was "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993) (citing Fed. R. Civ. P. 26(g) advisory committee's notes (1983 Amendment)).

**B.     Federal Rule of Civil Procedure 37**

Rule 37 governs a party's failure to make a proper disclosure or cooperate in discovery. Fed. R. Civ. P. 37. Rule 37 is enforced in this district. *See* Discovery Rules, at ¶ E(3). "Further, if a Court order is obtained compelling discovery, unexcused failure to comply with such an order is treated by the Court with special gravity and disfavor." *Id.* "For purposes of Rule 37, an incomplete response is to be treated as a failure to respond." *In re Seroquel Products Liab. Litig.*, 244 F.R.D. 650, 655 (M.D. Fla. 2007) (citing Fed. R. Civ. P. 37(a)(3)).

The Eleventh Circuit Court of Appeals and district courts in the Middle District of Florida have repeatedly held that "[i]n making the determination of whether to impose sanctions, Rule 37(b)(2) does not require a showing of willfulness or bad faith as a prerequisite to the imposition of sanctions upon a party." *In re Seroquel Products Liab. Litig.*, 244 F.R.D. 650, 656 (M.D. Fla. 2007) citing *Melendez v. Ill. Bell Tel. Co.,* 79 F.3d 661, 671 (7th Cir.1996) ("Bad faith . . . is not required for a district court to sanction a party for discovery abuses. Sanctions are

6

proper upon a finding of willfulness, bad faith, or fault on the part of the non-complying litigant."). Rule 37 of the Federal Rules of Civil Procedure authorizes wide ranging sanctions against a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A) (i-vii); *Stuart I. Levin & Assocs., P.A. v. Rogers*, 156 F.3d 1135, 1140 (11th Cir. 1998) (awarding extensive attorney's fees and costs).

Rule 37(b)(2) also permits courts to preclude a party who "fails to obey an order to provide or permit discovery" from "supporting or opposing designated claims or defenses." Fed. R. Civ. P. 37(b)(2)(A)(ii). In addition to preclusion orders, Rule 37 also provides that a court "must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the reasonable expenses, including attorney's fees" unless the court finds "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action," that the failure was "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i-iii). "Rule 37 'places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.'" *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 259 F.R.D. 591, 610 (M.D. Fla. 2009).

"Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process." *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 674 (M.D. Fla. 2008) citing *Aztec Steel Co. v. Fla. Steel Corp.,* 691 F.2d 480, 482 (11th Cir.1982). "The most severe spectrum of sanctions must be available to district courts not merely to penalize those whose conduct may be deemed to warrant such a

7

sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976).

**C.      The Court's Inherent Powers to Impose Sanctions.**

Courts may also invoke their inherent powers to impose sanctions for abuse of the discovery process or failing to obey a court order. *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991).

**IV.     ARGUMENT**

**A.      Hi-Lite Continues Withholding Financial Records Identifying All Sales And Purchases Between Hi-Lite and Barn Light Electric In Direct Violation Of This Court's Order.**

Hi-Lite failed to comply with this Court's Order [Dkt. 283, ¶ 6] and has, once again, withheld documents critical to Plaintiffs' claims and defenses in this matter. Instead of producing its financial records identifying all sales and purchases between Hi-Lite and Barn Light Electric as ordered by this Court, Hi-Lite pointed back to Bates Numbers for purchase orders already produced in this litigation, and invited Plaintiffs to inspect and tabulate approximately 100,000 additional purchase orders.[1] *See* Letter Dated March 17, 2016 (attached hereto as "Exhibit A"). Moreover, Hi-Lite also refused to produce *any* of the underlying financial documents ordered by this Court.[2] Instead, the totality of its financial document production consisted of a five-line *summary* of sales totals from Hi-Lite to Barn Light Electric created for this litigation, without any of the supporting financial, transactional or product specific sales information this Court ordered it to produce.

At the Status Conference, this Court rejected as insufficient Hi-Lite's reliance on the production of purchase orders and summaries of its financial information to fulfill its discovery

---

[1] Significantly, Hi-Lite cannot confirm whether it has produced, or is even in possession of, all purchase orders. Hi-Lite's inability to make such a certification further underscores the necessity of Hi-Lite's production of its underlying financial information, including its electronically stored sales records.

