# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BARN LIGHT ELECTRIC COMPANY,**
**LLC, a Florida limited liability company,**

     **Plaintiff,**

**v.**                                  **CASE NO.: 8:14-cv-1955-MSS-AEP**

**BARNLIGHT ORIGINALS, INC., a**
**Nevada Corporation; HI-LITE**
**MANUFACTURING COMPANY, INC., a**
**California corporation; and JEFFREY L.**
**OHAI, an individual California Resident,**

     **Defendants.**
_____/

**BARNLIGHT ORIGINALS, INC., a**
**Nevada Corporation; HI-LITE**
**MANUFACTURING COMPANY, INC., a**
**California corporation; and JEFFREY L.**
**OHAI, an individual California Resident,**

     **Counterclaim Plaintiffs,**

**v.**

**BARN LIGHT ELECTRIC COMPANY, LLC,**
**a Florida limited liability company,**

     **Counterclaim Defendants,**

**and**

**BRYAN AND DONNA SCOTT, individual**
**Florida residents,**

     **Third-Party Defendants.**
_____/

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of the Motion for Partial Summary Judgment (Dkt. 167) filed by Defendants and Counterclaim Plaintiffs, Hi-Lite Manufacturing Company, Inc. ("Hi-Lite") and Jeffrey L. Ohai ("Ohai"), the Response in opposition thereto (Dkt. 211) filed by Plaintiff and Counter-Defendant, Barn Light Electric, LLC ("BLE") and Third-Party Defendants, Bryan and Donna Scott (the "Scotts"), and the Reply (Dkt. 226) filed by Hi-Lite and Ohai; and the Corrected Motion for Partial Summary Judgment (Dkt. 198) filed by BLE and the Scotts, the Response in opposition thereto (Dkt. 215) filed by Hi-Lite and Ohai, and the Reply (Dkt. 227) filed by BLE and the Scotts. Additionally, the Court heard arguments on the Motions.  (Dkt. 281)

Upon consideration of all relevant filings, case law, oral argument of the Parties, and being otherwise fully advised, the Court **GRANTS in part** and **DENIES in part** Hi-Lite and Ohai's Motion for Partial Summary Judgment (Dkt. 167) and **GRANTS in part** and **DENIES in part** BLE and the Scotts' Motion for Partial Summary Judgment.  (Dkt. 198)

## I.     BACKGROUND

### a.     Procedural History

Plaintiff, BLE, originally filed this action against Defendants, Hi-Lite, Ohai, and Barnlight Originals, Inc. ("BLO") on August 14, 2014.  (Dkt. 1)  The current operative complaint is Plaintiff's Third Amended Complaint, which asserts a total of twelve (12) claims against Defendants:

- **Count I:** Trademark Infringement (15 U.S.C. § 1114)
- **Count II:** Contributory Trademark Infringement
- **Count III:** Unfair Competition (15 U.S.C. § 1125)

- **Count IV:** Cancellation of Supplemental [Trademark] Reg. No. 4,464,241 (15 U.S.C. § 1119)
- **Count V:** Cancellation of [Trademark] Reg. No. 4,489,514 (15 U.S.C. § 1119)
- **Count VI:** Common Law Unfair Competition
- **Count VII:** Common Law Trademark Infringement
- **Count VIII:** Violation of the Anticybersquatting Consumer Protection Act (11 U.S.C. § 1125(d))
- **Count IX:** Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,556,477
- **Count X:** Declaratory Judgment of Invalidity of U.S. Patent No. 8,556,477
- **Count XI:** Declaratory Judgment of Unenforceability of U.S. Patent No. 8,556,477
- **Count XII:** Declaratory Judgment of Non-Interference with Patent Rights

(Dkt. 107)  Defendants, Hi-Lite, Ohai, and BLO have also filed counterclaims against BLE and third-party claims against Bryan and Donna Scott (the "Scotts").  (See Dkt. 24, 47, 60)  The current operative counterclaims and third-party complaint is Defendants' Second Amended Counterclaims and Third-Party Complaint, which asserts a total of nineteen (19) claims against BLE and the Scotts:

- **Count I:** Trademark Infringement (15 U.S.C. § 1114) (*against BLE*)
- **Count II:** Common Law Trademark Infringement (*against BLE*)
- **Count III:** Unfair Competition (15 U.S.C. § 1125) (*against BLE*)
- **Count IV:** Reverse Passing Off (*against BLE*)
- **Count V:** False Advertising (*against BLE*)
- **Count VI:** Infringement of U.S. Copyright Reg. No. VA0001931982 (17 U.S.C. § 501) (*against BLE*)
- **Count VII:** Infringement of U.S. Copyright Reg. No. VA0001931193 (17 U.S.C. § 501) (*against BLE*)

