UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY,
LLC, a Florida limited liability company,

      Plaintiff,

v.                             CASE NO: 8:14-cv-01955-MSS-AEP

BARNLIGHT ORIGINALS, INC., a
Nevada Corporation; HI-LITE
MANUFACTURING COMPANY, INC., a
California corporation; and JEFFREY L.
OHAI, an individual California Resident,

      Defendants.

_____/

## DEFENDANTS' MOTION TO COMPEL, OR IN THE ALTERNATIVE, MOTION FOR SANCTIONS DUE TO SPOLIATION AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to the Court's Order of November 28, 2016 [Dkt. 370], Defendants Barnlight Originals, Inc. and Hi-Lite Manufacturing Co., Inc. (collectively "Defendants") hereby file this Motion to Compel and for Sanctions. In support of this Motion, Defendants state as follows.

### I.   SUMMARY

Plaintiff Barn Light Electric Company, LLC ("BLE") has repeatedly failed to comply with its discovery obligations in this case. In addition to withholding relevant documents in direct violation of this Court's Order of March 11, 2016 [Dkt. 303], it has also engaged in an apparent effort to delete thousands of highly relevant emails and documents responsive to many of Defendants' discovery requests. A recently obtained email suggests that this deletion occurred more than a year into this litigation and *after* Defendants served its requests for production. Further, BLE filed a Notice of Compliance on August 8, 2016 [Dkt. 352] that

1

wrongly affirmed that it was in full compliance with its discovery obligations. BLE then refused to withdraw this request after Defendants identified serious deficiencies in BLE's production. In fact, BLE produced additional documents *after* filing its Notice of Compliance, yet still chose to let this Court believe that discovery in this matter was complete.

BLE's discovery failures have resulted in nothing less than extreme prejudice to Defendants. Shortly after BLE filed of its improper Notice of Compliance, the Court entered its Order on the parties' respective motions for summary judgment. [Dkt. 360.] Thus, while discovery was still proceeding, many of Defendants' counterclaims were dismissed. BLE's mass deletion of documents has greatly hindered Defendants' ability to prove its remaining counterclaims, and has also prevented Defendants from putting forth a complete defense to BLE's underlying trademark claims. The only way to remedy the prejudice caused by BLE's misconduct is to dismiss its remaining claims with prejudice.

## II.   BACKGROUND

Defendants respectfully seek BLE's compliance with this Court's Order of March 11, 2016. [Dkt. 303.] The March 11 Order relates to Defendants' Fourth Request for Production ("RFP"), which were propounded approximately a year and a half ago on July 29, 2015. The Fourth RFP sought, *inter alia*, all of Barn Light Electric's Purchase Orders from 2008 to date (Request No. 118), all documents relating to Michael Schultz (Request No. 122), documents relating to renderings of Hi-Lite products (Request No. 191), and all documents relating to Bay Area Innovations ("BAI"), a third-party company hired to reverse engineer Hi-Lite's products (Request No. 193).

Pursuant to M.D.L.R. 3.04(a), these requests and the corresponding objections are quoted below:

2

## Counterclaim Plaintiffs' Request for Production No. 118

All of Barn Light Electric's purchase orders for Products sold from 2008 to date.

## Counterclaim Defendants' Response to Request for Production No. 118

Barn Light Electric and the Scotts object to Request No. 118 to the extent it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Barn Light Electric and the Scotts further object to the definition of the term "Barn Light Electric" to the extent that Counterclaim Plaintiffs seek to impose discovery obligations on any individual or entity other than Barn Light Electric and the Scotts, and also to the extent such definitions encompass persons and entities not in the employment of, or otherwise under the control of, Barn Light Electric and the Scotts.[1] Barn Light Electric and the Scotts further object on the basis that the term "Products" is overly broad in that the terms "light fixtures" and "light fixture components" are not defined and are therefore vague and ambiguous. Furthermore, Barn Light Electric and the Scotts object to this Request as overly broad in that it is not limited to activities within the United States. Barn Light Electric and the Scotts further objects to the extent the Request seeks the identity of the purchaser of the Barn Light Electric's products, which constitutes a trade secret and is not relevant to the subject matter of this action. Subject to these and the General Objections, and without waiver thereof, Barn Light Electric and the Scotts will produce responsive, non-privileged documents in their possession, custody, or control, to the extent any exist.

## Counterclaim Plaintiffs' Request for Production No. 122

All documents relating to former Barn Light Electric employee Michael Schultz.

## Counterclaim Defendants' Response to Request for Production No. 122

[Same response as No. 118 with the following objection:]

Barn Light Electric and the Scotts also objects to this Request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence as it seeks "[a]ll documents relating to former Barn Light Electric employee Michael Schultz" without any attempt to limit the scope of this Request to the subject matter of this action.

## Counterclaim Plaintiffs' Request for Production No. 191

All Documents showing any renderings of a Hi-Lite product You prepared or had prepared on Your behalf.

---

[1] Counterclaim Defendants responded to each of the quoted requests from Counterclaim Plaintiffs' Fourth Request for Production with the same language and some occasional additions. To conserve space, Counterclaim Plaintiffs have stated [Same response as No. 118] where Counterclaim Defendants used the same response as they used for Request No. 118.

