UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC
COMPANY, LLC, a Florida limited
liability company,

    Plaintiff,                                            CASE NO. 8:14-cv-01955-MSS-AEP

v.

BARNLIGHT ORIGINALS, INC., a
Nevada corporation; HI-LITE
MANUFACTURING COMPANY, INC.,
a California corporation; and JEFFREY
L. OHAI, an individual California
Resident,

    Defendants.
_____/

## BARN LIGHT ELECTRIC'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO MOTION TO COMPEL

Pursuant to this Court's Order [Dkt. 406], Barn Light Electric Company, LLC ("BLE"), and Bryan and Donna Scott ("The Scotts") (collectively, the "Plaintiffs"), by and through their counsel, hereby file this Supplemental Response in Opposition to Defendants' Motion to Compel [Dkt. 372] ("Motion"). In support, Plaintiffs state as follows:

Mr. Colitz, arguing on behalf of all Defendants in this matter, advanced numerous specious statements that Plaintiffs spoliated evidence. The context and intended effect of Mr. Colitz's misrepresentations is significant. That is, the misrepresentations were not happenstance, slips of the tongue, or mere careless comments. They were made to: (i) overcome fatal deficiencies in Defendants' substantive spoliation arguments, (ii) backfill gaps in Defendants factual and legal theories for which they have no plausible explanation, and (iii) ambush at hearings where Plaintiffs had no opportunity to scrutinize emails and representations cited for the

1

first time and outside of the pleadings. For manifest reasons, the Florida Rules of Professional Responsibility roundly proscribe such tactics.

I. **MISREPRESENTATIONS OF FACT AND LAW PRESENT IN DEFENDANTS' MOTION TO COMPEL**

**A. Mr. Colitz Improperly Truncated Deposition Testimony to Support His Arguments About Improper Deletion of Emails by Plaintiffs.**

In the Motion, Mr. Colitz improperly truncated the deposition testimony of Plaintiffs' document custodian, Michael Koller, to falsely argue that Mr. Scott deleted a BAI email communication during the pendency of this litigation.[1] Significantly, as Exhibit H to its Motion, Mr. Colitz chose to attach a "mini" or "4-in-1" transcript of Mr. Koller's deposition testimony, including only the pages it wished for the Court to view. *See* Motion; Ex. H (including mini printouts containing only pages 1-4 and 61-64 of the transcript). It is telling that in each of its other exhibits, Mr. Colitz chose to attach full page transcripts. *See* Motion at Exs. L, Q, R & T *c.f.* Ex. H. Upon further scrutiny, a reading of the very next page of the transcript, which was omitted, wholly contradicts such an inference and makes clear that the Mr. Koller's testimony regarding Mr. Scott relates to 2012, *long before* the filing of this lawsuit.[2] Mr. Colitz' presentation of Mr. Koller's testimony, omitting testimony which it was undoubtedly aware of, for the sole purpose of advancing its argument and misleading the Court, illustrates yet another violation of counsel's duty of candor to this Court.

**B. Mr. Colitz's Truncated Representations To Create The False Impression That Plaintiff's Conducted Only 12 Searches in Violation of the Court's Discovery Order.**

---

[1] *See* Motion at 11 (citing Ex. H, excerpt from M. Koller Depo. at 64:11-16 ("Q: Do you have any explanation as to why this email [BAI_0000184] from August 3, 2012, was not received from ... Barn Light Electric, but we did receive it from Bay Area Innovations? A: It could be that Bryan [Scott] deleted it from, you know, the server.").

[2] See Transcript of the Deposition of Michael Koller, at 65:1-11 (attached hereto as Exhibit A) ("Q. Okay. Are you aware of any documents that have been deleted -- A. No. Q. -- in -- in connection with what may have been requested in this case? A. No. Q. So Mr. Scott could have deleted these documents, but you didn't participate? A. He could have deleted e-mails. Q. Yeah. A. Back in 2012.").