[2] *See* Transcript of February 23, 2016 Status Conference ("Status Conf. Trans.") at p. 109, ln. 6 – p. 112, ln. 22; *see also* p. 113, ln. 19 – p. 124, ln. 17 (attached hereto as "Exhibit B").

8

obligations. *See* Status Conf. Trans., at p. 112, ln. 3-11 ("THE COURT: You didn't gather them from the underlying purchase orders, you gathered them from your financial documents. That's how I assume you made your summations. MR. COLITZ: I believe so, Your Honor. THE COURT: All right. ***So whatever is available that would demonstrate purchases made and sales paid and numbers given, you all need to exchange that so that it can be verified*** ....") (emphasis added). However, ignoring the Court's order to the contrary, that is precisely what Hi-Lite relies on to fulfill its obligations. *See* Ex. A (" ██████████████████████████████████ ██████████████████████████████████████████████████████ As this Court ordered, Plaintiffs are entitled to discover the underlying financial data relied upon by Hi-Lite in creating its summary. *See Beach Mart, Inc. v. L&L Wings, Inc.*, 2012 WL 4925724 (E.D.N.C. Oct. 16, 2012) ("Defendant should not have to rely on plaintiff's one-page summary of financial information, created in connection with this litigation, without being able to check behind the summary and confirm the accuracy of the underlying data."). Accordingly, Hi-Lite has failed to comply with this Court's Order (Dkt. 283).

Furthermore, Defendant Hi-Lite also ignored this Court's order to produce the underlying "financial records for all sales and purchases made and fulfilled by Hi-Lite due to referrals from BLO or otherwise fulfilled for BLO customers." *See* Dkt. 283, ¶6; *see also* Status Conf. Trans., at p. 120: lns. 21-24 (THE COURT: "[P]roduce the ***transactional information of referrals*** from Barnlight Originals to Hi-Lite ***and any financial information demonstrating Hi-Lite having fulfilled orders through Barnlight Originals***.") (emphasis added). Although the sworn testimony of its President and Sales Manager establishes that Hi-Lite is fully capable of providing such information, it has willfully refused to do so.[3] Instead, Hi-Lite sent a letter

---

[3] *See* Transcript of the Deposition of Dorothy Ohai (attached hereto as "Exhibit C"), at p. 34: ln. 25 (" ████████ ████████████████████████████████ "); *see also* Transcript of the Deposition of David

9

outlining its understanding of Plaintiff's allegations, directing Plaintiffs to purchase orders previously produced in this litigation, and attaching a self-serving and conclusory declaration controverted by record evidence already considered by this Court.[4] Thus, Hi-Lite's reliance on purchase orders and summaries of its sales totals are insufficient to meet its obligations under this Court's Order.

Further still, in view of Plaintiffs' contention at the Status Conference that the record evidence substantiates Hi-Lite's operation of BLO as a shell company in order to derive profits both directly and indirectly through BLO's infringement of Barn Light Electric's marks, this Court directed Defendants to "[p]roduce to the Court, *in camera*, the profits between Ohai son and Ohai mom, and then I'll decide whether it's pertinent to disclose to Barn Light Electric. . . . And that includes profits made on product sold through Barnlight Originals purchased from Hi-Lite as a client or customer." *Id.* at p. 124: lns. 4-10.

Instead of complying with this Court's order, Hi-Lite produced yet another *summary* of its sales totals containing an "*approximate* profit margin" allegedly realized through sales of its products by or through BLO. However, Hi-Lite's *summary* cannot possibly be found to comply with this Court's Order because it lacks any of the underlying financial documents relied upon

---

McAdam (attached hereto as "Exhibit D"), at p. 105: ln. 21 – p. 106: ln. 4 ▮

[4] *See* Status Conf. Trans., at p. 114, ln. 9 – p. 120, ln. 24; *see also* Depo. Transcript of George Gonzalez (attached hereto as "Exhibit E"), at p. 98: ln. 4 – p. 99: ln. 23 ("▮"); *see also id.* at p. 148: ln. 5 – p. 150: ln. 5 ▮.").

10

by its certified public accountant, Jeff Powell, in reaching such conclusions. Indeed, without access to such documents, one can neither verify the approximations contained therein nor determine whether the alleged arms-length relationship Hi-Lite claims to exist between itself and BLO is accurate.[5] Plaintiffs cannot—and should not be limited to—determining whether Hi-Lite or the Ohai's are manipulating the stated profitability of BLO by redistributing profits and expenses between BLO and Hi-Lite without access to Defendants' underlying financial documents. This is especially so when there is ample evidence to cast doubt on claims of an arm's length relationship.