3

- **Count VIII:** Infringement of U.S. Copyright Reg. No. VA0001931001 (17 U.S.C. § 501) (*against BLE*)
- **Count IX:** Trade Dress Infringement (15 U.S.C. § 1125(a)) (*against BLE*)
- **Count X:** Contributory Trademark Infringement (*against the Scotts*)
- **Count XI:** Vicarious Trademark Infringement (*against the Scotts*)
- **Count XII:** Contributory Infringement of U.S. Copyright Reg. No. VA0001931982 (17 U.S.C. § 501) (*against the Scotts*)
- **Count XIII:** Contributory Infringement of U.S. Copyright Reg. No. VA0001931193 (17 U.S.C. § 501) (*against the Scotts*)
- **Count XIV:** Contributory Infringement of U.S. Copyright Reg. No. VA0001931001 (17 U.S.C. § 501) (*against the Scotts*)
- **Count XV:** Vicarious Infringement of U.S. Copyright Reg. No. VA0001931982 (17 U.S.C. § 501) (*against the Scotts*)
- **Count XVI:** Vicarious Infringement of U.S. Copyright Reg. No. VA0001931193 (17 U.S.C. § 501) (*against the Scotts*)
- **Count XVII:** Vicarious Infringement of U.S. Copyright Reg. No. VA0001931001 (17 U.S.C. § 501) (*against the Scotts*)
- **XVIII:** Contributory Trade Dress Infringement (*against the Scotts*)
- **XIX:** Vicarious Trade Dress Infringement (*against the Scotts*)

(Dkt. 60)  The Parties have now filed cross-motions for partial summary judgment, each contending that they are entitled to an entry of summary judgment in their favor on some of the various claims asserted in this suit.  (Dkt. 167, 198)

### b.    Undisputed Facts

Plaintiff, Barn Light Electric, LLC ("BLE"), is a retail company that sells light fixtures to consumers over the internet.  (Dkt. 167 at ¶ 10)  Third-Party Defendants, Bryan and Donna Scott (the "Scotts"), are the owners and operators of BLE.  (Dkt. 212 at ¶ 3-4) Defendant, Hi-Lite Manufacturing Company, Inc. ("Hi-Lite"), is a company that

manufactures light fixtures.  (Dkt. 216 at ¶ 2-3)  Hi-Lite does not sell its products to retail end-users; rather, Hi-Lite only sells its products to various distributors.  (Dkt. 167 at ¶ 2) Defendant, Jeffrey Ohai ("Ohai") is the Vice-President of Hi-Lite.  His mother, Dorothy Ohai is the President of Hi-Lite.  In 2008, BLE became a retail distributor of Hi-Lite light fixtures.  (Dkt. 171 at ¶ 3; Dkt. 212 at ¶ 6)  BLE also purchased lighting components from Hi-Lite.  The Parties did not have a written contract reflecting the terms of their business relationship.  Hi-Lite provided BLE with its copyrighted photographs, line drawings, and other depictions of its products.  (Dkt. 171 at ¶ 4)  Hi-Lite gave BLE a license to use its copyrighted photographs.  (Dkt. 167 at ¶ 6)  BLE used the photographs from Hi-Lite's catalogs to advertise and sell Hi-Lite products on its website, www.barnlightelectric.com. (Dkt. 171-3)  Hi-Lite designates its products by parts numbers, including specifically:  H-15116 and H-15116G.  (Dkt. 230-1 at P 15-16)  Hi-Lite has not applied for a federal trademark for any of its parts numbers.  (Dkt. 167 at ¶ 9)

At some point during the Parties' business relationship, BLE decided to begin manufacturing its own light fixtures patterned after the fixtures sold by Hi-Lite.  (Dkt. 237 at P. 41-42)  A previous BLE employee, Michael Schultz, testified that he was hired by BLE to reverse engineer some of Hi-Lite's products.  (Dkt. 237 at P. 39-44, 46, 48-49)  In January of 2012, Hi-Lite asked one of its long-time sales representatives, William Sanders, to access BLE's website and purchase Hi-Lite products.  (Dkt. 171 at ¶ 6-7) The products purchased by Sanders were described as the "Barn Light 'The Original' Warehouse Shade" and the "Barn Light Warehouse Pendent Shade."  (Dkt. 230-1 at P. 3; Dkt. 171-1)  The BLE website displayed the products with the parts numbers H-15116 and H-15116G, corresponding to Hi-Lite's parts numbers and were accompanied by

pictures from Hi-Lite's catalog.  (Dkt. 230-1 at P. 3; Dkt. 171-3)  Mr. Sanders made the purchase as requested.  (Dkt. 230-1 at P. 3)  After Mr. Sanders received the packages, he forwarded them to Hi-Lite.  (Dkt. 230-1 at P. 7; Dkt. 171 at ¶ 13-14)  Once Hi-Lite received the packages, they were opened and were found to contain light fixtures bearing BLE's logo that were actually manufactured by BLE.  (Dkt. 171 at ¶ 14; Dkt. 171-5; Dkt. 183 at P. 8-9)  The order confirmation for the sale included the parts numbers H-15116 and H-15116G.  (Dkt. 171-1)

Hi-Lite terminated the Parties' business relationship on September 4, 2012 and requested that BLE remove all photographs and drawings of Hi-Lite's fixtures from BLE's website.  (Dkt. 237 at P. 64)  Following the termination of the relationship, Defendant Ohai created Defendant Barnlight Originals, Inc. ("BLO"), a retail seller of light fixtures.  BLO sells Hi-Lite fixtures.  (Dkt. 111 at ¶¶ 64-65)  Ohai registered the word marks BARNLIGHT ORIGINALS and BARNLIGHT ORIGINALS, INC., the domain name www.barnlightoriginal.com, and a logo with the United States Patent and Trademark Office.  (Dkt. 61-32; Dkt. 61-33; Dkt. 111 at ¶ 9)