**Counterclaim Defendants' Response to Request for Production No. 191**

[Same response as No. 118 with the following objection:]

Barn Light Electric and the Scotts further objects to the definition of the terms "You" and "Your" to the extent that Counterclaim Plaintiffs seek to impose discovery obligations on any individual or entity other than Barn Light Electric and the Scotts, and also to the extent such definitions encompass persons and entities not in the employment of, or otherwise under the control of, Barn Light Electric and the Scotts. Barn Light Electric and the Scotts further object to the term "renderings" as vague and ambiguous as the term is not defined and not limited in scope.

**Counterclaim Plaintiffs' Request for Production No. 193**

All Documents relating to Bay Area Innovations.

**Counterclaim Defendants' Response to Request for Production No. 193**

[Same response as No. 118 with the following objection:]

Barn Light Electric and the Scotts object to the term "Bay Area Innovations" as vague and ambiguous as it is undefined and indeterminable in scope. Barn Light Electric and the Scotts further object to the term "relating to" as vague and ambiguous as the term is not defined and not limited in scope. Further, the Request is overbroad and unduly burdensome as it uses the term "relating to" in connection with "Bay Area Innovations." Barn Light Electric further objects to this Request as it is not limited in temporal scope.

Despite being ordered to do so months ago, BLE has neither produced, nor offered a satisfactory explanation for the absence of purchase orders identified on the Product Sold Report. BLE has likewise offered no reasonable explanation for the apparent deletion of thousands of relevant emails relating to BAI and the rendering of Hi-Lite products.

## III.   BLE FAILED TO PRODUCE PURCHASE ORDERS IN DEFIANCE OF THE MARCH 11 ORDER.

### a.   BLE's Prior Promises of Compliance Have Proven Wrong.

In the face of two motions to compel and an Order from this Court, BLE has repeatedly asserted that all relevant purchase orders have been produced. Time after time, BLE's

assurances have proven untrue.   Defendants seek a recovery of fees and costs under Fed. R. Civ. P. 37(b)(2)(c) in view of BLE's non-compliance.

"When a party fails to obey a discovery order, the Court may issue 'further just orders' including directing that designated facts be taken as established for purposes of the action, prohibiting the disobedient party from supporting or opposing designated claims or defenses or introducing designated matters into evidence, striking pleadings, staying proceedings until the order is obeyed, dismissing the case or entering default judgment against the noncomplying party, and treating the party's failure to obey as contempt." *Pharis v. Kirkman Mgmt., LLC*, 2013 WL 6001088, at *2 (M.D. Fla. Nov. 12, 2013) (citing Fed. R. Civ. P. 37(b)(2)(A)).   Further, the court must order the disobedient party or the attorney advising that party or both to pay reasonable expenses, including attorneys' fees, caused by the failure unless substantially justified. *Id.* (citing Fed. R. Civ. P. 37(b)(2)(C)).

Defendants first moved to compel the production of BLE's purchase orders on October 26, 2015.  [Dkt. 133.]  In addition to compliance, that motion sought attorney's fees and costs under Fed. R. Civ. P. 37(a)(5)(A).   In response to that motion, BLE flatly asserted that all purchase orders had been produced, stating that "Plaintiff completed its production of all existing responsive, nonprivileged documents in its possession, custody or control, and thereby met its production obligations." [Dkt. 146 at Pgs. 1-2.] BLE went on to accuse Defendants of "litigation misconduct" for advancing "unfounded allegations that Plaintiff has not produced all documents responsive to the Request." [*See id.* at Pg. 3.]   During the hearing on Defendants' motion, held January 12, 2016, BLE's counsel insisted that Defendants' request was frivolous because "the purchase orders, whenever they indicate in any way that Hi-Lite is related, they have been produced." [Dkt. 235, Pg. 23.]  Thankfully, this Court decided to "test" BLE's compliance.

The Court ordered BLE to produce "a sampling of one hundred (100) purchase orders." [*See* Dkt. 236 at 1(a).] The objective of this test was to determine how many purchase orders would reflect information not found on a sales summary that allegedly captured all of the information contained on the purchase orders. This sales summary is also called the Product Sold Report. Of the 98 purchase orders that BLE eventually produced, nearly all in some way referenced Hi-Lite, one of its products, or otherwise contained information not found in the Product Sold Report, flatly contradicting BLE's assertion that the production was complete.

In response, Defendants were forced to file a renewed motion to compel which again sought the production of all relevant purchase orders. [Dkt. 260.] This motion also renewed Defendants' request for attorney's fees and costs under Rule 37(a)(5)(A). BLE's opposition brief was due on March 7, 2016. On that same day, BLE produced an *additional* 126 purchase orders that it had "inadvertently withheld." [Dkt. 296 at Pg. 9.] Again, this supplemental production was totally inconsistent with BLE's prior assertion that all relevant purchase orders had been produced. Thereafter, on March 11, 2016, the Court ordered the production of *all* purchase orders referenced on BLE's Product Sold Report relating to a sale of a Hi-Lite product. [*See* Dkt. 303 at 1(c).]