To mislead this Court regarding BLE's full compliance with this Court's Order [Dkt. 303 at 1(b)], after being fully informed otherwise in writing, Mr. Colitz falsely argued that "***BLE has confirmed that its search of the vault was limited to just 12 terms.***" See Motion at 9.  In fact, the correspondence Mr. Colitz quoted from Plaintiff's counsel clearly stated, "[W]e searched the solidworks server for all 12 terms that the Court ordered us to, ***as well as the majority of search terms proposed by defendants.***" Id. at Ex. B.  As noted in BLE's Response in Opposition, supported by a sworn declaration, BLE searched the SolidWorks server using a total of 100 search terms.  See Dkt. 375 at 6-8; see also Id., at Ex. B at ¶¶ 23-25.  Mr. Colitz filed the Motion on December 12, 2016 and thereafter refused to correct the truncation.  At the hearing, on January 19, 2017 hearing, Defendants' counsel attempted to explain the truncation as a misreading of the email. H'rg Tr. at 38:1-25.

Likewise, in its Motion, Mr. Colitz falsely represented to this Court that BLE failed to produce the purchase orders pursuant to this Court's Order, attacking BLE's good faith production of approximately 40,000 purchase orders without any valid basis, resulting in the unnecessary waste of judicial and party resources.  See Motion at 4. ("Despite being ordered to do so months ago, BLE has neither produced, nor offered a satisfactory explanation for the absence of purchase orders identified on the Product Sold Report.").  At the conclusion of the hearing on Dkt. 372, this Court held "[a]s to the purchase orders, fully appreciating the argument in what has been presented, I'm satisfied fully that the production has been as required by the Court's Order.  There's been ***nothing*** presented to me to demonstrate that purchase orders were not produced." H'rg Tr., 102:2-6 (emphasis added).

### C. Defendants' False Attribution of Admission By Counsel Is A Complete Fabrication Designed To Substantiate Thin Arguments that Documents Were Deleted.

3

Without proffering even a scintilla of evidence, opposing counsel made the baseless and wholly fabricated claim in their Motion that "BLE's counsel candidly admitted during a meet and confer with the undersigned that the BAI-related documents were deleted, but has thus far refused to acknowledge when such deletion took place." Dkt. 372 at 11. Plaintiff's counsel never made such an admission to opposing counsel. This is supported by Mr. Colitz's own failure to mention such a meaningful admission in his own four-page, single-spaced account of the meet and confer at issue. Mr. Colitz's letter flatly contradicts the false allegation that any such admission by Plaintiffs' counsel was ever uttered. *See* Dkt. 372; Ex. A.

## II. MR. COLITZ WITHHELD EVIDENCE AND THE DEMONSTRATIVE PRESENTATION WITH MISREPRESENTATIONS OF FACT THAT HE RELIED ON AT THE HEARING

In what amounted to a calculated trial by surprise at the hearing on Dkt. 372, Mr. Colitz presented alleged evidence of spoliation through a twenty-three page PowerPoint presentation containing information he had not included in the Motion [Dkt. 372].[3] This, following the Court's denial of its motion to file a reply, without disclosure to Plaintiffs' counsel in advance of the hearing, and without providing Plaintiffs' counsel any opportunity to examine, respond to, or prepare for such argument at the hearing. Dkt. 380. Indeed, in yet another misrepresentation to the Court, Mr. Colitz admitted this purpose at a subsequent telephonic hearing, claiming it disclosed its intended argument to Plaintiff's counsel.[4] In reality, when asked what for basis of its motion for leave to file a reply, counsel represented that it "intend[ed] to address [the] allegation that the purchase orders in question have been produced. Let me know if you oppose our motion." *See* E-Mail Correspondence dated January 3, 2017 (attached hereto as Exhibit B).

---

[3] *See* Dkt. 303 at 1(d) ("In all other respects, the motion is denied.").

[4] *See* Transcript of Telephonic Hearing dated February 16, 2017 ("H'rg. Tr. II")(attached hereto and filed under seal as Exhibit C) ("We then attempted to seek leave to file a reply brief, they opposed that, and so we were left with no choice but then to raise those issues before the Court. So this idea that there's a surprise is not very well taken." *Id.* at 16:23-17:2).