The record evidence, including the sworn testimony of the web design and development firm that created and launched BLO's e-commerce website establishes that **Hi-Lite** contracted, paid for, selected and directed the design and development of the BLO website, brand and infringing marks.[6] *See* Ex. F, at p. 39: lns. 6-15 ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.") (emphasis added); *see also id*, at p. 85: lns. 19-22 (Q: ████████████████████████████████████████████████████████████████.") (emphasis added).

Moreover, the sworn testimony of Hi-Lite's own President, Dorothy Ohai (also the Treasurer of BLO), and Vice President, Jeffrey Ohai (also the President of BLO), confirms that

---

[5] *See* Ex. A., at Declaration of David McAdam at ¶3 and Exhibit A thereto. For example, the summary provided fails to include underlying documents establishing Hi-Lite's profits and lacks any support for assumptions made including ████████████████████████████████████████████████████████.

[6] *See* Deposition of Bold Array, LLC (attached hereto as "Exhibit F"), at p. 84: ln. 25 – p. 85: ln. 5; p. 86: ln. 14 – p. 87: ln. 3. Moreover, as further evidence of Defendants' failure to provide discovery, third-party Bold Array, LLC produced numerous highly relevant documents including e-mail communications with BLO and Hi-Lite which Defendants never produced.

11

employees paid by Hi-Lite and informally "leased" to BLO have continued to operate BLO since its inception.[7]  According to its President, Jeffrey Ohai, BLO operates out of a 300 sq. ft. office space located on the second floor of Hi-Lite's manufacturing facility.  When asked who manages BLO, Mr. Ohai testified under oath that: "███████████████████████████████ ██s." *See* Transcript of J. Ohai, at p. 186: lns. 17-19.  Mr. Ohai also testified that all three of BLO's employees were employees of Hi-Lite and further stated that BLO operates at no incremental cost whatsoever to Hi-Lite for its additional sales.  *Id.* at p. 184: lns. 1-18.  Moreover, during the course of this litigation, BLO amended its tax returns to suddenly reflect new expenses over $██,000 for a single year in rents paid, advertising costs and outside services, as well as an unexplained decrease in the cost of goods sold.  Such evidence strongly suggests that Hi-Lite and BLO are not merely operating at arms length but are, instead, closely held corporations, operated by a mother-son duo, in the same facility with the same employees and, perhaps most importantly, the same beneficiaries.

B.  **Hi-Lite Must Produce All Responsive Financial And Transactional Documents Without Further Delay.**

Hi-Lite had ample opportunity to comply with this Court's Order [Dkt. 283].  It chose not to and, instead, has willfully withheld documents which they were ordered to produce to Plaintiffs over a month ago.  Hi-Lite has repeatedly attempted to avoid the production of its underlying financial documents throughout this litigation—resulting in unnecessary delay, protracted motions practice and increased costs in an already costly litigation.  Plaintiffs are entitled to discovery of Defendants' financial documents under the broad scope of discovery

---

[7] *See* Transcript of the Deposition of David McAdam (attached hereto as "Exhibit G"), at p. 197: lns. 3-5 ("Q: ████████████████████████████████████████████████████████████████████████████████████████████████."); p. 240: lns. 1-6 ("████████████████████████████████████████████████████████████████████████████████████████████."); p. 245: lns. 13-15 ("Q: ██████████████████████████████████████████████████."); p. 250: lns. 12-15 ("█████████████████████████████████████████████████████████████████████████.").

12

afforded by Fed. R. Civ. P. 26(b)(1) and well-established Eleventh Circuit precedent. Without access to such documents, Plaintiffs will be severely prejudiced and unable to fully develop its claims and defenses in this matter. Accordingly, to avoid further delay, Plaintiffs respectfully request that this Court grant its Renewed Motion to Compel [Dkt. 109] and compel Defendants' production of all responsive financial documents requested by Plaintiffs in the Requests for Production contained herein as well as the documents Defendants were previously Ordered to produce [Dkt. 283] on an expedited basis. Moreover, Plaintiffs respectfully request that this Court order

**C.   The Deposition Of Defendants' Custodian Of Financial Records Would Preserve The Parties Resources And Expedite Plaintiffs' Discovery Of Defendants' Financial Records.**