After the filing of this action, Hi-Lite's attorneys sent BLE and Donna Scott a cease and desist letter charging that products sold by BLE infringe upon U.S. Patent No. 8,556,477 ("the '477 Patent"), and, "upon issuing," would infringe U.S. Patent Application No. 14/054,535 ("the '535 Application").  (Dkt. 107-4)  While this action was pending, on January 12, 2016, the '651 Patent issued out of the '535 Application.  (Dkt. 309)  The '651 Patent is a continuation-in-part of the '477 Patent.  (Id.)  Both the '477 Patent and the '651 Patent are owned by Defendant Ohai.  (Dkt. 198-2; Dkt. 309)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)).  Which facts are material depends on the substantive law applicable to the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Evidence is reviewed in the light most favorable to the non-moving party.  Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).  A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case.  Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial.  Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value.").  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

III.    **DISCUSSION**

a.    **Hi-Lite's Trade Dress Infringement Claims**

Under Counts IX, XVIII, and XIX of the Second Amended Counterclaims and Third-Party Complaint, Defendant Hi-Lite asserts a claim for trade dress infringement against BLE and claims for contributory and vicarious trade dress infringement against the Scotts. (Dkt. 60)  In their Motion for Partial Summary Judgment, BLE and the Scotts claim that they are entitled to an entry of summary judgment in their favor on these claims because Hi-Lite's alleged product designs lack secondary meaning and are generic and functional. (Dkt. 198)

"'Trade Dress' involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1535 (11th Cir. 1986) (citing John Harland Co. v. Clarke Checks, Inc., 711 F.2d 966 (11th Cir. 1983)).  To establish a trade dress infringement claim under the Lanham Act, a party must prove that: "1) its trade dress is inherently distinctive or has acquired secondary meaning, 2) its trade dress is primarily non-functional, and 3) the defendant's trade dress is confusingly similar."  Id. Here, Hi-Lite asserts trade dress protection in the design of twelve of its light fixtures.  "A product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning." Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 216 (2000).

"Secondary meaning is the connection in the consumer's mind between the mark and the product's producer, whether that producer is known or unknown." AmBrit, 812 F.2d at 1536, n.14.  A plaintiff has the burden of presenting a high degree of proof to sustain a claim of secondary meaning for a product's design.  See Investacorp, Inc. v.

Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1525 (11th Cir. 1991) (stating that plaintiff has a high burden of proof in establishing secondary meaning for descriptive marks).  In the absence of  consumer survey evidence, other factors that courts may consider to determine whether secondary meaning exists include: "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's . . . [trade dress]; and (4) the extent to which the public actually identifies the [trade dress] with the plaintiff's [business]." Id.  "The most important of these factors is the fourth which speaks directly to the effectiveness of the first three factors." Olem Shoe Corp. v. Washington Shoe Co., No. 09-23494-CIV, 2011 WL 6202282, at *20 (S.D. Fla. Dec. 1, 2011) aff'd sub nom., Olem Shoe Corp. v. Washington Shoe Corp., 591 F. App'x 873 (11th Cir. 2015).

BLE and the Scotts contend that there is no record evidence establishing a connection in the public's mind between Hi-Lite's alleged trade dress and its source.  As BLE points out, "[appellate] courts have held that survey evidence 'is the most direct and persuasive evidence' to establish secondary meaning." Vital Pharmaceuticals, Inc. v. American Body Bldg., 511 F. Supp. 2d 1303, 1311 (S.D. Fla. 2007) (quoting Sugar Busters LLC v. Brennan, 177 F.3d 258, 269 (5th Cir. 1999)).  However, Hi-Lite has failed to offer any survey evidence.  Additionally, BLE argues that record evidence suggests that no source recognition exists at all between Hi-Lite's alleged trade dress and its source.  Michael Butala, the President and CEO of Cal Lighting, which is a manufacturing representative that markets Hi-Lite products, could not identify the source of any product after being shown thirty (30) images of products from Hi-Lite (including those in which Hi-

Lite claims trade dress protection), BLE, and other third parties.  (Dkt. 199-3 at P. 9-12, 23-29)  Indeed, for all of the fixtures that he was shown, Mr. Butala testified that there were multiple manufacturers that made the same or very similar designs.  (Id. at 22-29)  Michael Schultz, a previous BLE employee who now operates his own retail company and sells Hi-Lite products, testified that although he recognized photos of Hi-Lite's alleged trade dress from its catalogs, he would not be able to identify the products as manufactured by Hi-Lite unless he looked at the hidden backing plate with Hi-Lite's name embossed on it.  (Dkt. 199-5 at P. 102-105)

Hi-Lite contends that it has submitted sufficient evidence on the question of secondary meaning to overcome summary judgment.  Specifically, Hi-Lite has submitted evidence that BLE intentionally copied its lighting designs and it has submitted evidence of Hi-Lite's sales and advertising efforts.  As to the intentional copying, Hi-Lite submits that Michael Schultz testified that he was hired by BLE to reverse engineer Hi-Lite's designs. (Dkt. 237 at P. 39-44, 46, 48-49)  As to the evidence of sales and advertising, Hi-Lite relies on the declaration of Defendant Ohai.  (Dkt. 216)  Therein, Ohai attests that each of the twelve designs in which Hi-Lite asserts trade dress protection have been in circulation for between seven to twelve years and have sold between thousands to tens of thousands of units.  (Id. at ¶¶ 10-21)  Additionally, Ohai attests that Hi-Lite has spent "considerable time and money advertising" its lighting fixtures and that the fixtures have been featured in its catalogs, in magazines, on the internet, at trade shows, and in show rooms.  (Id. at ¶¶ 3, 5)