BLE repeatedly sought additional time in which to comply with the March 11 Order. Defendants agreed to each of these requests, totaling over 100 days, with the hope that such time was being used to diligently verify that all relevant purchase orders were being produced. BLE eventually agreed to produce the purchase orders no later than July 14, 2016. Hundreds of additional and highly relevant purchase orders were produced on that date. On August 8, 2016, BLE then certified to this Court that it was in "compliance with the Court's Order of March 11, 2016 [Dkt. 303]". [Dkt. 352.] But as with its prior representations, this too proved untrue. On

September 16, 2016, mere weeks after BLE's certification of compliance, the undersigned identified approximately 80 purchase orders that were identified on the Product Sold Report that had not been produced. *See* Ex. A, Ltr. Colitz to Fernandez of 09/16/16. The letter of September 16 also identified other serious deficiencies in BLE's production, including an indication that emails relating to several highly relevant custodian were deleted. *See id.* In response, BLE produced yet another batch of "inadvertently omitted" purchase orders on September 26, 2016. *See* Ex. B, Email from Fernandez to Colitz of 09/26/16. Many of these purchase orders directly reference Hi-Lite product numbers and were responsive to: Defendants' RFP No. 118 from July 29, 2015; Defendants' Motion to Compel of October 26, 2015 [Dkt 133]; Defendants' Renewed Motion to Compel of February 17, 2016 [Dkt 260]; and this Court's March 11 Order [Dkt. 303]. In light of this belated production, Defendants renew their request for an award of fees and costs pursuant to Fed. R. Civ. P. 37(a)(5)(A) and 37(b)(2)(A).

### b. To This Day, Additional Purchase Orders Are Missing.

More troubling is the fact that several of the purchase orders in the letter of September 26 have yet to be produced. For example, BLE has failed to produce, at least, purchase order numbers 500519, 500523, 600163, 600169, and 600356, each of which corresponds to the sale of a product having an H- part number based on their respective entries on the Product Sold Report. During the meet and confer, counsel for BLE offered two possibilities for any missing purchase orders. First, counsel suggested that the purchase orders listed on the Product Sold Report did not always correspond with the number on the purchase order actually generated. Second, for at least one purchase order, counsel suggested that they were investigating the possibility it was never actually generated. The first point flatly contradicts BLE's prior representations that the Product Sold Report is an adequate substitution for the corresponding purchase orders. [*See,*

*e.g.*, Dkt. 235 at Pgs. 19-20.]   The second point, of course, cannot possibly be independently evaluated by Defendants without the production of all BLE's purchase orders.

In view of BLE's serial non-compliance, and the assertion that certain purchase orders may be missing, Defendants respectfully request entry of an Order compelling BLE to fully comply with RFP No. 118.  Namely, Defendants now seek the production of all BLE's purchase orders from 2008 to date for all light fixtures and light fixture components.

## IV.   BARN LIGHT ELECTRIC FAILED TO SEARCH "AGREED UPON SEARCH TERMS" AS REQUIRED BY THE ORDER OF MARCH 11.

The Court also directed the parties to use "agreed upon search terms" for carrying out searches relating to additional custodians' emails and BLE's SolidWorks server (the "Vault"). [Dkt. 303.]  Following the Court's Order, the undersigned reached out to BLE's counsel with a proposed set of search terms for both the emails and Vault.  A total of 167 terms were chosen for the emails and 79 terms were used for the vault.  *See* Ex. C, Ltr. Colitz to Fernandez of 03/22/16. Counsel for BLE responded by rejecting the proposed terms, and instead proposed a much smaller list of 18 terms for the emails and 12 terms for the Vault.  *See* Ex. D, Email Fernandez to Colitz of 03/23/16.  The undersigned thereafter suggested a compromise pursuant to which the parties would simply agree on the total number of search terms to be employed with Defendants reserving the ability to select the specific terms to be employed.  *See* Ex. E, Ltr. Colitz to Fernandez of 03/24/16.  This proposal was also rejected and the parties ultimately participated in a telephonic hearing on March 31, 2016.  [Dkt. 316.]  The Court ultimately permitted BLE to select its own search terms and custodians but confirmed that BLE was under an obligation to carry out the search with respect to all of Defendants' outstanding discovery requests.  BLE was nonetheless urged to search for specific custodians due to their undeniable relevance to the case and to employ the proffered search terms.  *See* Ex. F, Ltr. Colitz to Fernandez 04/05/16.

Regarding the Vault, Defendants asked BLE to search specific terms derived from the "Top 100" report referenced in the hearing of March 10, 2016. This report, produced by BAI, is at least a partial identification of the Hi-Lite products being reverse engineered by BAI for the benefit of BLE. A copy of the "Top 100" is attached as Exhibit G. Notably, however, BLE has confirmed that its search of the vault was limited to just 12 terms. *See* Ex. B. Even a cursory review of the "Top 100", however, reveals that this limited number of search terms is woefully insufficient. BLE has also not revealed what terms were used to search for relevant emails, which is itself a violation of the March 11 Order.