4

Given the sophistication of the PowerPoint presentation Mr. Colitz proffered at the hearing – which contained numerous graphics, call-outs and timelines – there can be no question countless hours were invested in its careful preparation by Mr. Colitz.  Further, it was not until long after the hearing, upon the repeated insistence of Plaintiffs' counsel, that Mr. Colitz finally provided Plaintiffs with a poorly scanned copy of its PowerPoint presentation.

Once afforded the opportunity to examine what was proffered before the Court, it became apparent why Mr. Colitz took such efforts to withhold from Plaintiffs presentation having the so-called evidence presented to this Court.

### A. Defendants' Misrepresentations To The Court Relating To The Electronic Communications Of Former Barn Light Electric Employees

In his carefully crafted PowerPoint presentation, Mr. Colitz proffered what he repeatedly misrepresented to the Court as email communications *sent from* former Barn Light Electric employees, Jim Turner and Lauren Mitchell.  More specifically, Mr. Colitz made such misrepresentations to the Court in referring to a slide which contained an email header, which merely included Mr. Turner as one of several *recipients* copied on the email communication, along with Mr. Turner's email signature block cut and pasted to the bottom of the very same page.  *See* PowerPoint Presentation at 19 (attached hereto as Ex D).

On numerous occasions at oral argument, Mr. Colitz proffered this evidence and expressly misrepresented to the Court that Defendants had identified an email *sent* by Mr. Turner on November 7, 2014.  *See H'rg Tr.* 18:18-19 ("We have an email *from Mr. Turner* November 7th, 2014."); *see also* ("We have *an email from Mr. Turner where he's sent an email* November 7th, 2014." *Id.* 18:21-23.).  The email misrepresented by Mr. Colitz in support of its allegation of spoliation, however, is not an email sent by Mr. Turner at all.  Instead, he is one of multiple recipients, cc'd on the email communication.  Moreover, Jim Turner's signature block,

5

which appears in Exhibit D, was taken from some other source and then cut and pasted onto the same page as the email header which appears at the top of Exhibit D. *See* Email communication from Scott Dodson dated November 7, 2014 (attached hereto as Exhibit E) (which represents the email the header originated from). Upon receipt of the Powerpoint presentation, weeks after the hearing, the undersigned confirmed that Mr. Turner's signature block simply does not appear anywhere in the email misrepresented to the Court as sent by Mr. Turner.

Likewise, in an effort to substantiate its allegations of spoliation and for the premise that the BAI document production is not a sufficient alternative source of the communications it seeks, Mr. Colitz represented to this Court that he was in possession of an email sent by former BLE employee, Lauren Mitchell, that was produced by BAI but not Plaintiffs. *See* H'rg Tr., 97:22-98:1 ("So this is an email, Your Honor, this is BAI-9155. . . it's an example of an email we got from Bay Area Innovations that ***we did not get from Barn Light Electric***.") (emphasis added). Contrary to Mr. Colitz's misrepresentation, Plaintiffs ***did***, in fact, produce the email in question – months before BAI's production of a duplicate email communication. *See* BLE0098689 (produced May 27, 2015) *c.f.* BAI009155 (produced Nov. 5, 2015) (attached as Ex. F).

### B. Defendants' Misrepresentations Are Meaningful and Prejudicial to Plaintiffs

The record confirms that the misrepresentations of Mr. Colitz were considered meaningful by this Court. *See* H'rg Tr., 71:16-20 ("And the two examples that I think at least highlight some concern, which is why I focus on . . . Jim Turner, where there's an email produced of November 14th [sic], it begs the question as to when those email accounts were deleted."). Although it had an obligation to do so, Mr. Colitz did not even attempt to correct the Court's misapprehension at the hearing.