The sworn testimony of Hi-Lite's President and owner, Ms. Dorothy Ohai, establishes that Mr. Jeffrey Powell, CPA has been the sole custodian of Hi-Lite's financial records for more than ten years and that Hi-Lite's financial records are not present at Hi-Lite's facility. *See* Transcript of the Deposition of Dorothy Ohai (attached as "Exhibit C"), at p. 22: ln. 14 – p. 23, ln. 18 ("Q: █████████████████████████████████████████████████████████████████████████████████████████████████████████."); *Id.* at p. 24: lns. 7-9 ("Q: ████████████████████████████████████████████████████████████████████████████"). Ms. Ohai's sworn testimony also established that Mr. Powell has in his possession: all of Hi-Lite's financial statements, tax returns, income and expense reports, payroll reports, inventory records, bank statements, cost of goods reports and other financial documents. *Id.* at p. 34: lns. 21-25 ("Q: █████████████████████████████████████████████████████████████████████████████████████████████████.").

13

During the Status Conference, this Court contemplated "some deposition discovery [might] follow the financial discovery." Status Conf. Trans., p. 136: lns. 22-23. Given Ms. Ohai's testimony that Mr. Powell has sole custody of all of Hi-Lite's financial records, and Hi-Lite's persistent refusal to voluntarily produce any of its underlying financial documents or testimony throughout the entirety of this litigation and, in order to avoid further delay, prejudice, and waste of the parties resources, Plaintiffs respectfully request leave to serve a subpoena *duces tecum* upon, and depose, Mr. Jeffrey Powell, the custodian of financial documents for both Hi-Lite and BLO.  Mr. Powell's deposition would unquestionably expedite the financial discovery process in the most efficient and economic manner for all parties and assist in placing this case back on track for trial.  Thus, Plaintiffs respectfully request that this Court grant it leave to serve Mr. Powell with a subpoena *duces tecum* and notice of deposition.

### D. Hi-Lite Unjustifiably Withheld Its Sales Reports From Production Throughout The Discovery Period.

Ms. Ohai's sworn testimony also establishes that, but for the sales reports she creates, all other financial documents kept in the ordinary course of business are sent to Mr. Powell on a regular basis.  Although requested by Plaintiffs, Hi-Lite's sales reports were never collected or produced in this litigation.  *Id.* (███████████████████ ███"). *Id.* at p. 35: lns. 1-2. 21; *see also id.* at 35:24–36:7 ("Q: ███████████ ██████████████████████████████████████ ██████████████████████ sales."). This Court should compel Hi-Lite to produce its sales reports relating Hi-Lite's sales to Barn Light Electric and Barn Light Originals.  Such documents may contain the underlying product level transactional information this Court ordered Hi-Lite to produce to Plaintiffs [Dkt. 283].  Sales reports relating to both Barn Light Electric and Barn

14

Light Originals are undoubtedly relevant to the claims and defenses in this litigation and such documents should have been produced by Hi-Lite long ago. Plaintiffs respectfully request that this Court compel their production.

### E.  Hi-Lite's Conduct Warrants Shifting Plaintiffs' Attorneys Fees to Defendants.

Ignoring this Court's Order [Dkt. 283] that Defendants produce financial documents and transactional records, Defendants refused to produce such documents. They responded with the least helpful documents possible—a short letter from Defendants' counsel, a self-serving declaration of questionable value and an unsupported summary generated for this litigation. Moreover, Defendants *still* refuse to produce responsive documents and written discovery responses to Plaintiffs' First, Second, Third and Fourth Requests for Production of Documents, as well as numerous interrogatories relating to Defendants' relevant financial records, which were the subject of the previous Motion to Compel [Dkt. 109].

Defendants have no reason to withhold the financial and transactional documents requested by Plaintiff and ordered to be produced by this Court. "[T]o the extent that an attorney fee shift can be made on such motions, I intend to make them because this has really gotten out of hand." Status Conf. Trans., at p. 135, ln. 14-17. Courts in this district have noted that "[a] party will not be permitted to gain an advantage by agreeing to cure the discovery violation, then fail to implement the cure, and hope to avoid a sanction by forestalling the sanctions ruling." *In re Seroquel Products Liab. Litig.*, 244 F.R.D. 650, 657 (M.D. Fla. 2007). Defendants waited nearly one year had passed after the filing of Plaintiff's initial Complaint to expressly inform Plaintiff of its intentional refusal to provide discovery relating to its financial and business records—all the while leading Plaintiffs to believe discovery responses and relevant documents would be forthcoming. It was not until the eve of the Expert Reports deadline and, only after

15

much of the discovery period had expired, that Plaintiff learned of Defendants' intention to withhold such documents and information—causing Plaintiffs severe prejudice.