In Brooks Shoe Mfg. Co. v. Suave Shoe Corp., 716 F.2d 854, 860 (11th Cir. 1983), the Eleventh Circuit held that although "proof of intentional copying is probative evidence

on the secondary meaning issue," it is insufficient on its own to establish secondary meaning as a matter of law.  The Court reasoned that "[t]here may have been many other motivations for defendant's actions," and further noted that "[i]t must . . . not be forgotten that there is absolutely nothing legally or morally reprehensible about exact copying of things in the public domain."  Id.; see also, e.g., Habersham Plantation Corp. v. Art & Frame Direct, Inc., No. 10-61532-CIV, 2011 WL 4005454, at *7 (S.D. Fla. Sept. 8, 2011) (finding evidence of third party sellers' use of style similar to claimed trade dress unpersuasive in light of the high burden of proof associated with the secondary meaning inquiry; "such evidence also can be used to demonstrate that Plaintiff's asserted trade dress is not unique, is widely used by other furniture sellers, and that consumers are not predisposed to equate the feature with the source.").  Moreover, extensive sales and advertising also do not necessarily establish secondary meaning.  See AmBrit, 812 F.2d at 1540 n.4 (citing Aloe Cream Laboratories, Inc. v. Milsan, Inc., 423 F.2d 845, 850 (5th Cir. 1970), cert. denied, 398 U.S. 928 (1970) for the proposition that the key issue in the secondary meaning inquiry is not extent of promotional efforts but their effectiveness).

Viewing the record evidence as a whole in the light most favorable to Hi-Lite, there is no evidence on which Hi-Lite can satisfy its heavy burden to establish the element of secondary meaning.  As noted by the court in Habersham, "[t]hat [Hi-Lite] failed to produce survey or other quantitative evidence renders [Hi-Lite]'s uphill battle even steeper."  2011 WL 4005454, at *7 (granting defendant's motion for summary judgment on trade dress claim).  The evidence of intentional copying and Ohai's self-serving statements regarding the "extensive time and money" spent advertising Hi-Lite products are simply insufficient to demonstrate an established connection in the consumer's mind

between Hi-Lite and its claimed trade dress, especially when considered in light of the record evidence demonstrating that there is little to no source recognition on the part of individuals who sell and market Hi-Lite products on a day-to-day basis.  Cf. Bauer Lamp Co. v. Shaffer, 941 F.2d 1165, 1170 (11th Cir. 1991) ("Assuming that the relevant consumers were the wholesalers and buyers for the retail stores, many of these persons engaged in the lamp trade testified that they knew the lamps were produced by [the plaintiff].").

Accordingly, the Court finds that Hi-Lite has failed to demonstrate that its claimed trade dress has attained the element of secondary meaning, which is fatal to its trade dress infringement claims.  Because Hi-Lite has failed to establish this element, the Court need not address the Parties' contentions regarding the remaining elements.  Therefore, BLE and the Scotts' Motion for Partial Summary Judgment is **GRANTED** as to Counts IX, XVIII, and XIX of Defendants' Second Amended Counterclaims and Third-Party Complaint.

### b.    BLE's Patent Claims: Declaratory Judgment

Under Counts IX through XII of the Third Amended Complaint, BLE seeks declaratory judgment of non-infringement, invalidity, unenforceability, and non-interference with patents rights in relation to U.S. Patent No. 8,556,477 (the "'477 Patent"), which is owned by Defendant Ohai. (Dkt. 107)  In its Motion for Partial Summary Judgment, BLE contends that it is entitled to an entry of summary judgment in its favor on the declaratory judgment claims of invalidity and unenforceability of the '477 Patent (Counts IX and X).  In response and in their own Motion for Partial Summary Judgment, Defendants argue that the Court does not have subject matter jurisdiction to consider any

of BLE's patent claims because Defendant Ohai has repeatedly promised not to sue BLE for infringement of the '477 Patent.

A patentee's execution of a covenant not to sue an alleged patent infringer may divest the court of jurisdiction to consider claims regarding the patent because an active "case or controversy" between the parties no longer exists.  See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009).   However, "[w]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant."  Id.   "The case is moot if the court, considering the covenant's language and the plaintiff's anticipated future activities, is satisfied that it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to recur."  Already, LLC v. Nike, Inc., 133 S. Ct. 721, 729 (2013).

Defendant Ohai has submitted several covenants not to sue on the '477 Patent during the course of this litigation.  (Dkt. 22-1; Dkt. 64-1; Dkt. 172 at ¶¶ 30-31)  The Court held that the first two covenants not to sue executed by Ohai were not broad enough to unconditionally extinguish all past, present, and future patent infringement claims against BLE under the '477 Patent.  (Dkt. 49, 105)  Accordingly, Ohai submitted a third covenant in connection with Defendants' Motion for Partial Summary Judgment.  (Dkt. 172 at ¶¶ 30-31)