Accordingly, Defendants respectfully request that (1) BLE be compelled to permit a third-party vendor to recover the entire contents of the Vault so that Defendants may have an unfettered opportunity to review its contents and assess for itself the relevance of any documents contained therein. Defendants also ask this Court to (2) compel BLE to disclose what terms were employed in connection with its email search. Defendants further request (3) a recovery of its fees and costs associated with having to repeatedly seek this Court's assistance in order to force BLE to comply with its most basic discovery obligations in this case.

## V. BARN LIGHT ELECTRIC'S PRODUCTION OF DOCUMENTS FROM ADDITIONAL CUSTODIANS REVEALS AN EFFORT TO DELETE DOCUMENTS RELATING TO BAY AREA INNOVATIONS.

As described above, the March 11 Order compelled BLE to produce emails from additional custodians. Prior to the Court's Order directing the search of additional custodians, BLE admitted to having searched for responsive documents from only four (4) custodians. Defendants' review of BLE's production, however, indicated that at least thirty (30) individuals should have been searched. The undersigned sent a letter to opposing counsel identifying these custodians, and BLE's counsel subsequently confirmed on September 26, 2016 that all the

custodians had been searched.  *See* Ex. B.  Defendants' review of BLE's July 14, 2016 production of documents in response to the Court's March 11 Order reveals several serious deficiencies, including thousands of missing emails and an apparent effort to delete documents directly responsive to Defendants' requests for production.  In some instances, this deletion of documents appears to have occurred *after* Defendants served their request for production.

### a.  Barn Light Electric is Guilty of Spoliation.

"Spoliation is the intentional destruction, concealment, mutilation, or material alteration of evidence." *Selectica, Inc. v. Novatus, Inc.*, 2015 WL 1125051, at \*3 (M.D. Fla. Mar. 12, 2015); *see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003).  Since spoliation is an evidentiary matter it is governed by federal law.  *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005), *cert. denied*, 548 U.S. 903 (2006).  Spoliation is established by showing "(1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Floeter v. City of Orlando*, 2007 WL 486633, at \*5 (M.D. Fla. 2007).

### i.  Barn Light Electric Deleted Evidence In Its Possession.

A review of BLE's production reveals a concerted effort across multiple document custodians to destroy emails relating to BAI.  On July 29, 2015, Defendants issued a straightforward discovery request to BLE seeking all documents relating to BAI.  To date, BLE has produced a grand total of nine (9) emails relating to BAI.  Defendants also issued a third-party subpoena to BAI seeking largely the same documents.  In response, Defendants received over five thousand (5,000) documents, including thousands of emails between BAI and employees at BLE.

10

An analysis of the entirety of BLE's production, and a subsequent comparison to BAI's production, suggests an effort among multiple custodians, or an effort by someone with access to the email accounts of all BLE employees, to delete documents relating to BAI.  Of the BLE employees identified by Defendants as having information relevant to the numerous claims in this case, at least thirteen (13) can be found on the emails produced by BAI.  These BLE employees include, at least, counter-defendant Bryan Scott (207)[2]; counter-defendant Donna Scott (825); Ashley Scott (40); Christopher Stewart (267); Katie Schilling (89); Holly Ficker (55); Tracey McCain (185); Jim Turner (14); Jesse-Lee Stringer (9); Lauren Mitchell (64); Tyler Schilling (100); Johnny Bragg (75); and Scott Dodson (382).  Thus, despite at one time having been in possession of at least about two thousand three hundred (2,300) emails relating to BAI across at least thirteen (13) custodians, BLE produced a total of about nine (9) emails in response to Request for Production No. 193.  Importantly, none of the explanations proffered by BLE to date regarding the deletion of these BAI documents are consistent with their complete absence from BLE's production.

Further, BLE's counsel candidly admitted during a meet and confer with the undersigned that the BAI-related documents were deleted, but has thus far refused to acknowledge when such deletion took place.  *See also* Ex. H, excerpt from M. Koller Depo. at 64:11-16 ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  The destruction of at least a portion of these documents appears to have occurred on or after August 26, 2015, approximately one (1) year after Plaintiff initiated this action and twenty-eight (28) days after Defendants

---

[2] The number in parentheses indicates the approximate number of documents identified in which the individual is either the sender or recipient of an email produced by BAI.

served its RFP No. 193 seeking all documents relating to BAI. Support for this allegation is found in the email produced by BLE on July 14, 2016, a copy of which is attached as Exhibit I (BLE0136632) (hereinafter "the Dodson email"). This email, dated August 26, 2015, is between two BLE employees, Scott Dodson and Mark Leathlean. The email is a forward of a prior email exchange, dated July 24, 2012, between Mike Toth, an employee of BAI, and three (3) BLE employees; Christopher Stewart, Michael Schultz, and Scott Dodson. The ability of Mr. Dodson to forward this 2012 email to Mr. Leathlean on August 26, 2015 proves that the underlying emails were in BLE's possession as of that date. The underlying 2012 emails, however, were not produced by BLE, nor were they otherwise produced by BAI. Notably, BAI is a third party and was under no obligation to preserve evidence relating to this case prior to Defendants' service of its subpoena on October 16, 2015. This indicates that BAI's production is an *inadequate* substitute for the documents deleted by BLE. This 2012 email is responsive to, at least, Requests for Production No. 122 and 193.