### III.   DEFENDANTS' MISSTATEMENTS OF LAW

In support of its argument regarding the alleged relevance of email communications between Plaintiffs and BAI, Mr. Colitz allege that such communications may show BAI was "a third-party company hired to reverse engineer Hi-Lite's **products**" and that BAI engaged in the "rendering of Hi-Lite **products**."  *See* Motion at 2 & 4 (emphasis added).  Hi-Lite's copyright infringement claims as pled in its operative counterclaims, however, each allege that BLE has engaged in the unauthorized use of its **photographs** on the BLE website and in its advertising materials.  *See* Dkt. 60 at Count VI, VII & VIII.  Controlling Eleventh Circuit precedent establishes, as a matter of law, that the copying, rendering or reverse engineering of a **product** or **product design** cannot substantiate a claim of copyright infringement.  *See Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000) (holding copyrights do not cover the appearance of an object depicted in a copyrighted photograph or useful articles).  Thus, even assuming *arguendo* Mr. Colitz's allegations to be true, such facts are entirely irrelevant to Defendants counterclaims for copyright infringement.  Accordingly, even if this Court was to construe Mr. Colitz's allegations of spoliation to require a duty to preserve, because there is no relevancy to the information sought, there can be no finding of spoliation.  *H'rg Tr.* 103:10-14.

Second, with regard to Plaintiffs' affirmative defense of implied license, Mr. Colitz alleged that internal communications in 2012 regarding BLE's interactions with BAI might reveal BLE's subjective understanding of the scope of the implied license Hi-Lite admits it granted to BLE without any limitation at the time it delivered its works to BLE in 2008.  *See* Motion at 15; *see also* H'rg Tr., 98:5-21 (speculating that internal communications between Lauren Mitchell and Donna Scott regarding BAI might reveal subjective "evidence as to what they knew they could do and could not do with Hi-Lite's images.").  Mr. Colitz's allegations regarding the relevance of 2012 communications relating to BLE's interactions with BAI and

subjective understanding of the scope of the implied license granted to it, even if assumed to be true *arguendo*, fail as a matter of law.

The existence of a license is a full defense to copyright infringement. *I.A.E, Inc. v. Shaver*, 74 F.3d 768, 775 (5th Cir. 1996). "An implied license is created when one party (1) creates a work at another person's request; (2) delivers the work to that person; and (3) intends that the person copy and distribute the work." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235, 2010 WL 1253090, at *9 (11th Cir. 2010). "[A]n implied license is "limited to a specific use *only* if that limitation is expressly conveyed *when the work is delivered*." *Karlson v. Red Door Homes, Inc.*, No. 14-12371 (11th Cir. May 7, 2015) (*Per Curiam*) *Latimer,* 601 F.3d at 1235; *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009) (explaining that the court looks at "objective factors evincing the party's intent, including . . . whether the copyrighted *material was delivered without warning* that its future use would constitute copyright infringement") (emphases added in original). The Court's focus is not on the subjective intent of the parties, but on an objective inquiry into the facts that manifest intent. *See I.A.E, Inc. v. Shaver*, 74 F.3d 768, 776 (5th Cir. 1996); *see also Karlson v. Red Door Homes, LLC.*, 18 F.Supp.3d 1301, 1307 (N.D. Alabama 2014) aff'd Case No. 14-12371 (11th Cir. May 7, 2015) (holding the copyright holder's "subjective intent is irrelevant.").

Hi-Lite has repeatedly admitted that the objective evidence establishes that it granted BLE an implied nonexclusive license to use, reproduce, adapt, distribute and display the works it transferred to Barn Light Electric. *See* Dkt. 377 at 6 ("[T]he objective evidence indicates that Hi-Lite granted a nonexclusive implied license to BLE to use its copyrighted photographs. . . .").