Upon learning of Hi-Lite's intention to withhold from discovery information to which it was entitled under Fed. R. Civ. P. 26, Barn Light Electric filed its Third Expedited Motion To Compel [Dkt. 109]. Now, even after winding down the clock on the discovery period, protracted and costly motions practice, Objections and ultimately an Order from this Court expressly directing it to produce its underlying financial documents and sales records, Hi-Lite has, once again, withheld from discovery information critical to Plaintiffs' claims and defenses—thus, necessitating the filing of this Renewed Motion to Compel.

Accordingly, Plaintiffs respectfully request that pursuant to Fed. R. Civ. P. 26(g) & 37(b)(2)(A) this Court issue an order requiring Defendant Hi-Lite to compensate Plaintiffs for their reasonable attorneys' fees and costs in connection with the filing of its Expedited Third Motion to Compel Production of Documents and for Sanctions [Dkt. 109] and this Renewed Motion, each of which was necessitated by Defendant, Hi-Lite's unjustifiable refusal to produce documents and discovery responses which Plaintiffs were clearly entitled to pursuant to Fed. R. Civ. P. 26(b)(1).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order granting Plaintiff's Renewed Motion to Compel and for Sanctions [Dkt 109] and directing that Defendants: (i) produce the underlying financial documents, transactional and product sales reports pursuant to this Court's previously issued Order [Dkt. 283], (ii) provide written discovery responses the Interrogatories at issue, (iii) produce documents responsive to the Requests for Production of Documents at issue, (iv) grant Plaintiffs leave to serve a subpoena *duces tecum* and

notice of deposition upon Defendants' custodian of financial records, Mr. Jeffrey Powell, CPA, and (v) compensate Plaintiffs for their reasonable attorneys' fees in connection with the filing of this renewed motion as well as the underlying motion and objections.

## **Certification Pursuant to Local Rule 3.01(g)**

Pursuant to Local Rule 3.01(g), I hereby certify that I have conferred with counsel for Defendants regarding the relief requested and Defendants object to the requested relief.

Dated:  April 29, 2016                                         Respectfully Submitted,

/s/ *Alejandro J. Fernandez*
By: Alejandro J. Fernandez, Esq.
Board Certified in Intellectual Property Law
FL. Bar No. 32221
E-mail: AFernandez@FeldmanGale.com
Gregory L. Hillyer, Esq
FL. Bar No. 682489
E-mail: GHillyer@FeldmanGale.com
Joseph R. Sozzani, Esq.
FL. Bar No. 120297
E-Mail: JSozzani@FeldmanGale.com
Stephen J. Leahu, Esq.
FL Bar No. 54037
E-mail: SLeahu@FeldmanGale.com
Matthew N. Horowitz, Esq.
FL. Bar No. 98564
E-mail: MHorowitz@FeldmanGale.com
**FELDMAN GALE, P.A.**
400 N. Tampa Street, Suite 2830
Tampa, FL 33602
Telephone No. (813) 374-8890
Telefacsimile No. (305) 358-3309
*Counsel for Plaintiff, Counterclaim-Defendants and Third Party Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive filings electronically.

/s/ *Alejandro J. Fernandez*
Alejandro J. Fernandez

## SERVICE LIST
*Barn Light Electric Company, LLC v. Barnlight Originals, Inc., et al.*
Case No.: 8:14-CV-1955-T-35AEP
United States District Court, Middle District of Florida

Stefan Vaughn Stein
Email: stefan.stein@gray-robinson.com
Michael J. Colitz, III
Email: michael.colitz@gray-robinson.com
Stephen Gregory Anderson
Email: Stephen.anderson@gray-robinson.com
**GrayRobinson, P.A.**
401 E. Jackson Street, Suite 2700
Post Office Box 3324
Tampa, FL 33601
Telephone No. (813) 273-5000

*Attorneys for Defendants/Counterclaim Plaintiffs*