At a hearing, the Court heard argument from the Parties regarding whether the third covenant not to sue is broad enough to moot BLE's declaratory judgment claims relating to the '477 Patent.  During the course of the hearing the Parties agreed that if Defendants Ohai and Hi-Lite executed a broad covenant not to sue that included tapered

and non-tapered couplers[1] and also addressed an additional BLE product under development, such a covenant would be sufficient to moot BLE's declaratory judgment claims.  (Dkt. 300 at P. 36-39)  As a result, the Court directed the Parties to file their mutually-agreeable covenant with the Court within seven (7) days after the hearing.  (Dkt. 283 at ¶ 1)

Thereafter, the Parties jointly filed a covenant not to sue executed by both Ohai and Hi-Lite.  (Dkt. 293)  The covenant includes the language agreed upon at the hearing.  (Id.)  However, the covenant also contains a "carve-out" provision, which states:

> This covenant shall not extend to any related patents or patent applications, including without limitation, continuations, continuations-in-part, or divisions of the '477 Patent (hereinafter "Related Patents").  This covenant shall not preclude the Related Patents from being asserted against [BLE] based upon the extended couplers identified herein.

(Id. at P. 3, ¶ 4)  The Parties informed the Court that BLE does not agree to the inclusion of the carve-out provision in the covenant.  (Id. at P. 2, ¶ 4)

Following the joint filing of the covenant, BLE and the Scotts filed a motion seeking leave to amend their Third Amended Complaint to add U.S. Patent No. 9,234,651 ("the '651 Patent") to their declaratory judgment claims.  (Dkt. 309)  In that motion, BLE and the Scotts explained that the '651 Patent issued on January 12, 2016 out of U.S. Patent Application No. 14/054,535 ("the '535 Application").  The '651 Patent is a continuation-in-part of the '477 Patent.  Moreover, the cease and desist letter sent to BLE and Donna Scott on behalf of Defendants Hi-Lite and Ohai at the beginning of this litigation expressly accused BLE of infringing the '477 Patent, but also stated that upon the issuance of the '535 Application, BLE would also infringe the resulting patent, which has since been

---

[1] In this context, "coupler" refers to a part of a lamp or light fixture.  (Dkt. 300 at P. 19)  Specifically, the '477 Patent covers an apparatus that connects a light fixture to a shade.  (Dkt. 198-2)

issued as the '651 Patent.  Therefore, BLE and the Scotts argued in their motion to amend that the controversy between the Parties could not be fully resolved unless the '651 Patent were included in the litigation.

Shortly thereafter, Ohai filed a Notice informing the Court that he had filed a request for supplemental examination of the '651 Patent with the United States Patent and Trademark Office ("USPTO").  (Dkt. 341)  Filing a request for supplemental examination allows a patent owner to have the USPTO consider, reconsider, or correct information that the patent owner believes is relevant to the patent.  35 U.S.C. § 257(a).  Through his request, Ohai asks the USPTO to consider the same allegations relating to an invalidating prior sale and use of the invention embodying the '477 Patent raised by BLE in this case because, according the BLE, this same prior sale and use would also invalidate the '651 Patent.

After receiving supplemental briefing from the Parties on the issue of whether Ohai's request for supplemental examination of the '651 Patent would affect BLE and the Scotts' pending motion for leave to amend to add the '651 Patent to this case (Dkt. 346, 347), the Court informed the Parties that it was inclined to stay the entire case pending the resolution of the supplemental examination request and directed the Parties to respond as to whether they would object to such a stay.  (Dkt. 355)  In response, BLE and the Scotts withdrew their previously filed motion to amend and requested that the Court move forward with the case because the '651 Patent is no longer at issue.  (Dkt. 356)  Notwithstanding this fact, Defendants contend that the Court should still stay the case pending the resolution of the supplemental examination because the USPTO is

currently considering the same issue of invalidity in relation to the '651 Patent that is currently before this Court in relation to the '477 Patent.  (Dkt. 357)

Upon consideration and review, the Court finds that the most recent covenant not to sue executed by Defendants Hi-Lite and Ohai is sufficiently broad to extinguish the threat of all past, present, and future patent infringement claims against BLE under the '477 Patent.  The Court's finding in this regard is not altered by the fact that the covenant contains a carve-out provision for related patents because no related patents are actually at issue in this case.  See, e.g., Crossbow Tech., Inc. v. YH Tech., 531 F. Supp. 2d 1117, 1123-24 (N.D. Cal. 2007) (finding that broad covenant not to sue on only patent-in-suit was sufficient to moot the controversy between the parties notwithstanding the fact that the patentee could still sue the alleged infringer under a related patent because related patents were not at issue in the case).

Accordingly, **Counts IX through XII** of the Third Amended Complaint are **DISMISSED as moot**.  The Court will not stay the case pending the USPTO's resolution of Ohai's supplemental examination request on the '651 Patent because the related issue of validity of the '477 Patent is no longer before the Court.

### c.       Hi-Lite's Copyright Infringement Claims

In Counts VI-VIII, XII-XIV, and XV-XVII of the Second Amended Counterclaims and Third-Party Complaint, Defendant Hi-Lite asserts claims for copyright infringement against BLE and claims for contributory and vicarious copyright infringement against the Scotts.  (Dkt. 60)  In the Motion, Hi-Lite contends that it is entitled to summary judgment in its favor on Counts VI-VIII, the claims for direct copyright infringement against BLE, because it contends no disputed issues of material fact exist regarding Hi-Lite's

ownership of the copyrighted works at issue or BLE's copying of the same.  (Dkt. 167)  However, in their Motion for Partial Summary Judgment, BLE and the Scotts contend that they are entitled to entry of summary judgment in their favor on the direct, contributory, and vicarious copyrights claims based on the affirmative defenses of implied license, estoppel, and statute of limitations.