### ii. Barn Light Electric Deleted Documents While It Had A Duty to Preserve Evidence.

"Once a party reasonably anticipates litigation, it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute." *U.S. ex rel. King v. DSE, Inc.*, 2013 WL 610531, at *7 (M.D. Fla. Jan. 17, 2013), report and recommendation adopted, 2013 WL 608541 (M.D. Fla. Feb. 19, 2013), *aff'd* (Jan. 15, 2014) (internal citation omitted); *see also Se. Mech. Servs., Inc. v. Brody*, 2009 WL 2242395, at *2 (M.D. Fla. July 24, 2009) (stating that "[o]nce a party files suit or reasonably anticipates doing so . . . it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute").

Here, there are several dates from which this Court can find that BLE's duty to preserve evidence began. One date is September 7, 2012. On this day, Hi-Lite sent an email to BLE demanding that it remove all of Hi-Lite's copyrighted photographs and product drawings from its website. *See* Ex. J. This email, accusing BLE of copyright infringement, should have caused BLE to reasonably anticipate litigation if it were to fail to comply with Hi-Lite's demand. *See, e.g. Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1006 (D. Ariz. 2011) (stating that when a "letter openly threatens litigation, then the recipient is on notice that litigation is reasonably foreseeable and the duty to preserve evidence relevant to that dispute is triggered"). Bryan Scott's response to the email even further indicates his anticipation of litigation. *See* Ex. J. The fact that Hi-Lite's demand was sent nearly two years before BLE initiated this case is not dispositive of whether its duty to preserve evidence was exhausted. *See, e.g. In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1069 (N.D. Cal. 2006) (finding a duty to preserve evidence as early as three years prior to lawsuit); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d at 365, 369 (9th Cir. 1992) (upholding the district court's exclusion of plaintiff's expert testimony due to plaintiff's destruction of evidence two years before filing suit).

Another date from which this Court can hold that Barn Light Electric's duty to preserve evidence began is January 6, 2014. ████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████ *See* Ex. K (BLE0000824). Thus, on January 6, 2014, BLE was contemplating, and thus reasonably anticipating, litigation against Defendants. In fact, Mr. Scott, as a former law enforcement officer, has been deposed so many times that he's lost count, and is therefore undoubtedly

familiar with the duty to preserve evidence and when it attaches. *See* Ex. L, excerpt from B. Scott Depo. at Pg. 9, ln. 17-18.

A third date from which to measure BLE's duty to preserve evidence is March 7, 2014. Based on its privilege log, communications between BLE and its attorney relating to this suit had begun in anticipation of filing suit. *See Cyntegra, Inc. v. Idexx Labs., Inc.*, 2007 WL 5193736, at *3 (C.D. Cal. Sept. 21, 2007) (finding that because plaintiffs control when litigation begins, they "must necessarily anticipate litigation before the complaint is filed"); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) (finding that immediate retention of attorney and experts after car accident triggered the duty to preserve evidence almost three years before commencement of suit). In particular, BLE's privilege log indicates that an email dated March 7, 2014 was sent to Bryan and Donna Scott by Mr. Alejandro Fernandez, counsel for BLE, with a subject "pre-filing status of complaint." *See* Ex. M, excerpt of priv. log at Pg. 5. This action was initiated a mere five (5) months later on August 14, 2014, a date from which a duty to preserve evidence had undoubtedly accrued. [*See* Dkt. 1.]

As described hereinabove, the Dodson email indicates that as of August 26, 2015, more than one (1) year after BLE filed its initial complaint, it was in possession of documents relating to BAI going back at least as early as July 24, 2012. These documents were not produced during the course of this litigation, and BLE's counsel has confirmed that documents relating to BAI have been deleted from its servers.

### iii. The BAI Documents Are Crucial to Defendants' Claims and Defenses In This Case.

In determining whether the documents deleted by BLE are crucial to Defendants' claims and/or defenses, the Court "must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to

14

profit from the destruction of the evidence." *Southeastern*, 657 F. Supp. 2d at 1300 (citing *Kronisch v. U.S.*, 150 F.3d 112, 128 (2d Cir. 1998)); *see also Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 2012 WL 10817204, at *3 (M.D. Fla. Nov. 30, 2012). The spoliator must present clear and convincing evidence that the deleted documents were of minimal or little import. *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 562 (E.D. Va. 2006) *vacated on other grounds*, 523 F.3d 1374 (Fed. Cir. 2008) (citing *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988)).