Hi-Lite has also judicially admitted that it. It is undisputed that Hi-Lite has judicially admitted that it failed to expressly limit the scope of use of the works it delivered to BLE in 2008.[5]

Thus, according to controlling Eleventh Circuit precedent, "[b]ecause there is no evidence that [Hi-Lite] intended to limit the scope of [BLE]'s use of [it's works] at the time that [Hi-Lite] delivered the [works], [Hi-Lite] could not have, as a matter of law, limited the scope of the nonexclusive license [it] granted."[6] *Karlson*, No. 14-12371 (11th Cir. May 7, 2015). Moreover, as the Eleventh Circuit held in *Karlson*, the scope of the implied nonexclusive license Hi-Lite granted to BLE is, as a matter of law, unlimited. Accordingly, because the scope of an implied license is determined at the time the works are delivered to the recipient, and Hi-Lite admits there was no express limitation provided to BLE upon delivery of the works in 2008, Defendants contention that internal communications regarding BAI in 2012 are irrelevant to show the scope of the implied license granted to BLE and must be rejected as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request entry of an Order: (i) denying Defendants' Motion to Compel Or, In The Alternative, Motion For Sanctions Due To Spoliation [Dkt. 372]; (ii) awarding Plaintiffs' fees and costs under Fed. R. Civ. P. 37; and (iii) any other relief this Court deems just and proper.

---

[5] See Transcript of the Status Conference of February 23, 2016 [Dkt. 300] at 77:3-84:23 (admitting Hi-Lite's failure to provide any express limitation whatsoever on the scope of use of the works upon delivery to BLE in 2008); Dkt. 227 at p.9, n.39 (setting forth Defendant's admissions, deposition testimony, documents and affidavits further establishing Defendant's failure to provide any express limitation upon delivery of its works to BLE)

[6] With regard to the scope of an implied license, courts in the M.D. Fla. have held that "even assuming that [licensor] . . . attached conditions to the [licensee's] use of his images . . . these conditions [a]re covenants, not condition precedents to the granting of the implied license. Accordingly, any breach on the [licensee's] part of these covenants provides [the licensor] with a breach of contract claim against the [licensee], not a copyright infringement claim." *Davis v. Tampa Bay Arena, Ltd.,* Case No. 8:12-cv-60-T-30MAP, (M.D. Fla. 2012) (Slip Op. June 27, 2013, Judge Moody) (granting summary judgment and finding an implied license for the use of photographs was granted and any use outside of the alleged scope of the implied license was irrelevant to Plaintiff's copyright infringement claims since such claims would only lie in a breach of contract claim, not copyright infringement).

Date: March 15, 2017                    */s/ Alejandro J. Fernandez*
                                          Alejandro J. Fernandez

                                          Alejandro J. Fernandez  (FBN: 32221)
                                          afernandez@brinksgilson.com
                                          Joseph R. Sozzani (FBN: 120297)
                                          jsozzani@brinksgilson.com
                                          Stephen J. Leahu (FBN: 54037)
                                          sleahu@brinksgilson.com
                                          BRINKS GILSON & LIONE, P.C.
                                          Suntrust Financial Centre
                                          401 E. Jackson Street, Suite 3500
                                          Tampa, FL 33602
                                          Telephone No. (312) 321-4200
                                          Telefacsimile No. (312) 331-2499

                                          Gregory L. Hillyer (FBN: 682489)
                                          ghillyer@brinksgilson.com
                                          Evi T. Katsantonis
                                          ekatsantonis@brinksgilson.com
                                          *Admitted Pro Hac Vice*
                                          BRINKS GILSON & LIONE, P.C.
                                          1775 Pennsylvania Ave. NW, Suite 900
                                          Washington, DC 20006
                                          Telephone No. (202) 296-6911
                                          Telefacsimile No. (202) 296-8701

                                          *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2017, I filed the foregoing with the Court's CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

                              */s/ Alejandro J. Fernandez*
                                Alejandro J. Fernandez

## **CERTIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 15, 2017.

10

*/s/ Alejandro J. Fernandez*
Alejandro J. Fernandez

Case 8:14-cv-01955-MSS-AEP Document 412 Filed 03/16/17 Page 11 of 11 PageID 11063

*/s/ Alejandro J. Fernandez*
Alejandro J. Fernandez