BLE and the Scotts previously filed a motion seeking leave to amend their answer to Defendants' Second Amended Counterclaims and Third-Party Complaint to add the affirmative defense of implied license.  (Dkt. 254)  At the hearing held on February 23, 2016, the Court granted the motion and also allowed the Parties to engage in limited additional discovery on the issue of the implied license defense.  (Dkt. 283)  Neither Party has sought leave to file supplemental briefing on the implied license defense.  However, a recent filing with the Court indicates that the Parties are still in the process of attempting to resolve certain discovery disputes related to the implied license discovery.  (Dkt. 354)

Therefore, the Court **DEFERS** ruling on Hi-Lite's copyright infringement claims until the Parties have a chance to submit supplemental briefing on the implied license defense, if necessary.  A supplemental briefing schedule shall be set by separate Order.

### d. Hi-Lite's Lanham Act Claims

Under Counts II-V of the of the Second Amended Counterclaims and Third-Party Complaint, Defendant Hi-Lite asserts claims against BLE for common law trademark infringement, unfair competition, reverse passing off, and false advertising.  (Dkt. 60)  In BLE and the Scotts' Motion for Partial Summary Judgment, BLE contends that it is entitled to an entry of summary judgment in its favor because Hi-Lite's claims are barred by the Supreme Court's decision in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S.

23 (2003).  BLE asserts that Hi-Lite's allegations are that BLE used Hi-Lite's photographs and parts numbers to sell BLE products on its own website.  BLE contends that the claims fail as a matter of law because they are merely "camouflaged" copyright claims that may not be asserted under the Lanham Act.

Section 43(a)(1) of the Lanham Act reads as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  "Claims falling under Subsection (A) are [generally] known as false designation of origin, unfair competition, or false association claims, while claims falling under Subsection (B) are [generally] known as false advertising claims." Quadratec, Inc. v. Turn 5, Inc., No. CIV.A. 13-6384, 2015 WL 4876314, at *8 (E.D. Pa. Aug. 13, 2015).

Under Count IV of Defendant's Second Amended Counterclaims and Third-Party Complaint, Hi-Lite alleges that it is asserting a claim for "reverse passing off."  (Dkt. 60 at P. 29)  Reverse passing off is a type of false designation of origin claim brought pursuant to 15 U.S.C. § 1125(a)(1)(A).  See, e.g., Monilisa Collection, Inc. v. Clarke Prod., Inc., No.

6:11-CV-360-ORL-31, 2011 WL 2893630, at *2-3 (M.D. Fla. July 20, 2011).  Reverse passing off occurs when "[a] producer misrepresents someone else's goods or services as his own."  Dastar, 539 U.S. at 28, n. 1.  Conversely, "'passing off' or 'palming off,' . . . 'occurs when a producer misrepresents his own goods or services as someone else's.'"  Id.  Although Hi-Lite alleges that BLE has committed "reverse passing off" by using Hi-Lite's images and parts numbers to sell BLE products, the Courts find that the claim is more properly considered a claim for "passing off" because, according to Hi-Lite, BLE is using the images and parts numbers of Hi-Lite's products to sell BLE products—that is, passing off its (BLE's) products as Hi-Lite's products.

In *Dastar*, the United States Supreme Court held that with respect to false designation of origin claims, the term "origin" refers to "the producer of the tangible product sold in the marketplace," and not to "the person or entity that originated the ideas or communications that 'goods' embody or contain."  Dastar, 539 U.S. at 32.  Based on the Supreme Court's holding in *Dastar*, several courts have that a claim for false designation of origin is not viable where a defendant copies a plaintiff's product designs and then sells the products it produces as its own.  See, e.g., Kehoe Component Sales Inc. v. Best Lighting Products, Inc., 796 F.3d 576, 586-89 (6th Cir. 2015) (lighting manufacturer that made and sold cloned copies of another's light fixtures under its own mark did not falsely designate the origin of the goods); General Universal Systems, Inc. v. Lee, 379 F.3d 131 (5th Cir. 2004) (software manufacturer that copied plaintiff's software and then marketed the copied software as its own could not be liable for false designation of origin); Monilisa, 2011 WL 2893630, at *2 ("There can be no reverse passing off claim if the Defendants are the actual manufacturers of the product being sold.").  These cases

make clear that Hi-Lite's false designation of origin claim cannot be based on BLE's copying of its designs.  Likely in recognition of this fact, Hi-Lite instead contends that its Lanham Act claims against BLE are viable because they are premised on BLE's use of Hi-Lite's product images and parts numbers.

The Supreme Court's interpretation of "origin" in *Dastar* was intended to distinguish Copyright Act claims from Lanham Act claims.  The Court stated that Lanham Act claims "were not designed to protect originality or creativity" because those rights are protected by the Copyright Act.  Id. at 37.  Permitting Lanham Act claims to cover things other than tangible goods "would be akin to finding that [Section 1125(a)(1)(A)] created a species of perpetual patent and copyright, which Congress may not do."  Id.