In this case, the BAI documents are crucial to nearly all of Defendants' claims and defenses. On April 2, 2015, Defendant Hi-Lite filed counterclaims against BLE and the Scotts for, *inter alia*, unfair competition, false advertising, trade dress infringement, and copyright infringement. [*See* Dkt. 60.] The crux of Hi-Lite's allegations is that during its business relationship with BLE (i.e. between 2008 and September 2012), BLE was illegally fulfilling orders for Hi-Lite products with light fixtures it manufactured itself. In particular, Hi-Lite contends, in part, that BLE's use of Hi-Lite's copyrighted photographs on its website to sell knock-off BLE products constitutes copyright infringement, because such use of Hi-Lite's works exceeds the scope of any implied license granted to BLE to use the works.

### 1. Hi-Lite's Copyright Infringement Claims.

Hi-Lite alleges that BLE enlisted the assistance of BAI to reverse engineer Hi-Lite's products. This directly relates to Hi-Lite's copyright claims because its copyrighted photos were being used to advertise the knock-off products. Hi-Lite's copyrighted photos were likely provided to BAI to assist in replicating the products. However, the only way for Defendants to determine this and to fully ascertain the extent of the infringement is to determine which Hi-Lite products were being reverse engineered, what materials were sent to BAI, and the date on which

Barn Light Electric obtained the capability to manufacture its knock-off products.   This is directly relevant to Hi-Lite's copyright claims because BLE's deletion of the BAI documents leaves Hi-Lite without a complete picture of BLE's manufacturing capabilities.   Therefore, Defendant Hi-Lite is unable to ascertain which copyrighted works were infringed and when the infringement began, which undoubtedly constitutes severe prejudice to Hi-Lite by greatly hindering its ability to prove its claim.

### 2.   Barn Light Electric's Trademark Infringement Claims.

In the Eleventh Circuit, courts consider seven factors in determining whether a likelihood of confusion sufficient to support a finding of trademark infringement exists.   These factors include "(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; **(3) the similarity between the products and services offered by the plaintiff and defendant**; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008) (internal citation omitted) (emphasis added).

In its Third Amended Complaint, BLE asserts trademark infringement claims against both Hi-Lite and Barnlight Originals based on Defendants' use of the marks BARNLIGHT ORIGINALS and THE AUTHENTIC.   [*See* Dkt. 107.]   In support of its allegations, BLE contends that the similarity of the products sold by the two companies supports its claim for trademark infringement.   In particular, BLE states that "Defendants seized on THE AUTHENTIC, which has exactly the same meaning and connotation as THE ORIGINAL.   They did so in connection with a light fixture that is essentially identical in all material respects to the

16

light fixture sold by Barn Light Electric as THE ORIGINAL." [Third Amend. Compl., Dkt. 107 at ¶ 71]. BLE then goes on to provide a side-by-side comparison of the two products and states "[t]his is best shown in comparing THE ORIGINAL to THE AUTHENTIC warehouse lights, which are in nearly all material aspects identical." [*Id.* at ¶ 72]. BLE contends this similarity in products indicates Defendants' intent to trade on the goodwill of BLE. [*See Id.* at ¶ 73.]

The clear implication of ¶¶ 71-73 in BLE's Third Amended Complaint is that the similarity of the products sold by BLE and Barnlight Originals evidences an intent by Defendants to cause consumer confusion by copying BLE's products. In reality, however, the inverse is true. It is BLE that copied Hi-Lite's and Mr. Ohai's product designs by having them reverse engineered by BAI, thereby forcing Hi-Lite to abandon its relationship with BLE and seek alternative distributors for its products. Thus, to rebut BLE's allegations relating to the similarity of the products and Mr. Ohai's intent in forming Barnlight Originals, Defendants must prove that the products are similar because they were copied by BLE. BLE's systematic deletion of the BAI documents, however, severely hinders Hi-Lite's ability to rebut any allegation that Mr. Ohai's intent was to "gain competitive advantage by associating his product with the plaintiff's mark." As described above, BAI's production was incomplete and therefore an inadequate substitute for the documents deleted by Barn Light Electric.

### b. Defendants Are Entitled to Sanctions.

This Court has broad discretion to impose sanctions for spoliation of evidence. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). "This power derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Sanctions for spoliation 'are

intended to prevent unfair prejudice to litigants and to ensure the integrity of the discovery process.'" *Managed Care Sol'ns, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010) (quoting *Flury*, 427 F.3d at 944).   When determining whether to award sanctions for spoliation, "courts should primarily consider the extent of the prejudice caused by the spoliation (based on the importance of the evidence to the case), whether that prejudice can be cured, and the culpability of the spoliator." *Oil Equip. Co. Inc. v. Modern Welding Co. Inc.*, -- Fed. App'x ---, 2016 WL 5417736, at *5 (11th Cir. Sept. 29, 2016).

"Sanctions for spoliation of evidence include '(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator.'" *Oil Equip. Co. Inc. v. Modern Welding Co. Inc.*, No. 16-11326, 2016 WL 5417736, at *5 (11th Cir. Sept. 29, 2016) (quoting *Flury*, 427 F.3d at 945); see also *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009) (sanctions for spoliation may include default judgment, adverse inference or rebuttable presumption instructions to the jury, striking pleadings, and awarding fees and/or costs).