Other courts have applied *Dastar's* reasoning to find that Lanham Act claims involving the unaccredited use of another's photographs in the connection with the sale of goods or services must be pursued as copyright claims.  See, e.g., Photographic Illustrators Co. v. Orgill, Inc., 118 F. Supp. 3d 398, 410 (D. Mass. 2015) (no false designation of origin claim where distributor of light bulbs used copyrighted photo of product on eBay sales page without attribution to copyright owner; such claim was cognizable under the Copyright Act); Quadratec, Inc. v. Turn 5, Inc., No. CIV.A. 13-6384, 2015 WL 4876314, at *8 (E.D. Pa. Aug. 13, 2015) (dismissing claim for false designation of origin where defendant used plaintiff's marketing materials, including photographs, to sell the same products in direct competition with plaintiff; holding that "Defendant's rights are protected under the Copyright Act"); Avalos v. IAC/Interactivecorp., No. 13–CV–8351 (JMF), 2014 WL 5493242, at *3 (S.D.N.Y. Oct. 30, 2014) (no false designation of origin claim where dating websites allegedly used photographs of a model to create fake profiles

without consent; plaintiff's claim "attempts to achieve precisely what *Dastar* prohibits: an end run around copyright law").

Upon review, the Court finds that Hi-Lite's false designation of origin claim is directed to the same conduct that underlies its copyright infringement claims, namely, that BLE used images of Hi-Lite's products on its website and in advertisement in connection with the sale of its own similar products.  The Court finds that Hi-Lite's interest in the unauthorized use of its images, if protectable at all, is protectable under the Copyright Act.

Moreover, the only way that Hi-Lite's claim for the unauthorized use of its images by BLE *might* be cognizable as a false designation of origin claim is if the images themselves could constitute "source-identifying mark[s]" of Hi-Lite's products.  See Dastar, 539 U.S. at 34 (the Lanham Act "prevent[s] competitors from copying 'a source-identifying mark'").  Here, the photographs at issue merely contain depictions of Hi-Lite's light fixtures.  Thus, the photographs could only constitute source-identifying marks if the Court found that Hi-Lite had protectable trade dress rights in the design and appearance of the light fixtures.  See, e.g., Williams v. Cavalli, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *4–5 (C.D. Cal. Feb. 12, 2015) (denying motion to dismiss Lanham Act claim for "passing off" where defendant clothing company reproduced signature elements from a mural that identified plaintiff graffiti artists as the creators of the mural on its clothing line because the imagery constituted source-identifying trade dress akin to a logo).  As noted above, Hi-Lite has failed to establish that its lighting designs have achieved the secondary meaning necessary to afford its designs trade dress protection as a source-identifying mark.  Furthermore, Hi-Lite has likewise failed to submit any evidence from which the

Court could conclude that its generic parts numbers have acquired secondary meaning necessary to give rise to protectable trademark or trade dress rights.  Accordingly, the Court finds that Hi-Lite's claim for false designation of origin under 15 U.S.C. § 1125(a)(1)(A), which is based on BLE's unauthorized use of Hi-Lite's photographs, depictions, or parts numbers, fails as a matter of law.

Under Count V of Defendant's Second Amended Counterclaims and Third-Party Complaint, Hi-Lite asserts a claim for "false advertising" under 15 U.S.C. § 1125(a)(1)(B). That subsection creates liability for any commercial advertising which "misrepresents the nature, characteristics, qualities, or geographic origin" of goods.  Similar to its false designation of origin claim, Hi-Lite alleges under this claim that BLE uses depictions, photographs, and parts numbers of Hi-Lite products in its online advertisements, leading consumers to falsely believe that they are purchasing a Hi-Lite product when they will actually receive a BLE product.  (Dkt. 60 at ¶ 113)  To the extent that this claim is merely a restatement of the false designation of origin claim asserted under Count IV, the Court finds that this claim also fails.  See Monsanto Co. v. Syngenta Seeds, Inc., 443 F. Supp. 2d 648, 652–53 (D. Del. 2006) ("Under Dastar, a false advertising claim that merely rephrases a [false designation of origin] claim is barred."); Agence France Presse v. Morel, 769 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) ("The import of Dastar that an author's recourse for unauthorized use is in copyright cannot be avoided by shoe-horning a claim into section 43(a)(1)(B) rather than 43(a)(1)(A).  If authorship were a 'characteristic' or 'quality' of a work, then the very claim Dastar rejected under § 43(a)(1)(A) would have been unavailable under § 43(a)(1)(B)." (citation omitted)).

In Defendants' Motion for Partial Summary Judgment, Defendant Hi-Lite has also sought summary disposition of its false advertising claim. To succeed on a false advertising claim under 15 U.S.C. § 1125(a)(1)(B), a plaintiff must prove: "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been-or is likely to be-injured as a result of the false advertising." Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004); Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002). The Court finds that even if Hi-Lite's false advertising claim is not barred by *Dastar*, Hi-Lite is not entitled to an entry of summary judgment in its favor because it has failed to establish the claim on the merits.