### i. Barn Light Electric's Deletion of the BAI Documents Was Done in Bad Faith.

Sanctions may be imposed for the spoliation of evidence "when the absence of that evidence is predicated on bad faith . . . ." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (quoting *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975); *Point Blank Solutions, Inc. v. Toyobo America, Inc.*, 2011 WL 1456029 (S.D. Fla. April 5, 2011). In the Eleventh Circuit, "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (citing *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)).   "The substantial and complete nature of the destruction of evidence by the spoliator

justifies a finding that the destroyed evidence prejudiced a plaintiff." *See Mech. Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293, 1300 (M.D. Fla. 2009). "Generally, bad faith may be found where the plaintiff's actions are responsible for the spoliation of evidence and the plaintiff fully appreciated the significance of the evidence to the anticipated litigation." *Oil Equip. Co. Inc. v. Modern Welding Co. Inc.*, No. 16-11326, 2016 WL 5417736, at *6 (11th Cir. Sept. 29, 2016) (*citing Story*, 909 So.2d at 804); *see also Flury*, 427 F.3d at 945 (finding the plaintiff at fault because the "plaintiff should have known that the vehicle, which was the very subject of his lawsuit, needed to be preserved and examined as evidence central to his case").

In the present case, the absence of emails related to BAI must be considered within the context of other evasive discovery provided on the same topic. Viewing the BAI related discovery in totality suggests bad faith on the part of BLE. BLE repeatedly denied that any Hi-Lite products were being copied and similarly denied knowing that Hi-Lite products were being sent to BAI. For example, when asked via an Interrogatory No. 21 "whether Barn Light Electric ever reproduced, replicated, or copied (or had someone do so on its behalf) any lighting fixtures obtained from Hi-Lite Manufacturing" the sworn answer was that "The Scotts state that they are unaware of any such instances." *See* Ex. N at Pg. 13-14. Defendants also propounded interrogatory Requests Nos. 3 and 4 which sought, *inter alia*, an itemized list of the fixed and variable costs associated with the manufacture or production of certain BLE's lighting fixtures. These requests should have identified BAI as a company involved in manufacturing BLE's lighting fixtures.[3] However, BLE's response --procured only after the filing of a motion to compel [Dkt. 110] --only identified Hi-Lite as a vendor.

---

[3] Subsequent document production from BAI demonstrated ███████████████ ███████████████████████████. *See* Ex. O.

19

BLE and Bryan and Donna Scott also gave sworn admissions flatly denying that they copied any Hi-Lite product designs or that Hi-Lite products were provided as examples to product designers:

"25.    ADMIT that Barn Light Electric has directed its employees to manufacture lighting fixtures similar in appearance to those of Hi-Lite.

RESPONSE: General Objections, Counterclaim Defendants object on the basis that this Request is vague and ambiguous because it is unclear what is meant by "lighting fixtures similar in appearance to those of Hi-Lite. Further, it is unclear what is meant by "those of Hi-Lite". Subject to the foregoing objections, Counterclaim Defendants deny this Request.

26.    ADMIT that Barn Light Electric has directed a third-party to manufacture lighting fixtures similar in appearance to those of Hi-Lite.

RESPONSE: In addition to their General Objections, Counterclaim Defendants object on the basis that this Request is vague and ambiguous because it is unclear what is meant by "third party," "lighting fixtures similar in appearance to those of Hi-Lite. Further, it is unclear what is meant by "those of Hi-Lite". Subject to the foregoing objections, Counterclaim Defendants deny this Request.

27.    ADMIT that Barn Light Electric sells products similar in appearance to those sold by Hi-Lite.

RESPONSE: In addition to their General Objections, Counterclaim Defendants object on the basis that this Request is vague and ambiguous because it is unclear what is meant by "products similar in appearance to those of Hi-Lite. Further, it is unclear what is meant by "those sold by Hi-Lite". Subject to the foregoing objections, Counterclaim Defendants deny this Request.

28.    ADMIT that Barn Light Electric manufactures products similar in appearance to those of Hi-Lite.

RESPONSE: In addition to their General Objections, Counterclaim Defendants object on the basis that this Request is vague and ambiguous because it is unclear what is meant by "products similar in appearance to those of Hi-Lite". Further, it is unclear what is meant by "those of Hi-Lite". Subject to the foregoing objections, Counterclaim Defendants deny this Request.

29.    ADMIT that Barn Light Electric has copied at least one of Hi-Lite's product designs.

RESPONSE: In addition to their General Objections, Counterclaim Defendants object on the basis that this Request is vague and ambiguous because it is unclear what is meant by "Hi-Lite's product designs." Subject to the foregoing objections Counterclaim Defendants deny this Request.

30.     ADMIT that Barn Light Electric has provided examples of Hi-Lite products to its product designers.

RESPONSE: In addition to their General Objections, Counterclaim Defendants object on the basis that this Request is vague and ambiguous because it is unclear whether the term "its" refers to Barn Light Electric or Hi-Lite. Further, it is unclear what is meant by "Hi-Lite's products." Subject to the foregoing objections Counterclaim Defendants deny this Request."

*See* Ex. P at Pg. 25-30.