To support its claim of false advertising, Hi-Lite relies on the evidence of a single transaction. Specifically, Hi-Lite directed William Sanders, one of its own sales representatives, to access BLE's website and purchase BLE products. Hi-Lite alleges that because BLE used Hi-Lite photographs and parts numbers in connection with these products, BLE was falsely representing the origin of the products that the consumer would receive. However, the Court finds that this claim fails on the merits because Hi-Lite has failed to establish that this alleged deception had a material effect on consumers' purchasing decisions. "In order to prove deception, consumer survey research is often 'key' evidence but . . . if full-blown consumer surveys or market research are not available, the plaintiff still must provide some sort of expert testimony or similar evidence." Suntree Techs., Inc. v. EcoSense Int'l, Inc., 802 F. Supp. 2d 1273, 1288 (M.D. Fla. 2011), aff'd,

693 F.3d 1338 (11th Cir. 2012) (citing Hickson, 357 F.3d 1256; Johnson, 299 F.3d at 1247) (internal quotations marks omitted).  Here, Hi-Lite has provided no survey evidence or expert testimony regarding consumer deception.   The only evidence Hi-Lite has provided is the deposition testimony of Michael Sanders regarding his purchase of BLE light fixtures at the direction of Hi-Lite.  (Dkt. 230-1 at P. 3)  The Court finds that this single transaction orchestrated on behalf of Hi-Lite cannot constitute evidence of material consumer deception.  Mr. Sanders was not acting as a consumer but rather as an agent on behalf of Hi-Lite.  Therefore, the representations made by BLE could not have made a difference in his purchasing decision.  Moreover, Mr. Sanders is not an expert and his sole testimony as to any impression drawn from BLE's use of the photographs and parts numbers is insufficient on its own to establish deception.  See Suntree, 802 F. Supp. 2d at 1288 (M.D. Fla. 2011) (finding that singular statement by non-expert as to impression of misrepresentation is not sufficient to establish deception).  Accordingly, the Court finds that Hi-Lite's claim for false advertising also fails as a matter of law.

In its Motion for Partial Summary Judgment, BLE also asserts that Counts II and III of Defendants' Second Amended Counterclaims and Third-Party Complaint fail on the basis of *Dastar*.  However, Count II is a claim for common law trademark infringement under Florida law and is premised on BLE's alleged use of BARN LIGHT ORIGINALS word mark and Hi-Lite parts numbers.  (Dkt. 60 at P. 27)  Count III is a claim for unfair competition under section 15 U.S.C. § 1125(a)(1)(A) and is premised on BLE's alleged use of the BARN LIGHT ORIGINALS word mark.  (Dkt. 60 at P. 28)  BLE has made no arguments on summary judgment in connection with the alleged use of the BARN LIGHT ORIGINALS word mark.  Accordingly, the Court finds that Counts II & III should proceed

as they relate to BLE's alleged use of the BARN LIGHT ORIGINALS word mark. However, as noted above, Hi-Lite has failed to present the Court with any evidence from which the Court could conclude that Hi-Lite has protectable trademark rights in its generic parts numbers.  Accordingly, BLE's Motion for Summary Judgment is due to be granted as to Count II, only to the extent that the claim relies on infringement of parts numbers.

In accordance with the forgoing, the Court hereby **GRANTS in part** and **DENIES in part** BLE and the Scotts' Motion for Partial Summary.  The Motion is **GRANTED** as to **Count II** (to the limited extent that the claim relies on infringement of parts numbers) and as to **Count IV** & **Count V**.  The Motion is **DENIED** as to **Count III**.  Defendants' Motion for Partial Summary Judgment is **DENIED** as to **Count V**.

## IV.  CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Hi-Lite and Ohai's Motion for Partial Summary Judgment (Dkt. 167) is **GRANTED in part** and **DENIED in part**:

    a. The Motion is **GRANTED** as to **Counts IX through XII** (declaratory judgment claims related to '477 Patent) of the Third Amended Complaint, insofar as those claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

    b. The Motion is **DENIED** as to **Count V** (false advertising) of Defendants' Second Amended Counterclaims and Third-Party Complaint.

2. BLE and the Scotts' Motion for Partial Summary Judgment (Dkt. 198) is **GRANTED in part** and **DENIED in part**:

a. The Motion is **GRANTED** as to **Count II** (common law trademark infringement), to the limited extent that the claim relies on infringement of parts numbers, **Count IV** (reverse passing off or passing off), **Count V** (false advertising), **Count IX** (trade dress infringement), **Count XVIII** (contributory trade dress infringement), and **Count XIX** (vicarious trade dress infringement) of Defendants' Second Amended Counterclaims and Third-Party Complaint.

b. The Motion is **DENIED** as to **Count III** (unfair competition) of Defendants' Second Amended Counterclaims and Third-Party Complaint.

c. The Motion is **DENIED as moot** as to **Counts IX** and **X** (declaratory judgment claims related to '477 Patent) of the Third Amended Complaint because those claims have been **DISMISSED without prejudice** for lack of subject matter jurisdiction.

3. Ruling on the copyright claims asserted by Hi-Lite in Second Amended Counterclaims and Third-Party Complaint is hereby **DEFERRED** until the Parties have a chance to submit supplemental briefing on the implied license defense, if necessary.

4. The Court declines to stay this case during the pendency of Defendant Ohai's request for supplemental examination of the '651 Patent.

5. BLE and the Scotts' Motion for Leave to Request Status Conference (Dkt. 353) is **DENIED without prejudice**. The Parties are directed, within **fourteen (14) days** of the date of this Order to meet and confer and file an updated Case

Management Report with proposed remaining case deadlines.  The Parties shall include a proposed briefing schedule for supplemental briefing on Hi-Lite's copyright claims, if the Parties intend to submit the same.   Thereafter, the Court will reset the remaining case deadlines by separate Order.

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of September, 2016.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person