Indeed, counsel for Defendants only learned of the nature and extent of BAI's relationship with BLE after being contacted by Michael Schultz, a former employee of BLE.

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

BLE will, of course, attempt to discredit Mr. Schultz as a disgruntled former employee and someone who is currently being sued by BLE in an unrelated litigation.[4]  Counsel for BLE recently confirmed that he has contacted Mr. Schultz, through his attorney, in an effort to get him to correct his deposition testimony in this case.  However, Mr. Schultz has given no indication that he intends to recant his sworn testimony.   Moreover, Mr. Schultz' testimony is fully consistent with that of another former employee. ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

The totality of the discovery strongly suggests that the Scotts took steps, both in its relationship with Hi-Lite and during this litigation, to hide BAI's role in reverse engineering Hi-Lite fixtures.  It is against this backdrop that the Court must evaluate why out of more than 5,000 BAI documents only about 9 remain in Plaintiff's possession.

### ii.  The Prejudice to Defendants Cannot Be Cured.

The Dodson email proves that there were documents in BLE's possession that were not produced by BAI.  Thus, it is impossible for Defendants to know the full extent of the products reverse engineered by BAI for the benefit of BLE.  Moreover, BAI did not have any obligation whatsoever to preserve documents relating to its reverse engineering of Hi-Lite's products for

---

[4] *See Barn Light Electric Co., LLC v. Light Choice Inc., Michael Schultz, and Martha Moon*, Case No. 15-CA-001329 (13th Judicial Circuit Hillsborough County).

years before Defendants' service of its subpoena.  In short, there is no way to cure the prejudice to Defendants.

### iii.  Dismissal of BLE's Claims is Appropriate Sanction.

In the Eleventh Circuit, when the destroyed evidence is "crucial and the prejudice incurable . . . dismissal [is] the *only* appropriate sanction.  *Oil Equip. Co. Inc. v. Modern Welding Co. Inc.*, No. 16-11326, 2016 WL 5417736, at *7 (11th Cir. Sept. 29, 2016) (emphasis added) (internal citation omitted); *see also Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 947 (11th Cir. 2005) (stating that because "[p]laintiff's spoliation of critical evidence in this case deprived the opposing party of an opportunity to put on a complete defense . . . [t]he resulting prejudice to defendant is incurable by any sanction other than dismissal).  Here, not only did BLE undertake a systematic effort to delete BAI related emails, its other discovery responses obfuscated BAI's role in replicating Hi-Lite fixtures.  Considered in the context of BLE's other repeated discovery failures noted above, dismissal with prejudice of BLE's underlying claims is appropriate.  *See, e.g. Roman v. Se. Freight Lines, Inc.*, No. 6:13-CV-577-ORL-31, 2013 WL 6384612, at *1 (M.D. Fla. Dec. 5, 2013) (Repeated failures to follow the Federal Rules of Civil Procedure and court orders may necessitate dismissing a plaintiff's claims).   Such a dismissal can be predicated under Fed. R. Civ. P. 37(b)(2) or pursuant to this Court's inherent powers.  As this Court has previously noted:

> [t]he key to unlocking a court's inherent power is a finding of bad faith…. Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order.

*See Scipione v. Advanced Stores Co.*, 294 F.R.D. 659, 665 (M.D. Fla. 2013) (quoting *Qantum Comm. Corp. v. Star Broadcasting, Inc.*, 473 F. Supp. 2d 1249 (S.D. Fla. 2007)).

In the event the Court is unwilling to entertain a dismissal based upon the current record, Defendants respectfully submit that the evidence compiled thus far warrants an evidentiary hearing to determine if BLE deliberately targeted BAI related emails for deletion, and if so, when such deletion took place.  Defendants further request a recovery of its fees and costs for its discovery motions related to BAI.  [Dkts. 133 and 260.]

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request entry of an Order:

a)    dismissing BLE's claims with prejudice, or in the alternative, scheduling an evidentiary hearing to determine whether BAI related emails were targeted for deletion, and if so, the date such deletion occurred;

b)    compelling a complete response to Defendants Request for Production No. 118;

c)    compelling the complete production of the contents of the Vault and an identification of the key words used to search for relevant emails;

d)    awarding Defendants' fees and costs under Fed. R. Civ. P. 37(b)(2)(A); and

e)    any other relief this Court deems just and proper.


Date: December 12, 2016          /s/ Michael J. Colitz, III
                                 Michael J. Colitz, III
                                 Florida Bar No. 164348
                                 Stefan V. Stein
                                 Florida Bar No. 300527
                                 Stephen G. Anderson
                                 Florida Bar No. 0105697
                                 GRAYROBINSON, P.A.
                                 401 E. Jackson Street, Suite 2700
                                 Tampa, FL 33602
                                 (813) 273-5000
                                 (813) 273-5145 (fax)
                                 michael.colitz@gray-robinson.com
                                 stefan.stein@gray-robinson.com

24

stephen.anderson@gray-robinson.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2016, I filed the foregoing with the Court's CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Michael J. Colitz, III*
Michael J. Colitz, III

# 10010298 v1